

**Daniel M. Silver**
Wilmington Office Managing Partner

T. 302-984-6331
F. 302-691-1260

dsilver@mccarter.com

McCarter & English, LLP

Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717

www.mccarter.com

May 9, 2025

## PUBLIC VERSION FILED: May 16, 2025



<u>**VIA CM/ECF**</u>

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28, Room 2325
Wilmington, DE 19801-3555

Re:  ***Eagle Pharm., Inc. v. Apotex, Inc. et al.*, C.A. No. 24-64-JLH;**
***Eagle Pharm., Inc. v. Slayback Pharma LLC*, C.A. No. 24-65-JLH;**

Dear Judge Burke:

Pursuant to the Court's orders on May 1, 2025 (Civil Action No. 24-64-JLH, D.I. 135; Civil Action No. 24-65-JLH, D.I. 113), Plaintiff Eagle Pharmaceuticals, Inc. ("Eagle") raises two discovery issues and respectfully requests that the Court order Defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex") and Slayback Pharma LLC ("Slayback") (collectively, "Defendants") to produce the requested materials.

## I.    Defendants Should Produce Samples Of The Infringing Products

The Court should order Defendants to produce samples of their accused NDA products, which Eagle sought in RFP No. 42.  Eagle is entitled to such samples because they are the very products accused of infringement, and courts routinely order the production of samples of the accused products.  *See SmithKline Beecham Corp. v. Apotex Corp.*, No. 98-3952, 1999 WL 311697, at *6 (N.D. Ill. May 13, 1999) (compelling production of samples from Apotex); *Capsugel Belgium NV v. Bright Pharma Caps, Inc.*, No. 15-321, 2015 WL 5706925, at *4 (D. Or. Sept. 28, 2015) (same); *Everlight Elecs. Co. v. Nichia Corp.*, No. 12-11758, 2013 WL 6713789, at *2 (E.D. Mich. Dec. 20, 2013) (same); *Alloc, Inc. v. Unilin Beheer B.V.*, No. 03-1266, 2006 WL 757871, at *4 (E.D. Wis. Mar. 24, 2006) (same).  Eagle cannot obtain samples of these accused products on the open market (even though they are on sale) because both accused products are cytotoxic chemotherapy drugs, which are only available at hospital pharmacies with a prescription.  Given these circumstances, production of samples by Defendants is particularly appropriate.

Eagle first requested these samples on May 21, 2024 and has diligently asked Slayback to produce them on at least six separate occasions.  *See* Ex. 1; Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6.  Eagle has likewise requested samples from Apotex at least four times.  *See* Ex. 7 at 4; Ex. 8 at 3; Ex. 9 at 4-5; Ex. 10 at 4.  Yet, in the 11 months since Eagle first requested samples, neither Defendant even provided a substantive response until Eagle stated it would seek relief from the Court.[1]  Ex.

---

[1] On May 1, 2025, Apotex told Eagle that the estimated cost of 50 samples would be an exorbitant ▮▮▮▮▮  Ex. 11.  After another meet and confer on April 30, 2025, Slayback still has not provided its offer regarding samples.  Ex. 12.  On May 7, 2025, as proposed during the parties' Meet and Confer, Eagle provided a draft stipulation to Slayback and Apotex that would obviate the need for

15; Ex. 16 at 4. Indeed, despite Defendants' repeated claims that the Parties are not at an impasse, neither Defendant has committed to producing a concrete number of samples, despite Eagle's willingness to agree to fewer than the 50 samples per lot. This unreasonable delay further supports compelling production. *See, e.g.*, *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. 00-981, 2002 WL 818061, at *7 (D. Del. Apr. 30, 2002) ("The history of [Defendant's] failures to cooperate in the discovery process . . . counsel in favor of awarding [Plaintiff] some relief."); *Lontex Corp. v. Nike, Inc.*, No. 18-5623, 2024 WL 4508952, at *2 (E.D. Pa. Oct. 16, 2024) (chastising Defendant for delaying production "by over six months" forcing plaintiff to move to compel); *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir. 2003) (finding that dilatoriness, i.e. a failure to timely respond to document requests or interrogatories several times supported a finding of bad faith).

Indeed, this Court has granted motions to compel where a party has withheld responsive documents for ***nearly five months*** after the requests were served. *See Twinstrand Biosciences, Inc. & Univ. of Washington v. Guardant Health, Inc.*, No. 21-1126, 2023 WL 2906363 at *2-3 (D. Del. Mar. 14, 2023); *airSlate, Inc. v. Inkit, Inc.*, No. 23-1307, D.I. 60 (D. Del. Dec. 5, 2024) (compelling defendant to produce source code and rejecting defendant's request to delay production until a pending Rule 12 motion is resolved because the deadline for substantial completion of document production passed after plaintiff's interrogatory was served nine months prior). In *Twinstrand Biosciences*, this Court held that the defendant was "on notice of the precise information sought by [p]laintiffs through formal discovery requests and correspondence between the parties for many months, and it should be prepared to produce the information without further delay." 2023 WL 2906363 at *3. So too here. Defendants have delayed producing samples for over ***11 months***, despite Eagle's repeated requests for production. Thus, Eagle respectfully requests the Court compel Defendants to provide fifty (50) samples of the accused NDA products.

**II.    Apotex Should Produce Communications Among Its Sales Force Regarding The Accused Product**

The Court should order Apotex to produce communications among its sales force regarding the sale, marketing, pricing, and promotion of Apotex's NDA product. Eagle's RFP No. 57 seeks: "All communications between Your sales force, sales personnel, or marketing personnel that refer or relate to the sale, marketing, pricing, and/or promotion of Your NDA Product, including but not limited to by way of any group chat, texts, text chains, or chat function." To date, Apotex has not produced any sales-related communications between its sales force. Additionally, Apotex has not identified any custodian in its Paragraph 3 disclosures who communicates with its sales force, sales personnel, or marketing personnel, or any custodian who is on its sales force team.

---

samples entirely. Ex. 13; Ex. 14. Both parties declined the offer. Again, Eagle does not believe it is appropriate for it to bear the cost of Apotex's samples. In addition, in Apotex's response (Ex. 21), Apotex indicated for the first time that it was offering to produce any number of samples, having previously indicated that it "maintains its objections" to production and was merely "provid[ing] Eagle with additional information regarding its request for samples." Ex. 11. This offer being made for the first time less than four hours before Eagle's opening letter brief is due despite the parties' discussions for the past eight months is plainly improper.

May 9, 2025
Page 3

As courts in this District have found, understanding how Apotex communicates with its sales team is relevant to at least willfulness and damages. *See, e.g.*, *Commissariat a L'energie Atomique v. Samsung Elecs. Co.*, No. 03-484, 2006 WL 8452836, at *20 (D. Del. Apr. 13, 2006) (compelling production of "sales, cost and profit information" as relevant to damages and willfulness). Further, Third Circuit courts have compelled production of all communications between sales force members and potential customers. *See Eisai Inc. v. Sanofi-Aventis U.S.*, No. 08-4168, 2011 WL 5416844, at *2 (D.N.J. Nov. 7, 2011) (compelling production of "[a]ll communications between [parties' sales force] and any of its customers or potential customers"); *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, No. 19-2921, 2022 WL 3211421, at *4 (D.N.J. Aug. 9, 2022) ("***Communication*** concerning the safety and efficacy of [the accused product] between Allergan's ***sale representatives*** and Plaintiff's treating physicians is essential to both the claims and defenses in this litigation."); *Plintron Techs. USA LLC v. Phillips*, No. 24-93, 2025 WL 1070497, at *5 (W.D. Wash. Apr. 9, 2025) (holding that plaintiff "must conduct a reasonable search for and produce those responsive and non-privileged ***communications***" between its customers and third party sales group).[2] Communications of various types (including those beyond emails, i.e., text messages, Slack messages, Teams messages) have also been required. *See, e.g.*, *D'Angelo v. Coatesville Area Sch. Dist.*, No. 14-7325, 2016 WL 3388326, at *7 (E.D. Pa. June 20, 2016) ("Plaintiff is entitled to any [relevant] documentation, ***communications, email, text messages***."); *Sandoz, Inc. v. United Therapeutics Corp.*, No. 19-10170, 2021 WL 2453142, at *2 (D.N.J. June 16, 2021) (ordering production of text messages); *Benebone LLC v. Pet Qwerks, Inc.*, No. 20-850, 2021 WL 831025, at *3 (C.D. Cal. Feb. 18, 2021) (finding production of Slack messages not unduly burdensome).

Apotex contends that it "does not employ a 'sales force' for its bendamustine products, and thus, there are no such custodians for additional searching." Ex. 17 at 6. But Apotex's own documents directly contradict that unsupported contention. *See, e.g.*, Ex. 18 at -296 (showing that Apotex uses a Sales Team); Ex. 19 at -777 (Apotex's strategy includes "direct contacts with our sales team").[3] In any event, Eagle is still entitled to communications between the sales teams (whether third party or internal) that work on the sale, marketing, pricing, or promotion of Apotex's NDA Product.[4] As such, Eagle respectfully requests the Court compel Apotex to produce all communications between the people responsible for Apotex's sales regarding the sale, marketing, pricing, and/or promotion of Apotex's NDA Product.

---

[2] All emphasis added unless otherwise noted.

[3] On May 7, 2025, Eagle identified these documents to Apotex. Ex. 20. Apotex maintained its position and did not clarify why the documents mentioned a "sales force" if none exists. Ex. 21. Further, while Apotex indicated that Eagle would be "free to explore" whether Apotex had a sales force during depositions, that does not address this issue. Apotex's documents indicate that it has a sales force that it communicates with, and Eagle is entitled to those communications in order to prepare for its depositions of Apotex's witnesses and not to take those depositions to support the propriety of its document requests. *Id.*

[4] Eagle contends that the custodians identified by Apotex are not the relevant custodians because there have been no documents produced under those custodians that relate to the ***communications*** between the people responsible for Apotex's sale, marketing, pricing, or promotion of Apotex's NDA Product.

May 9, 2025
Page 4

Respectfully submitted,

/s/ *Daniel M. Silver*

Daniel M. Silver (#4758)

cc: Counsel of Record (via CM/ECF)