# EXHIBIT 1

**Sent:** Friday, March 21, 2025 3:21 PM
**To:** EXT Christopher Ferenc <christopher.ferenc@katten.com>; EXT Ajay Kayal <akayal@windelsmarx.com>; EXT Andrew Miller <amiller@windelsmarx.com>; EXT Constance Huttner <chuttner@windelsmarx.com>; Dtaylor@skjlaw.com>; jlief@windelsmarx.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; EXT Robyn Ast-Gmoser <rast-gmoser@windelsmarx.com>; Antons, Amanda <Amanda.Antons@dechert.com>; amoshos@potteranderson.com; Dechert-Bendamustine <Dechert-Bendamustine@dechert.com>; Marley, Jacinda <jacinda.marley@dechert.com>; msingleton@potteranderson.com; Black, Martin <martin.black@dechert.com>; mshaw@potteranderson.com; Leibowitz, Noah <Noah.Leibowitz@dechert.com>; EXT Phil Rovner <provner@potteranderson.com>; EXT Cortlan Hitch <CHitch@morrisjames.com>; EXT Deepro Mukerjee <deepro.mukerjee@katten.com>; EGreek@morrisjames.com; EXT Jitty Malik <jitty.malik@katten.com>; EXT Joe Janusz <joe.janusz@katten.com>; khunt@morrisjames.com; EXT K Dorsney <kdorsney@morrisjames.com>; EXT Lance Soderstrom <lance.soderstrom@katten.com>; lauren.eiten@katten.com; EXT Rachel Schwees <rachel.schwees@katten.com>; EXT Daniel Silver <DSilver@McCarter.com>; EXT Maliheh Zare <mzare@mccarter.com>; 'Kelly.Welsh@lw.com' <Kelly.Welsh@lw.com>; Alex.Grabowski@lw.com; Daniel.Brown@lw.com; EXT Daniel Taylor <DAT@skjlaw.com>; EXT Neal Belgam <NCB@skjlaw.com>; KENNETH.SCHULER@lw.com; Nichols, Chelsea <chnichols@mccarter.com>
**Cc:** Eagle Litigation <EagleLitigation@McCarter.com>; EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; EXT Wyley Proctor <wproctor@McCarter.com>
**Subject:** Eagle v. Apotex, 24-64; Eagle v. Slayback, 24-65; Eagle v. Baxter, 24-66

[EXTERNAL EMAIL]

Counsel,

As discussed at the meet and confer on March 18, 2025, regarding Defendants' RFP No. 31, Eagle provides the following information regarding the status of its productions containing U.S. license and settlement agreements concerning the patents-in-suit, related U.S. patents, and Eagle's liquid bendamustine products.

| License/Settlement | Bates No. | Status |
|---|---|---|
| Robert, LLC | EAGLEBEN-SA_00242303; EAGLEBEN-SA_00242343 | Produced August 8, 2024 |
| Cephalon/Teva | EAGLEBEN-SA_00072300 | Produced August 8, 2024 |
| Hospira | EAGLEBEN-SA_00344219 | Produced March 14, 2025 |
| Accord | EAGLEBEN-SA_00344174 | Produced March 14, 2025 |
| Accord | EAGLEBEN-SA_00344190 | Produced March 14, 2025 |
| Dr. Reddy's (DRL) | EAGLEBEN-SA_00333048 | Redacted version produced 12/6/2024; clearing third party confidentiality to remove redactions. Will produce by March 26, 2025. |
| Fresenius | | Clearing third party confidentiality. Will produce by March 26, 2025. |
| Aurobindo | | Clearing third party confidentiality. Will produce by March 26, 2025. |

The foregoing represents all U.S. license and settlement agreements concerning the patents-in-suit, related U.S. patents, and Eagle's liquid bendamustine products. Eagle does not intend to withhold any license or settlement agreement concerning the same.

Regarding RFP No. 39, Eagle notes that it has produced 2,953 documents that amounts to 134,366 pages of documents responsive to this request. This amounts to more pages than each Defendant's *entire* unique document production universe to date. As Defendants well know, this case has been the subject of extensive discovery dating back nearly a decade. Eagle asked Defendants to identify documents or categories of documents that it believes Eagle has failed to produce, and Defendants could only identify a single document. Meanwhile, that single document, Appendix E to the February 27, 2019 Opening Expert Report of Dr. Rodolfo Pinal, is already in possession of co-Defendants Apotex and Slayback because it is a report compiled by Defendants' expert in C.A. No. 17-1154-CFC, and was marked highly confidential by those co-Defendants

under that case's protective order.  Baxter can easily obtain a copy by speaking to its co-Defendants.  If Baxter is unable to obtain a copy from its co-Defendants, Eagle will look into whether it can produce a copy in these actions.

Based on the parties' correspondence to date, it appears Defendants would like Eagle to go on a fishing expedition through more than a decade's worth of documents housed by countless custodians and attempt to identify and produce "all documents referring or related to the role of sodium hydroxide in Belrapzo, Bendeka or *any* other Bendamustine Product." This request is overbroad, unduly burdensome, and not proportionate to the needs of the case.  Moreover, it is unclear to Eagle how documents related to the role of sodium hydroxide *in Eagle's* liquid bendamustine products is relevant to any issue in the case.  Eagle is willing to consider a compromise position from Defendants, but in the absence of Defendants' identification of specific deficiencies or a meaningfully narrowed request proportional to needs of these cases, Eagle maintains its position that it will not search for and produce additional responsive documents beyond the hundreds of thousands of pages it already produced.

Eagle is available for a further meet and confer should Defendants wish to discuss any specific deficiencies or narrowing of their request.

Best,
Wyley



**Wyley S. Proctor | Partner**
McCarter & English, LLP
265 Franklin Street | Boston, MA 02110

wproctor@mccarter.com | www.mccarter.com | V-Card
T 617.449.6529   M 617.530.0834

Boston | East Brunswick | Hartford | Indianapolis | Miami | Newark | New York
Philadelphia | Stamford | Trenton | Washington, DC | Wilmington

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.
This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT 2

## REDACTED IN ITS ENTIRITY

# EXHIBIT 3

## REDACTED IN ITS ENTIRITY

# EXHIBIT 4

## REDACTED IN ITS ENTIRITY

# EXHIBIT 5

## REDACTED IN ITS ENTIRITY

# EXHIBIT 6

## REDACTED IN ITS ENTIRITY

# EXHIBIT 7

## REDACTED IN ITS ENTIRITY

# EXHIBIT 8

## REDACTED IN ITS ENTIRITY

# EXHIBIT 9

## REDACTED IN ITS ENTIRITY

# EXHIBIT 10

## REDACTED IN ITS ENTIRITY

# EXHIBIT 11

## REDACTED IN ITS ENTIRITY

# EXHIBIT 12

## REDACTED IN ITS ENTIRITY

# EXHIBIT 13

## REDACTED IN ITS ENTIRITY

# EXHIBIT 14

## REDACTED IN ITS ENTIRITY

# EXHIBIT 15

## REDACTED IN ITS ENTIRITY

# EXHIBIT 16

## REDACTED IN ITS ENTIRITY

# EXHIBIT 17

## REDACTED IN ITS ENTIRITY

# EXHIBIT 18

## REDACTED IN ITS ENTIRITY

# EXHIBIT 19

## REDACTED IN ITS ENTIRITY

# EXHIBIT 20

# Dechert
## LLP

Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
+1 215 994 4000  Main
+1 215 994 2222  Fax
www.dechert.com

**JUDAH BELLIN**

Judah.Bellin@dechert.com
+1 215 994 2139  Direct
+1 215 994 2222  Fax

March 28, 2025

Wyley Proctor
McCarter & English
265 Franklin Street
Boston, MA 02110

**Re: *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et. al*, Case No. 24-cv-00064 (D. Del.); *Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC*, Case No. 24-cv-00065 (D. Del.); *Eagle Pharmaceuticals, Inc. v. Baxter Healthcare Corporation*, Case No. 1:24-cv-00066-JLH (D. Del.)**

Counsel,

I write on behalf of Defendants in response to Eagle's email dated March 21, 2025.

Eagle has not satisfied its obligations with respect to RFP No. 39.  Following the parties' narrowing, this Request seeks documents concerning the role of sodium hydroxide in Belrapzo, Bendeka, or any Bendamustine Product. The documents relate to a central issue in this case, one that Judge Hall identified during the parties' Markman hearing: whether the sodium hydroxide in liquid bendamustine formulations is part of those formulations' "pharmaceutically acceptable fluid."  *See* Markman Tr. 38-41.

Despite the relevance of these documents, Eagle admitted during the parties' March 18, 2025 meet and confer that it has not performed ***any*** searches to identify documents responsive to this Request. That admission alone confirms Eagle's failure to satisfy its discovery obligations.

Eagle's attempt to justify this failure fall flat. While Eagle insists that the scope of this Request is unclear, Eagle ignores that it requested the ***same discovery*** from Defendants.[1]  Moreover, this Request provides numerous examples of responsive documents, including documents that refer or relate to:

- "[T]he decision to include sodium hydroxide in BELRAPZO®, BENDEKA®, or any other Bendamustine Product."

---

[1] *See* Eagle Common Rog No. 2 ("Identify and describe with full particularity the role of sodium hydroxide in Your NDA Product and/or its manufacture…"); Eagle Common RFP No. 22 ("All documents that refer or relate to the use of sodium hydroxide to adjust the pH of polyethylene glycol for use in pharmaceutical drug products.")



March 28, 2025
Page 2

- "[H]ow and when sodium hydroxide is used in BELRAPZO®, BENDEKA®, or any other Bendamustine Product."

- "[T]he amounts of sodium hydroxide included in BELRAPZO®, BENDEKA®, or any other Bendamustine Product."

- "[A]ny excipients considered as alternatives to sodium hydroxide in BELRAPZO®, BENDEKA®, or any other Bendamustine Product."

- "[A]ny testing related to the inclusion of sodium hydroxide in BELRAPZO®, BENDEKA®, or any other Bendamustine Product."

*See* Common RFP No. 39.

Next, Eagle's March 21, 2025 email insists that it produced 2,953 documents "responsive to this request," but it did not identify a single purportedly "responsive" document in its production. Moreover, Eagle's newfound ability to identify "responsive" documents is at odds with Eagle's previous representations that identifying any such documents would be too burdensome. If Eagle's counsel used certain criteria to identify 2,953 responsive documents in its production, Eagle can use those same criteria to identify additional responsive documents in Eagle's corporate files.

Finally, Eagle improperly attempts to shift its discovery obligations to Defendants. During the parties' March 18 meet and confer and in Eagle's March 21 email, Eagle faults Defendants for not identifying specific responsive documents missing from Eagle's production. But Defendants do not know which unproduced responsive documents are in Eagle's possession—only Eagle does. And the responsibility for identifying these documents falls on Eagle, not Defendants.

Regardless, in the spirit of compromise, Defendants propose that Eagle search for documents referring or related to the role of sodium hydroxide in Belrapzo, Bendeka, any other liquid Bendamustine Product developed by Eagle. Further, while Eagle claims it is unable to determine how to search for these documents, Defendants have identified several custodians who appear likely to have relevant documents. Accordingly, Eagle should at minimum search any shared drives, lab notebooks, and the custodial files and emails for the following custodians and produce any responsive documents:[2]

---

[2] The collection timeline for each custodian corresponds to their tenure at Eagle (based on publicly available information).



March 28, 2025
Page 3

- **Srikanth Sundaram (former Eagle Chief Scientific Officer):** Dr. Sundaram was involved in numerous conversations regarding the role of sodium hydroxide in Eagle's liquid bendamustine product. *See, e.g.,* EAGLEBEN-CELERITY-00116384; EAGLEBEN-CELERITY-00121607.  And when former Eagle VP of Research and Development Charles Wescott was asked during his deposition about the "█████" of sodium hydroxide in Eagle's bendamustine formulation, Wescott testified that Dr. Sundaram "███████████."  EAGLEBEN-CELERITY-00294241 at 352.

  Dr. Sundaram's files should be searched from **January 2009-January 2013**.

- **James Romito (Eagle Sr. Director, Analytical Development):** Dr. Romito prepared the protocol for the "████████████████" in Eagle's liquid bendamustine formulation, including by providing instructions related to adding sodium hydroxide. *See, e.g.,* EAGLEBEN-CELERITY-00121607 at 607-608.  Dr. Romito also requested and reviewed the ███████████" documents for sodium hydroxide in Eagle's liquid bendamustine product.  *See, e.g.,* EAGLEBEN-SA_00166689 at 690.

  Dr. Romito's files should be searched from **January 2011-present.**

- **Jianyei Wu (former Eagle Senior Director, Pharmaceutical Development)**: Dr. Wu oversaw the manufacturing of Eagle's liquid bendamustine formulation, including with respect to adding sodium hydroxide.  *See, e.g.,* EAGLEBEN-CELERITY-00125536 at 537. He also oversaw the development of testing methods for Eagle's liquid bendamustine formulations and provided guidance regarding the addition of sodium hydroxide.  *See, e.g.,* EAGLEBEN-CELERITY-00149147.

  Dr. Wu's files should be searched from **January 2010-June 2013**.

- **Padam Sharma (former Eagle Senior Director, Injectable, Parenteral, Aseptic Processing, Sterile External Manufacturing, CMO)**: Dr. Sharma appears to have reviewed and approved the "███████████" for the sodium hydroxide used in Eagle's liquid bendamustine product; he also participated in meetings with Zydus related to the ingredients in Eagle's liquid bendamustine product (including NaOH).  *See, e.g.,* EAGLEBEN-SA_00150852 at 852-853.

  Dr. Sharma's files should be searched from **January 2011-January 2013**.



March 28, 2025
Page 4

- **Peter Grebow (former Eagle Vice President, Research and Development)**: Dr. Grebow was involved with discussions related to the addition of sodium hydroxide in Eagle's liquid bendamustine formulation. *See, e.g.,* EAGLEBEN-CELERITY-00116384; EAGELEBEN-CELERITY-00116439.

  Dr. Grebow's files should be searched from **January 1, 2013-December 31, 2017**.

Please confirm that Eagle agrees. If not, please provide your availability for a meet and confer next week.

Sincerely,

*/s/ Judah Bellin*

Judah Bellin

# EXHIBIT 21

# Dechert
### LLP

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

**JUDAH BELLIN**

Judah.Bellin@dechert.com
+1 215 994 2139 Direct
+1 215 994 2222 Fax

April 3, 2025

Wyley Proctor
McCarter & English
265 Franklin Street
Boston, MA 02110

**Re: *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et. al*, Case No. 24-cv-00064 (D. Del.); *Eagle Pharmaceuticals, Inc. v. Baxter Healthcare Corporation*, Case No. 1:24-cv-00066-JLH (D. Del.)**

Counsel,

I write on behalf of Baxter and Apotex. On March 31, 2025, Eagle announced a royalty purchase deal with "an entity that was provided capital by funds managed by Blue Owl Capital" to sell Eagle's royalty interest in annual net sales of Bendeka for $69 million. *See Eagle Pharmaceuticals Announces $69 Million Agreement to Monetize BENDEKA® Royalties*, Eagle Pharmaceuticals (March 31, 2025), https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-69-million-agreement-monetize. Under the public terms of the deal, "Eagle will receive $69 million before transaction costs as an upfront payment in exchange for a prespecified amount of Eagle's royalty interest for net sales of BENDEKA for the quarter ending December 31, 2024, and 100% of the royalty interest thereafter, up to an aggregate cap of up to 1.3 times the purchase price, depending on when the royalty cap is achieved, after which all future royalty payments from net sales of BENDEKA will revert back to Eagle." *Id.*

Baxter and Apotex are entitled to documents related to this royalty financing transaction, including, at minimum: (i) the executed transaction documents, including all associated schedules and attachments thereto, as well as any ancillary agreements arising from or related thereto; (ii) documents exchanged between Eagle, Blue Owl Capital, and/or the unnamed "party" (including any draft agreements, term sheets, financial/market analyses, valuations, summaries, presentations and/or forecasts/projections); (iii) all presentations, summaries, and analyses compiled on behalf of (or otherwise provided to) Eagle by consultants, advisors or other independent parties related to the transaction; (iv) any relevant communications between Eagle, Blue Owl Capital, and/or the unnamed "party"; and (v) all similar documents identified in categories (i)-(iv) exchanged between Eagle and any other potential purchasers for the royalty stream. These documents, which are relevant at least to damages, are responsive to numerous Common Requests for Production, including one or more of the following:



April 3, 2025
Page 2

- Common RFP No. 19 ("All documents concerning any strategic, business, or marketing plans or any competitive evaluations, market research, market analysis, promotion plans, or pricing strategies with respect to BELRAPZO ®, BENDEKA ®, or any other Bendamustine Product.")

- Common RFP No. 21 ("Documents sufficient to show Eagle's customers for BELRAPZO®, BENDEKA®, or any other Bendamustine Product, from initial launch through today, and to show the purchasing history of each customer by month, quarter, and year.")

- Common RFP No. 22 ("All documents concerning the market share of BELRAPZO®, BENDEKA®, or any other Bendamustine Product, by month, quarter, and year in any market, including but not limited to the markets for chemotherapy medications, bendamustine drug products, and liquid bendamustine drug products.")

- Common RFP No. 46 ("Any and all documents or reports reporting sales of Bendeka and royalty payments made by Teva regarding Bendeka ")

- Common RFP No. 52 ("All Documents and Communications Relating To any agreement or license, or amendments thereto, regarding any United States patent purporting to claim any Bendamustine Product, including reporting or submission of royalty payments or any other form of financial payment or receipt of funds dictated by the agreement or license.")

- Common RFP No. 53 ("All Documents and Communication with Third Parties Relating To any United States patent purporting to claim any Bendamustine Product, including without limitation the valuation of such patents, the valuation of a license to such patent, or the scope of such patents.")

- Common RFP No. 54 ("All Documents and Communications Relating To the Eagle-Teva Agreement, including the executed Eagle-Teva Agreement, any and all prior versions or drafts of the Eagle-Teva Agreement, and all Related Documents specifying negotiated terms and conditions or addressing rights to develop, supply, manufacture, distribute, promote or commercialize any Bendamustine Product in markets including, but not limited to North America.")

- Common RFP No. 55 ("All Communications with any Person Relating to the Eagle-Teva Agreement.")



April 3, 2025
Page 3

Please confirm by Friday, April 11, 2025, that Eagle will produce these documents. Otherwise, please provide your availability for a meet and confer next week.

Sincerely,

*/s/ Judah Bellin*

Judah Bellin

# EXHIBIT 22

**Chin, Michelle (CH)**

| | |
|---|---|
| **From:** | Proctor, Wyley <wproctor@McCarter.com> |
| **Sent:** | Thursday, May 1, 2025 5:40 PM |
| **To:** | Bellin, Judah; EXT Robyn Ast-Gmoser; EXT Christopher Ferenc; EXT Ajay Kayal; EXT Andrew Miller; EXT Constance Huttner; 'Dtaylor@skjlaw.com'; Lief, Jason A.; 'mdaughton@skjlaw.com'; 'nbelgam@skjlaw.com'; Antons, Amanda; 'amoshos@potteranderson.com'; Dechert-Bendamustine; Marley, Jacinda; 'msingleton@potteranderson.com'; Black, Martin; 'mshaw@potteranderson.com'; Leibowitz, Noah; EXT Phil Rovner; EXT Cortlan Hitch; EXT Deepro Mukerjee; 'EGreek@morrisjames.com'; EXT Jitty Malik; EXT Joe Janusz; 'khunt@morrisjames.com'; EXT K Dorsney; EXT Lance Soderstrom; 'lauren.eiten@katten.com'; EXT Rachel Schweers; Silver, Daniel; Zare, Maliheh; Welsh, Kelly (DC); Grabowski, Alex (CH); Brown, Daniel (DC-NY); EXT Daniel Taylor; EXT Neal Belgam |
| **Cc:** | Eagle Litigation; #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM |
| **Subject:** | Re: Bendamustine Litigations:  Buxton Deposition |

Counsel:

==Eagle agrees to Defendants' proposal of a 7 hour Buxton deposition over two days if Defendants agree that they will not submit Dr. Buxton to duplicative examinations.==  Please also confirm that Defendants will not limit the depositions of their witnesses to less than 7 hours.  If Defendants agree, please prepare a stipulation for Eagle's review.

Regarding Magistrate Judge Burke's order to meet and confer, our lead counsel is unavailable until Monday, May 5. To that end, please let us know if Defendants would be amenable to seeking an extension of all deadlines set forth in D.I. 114, as well as Defendants' opening letter regarding discovery disputes, to Wednesday, May 7, with a commensurate extension of the response and reply briefing to May 14th and May 19th.

We are available to meet and confer on Monday, May 5 between 9:30 – 12 pm ET.

Best,
Wyley

---

**From:** Bellin, Judah <Judah.Bellin@dechert.com>
**Sent:** Thursday, May 1, 2025 5:56:20 PM
**To:** Proctor, Wyley <wproctor@McCarter.com>; EXT Robyn Ast-Gmoser <rast-gmoser@windelsmarx.com>; EXT Christopher Ferenc <christopher.ferenc@katten.com>; EXT Ajay Kayal <akayal@windelsmarx.com>; EXT Andrew Miller <amiller@windelsmarx.com>; EXT Constance Huttner <chuttner@windelsmarx.com>; 'Dtaylor@skjlaw.com' <Dtaylor@skjlaw.com>; Lief, Jason A. <jlief@windelsmarx.com>; 'mdaughton@skjlaw.com' <mdaughton@skjlaw.com>; 'nbelgam@skjlaw.com' <nbelgam@skjlaw.com>; Antons, Amanda <Amanda.Antons@dechert.com>; 'amoshos@potteranderson.com' <amoshos@potteranderson.com>; Dechert-Bendamustine <Dechert-Bendamustine@dechert.com>; Marley, Jacinda <jacinda.marley@dechert.com>; 'msingleton@potteranderson.com' <msingleton@potteranderson.com>; Black, Martin <martin.black@dechert.com>; 'mshaw@potteranderson.com' <mshaw@potteranderson.com>; Leibowitz, Noah <Noah.Leibowitz@dechert.com>; EXT Phil Rovner <provner@potteranderson.com>; EXT Cortlan Hitch <CHitch@morrisjames.com>; EXT Deepro Mukerjee

# EXHIBIT 23

## Chin, Michelle (CH)

| | |
|---|---|
| **From:** | Proctor, Wyley <wproctor@McCarter.com> |
| **Sent:** | Wednesday, April 30, 2025 9:46 AM |
| **To:** | Ast-Gmoser, Robyn; 'Bellin, Judah'; 'EXT Christopher Ferenc'; Kayal, Ajay; Miller, Andrew; Huttner, Constance; 'Dtaylor@skjlaw.com'; Lief, Jason A.; 'mdaughton@skjlaw.com'; 'nbelgam@skjlaw.com'; 'Antons, Amanda'; 'amoshos@potteranderson.com'; 'Dechert-Bendamustine'; 'Marley, Jacinda'; 'msingleton@potteranderson.com'; 'Black, Martin'; 'mshaw@potteranderson.com'; 'Leibowitz, Noah'; Phil Rovner; 'EXT Cortlan Hitch'; 'EXT Deepro Mukerjee'; 'EGreek@morrisjames.com'; 'EXT Jitty Malik'; 'EXT Joe Janusz'; 'khunt@morrisjames.com'; Ken Dorsney; 'EXT Lance Soderstrom'; 'lauren.eiten@katten.com'; 'EXT Rachel Schweers'; Silver, Daniel; Zare, Maliheh; Welsh, Kelly (DC); Grabowski, Alex (CH); Brown, Daniel (DC-NY); 'EXT Daniel Taylor'; 'EXT Neal Belgam' |
| **Cc:** | Eagle Litigation; #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; Proctor, Wyley |
| **Subject:** | RE: Bendamustine Litigations:  Buxton Deposition |

Counsel,

As we already explained on the parties' meet and confer, we do not agree that an extended deposition is appropriate or consistent with the scheduling order, given that Dr. Buxton is a third-party witness who cannot sit for a full day and has already been deposed about this same development work. <mark>We maintain our prior compromise offer of six hours over two days.</mark>

Best,
Wyley



**Wyley S. Proctor | Partner**
McCarter & English, LLP
265 Franklin Street | Boston, MA 02110

wproctor@mccarter.com | www.mccarter.com | V-Card
T 617.449.6529   M 617.530.0834

Boston | East Brunswick | Hartford | Indianapolis | Miami | Newark | New York
Philadelphia | Stamford | Trenton | Washington, DC | Wilmington

---

**From:** Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
**Sent:** Tuesday, April 29, 2025 3:42 PM
**To:** Proctor, Wyley <wproctor@McCarter.com>; 'Bellin, Judah' <Judah.Bellin@dechert.com>; 'EXT Christopher Ferenc' <christopher.ferenc@katten.com>; Kayal, Ajay <akayal@windelsmarx.com>; Miller, Andrew <amiller@windelsmarx.com>; Huttner, Constance <chuttner@windelsmarx.com>; 'Dtaylor@skjlaw.com' <Dtaylor@skjlaw.com>; Lief, Jason A. <jlief@windelsmarx.com>; 'mdaughton@skjlaw.com' <mdaughton@skjlaw.com>; 'nbelgam@skjlaw.com' <nbelgam@skjlaw.com>; 'Antons, Amanda' <Amanda.Antons@dechert.com>; 'amoshos@potteranderson.com' <amoshos@potteranderson.com>; 'Dechert-Bendamustine' <Dechert-Bendamustine@dechert.com>; 'Marley, Jacinda' <jacinda.marley@dechert.com>; 'msingleton@potteranderson.com' <msingleton@potteranderson.com>; 'Black, Martin' <martin.black@dechert.com>; 'mshaw@potteranderson.com' <mshaw@potteranderson.com>; 'Leibowitz, Noah' <Noah.Leibowitz@dechert.com>; Phil Rovner <provner@potteranderson.com>; 'EXT Cortlan Hitch' <CHitch@morrisjames.com>; 'EXT Deepro Mukerjee'

# EXHIBIT 24

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTELLAS PHARMA INC., ASTELLAS IRELAND CO., LTD. and ASTELLAS PHARMA GLOBAL DEVELOPMENT, INC., | ) ) ) ) | Case No. 23-819-GBW-CJB |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| LUPIN LTD., LUPIN PHARMACEUTICALS, INC., ZYDUS PHARMACEUTICALS (USA) INC., and ZYDUS LIFESCIENCES LIMITED, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## STIPULATION AND [PROPOSED] ORDER REGARDING PRIOR DISCOVERY

This stipulation is entered into by and between Plaintiffs Astellas Pharma Inc., Astellas Ireland Co., Ltd., and Astellas Pharma Global Development, Inc. (collectively, "Plaintiffs" or "Astellas") and Defendants Zydus Pharmaceuticals (USA) Inc. and Zydus Lifesciences Limited (collectively "Zydus"), and Lupin Ltd. and Lupin Pharmaceuticals, Inc. (collectively, "Lupin") (Astellas, Zydus, and Lupin collectively "the Parties").[i]

WHEREAS, Astellas filed complaints for patent infringement against Defendants related to their Abbreviated New Drug Applications ("ANDAs") for mirabegron extended-release tablets that were consolidated as *Astellas Pharma Inc. v. Actavis Elizabeth LLC*, Civil Action No. 16-905-JFB-CJB (Consolidated) ("the 16-905 Action"), which has now been resolved, and *Astellas Pharma Inc. v. Sandoz Inc.*, Civil Action No. 20-1589-JFB-CJB ("the 20-1589 Action"), which is currently on appeal to the United States Court of Appeals for the Federal Circuit.

WHEREAS, Astellas filed a complaint in this action for patent infringement against Defendants concerning the same ANDAs related to a different patent on July 28, 2023, and a Scheduling Order has been entered (*see* D.I. 50);

WHEREAS, Plaintiffs and Defendants seek to streamline discovery and avoid any unnecessary duplication or burdens associated with documents, testimony, and information that were previously produced in the 16-905 Action and 20-1589 Action;

IT IS HEREBY STIPULATED AND AGREED by and between the Parties, through their undersigned counsel, and subject to the approval of the Court, that:

1.      All documents produced by the Astellas, Zydus and Lupin in the 16-905 Action and 20-1589 Action may be used in discovery, preliminary injunction proceedings, and at trial only to the extent permissible under the Federal and Local Rules of Civil Procedure, Federal Rules of Evidence, and the Stipulated Protective Order (D.I. 47).

2.      The expert reports, responses to interrogatories, and responses to requests for admission provided by Astellas, Zydus, and Lupin in the 16-905 Action and 20-1589 may be used in discovery, preliminary injunction hearings, and at trial only to the extent permissible under the Federal and Local Rules of Civil Procedure, Federal Rules of Evidence, and the Stipulated Protective Order (D.I. 47).

3.      The testimony provided by employees, inventors, and corporate representatives of Astellas, Zydus, and Lupin at the depositions taken in the 16-905 Action and 20-1589 Action may be used in discovery, preliminary injunction proceedings, and at trial only to the extent permissible under the Federal and Local Rules of Civil Procedure, Federal Rules of Evidence, and the Stipulated Protective Order (D.I. 47). To the extent the Parties present an individual or Rule 30(b)(6) witness who has previously provided

deposition testimony in the 16-905 Action or 20-1589 Action, the Parties shall endeavor in good faith not to re-ask questions that were fully answered in the 16-905 Action or 20-1589 Action by that same witness; provided, however, that parties may inquire about any topics for the inquiring party believes in good faith are relevant to the specific issues in this action for which no or incomplete testimony was provided in the 16-905 Action or 20-1589 Action. To the extent a party believes that another party has violated this Stipulation, the aggrieved party may raise that issue with the Court after the deposition has concluded, but it shall not be a valid basis to instruct the witness not to answer the question or to terminate the deposition. The Parties agree that any disputes arising hereunder shall be resolved as routine discovery disputes, and that neither party shall seek a finding of contempt of a Court Order for discovery taken in good faith.

4.      The Parties agree and stipulate that the foregoing does not limit, modify, or abrogate the number of requests for production, requests for admission, or interrogatories that the parties may propound, individually or jointly, under the Scheduling Order (D.I. 50).  The parties further agree and stipulate that the foregoing does not limit, modify, or abrogate paragraph 7(b)(i) of the Scheduling Order (D.I. 50), which provides that: "The parties agree and stipulate that all documents and things produced by the parties in this Action during discovery in Civil Action Nos. 16-905-JFB-CJB (Consolidated) and 20-1589-JFB-CJB (Consolidated) may be used in this Action as if produced in this Action originally."

Dated: January 19, 2023

MCCARTER & ENGLISH, LLP

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

PHILLIPS, MCLAUGHLIN & HALL, P.A.

/s/ *John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
1200 N. Broom St
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Lupin Ltd. and*
*Lupin Pharmaceuticals, Inc.*

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ *Pilar G. Kraman*
Pilar G. Kraman (#5199)
Alexis N. Stombaugh (#6702)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com

*Attorneys for Zydus Pharmaceuticals (USA) Inc.*
*and Zydus Lifesciences Limited*

---

[i] This Stipulation and [Proposed] Order does not apply to any discovery produced or elicited from plaintiffs or defendants that were parties to the 16-905 Action or 20-1589 Action other than Astellas, Zydus, and Lupin. However, nothing in this stipulation shall prevent discovery from the 16-905 Action, the 20-1589 Action or any other prior action from being used in this action as permitted under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and/or the Local Civil Rules of this Court.

# EXHIBIT 25



## Eagle Pharmaceuticals Announces $69 Million Agreement to Monetize BENDEKA® Royalties

March 31, 2025

WOODCLIFF LAKE, N.J., March 31, 2025 (GLOBE NEWSWIRE) -- Eagle Pharmaceuticals, Inc. (OTCMKTS: EGRX) (the "Company" or "Eagle") today announced that it has entered into a royalty purchase agreement with an entity that was provided capital by funds managed by Blue Owl Capital Inc. ("Blue Owl") (the "Agreement"), dated March 31, 2025, to sell the royalty interest in annual net sales of BENDEKA® (bendamustine hydrochloride injection) in the United States for an aggregate purchase price of $69 million before transaction costs.

BENDEKA is a ready-to-dilute liquid, low-volume (50 mL) and short-time ten-minute infusion formulation of bendamustine. It is approved for the treatment of chronic lymphocytic leukemia ("CLL") and for the treatment of indolent B-cell non-Hodgkin lymphoma ("NHL") that has progressed during or within six months of treatment with rituximab or a rituximab-containing regimen.

"We are pleased to reach this agreement. Blue Owl's capital support for the royalty interest of BENDEKA underscores the value of this asset as an important therapy for the treatment of CLL and NHL. This transaction will provide immediate, non-dilutive capital to Eagle," said Christopher Krawtschuk, Chief Financial Officer of Eagle.

Under the terms of the agreement, Eagle will receive $69 million before transaction costs as an upfront payment in exchange for a prespecified amount of Eagle's royalty interest for net sales of BENDEKA for the quarter ending December 31, 2024, and 100% of the royalty interest thereafter, up to an aggregate cap of up to 1.3 times the purchase price, depending on when the royalty cap is achieved, after which all future royalty payments from net sales of BENDEKA will revert back to Eagle.

The Company plans to use the net proceeds from the transaction to repay in full its existing Third Amended and Restated Credit Agreement, dated November 1, 2022, among Eagle, the lenders party thereto and JPMorgan Chase Bank, N.A., as administrative agent, as amended to date (the "Credit Agreement"), including the remaining balance under a drawn term loan of $27.5 million, as well as $25 million under a revolving credit facility. The remaining proceeds are expected to be used for general corporate purposes.

The Company is continuing to invest in its R&D programs, including CAL02, which is a novel first-in-class anti-virulence agent being developed for the treatment of severe community-acquired bacterial pneumonia as an add on to standard of care therapy, and EA 114, which is a novel and proprietary formulation of Fulvestrant being developed for the treatment of hormone-receptor-positive (HR+) metastatic breast cancer.

Armentum Partners, LLC served as Eagle's financial advisor on the transaction, and Latham & Watkins LLP served as counsel to Eagle. Gibson, Dunn & Crutcher LLP acted as counsel to Blue Owl.

### About Eagle Pharmaceuticals, Inc.

Eagle is a fully integrated pharmaceutical company with research and development, clinical, manufacturing and commercial expertise. Eagle is committed to developing innovative medicines that result in meaningful improvements in patients' lives. Eagle's commercialized products include PEMFEXY®, RYANODEX®, BENDEKA®, BELRAPZO®, TREAKISYM® (Japan), and BYFAVO® and BARHEMSYS® through its wholly owned subsidiary Acacia Pharma Inc. Eagle's oncology and critical care pipeline includes product candidates with the potential to address underserved therapeutic areas across multiple disease states, and the company is focused on developing medicines with the potential to become part of the personalized medicine paradigm in cancer care. Additional information is available on Eagle's website at www.eagleus.com.

### Forward-Looking Statements

This press release contains "forward-looking statements" regarding future events or our future financial performance. Forward-looking statements are statements that are not historical facts. Words and phrases such as "anticipated," "forward," "will," "would," "could," "may," "intend," "remain," "regain," "maintain," "potential," "prepare," "expected," "believe," "plan," "seek," "continue," "goal," "estimate," and similar expressions are intended to identify forward-looking statements. These statements include, but are not limited to, statements with respect to the Company's use of proceeds from the transaction; the potential benefits and usefulness of CAL02 and EA 114, including their potential to treat severe community-acquired bacterial pneumonia and hormone-receptor-positive (HR+) metastatic breast cancer, respectively; expectations with respect to clinical trials including timing and results thereof; the potential of product candidates to address underserved therapeutic areas across multiple disease state; and expectations with respect to the sufficiency of the Company's cash resources, including continued investment in its R&D programs. All such statements are subject to certain risks and uncertainties, many of which are difficult to predict and generally beyond the Company's control, which could cause actual results to differ materially from those expressed in, or implied or projected by, the forward-looking information and statements. Such risks and uncertainties include, but are not limited to: the completion of the review and preparation of the Company's financial information and internal control over financial reporting and disclosure controls and procedures and the timing thereof; the discovery of additional information; further delays in the Company's financial reporting, including as a result of unanticipated factors; the Company's ability to obtain additional financing and the timing and potential terms thereof; whether the objectives of the Company's review of potential financing and other alternatives will be achieved, the terms, structure, benefits and costs of any arrangement or transaction resulting therefrom, and whether any transaction will be consummated at all; the extent to which the rights under the Company's stockholder rights agreement become exercisable, if at all; the risk that the Company's review of potential financing and other alternatives and its announcement could have an adverse effect on the ability of the Company to retain customers and retain and hire key personnel and maintain relationships with customers, suppliers, employees, stockholders and other relationships and on its operating results and business generally; the risk that the Company's review of potential financing and other alternatives could divert the attention and time of the Company's management; the costs resulting from the review of potential financing and other alternatives; the risk of the Company potentially seeking protection under bankruptcy laws; the possibility that the Company will be unable to re-list its common stock on the Nasdaq or another exchange and, if re-listed, the possibility that the Company thereafter will be unable to comply with the listing rules of such exchange; the limitations on trading of the Company's common stock related to the Company's trading on the OTC Expert Market; the impact on the price of the Company's common stock and the Company's reputation; the Company's ability to remediate material weaknesses in its internal control over financial reporting; the Company's ability to recruit and hire a new Chief Executive Officer and retain key personnel; the ability of the Company to realize the anticipated benefits of its plan

designed to improve operational efficiencies and realign its sales and marketing expenditures and the impacts thereof; the Company's reliance on third parties to manufacture commercial supplies of its products and clinical supplies of its product candidates; the impacts of geopolitical factors such as the conflicts between Russia and Ukraine and Hamas, Iran and Israel; delay in or failure to obtain regulatory approval of the Company's or its partners' product candidates and successful compliance with Federal Drug Administration, European Medicines Agency and other governmental regulations applicable to product approvals; changes in the regulatory environment; the uncertainties and timing of the regulatory approval process; whether the Company can successfully market and commercialize its products; the success of the Company's relationships with its partners; the outcome of litigation and other legal proceedings and the risk of additional litigation and legal proceedings, including with respect to the matters referenced herein; the strength and enforceability of the Company's intellectual property rights or the rights of third parties; competition from other pharmaceutical and biotechnology companies and competition from generic entrants into the market; unexpected safety or efficacy data observed during clinical trials; clinical trial site activation or enrollment rates that are lower than expected; the risks inherent in drug development and in conducting clinical trials; risks inherent in estimates or judgments relating to the Company's critical accounting policies, or any of the Company's estimates or projections, which may prove to be inaccurate; and unanticipated factors in addition to the foregoing that may impact the Company's financial and business projections and may cause the Company's actual results and outcomes to materially differ from its estimates and projections. Readers are cautioned not to place undue reliance on these forward-looking statements. All forward-looking statements contained in this press release speak only as of the date on which they were made. Except to the extent required by law, the Company undertakes no obligation to update such statements to reflect events that occur or circumstances that exist after the date on which they were made.

**Investor Relations Contact**

Lisa M. Wilson
T: 212-452-2793
E: lwilson@insitecony.com