# EXHIBIT 22

REDACTED IN ITS ENTIRITY

# EXHIBIT 23



| Bendamustine Inj 505b2 | API | |
| --- | --- | --- |
| | Conversion Cost | |
| | Freight | |
| | Packaging | |

# EXHIBIT 24

REDACTED IN ITS ENTIRITY

# EXHIBIT 25

REDACTED IN ITS ENTIRITY

# EXHIBIT 26

REDACTED IN ITS ENTIRITY

# EXHIBIT 27

# Katten

**525 W. Monroe Street
Chicago, IL 60661-3693
+1.312.902.5200 tel
katten.com**

**LAUREN EITEN**
lauren.eiten@katten.com
+1.312.902.5268 direct
                    fax

April 25, 2025

<u>VIA EMAIL</u>

Maliheh Zare
MCCARTER & ENGLISH, LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801

Alex Grabowski
LATHAM & WATKINS
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

*Re:*   *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al.*, C.A. No. 24-64-JLH (D. Del.) – Discovery Disputes

Counsel:

We write in response to your April 16, 2025 letter and the parties' April 8, 2025 meet and confer ("Meet and Confer").

## I. Eagle's Responses and Objections to Defendants' First Set of Request for Production

We have reviewed Eagle's responses to Defendants' First Set of Request for Production and Eagle's document production, and we have identified several remaining deficiencies as set forth below. We request supplementation of your production. If you believe supplementation of discovery is not required, we request a meet and confer for the week of April 28.

### a) RFP Nos. 16-20, 22-23, and 48

As discussed during the parties' April 8, 2025 meet and confer, documents responsive to these requests are relevant to several issues in the case, including damages. As previously discussed, at least the following categories of documents are contemplated by these requests: (i) strategy documents such as brand plans, long-range planning document, market research, SWOT analyses, etc.; (ii) prescription and sales data from IQVIA/Symphony Health for bendamustine products and any of their potential therapeutic alternatives; (iii) surveys of physicians and patients regarding attitudes, experiences, and uses of bendamustine products; (iv) financial sales projections; and (v) documents describing marketing efforts (e.g., commercialization plans, marketing team analyses, communications with customers, etc.). On April 7, 2025, Eagle produced a limited number of

# Katten

{name}|\n
April 25, 2025
Page 2

brand strategy and marketing documents responsive to these requests, including at least the following responsive documents:

| | | |
|---|---|---|
| EAGLEBEN-SA_00344354 | | 10/11/23 |
| EAGLEBEN-SA_00344370 | | 12/11/2024 |
| EAGLEBEN-SA_00344388 | | Date Unknown |
| EAGLEBEN-SA_00344399 | | Date Unknown |
| EAGLEBEN-SA_00344400 | | 3/5/2024 |
| EAGLEBEN-SA_00344611 | | 3/22/2023 |
| EAGLEBEN-SA_00344763- EAGLEBEN-SA_00345610 | Eagle 10Ks | 2018-2021 |

Eagle's production remains deficient. Notably, Eagle's production suggests that additional responsive documents likely exist. For example, Eagle produced certain "Q1" versions of documents but not other versions from different quarters. *See, e.g.*, EAGLEBEN-SA_00344611. Similarly, the limited brand plan documents produced only go back as far ▓▓▓. Apotex is entitled to receive all brand strategy and marketing documents from at least 2021 when Eagle first sued Apotex in connection with NDA No. 215033. As you know, Apotex defeated Eagle's claims of infringement at trial in September 2022, which was upheld on appeal, and subsequently launched its product. Similarly, in December 2022, several generic bendamustine powder products entered the market, which are referenced throughout the documents already produced. *See, e.g.*, EAGLEBEN-SA_00344611; EAGLEBEN-SA_00344400 (identifying ▓▓▓ ▓▓▓). Accordingly, Eagle's communications and documents regarding its brand strategy before, during, and after these events are relevant to at least Eagle's damages theories including lost profits and price erosion. Indeed, Apotex has not been able to identify a single email communication produced by Eagle in these time frames regarding these events, despite Eagle's contentions regarding their relevance to Eagle's sales of its bendamustine products. Apotex is entitled to discovery into these. Please confirm that Eagle will produce all versions of its brand strategy documents (or similarly titled documents) regarding its bendamustine products from 2021 to present day and any related communications by April 30.

In its April 17 letter, Eagle confirms it has produced all accessible IQVIA documents. Please also confirm Eagle does not have access to any prescription and sales data from Symphony Health by April 30.



# Katten

{name}|\n
April 25, 2025
Page 3

While Apotex appreciates Eagle confirming it ▉▉▉▉ reach out to doctors and/or patients regarding their experiences, please confirm Eagle does not have any patient and/or physician surveys in their possession, custody or control. For example, does a third party conduct patient or physician surveys on its behalf and Eagle would have these surveys in its possession and/or has Eagle reached out to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ for any such surveys? Please provide confirmation by April 30.

Additionally, we have still not been able to identify any "documents describing marketing efforts (e.g., commercialization plans, marketing team analyses, communications with customers, etc.)" in Eagle's production even though Eagle implements a comprehensive SalesForce database that can track "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" with customers. *See*, *e.g.*, EAGLEBEN-SA 00344486. Indeed, Apotex has not received any information from Eagle to date that tracks the marketing expenditures regarding the promotion and sale of its bendamustine products. Accordingly, please confirm that Eagle will produce all its commercialization plans and relevant marketing documents from its SalesForce database by April 30.

Further, the documents produced on April 7 referenced additional responsive documents that have not been produced in this case. For example, the documents reference contracts between Eagle and a third party (*e.g.*, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉). *See, e.g.*, EAGLEBEN-SA_00344354; EAGLEBEN-SA_00340052; EAGLEBEN-SA_00340050; and EAGLEBEN-SA_00344400. These agreements are responsive to RFP No. 19, which seeks contracts concerning any strategic, business, or marketing plans with respect to BELRAPZO®, BENDEKA®, or any other Bendamustine Product. Accordingly, please confirm that Eagle will produce by April 30 copies of these agreements, including any draft agreements exchanged between the contracting parties and communications regarding the same.

    b) **RPF No. 21**

Eagle's April 7 production also revealed that Eagle's response to RFP 21 is deficient. For example, Eagle has failed to produce customer contracts it has entered into for its bendamustine products. For example, the ▉▉▉▉▉▉▉▉▉▉▉▉ presentation produced by Eagle identifies several customer contracts by name and contract ID (*e.g.*, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉). *See, e.g.*, EAGLEBEN-SA_00344400; EAGLEBEN-SA_00344354; EAGLEBEN-SA_00344466; and EAGLEBEN-SA_00344370. Each of these contracts contains information relevant and proportional to the damages theories raised by Eagle in this case. Accordingly, please confirm that Eagle will produce by April 30 copies of every customer agreement entered into by Eagle concerning its bendamustine products and a copy of the underlying database indicated on EAGLEBEN-SA_00344466-EAGLEBEN-SA_00344467.

# Katten

{name}|\n
April 25, 2025
Page 4

  c) **RFP No. 41**

As discussed during the meet and confer, and as confirmed by Eagle's recently produced documents, Eagle provides one or more patient assistance programs regarding its bendamustine products. *See, e.g.*, EAGLEBEN-SA_00333264. Further, Eagle's recently produced documents suggest Eagle also provides one or more provider support programs. *See, e.g.,* EAGLEBEN-SA_00344370. Please confirm that Eagle will produce all documents, not just documents from ▇▇▇▇▇▇▇ onward, relating to its patient assistance programs and/or provider support programs by April 30.

**RFP Nos. 54-55, 57-58, and 60-61**

As discussed during the parties' April 8, 2025 meet and confer, Apotex agreed to narrow the scope of these requests to joint steering committee meeting minutes and commercialization plans. In its April 17 letter, Eagle represents it will produce "a few meeting agenda from 2023-2024." This response is deficient for two reasons. First, Apotex is entitled to receive all joint steering committee documents from at least 2021 when Eagle first sued Apotex in connection with NDA No. 215033. Second, Apotex's request is not limited to agendas. Please confirm that Eagle will produce all joint steering committee agendas and minutes from 2021 to present day by April 30.

  II. **Eagle's Supplemental Objections and Responses to Apotex's First Set of Interrogatories**

Eagle's initial and supplemented responses to Apotex's First Set of Interrogatories Nos. 1, 2, 5, and 8 remain deficient.

  a) **Interrogatory No. 1**

As to Interrogatory No. 1, Eagle's supplemental identification of documents pursuant to Fed. R. Civ. P. 33(d) does not fulfill its obligations under the Federal Rules. For example, none of the documents provide Eagle's plan to seek lost profits, including at least due to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ caused by Apotex's alleged infringement; the time period for when it will seek lost profits damages; and the facts Eagle's experts plan to rely on to support their calculation of the total damages owed by Apotex pursuant to Eagle's lost profits damages model. Eagle cannot withhold this information until the disclosure of expert reports. ==Apotex is entitled to discovery regarding the facts that support Eagle's damages theories in this case now, so that it may explore them during depositions in the fact discovery phase of the case. *See Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2017 WL 11558096, at *8 (D. Del. Dec. 11, 2017)== ("Defendant was entitled to learn something about the facts that Plaintiffs' damages expert would

# Katten

{name}|\n
April 25, 2025
Page 5

be relying upon prior to being served with the [Expert] Report, so that those facts could then be vetted in discovery."). Moreover, Eagle identifies large swaths of documents that presumably support its wide-ranging damages theories yet fails to provide any explanation as to how these documents support Eagle's contentions. As the party claiming damages, Eagle bears the burdens of production and persuasion as to these issues. Rule 33(d) is unavailable to Eagle in this context because the burden of deriving or ascertaining the answer to Apotex's interrogatory from the multitude of documents cited by Eagle is not the substantially the same for either party. Eagle's continued failure to support its expansive damages contentions only works to prejudice Apotex by depriving it of the ability to explore the veracity of Eagle's damages claims during fact depositions. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

    b) **Interrogatory No. 2**

As to Interrogatory No. 2, Eagle's supplemental identification of documents pursuant to Fed. R. Civ. P. 33(d) does not address the deficiencies previously raised by Apotex. For example, none of the documents provide Eagle's contention for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Eagle cannot withhold this information until the disclosure of expert reports. Apotex is entitled to discovery regarding the facts that support Eagle's damages theories in this case now. *Id.* Similarly, it is unclear which documents identified pursuant to Rule 33(d) pertain to the specific damages contentions provided by Eagle. For example, Eagle identifies large swaths of documents that presumably support its wide-ranging damages theories yet fails to provide any explanation as to how these documents support Eagle's contentions. As the party claiming damages, Eagle bears the burdens of production and persuasion as to these issues. Rule 33(d) is unavailable to Eagle in this context because the burden of deriving or ascertaining the answer to Apotex's interrogatory from the multitude of documents cited by Eagle is not the substantially the same for either party. Eagle's continued failure to support its expansive damages contentions only works to prejudice Apotex by depriving it of the ability to explore the veracity of Eagle's damages claims during fact depositions. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

    c) **Interrogatory No. 5**

Eagle failed to provide any supplemental response to Interrogatory No. 5. Eagle's initial response to this interrogatory is and remains deficient. As noted in Apotex's February 28, 2025 to Eagle's counsel, Eagle has provided no factual bases to support its contention that it is entitled to injunctive relief. For example, Eagle must identify factual support for its contentions that: (i) "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"; (ii) "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"; and (iii) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

# Katten

{name}|\n
April 25, 2025
Page 6

███████████████████████████████." *See* 2025.02.28 – Apotex Discovery Deficiency Letter. Full factual bases for each of Eagle's damages theories are plainly relevant. Eagle must provide them. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

### d) Interrogatory No. 8

As to Interrogatory No. 8, Eagle's supplemental response remains deficient because Eagle exclusively relied on identification of documents pursuant to Fed. R. Civ. P. 33(d), and none of the documents Eagle cited included any communications among Eagle employees regarding the entry of the generic bendamustine products. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

### III. Apotex's Responses and Objections to Eagle's Requests for Production

### a) RFP Nos. 45, 46, and 55

Apotex is compiling supplemental financial information that it anticipates producing by May 2.

### b) RFP No. 41

Apotex is collecting responsive documents and anticipates producing by May 2.

### c) RFP No. 52

After a reasonable search, Apotex has not identified any "materials used to train its sales team" or "any materials that the sales team uses to market and promote" its bendamustine products that have not already been produced in this case.

### d) RFP Nos. 47-49, 54, and 56

Apotex is compiling supplemental pricing documents that it anticipates producing by May 2.

### e) RFP No. 57

Apotex's selection of Mr. Michael Bohling and Mr. David Link as custodians for the ESI search agreed upon by the parties was appropriate because these individuals are the persons within Apotex that are most knowledgeable regarding the "sale, marketing, pricing and/or promotion" of Apotex's bendamustine products. As previously discussed, Apotex has previously produced all non-privileged documents uncovered from this search. Apotex further responds that it does not employ a "sales force" for its bendamustine products, and thus, there are no such custodians for additional searching.

# Katten

{name}|\n
April 25, 2025
Page 7

  **f) RFP Nos. 33 and 37**

Apotex does not maintain the requested organizational charts. Apotex is reviewing the personnel files of listed individuals for any CVs and, if they exist, will produce the same.

  **g) RFP No. 34**

Apotex has conducted a reasonable search for the requested meeting minutes. No documents responsive to this request exist.

  **h) RFP No. 42**

Apotex is collecting this information and will provide early next week.

* * * *

For the reasons set forth above, supplementation is necessary by April 30, 2025, so that Apotex can adequately prepare for the noticed depositions in this case. If Eagle is unable, or unwilling to supplement any of the discovery identified above, please provide your availability for a meet and confer the week of April 28.

Sincerely,

*Lauren Eiten*

Lauren Eiten

# EXHIBIT 28

REDACTED IN ITS ENTIRITY