# EXHIBIT A

# UNREDACTED PUBLIC VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARMONY BIOSCIENCES, LLC, BIOPROJECT SOCIÉTÉ CIVILE DE RECHERCHE and BIOPROJECT PHARMA SAS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 23-1286-JLH-SRF |
| v. | ) ) ) | |
| LUPIN LIMITED, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM ORDER

At Wilmington this **12th** day of **December, 2025**, the court having considered the parties' discovery dispute letter submissions and associated filings (D.I. 433; D.I. 434; D.I. 435; D.I. 437; D.I. 438; D.I. 439), IT IS ORDERED that Defendants' motion to compel the production of correspondence between Dr. Robert Wenslow and Dr. Michael Hanrahan and Plaintiffs' motion to strike portions of the expert reports and deposition testimony of Dr. Michael Zaworotko, which were raised in the pending joint motion for teleconference to resolve discovery dispute, (D.I. 427), are DENIED without prejudice for the following reasons:

1. **Background.** Plaintiffs Harmony Biosciences, LLC, Harmony Biosciences Management, Inc., Bioprojet Société Civile de Recherche, and Bioprojet Pharma SAS (collectively, "Plaintiffs") filed this Hatch-Waxman case in November of 2023 against multiple defendants, alleging that those defendants submitted Abbreviated New Drug Applications ("ANDAs") to the Food and Drug Administration ("FDA") seeking approval to market generic versions of Plaintiffs' Wakix® drug for the treatment of narcolepsy prior to the expiration of

certain patents covering Wakix®. (D.I. 1) The active pharmaceutical ingredient ("API") in Wakix® is pitolisant hydrochloride. (*Id.* at ¶ 4)

2. Plaintiffs allege infringement of two patents. United States Patent No. 8,207,197 ("the '197 patent") covers a specific crystalline form of pitolisant hydrochloride. (*Id.*, Ex. B) Independent claim 1 of the '197 patent defines the crystalline form of pitolisant hydrochloride as "having an X-ray diffractogram that comprises characteristic peaks" as follows:

> 1. Crystalline 1-[3-[3-(4-chlorophenyl)propoxy]propyl]-piperidine monohydrochloride of formula (I)

(I)

> optionally comprising water up to 6%, and having an X-ray diffractogram that comprises characteristic peaks (20) at 11.2°, 19.9°, 20.7° and 34.1° ±0.2°

('197 patent, col. 22:12-28) United States Patent No. 8,486,947 ("the '947 patent") is directed to a method for treating excessive daytime sleepiness. (D.I. 1, Ex. A)

3. Under the scheduling order, fact discovery closed on April 25, 2025 and expert discovery closed on November 25, 2025, with limited exceptions for taking certain expert depositions out of time. (D.I. 34 at ¶ 9(f)(i); D.I. 288; D.I. 310; D.I. 331; D.I. 429) Briefing on *Daubert* motions is underway. (D.I. 443; D.I. 444) The pretrial conference is scheduled for January 21, 2026, and a four-day bench trial is set to begin on February 17, 2026. (D.I. 34)

4. **Analysis.** Defendants AET Pharma US, Inc. ("AET"), Novitium Pharma LLC ("Novitium"), and Hikma Pharmaceuticals USA Inc. ("Hikma;" collectively, "Defendants")

2

move to compel the production of communications between Dr. Wenslow and Dr. Hanrahan concerning facts, data, and assumptions communicated between them regarding ssNMR testing for this case, including emails and text messages. (D.I. 434) This dispute is a follow-on to the dispute addressed in the court's December 2, 2025 Memorandum Order, which addressed the information disclosed between Plaintiffs' expert, Dr. Wenslow, and Dr. Hanrahan in the context of the protective order. (D.I. 432) The court refers to the December 2, 2025 Memorandum Order for additional factual background regarding this dispute. Plaintiffs move to strike the following portions of the expert reports and deposition testimony of Dr. Zaworotko: (1) paragraphs 334, 340.c, and portions of paragraphs 32 and 33 concerning enablement and written description in Dr. Zaworotko's opening expert report; (2) paragraphs 99 to 107, 113.c, and the portion of paragraph 14 concerning enablement and written description in Dr. Zaworotko's reply expert report; and (3) any deposition testimony by Dr. Zaworotko related to enablement and written description, including but not limited to 47:23-51:22, 89:3-98:5, 196:6-209:25, 212:3-214:24, and 220:19-225:25. (D.I. 435) This Memorandum Order addresses each of the discovery disputes in turn.

5. *Defendants' motion to compel the production of communications between Dr. Wenslow and Dr. Hanrahan is DENIED without prejudice.* Defendants seek communications exchanged between Plaintiffs' testifying expert, Dr. Wenslow, and Dr. Hanrahan, "an analyst at KAS who has performed ssNMR experiments for Dr. Wenslow at least 15 times before . . . [and] carried out the testing Dr. Wenslow designed" before Dr. Wenslow "performed [his] data analysis to reach his conclusions." (D.I. 437 at 1) According to Defendants, Dr. Wenslow asked Dr. Hanrahan to perform solid state nuclear magnetic resonance ("ssNMR") testing on Plaintiffs' crystalline pitolisant hydrochloride and ▮▮▮▮▮▮▮▮▮▮▮▮▮ to identify

3

alleged differences in the behavior of those two solid state forms of pitolisant hydrochloride. (D.I. 433 at 1)  Dr. Wenslow then explained that those alleged differences were used as a "filter" in subsequent ssNMR experiments to locate crystalline material in Defendants' ANDA products. (*Id.*; Ex. B at 55:23-56:3)  However, Defendants' motion to compel is not limited to communications between Dr. Wenslow and Dr. Hanrahan regarding Dr. Wenslow's filtering experiments.  Instead, Defendants seek written correspondence between Dr. Wenslow and Dr. Hanrahan concerning facts, data, and assumptions communicated between them regarding all ssNMR testing for this case.  (D.I. 434)

6.    Plaintiffs object to the requested production on two grounds.  First, Plaintiffs contend that the information sought by Defendants is protected from discovery under the work product doctrine.  (D.I. 437 at 2-3)  Second, Plaintiffs argue that Defendants have been given all the facts, data, and assumptions pertaining to the ssNMR experiments performed by Dr. Hanrahan at the instruction of Dr. Wenslow, and Defendants have not demonstrated a need for additional information.  (*Id.* at 3-4)

7.   Plaintiffs cite Federal Rule of Procedure 26(b)(4)(C), which cross-references Rules 26(b)(3)(A) and (B), in support of their argument that Defendants seek the production of communications between the party's attorney and testifying expert.  (D.I. 437 at 2)  Contrary to Plaintiffs' argument, however, Defendants claim they do not seek counsels' communications which included Dr. Hanrahan and/or Dr. Wenslow.  Instead, Defendants request "written correspondence between [Plaintiffs'] ssNMR testing expert, Dr. Robert Wenslow, and Dr. Michael Hanrahan of Kansas Analytical Services, concerning facts, data, and assumptions communicated between them regarding ssNMR testing for this case, including emails and text messages." (D.I. 434)  Plaintiffs do not expressly deny the existence of such communications,

and Dr. Wenslow's deposition testimony appears to confirm that he engaged in factual communications about testing protocols and experiments with Dr. Hanrahan. (D.I. 433, Ex. B at 55:23-56:3)

8. Nonetheless, Defendants' motion to compel is overbroad, and Defendants have not shown how the scope of the request is proportional to the needs of the case under Rule 26(b)(1). Even though they only specifically address Dr. Wenslow's T1rho filtering experiments as the impetus for the present dispute, Defendants do not limit the scope of the requested production to communications about the T1rho filtering experiments. (D.I. 433 at 1; Ex. B at 55:23-56:3) Plaintiffs have demonstrated that the method development for Dr. Wenslow's filtering experiments was described in detail in his expert reports, and the raw data files were produced. (D.I. 437 at 4; Ex. G at ¶¶ 48-63, 89-106; Ex. H at ¶¶ 26-81; Ex. E at 98:10-99:10, 100:2-101:12) Defendants also deposed Dr. Wenslow at length about his filtering experiments on October 16, 2025. (*Id.*, Ex. E at 58:11-60:24, 145:19-153:12) Defendants have not specified any information lacking from these disclosures. (*Id.*, Ex. I)

9. In conclusory fashion, Defendants argue that there is no harm in producing the communications even if they contain information already disclosed in Dr. Wenslow's reports. (D.I 433 at 3) This is not a compelling reason to order the production, particularly when the request is not narrowly tailored and Defendants have had a fulsome opportunity to explore any gaps in the information provided by Dr. Wenslow in the months since his opening expert report was served on July 1, 2025. (D.I. 330) The fact that Defendants declined Plaintiffs' offer to produce a privilege log is telling. (D.I. 433 at 2 n.3) A privilege log is the first step for identifying in a more targeted and focused manner the communications in issue between Dr. Wenslow and Dr. Hanrahan. Defendants' rejection of Plaintiffs' offer underscores that they are

5

not interested in pursuing only facts, data, or assumptions underlying the testifying expert's opinions, but instead aim to capture, in broader fashion, disclosures that may include counsel's advice, mental impressions, and strategies. On this record, Defendants have not shown a substantial need for such materials or that the requested production is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (permitting discovery of work product material if "the party shows that it has substantial need for the materials to prepare its case[.]").

**10.** *Plaintiffs' motion to strike portions of the opening and reply expert reports and the deposition testimony of Dr. Zaworotko is DENIED without prejudice.* In his opening expert report served on July 1, 2025, Dr. Zaworotko opined that claims 1 and 2 of the '197 patent are invalid for lack of enablement and written description under 35 U.S.C. § 112. (D.I. 435, Ex. C at ¶¶ 32, 56, 334) For example, Dr. Zaworotko opined that claim 1 of the '197 patent "does not reasonably convey to a POSA that the inventors had possession of the entirety of the claimed water content range[.]" (*Id.*, Ex. C at ¶ 334) There is no dispute that Dr. Zaworotko's Section 112 opinions were not disclosed in Defendants' invalidity contentions. (*Id.*, Exs. A-B) Thus, Dr. Zaworotko's opinions on written description and lack of enablement were untimely.

**11.** However, Plaintiffs missed their opportunity to challenge the untimeliness of Dr. Zaworotko's opinions through their subsequent course of conduct. Plaintiffs did not object to Dr. Zaworotko's opinions under Section 112 as untimely, nor did they seek additional discovery at that time to support their position that they had possession of the entirety of the claimed water content range. Instead, Plaintiffs made the strategic choice to challenge the substance of Dr. Zaworotko's Section 112 opinions over the span of 29 paragraphs in the rebuttal expert report of Dr. Stephen Davies, which was served on August 28, 2025. (D.I. 335; D.I. 435, Ex. D at ¶¶ 342-71) Dr. Zaworotko responded to Dr. Davies's rebuttal opinions on written description and

enablement in his reply report served on October 9, 2025. (D.I. 346; D.I. 435, Ex. E at ¶¶ 99-107, 113.c)  Plaintiffs questioned Dr. Zaworotko extensively about his Section 112 opinions during his deposition on October 30, 2025. (D.I. 435, Ex. F)

**12.** After substantively engaging with Dr. Zaworotko's opinions in their rebuttal report and at his deposition, Plaintiffs now argue that all of Dr. Zaworotko's opinions on written description and enablement in his expert reports and deposition testimony should be stricken as untimely under the *Pennypack* factors.  Plaintiffs claim they would otherwise need extensive discovery to properly respond to those opinions, including experimentation, testing, deposition testimony, and/or the taking of discovery from third parties outside the United States. (D.I. 435 at 4)

**13.** The determination of whether to exclude evidence by granting a motion to strike is within the discretion of the court. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).  The foregoing facts do not support the extreme sanction of excluding the evidence under the *Pennypack* factors: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficiency of trial; (4) bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the evidence withheld. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds, goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).

**14.** Plaintiffs have not shown the requisite prejudice.  Plaintiffs fault Defendants for failing to disclose their written description and enablement positions in their invalidity contentions, which were served in the spring of 2025. (D.I. 435, Exs. A-B)  But instead of challenging this failure to disclose after receiving Dr. Zaworotko's opening expert report in July

7

of 2025, Plaintiffs chose to substantively respond to Dr. Zaworotko's invalidity arguments under Section 112 in the rebuttal report of Dr. Davies. (*Id.*, Exs. C-D) The extensiveness of Dr. Davies's rebuttal weakens Plaintiffs' argument that the opinions in Dr. Zaworotko's opening expert report were too general to put Plaintiffs on notice. (*Id.* at 3); *see TOT Power Control, SL v. Apple Inc.*, C.A. No. 21-1302-MN, D.I. 384 at 18 (D. Del. Apr. 30, 2025) (finding any prejudice caused by late disclosure was cured when the moving party's expert "fully responded to those opinions in his rebuttal expert report."). Moreover, Defendants have demonstrated that Dr. Zaworotko's reply report responded to the same issues raised in Dr. Davies's rebuttal report. (D.I. 438 at 2) In sum, Plaintiffs cannot claim surprise for the first time nearly six months after the written description and enablement theories were disclosed.

15. The second *Pennypack* factor also weighs against Plaintiffs. The record shows that Defendants offered Plaintiffs a sur-reply report, and Plaintiffs declined. (D.I. 435 at 3 n.2, Ex. G at 6) Plaintiffs claim extensive additional discovery is needed, but they do not specifically describe what kinds of testing, documents, and deposition testimony are necessary to address the opinions expressed in Dr. Zaworotko's reply report. (*Id.* at 3-4) Plaintiffs identify a 2024 Patel article on the polymorphism of pitolisant HCl which they claim was raised for the first time in Dr. Zaworotko's deposition, when in fact the article was listed among the documents he considered in his opening expert report. (*Id.* at 3; D.I. 438, Ex. 3 at 4) The time for Plaintiffs to seek additional discovery passed months before Plaintiffs raised this issue with the court in a joint motion filed after the extended deadline for the close of expert discovery. (D.I. 331; D.I. 427)

16. Allowing Dr. Zaworotko's opinions would not disrupt the upcoming pretrial conference and trial because Plaintiffs have not identified with specificity the additional

discovery they require, and they declined Defendants' offer to submit a sur-reply report. Dr. Zaworotko's deposition transcript and Dr. Davies's rebuttal report demonstrate that Plaintiffs had ample opportunity to address Dr. Zaworotko's Section 112 opinions.

**17.** The fourth and fifth *Pennypack* factors also weigh against striking Dr. Zaworotko's Section 112 opinions. The court finds no evidence that Defendants acted in bad faith. Plaintiffs' position regarding the unimportance of the Section 112 opinions is also not persuasive. Plaintiffs devoted significant resources to this issue by submitting their own expert analysis in Dr. Davies's rebuttal report and deposing Dr. Zaworotko at length on his Section 112 opinions, and they continue to expend resources on the issue in the pending motion to strike. (D.I. 435, Ex. D; Ex. F) This conduct is inconsistent with their position that the issue is unimportant. On balance, the *Pennypack* factors weigh against striking Dr. Zaworotko's expert opinions and deposition testimony on Defendants' written description and enablement defenses.

**18. Conclusion.** For the foregoing reasons, IT IS ORDERED that: (1) Defendants' motion to compel the production of communications between Dr. Wenslow and Dr. Hanrahan is DENIED without prejudice; and (2) Plaintiffs' motion to strike portions of the expert reports and deposition testimony of Dr. Zaworotko is DENIED without prejudice.

**19.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **December 19, 2025,** for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re*

*Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**20.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**21.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge

10