# Exhibit 46



THE UNITED STATES OF AMERICA

TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*December 13, 2024*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** *18/646,171*
**FILING DATE:** *April 25, 2024*
**PATENT NUMBER:** *12138248*
**ISSUE DATE:** *November 12, 2024*

Certified by

*Katherine Kelly Vidal*

Performing the Functions and Duties of the
Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

EAGLEBEN-SA_00353687

## FORMULATIONS OF BENDAMUSTINE

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]    This application is a continuation of Application Serial No. 18/498,259, filed October 31, 2023, which is a continuation of Application Serial No. 16/509,920, filed July 12, 2019, now U.S. Patent No. 11,103,483, which is a continuation of Application Serial No. 16/015,656, filed June 22, 2018, which is a continuation of Application Serial No. 15/432,335, filed February 14, 2017, now U.S. Patent No. 10,010,533, issued July 3, 2018, which is a continuation of Application Serial No. 15/013,436, filed February 2, 2016, now U.S. Patent No. 9,572,797, issued February 21, 2017, which is a continuation of Application Serial No. 14/031,879, filed September 19, 2013, now U.S. Patent No. 9,265,831, issued February 23, 2016, which is a continuation of Application Serial No. 13/016,473, filed January 28, 2011, now U.S. Patent No. 8,609,707, issued December 17, 2013, which claims the benefit of U.S. Provisional Patent Application No. 61/299,100, filed January 28, 2010, the contents of each of which are incorporated herein by reference.

## BACKGROUND OF THE INVENTION

[0002]    Bendamustine free base is represented by the following structural formula (I)

(I).

EAGLEBEN-SA_00353688

107071.001394

[0003]    Bendamustine is used in the treatment of a number of cancers including leukemias, Hodgkins disease and multiple myelomas.  Bendamustine is the active ingredient of the commercial product Treanda™, a lyophilized powder for reconstitution.

[0004]    Bendamustine exhibits rapid degradation upon reconstitution of the lyophilized product. Bendamustine undergoes hydrolysis by direct substitution rather than an addition elimination process due to the presence of the highly labile aliphatic chlorine atoms.  Some of the main degradants of bendamustine are the monohydroxy compound known as HP1 (hydrolysis product 1) and dihydroxy compound HP2 (hydrolysis product 2).  The monohydroxy compound appears as the main impurity at Relative Retention Time (RRT) 0.6 and the dihydroxy compound appears as the main impurity at RRT 0.27.  Minor peaks appear at RRT 1.2, which are presently unknown.

[0005]    The stability of bendamustine in water is measured in hours, and is therefore, not suitable for long-term storage in liquid form.  The lyophile possesses good chemical stability.  However, reconstitution of the lyophile is clinically inconvenient, taking 15 – 30 mins with implications of chemical instability.  There is a need for ready to use (RTU) bendamustine formulations having enhanced stability.

## SUMMARY OF THE INVENTION

[0006]    In other aspects of the invention, the bendamustine-containing compositions include a) a pharmaceutically acceptable fluid which contains one or more of propylene glycol, ethanol, polyethylene glycol, benzyl alcohol and glycofurol, and b) a stabilizing amount of a chloride salt.  In other aspects of the invention, the bendamustine-containing compositions include DMSO (dimethyl sulfoxide) as part of the pharmaceutically acceptable fluid included therein.  Regardless of the pharmaceutically acceptable fluid included, the amount of bendamustine included in the composition is preferably from about 20

2

EAGLEBEN-SA_00353689

107071.001394

mg/mL to about 60 mg/mL.  Still further aspects of the invention include methods of treatment using bendamustine-containing compositions and kits containing the same.

[0007]    One of the advantages of the inventive liquid compositions is that they have substantially improved long term stability when compared to currently available formulations.  For example, the inventive bendamustine compositions are substantially free of impurities after at least about 15 months at a temperature of from about 5 ℃ to about 25 ℃.  The inventive formulations are advantageously ready to use or ready for further dilution.  Reconstitution of lyophilized powders is not required.

## DETAILED DESCRIPTION OF THE INVENTION

[0008]    Unless defined otherwise, all technical and scientific terms used herein have the same meaning as is commonly understood by one of ordinary skill in the art to which this invention belongs.  In the event that there is a plurality of definitions for a term herein, those in this section prevail unless stated otherwise.

[0009]    As used herein, RRT is calculated by dividing the retention time of the peak of interest by the retention time of the main peak.  Any peak with an RRT <1 elutes before the main peak, and any peak with an RRT >1 elutes after the main peak.

[0010]    For purposes of the present invention, "substantially free of impurities" shall be understood to include bendamustine-containing compositions in which the amount of total impurities is less than about 5%, as calculated on a normalized peak area response ("PAR") basis as determined by high performance liquid chromatography ("HPLC") at a wavelength of 223nm, after a period of about 15 months at a temperature of from about 5℃ to about 25℃.  The amount of impurities is further calculated as being based upon the original amount bendamustine (or salt thereof) being present in the composition or formulation.

3

EAGLEBEN-SA_00353690

107071.001394

[0011]    For purposes of the present invention, a pharmaceutically acceptable fluid is a fluid which is suitable for pharmaceutical use.

[0012]    Preferably, the amount of any individual degradant in the inventive compositions does not exceed 2% PAR as determined by HPLC at a wavelength of 223nm after storage periods of at least about 15 months at a temperature of from about 5°C to about 25°C.  In some aspects, the amount of time the inventive compositions demonstrate long term storage stability is at least about 18 months and preferably at least about 2 years when stored under the conditions described herein.

[0013]    In accordance with one aspect of the invention there are provided long term storage stable bendamustine-containing compositions including:

a)  bendamustine or a pharmaceutically acceptable salt thereof; and

b)  a pharmaceutically acceptable fluid including

i)  PEG, PG or mixtures thereof; and

ii)  a stabilizing amount of an antioxidant.

[0014]    The total impurities in the inventive compositions resulting from the degradation of the bendamustine in the compositions is less than about 5% PAR as determined by HPLC at a wavelength of 223nm after at least about 15 months at a temperature of from about 5 °C to about 25 °C, and thus have long term stability for at least the same period of time or longer. Preferably, the bendamustine-containing compositions demonstrate long term storage stability for at least about 2 years, especially when stored at the lower (refrigerated) temperatures.  In one embodiment, the amount of total impurities in the inventive compositions resulting from the degradation of the  bendamustine is less than about 3% PAR as determined by HPLC at a wavelength of 223nm after at least about 2 years at a temperature of from about 5 °C to about 25 °C.

[0015]    In some aspects of the invention, the bendamustine concentration in the inventive compositions is from about 10 mg/mL to about 100 mg/mL, preferably 20 mg/mL to about 60 mg/mL. Preferably the bendamustine concentration in the inventive compositions is from about 25 mg/mL to

4

EAGLEBEN-SA_00353691

107071.001394

about 50 mg/mL, and more preferably from about 30 mg/mL to about 50 mg/mL. It will be understood that compositions containing any useful concentration within the ranges, i.e. 10, 20, 25, 30, 35, 40, 45, 50, 55, 60 . . . 100 are contemplated. In other embodiments, the bendamustine concentration in the composition is about 50 mg/mL. In alternative aspects, the amount of bendamustine is outside these ranges but the amounts will be sufficient for single or multiple administrations of dosages generally regarded as effective amounts.

[0016]    In several embodiments of the invention, pharmaceutically acceptable fluid is non-aqueous and may be, but is not necessarily, a solvent for the bendamustine or salt thereof. Within this aspect, the pharmaceutically acceptable fluid is propylene glycol (PG) or polyethylene glycol (PEG). In other embodiments of the invention however, the pharmaceutically acceptable fluid is a mixture of PEG and PG. For example, the pharmaceutically acceptable fluid can include about 50% PEG and about 50% PG. Alternatively, pharmaceutically acceptable fluid includes about 95% PEG and about 5% PG. The amount of PEG and PG can also be varied within the ranges, i.e. the ratio of PEG:PG in the pharmaceutically acceptable fluid can range from about 95:5 to about 50:50. Within this range, is a pharmaceutically acceptable fluid containing about 75% PEG and about 25% PG, and preferably 80% PEG and 20% PG. In another embodiment, a pharmaceutically acceptable fluid can include about 85% PEG and about 15% PG while another preferred pharmaceutically acceptable fluid includes about 90% PEG and about 10% PG. The molecular weight of the PEG will be within the range of pharmaceutically acceptable weights although PEG 400 is preferred in many aspects of the invention.

[0017]    Without meaning to be bound by any theory or hypothesis, the hydroxide of the polyethylene glycol molecule is less reactive than the hydroxides of propylene glycol. As a result, the ester forms at a slower rate in polyethylene glycol than propylene glycol and the resulting bendamustine degradants are unexpectedly and substantially reduced over extended periods of time when PEG is a substantial part of the pharmaceutically acceptable fluid.

[0018]    The bendamustine-containing compositions according to several preferred aspects of the invention include a stabilizing amount of an antioxidant. For purposes of the present invention,

5

EAGLEBEN-SA_00353692

107071.001394

"stabilizing amount" shall be understood to include those amounts which increase or enhance the stability of the bendamustine in the compositions described herein. The presence of one or more antioxidants described herein thus contributes, at least in part to the long term stability of the composition. Within this guideline, suitable antioxidant concentrations in the compositions can range from about 2.5 mg/mL to about 35 mg/mL, and preferably from about 5 mg/mL to about 20 mg/mL or from about 10 mg/mL to about 15 mg/mL. In some other embodiments, the concentration of the antioxidant in the bendamustine-containing composition is about 5 mg/mL.

[0019]    Suitable antioxidants for inclusion include those which are pharmaceutically acceptable for use in human and veterinary formulations although not limited to those currently regarded as safe by any regulatory authority. For example, the antioxidant can be selected from among lipoic acid, thioglycerol (also known as monothioglycerol) and analogs thereof, propyl gallate, methionine, cysteine, metabisulfites, sodium formaldehyde sulfoxylate, phenol-containing aromatic and aliphatic compounds, dihydrolipoic acid and mixtures of the foregoing. Preferably, the antioxidant is thioglycerol, lipoic acid or a mixture thereof. Some particularly preferred embodiments of the invention include thioglycerol.

[0020]    In view of the foregoing, some preferred long term storage stable bendamustine-containing compositions in accordance with the invention compositions include:

I.       a) bendamustine or a pharmaceutically acceptable salt thereof; and

        b) a pharmaceutically acceptable fluid including

                i) polyethylene glycol and propylene glycol; and

                ii) a stabilizing amount of thioglycerol; or

II.      a) about 50 mg/mL bendamustine or a pharmaceutically acceptable salt thereof; and

        b) a pharmaceutically acceptable fluid including

                i) about 90% PEG and about 10% PG; and

                ii) about 2.5 mg/mL thioglycerol.

EAGLEBEN-SA_00353693

107071.001394

[0021]    Each of these compositions have the same stability profiles already described, i.e. having less than about 5% total impurities, PAR as determined by HPLC at a wavelength of 223nm, after at least about 15 months of storage at a temperature of from about 5 °C to about 25 °C.

[0022]    In accordance with other aspects of the invention, there are provided long term storage stable bendamustine-containing compositions, including:

a)  bendamustine or a pharmaceutically acceptable salt thereof;

b)  a pharmaceutically acceptable fluid including one or more of the following: PG, ethanol, PEG, benzyl alcohol and glycofurol; and

c)  a stabilizing amount of a chloride salt.

[0023]    These compositions also have the low levels of impurities and long term stability mentioned herein. Preferred pharmaceutically acceptable fluids include PG, PEG or ethanol in this embodiment of the invention.  Preferably, the PEG is PEG 400.  If desired, glycerin and/or 88% (w/w) lactic acid can be added to the pharmaceutically acceptable fluid.

[0024]    Suitable chloride salts include but are not limited to organic chloride salts, sodium chloride, choline chloride, hydrochloride salts of amino acids and mixtures thereof.  Thus, as will be appreciated by those of ordinary skill, one can select from among a number of suitable chloride salts and it is Applicants' intention that the scope of the invention includes all such chloride salts that are capable of being included in bendamustine-containing formulations for extended periods without having a deleterious effect on the drug.   In one embodiment of the invention, the chloride salt concentration is from about 10 to about 300 mg/mL. In another embodiment, the chloride salt concentration is from about 50 to about 215 mg/mL.  In one preferred embodiment, the chloride salt concentration is about 215 mg/mL.

[0025]    In accordance with another aspect of the invention, there is provided long term storage stable bendamustine-containing compositions, including:

7

EAGLEBEN-SA_00353694

107071.001394

a) bendamustine or a pharmaceutically acceptable salt thereof; and

b) a pharmaceutically acceptable fluid including DMSO.

[0026]    These compositions also have the low levels of impurities and long term stability mentioned herein.  In some aspects, the bendamustine concentration in these compositions is from about 10 mg/mL to about 100 mg/mL.  Preferably, the bendamustine concentration is from about 20 mg/mL to about 50 mg/mL, more preferably from about 25 mg/mL to about 50 mg/mL.  In an alternative embodiment, the bendamustine concentration is about 50 mg/mL.

[0027]    Another embodiment of the invention provides methods of treating cancer in mammals. The methods include administering to a mammal in need thereof an effective amount of one of the bendamustine-containing compositions described herein.  Since the active ingredient portion of the inventive composition is an FDA-approved drug, those of ordinary skill will recognize that the doses of bendamustine employed in this aspect of the invention will be similar to those employed in any treatment regimens designed for bendamustine as marketed under the trade name TREANDA.  The patient package insert containing dosing information is incorporated herein by reference.  The methods of treatment also include administering the inventive formulations for any purpose or physical condition for which bendamustine has been indicated as being useful.

[0028]    Another embodiment of the invention includes methods of preparing bendamustine-containing compositions described herein.  The methods include reconstituting lyophilized bendamustine in a pharmaceutically acceptable fluid containing one of the following:

A)    i) PEG, PG or mixtures thereof; and

        ii) a stabilizing amount of an antioxidant;

B)    i) one or more of PG, ethanol, PEG, benzyl alcohol and glycofurol; and

        ii) a stabilizing amount of a chloride salt; or

C)    DMSO.

8

EAGLEBEN-SA_00353695

107071.001394

[0029]    The steps are carried out under pharmaceutically acceptable conditions for sterility and manufacturing.

[0030]    In a further aspect of the invention, there are provided methods of controlling or preventing the formation of impurities in bendamustine-containing compositions during long term storage.  The methods include combining an amount of bendamustine or a pharmaceutically acceptable salt thereof with a sufficient amount of a pharmaceutically acceptable fluid containing one of the following:

A)    i)  PEG, PG or mixtures thereof; and

      ii)  a stabilizing amount of an antioxidant;

B)    i) one or more of PG, ethanol, PEG, glycofurol and benzyl alcohol; and

      ii)  a stabilizing amount of a chloride salt; or

C)    DMSO.

[0031]    Further optional steps in accordance therewith include transferring one or more pharmaceutically acceptable doses of the formulations into a suitable sealable container and storing the sealed container at a temperature of from about 5 °C to about 25 °C.  As a result of carrying out these steps, it is possible to control or substantially prevent the formation of impurities which otherwise occur with bendamustine-containing compositions during long term storage so that the artisan is provided with bendamustine-containing formulations having less than about 5 % total impurities PAR as determined by HPLC at a wavelength of 223nm, after at least about 15 months of storage at a temperature of from about 5 °C to about 25 °C.

[0032]    The compositions of the present invention can be packaged in any suitable sterile vial or container fit for the sterile storage of a pharmaceutical such as bendamustine.  Suitable containers can be glass vials, polypropylene or polyethylene vials or other special purpose containers and be of a size sufficient to hold one or more doses of bendamustine.

EAGLEBEN-SA_00353696

107071.001394

[0033]   A further aspect of the invention includes kits containing lyophilized bendamustine or a pharmaceutically acceptable salt thereof in a first container or vial; and, in a second container, a sufficient amount of a pharmaceutically acceptable fluid such as those described herein, i.e. one of the following:

A)   i)  PEG, PG or mixtures thereof; and

   ii)  a stabilizing amount of an antioxidant;

B)   i) one or more of PG, ethanol, PEG, glycofurol and benzyl alcohol; and

   ii)  a stabilizing amount of a chloride salt; or

C)   DMSO.

[0034]   For purposes of this embodiment, the amount of fluid which is sufficient is an amount which allows the bendamustine to be dissolved or dispersed to a degree which renders the liquid composition ready for use.

[0035]   As will be appreciated by those of ordinary skill, the kit will contain other pharmaceutically necessary materials for storing and/or administering the drug, including instructions for storage and use, additional diluents, if desired, etc.

## EXAMPLES

[0036]   The following examples serve to provide further appreciation of the invention but are not meant in any way to restrict the effective scope of the invention.

## Example 1

[0037]   Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 10mg/ml in one of ethanol, propylene glycol and benzyl alcohol as indicated in Table 1 below.  215 mg/ml of choline chloride was added in half of the samples as a source of soluble

10

EAGLEBEN-SA_00353697

107071.001394

chloride ions.  The samples were maintained at 40 °C and analyzed periodically for drug content and total impurities.  The results obtained are presented in Table 1.

Table 1 – Stability of Bendamustine HCl

| Formulation | Temp | Time | BDM mg/ml | % Total Impurities |
|---|---|---|---|---|
| BDM - 10mg/mL Choline chloride - 215mg/mL Ethanol qs to 1mL | | Initial | 10.43 | 0.27 |
| | 40°C | 48 hrs | 10.48 | 1.27 |
| | | 7 day | 10.26 | 2.11 |
| BDM - 10mg/mL Ethanol qs to 1mL | | Initial | 10.55 | 0.27 |
| | 40°C | 48 hrs | 10.30 | 2.39 |
| | | 7 day | 9.55 | 6.66 |
| BDM - 10mg/mL Choline chloride - 215mg/mL Propylene glycol qs to 1mL | | Initial | 9.99 | 0.21 |
| | 40°C | 48 hrs | 9.95 | 0.60 |
| | | 7 day | 9.43 | 2.31 |
| BDM - 10mg/mL Propylene glycol qs to 1mL | | Initial | 9.68 | 0.21 |
| | 40°C | 48 hrs | 9.45 | 0.88 |
| | | 7 day | 9.00 | 3.44 |
| BDM - 10mg/mL Choline Chloride - 215mg/mL Benzyl alcohol qs to 1mL | | Initial | 9.95 | 1.19 |
| | 40°C | 48 hrs | 9.89 | 3.51 |
| | | 7 day | 8.97 | 4.24 |
| BDM - 10mg/mL Benzyl alcohol qs to 1mL | | Initial | 9.52 | 0.33 |
| | 40°C | 48 hrs | 8.67 | 4.18 |
| | | 7 day | 7.49 | 7.84 |

[0038]    Note:  In Table 1 the total % impurities include total contributions from peaks at various RRTs.

[0039]    As shown in Table 1, the bendamustine formulations are very stable in solutions containing solvent and chloride salt.  Table 1 shows that bendamustine, when dissolved at a concentration of about 10 mg/mL, in a pharmaceutically acceptable fluid, such as ethanol and propylene glycol, and containing a stabilizing amount of a chloride salt, such as choline chloride, had less than about 5% after at least 7 days storage at 40 °C.

11

EAGLEBEN-SA_00353698

107071.001394

[0040]    The data presented in Table 1 translates to bendamustine-containing compositions including a pharmaceutically acceptable fluid and a stabilizing amount of a chloride salt having a shelf life of at least about 15 months at 5 °C and 25 °C.

[0041]    The sample including ethanol alone exhibited more than 6.5 total degradants after 7 days storage at 40 °C.  The sample including benzyl alcohol alone exhibited more than 7.5% total degradants after 7 days storage at 40 °C.  Bendamustine-containing compositions with such high levels of degradation would not be suitable for long-term storage.

## Example 2

[0042]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 10mg/ml in DMSO.  The samples were maintained at 40 °C and analyzed periodically for drug content and impurity profile.  The results obtained are presented in Table 2.

Table 2 - Stability of Bendamustine HCl in DMSO

| Formulation | Temp | Time | Content (mg/mL) | % Total Imp |
|---|---|---|---|---|
| BDM - 10mg/mL DMSO qs to 1mL | 40°C | Initial | 10.2 | 0.23 |
| | | 48 hrs | 9.80 | 0.30 |
| | | 1 week | 10.0 | 0.56 |

Note:  In Table 2 the total % impurities include total contributions from peaks at various RRTs.

[0043]    Table 2 shows that bendamustine, when dissolved in DMSO, had substantially no increase in total degradants.  The data presented in Table 2 translates to bendamustine-containing compositions including DMSO having a shelf life of at least about 15 months at 5 °C and 25 °C.  In fact,

12

EAGLEBEN-SA_00353699

107071.001394

such compositions are expected to have long term stability for periods beyond 15 months, i.e. up to 2 years or greater.

## Example 3

[0044]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 20 mg/ml in polyethylene glycol 400 and 5 mg/ml of lipoic acid was added as a stabilizing antioxidant as indicated in Table 3 below.  The samples were maintained at 40 °C or 25 °C and analyzed after 15 days for drug content and impurities.  The results obtained are presented in Table 3.

Table 3: Stability of Bendamustine (20mg/ml) in PEG 400 and Antioxidants

| Antioxidant | T °C | Time days | % Initial | % Imp RRT 0.58 | % Total Imps |
|---|---|---|---|---|---|
| None | 25 | 15 | 97.6 | 2.08 | 2.28 |
|  | 40 | 15 | 56.3 | 2.17 | 41.9 |
| Lipoic Acid 5 mg/ml | 25 | 15 | 98.5 | <LD | 0.23 |
|  | 40 | 15 | 97.5 | 0.33 | 0.53 |

<LD = Below Level of Detection

[0045]    As shown in Table 3, bendamustine, when dissolved in a pharmaceutically acceptable fluid, such as polyethylene glycol, in the presence of a stabilizing amount of an antioxidant, such as lipoic acid, had substantially no increase in total degradants after a period of 15 days.  The data presented in Table 3 translates to bendamustine-containing compositions including a pharmaceutically acceptable fluid and a stabilizing amount of an antioxidant having a shelf life of at least about 15 months at 5 °C and 25 °C.

13

EAGLEBEN-SA_00353700

107071.001394

[0046]    The sample including PEG alone, on the other hand, which did not contain an antioxidant, did not exhibit stabilizing effects at 40 ℃.  This sample had more than 40% more total impurities than the sample including lipoic acid.  Bendamustine-containing compositions with such high levels of total impurities would not be suitable for long-term storage.

**Example 4**

[0047]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 90% polyethylene glycol 400 and 10% propylene glycol.  5 mg/ml of thioglycerol, α-lipoic acid or dihydrolipoic acid was added as a stabilizing antioxidant as indicated in Table 4 below.  The samples were maintained at 40 ℃ and analyzed after 15 days or one month for drug content and impurity profile as indicated in Table 4 below.  The results obtained are presented in Table 4.

Table 4: Stability of Bendamustine (50mg/ml) in 90% PEG 400,

10% Propylene Glycol and Antioxidant

| Antioxidant | T (℃) | Time | Content (mg/mL) | % Initial | % Impurities RRT | | % Total Imps |
|---|---|---|---|---|---|---|---|
| | | | | | HP1 | PG ester | |
| | | | | | 0.59 | 1.10 | |
| Thioglycerol | 40 | initial | 48.8 | 100 | <LD | <LD | 0 |
| | 40 | 1 month | 48.5 | 99.4 | 0.06 | 0.20 | 0.71 |
| α-lipoic acid | 40 | initial | 49 | 100 | <LD | <LD | 0 |
| | 40 | 15 days | 48.8 | 99.6 | 0.19 | 0.13 | 0.32 |
| | 40 | 1 month | 48.7 | 99.4 | 0.34 | 0.26 | 0.79 |
| Dihydrolipoic acid | 40 | initial | 49.3 | 100 | <LD | <LD | 0 |
| | 40 | 1 month | 47.7 | 97.4 | 0.63 | 0.12 | 1.84 |

<LD = Below Level of Detection

14

EAGLEBEN-SA_00353701

107071.001394

[0048]    As shown in Table 4, bendamustine, when dissolved in a pharmaceutically acceptable fluid, such as a combination of polyethylene glycol and propylene glycol, in the presence of a stabilizing amount of an antioxidant, such as thioglycerol, α-lipoic acid or dihydrolipoic acid, had substantially no increase in total degradants after a period of 1 month.  This data supports the position that bendamustine-containing compositions according to the invention have a shelf life of at least about 2 years when stored at temperatures between 5 ℃ and 25 ℃.

## Example 5

[0049]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in a mixture of polyethylene glycol 400 and propylene glycol as indicated in Table 5 below.  5 mg/ml of lipoic acid was added as a stabilizing antioxidant.  The samples were maintained at 40 ℃, 25 ℃ and 5 ℃ and analyzed after 1 week, 15 days or one month for drug content and impurity profile as indicated in Table 5 below.  The results obtained are presented in Table 5.

Table 5: Stability of Bendamustine (50 mg/ml) and Lipoic Acid (5 mg/ml)

in PEG400 and Propylene glycol

| Formulation | Temp. | Time Period | Content (mg/mL) | % of Initial | %Area of degradants | | | % Total Imp. |
|---|---|---|---|---|---|---|---|---|
| | | | | | HP1 0.58 | PG ester 1.10 | PG ester 1.13 | |
| BDM - | Initial | | 49.6 | 100 | BDL | BDL | BDL | 0.18 |
| 50mg/mL | 40 ℃ | 1 W | 49.0 | 98.8 | 0.05 | 0.13 | BDL | 0.38 |
| Lipoic acid | 40 ℃ | 15 d | 48.3 | 97.4 | 0.08 | 0.26 | BDL | 0.55 |
| - 5mg/mL | | 1 M | 48.0 | 96.8 | 0.11 | 0.43 | 0.13 | 1.03 |
| PEG | 25℃ | 15 d | 49.6 | 100.0 | BDL | 0.10 | BDL | 0.30 |

15

107071.001394

| Formulation | Temp | Time | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 400:PG (75:25) qs to 1mL | | 1 M | 48.4 | 97.6 | 0.05 | 0.19 | BDL | 0.43 |
| | 5°C | 1 M | 49.6 | 100.0 | BDL | 0.07 | BDL | 0.27 |
| BDM - 50mg/mL Lipoic acid - 5mg/mL PEG 400:PG (50:50) qs to 1mL | Initial | | 50.2 | 100 | BDL | BDL | BDL | 0.21 |
| | 40 °C | 1 W | 49.9 | 99.4 | BDL | 0.15 | BDL | 0.30 |
| | | 15 d | 49.1 | 97.8 | 0.06 | 0.35 | BDL | 0.73 |
| | | 1 M | 49.0 | 97.6 | 0.09 | 0.90 | 0.25 | 1.82 |
| | 25°C | 15 d | 49.9 | 99.4 | BDL | 0.12 | BDL | 0.32 |
| | | 1 M | 49.7 | 99.0 | BDL | 0.25 | BDL | 0.59 |
| | 5°C | 1 M | 50.0 | 99.6 | BDL | 0.11 | BDL | 0.33 |
| BDM - 50mg/mL Lipoic acid - 5mg/mL PEG 400:PG (90:10) qs to 1mL | Initial | | 50.8 | 100 | BDL | BDL | BDL | 0.21 |
| | 40 °C | 1 W | 50.4 | 99.2 | BDL | 0.11 | BDL | 0.30 |
| | | 15 d | 49.7 | 97.8 | 0.07 | 0.17 | BDL | 0.43 |
| | | 1 M | 49.7 | 97.8 | 0.13 | 0.27 | 0.09 | 0.84 |
| | 25°C | 15 d | 50.8 | 100.0 | BDL | 0.10 | BDL | 0.26 |
| | | 1 M | 50.8 | 100.0 | 0.05 | 0.14 | BDL | 0.39 |
| | 5°C | 1 M | 50.8 | 100.0 | BDL | 0.06 | BDL | 0.34 |

BDL = Below Detectable Limit

[0050]    As shown in Table 5, bendamustine, when dissolved in certain mixtures of polyethylene glycol and propylene glycol and a stabilizing amount of lipoic acid, had substantially no increase in total degradants after a period of 1 month.  The data presented in Table 5 translates to bendamustine-

16

EAGLEBEN-SA_00353703

107071.001394

containing compositions having a shelf life of at least about 2 years when stored at temperatures between 5 °C and at 25 °C.

## Example 6

[0051]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 90% polyethylene glycol 400 and 10% propylene glycol and α-lipoic acid was added as a stabilizing antioxidant as indicated in Table 6 below.  The samples were maintained at 40 ºC, 25 °C and 5 °C and analyzed for drug content and impurity profile as indicated in Table 6 below. The results obtained are presented in Table 6.

Table 6: Stability of Bendamustine in 90% PEG 400, 10% PG and α-lipoic acid

| Formu-lation | Temp | Time Per. | Amt. mg/ml | % of Ini-tial | %Area of degradants | | | | | | | | % Total Imp. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 0.59 | 1.10 | 1.13 | 1.15 | 1.17 | 1.20 | 1.22 | 1.30 | |
| BDM - 50mg/mL α-lipoic acid - 10mg/mL PEG 400:PG (90:10) qs to 1mL | Initial | | 51.0 | 100 | 0.20 | 0.06 | <LD | <LD | <LD | <LD | <LD | <LD | 0.26 |
| | 40°C | 1 M | 50.5 | 99.0 | 0.21 | 0.31 | 0.13 | 0.07 | 0.13 | 0.10 | <LD | <LD | 0.95 |
| | | 2 M | 49.7 | 97.5 | 0.22 | 0.71 | 0.28 | 0.14 | 0.12 | 0.21 | 0.12 | <LD | 2.02 |
| | | 3 M | 48.7 | 95.5 | 0.22 | 1.01 | 0.45 | 0.21 | 0.14 | 0.37 | 0.16 | 0.05 | 2.96 |
| | 25°C | 3 M | 50.5 | 99.0 | 0.20 | 0.36 | 0.07 | <LD | <LD | 0.10 | <LD | <LD | 0.73 |
| | | 6 M | 50.4 | 98.8 | 0.22 | 0.60 | 0.17 | 0.06 | 0.06 | 0.09 | 0.10 | 0.08 | 1.44 |
| | 5°C | 6 M | 50.9 | 99.8 | 0.16 | 0.05 | <LD | <LD | <LD | <LD | <LD | <LD | 0.21 |
| | | 12 M | 50.6 | 99.2 | 0.20 | 0.18 | <LD | <LD | <LD | <LD | <LD | <LD | 0.38 |
| BDM - 50mg/mL α-lipoic acid - 15mg/mL PEG 400:PG (90:10) qs to 1mL | Initial | | 50.3 | 100 | 0.18 | <LD | <LD | <LD | <LD | <LD | <LD | <LD | 0.18 |
| | 40°C | 1 M | 50.0 | 99.4 | 0.19 | 0.32 | 0.08 | 0.06 | 0.08 | 0.06 | 0.06 | <LD | 0.85 |
| | | 2 M | 49.8 | 99.0 | 0.19 | 0.65 | 0.21 | 0.12 | 0.13 | 0.23 | 0.14 | 0.06 | 1.85 |
| | | 3 M | 49.5 | 98.4 | 0.15 | 0.89 | 0.37 | 0.17 | 0.13 | 0.32 | 0.10 | <LD | 2.40 |
| | | 6 M | 47.0 | 93.4 | 0.20 | 1.76 | 0.66 | 0.19 | 0.31 | 0.47 | 0.33 | 0.17 | 4.93 |

17

107071.001394

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25°C | 3 M | 50.0 | 99.4 | 0.20 | 0.35 | 0.08 | <LD | <LD | <LD | 0.11 | <LD | 0.79 |
| | 6 M | 49.5 | 98.4 | 0.19 | 0.58 | 0.15 | 0.06 | 0.07 | 0.09 | 0.08 | 0.10 | 1.38 |
| 5°C | 6 M | 50.3 | 100 | 0.17 | 0.06 | <LD | <LD | <LD | <LD | <LD | <LD | 0.23 |
| | 12 M | 50.2 | 99.8 | 0.19 | 0.15 | <LD | <LD | <LD | <LD | <LD | <LD | 0.34 |

<LD = Below Level of Detection

[0052]    The data reported in Table 6 along with the data in Table 5 demonstrates that bendamustine solutions are stable when dissolved in mixtures of PEG and PG and 5-15mg/mL α-lipoic acid.  As shown in Table 6, bendamustine, when dissolved in combinations of polyethylene glycol and propylene glycol, in the presence of a stabilizing amount of lipoic acid, had less than 3% increase in total degradants after a period of 3 months at 40 ℃.  Additionally, the same compounds had substantially no increase in total degradants after a period of 6-12 months at 5 ℃ and 25 ℃.  The data corresponds to bendamustine solutions being stable under ambient or refrigerated storage conditions for well in excess of 2 years, and thus long term stable.

## Example 7

[0053]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 90% polyethylene glycol 400 and 10% propylene glycol.  2.5 mg/ml of thioglycerol was added as an antioxidizing agent.  The samples were maintained at 40 ℃ and 25 ℃ and analyzed for drug content and impurity profile as indicated in Table7 below.  The results obtained are presented in Table 7.

18

EAGLEBEN-SA_00353705

107071.001394

Table 7: Stability of Bendamustine in 90% PEG 400, 10% PG and Thioglycerol

| Formu-lation | Temp | Time Per. | Amt mg/ml | % of Ini-tial | RRTs of degradants | | | | | | | | | % Total Imp. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 0.15 | 0.37 | 1.10 | 1.13 | 1.15 | 1.17 | 1.18 | 1.20 | 1.22 | |
| BDM - 50mg/mL Thio glycerol - 2.5mg/mL PEG 400:PG (90:10) qs to 1mL | | Initial | 50.3 | 100 | BDL | BDL | BDL | BDL | BDL | BDL | BDL | BDL | BDL | 0.00 |
| | 40°C | 15 d | 50.2 | 99.8 | BDL | BDL | 0.18 | BDL | BDL | BDL | 0.05 | 0.08 | BDL | 0.31 |
| | | 1 M | 49.9 | 99.2 | BDL | 0.12 | 0.32 | 0.07 | BDL | BDL | 0.09 | 0.08 | BDL | 0.75 |
| | | 2 M | 49.1 | 97.6 | BDL | 0.18 | 0.56 | 0.24 | 0.09 | 0.17 | 0.19 | 0.12 | 0.11 | 1.76 |
| | | 3 M | 48.8 | 97.0 | BDL | 0.23 | 0.85 | 0.34 | 0.16 | 0.30 | 0.34 | 0.29 | 0.19 | 2.94 |
| | 25°C | 3 M | 49.9 | 99.2 | 0.06 | 0.12 | 0.23 | 0.07 | BDL | 0.06 | 0.07 | 0.06 | BDL | 0.67 |
| | | 6 M | 49.3 | 98.0 | BDL | 0.23 | 0.53 | 0.22 | 0.11 | BDL | 0.21 | 0.22 | 0.20 | 2.07 |

BDL = Below Detectable Limit

[0054]    The stability is similar to that of α-lipoic acid samples in Example 6 above. As shown in Table 7, bendamustine, when dissolved in a combination of polyethylene glycol and propylene glycol, and a stabilizing amount of thioglycerol, had less than 3% increase in total degradants after a period of 3 months at 40 °C. Additionally, the same compounds had substantially no increase in total degradants after a period of 6 months at 25 °C. The data reported supports the conclusion that these bendamustine solutions are stable under ambient or refrigerated storage conditions for about 2 years.

## Example 8

[0055]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 85% PEG 400 and 15% PG in the presence of 5 mg/ml of thioglycerol. The samples were maintained at 40 °C and 25 °C and analyzed for drug content and impurity profile as indicated in Table 8 below. The results obtained are presented in Table 8.

EAGLEBEN-SA_00353706

107071.001394

Table 8: Stability of Bendamustine in 85% PEG 400, 15% PG and Thioglycerol

| Formulation | Temp. | Time Period | Content (mg/mL) | % of Initial | % Total Imp. |
|---|---|---|---|---|---|
| BDM - 50mg/mL | Initial | | 51.5 | 100 | 0.12 |
| Thioglycerol - 5mg/mL | 40°C | 1 M | 50.4 | 97.9 | 1.18 |
| PEG 400:PG (85:15) qs to | 25°C | 1 M | 51.4 | 99.8 | 0.41 |
| 1mL | | 3 M | 50.4 | 97.9 | 1.21 |
| | 5°C | 3 M | 51.0 | 99.0 | 0.26 |

[0056]    The stability is similar to that of thioglycerol samples in Example 7 above.  As reported in Table 8, total impurities did not exceed 2% at 40 °C or 25°C storage over one month, or at 25 °C and 5 °C storage after three months.  The data reported in Table 8 supports the conclusion that these bendamustine solutions are stable under ambient or refrigerated storage conditions for at least about 2 years if not longer.

EAGLEBEN-SA_00353707

107071.001394

## CLAIMS

We claim:

1. A sterile container containing a liquid bendamustine-containing composition comprising bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is about 25 mg/mL;

   a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

   a stabilizing amount of an antioxidant,

   wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C to about 25° C.

2. The sterile container of claim 1, wherein the antioxidant is monothioglycerol.

3. The sterile container of claim 1, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

4. The sterile container of claim 1, wherein the composition is stable for at least about 15 months at 5 °C or for at least about 15 months at 25 °C.

5. The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises ethanol.

6. The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises about 100 mg of bendamustine, or a pharmaceutically acceptable salt thereof.

7. The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises about 100 mg of bendamustine.

8. A liquid bendamustine-containing composition comprising bendamustine, or a pharmaceutically acceptable salt thereof, and a stabilizing amount of an antioxidant, in a pharmaceutically acceptable fluid;

1

EAGLEBEN-SA_00353708

107071.001394

wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

wherein the bendamustine concentration in the pharmaceutically acceptable fluid is about 25 mg/mL,

wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C to about 25 °C.

9. The composition of claim 8, wherein the antioxidant is monothioglycerol.

10. The composition of claim 8, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

11. The composition of claim 8, comprising ethanol.

12. The composition of claim 8, wherein the bendamustine concentration in the composition is 25 mg/mL.

2

EAGLEBEN-SA_00353709

107071.001394

## ABSTRACT

Long term storage stable bendamustine-containing compositions are disclosed.  The compositions can include bendamustine or a pharmaceutically acceptable salt thereof, and a pharmaceutically acceptable fluid which can include in some embodiments PEG, PG or mixtures thereof and an antioxidant or chloride ion source. The bendamustine-containing compositions have less than about 5% total impurities, on a normalized peak area response ("PAR") basis as determined by high performance liquid chromatography ("HPLC") at a wavelength of 223nm, after at least about 15 months of storage at a temperature of from about 5 °C to about 25 °C.

1

EAGLEBEN-SA_00353710

**FORMULATIONS OF BENDAMUSTINE**


**CROSS-REFERENCE TO RELATED APPLICATIONS**


[0001]    This application is a continuation of Application Serial No. 18/498,259, filed October 31, 2023, which is a continuation of Application Serial No. 16/509,920, filed July 12, 2019, now U.S. Patent No. 11,103,483, which is a continuation of Application Serial No. 16/015,656, filed June 22, 2018, which is a continuation of Application Serial No. 15/432,335, filed February 14, 2017, now U.S. Patent No. 10,010,533, issued July 3, 2018, which is a continuation of Application Serial No. 15/013,436, filed February 2, 2016, now U.S. Patent No. 9,572,797, issued February 21, 2017, which is a continuation of Application Serial No. 14/031,879, filed September 19, 2013, now U.S. Patent No. 9,265,831, issued February 23, 2016, which is a continuation of Application Serial No. 13/016,473, filed January 28, 2011, now U.S. Patent No. 8,609,707, issued December 17, 2013, which claims the benefit of U.S. Provisional Patent Application No. 61/299,100, filed January 28, 2010, the contents of each of which are incorporated herein by reference.


**BACKGROUND OF THE INVENTION**


[0002]    Bendamustine free base is represented by the following structural formula (I)

(I).

EAGLEBEN-SA_00353711

107071.001394

[0003]    Bendamustine is used in the treatment of a number of cancers including leukemias, Hodgkins disease and multiple myelomas.  Bendamustine is the active ingredient of the commercial product Treanda™, a lyophilized powder for reconstitution.

[0004]    Bendamustine exhibits rapid degradation upon reconstitution of the lyophilized product. Bendamustine undergoes hydrolysis by direct substitution rather than an addition elimination process due to the presence of the highly labile aliphatic chlorine atoms.  Some of the main degradants of bendamustine are the monohydroxy compound known as HP1 (hydrolysis product 1) and dihydroxy compound HP2 (hydrolysis product 2).  The monohydroxy compound appears as the main impurity at Relative Retention Time (RRT) 0.6 and the dihydroxy compound appears as the main impurity at RRT 0.27.  Minor peaks appear at RRT 1.2, which are presently unknown.

[0005]    The stability of bendamustine in water is measured in hours, and is therefore, not suitable for long-term storage in liquid form.  The lyophile possesses good chemical stability.  However, reconstitution of the lyophile is clinically inconvenient, taking 15 – 30 mins with implications of chemical instability.  There is a need for ready to use (RTU) bendamustine formulations having enhanced stability.

## SUMMARY OF THE INVENTION

[0006]    In other aspects of the invention, the bendamustine-containing compositions include a) a pharmaceutically acceptable fluid which contains one or more of propylene glycol, ethanol, polyethylene glycol, benzyl alcohol and glycofurol, and b) a stabilizing amount of a chloride salt.  In other aspects of the invention, the bendamustine-containing compositions include DMSO (dimethyl sulfoxide) as part of the pharmaceutically acceptable fluid included therein.  Regardless of the pharmaceutically acceptable fluid included, the amount of bendamustine included in the composition is preferably from about 20

2

EAGLEBEN-SA_00353712

107071.001394

mg/mL to about 60 mg/mL. Still further aspects of the invention include methods of treatment using bendamustine-containing compositions and kits containing the same.

[0007]    One of the advantages of the inventive liquid compositions is that they have substantially improved long term stability when compared to currently available formulations. For example, the inventive bendamustine compositions are substantially free of impurities after at least about 15 months at a temperature of from about 5 ℃ to about 25 ℃. The inventive formulations are advantageously ready to use or ready for further dilution. Reconstitution of lyophilized powders is not required.

## DETAILED DESCRIPTION OF THE INVENTION

[0008]    Unless defined otherwise, all technical and scientific terms used herein have the same meaning as is commonly understood by one of ordinary skill in the art to which this invention belongs. In the event that there is a plurality of definitions for a term herein, those in this section prevail unless stated otherwise.

[0009]    As used herein, RRT is calculated by dividing the retention time of the peak of interest by the retention time of the main peak. Any peak with an RRT <1 elutes before the main peak, and any peak with an RRT >1 elutes after the main peak.

[0010]    For purposes of the present invention, "substantially free of impurities" shall be understood to include bendamustine-containing compositions in which the amount of total impurities is less than about 5%, as calculated on a normalized peak area response ("PAR") basis as determined by high performance liquid chromatography ("HPLC") at a wavelength of 223nm, after a period of about 15 months at a temperature of from about 5℃ to about 25℃. The amount of impurities is further calculated as being based upon the original amount bendamustine (or salt thereof) being present in the composition or formulation.

3

EAGLEBEN-SA_00353713

107071.001394

[0011]    For purposes of the present invention, a pharmaceutically acceptable fluid is a fluid which is suitable for pharmaceutical use.

[0012]    Preferably, the amount of any individual degradant in the inventive compositions does not exceed 2% PAR as determined by HPLC at a wavelength of 223nm after storage periods of at least about 15 months at a temperature of from about 5°C to about 25ºC.  In some aspects, the amount of time the inventive compositions demonstrate long term storage stability is at least about 18 months and preferably at least about 2 years when stored under the conditions described herein.

[0013]    In accordance with one aspect of the invention there are provided long term storage stable bendamustine-containing compositions including:

a) bendamustine or a pharmaceutically acceptable salt thereof; and

b) a pharmaceutically acceptable fluid including

i) PEG, PG or mixtures thereof; and

ii) a stabilizing amount of an antioxidant.

[0014]    The total impurities in the inventive compositions resulting from the degradation of the bendamustine in the compositions is less than about 5% PAR as determined by HPLC at a wavelength of 223nm after at least about 15 months at a temperature of from about 5 ºC to about 25 ºC, and thus have long term stability for at least the same period of time or longer. Preferably, the bendamustine-containing compositions demonstrate long term storage stability for at least about 2 years, especially when stored at the lower (refrigerated) temperatures.  In one embodiment, the amount of total impurities in the inventive compositions resulting from the degradation of the  bendamustine is less than about 3% PAR as determined by HPLC at a wavelength of 223nm after at least about 2 years at a temperature of from about 5 ºC to about 25 ºC.

[0015]    In some aspects of the invention, the bendamustine concentration in the inventive compositions is from about 10 mg/mL to about 100 mg/mL, preferably 20 mg/mL to about 60 mg/mL. Preferably the bendamustine concentration in the inventive compositions is from about 25 mg/mL to

4

EAGLEBEN-SA_00353714

107071.001394

about 50 mg/mL, and more preferably from about 30 mg/mL to about 50 mg/mL. It will be understood that compositions containing any useful concentration within the ranges, i.e. 10, 20, 25, 30, 35, 40, 45, 50, 55, 60 . . . 100 are contemplated. In other embodiments, the bendamustine concentration in the composition is about 50 mg/mL. In alternative aspects, the amount of bendamustine is outside these ranges but the amounts will be sufficient for single or multiple administrations of dosages generally regarded as effective amounts.

[0016]    In several embodiments of the invention, pharmaceutically acceptable fluid is non-aqueous and may be, but is not necessarily, a solvent for the bendamustine or salt thereof. Within this aspect, the pharmaceutically acceptable fluid is propylene glycol (PG) or polyethylene glycol (PEG). In other embodiments of the invention however, the pharmaceutically acceptable fluid is a mixture of PEG and PG. For example, the pharmaceutically acceptable fluid can include about 50% PEG and about 50% PG. Alternatively, pharmaceutically acceptable fluid includes about 95% PEG and about 5% PG. The amount of PEG and PG can also be varied within the ranges, i.e. the ratio of PEG:PG in the pharmaceutically acceptable fluid can range from about 95:5 to about 50:50. Within this range, is a pharmaceutically acceptable fluid containing about 75% PEG and about 25% PG, and preferably 80% PEG and 20% PG. In another embodiment, a pharmaceutically acceptable fluid can include about 85% PEG and about 15% PG while another preferred pharmaceutically acceptable fluid includes about 90% PEG and about 10% PG. The molecular weight of the PEG will be within the range of pharmaceutically acceptable weights although PEG 400 is preferred in many aspects of the invention.

[0017]    Without meaning to be bound by any theory or hypothesis, the hydroxide of the polyethylene glycol molecule is less reactive than the hydroxides of propylene glycol. As a result, the ester forms at a slower rate in polyethylene glycol than propylene glycol and the resulting bendamustine degradants are unexpectedly and substantially reduced over extended periods of time when PEG is a substantial part of the pharmaceutically acceptable fluid.

[0018]    The bendamustine-containing compositions according to several preferred aspects of the invention include a stabilizing amount of an antioxidant. For purposes of the present invention,

5

EAGLEBEN-SA_00353715

107071.001394

"stabilizing amount" shall be understood to include those amounts which increase or enhance the stability of the bendamustine in the compositions described herein. The presence of one or more antioxidants described herein thus contributes, at least in part to the long term stability of the composition. Within this guideline, suitable antioxidant concentrations in the compositions can range from about 2.5 mg/mL to about 35 mg/mL, and preferably from about 5 mg/mL to about 20 mg/mL or from about 10 mg/mL to about 15 mg/mL. In some other embodiments, the concentration of the antioxidant in the bendamustine-containing composition is about 5 mg/mL.

[0019]    Suitable antioxidants for inclusion include those which are pharmaceutically acceptable for use in human and veterinary formulations although not limited to those currently regarded as safe by any regulatory authority. For example, the antioxidant can be selected from among lipoic acid, thioglycerol (also known as monothioglycerol) and analogs thereof, propyl gallate, methionine, cysteine, metabisulfites, sodium formaldehyde sulfoxylate, phenol-containing aromatic and aliphatic compounds, dihydrolipoic acid and mixtures of the foregoing. Preferably, the antioxidant is thioglycerol, lipoic acid or a mixture thereof. Some particularly preferred embodiments of the invention include thioglycerol.

[0020]    In view of the foregoing, some preferred long term storage stable bendamustine-containing compositions in accordance with the invention compositions include:

I.      a) bendamustine or a pharmaceutically acceptable salt thereof; and

        b) a pharmaceutically acceptable fluid including

                i) polyethylene glycol and propylene glycol; and

                ii) a stabilizing amount of thioglycerol; or

II.     a) about 50 mg/mL bendamustine or a pharmaceutically acceptable salt thereof;

and

        b) a pharmaceutically acceptable fluid including

                i) about 90% PEG and about 10% PG; and

                ii) about 2.5 mg/mL thioglycerol.

6

EAGLEBEN-SA_00353716

107071.001394

[0021]    Each of these compositions have the same stability profiles already described, i.e. having less than about 5% total impurities, PAR as determined by HPLC at a wavelength of 223nm, after at least about 15 months of storage at a temperature of from about 5 °C to about 25 °C.

[0022]    In accordance with other aspects of the invention, there are provided long term storage stable bendamustine-containing compositions, including:

a)  bendamustine or a pharmaceutically acceptable salt thereof;

b)  a pharmaceutically acceptable fluid including one or more of the following: PG, ethanol, PEG, benzyl alcohol and glycofurol; and

c)  a stabilizing amount of a chloride salt.

[0023]    These compositions also have the low levels of impurities and long term stability mentioned herein. Preferred pharmaceutically acceptable fluids include PG, PEG or ethanol in this embodiment of the invention.  Preferably, the PEG is PEG 400.  If desired, glycerin and/or 88% (w/w) lactic acid can be added to the pharmaceutically acceptable fluid.

[0024]    Suitable chloride salts include but are not limited to organic chloride salts, sodium chloride, choline chloride, hydrochloride salts of amino acids and mixtures thereof.  Thus, as will be appreciated by those of ordinary skill, one can select from among a number of suitable chloride salts and it is Applicants' intention that the scope of the invention includes all such chloride salts that are capable of being included in bendamustine-containing formulations for extended periods without having a deleterious effect on the drug.   In one embodiment of the invention, the chloride salt concentration is from about 10 to about 300 mg/mL. In another embodiment, the chloride salt concentration is from about 50 to about 215 mg/mL.  In one preferred embodiment, the chloride salt concentration is about 215 mg/mL.

[0025]    In accordance with another aspect of the invention, there is provided long term storage stable bendamustine-containing compositions, including:

7

EAGLEBEN-SA_00353717

107071.001394

a) bendamustine or a pharmaceutically acceptable salt thereof; and

b) a pharmaceutically acceptable fluid including DMSO.

[0026]    These compositions also have the low levels of impurities and long term stability mentioned herein.  In some aspects, the bendamustine concentration in these compositions is from about 10 mg/mL to about 100 mg/mL.  Preferably, the bendamustine concentration is from about 20 mg/mL to about 50 mg/mL, more preferably from about 25 mg/mL to about 50 mg/mL.  In an alternative embodiment, the bendamustine concentration is about 50 mg/mL.

[0027]    Another embodiment of the invention provides methods of treating cancer in mammals.  The methods include administering to a mammal in need thereof an effective amount of one of the bendamustine-containing compositions described herein.  Since the active ingredient portion of the inventive composition is an FDA-approved drug, those of ordinary skill will recognize that the doses of bendamustine employed in this aspect of the invention will be similar to those employed in any treatment regimens designed for bendamustine as marketed under the trade name TREANDA.  The patient package insert containing dosing information is incorporated herein by reference.  The methods of treatment also include administering the inventive formulations for any purpose or physical condition for which bendamustine has been indicated as being useful.

[0028]    Another embodiment of the invention includes methods of preparing bendamustine-containing compositions described herein.  The methods include reconstituting lyophilized bendamustine in a pharmaceutically acceptable fluid containing one of the following:

A)    i)  PEG, PG or mixtures thereof; and

      ii)  a stabilizing amount of an antioxidant;

B)    i) one or more of PG, ethanol, PEG, benzyl alcohol and glycofurol; and

      ii)  a stabilizing amount of a chloride salt; or

C)    DMSO.

8

EAGLEBEN-SA_00353718

107071.001394

[0029]    The steps are carried out under pharmaceutically acceptable conditions for sterility and manufacturing.

[0030]    In a further aspect of the invention, there are provided methods of controlling or preventing the formation of impurities in bendamustine-containing compositions during long term storage.  The methods include combining an amount of bendamustine or a pharmaceutically acceptable salt thereof with a sufficient amount of a pharmaceutically acceptable fluid containing one of the following:

A)    i)  PEG, PG or mixtures thereof; and

   ii)  a stabilizing amount of an antioxidant;

B)    i) one or more of PG, ethanol, PEG, glycofurol and benzyl alcohol; and

   ii)  a stabilizing amount of a chloride salt; or

C)    DMSO.

[0031]    Further optional steps in accordance therewith include transferring one or more pharmaceutically acceptable doses of the formulations into a suitable sealable container and storing the sealed container at a temperature of from about 5 °C to about 25 °C.  As a result of carrying out these steps, it is possible to control or substantially prevent the formation of impurities which otherwise occur with bendamustine-containing compositions during long term storage so that the artisan is provided with bendamustine-containing formulations having less than about 5 % total impurities PAR as determined by HPLC at a wavelength of 223nm, after at least about 15 months of storage at a temperature of from about 5 °C to about 25 °C.

[0032]    The compositions of the present invention can be packaged in any suitable sterile vial or container fit for the sterile storage of a pharmaceutical such as bendamustine.  Suitable containers can be glass vials, polypropylene or polyethylene vials or other special purpose containers and be of a size sufficient to hold one or more doses of bendamustine.

9

EAGLEBEN-SA_00353719

107071.001394

[0033]    A further aspect of the invention includes kits containing lyophilized bendamustine or a pharmaceutically acceptable salt thereof in a first container or vial; and, in a second container, a sufficient amount of a pharmaceutically acceptable fluid such as those described herein, i.e. one of the following:

A)        i)  PEG, PG or mixtures thereof; and

           ii)  a stabilizing amount of an antioxidant;

B)        i) one or more of PG, ethanol, PEG, glycofurol and benzyl alcohol; and

           ii)  a stabilizing amount of a chloride salt; or

C)        DMSO.

[0034]    For purposes of this embodiment, the amount of fluid which is sufficient is an amount which allows the bendamustine to be dissolved or dispersed to a degree which renders the liquid composition ready for use.

[0035]    As will be appreciated by those of ordinary skill, the kit will contain other pharmaceutically necessary materials for storing and/or administering the drug, including instructions for storage and use, additional diluents, if desired, etc.

**EXAMPLES**

[0036]    The following examples serve to provide further appreciation of the invention but are not meant in any way to restrict the effective scope of the invention.

**Example 1**

[0037]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 10mg/ml in one of ethanol, propylene glycol and benzyl alcohol as indicated in Table 1 below.  215 mg/ml of choline chloride was added in half of the samples as a source of soluble

10

EAGLEBEN-SA_00353720

107071.001394

chloride ions.  The samples were maintained at 40 °C and analyzed periodically for drug content and total impurities.  The results obtained are presented in Table 1.

Table 1 – Stability of Bendamustine HCl

| Formulation | Temp | Time | BDM mg/ml | % Total Impurities |
|---|---|---|---|---|
| BDM - 10mg/mL Choline chloride - 215mg/mL Ethanol qs to 1mL | | Initial | 10.43 | 0.27 |
| | 40°C | 48 hrs | 10.48 | 1.27 |
| | | 7 day | 10.26 | 2.11 |
| BDM - 10mg/mL Ethanol qs to 1mL | | Initial | 10.55 | 0.27 |
| | 40°C | 48 hrs | 10.30 | 2.39 |
| | | 7 day | 9.55 | 6.66 |
| BDM - 10mg/mL Choline chloride - 215mg/mL Propylene glycol qs to 1mL | | Initial | 9.99 | 0.21 |
| | 40°C | 48 hrs | 9.95 | 0.60 |
| | | 7 day | 9.43 | 2.31 |
| BDM - 10mg/mL Propylene glycol qs to 1mL | | Initial | 9.68 | 0.21 |
| | 40°C | 48 hrs | 9.45 | 0.88 |
| | | 7 day | 9.00 | 3.44 |
| BDM - 10mg/mL Choline Chloride - 215mg/mL Benzyl alcohol qs to 1mL | | Initial | 9.95 | 1.19 |
| | 40°C | 48 hrs | 9.89 | 3.51 |
| | | 7 day | 8.97 | 4.24 |
| BDM - 10mg/mL Benzyl alcohol qs to 1mL | | Initial | 9.52 | 0.33 |
| | 40°C | 48 hrs | 8.67 | 4.18 |
| | | 7 day | 7.49 | 7.84 |

[0038]    Note:  In Table 1 the total % impurities include total contributions from peaks at various RRTs.

[0039]    As shown in Table 1, the bendamustine formulations are very stable in solutions containing solvent and chloride salt.  Table 1 shows that bendamustine, when dissolved at a concentration of about 10 mg/mL, in a pharmaceutically acceptable fluid, such as ethanol and propylene glycol, and containing a stabilizing amount of a chloride salt, such as choline chloride, had less than about 5% after at least 7 days storage at 40 °C.

11

EAGLEBEN-SA_00353721

107071.001394

[0040]    The data presented in Table 1 translates to bendamustine-containing compositions including a pharmaceutically acceptable fluid and a stabilizing amount of a chloride salt having a shelf life of at least about 15 months at 5 °C and 25 °C.

[0041]    The sample including ethanol alone exhibited more than 6.5 total degradants after 7 days storage at 40 °C.  The sample including benzyl alcohol alone exhibited more than 7.5% total degradants after 7 days storage at 40 °C.  Bendamustine-containing compositions with such high levels of degradation would not be suitable for long-term storage.

## Example 2

[0042]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 10mg/ml in DMSO.  The samples were maintained at 40 °C and analyzed periodically for drug content and impurity profile.  The results obtained are presented in Table 2.

Table 2 - Stability of Bendamustine HCl in DMSO

| Formulation | Temp | Time | Content (mg/mL) | % Total Imp |
|---|---|---|---|---|
| BDM - 10mg/mL DMSO qs to 1mL | | Initial | 10.2 | 0.23 |
| | 40°C | 48 hrs | 9.80 | 0.30 |
| | | 1 week | 10.0 | 0.56 |

Note:  In Table 2 the total % impurities include total contributions from peaks at various RRTs.

[0043]    Table 2 shows that bendamustine, when dissolved in DMSO, had substantially no increase in total degradants.  The data presented in Table 2 translates to bendamustine-containing compositions including DMSO having a shelf life of at least about 15 months at 5 °C and 25 °C.  In fact,

12

EAGLEBEN-SA_00353722

107071.001394

such compositions are expected to have long term stability for periods beyond 15 months, i.e. up to 2 years or greater.

## Example 3

[0044]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 20 mg/ml in polyethylene glycol 400 and 5 mg/ml of lipoic acid was added as a stabilizing antioxidant as indicated in Table 3 below.  The samples were maintained at 40 °C or 25 °C and analyzed after 15 days for drug content and impurities.  The results obtained are presented in Table 3.

Table 3: Stability of Bendamustine (20mg/ml) in PEG 400 and Antioxidants

| Antioxidant | $T^{o}C$ | Time days | % Initial | % Imp RRT 0.58 | % Total Imps |
|---|---|---|---|---|---|
| None | 25 | 15 | 97.6 | 2.08 | 2.28 |
|  | 40 | 15 | 56.3 | 2.17 | 41.9 |
| Lipoic Acid 5 mg/ml | 25 | 15 | 98.5 | <LD | 0.23 |
|  | 40 | 15 | 97.5 | 0.33 | 0.53 |

<LD = Below Level of Detection

[0045]    As shown in Table 3, bendamustine, when dissolved in a pharmaceutically acceptable fluid, such as polyethylene glycol, in the presence of a stabilizing amount of an antioxidant, such as lipoic acid, had substantially no increase in total degradants after a period of 15 days.  The data presented in Table 3 translates to bendamustine-containing compositions including a pharmaceutically acceptable fluid and a stabilizing amount of an antioxidant having a shelf life of at least about 15 months at 5 °C and 25 °C.

13

EAGLEBEN-SA_00353723

107071.001394

[0046]    The sample including PEG alone, on the other hand, which did not contain an antioxidant, did not exhibit stabilizing effects at 40 °C.  This sample had more than 40% more total impurities than the sample including lipoic acid.  Bendamustine-containing compositions with such high levels of total impurities would not be suitable for long-term storage.

## Example 4

[0047]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 90% polyethylene glycol 400 and 10% propylene glycol.  5 mg/ml of thioglycerol, α-lipoic acid or dihydrolipoic acid was added as a stabilizing antioxidant as indicated in Table 4 below.  The samples were maintained at 40 °C and analyzed after 15 days or one month for drug content and impurity profile as indicated in Table 4 below.  The results obtained are presented in Table 4.

Table 4: Stability of Bendamustine (50mg/ml) in 90% PEG 400,

10% Propylene Glycol and Antioxidant

| Antioxidant | T (°C) | Time | Content (mg/mL) | % Initial | % Impurities RRT | | % Total Imps |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | HP1 | PG ester | |
| | | | | | 0.59 | 1.10 | |
| Thioglycerol | 40 | initial | 48.8 | 100 | <LD | <LD | 0 |
| | 40 | 1 month | 48.5 | 99.4 | 0.06 | 0.20 | 0.71 |
| α-lipoic acid | 40 | initial | 49 | 100 | <LD | <LD | 0 |
| | 40 | 15 days | 48.8 | 99.6 | 0.19 | 0.13 | 0.32 |
| | 40 | 1 month | 48.7 | 99.4 | 0.34 | 0.26 | 0.79 |
| Dihydrolipoic acid | 40 | initial | 49.3 | 100 | <LD | <LD | 0 |
| | 40 | 1 month | 47.7 | 97.4 | 0.63 | 0.12 | 1.84 |

<LD = Below Level of Detection

14

EAGLEBEN-SA_00353724

107071.001394

[0048]    As shown in Table 4, bendamustine, when dissolved in a pharmaceutically acceptable fluid, such as a combination of polyethylene glycol and propylene glycol, in the presence of a stabilizing amount of an antioxidant, such as thioglycerol, α-lipoic acid or dihydrolipoic acid, had substantially no increase in total degradants after a period of 1 month.  This data supports the position that bendamustine-containing compositions according to the invention have a shelf life of at least about 2 years when stored at temperatures between 5 °C and 25 °C.

## Example 5

[0049]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in a mixture of polyethylene glycol 400 and propylene glycol as indicated in Table 5 below.  5 mg/ml of lipoic acid was added as a stabilizing antioxidant.  The samples were maintained at 40 °C, 25 °C and 5 °C and analyzed after 1 week, 15 days or one month for drug content and impurity profile as indicated in Table 5 below.  The results obtained are presented in Table 5.

Table 5: Stability of Bendamustine (50 mg/ml) and Lipoic Acid (5 mg/ml)

in PEG400 and Propylene glycol

| Formulation | Temp. | Time Period | Content (mg/mL) | % of Initial | %Area of degradants | | | % Total Imp. |
|---|---|---|---|---|---|---|---|---|
| | | | | | HP1 0.58 | PG ester 1.10 | PG ester 1.13 | |
| BDM - 50mg/mL Lipoic acid - 5mg/mL PEG | | Initial | 49.6 | 100 | BDL | BDL | BDL | 0.18 |
| | 40 °C | 1 W | 49.0 | 98.8 | 0.05 | 0.13 | BDL | 0.38 |
| | | 15 d | 48.3 | 97.4 | 0.08 | 0.26 | BDL | 0.55 |
| | | 1 M | 48.0 | 96.8 | 0.11 | 0.43 | 0.13 | 1.03 |
| | 25°C | 15 d | 49.6 | 100.0 | BDL | 0.10 | BDL | 0.30 |

15

EAGLEBEN-SA_00353725

107071.001394

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 400:PG (75:25) qs to 1mL | | 1 M | 48.4 | 97.6 | 0.05 | 0.19 | BDL | 0.43 |
| | 5°C | 1 M | 49.6 | 100.0 | BDL | 0.07 | BDL | 0.27 |
| BDM - 50mg/mL Lipoic acid - 5mg/mL PEG 400:PG (50:50) qs to 1mL | Initial | | 50.2 | 100 | BDL | BDL | BDL | 0.21 |
| | 40 °C | 1 W | 49.9 | 99.4 | BDL | 0.15 | BDL | 0.30 |
| | | 15 d | 49.1 | 97.8 | 0.06 | 0.35 | BDL | 0.73 |
| | | 1 M | 49.0 | 97.6 | 0.09 | 0.90 | 0.25 | 1.82 |
| | 25°C | 15 d | 49.9 | 99.4 | BDL | 0.12 | BDL | 0.32 |
| | | 1 M | 49.7 | 99.0 | BDL | 0.25 | BDL | 0.59 |
| | 5°C | 1 M | 50.0 | 99.6 | BDL | 0.11 | BDL | 0.33 |
| BDM - 50mg/mL Lipoic acid - 5mg/mL PEG 400:PG (90:10) qs to 1mL | Initial | | 50.8 | 100 | BDL | BDL | BDL | 0.21 |
| | 40 °C | 1 W | 50.4 | 99.2 | BDL | 0.11 | BDL | 0.30 |
| | | 15 d | 49.7 | 97.8 | 0.07 | 0.17 | BDL | 0.43 |
| | | 1 M | 49.7 | 97.8 | 0.13 | 0.27 | 0.09 | 0.84 |
| | 25°C | 15 d | 50.8 | 100.0 | BDL | 0.10 | BDL | 0.26 |
| | | 1 M | 50.8 | 100.0 | 0.05 | 0.14 | BDL | 0.39 |
| | 5°C | 1 M | 50.8 | 100.0 | BDL | 0.06 | BDL | 0.34 |

BDL = Below Detectable Limit

[0050]    As shown in Table 5, bendamustine, when dissolved in certain mixtures of polyethylene glycol and propylene glycol and a stabilizing amount of lipoic acid, had substantially no increase in total degradants after a period of 1 month.  The data presented in Table 5 translates to bendamustine-

16

EAGLEBEN-SA_00353726

107071.001394

containing compositions having a shelf life of at least about 2 years when stored at temperatures between 5 °C and at 25 °C.

## Example 6

[0051]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 90% polyethylene glycol 400 and 10% propylene glycol and α-lipoic acid was added as a stabilizing antioxidant as indicated in Table 6 below.  The samples were maintained at 40 °C, 25 °C and 5 °C and analyzed for drug content and impurity profile as indicated in Table 6 below. The results obtained are presented in Table 6.

Table 6: Stability of Bendamustine in 90% PEG 400, 10% PG and α-lipoic acid

| Formu-lation | Temp | Time Per. | Amt. mg/ml | % of Initial | %Area of degradants | | | | | | | | % Total Imp. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 0.59 | 1.10 | 1.13 | 1.15 | 1.17 | 1.20 | 1.22 | 1.30 | |
| BDM - 50mg/mL α-lipoic acid - 10mg/mL PEG 400:PG (90:10) qs to 1mL | Initial | | 51.0 | 100 | 0.20 | 0.06 | <LD | <LD | <LD | <LD | <LD | <LD | 0.26 |
| | 40°C | 1 M | 50.5 | 99.0 | 0.21 | 0.31 | 0.13 | 0.07 | 0.13 | 0.10 | <LD | <LD | 0.95 |
| | | 2 M | 49.7 | 97.5 | 0.22 | 0.71 | 0.28 | 0.14 | 0.12 | 0.21 | 0.12 | <LD | 2.02 |
| | | 3 M | 48.7 | 95.5 | 0.22 | 1.01 | 0.45 | 0.21 | 0.14 | 0.37 | 0.16 | 0.05 | 2.96 |
| | 25°C | 3 M | 50.5 | 99.0 | 0.20 | 0.36 | 0.07 | <LD | <LD | 0.10 | <LD | <LD | 0.73 |
| | | 6 M | 50.4 | 98.8 | 0.22 | 0.60 | 0.17 | 0.06 | 0.06 | 0.09 | 0.10 | 0.08 | 1.44 |
| | 5°C | 6 M | 50.9 | 99.8 | 0.16 | 0.05 | <LD | <LD | <LD | <LD | <LD | <LD | 0.21 |
| | | 12 M | 50.6 | 99.2 | 0.20 | 0.18 | <LD | <LD | <LD | <LD | <LD | <LD | 0.38 |
| BDM - 50mg/mL α-lipoic acid - 15mg/mL PEG 400:PG (90:10) qs to 1mL | Initial | | 50.3 | 100 | 0.18 | <LD | <LD | <LD | <LD | <LD | <LD | <LD | 0.18 |
| | 40°C | 1 M | 50.0 | 99.4 | 0.19 | 0.32 | 0.08 | 0.06 | 0.08 | 0.06 | 0.06 | <LD | 0.85 |
| | | 2 M | 49.8 | 99.0 | 0.19 | 0.65 | 0.21 | 0.12 | 0.13 | 0.23 | 0.14 | 0.06 | 1.85 |
| | | 3 M | 49.5 | 98.4 | 0.15 | 0.89 | 0.37 | 0.17 | 0.13 | 0.32 | 0.10 | <LD | 2.40 |
| | | 6 M | 47.0 | 93.4 | 0.20 | 1.76 | 0.66 | 0.19 | 0.31 | 0.47 | 0.33 | 0.17 | 4.93 |

EAGLEBEN-SA_00353727

107071.001394

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25°C | 3 M | 50.0 | 99.4 | 0.20 | 0.35 | 0.08 | <LD | <LD | <LD | 0.11 | <LD | 0.79 |
| | 6 M | 49.5 | 98.4 | 0.19 | 0.58 | 0.15 | 0.06 | 0.07 | 0.09 | 0.08 | 0.10 | 1.38 |
| 5°C | 6 M | 50.3 | 100 | 0.17 | 0.06 | <LD | <LD | <LD | <LD | <LD | <LD | 0.23 |
| | 12 M | 50.2 | 99.8 | 0.19 | 0.15 | <LD | <LD | <LD | <LD | <LD | <LD | 0.34 |

<LD = Below Level of Detection

[0052]    The data reported in Table 6 along with the data in Table 5 demonstrates that bendamustine solutions are stable when dissolved in mixtures of PEG and PG and 5-15mg/mL α-lipoic acid.  As shown in Table 6, bendamustine, when dissolved in combinations of polyethylene glycol and propylene glycol, in the presence of a stabilizing amount of lipoic acid, had less than 3% increase in total degradants after a period of 3 months at 40 °C.  Additionally, the same compounds had substantially no increase in total degradants after a period of 6-12 months at 5 °C and 25 °C.  The data corresponds to bendamustine solutions being stable under ambient or refrigerated storage conditions for well in excess of 2 years, and thus long term stable.

## Example 7

[0053]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 90% polyethylene glycol 400 and 10% propylene glycol.  2.5 mg/ml of thioglycerol was added as an antioxidizing agent.  The samples were maintained at 40 °C and 25 °C and analyzed for drug content and impurity profile as indicated in Table7 below.  The results obtained are presented in Table 7.

18

EAGLEBEN-SA_00353728

107071.001394

Table 7: Stability of Bendamustine in 90% PEG 400, 10% PG and Thioglycerol

| Formu-lation | Temp | Time Per. | Amt mg/ml | % of Ini-tial | RRTs of degradants | | | | | | | | | % Total Imp. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 0.15 | 0.37 | 1.10 | 1.13 | 1.15 | 1.17 | 1.18 | 1.20 | 1.22 | |
| BDM - 50mg/mL Thio glycerol - 2.5mg/mL PEG 400:PG (90:10) qs to 1mL | | Initial | 50.3 | 100 | BDL | BDL | BDL | BDL | BDL | BDL | BDL | BDL | BDL | 0.00 |
| | 40°C | 15 d | 50.2 | 99.8 | BDL | BDL | 0.18 | BDL | BDL | BDL | 0.05 | 0.08 | BDL | 0.31 |
| | | 1 M | 49.9 | 99.2 | BDL | 0.12 | 0.32 | 0.07 | BDL | BDL | 0.09 | 0.08 | BDL | 0.75 |
| | | 2 M | 49.1 | 97.6 | BDL | 0.18 | 0.56 | 0.24 | 0.09 | 0.17 | 0.19 | 0.12 | 0.11 | 1.76 |
| | | 3 M | 48.8 | 97.0 | BDL | 0.23 | 0.85 | 0.34 | 0.16 | 0.30 | 0.34 | 0.29 | 0.19 | 2.94 |
| | 25°C | 3 M | 49.9 | 99.2 | 0.06 | 0.12 | 0.23 | 0.07 | BDL | 0.06 | 0.07 | 0.06 | BDL | 0.67 |
| | | 6 M | 49.3 | 98.0 | BDL | 0.23 | 0.53 | 0.22 | 0.11 | BDL | 0.21 | 0.22 | 0.20 | 2.07 |

BDL = Below Detectable Limit

[0054]    The stability is similar to that of α-lipoic acid samples in Example 6 above. As shown in Table 7, bendamustine, when dissolved in a combination of polyethylene glycol and propylene glycol, and a stabilizing amount of thioglycerol, had less than 3% increase in total degradants after a period of 3 months at 40 °C. Additionally, the same compounds had substantially no increase in total degradants after a period of 6 months at 25 °C. The data reported supports the conclusion that these bendamustine solutions are stable under ambient or refrigerated storage conditions for about 2 years.

## Example 8

[0055]    Bendamustine-containing compositions were prepared by dissolving bendamustine HCl to a concentration of 50 mg/ml in 85% PEG 400 and 15% PG in the presence of 5 mg/ml of thioglycerol. The samples were maintained at 40 °C and 25 °C and analyzed for drug content and impurity profile as indicated in Table 8 below. The results obtained are presented in Table 8.

19

EAGLEBEN-SA_00353729

107071.001394

Table 8: Stability of Bendamustine in 85% PEG 400, 15% PG and Thioglycerol

| Formulation | Temp. | Time Period | Content (mg/mL) | % of Initial | % Total Imp. |
|---|---|---|---|---|---|
| BDM - 50mg/mL | Initial | | 51.5 | 100 | 0.12 |
| Thioglycerol - 5mg/mL | 40°C | 1 M | 50.4 | 97.9 | 1.18 |
| PEG 400:PG (85:15) qs to | 25°C | 1 M | 51.4 | 99.8 | 0.41 |
| 1mL | | 3 M | 50.4 | 97.9 | 1.21 |
| | 5°C | 3 M | 51.0 | 99.0 | 0.26 |

[0056]    The stability is similar to that of thioglycerol samples in Example 7 above.  As reported in Table 8, total impurities did not exceed 2% at 40 ºC or 25°C storage over one month, or at 25 ºC and 5 ºC storage after three months.  The data reported in Table 8 supports the conclusion that these bendamustine solutions are stable under ambient or refrigerated storage conditions for at least about 2 years if not longer.

20

EAGLEBEN-SA_00353730

107071.001394

## CLAIMS

We claim:

1. A sterile container containing a liquid bendamustine-containing composition comprising bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is about 25 mg/mL;

    a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

    a stabilizing amount of an antioxidant,

    wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C to about 25° C.

2. The sterile container of claim 1, wherein the antioxidant is monothioglycerol.

3. The sterile container of claim 1, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

4. The sterile container of claim 1, wherein the composition is stable for at least about 15 months at 5 °C or for at least about 15 months at 25 °C.

5. The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises ethanol.

6. The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises about 100 mg of bendamustine, or a pharmaceutically acceptable salt thereof.

7. The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises about 100 mg of bendamustine.

8. A liquid bendamustine-containing composition comprising bendamustine, or a pharmaceutically acceptable salt thereof, and a stabilizing amount of an antioxidant, in a pharmaceutically acceptable fluid;

21

EAGLEBEN-SA_00353731

107071.001394

wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

wherein the bendamustine concentration in the pharmaceutically acceptable fluid is about 25 mg/mL,

wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C to about 25 °C.

9. The composition of claim 8, wherein the antioxidant is monothioglycerol.

10. The composition of claim 8, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

11. The composition of claim 8, comprising ethanol.

12. The composition of claim 8, wherein the bendamustine concentration in the composition is 25 mg/mL.

22

EAGLEBEN-SA_00353732

107071.001394

# ABSTRACT

Long term storage stable bendamustine-containing compositions are disclosed. The compositions can include bendamustine or a pharmaceutically acceptable salt thereof, and a pharmaceutically acceptable fluid which can include in some embodiments PEG, PG or mixtures thereof and an antioxidant or chloride ion source. The bendamustine-containing compositions have less than about 5% total impurities, on a normalized peak area response ("PAR") basis as determined by high performance liquid chromatography ("HPLC") at a wavelength of 223nm, after at least about 15 months of storage at a temperature of from about 5 °C to about 25 °C.

23

EAGLEBEN-SA_00353733

Doc Code: PA..
Document Description:  Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | |
| Filing Date | **April 25, 2024** |
| First Named Inventor | Nagesh R. Palepu |
| Title | FORMULATIONS OF BENDAMUSTINE |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | **107071.001394** |

## SIGNATURE of Applicant or Patent Practitioner

| Signature | /Stephanie A. Lodise/ | Date (Optional) | **April 25, 2024** |
|---|---|---|---|
| Name | Stephanie A. Lodise | Registration Number | 51,430 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] *Total of ___1___ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EAGLEBEN-SA_00353734

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| | |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above: **23377**

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✓] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number:

OR

| [ ] Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

# Eagle Pharmaceuticals, Inc.

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✓] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity)

| Signature | | Date (Optional) | |
|---|---|---|---|
| Name | Robert Chang, Esq. | | |
| Title | Vice President, Intellectual Property | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

EAGLEBEN-SA_00353735

**UNITED STATES PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/646,171** | RECEIPT DATE / TIME<br>**04/25/2024 04:04:34 PM Z ET** | ATTORNEY DOCKET #<br>**107071.001394** |
|---|---|---|

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 3701 | FILED BY | VeAndra Luckett |
| PATENT CENTER # | 65247644 | FILING DATE | - |
| CUSTOMER # | 23377 | FIRST NAMED INVENTOR | Nagesh R. Palepu |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Stephanie Lodise |

## Documents                                        TOTAL DOCUMENTS: 6

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| 107071.001394 ADS.pdf | 9 | Application Data Sheet | 1227 KB |
| 107071.001394 Track One Request.pdf | 2 | Track One Request | 178 KB |
| 107071.001394 Declarations.pdf | 2 | Oath or Declaration filed | 316 KB |
| 107071.001394 POA.pdf | 2 | Power of Attorney | 907 KB |
| 107071.001394 BEND01-US-CON12 Continuation Application-APP.TEXT.docx | 23 | Application body structured text document | 64 KB |

EAGLEBEN-SA_00353736

Warning: The document contains OLE objects that are currently not supported. These objects may not be visible in your application documents. All artifacts (SmartArt, Drawings, Charts, etc) have been replaced with images. Text decorations have been removed.

| | | | |
|---|---|---|---|
| 107071.001394 BEND01-US-CON12 Continuation Application.pdf | 23 | Auxiliary PDF of Application | 209 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| 107071.001394 ADS.pdf | 185BF7E134D2FD80864D10CBCCEDCED98D4EACED752B6D0A81325A91230855EC5FF85D2621D6EC716E602578CC43979FFBD976A3CF3B7F99B295C5E8C772BF9E |
| 107071.001394 Track One Request.pdf | BD4884BF862AE5E0F1666670E6B529AD3A3D3FF902C68A0D53D4FFB1D6E37F5F126DE0499B051115C7FA2DFCCD6DFAD7953F807B3DD53F884F194958CAD60C54 |
| 107071.001394 Declarations.pdf | 3843F278EDE73C67D1325C8CBC135605351251BBE6EB841CA136ED5EB69CFC320B11DD8FAD7E8B8389E83B554BB13A50618AAEEB40D262F22C7C537D51FC4751 |
| 107071.001394 POA.pdf | EA23DBA859509F71E8E0D32BC1E59F4C3EA9121BF360B2163E9AA54D5AF9164F4BE7EC727AB362FB45D75429A4A048D1F132E67AFB2E8C0EDE9CA05371640CDC |
| 107071.001394 BEND01-US-CON12 Continuation Application-APP.TEXT.docx | 2CD45B90EB12F5BC4FC8888AC5008EC359604FC0958EC8C7289141FBD1206C53A86ADB20C779393B8D39EEDA511CB2B45C8959A7BD2C538BFA2ABBB6312A0756 |
| 107071.001394 BEND01-US-CON12 Continuation Application.pdf | 7EA742581B7D18F6CD9DA4D985830BDDC2046D243B9B108A9C75ECCD7CF9C0479292E7CB2E5F895ADBC05E6E7E6F7912BF5B13E3F5257C202F3E79BD371330E |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized

EAGLEBEN-SA_00353737

by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

## New Applications Under 35 U.S.C. 111

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

## National Stage of an International Application under 35 U.S.C. 371

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

## New International Application Filed with the USPTO as a Receiving Office

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00353738

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 107071.001394 |
|---|---|---|
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**    Remove

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Nagesh | R. | Palepu | |

**Residence Information (Select One)**  ● US Residency    ○ Non US Residency    ○ Active US Military Service

| City | Southampton | State/Province | PA | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 30 Addis Drive | | |
|---|---|---|---|
| Address 2 | | | |
| City | Southampton | State/Province | PA |
| Postal Code | 18966-1166 | Country i | US |

**Inventor    2**    Remove

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Philip | Christopher | Buxton | |

**Residence Information (Select One)**  ○ US Residency    ● Non US Residency    ○ Active US Military Service

| City | Denham, Uxbridge | Country of Residence i | | UK |
|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 4 Ford End | | |
|---|---|---|---|
| Address 2 | | | |
| City | Denham, Uxbridge | State/Province | |
| Postal Code | UB9 5AL | Country i | UK |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    Add

## Correspondence Information:

EFS Web 2.2.13

EAGLEBEN-SA_00353739

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 107071.001394 |
|---|---|---|
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 23377 |
|---|---|
| Email Address | patents@bakerlaw.com |

Add Email    Remove Email

## Application Information:

| Title of the Invention | FORMULATIONS OF BENDAMUSTINE | | |
|---|---|---|---|
| Attorney Docket Number | 107071.001394 | Small Entity Status Claimed | ☐ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Total Number of Drawing Sheets (if any) | | Suggested Figure for Publication (if any) | |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a).  Do not complete this section if application papers including a specification and any drawings are being filed.  Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ◉ Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 23377 | | |

EFS Web 2.2.13

EAGLEBEN-SA_00353740

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 107071.001394 |
|---|---|---|
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

# Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of | 18498259 | 2023-10-31 |

| Prior Application Status | Abandoned | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| 18498259 | Continuation of | 17412623 | 2021-08-26 |

| Prior Application Status | Patented | | | Remove | |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 17412623 | Continuation of | 16509920 | 2019-07-12 | 11103483 | 2021-08-31 |

| Prior Application Status | Abandoned | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| 16509920 | Continuation of | 16015656 | 2018-06-22 |

| Prior Application Status | Patented | | | Remove | |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 16015656 | Continuation of | 15432335 | 2017-02-14 | 10010533 | 2018-07-03 |

| Prior Application Status | Patented | | | Remove | |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 15432335 | Continuation of | 15013436 | 2016-02-02 | 9572797 | 2017-02-21 |

| Prior Application Status | Patented | | | Remove | |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 15013436 | Continuation of | 14031879 | 2013-09-19 | 9265831 | 2016-02-23 |

| Prior Application Status | Patented | | | Remove | |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 14031879 | Continuation of | 13016473 | 2011-01-28 | 8609707 | 2013-12-17 |

EFS Web 2.2.13

EAGLEBEN-SA_00353741

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 107071.001394 |
|---|---|---|
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

| Prior Application Status | Expired | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| 13016473 | Claims benefit of provisional | 61299100 | 2010-01-28 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

Add

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

EFS Web 2.2.13

EAGLEBEN-SA_00353742

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 107071.001394 |
|---|---|---|
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1.  Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A.  Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2)  any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B.  Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2.  Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐    A.  Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed.  If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐    B.  Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:**  Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

EFS Web 2.2.13

EAGLEBEN-SA_00353743

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 107071.001394 |
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant   1**                                                                                   Remove

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ⦿ Assignee | ◯ Legal Representative under 35 U.S.C. 117 | ◯ Joint Inventor |
| ◯ Person to whom the inventor is obligated to assign. | | ◯ Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:



Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.          ☒

| Organization Name | Eagle Pharmaceuticals, Inc. |

**Mailing Address Information For Applicant:**

| **Address 1** | 50 Tice Boulevard, Suite 315 |
| Address 2 | |
| **City** | Woodcliff Lake | **State/Province** | NJ |
| **Country** | US | Postal Code | 07677 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.          Add

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

EFS Web 2.2.13

EAGLEBEN-SA_00353744

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 107071.001394 |
|---|---|---|
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

### Assignee    1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here.    ☐

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country ⁱ | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    Add

## Signature:    Remove

NOTE: This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the <u>INITIAL</u> filing of the application <u>and</u> either box A or B is <u>not</u> checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **<u>must</u>** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **<u>all</u>** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **<u>all</u>** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Stephanie A. Lodise/ | | Date  (YYYY-MM-DD) | 2024-04-25 |
|---|---|---|---|---|
| First Name | Stephanie A. | Last Name    Lodise | Registration Number | 51,430 |

Additional Signature may be generated within this form by selecting the Add button.    Add

EFS Web 2.2.13

EAGLEBEN-SA_00353745

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 107071.001394 |
| --- | --- | --- |
| | Application Number | |

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
| --- | --- |

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.2.13

EAGLEBEN-SA_00353746

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EAGLEBEN-SA_00353747

**Doc Code: TRACK1.REQ**
**Document Description**: TrackOne Request

PTO/AIA/424 (11-23)

## CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION
### UNDER 37 CFR 1.102(e) (Page 1 of 1)

| First Named Inventor: | Nagesh R. Palepu | Nonprovisional Application Number (if known): | |
|---|---|---|---|
| Title of Invention: | FORMULATIONS OF BENDAMUSTINE | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1. The processing fee set forth in 37 CFR 1.17(i)(1) and the prioritized examination fee set forth in 37 CFR 1.17(c) have been filed with the request. The publication fee requirement is met because that fee, set forth in 37 CFR 1.18(d), is currently $0. The basic filing fee, search fee, and examination fee are filed with the request or have been already been paid. I understand that any required excess claims fees or application size fee must be paid for the application.

2. I understand that the application may not contain, or be amended to contain, more than four independent claims, more than thirty total claims, or any multiple dependent claims, and that any request for an extension of time will cause an outstanding Track I request to be dismissed.

3. The applicable box is checked below:

   I.   ☑ **Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

   i.   (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via USPTO patent electronic filing system.
   ---OR---
   (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

   ii.  An executed inventor's oath or declaration under 37 CFR 1.63 or 37 CFR 1.64 for each inventor, **or** the application data sheet meeting the conditions specified in 37 CFR 1.53(f)(3)(i) is filed with the application.

   II.  ☐ **Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

   i.   A request for continued examination has been filed with, or prior to, this form.
   ii.  If the application is a utility application, this certification and request is being filed via USPTO patent electronic filing system.
   iii. The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
   iv.  This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
   v.   No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature /Stephanie A. Lodise/ | Date April 25, 2024 |
|---|---|
| Name (Print/Typed) Stephanie A. Lodise | Practitioner Registration Number 51,430 |

***Note:*** *This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required.**

☑  *Total of ___1___ forms are submitted.

EAGLEBEN-SA_00353748

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013). https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

EAGLEBEN-SA_00353749

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

   filed on _____,

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Nagesh R. Palepu    Date (Optional): 19 SEP 2013

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

EAGLEBEN-SA_00353750

U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | FORMULATIONS OF BENDAMUSTINE |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Philip Christopher Buxton          Date (Optional): 18 SEP 2013

Signature: P.C. Buxton

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

EAGLEBEN-SA_00353751

**UNITED STATES PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/646,171 | 04/25/2024 04:04:34 PM Z ET | 107071.001394 |

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 3701 | FILED BY | VeAndra Luckett |
| PATENT CENTER # | 65247644 | AUTHORIZED BY | Stephanie Lodise |
| CUSTOMER # | 23377 | FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Nagesh R. Palepu |

## Payment Information

**PAYMENT METHOD**
DA / 233050

**PAYMENT TRANSACTION ID**
E20244OG06069708

**PAYMENT AUTHORIZED BY**
VeAndra Luckett

**PRE-AUTHORIZED ACCOUNT**
233050

**PRE-AUTHORIZED CATEGORY**
37 CFR 1.16 (National application filing, search, and examination fees); 37 CFR 1.17 (Patent application and reexamination processing fees); 37 CFR 1.19 (Document supply fees); 37 CFR 1.20 (Post Issuance fees); 37 CFR 1.21 (Miscellaneous fees and charges)

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1830 | PROCESSING FEE, EXCEPT IN PROVISIONAL APPLICATIONS | 140.00 | 1 | 140.00 |
| 1817 | REQUEST FOR PRIORITIZED EXAMINATION | 4200.00 | 1 | 4200.00 |
| 1111 | UTILITY PATENT APPL. SEARCH FEE | 700.00 | 1 | 700.00 |
| 1011 | BASIC FILING FEE - UTILITY (PAPER FILING ALSO REQUIRES NON- | 320.00 | 1 | 320.00 |

EAGLEBEN-SA_00353752

ELECTRONIC FILING FEE UNDER 1.16(T))

| 1311 | PATENT APPL. EXAMINATION FEE | 800.00 | 1 | 800.00 |
|---|---|---|---|---|
| | | | TOTAL AMOUNT: | $6,160.00 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

### New Applications Under 35 U.S.C. 111

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

### National Stage of an International Application under 35 U.S.C. 371

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

### New International Application Filed with the USPTO as a Receiving Office

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00353753

UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/646,171** | RECEIPT DATE / TIME<br>**05/15/2024 08:50:52 PM Z ET** | ATTORNEY DOCKET #<br>**107071.001394** |
|---|---|---|

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
|---|---|---|---|
| CONFIRMATION # | 3701 | FILED BY | BBX Admin |
| PATENT CENTER # | 65532151 | FILING DATE | - |
| CUSTOMER # | 23377 | FIRST NAMED INVENTOR | Nagesh R. Palepu |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Scott Conley |

## Documents                                                    TOTAL DOCUMENTS: 8

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| IDS_18646171_1.pdf | 18 | Information Disclosure Statement (IDS) Form (SB08) | 1249 KB |
| IDS_18646171_2.pdf | 8 | Information Disclosure Statement (IDS) Form (SB08) | 1246 KB |
| IDS_18646171_3.pdf | 8 | Information Disclosure Statement (IDS) Form (SB08) | 1246 KB |
| IDS_18646171_4.pdf | 8 | Information Disclosure Statement (IDS) Form (SB08) | 1245 KB |
| IDS_18646171_5.pdf | 6 | Information Disclosure Statement (IDS) Form (SB08) | 1244 KB |

EAGLEBEN-SA_00353754

| | | | |
|---|---|---|---|
| Transmittal_18646171.pdf | 2 | Transmittal Letter | 107 KB |
| FOR_9_DD152989A1_377192.pdf | 17 | Foreign Reference | 991 KB |
| NPL_24_bendeka_ruling_1838023.pdf | 70 | Non Patent Literature | 557 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| IDS_18646171_1.pdf | 25F090F79EBD2BB62D1328C34FD7C1173E5CBF9B5249D91FE6840DA0B2F72F742A452435E210ABCDBBAE02D5BD691552915306E371E1ECF713E378D3B5A64665 |
| IDS_18646171_2.pdf | 0884786E304F8A7CB5B3F99BFCDEBB4D3EB8B281043F3EC128A8555D438CA6AB60B32893A169315F118EB822B12C536347E61BA847770A17F366B0F89AE18947 |
| IDS_18646171_3.pdf | 30D899A7FF1C871BB571F3978DE5BF197206FB847BD21F613220651E09DD309B45BDDD3311D8B6F53114E2D075565707A0A3543A295244CDEABF66C629B31005 |
| IDS_18646171_4.pdf | 8833786AF6FC39BC3D060C4FCAADE15EFB9693902C296DF7CE85CAA90F7FEB40049E0D163B41EEE06799E75B219E68D45922E48880D3C145514BD698F17E84D9 |
| IDS_18646171_5.pdf | 8AE4CC05DB5DED1DEFCAB97FA1A40D2E6068279FB5F674777ABC68BED47AD942292F584376BA86D8CE2FA3750AA991952A0C308CC1E36AEA61B6C7C59C6836B5 |
| Transmittal_18646171.pdf | 9E553D4619B8C293A492FFE063CAF5BDE2CB963BD9C8653DF6ADBB8F572B04D60A379788024DA9700F6F5397164A77DE9D108F89A88C7EAA19B6E362AF02E9F4 |
| FOR_9_DD152989A1_377192.pdf | 66F18CA6EEA38A3848B269BC5D06C01773805BB8A54D9EEABFCC5FDD7C92C5F75356437A4BA5B4718E6834997B472EAEEB |

EAGLEBEN-SA_00353755

72E72E913BE816BF22DBE48F7F619A

NPL_24_bendeka_ruling_18380 23.pdf

C09D0FBD45AAC49501447E11B5B4C05E6E89DE300F175760C A0D8EF72D6075A8EAE5A35FA193E2666C846F943BB2DCE5F DD93F93AEEB1A75336ADB73D46F9EB5

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00353756

DOCKET NO.: 107071.001394

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In Re Application of: Nagesh R. Palepu

Confirmation No.: 3701

Application No.: 18/646,171

Group Art Unit: -

Filing Date: Apr 25, 2024

Examiner: -

For: FORMULATIONS OF BENDAMUSTINE

## CONTENT OF IDS PURSUANT TO 37 C.F.R. § 1.98(d)

Copies of various references are not being submitted because they were previously cited by or submitted to the U.S. Patent and Trademark Office in the following patent application(s) for which a claim for priority under 35 U.S.C. § 120 has been made in the instant application. *See* MPEP § 609.02(II)(B)(2) *stating* "[p]ursuant to 37 CFR 1.98(d), if the IDS submitted in the parent application complies with 37 CFR 1.98(a) to (c), copies of the patents, publications, pending U.S. applications, or other information submitted in the parent application need not be resubmitted in the continuing application."

| Patent Application | Filing Date |
|---|---|
| 18/498,259 | 10/31/2023 |
| 17/412,623 | 8/26/2021 |
| 16/509,920 | 7/12/2019 |
| 16/015,656 | 6/22/2018 |
| 15/432,335 | 2/14/2017 |
| 15/013,436 | 2/2/2016 |
| 14/031,879 | 9/19/2013 |
| 13/016,473 | 1/28/2011 |

Please charge any deficiency or credit any overpayment to Deposit Account No. 23-3050.

| Signature: / Scott R. Conley / | Date: 5/14/2024 |
|---|---|
| Name (Print/Typed): Scott R. Conley | Practitioner Registration Number (If applicable): 57289 |
| ☒ *Total of 6 forms are submitted. | |

1

EAGLEBEN-SA_00353757

BakerHostetler
1735 Market Street, Suite 3300
Philadelphia, PA  19103
Telephone:      (215) 568-3100
Facsimile:      (215) 568-3439

EAGLEBEN-SA_00353758

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CEPHALON, INC., *et al.*,

Plaintiffs,

v.

SLAYBACK PHARMA LIMITED
LIABILITY CO., *et al.*,

Defendants.

Civil Action No. 17-1154-CFC
**CONSOLIDATED**

---

John Shaw, Karen Keller, Nathan Hoeschen, SHAW KELLER LLP, Wilmington,
Delaware; David Berl, Adam Harber, Elise Baumgarten, Shaun Mahaffy, Ben
Picozzi, Matthew Lachman, WILLIAMS & CONNOLLY LLP, Washington,
District of Columbia

*Counsel for Cephalon, Inc.*

John Shaw, Karen Keller, Nathan Hoeschen, SHAW KELLER LLP, Wilmington,
Delaware; Alex Grabowski, Kenneth Schuler, Marc Zubick, LATHAM &
WATKINS LLP, Chicago, Illinois, Daniel Brown, Michelle Ernst, LATHAM &
WATKINS LLP, New York, New York

*Counsel for Eagle Pharmaceuticals, Inc.*

John Shaw, Karen Keller, Nathan Hoeschen, SHAW KELLER LLP, Wilmington,
Delaware; Elise Baumgarten, Matthew Lachman, WILLIAMS & CONNOLLY
LLP, Washington, District of Columbia

*Counsel for Teva Pharmaceuticals International GmbH*

Eve Ormerod, Neal Belgam, SMITH, KATZENSTEIN, & JENKINS LLP,
Wilmington, Delaware; Beth Finkelstein, Constance Huttner, Frank Rodriguez,

EAGLEBEN-SA_00353759

Case 1:24-cv-00065-JLH   Document 426-1   Filed 07/01/26   Page 75 of 391 PageID #:
19134
Case 1:17-cv-01154-CFC   Document 394-1   Filed 04/27/20   Page 2 of 70 PageID #: 14432

James Barabas, BUDD LARNER, P.C., Short Hills, New Jersey

*Counsel for Slayback Pharma Limited Liability Company*

Jeremy Cole, Damien Tancredi, Jeffrey Cohen, FLASTER GREENBURG, P.C.,
Wilmington, Delaware; John Cravero, Sherry Rollo, Steven Feldman, HAHN
LOESER & PARKS LLP, Chicago, Illinois

*Counsel for Apotex Inc.*

Brian Farnan, Michael Farnan, FARNAN LLP, Wilmington, Delaware; Arun
Mohan, SCHIFF HARDIN LLP, New York, New York; Helen Ji, Kevin Nelson,
Imron Aly, SCHIFF HARDIN LLP, Chicago, Illinois

*Counsel for Fresenius Kabi USA, LLC*

James Lennon, DEVLIN LAW FIRM LLC, Wilmington, Delaware; David Steuer,
Nicole Stafford, Shyamkrishna Palaiyanur, WILSON SONSINI GOODRICH &
ROSATI, Austin, Texas; Rhyea Malik WILSON SONSINI GOODRICH &
ROSATI, San Diego, California

*Counsel for Mylan Laboratories Limited*

## OPINION

April 27, 2020
Wilmington, Delaware

ii

EAGLEBEN-SA_00353760

_Colm F. Connolly_

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiffs Teva Pharmaceuticals International GmbH, Cephalon, Inc., and Eagle Pharmaceuticals, Inc. have sued Defendants Apotex Inc. and Apotex Corp., Fresenius Kabi USA, LLC, Mylan Laboratories Ltd., and Slayback Pharma LLC under the Hatch-Waxman Act, 35 U.S.C. § 271(e)(2)(A). Defendants seek to bring to market generic versions of Plaintiffs' Bendeka®, a drug indicated for the treatment of chronic lymphocytic leukemia (CLL) and indolent B-cell non-Hodgkin lymphoma (NHL). D.I. 1 ¶¶ 1, 12.[1] Plaintiffs allege infringement of U.S. Patent Nos. 9,265,831 (the #831 patent), 9,572,797 (the #797 patent), 9,144,568 (the #568 patent) and 9,597,399 (the #399 patent) by all defendants and infringement of U.S. Patent No. 9,572,887 (the #887 patent) by Slayback. Defendants have stipulated to infringement of the asserted claims with two exceptions outlined below. Defendants argue that all asserted claims of the asserted patents are invalid.

I held a seven-day bench trial, and, as required by Federal Rule of Civil Procedure 52(a)(1), I have set forth separately below my findings of fact and conclusions of law.

---

[1] All docket citations are to the docket for C.A. No. 17-1154 unless stated otherwise.

EAGLEBEN-SA_00353761

## I.    BACKGROUND

Plaintiffs sell Bendeka® under New Drug Application No. 208194.  D.I. 1 ¶ 13.  Eagle is the owner and assignee of the asserted patents and has listed them in connection with Bendeka® in the Orange Book maintained by the Food and Drug Administration (FDA).  *Teva Pharms. Int'l GmbH v. Apotex Inc.*, No. 17-1164 (D. Del. 2017), D.I. 1 ¶¶ 27–35.  Cephalon holds an exclusive license to the asserted patents and has assigned to Teva its rights under the license, including the right to sue for infringement.  *Id.*, D.I. 1 ¶¶ 38–39.

Bendeka®'s active ingredient is bendamustine hydrochloride (referred to by the parties as bendamustine), a nitrogen mustard chemotherapy drug that was first developed in East Germany in the 1960s.  D.I. 334 at 2; D.I. 364 ¶ 1.

In 2008, Cephalon launched the first U.S. bendamustine product, Treanda®. Tr. 403:18–22.  Cephalon initially sold Treanda® in a lyophilized, or freeze-dried, form.  Tr. 404:7–11, 1357:13–19.  Lyophilized drugs must be reconstituted into an injectable liquid before they can be administered to patients.  Tr. 404:7–18, 405:8–06:4.  Aware that bendamustine's toxicity makes it potentially dangerous for medical staff to reconstitute the drug, Eagle began in 2009 to develop a liquid bendamustine formulation that ultimately became Bendeka®.  Tr. 83:7–84:13, 86:3–19.

2

EAGLEBEN-SA_00353762

In November 2014, Cephalon launched its own liquid version of Treanda®. Tr. 981:25−82:2, 1657:10−11.

In 2015, Teva acquired Cephalon, Tr. 1660:10−14, and Cephalon thereafter commercialized Bendeka® as permitted by its exclusive license agreement with Eagle, PTX-0408; Tr. 1660:10−24, 1795:4−9.

On December 7, 2015, the FDA approved Bendeka®, D.I. 307-1 ¶ 152, and on January 27, 2016, Teva launched Bendeka®, DTX-0500; Tr. 984:17−85:23, 1006:6−07:5. Bendeka® subsequently received orphan drug exclusivity, a seven-year period during which the FDA is precluded from approving any other manufacturer's application to market the same drug to treat the same rare disease. *Eagle Pharm., Inc. v. Azar*, 2018 WL 3838265, at *1 (D.D.C. June 8, 2018), *aff'd*, 952 F.3d 323 (D.C. Cir. 2020); Tr. 1725:15−19.

In March of 2016, Teva stopped selling liquid Treanda®. DTX-0500_0001; Tr. 1623:7−8.

In July and August of 2017, Defendants each filed an Abbreviated New Drug Application (ANDA) with Paragraph IV certifications under § 505(j) of the Federal Food, Drug and Cosmetic Act to gain FDA-approval for the commercial manufacture, use, and sale of a generic version of Bendeka®. *E.g.*, D.I. 1 ¶ 15. In August of 2017, Plaintiffs filed these suits alleging that Defendants' ANDA filings with Paragraph IV certifications constituted acts of infringement. *E.g.*, D.I. 1.

3

EAGLEBEN-SA_00353763

These cases were consolidated for all purposes. *See* December 13, 2017 Order.

At trial, Plaintiffs accused all Defendants other than Slayback of infringing six formulation claims in two of the asserted patents: claims 2, 3, and 5 of the #831 patent; and claims 9 and 11 of the #797 patent. Plaintiffs also alleged infringement of six administration claims in four of the asserted patents: claims 11, 18, and 22 of the #568 patent and claim 15 of the #399 patent (by all Defendants); claim 13 of the #399 patent (by Apotex only); and claim 13 of the #887 patent (by Slayback only). Defendants countered that (1) the asserted formulation and administration claims are invalid for obviousness under 35 U.S.C. § 103; (2) the asserted formulation claims are invalid for indefiniteness under 35 U.S.C. § 112; (3) the asserted formulation claims are invalid for lack of enablement under 35 U.S.C. § 112; and (4) claim 9 of the #797 patent is invalid for lack of written description. Defendants stipulated that they infringe or induce infringement of each of the asserted claims with two exceptions: Apotex, Fresenius Kabi, and Mylan argue that (1) their ANDA products do not contain "a stabilizing amount of an antioxidant" as the asserted formulation claims require; and (2) they do not induce infringement of claim 9 of the #797 patent.

## II.  OBVIOUSNESS

### A.  Legal Standards for Obviousness

Under § 103 of the Patent Act, codified at 35 U.S.C. § 1 *et seq.*, a patent

4

EAGLEBEN-SA_00353764

"may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art [POSITA] to which said subject matter pertains." 35 U.S.C. § 103. As the Supreme Court explained in the seminal case, *Graham v. John Deere Co.*, 383 U.S. 1 (1966), under § 103, "[a]n invention which has been made, and which is new in the sense that the same thing has not been made before, may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent." *Id.* at 14. Section 103 ensures that "the results of ordinary innovation are not the subject of exclusive rights under the patent laws." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). "Were it otherwise patents might stifle rather than promote, the progress of useful arts." *Id.* (citing U.S. Const. art. I, § 8, cl. 8).

The Court reaffirmed in *KSR* that the "framework" set out in the following paragraph from *Graham* governs the application of § 103, *id.* at 406:

> While the ultimate question of patent validity is one of law, the [§] 103 condition [of patentability], . . . lends itself to several basic factual inquiries. Under [§] 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but

5

EAGLEBEN-SA_00353765

> unsolved needs, failure of others, etc., might be utilized
> to give light to the circumstances surrounding the origin
> of the subject matter sought to be patented.  As indicia of
> obviousness or nonobviousness, these inquiries may have
> relevancy.

*Graham*, 383 U.S. at 14–15 (citations omitted).

It is clear that under this framework, a district court must consider in an obviousness inquiry the three primary factors identified by the Court in *Graham*: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art.  Less clear is the role, if any, secondary considerations should play in the analysis.

The logical—some would say necessary—implication of the Court's use of the word "secondary" in *Graham* and its holding that the secondary considerations "*might* be utilized" and "*may* have relevancy" is that a district court is permitted—but not required in all cases—to examine such considerations in evaluating an obviousness-based invalidity challenge.  The Court seemed to confirm as much in *KSR*, when it noted that "*Graham* set forth a broad inquiry and *invited* courts, *where appropriate*, to look at any *secondary considerations* that would prove instructive."  *KSR*, 550 U.S. at 415 (emphasis added).

But a district court ignores *Graham*'s "invitation" to examine secondary considerations at its peril.  One legal scholar, Harmon, has observed that under Federal Circuit law "[w]e are able now safely to strike the 'may' in the . . .

EAGLEBEN-SA_00353766

sentence" in *Graham* in which the Court stated that secondary "indicia of obviousness and nonobviousness . . . may have relevancy." Robert Harmon, Cynthia Homan, Laura Lydigsen, *Patents and the Federal Circuit* 245 (13th ed. 2017). Harmon correctly notes that "[t]he Federal Circuit has emphatically and repeatedly held that objective evidence of non-obviousness [i.e., the "secondary considerations" identified in *Graham*] must be taken into account always and not just when the decisionmaker is in doubt." *Id.* In *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983), for example, the Federal Circuit held that "evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness." *Id.* at 1538. And in *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 676 F.3d 1063 (Fed. Cir. 2012), the Federal Circuit reaffirmed that holding, *id.* at 1079, and went on to say that the Supreme Court in *Graham* "did not relegate . . . to 'secondary status'" the "objective factors" the Supreme Court had explicitly identified in *Graham* as "secondary considerations," *id.* at 1078.

It is true that less than a month after *In re Cyclobenzaprine*, a different Federal Circuit panel held in *Otsuka Pharmaceutical Co. v. Sandoz, Inc.*, 678 F.3d 1280 (Fed. Cir. 2012) that because it found that the defendants had "failed to prove that [the challenged patent claim] would have been *prima facie* obvious over the asserted prior art," it "need not address" the "objective evidence" of commercial

7

EAGLEBEN-SA_00353767

success, long-felt need, and the failure of others. *Id.* at 1296. But the safer course for a district court faced with an obviousness challenge (and looking to avoid reversal by the Federal Circuit) is to treat *Graham*'s "invitation" to look at secondary considerations like a subpoena.

Obviousness is assessed based on the perspective of a POSITA at the time of the invention. *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011). The court therefore needs to guard against "hindsight bias" that infers from the inventor's success in making the patented invention that the invention was obvious. *In re Cyclobenzaprine*, 676 F.3d at 1079. The ultimate question in the obviousness analysis is "whether there was an apparent reason [for a POSITA] to combine [at the time of the invention] the known elements in the fashion claimed by the patent at issue." *KSR*, 550 U.S. at 418. "The analysis is objective." *Id.* at 406. Thus, a court must determine whether a POSITA "would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and . . . would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine*, 676 F.3d at 1069.

The party challenging the patent's validity bears the burden of proving obviousness by clear and convincing evidence. *Id.* at 1068–69. In weighing the *Graham* factors to decide whether the party has met that burden, the district court must be guided by common sense. *Wyers v. Master Lock Co.*, 616 F.3d 1231,

EAGLEBEN-SA_00353768

1238 (Fed. Cir. 2010). Indeed, "the legal determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony." *Id.* at 1239. In *KSR*, the Supreme Court warned lower courts to avoid "[r]igid preventative rules that deny factfinders common sense" and to employ instead "an expansive and flexible approach" under the *Graham* framework. *KSR*, 550 U.S. at 415. Thus, the district court may "reorder[ ] in any particular case" the "sequence" in which it considers the *Graham* factors. *Id.* at 407. And although a court should consider carefully the published prior art, "[t]he obviousness analysis cannot be confined by . . . overemphasis on the importance of published articles and the explicit content of patents." *Id.* at 419.

"[A]ny need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *KSR*, 550 U.S. at 420. And "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. "[T]he fact that a combination was obvious to try might show that it was obvious under § 103." *Id.* at 421. But a combination is obvious to try only "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions" in the prior art at the time of the invention. *Id.* And the court must also be mindful that "when the prior art teaches away from combing

EAGLEBEN-SA_00353769

certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." *Id.* at 416.

## B. Obviousness of the Asserted Formulation Claims

### 1. Findings of Fact

#### a. The Priority Date

The parties agree that the date of invention (i.e., the priority date) for the asserted formulation claims is January 28, 2010. Tr. 403:4−6, 1352:16−21, 2015:3−16; #831 patent at (60); #797 patent at (60).

#### b. Definition of the Relevant POSITA

The parties agree that a POSITA would have had the skills, education, and expertise of a team of individuals working together to formulate a liquid injectable drug product. Such a team would have included individuals with doctoral degrees in chemistry, biochemistry, pharmaceutics, pharmaceutical sciences, chemical engineering, biochemical engineering or related fields, with at least two years of post-graduate experience in developing liquid injectable drug products, or master's or bachelor's degrees in similar fields of study, with a commensurate increase in their years of postgraduate experience. Such a team also would have been familiar with a variety of issues relevant to developing liquid injectable drug formulations, including, among other things, solubility, stability, pharmacokinetics, pharmacodynamics, and other pharmaceutical characteristics. Such a team also

10

EAGLEBEN-SA_00353770

Case 1:17-cv-01154-CFC   Document 304   Filed 04/27/20   Page 13 of 76 PageID #: 14443

would have included persons with expertise in analytical chemistry, including the detection and measurement of chemical degradants. The team also would have had access to an individual with a medical degree with experience in treating patients with CLL and NHL. PDX-4-2; Tr. 562:1–63:6, 1036:7–37:11, 1353:6–20, 2014:22–15:2.

### c.     Content of the Asserted Formulation Claims

The asserted formulation claims teach a non-aqueous liquid composition that contains (1) bendamustine (or a pharmaceutically acceptable salt thereof); (2) about 5% to about 10% by volume of the solvent propylene glycol (PG); (3) the solvent polyethylene glycol (PEG); (4) one of the following ratios of PEG to PG: about 95:5, about 90:10, about 85:15, about 80:20, and about 75:25; and (5) a stabilizing amount of an antioxidant. #831 patent at claims 2, 3, 5; #797 patent at claims 9, 11. Two claims also specify components and quantities: (1) claim 11 of the #797 patent requires that "the antioxidant is thioglycerol or monothioglycerol,"[2] and (2) claim 5 of the #831 patent requires that "the bendamustine concentration is from about 25 mg/mL to about 50 mg/mL." Certain claims also recite stability limitations such as "less than or equal to 0.11% PG esters at about 1 month of storage at about 5°C." #831 patent at claims 2, 3, 5; #797 patent at claims 9, 11.

---

[2] Thioglycerol or monothioglycerol are used synonymously. Tr. 519:10–15.

EAGLEBEN-SA_00353771

Case 1:17-cv-01154-CFC   Document 384   Filed 04/27/20   Page 14 of 70 PageID #: 24444

### d.     Bendamustine, PEG, and PG

Bendamustine has two relevant functional groups at opposing ends of its chemical structure: a nitrogen mustard group and a carboxylic acid group.  Tr. 422:23−23:13, 430:19−31:6, 1038:5−7.

Nucleophiles—such as water, PG, and PEG—degrade bendamustine at its nitrogen mustard group through reactions in which an aziridinium ring forms.  Tr. 407:12−19, 564:10−66:12, 1038:13−21, 1043:23−46:12, 1381:11−18; DTX-0073 at 4:33−37; PTX-1010 at TEVABEND00296748.  Compounds like PEG and PG that have hydroxyl (OH) groups also degrade bendamustine at its carboxylic acid group through a process called esterification where the carboxylic acid group reacts with the OH groups to form degradants called esters.  Tr. 431:4−13.

When PEG is combined with bendamustine, a process called PEG oxidation accelerates the esterification reaction.  Tr. 484:15−85:11, 1416:11−18:12; PTX-0669 at TEVABEND00294275; PTX-0623 at TEVABEND00289470.  PEG thus causes more degradation at bendamustine's carboxylic acid group than the same amount of PG would cause.  Tr. 1054:5−59:11; PTX-0999 at TEVAVEND00292131; PTX-0997 at TEVABEND00291955.

Because water causes bendamustine to degrade at its nitrogen mustard group, the prior art bendamustine formulations used a lyophilized (freeze-dried) form of bendamustine that required a human operator to reconstitute it using water

12

EAGLEBEN-SA_00353772

shortly before administering it to a patient.  DTX-0094_0010; Tr. 404:7−18, 405:8−06:4, 408:17−09:1, 410:4−5, 1357:13−19.  Reconstitution by human manipulation had two known disadvantages in 2010: it increased the risk of contamination, Tr. 406:16−20; and, because bendamustine is a cytotoxic compound, it posed a potential danger to the operator, Tr. 84:2−13, 406:23−07:3; DTX-0056_0001; DTX-0056 at 2:33−67; DTX-0094_0011.

### e.  Content of the Prior Art

Defendants argue that five prior art references would have motivated a POSITA to arrive at the asserted formulation claims with a reasonable expectation of success: Olthoff, Drager, Alam, Rowe, and Boylan.  D.I. 378 at 31.

### 1)  Olthoff (DTX-0094)

Olthoff, a 1983 East German patent, claimed a stable, non-aqueous liquid injection solution of between 25 and 100 mg/mL bendamustine dissolved in a solvent consisting of 100% PG.  DTX-0094_0016; Tr. 448:20−25.  Olthoff's objective was to "produce a stable and ready-to-use injection solution out of N[itrogen]-mustard compounds, avoiding the technical solution of a dry ampoule [i.e., lyophilization]."  DTX-0094_0012; Tr. 409:18−10:5.  Olthoff disclosed that bendamustine has "a[n] extraordinarily high chemical stability for the production of injection solutions in" monovalent alcohols, glycols and polyols.  DTX-0094_0012; Tr. 410:6−11:8.  Olthoff specifically proposed dissolving

13

EAGLEBEN-SA_00353773

bendamustine in "polyols, particularly 1,2-propylene glycol [i.e., PG]." DTX-0094_0014; Tr. 412:6−14. Polyols are another name for compounds that have multiple OH groups. Tr. 412:17−18, 413:11−13. Both PEG and PG are polyols. *Id.*

Olthoff's examples did not use an antioxidant. DTX-0094_0013, _0015; Tr. 1457:5−12.

In the decades between Olthoff's publication and the priority date, its formulations were never used. DTX-0073 at 2:19−29.

### 2) Drager (DTX-0073)

About 30 years after Olthoff was published, Drager, a U.S. patent, issued in 2013. Tr. 434:6−20; D.I. 307-1 ¶ 223. (Drager's priority date is September 25, 2008 making it prior art to the asserted formulation claims.) Like Olthoff, Drager described stable "liquid pharmaceutical formulations comprising bendamustine." DTX-0073 at 2:33−35, Abstract; Tr. 433:23−25. But Drager determined that the "results described in [Olthoff] were not reproducible." DTX-0073 at 2:62−64. Drager's data showed that bendamustine in 99% PG degraded almost completely after eight weeks at 25°C and more than 20% at 5°C after one year. DTX-0073 at Fig. 3; Tr. 1378:9−80:5. The reason for that degradation, according to Drager, was that (1) PG causes bendamustine to degrade at the nitrogen mustard group, DTX-0073 at 4:19−24, 4:33−37; Tr. 602:13−15, and (2) PG's OH groups cause

EAGLEBEN-SA_00353774

Case 1:17-cv-01154-CFC    Document 384-1    Filed 04/27/20    Page 17 of 70 PageID #: 14447

bendamustine to degrade at the carboxylic acid group through esterification, DTX-0073 at 5:12−14; Tr. 602:3−6.

As a solution to the degradation problem, Drager disclosed the use of aprotic solvents, i.e., solvents containing no OH groups, in a liquid bendamustine formulation. DTX-0073 at 3:21−25; Tr. 581:19−82:12. Drager showed that dissolving bendamustine in 100% DMA, an aprotic solvent, results in no degradation of bendamustine at the carboxylic acid group. DTX-0073 at Table II; Tr. 432:22−33:7, 435:11−36:9.

Drager also taught that protic solvents—i.e., solvents, including PEG and PG, that have OH groups—are acceptable to use with bendamustine but only when combined with aprotic solvents. DTX-0073 at 3:3−10, 3:36−48, 4:18−24; Tr. 601:11−17. Drager showed that the formulation containing 66% DMA and 34% PG is stable. DTX-0073 at Table II; Tr. 436:16−37:15.

### 3)    Alam (DTX-0056)

Alam, a U.S. Patent issued on November 7, 1989, disclosed stable liquid formulations of cyclophosphamide, a compound that, like bendamustine, has a nitrogen mustard group. DTX-0056 at Abstract, 1:5−8; Tr. 422:3−9, 424:6−12. Alam tested cyclophosphamide's stability in mixtures of three polyols—PG, PEG and glycerol—and found that the formulation containing PEG and PG had "less degradation than the others." Tr. 424:2−25:5, 428:6−12, 1421:18−24; DTX-0056

EAGLEBEN-SA_00353775

at Tables 1–5. Alam disclosed using PG at a ratio of from about 10% to about 90% and PEG at a ratio of from about 90% to about 10%. DTX-0056 at 4:6–12; Tr. 425:6–14.

Bendamustine and cyclophosphamide have two structural differences that bear on how they degrade when they are mixed with PEG and PG. First, because cyclophosphamide does not have a carboxylic acid group, cyclophosphamide does not experience esterification, i.e., it does not react with compounds such as PEG and PG that have OH groups to form esters. Tr. 430:22–31:1, 1077:25–78:6. Second, in bendamustine, the nitrogen mustard group is attached to a benzene ring, while in cyclophosphamide, the group is attached to a phosphoramide. Tr. 1075:4–25. Because it is attached to a benzene ring in bendamustine, a POSITA would have expected nucleophiles such as PEG and PG to accelerate degradation at the nitrogen mustard group via the formation of an unstable aziridinium ring. Tr. 1037:19–41:16, 1058:12–17, 1060:2–9; PTX-0376 at JDG_BENDA_00002265; PTX-1010 at TEVABEND00296748. But in cyclophosphamide, the phosphoramide deactivates the nitrogen mustard group and cyclophosphamide consequently does not degrade by forming the aziridinium ring in a liquid formulation before administration. Tr. 1076:1–77:24; PTX-0991 at TEVABEND00290978; PTX-0993 at TEVABEND00291516.

Neither Alam nor Drager used an antioxidant in their exemplary or preferred

16

EAGLEBEN-SA_00353776

formulations.  Tr. 1458:2−58:23.

### 4) Rowe, Handbook of Pharmaceutical Excipients (DTX-0160)

Rowe's Handbook of Pharmaceutical Excipients disclosed that PEG is susceptible to oxidation and that one can use an antioxidant to prevent such oxidation.  DTX-0160_0011; Tr. 486:7−24.

### 5) Boylan (DTX-0063)

Boylan disclosed a list of "some of the most commonly used antioxidants in pharmaceutical injectable formulations" including monothioglycerol. DTX-0063_0019, 0020; Tr. 487:12−18.  Boylan also disclosed usual concentrations for each of the listed antioxidants.  DTX-0063_0020; Tr. 487:18−19.  Monothioglycerol is FDA-approved.  Tr. 340:20−23.

### 2. Conclusions of Law

I find that Defendants have not established by clear and convincing evidence that a POSITA would have had reason to combine the limitations recited in the asserted patents' formulation claims.  Although Defendants persuaded me that a POSITA would have had reason to try to develop a non-aqueous liquid bendamustine formulation, they failed to establish by clear and convincing evidence that a POSITA would have used in that formulation the PEG and PG solvents, PEG:PG ratios, antioxidant, concentrations of bendamustine, or PG ester stability limitations recited in the asserted claims.  I do not find Plaintiffs' evidence

17

Case 1:17-cv-01154-CFC   Document 384-1   Filed 04/27/20   Page 20 of 73 PageID #: 14430

of secondary considerations to establish nonobviousness, but I find Defendants' failure of proof with respect to *Graham*'s primary factors in this case to be dispositive and that therefore the formulation claims are not invalid under § 103.

### a.     Non-Aqueous Liquid Bendamustine Formulation

Every asserted formulation claim requires a non-aqueous liquid formulation. Due to bendamustine's instability in water, the prior art used a lyophilized form of bendamustine. Tr. 404:9–18, 1357:13–19. But, as discussed above, lyophilization had known disadvantages. To avoid lyophilization while still avoiding the use of water, a POSITA would have been motivated to create a non-aqueous liquid bendamustine product. In fact, as can be seen in Olthoff and Drager, other inventors sought to create non-aqueous liquid bendamustine formulations before the priority date.

### b.     Use of PEG and PG

The claimed non-aqueous liquid bendamustine formulations contain the solvents PEG and PG. Defendants argue that Olthoff, Drager, and Alam would have motivated a POSITA to use PEG and PG with bendamustine. D.I. 378 at 13, 16.

### 1)     Olthoff and Drager

Viewed in isolation, Olthoff would have led a POSITA to use PEG and PG in a liquid bendamustine formulation. D.I. 378 at 13; DTX-0094_0014; Tr.

EAGLEBEN-SA_00353778

Case 1:17-cv-01154-CFC    Document 384-1    Filed 04/27/20    Page 21 of 70 PageID #: 14431

412:3−18, 413:4−13.  Olthoff provided a short, finite list of solvent options that included PEG and PG.  Specifically, Olthoff reported that bendamustine is stable in monovalent alcohols and polyols, DTX-0094_0012−13; Tr. 410:6−11:8, 1084:13−86:11; and the disclosure of "polyols" would have given a POSITA just three polyol options: PEG, PG, and glycerol, Tr. 413:4−13.  Plaintiffs dispute that assertion, D.I. 371 at 20−23, but Plaintiffs' expert himself limited polyols to those three options in a patent application that he submitted in 2009, *see* DTX-0764_0011 ("Preferably the water soluble plasticizer is selected from the group consisting of polyols (glycerin [i.e., glycerol], propylene glycol, polyethylene glycols) . . . .").  His response when confronted with that disclosure at trial was: "Yes, but I didn't -- at that time I didn't know that I would be sitting here today." Tr. 1575:2−76:1.  Moreover, while I agree with Plaintiffs that Olthoff would have taught a POSITA also to consider monovalent alcohols, D.I. 371 at 21, Plaintiffs only list four monovalent alcohols that a POSITA would have considered using with bendamustine, D.I. 361 ¶ 73.  Olthoff thus would have left a POSITA with three polyols and four monovalent alcohols as options.  By providing a finite list, Olthoff would have made using PEG and PG obvious to try because a POSITA would face only "a finite number of identified, predictable solutions." *KSR*, 550 U.S. 398 at 421.

Drager, however, teaches away from Olthoff's teaching of using polyols

19

EAGLEBEN-SA_00353779

such as PEG and PG alone with bendamustine.  As noted, Drager determined that the "results described in [Olthoff] were not reproducible."  DTX-0073 at 2:62–64, 3:1–2.  And Drager's data showed that bendamustine in 99% PG degraded almost completely after eight weeks at 25°C and more than 20% at 5°C after one year.  DTX-0073 at Fig. 3; Tr. 1378:9–80:5.  As Plaintiffs' expert, Dr. Siepmann, credibly testified, a POSITA would have considered 20% degradation after just one year at 5°C to be "not good."  Tr. 1379:25–80:5.

Drager disclosed combining bendamustine with aprotic solvents as a means of reducing such degradation.  DTX-0073 at 3:3–10, 3:21–25; Tr. 581:19–82:12.  Drager also allowed for combining bendamustine with a mixture of aprotic solvents and protic solvents, including PEG and PG.  DTX-0073 at 3:3–10, 3:36–48, 4:18–24; Tr. 601:11–17.  But Drager stated that the concentration of protic solvents should be kept at 90%—and preferably lower—to limit degradation.  DTX-0073 at 3:49–4:25; Tr. 1393:3–22.  Drager specifically showed that a formulation containing 66% DMA and 34% PG is stable.  DTX-0073 at Table II; Tr. 436:16–37:15.

Defendants assert that Drager taught the use of aprotic solvents because they have no OH groups and that, therefore, Drager would have motivated a POSITA to use solvents with a low number of OH-groups.  Tr. 431:20–23, 437:8–15.  They argue that "[w]hile Drager claimed a formulation containing a polar aprotic solvent

20

EAGLEBEN-SA_00353780

Case 1:17-cv-01154-CFC    Document 384-1    Filed 04/27/20    Page 23 of 70 PageID #: 24433

(DMA) and a polar protic solvent (PG), a POS[IT]A would be motivated to remove DMA from the formulation because DMA has been known to cause problems in formulations." D.I. 379 ¶ 65; D.I. 378 at 14–15.  According to Defendants, because DMA was the only aprotic solvent listed by Drager that is "used in FDA products," D.I. 378 at 15, a POSITA would turn to protic solvents like PEG that have a relatively low number of OH groups.  D.I. 379 ¶ 67; D.I. 378 at 21.

Drager, however, teaches away from the use of only protic solvents. Therefore, Drager would not have motivated a POSITA to replace DMA with a low-OH protic solvent.  Defendants and their expert conceded that neither Drager's disclosures nor its examples taught using exclusively protic solvents.  Tr. 583:1–83:10, 1886:17–19.  Instead, Drager taught the use of an *aprotic* solvent with bendamustine to avoid degradation by nucleophiles like PEG and PG.  Moreover, Drager disclosed numerous alternative aprotic solvents that could potentially replace DMA.  DTX-0073 at 3:9–14; Tr. 1395:7–14.  And DMA was *not* the only aprotic solvent in an FDA-approved product.  The prior art reference Strickley, for example, disclosed that the aprotic solvents NMP and DMSO had been commercially used.  PTX-0569 at JDG_BENDA_00003311–14; Tr. 1390:19–24.

A POSITA in 2010 reading Olthoff and Drager thus would have found that Olthoff taught combining bendamustine with polyols including PEG and PG, but

EAGLEBEN-SA_00353781

Case 1:17-cv-01154-CFC   Document 384-1   Filed 04/27/20   Page 24 of 70 PageID #: 14434

that Drager taught away from using protic solvents, such as PEG and PG, alone with bendamustine. "Where the prior art contains apparently conflicting teachings (i.e., where some references teach the combination and others teach away from it) each reference must be considered for its power to suggest solutions to an artisan of ordinary skill . . . consider[ing] the degree to which one reference might accurately discredit another." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) (internal quotation marks and citation omitted).

After considering the two references, I find that a POSITA would have credited Drager's data and conclusions over those in Olthoff. Drager expressly asserted that the "results described in [Olthoff] were not reproducible." DTX-0073 at 2:62–64. And Drager used high-performance liquid chromatography (HPLC) to make its determinations while Olthoff used thin-layer-chromatography (TLC). Plaintiffs assert, and Defendants do not dispute, that HPLC is more reliable than TLC because of its superior sensitivity and ability to resolve impurities. Tr. 1074:4–75:3, 1086:17–20, 1380:14–25, 1511:5–11. Moreover, in the decades between Olthoff's publication in 1983 and the priority date in 2010, Olthoff's formulations were never used, suggesting that POSITAs generally did not rely on Olthoff. DTX-0073 at 2:19–29. "The elapsed time between [Olthoff] and the [asserted] patent's filing date evinces that the [asserted] patent's claimed invention was not obvious to try." *Leo Pharm. Prod., Ltd. v. Rea*, 726 F.3d 1346, 1356 (Fed.

EAGLEBEN-SA_00353782

Cir. 2013). Thus, a POSITA looking at Olthoff and Drager would have followed Drager's teaching not to use protic solvents such as PG and PEG alone with bendamustine.

### 2) Alam

Defendants also argue that Alam's disclosure of mixing cyclophosphamide with PEG and PG would have motivated a POSITA to use those solvents with bendamustine because both bendamustine and cyclophosphamide have nitrogen mustard groups. D.I. 378 at 16. But two structural differences between cyclophosphamide and bendamustine that effect how they degrade when they are combined with PEG and PG would have discouraged a POSITA from relying on Alam in formulating bendamustine. First, unlike bendamustine, cyclophosphamide does not have a carboxylic acid group and thus does not undergo an esterification reaction when it is combined with PEG or PG. Tr. 1077:25–78:6, 1421:1–5. Second, because the nitrogen mustard group in bendamustine is attached to a benzene ring, while in cyclophosphamide it is attached to a phosphoramide, cyclophosphamide degrades differently at the nitrogen mustard group than bendamustine does. Tr. 1077:4-1077:24; PTX-0991 at TEVABEND00290978; PTX-0993 at TEVABEND00291516. Defendants' expert, Dr. Pinal, did not point to any prior art references to support his contrary conclusion that "the nitrogen group in the two molecules are exactly the same." Tr. 423:7–13, 504:21–05:5.

23

EAGLEBEN-SA_00353783

I find therefore that a POSITA in 2010 would not have viewed cyclophosphamide as a relevant comparator for bendamustine reactions, Tr. 1078:7–11, and would not have considered Alam in formulating a stable bendamustine formulation, Tr. 1420:10–21:5.

* * * *

In sum, Defendants have not proven by clear and convincing evidence that Olthoff, Drager, and Alam would have motivated a POSITA to use PEG and PG to create a non-aqueous liquid bendamustine formulation. Although Olthoff taught using polyols such as PEG and PG with bendamustine, Drager teaches away from the use of protic solvents such as PEG and PG alone with bendamustine and a POSITA would credit Drager's teaching over Olthoff's. Moreover, a POSITA looking to solve the degradation problem in bendamustine would not have considered Alam in formulating a liquid bendamustine product because Alam concerned a compound that degrades differently than bendamustine when combined with PEG and PG.

### c.    Use of Claimed PEG:PG Ratios

Every asserted formulation claim requires a PEG:PG ratio that falls between 95:5 and 75:25. Defendants argue that the claimed PEG:PG ratios would have been obvious "in light of Alam's express disclosure of the entire range from 10:90 to 90:10." D.I. 378 at 19–20. But as explained above, the prior art would not have

24

EAGLEBEN-SA_00353784

motivated a POSITA to use PEG and PG in the first place. Also, even if a POSITA had chosen to use PEG and PG, it would not have relied on Alam because Alam concerned a compound that degrades differently than bendamustine in reaction to PEG and PG. Finally, the claimed formulations use more PEG than PG whereas Alam preferred using more PG than PEG, DTX-0056 at 4:6–12, and a POSITA in 2010 would have known that PEG would cause more degradation at bendamustine's nitrogen mustard group than PG due to PEG oxidation. Tr. 1054:5–59:11; PTX-0999 at TEVAVEND00292131; PTX-0997 at TEVABEND00291955. Thus, Alam did not make obvious the PEG:PG ratios recited in the asserted formulation claims.

### d.    Use of An Antioxidant

Every asserted claim requires an antioxidant and one asserted claim requires that the antioxidant be monothioglycerol. Assuming a POSITA had chosen to use a 90% PEG and 10% PG bendamustine formulation, that POSITA would have been motivated to curb PEG oxidation: a process in which PEG accelerates the esterification reaction. Tr. 484:15–85:11, 1416:11–18:12; PTX-0669 at TEVABEND00294275; PTX-0623 at TEVABEND00289470.

Defendants argue that Boylan and Rowe would have motivated a POSITA to solve the oxidation problem with an antioxidant. D.I. 378 at 22–23. They assert that Rowe taught a POSITA to inhibit the oxidation of PEG with the inclusion of a

25

EAGLEBEN-SA_00353785

suitable antioxidant and that Boylan taught using specific antioxidants, including monothioglycerol.  D.I. 378 at 23; Tr. 486:7–24, 488:7–9, 505:11–06:7, 543:2–5; DTX-0160_0011; DTX-0063_0020.  Defendants also note that monothioglycerol is "very commonly used," and is FDA-approved for injectable products.  D.I. 378 at 23.[3]

Other prior art references, however, teach away from the use of antioxidants. *See* Tr. 1452:20–53:21; *Note for Guidance*, European Agency for the Evaluation of Medicinal Products, PTX-0629 at TEVABEND00290713, TEVABEND00290720 ("Antioxidants should only be included in a formulation if it has been proven [t]hat their use cannot be avoided."); *Pharmaceutical Preformulation and Formulation*, Interpharm, PTX-0391 at JDG_BENDA_00000415 (stating that antioxidant use "is now in decline" and that "[a] preferred method of preventing oxidation [over antioxidants] is simply to exclude oxygen").  Moreover, none of the four approved injectable products in the prior art that contained PEG included an antioxidant.  Tr. 600:4–6, 1454:24–55:17; PTX-0722 (Ativan); PTX-0718 (Busulfex); PTX-0720 (Robaxin); PTX-0569 at JDG_BENDA_00003308 (VePesid).  In addition, the

---

[3] Defendants also assert that Drager taught "the use of antioxidants in the formulation."  D.I. 378 at 22.  They did not, however, request a finding of fact on this point and none of Drager's preferred or exemplary formulations contained an antioxidant.  Drager mentioned that the invention may include other excipients such as an antioxidant, DTX-0073 at 7:1−18, claim 5, but it did not encourage a POSITA to use an antioxidant.

26

EAGLEBEN-SA_00353786

liquid bendamustine examples in Defendants' prior art references do not include antioxidants: Olthoff's liquid bendamustine formulation with PG had no antioxidant, DTX-0094 at JDG_BENDA_00002313; Tr. 1457:5–12, and neither Alam nor Drager used an antioxidant in their exemplary formulations, Tr. 1458:2–58:23. Accordingly, I find that Defendants did not establish by clear and convincing evidence that the combination of Boylan and Rowe would have motivated a POSITA to use an antioxidant.

### e. Use of the Claimed Bendamustine Concentrations

Claim 5 of the #831 patent requires a bendamustine concentration of "from about 25 mg/mL to about 50 mg/mL." DTX-0006_0009. Defendants argue that "[t]here was nothing special or unobvious about [that] concentration range" in view of the Treanda® Label and Olthoff. D.I. 378 at 25.

First, Defendants assert that the lyophilized Treanda® Label would have motivated a POSITA to use the claimed concentrations because a POSITA would have multiplied the 120 mg/m$^2$ dose for NHL patients disclosed in the lyophilized Treanda® Label, DTX-0848_0001, by the average body-surface-area of a human, 2.0 m$^2$, to get a 240 mg total dosage, D.I. 378 at 25–26. According to Defendants, the POSITA then would have placed that dose in a common vial size of either 5 mL or 10 mL to arrive at a concentration of either 24 or 48 mg/mL. D.I. 378 at 26. Defendants, however, offered no evidence establishing why a POSITA would have

27

EAGLEBEN-SA_00353787

combined a dosage for a lyophilized bendamustine formulation with a particular vial size when making a liquid bendamustine formulation.

Second, Defendants argue that Olthoff would have motivated a POSITA to reach the claimed concentration because "Olthoff disclosed and claimed [PG-only] liquid bendamustine formulations containing 'concentrations of 25 mg/m[L] to 100 mg/m[L],'" D.I. 378 at 25, and Olthoff disclosed that bendamustine's solubility in PG was very high, 125 mg/mL, D.I. 378 at 26. Defendants assert that "[w]hile the prior art did not disclose bendamustine's solubility in PEG, . . . solubility is an inherent (i.e. intrinsic) property" that can be discovered through routine testing, and given the high 125 mg/mL solubility in PG, a POSITA "would understand that by adding PEG to PG, the solubility would drop from 125 to a lower value, and that at ten percent PG and 90 percent PEG, it would be possible to make a solution with a concentration of 25 milligrams per milliliter." D.I. 378 at 26–27.

But as explained above, Defendants have not established a motivation to use PEG and PG in the first place. Thus, even assuming that a POSITA could have found bendamustine's solubility in PEG through routine testing, Defendants did not establish by clear and convincing evidence that a POSITA would have been motivated to conduct such testing. As Plaintiffs note, Defendants' expert "testified only that the POS[IT]A would have considered it 'possible' to dissolve 25 mg/mL bendamustine in 90:10 PEG:PG at room temperature, far short of establishing

28

EAGLEBEN-SA_00353788

motivation" to use PEG.  D.I. 371 at 43.

Moreover, Defendants fail to explain why a POSITA would believe that bendamustine would have a lower solubility in PEG and PG as opposed to in PG alone based only on bendamustine's high solubility in PG.  In choosing a concentration, a POSITA would have required that the bendamustine concentration remain below the formulation's bendamustine solubility limit so that the bendamustine would completely dissolve and dangerous precipitation would not occur.  Tr. 591:19–92:7, 593:23–94:4, 1434:13–35:9, 1435:10–25, 1472:12–14; PTX-0667 at TEVABEND00293319.  Because a POSITA would want to avoid such precipitation, it would likely not combine bendamustine with a 90% PEG and 10% PG formulation based on bendamustine's solubility in PG alone.

### f.    PG Ester Stability Limitations

Finally, certain asserted formulation claims contain a stability limitation, i.e., a maximum amount of degradants called PG esters that the composition can have after storage for a set time period at a set temperature.  For example, claims 2, 3, and 5 of the #831 patent recite compositions having "less than or equal to 0.11% PG esters at about 1 month of storage at about 5°C."  #831 patent at claims 2, 3, 5.

Defendants argue that the stability limitations are an inherent property because at least one obvious formulation in the asserted claims would naturally result in the required PG ester levels.  D.I. 378 at 27.  But "[t]o prove that a claim

29

Case 1:17-cv-01154-CFC    Document 394    Filed 04/27/20    Page 32 of 70 PageID #: 14462

limitation is inherent in the prior art, [the challenger] must show . . . [not only] that the limitation at issue is necessarily present, or the natural result of the combination of elements," but also that the combination of elements that naturally result in the limitation is *"explicitly disclosed by the prior art." Par Pharm., Inc. v. Twi Pharm., Inc.*, 120 F. Supp. 3d 468, 473 (D. Md.), *aff'd*, 624 F. App'x 756 (Fed. Cir. 2015) (emphasis added) (internal quotation marks omitted); *see also* D.I. 378 at 28 (*"Once an embodiment is shown to be obvious*, any corresponding data can be used to show that the stability property is inherent." (emphasis added)). Because I find that the combination of elements that Defendants allege inherently result in the stability limitations is not obvious, such limitations are not obvious through inherency.

### g.    Secondary Considerations

The parties adduced at trial evidence of only one secondary consideration that bears on the formulation claims—commercial success.  D.I. 371 at 79–80. Plaintiffs argue that "[s]ales of Bendeka® exceed $2 billion," and that "Bendeka® halted the downward trend in bendamustine sales, despite increasing competition." D.I. 371 at 79.  But such evidence does not support a finding of nonobviousness. First, Bendeka® sells at a lower price than the prior art lyophilized Treanda® product.  Tr. 1641:25–42:3, 1680:2–12, 1798:8–99:2.  Second, Plaintiffs' cluster

EAGLEBEN-SA_00353790

Case 1:17-cv-01154-CFC    Document 394    Filed 04/27/20    Page 33 of 70 PageID #: 14465

of exclusivities has blocked others from entering the market.[4]  Tr. 1723:24–26:1, 1730:3–7.  "Where market entry by others was precluded . . . the inference of nonobviousness of the asserted claims, from evidence of commercial success, is weak." *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 740 (Fed. Cir. 2013) (internal quotation marks, alterations, and citations omitted).

\* \* \* \*

Although the evidence of commercial success does not support a finding of nonobviousness, I still find that Defendants have not shown by clear and convincing evidence that the prior art they cited would have motivated a POSITA to reach the claimed formulations.  As discussed above, a POSITA would have credited Drager over Olthoff, and Drager teaches away from the use of protic solvents such as PG and PEG alone with bendamustine.  Moreover, a POSITA would not have relied on Alam in formulating bendamustine.  Finally, clear and convincing evidence does not show that a POSITA would have relied on Boylan and Rowe as motivation to use an antioxidant because of the references that teach

---

[4] Cephalon had an exclusive license from Fujisawa to develop bendamustine in the U.S.  DTX-1230_0001, _0002, _0019; Tr. 1226:24–27:1, 1263:21–25, 1233:18–34:25.  Also, in 2008, lyophilized Treanda® obtained seven years of orphan drug exclusivity (ODE) and an additional six months of pediatric exclusivity.  Tr. 1723:24–26:1.  Bendeka® also received ODE. *Eagle Pharm.*, 2018 WL 3838265, at *1.  Thus, Bendeka® received seven years of exclusivity that would prevent generics from entering the market until 2022.  Tr. 1723:24–26:1.

EAGLEBEN-SA_00353791

away from the use of antioxidants in injectable formulations. And the Treanda®️ Label and Olthoff would not have motivated a POSITA to reach the claimed concentrations.

### C.    Obviousness of the Asserted Administration Claims

#### 1.    Findings of Fact

##### a.    The Priority Date

The parties agree that the priority dates for the asserted administrations claims are (1) March 20, 2012 for claim 22 of the #568 patent, and (2) July 10, 2012 for the remaining administration claims. D.I. 332; Tr. 2015:10-16.

##### b.    Definition of the Relevant POSITA

The parties agree that a POSITA would have had the skills, education, and expertise of a team of individuals working together to develop a safe and effective administration protocol for a cytotoxic parenteral[5] drug product. Such a team would have included individuals with doctoral degrees in pharmaceutics, pharmaceutical sciences, pharmacology, pharmacokinetics, pharmacodynamics, or related fields, with at least two years of post-graduate experience in developing protocols for pharmaceutical administration, or master's or bachelor's degrees in similar fields of study, with a commensurate increase in their years of post-

---

[5] In the pharmaceutical field, "parenteral" typically refers to products that are administered by injection. Tr. 407:6–8.

32

EAGLEBEN-SA_00353792

graduate experience. Such a team would have been familiar with a variety of issues relevant to administering liquid injectable drug products, including, among other things, toxicity, solubility, pharmacokinetics, and pharmacodynamics. Such a team would have included at least one individual with a medical degree with experience in treating patients with CLL and NHL. PDX-2-4; Tr. 1112:4-20, 1293:22–94:9, 1233:1–17, 2014:22–15:2.

### c.    Content of the Asserted Administration Claims

The asserted administration claims recite methods of treating CLL or NHL[6] with a liquid bendamustine composition. #568 patent at claims 11, 18, 22; #887 patent at claim 13. Certain claims require administering the bendamustine composition on days one and two of a 21-day cycle for NHL, #568 patent at claim 18, or on days one and two of a 28-day cycle for CLL, #568 patent at claim 11. One claim requires a bendamustine dose of "about 25 mg/m$^2$ to about 120 mg/m$^2$." #887 patent at claim 13.

The asserted administration claims also specify administration times, the longest time being "about 15 minutes or less." *See e.g.*, #568 patent at claim 22; #887 patent at claim 13. They also specify administration volumes that are all 100 mL or less. *See e.g.*, #399 patent at claim 13. Finally, certain claims specify post-

---

[6] Two claims recite, more generally, a "method of treating cancer or malignant disease." #399 patent at claims 13, 15.

EAGLEBEN-SA_00353793

dilution bendamustine concentrations ranging from 0.05 mg/mL to 12.5 mg/mL. *See e.g.*, #568 patent at claims 11, 18.

### d.    Content of the Prior Art

Defendants argue that eight prior art references would have motivated a POSITA to combine the elements of the claimed administration with a reasonable expectation of success: Palepu 2011, the Treanda® Label, Preiss 1985, Preiss 1998, Schöffski 2000a, Schöffski 2000b, Barth, and Glimelius.[7]  D.I. 378 at 53.

### 1)    Palepu 2011 (DTX-0984)

Palepu 2011 is the published application that led to the asserted formulation patents.  Tr. 546:25–47:17.  The parties have stipulated that Palepu 2011 disclosed the formulations claimed in the asserted formulation and administration claims. D.I. 320 ¶ 6.

### 2)    Treanda® Label (DTX-0993 and DTX-1202)

The Treanda® Label, published in April 2009, D.I. 307-1 ¶ 247, disclosed two FDA-approved liquid bendamustine composition dosing schedules: (1) for CLL, intravenous (IV) infusion at a dose of 100 mg/m² over 30 minutes on days

---

[7] Defendants also cite Olthoff to argue that the asserted administration claims were obvious, but the arguments regarding Olthoff were advanced only by Dr. Yates, an admitted non-formulator, and an expert that all Defendants but Apotex rejected. Tr. 918:11–17, 920:19–22:13.  Dr. Yates is a professional witness with limited relevant experience who has testified repeatedly for Apotex.  Tr. 908:17–13:12.  I did not find his testimony credible and do not rely on it.

EAGLEBEN-SA_00353794

one and two of a 28-day cycle for up to six cycles, Tr. 648:3–9; DTX-0993_0001; DTX-1202_001; and (2) for NHL, IV infusion at a dose of 120 mg/m$^2$ over 60 minutes on days one and two of a 21-day cycle for up to eight cycles, DTX-0993_0001; DTX-1202_001; Tr. 648:3–9.

The Treanda® Label required the administration of Treanda® in a volume of 500 mL, Tr. 652:13–16; DTX-1202_002, with a post-dilution bendamustine concentration of 0.2–0.6 mg/mL bendamustine, DTX-0993_0002; DTX-1202_003; Tr. 652:21–23.

### 3)   Preiss 1985 (DTX-0320; DTX-0985)

Preiss 1985 disclosed the results of a pharmacokinetic analysis of bendamustine.  DTX-0320_0002; Tr. 658:25–59:2, 1119:18–20.  A pharmacokinetic analysis is a preliminary study in which a new drug is administered to a small number of patients to determine the Cmax and area under the curve (AUC).  The Cmax is the peak concentration of the drug in the bloodstream; the AUC is the patient's total exposure to the drug.  Tr. 659:3–15, 847:8–24, 1114:2–7, 1120:18–25.  Pharmacokinetic studies are not designed to assess a drug's safety.  Tr. 724:7–12, 1120:8–25.

Preiss 1985 administered bendamustine intravenously for three minutes to seven patients with various cancers.  DTX-0320_0002; Tr. 659:23–60:2, 723:16–24:3.  Preiss 1985 administered an average total dose of 280 to 375 mg.

35

Preiss 1985 reported "only rather mild side effects" at those doses. DTX-0320_0006; Tr. 664:6–20, 1123:9–22.

### 4)    Preiss 1998 (DTX-0991)

Preiss 1998 investigated bendamustine's clinical pharmacology and defined bendamustine's maximum tolerated dose (MTD) and dose limiting toxicities (DLT). DTX-0991_0002; Tr. 674:16–25. The MTD of a drug is a tolerable dose without severe or life-threatening toxicities; it differs from a recommended dose for clinical use. Tr. 1126: 9–11. DLTs are severe or life-threatening side effects. Tr. 674:23–75:1, 1126:12–23. Preiss 1998 administered bendamustine to more than 50 patients with various cancers. DTX-0991_002. Preiss 1998 was not designed to evaluate the safety of an infusion protocol. Tr. 730:22–31:1, 731:8–21.

Preiss 1998 administered three-to-ten-minute one-time infusions of bendamustine in doses ranging from 54 to 226 mg/m$^2$. It also administered three-to-ten-minute infusions on four consecutive days in doses ranging from 20 to 88 mg/m$^2$. DTX-0987_005. Preiss 1998 concluded that "only mild toxicity occurred even at high doses (> 200mg/m$^2$ b-hydrochloride per cycle)." DTX-0991_0004; Tr. 676:19–25. Preiss 1998 reported "disorientation" and a "vegetative neurotoxic effect" after the one-time infusions of 175 mg/m$^2$ and 215 mg/m$^2$ doses. DTX-991_0004, _0005.

EAGLEBEN-SA_00353796

### 5) Schöffski 2000a (DTX-0987)

Schöffski 2000a administered bendamustine over 30 minutes and compared its results to the three-to-ten-minute infusions disclosed in Preiss 1998. DTX-0987_0002, _0005; Tr. 678:4−14. Schöffski 2000a reported that some side effects from its 30-minute infusions were comparable to those observed with the three-to-ten-minute infusions in Preiss 1998. DTX-0987_0005, _0006; Tr. 678:10−79:5.

### 6) Schöffski 2000b (DTX-0988)

Schöffski 2000b administered 60 to 80 mg/m$^2$ of bendamustine in 30 minutes. DTX-0988_0001−03; Tr. 679:20−22. Schöffski 2000b observed side effects that were comparable to those observed in Schöffski 2000a. DTX-0988_0005. Schöffski 2000b's authors did not "observe confusion or other signs of neurotoxicity when giving the drug as a repeated 30-min i.v. infusion." DTX-0988_0005.

### 7) Barth 2010 (DTX-1004)

Barth suggested administering bendamustine in a solvent volume of 100 to 250 mL. DTX-1004_0005; Tr. 658:12−20, 681:21−83:8. Barth explained that

> [t]he 30-minute short infusion [of bendamustine] that is practiced in Germany can be readily achieved with infusion volumes of 100 to 250 m[L] 0.9% NaCl.
> It is unclear why the American prescribing information specifies 500 m[L] 0.9% NaCl or a final concentration of 0.2-0.6 mg/m[L] . . . . A short infusion with such volume is difficult to implement.

37

EAGLEBEN-SA_00353797

DTX-1004_0005; Tr. 682:9–83:2. Barth did not disclose any study or data. DTX-1004_0005; Tr. 1157:22–59:18.

### 8)   Glimelius (DTX-0079)

Glimelius disclosed the administration of 5-Fluorouracil to treat colorectal cancer as an infusion lasting ten to 20 minutes using a 50 to 100 mL mini-bag. DTX-0079_0001, _0002. Mini-bags are small standard size bags. Tr. 554:2–9.

### 2.   Conclusions of Law

Defendants did not establish by clear and convincing evidence that a POSITA would have been motivated to combine the prior art references to arrive at the claimed administrations with a reasonable expectation of success. Although the prior art would have motivated a POSITA to reach the claimed formulation, dose, and dosing schedule, and although Plaintiffs' proffered secondary indicia of nonobviousness were of little or no probative value, I find that the prior art would not have motivated a POSITA to reach the remaining claim limitations, and thus the claims as a whole are not obvious.

### a.   Formulation, Dose, and Dosing Schedule

The parties agree that Palepu 2011, the published application that led to the asserted formulation patents, disclosed before the priority date the formulations found in the asserted administration claims. D.I. 320 ¶ 6. But Plaintiffs argue that Defendants have not shown that a POSITA would have been motivated to select

EAGLEBEN-SA_00353798

Case 1:17-cv-01154-CFC    Document 394    Filed 04/27/20    Page 41 of 76 PageID #: 18471

Palepu 2011's formulations for the administrations recited in the asserted claims. D.I. 371 at 48. Palepu 2011 itself, however, established a motivation to use its formulations: it touted advantages of its disclosed formulations including "that they have substantially improved long term stability when compared to currently available formulations" and that they "are advantageously ready to use or ready for further dilution" and thus "[r]econstitution of lyophilized powder is not required." DTX-0984_0002 at [0007]; Tr. 889:8−90:3. It is undisputed that a POSITA would have wanted to use a stable and ready-to-use formulation as part of an improved administration method.

A POSITA also would have been motivated to combine Palepu 2011 with the Treanda® Label to come up with the claimed doses and dosing schedule. Palepu 2011 instructed administering its formulations in accordance with the Treanda® dosing schedule. DTX-0984_0004 at [0044]; Tr. 856:8−9. And the Treanda® Label taught similar doses and the same dosing schedules as those in the asserted administration claims. DTX-0993_0001; DTX-1202_0001; Tr. 654:18−21, 695:10−20. The required dose found in the claims is about 25 mg/m$^2$ to about 120 mg/m$^2$ and the Treanda® Label requires doses of 100 mg/m$^2$ or 120 mg/m$^2$. #887 patent at claim 13; DTX-0993_0001; DTX-1202_0001. Also, the dosing schedule recited in the claims is the same as the Treanda® Label's schedule: (1) for CLL, infusion on days one and two of a 28-day cycle, #568 patent

39

EAGLEBEN-SA_00353799

at claim 18; DTX-0993_0001; DTX-1202_001; Tr. 648:3–9; and (2) for NHL, IV infusion on days one and two of a 21-day cycle, #568 patent at claim 11; DTX-0993_0001; DTX-1202_001; Tr. 648:3–9.

That said, the asserted administration claims require administering each bendamustine dose in faster times, in lower volumes, and at higher post-dilution concentrations than the Treanda® Label requires. The question thus remains whether a POSITA would have been motivated to reach the claimed administration times, volumes, and concentrations.

### b.    Administration Times, Volumes, and Post-Dilution Concentrations

All asserted claims require administering bendamustine in 15 minutes or less, with some requiring ten minutes or less. All asserted claims also require administering bendamustine in a volume of 100 mL or less, with some claims requiring about 50 mL. Finally, all but one of the asserted administration claims require post-dilution bendamustine concentrations ranging from 0.05 to 12.5 mg/mL.[8]

Defendants argue that the claimed administration times were obvious under the Preiss and Schöffski studies; that the claimed administration volumes are

---

[8] Claim 13 of the #887 patent, the only claim asserted against Slayback, does not have a concentration limitation. D.I. 362 at 3.

40

EAGLEBEN-SA_00353800

obvious under the Preiss studies, Barth, and Glimelius;[9] and that the claimed post-dilution concentrations are obvious under the Preiss studies and the Treanda® Label.  Defendants also contend that Eagle's post-invention statements corroborate Defendants' assertion that the Preiss studies would have motivated a POSITA to use shorter administration times, lower volumes, and higher concentrations.

### 1)   The Preiss Studies

Defendants argue that the Preiss studies support a finding that the claimed administration times, volumes, and concentrations are obvious.  First, Defendants argue that a POSITA would have been motivated to administer bendamustine in 15 minutes or less because Preiss 1985 and Preiss 1998 disclosed that administration of bendamustine in three-to-ten minutes was well-tolerated in humans and Schöffski 2000a and 2000b disclosed that the safety results of 30-minute bendamustine administrations were consistent with Preiss's three-to-ten-minute infusions.  D.I. 378 at 39–40.  Second, Defendants assert that the Preiss studies render the claimed volumes of 100 mL or less obvious because, although the Preiss references did not disclose a volume, a POSITA would have known based on Preiss's three-to-ten-minute time constraint and typical infusion rates that the

---

[9] Relying on the testimony of Dr. Yates, Defendants also cite Olthoff to argue that the claimed volumes were obvious.  D.I. 378 at 43.  As noted above, I did not find Dr. Yates's testimony to be credible and will not rely on it.  Moreover, Olthoff's example bendamustine formulation did not use PEG and, as explained above, Drager discredited Olthoff's data.  DTX-0094_0015; Tr. 923:14–24.

41

EAGLEBEN-SA_00353801

studies infused similar volumes. D.I. 378 at 42. Third, Defendants contend that Preiss rendered the claimed concentrations of 0.05 to 12.5 mg/mL obvious because Preiss 1985 likely used a concentration of 5.6 mg/mL. D.I. 378 at 46.

I find, however, that the Preiss studies would not have motivated a POSITA to reach the claimed administration times, volumes, or concentrations because (1) a POSITA would not have relied on the Preiss studies to determine a safe and effective infusion time, volume, or concentration for bendamustine, (2) subsequent prior art taught away from Preiss's three-to-ten-minute infusions, and (3) Defendants only hypothesize that the Preiss studies used volumes and concentrations similar to those in the claimed administrations.

> **a)** **A POSITA would not have relied on the Preiss studies to determine a safe administration.**

As an initial matter, Preiss 1985 and Preiss 1988 were not designed to evaluate safety, and thus a POSITA would not have relied on the Preiss studies to determine a safe infusion time, volume, or concentration. Tr. 724:7–12, 730:22–31:1, 731:8–21. Moreover, the Preiss studies did not provide enough data points or information to allow a POSITA to rely on them for safety information. Preiss 1985 tested only seven patients with various cancers, DTX-320_0002; Tr. 723:16–24:3, 1122:20–22; it did not discuss how it collected side effect information, including the number or timing of observations, the side effects being

42

observed, or a grading system, Tr. 724:14−28:16; and it neither specified which of the seven patients in the study had side effects nor distinguished between IV and oral side effects, Tr. 728:8−20. A POSITA would not have concluded that side effects would not be present in a larger population, Tr. 1121:1−5, let alone the relevant population, Tr. 1122:20−23:8, based on a study that covered only seven patients with various cancers and offered no explanation of how the side effects were studied or which patients experienced the side effects. Preiss 1998 similarly tested patients with various cancers, Tr. 1125:24−26:1, and it did not disclose when the side effects it reported were monitored or how many times side effect information was collected from patients. Thus, a POSITA would not have relied on either Preiss study to determine the safety of a short bendamustine infusion. Tr. 1122:14−19, 1123:9−22.

In addition, the parties agree that the claimed administrations require repeated cycles, D.I. 378 at 38; D.I. 371 at 59, but the Preiss studies did not administer bendamustine in repeated cycles.[10] And according to Defendants' expert, "bendamustine therapy side effects result from . . . the number of cycles given" and "these side effects are typically more severe in subsequent cycles

---

[10] Defendants cited no reference that administered bendamustine in ten minutes or less in repeated cycles. Tellingly, Defendants' references that did administer bendamustine in repeated cycles all used 30-minute infusions. DTX-0987_0001; DTX-0988_0001; DTX-1004_0002, _0005; DTX-0848; PTX-0268.

43

EAGLEBEN-SA_00353803

Case 1:17-cv-01154-CFC    Document 594    Filed 04/27/20    Page 46 of 76 PageID #: 16476

because there are cumulative effects on bone marrow." Tr. 736:11–37:20. A POSITA would therefore not have relied on the Preiss studies to determine the safety of a short infusion of bendamustine administered in multiple cycles. Tr. 1133:7–11. Moreover, neither Preiss study administered bendamustine over two consecutive days as the claims require. Tr. 1129:12–20.

The Schöffski articles also would not have motivated a POSITA to rely on the Preiss studies to determine the safety of a short infusion time, lower infusion volume, or higher infusion concentration. Schöffski 2000a reported that it observed *some* side effects like those in Preiss 1998, but did not compare the overall incidence or severity of side effects in the two infusion protocols. DTX_0987_0006,_0007; Tr. 1138:21–39:19. Also, Schöffski 2000b stated that it observed similar side effects to those observed in Schöffski 2000a, not that it observed the same side effects as Preiss. And Schöffski 2000b stated that it did not "observe confusion or other signs of neurotoxicity when giving the drug as a repeated 30-min i.v. infusion," DTX-0988_005, while Preiss 1998 reported "disorientation" and a "vegetative neurotoxic effect," DTX-0991 at JDG_BENDA_00006920–21.

**b)  Subsequent prior art taught away from the Preiss infusions.**

Subsequent prior art also would have dissuaded a POSITA from relying on the Preiss studies. A POSITA would not have stopped with Preiss 1985 and Preiss

EAGLEBEN-SA_00353804

1998; instead, it would have also considered later prior art references that used 30 to 60 minute infusions and a 500 mL volume. "Too often the obviousness analysis is framed as an inquiry into whether a person of skill, with two (and only two) references sitting on the table in front of him, would have been motivated to combine . . . the references in a way that renders the claimed invention obvious. The real question is whether that skilled artisan would have plucked [those references] out of the sea of prior art and combined [them]." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1337 (Fed. Cir. 2016).

The Preiss researchers themselves conducted later studies and recommended in subsequent papers an infusion of at least 30 minutes in 500 mL. DTX-0987_0001; DTX-0988_0001; PTX-0268; DTX-0982_0009; Tr. 1145:13−46:7. Preiss 2003—conducted by the same research group as Preiss 1985 and 1998—reported administration over 30 minutes in repeated cycles. PTX-0268; Tr. 1141:21−43:15. Moreover, the Ribomustin Monograph—which set forth the prescription information for the German bendamustine product Ribomustin and was developed by a company that employed scientists involved in the Preiss and Schöffski studies—recommended a 30 to 60 minute infusion in 500 mL because of local toxicity concerns. DTX-0982_009; Tr. 1143:17−44:13, 1144:14−45:5, 1146:8−54:4.

EAGLEBEN-SA_00353805

Case 1:17-cv-01154-CFC    Document 594    Filed 04/27/20    Page 48 of 70 PageID #: 14478

### c) Defendants only hypothesize that the Preiss studies used the claimed volumes and concentrations.

Finally, Defendants only hypothesize that the Preiss studies used similar volumes and concentrations as those recited in the asserted claims. With respect to volume, Defendants assert that although the Preiss references did not disclose a volume, "[b]ecause administration time and volume are related," a POSITA would have known based on Preiss's three-to-ten-minute time constraint and typical infusion rates that the studies infused small volumes. D.I. 378 at 42 (citations omitted). With respect to concentration, Defendants contend that "Preiss 1985 administered bendamustine in a dose of 280-375 mg in a bolus, [i.e., a volume that the] evidence showed likely meant 50 or 100 mL," and diluting 280 mg in 50 mL would result in a concentration of 5.6 mg/mL. D.I. 378 at 46. Such speculations about Preiss's infusion rate and volume, however, are only based on "conclusory and unsupported expert testimony" and they do not support a finding of obviousness by clear and convincing evidence. *See TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1361 (Fed. Cir. 2019) ("In cases like *InTouch, ActiveVideo, and DSS*, we rejected obviousness determinations based on conclusory and unsupported expert testimony.").

Defendants have thus failed to establish by clear and convincing evidence that the Preiss studies support a finding that the claimed infusion times, volumes,

EAGLEBEN-SA_00353806

and concentrations were obvious. "Whether a skilled artisan would be motivated to make a combination includes whether he would select particular references in order to combine their elements," *WBIP*, 829 F.3d at 1337, and a POSITA in 2010 would not have selected the Preiss studies to determine a safe and effective infusion for a bendamustine formulation.

### 2)    Barth and Glimelius

Defendants also argue that the administration volumes are obvious under Barth and Glimelius. They note that Barth recommended a 100 to 250 mL bendamustine infusion, D.I. 378 at 43, and that a "POS[IT]A would have known from Glimelius (DTX-0079) that minibags, [standard infusion bag sizes of 50 or 100 mL], were typically used for infusions of 10-20 min," D.I. 378 at 44 (citations omitted).

Barth and Glimelius, however, would not have motivated a POSITA to use the claimed volumes. First, Barth did not disclose any study or data; it only suggested hypothetical smaller volumes. DTX-1004_0005; Tr. 1159:10−18. And Barth's 100 to 250 mL suggestion did not cover the claimed volumes (all claims require 100 mL or less). DTX-1004_0005; Tr. 1159:3−16. Second, Glimelius did not disclose any bendamustine administration, Tr. 841:3−42:22, and the mere availability of a standard IV bag would not have given a POSITA motivation to use a bag that size. IV bags of 50 mL were available before the priority date, but

47

EAGLEBEN-SA_00353807

had never been used to deliver bendamustine.  D.I. 371 at 58.

### 3)    The Treanda® Label

Defendants also assert that the Treanda® Label would have motivated a POSITA to use the claimed post-dilution concentrations.  They argue that the claimed concentrations are obvious as inherent because diluting the claimed doses disclosed in the Treanda® Label in the claimed volume of liquid necessarily would have resulted in the claimed concentrations of bendamustine, PG, and PEG.  D.I. 378 at 44.  But because I find that the claimed volumes are not obvious, it does not follow that the claimed concentrations are obvious as inherent.   Defendants also state that "on the lower end of the spectrum, the [claimed] concentration falls within the 0.2-0.6 mg/mL concentration of the Treanda® Label."  D.I. 378 at 45. But the Treanda® concentrations only cover a small portion of the claimed range of 0.05 to 12.5 mg/mL and thus they do not render the claimed concentrations obvious.

### 4)    Eagle's Post-Invention Statements

Defendants further argue that, through post-invention statements, Plaintiffs admitted that the prior art taught that short infusions in lower volumes were safe and effective.  Defendants point to the fact that Eagle relied on the conclusions from the Preiss studies when it told the FDA that its Bendeka® protocol was safe. D.I. 378 at 51.

EAGLEBEN-SA_00353808

Case 1:17-cv-01154-CFC    Document 394    Filed 04/27/20    Page 51 of 76 PageID #: 18481

It is true that, in support of its request for permission to test Bendeka®, Eagle submitted to the FDA a Detailed Review of Literature that relied in part on data from the Preiss and Schöffski references.  DTX-1041_0175.  The literature review stated: "Thus, the short duration infusion of bendamustine appears to be well tolerated in this study and a dose of 215 milligrams has been reported in the literature as the clinically tolerated dose for bolus administration of bendamustine."  DTX-1041_0175.  Later, Eagle made similar statements to the FDA when drafting its Investigator's Brochure to support its requested study that required administering the Bendeka® formulation in ten minutes.  DTX-1061 at 14.

Eagle's submissions to the FDA, however, also contained non-public, non-prior-art tests and analysis Eagle had conducted to show those short-infusion protocols were safe to test in humans.  DTX-1041_0025–26.  And I find that Eagle's post-invention discussion of the prior art that is intermingled with its own non-public data that it developed in inventing the claimed administration does not show that a POSITA who did not have Eagle's non-public data would have relied on the Preiss studies.  Conclusions drawn from a patentee's "disclosures to the FDA" risk being "distorted by hind-sight bias," especially here where the FDA submission was dated after the priority dates and thus was written "through the lens of what [the inventor] had invented." *Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1377 (Fed. Cir. 2019).

EAGLEBEN-SA_00353809

Case 1:17-cv-01154-CFC   Document 394   Filed 04/27/20   Page 52 of 76 PageID #: 14402

In sum, Defendants failed to prove by clear and convincing evidence that a POSITA reading the Preiss and Schöffski studies, Barth, Glimelius, and the Treanda® Label would have found the claimed infusion times, volumes, and concentrations obvious.

### c.        Secondary Considerations

Plaintiffs offered at trial evidence of four secondary considerations that bear on the administration claims: skepticism, long-felt need, commercial success, and industry praise.  I did not, however, find this evidence to be probative indicia of nonobviousness for the following reasons.

### 1)        Skepticism

Plaintiffs argue that "industry participants" were skeptical of the claimed invention.  D.I. 371 at 77.  But the skepticism they cite was apparently held by a "couple of nurses, a pharmacist[,] and an oncology medical resident," DTX-0959_0001, and investors, D.I. 371 at 78.  Such "lack of enthusiasm by a few is not equivalent to skepticism." *BTG Int'l Ltd. v. Amneal Pharm. LLC*, 923 F.3d 1063, 1076 (Fed. Cir. 2019).

Plaintiffs also contend that the FDA declined to allow testing of Eagle's IV push method of administration because of safety concerns.  D.I. 371 at 78.  But the IV push method is not the claimed invention; the invention is the ten-minute infusion and the FDA told Eagle to proceed with its ten-minute infusion study.

EAGLEBEN-SA_00353810

Case 1:17-cv-01154-CFC   Document 394   Filed 04/27/20   Page 53 of 70 PageID #: 14403

PTX-0746 at EGL-BENDEKA_00146354; Tr. 1691:3–14; *see also* PTX-0747 at EGL-BENDEKA_00146355 ("[Eagle] stated that they have decided not to evaluate the IV push method administration.  [Eagle] will use 120 mg/m$^2$ over 10 minutes in their bridging study.").

### 2) Long-Felt Need

Plaintiffs also argue that Bendeka®'s shorter infusion addressed a "long-felt need to reduce chair time for chemotherapy, improving patient experience and allowing more patients to be treated."  D.I. 371 at 79.  The parties offered competing expert testimony on this point.  I found credible only Defendant's expert, Dr. Thirman, who testified that Bendeka® does not meaningfully reduce chair time because patients receive IV fluids and other drugs simultaneously with the administration of Bendeka® and the administration of those fluids and other drugs lasts for much longer than 15 minutes.  Tr. 188:20–89:9, 189:22–24, 1744:14–51:20, 1745:20–46:6, 1751:3–51:8, 1765:18–66:6, 1779:11–18; DTX-0968_0001.  For example, Bendamustine is frequently administered with a drug called Rituxan that has an administration time of four to eight hours.  Tr. 190:24–91:6, 191:2–6, 713:14–22, 1746:11–17, 1781:14–22.[11]

---

[11] Plaintiffs' expert, Dr. Agarwal, was not credible.  He testified that, based on his experience in a "community-based cancer center," Tr. 1288:19, there were "always issues with the chair time" in the oncology field and that Bendeka® resolved the chair time need, Tr. 1304:7–05:19.  My assessment of his lack of credibility was informed by the logic and credible nature of Dr. Thirman's testimony and also by

EAGLEBEN-SA_00353811

Dr. Agarwal's dissembling with respect to his billing practices (which might explain why he favored shorter chair times). Dr. Agarwal initially denied having any idea how his patients are billed for his work: "I mean, I'm not, I'm not the biller and I don't get paid by the amount I bill or anything. . . . My only concern is the patient's safety and that's all I care about. . . . I have no clue honestly about billing, billing procedures." Tr. 1339:15–21. He volunteered that "billing, which is a totally different department, I have no clue how they do it and I don't take a look at it. I don't even know how to look at it." Tr. 1340:15–17. And when asked how billing relates to infusion time, Dr. Agarwal claimed to have "no idea how the billing codes work with the infusion." Tr. 1344:13–17. But when asked by the Court if he was "paid by salary," Dr. Agarwal responded: "So the way it works is, what they [his practice group] wanted is eat what you kill. Basically, if I see more patients, I get paid more. If I work harder, I get more. If I work less, I get paid less." Tr. 1345:7–11. He then continued to explain the billing process in detail:

> So the way it works is, so we have like repeated billing codes for repeated business, which are from level one to level four, and that's very small. You just mark what billing code you want to put. These are being audited by McKesson and auditors, that you are not -- they look at our notes. They decide if the doctor is overbilling or underbilling with the code. We have another code for the new patient.
>
> * * * *
>
> So they have like one to four levels of visit. Depending on how much time I spend with a patient, either from 15 minutes to 30 minutes, I can go from a level one visit to a level four visit and that's what I mark on that. I think it's level one to level five. Level five is a very complex visit where I spend an hour or more with a patient, and most of the visits are about level three or level four, but these patients that are going to see me, I just bill level 3 or 4 and then I submit the payment and that is taken care of by the billing and coding department.

Tr. 1345:19–46:1, 1346:13–23. Also, when Dr. Agarwal was asked if he was "familiar with a term called infusion billing," he responded "Yes." Tr. 1338:2–4.

EAGLEBEN-SA_00353812

### 3) Commercial Success

Plaintiffs further argue that Bendeka®'s commercial success is demonstrated by (1) the fact that "Bendeka® halted the downward trend in bendamustine sales, despite increasing competition," D.I. 371 at 79, and (2) "Teva's choice to license Bendeka® and pay Eagle a portion of the profit for each Bendeka® sale, when it could keep all profits from Treanda®," D.I. 361 ¶ 222. But such evidence does not support a finding of nonobviousness. Plaintiffs have not provided evidence to establish that Bendeka®'s sales and Teva's decision to license Bendeka® were linked to Bendeka®'s patented advantages as opposed to Bendeka®'s exclusivities. *See* D.I. 371 at 80 ("Eagle's patents expire shortly after Teva's pre-existing patents."); Tr. 1725:25–26:2 (stating that with the Bendeka® license, Teva has FDA exclusivity until 2022). Also, the "competition" that Plaintiffs cite consists only of Eagle's Belrapzo®—a drug that shares Bendeka®'s formulation, but lacks the short-infusion protocol. D.I. 361 ¶ 219. Because Eagle benefits from the sales of both Belrapzo® and Bendeka®, it may have an incentive to market Bendeka® over Belrapzo®, Tr. 1652:19−53:2, and thus any evidence that Bendeka® has higher sales has little if any probative value.

### 4) Praise

Finally, Plaintiffs argue that "Bendeka®'s patented advantages . . . have received industry praise." D.I. 371 at 81. In support of this assertion, they cite (1) a

EAGLEBEN-SA_00353813

Veteran's Administration (VA) newsletter that highlighted the advantages of Bendeka® as compared to Treanda®, (2) a study that noted attributes of Bendeka® that drive Bendeka®'s usage, and (3) Fresenius Kabi's pre-litigation statement that Bendeka® reduced "[p]atient chair time" and that Bendeka® could "have higher pricing and still retain volume due to the benefits it offers." D.I. 371 at 81; D.I. 361 ¶ 226. Here again, I find such evidence to have at best marginal probative value. As an initial matter, the VA does not even use Bendeka®. Tr. 1777:1–78:16. Second, the study Plaintiffs cite was funded by Teva and provides no connection between the claimed limitations and industry praise. Tr. 1305:25–07:4. Third, Fresenius Kabi's statement merely lists reduced chair time as a fact and does not exhibit any praise related to the asserted claims.

\* \* \* \*

In sum, the secondary consideration evidence does not support a finding of nonobviousness. I still find, however, that the asserted administration claims are not obvious. Defendants have not shown by clear and convincing evidence that Palepu 2011, the Treanda® Label, Preiss 1985, Preiss 1998, Schöffski 2000a, Schöffski 2000b, Barth, and Glimelius would have motivated a POSITA to arrive at the claimed administrations with a reasonable expectation of success. A POSITA would not have been motivated to follow Preiss's three-to-ten-minute (and potentially lower volume and higher concentration) infusions because (1) a

54

EAGLEBEN-SA_00353814

POSITA would not have relied on the Preiss studies to determine a safe bendamustine infusion protocol, (2) subsequent prior art taught away from the three-to-ten-minute infusions, and (3) Defendants only guess that Preiss used similar volumes and concentrations to those claimed. Moreover, Barth and Glimelius would not have motivated a POSITA to administer bendamustine at lower volumes because (1) Barth only disclosed hypothetical volumes that did not even include the claimed volumes of 100 mL or less and (2) Glimelius did not involve bendamustine. Finally, the claimed concentrations are not obvious as inherent or under the prior art.

## III.   INDEFINITENESS

Defendants argue that the asserted formulation claims are invalid because they each require "a stabilizing amount of antioxidant"—a requirement Defendants contend is indefinite. D.I. 371 at 2.

### A.   Legal Standards for Indefiniteness

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether

55

EAGLEBEN-SA_00353815

Case 1:17-cv-01154-CFC    Document 394    Filed 04/27/20    Page 56 of 76 PageID #: 14788

allegedly indefinite claim language is subject to construction." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008), *abrogated on other grounds by Nautilus*, 572 U.S. at 901 (rejecting Federal Circuit's "insolubly ambiguous" standard for indefiniteness). As in claim construction, in making an indefiniteness determination, the district court may make "any factual findings about extrinsic evidence relevant to the question, such as evidence about knowledge of those skilled in the art." *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) (alteration in original)).

## B.    Discussion

Defendants argue that "the claims recite a 'stabilizing amount' [of antioxidant] with no guidance, functional or otherwise, on what degree of stability is required to obtain some unnamed objective." D.I. 380 at 3. But this argument conflates (1) whether a given antioxidant amount improves bendamustine's stability with (2) the extent to which that given antioxidant amount improves stability. The written description defines a "stabilizing amount of antioxidant" as an amount that "increase[s] or enhance[s] the stability of the bendamustine in the compositions described herein," #831 patent at 3:49−54; Tr. 370:25−71:9. Thus,

56

EAGLEBEN-SA_00353816

the "objective" of the antioxidant amount is not "unnamed" but is instead "to increase or enhance the stability of the bendamustine in the compositions" described in the specification.[12]

Defendants argue that the term is indefinite because "[t]he specification does not explain how to determine whether stability has been 'increased' or 'enhanced.'" D.I. 378 at 3. But as Plaintiffs' expert, Dr. Siepmann, credibly testified, a POSITA would understand that a stabilizing amount of an antioxidant includes any amount that decreases the amount of bendamustine degradation after any time period and at any temperature. Tr. 1485:4−87:10, 1502:8−12. And the patents provide a POSITA with a method for measuring stability: using HPLC to compare the amount of overall bendamustine degradation with and without the antioxidant. Tr. 1485:14−86:11. Example 3 demonstrates that a POSITA would compare the amount of bendamustine remaining in the same formulation, stored under the same conditions, with and without the antioxidant, #831 patent at

---

[12] Section 112(b) of Title 35 provides that "[t]he specification shall conclude with one or more claims[.]" This language makes clear that the specification includes the claims asserted in the patent, and the Federal Circuit has so held. *See Markman*, 52 F.3d at 979 ("Claims must be read in view of the specification, of which they are part"). The Federal Circuit and other courts, however, have also used "specification" on occasion to refer to the written description of the patent as distinct from the claims. *See, e.g., id.* ("To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history."). To avoid confusion, I refer to the portions of the specification that are not claims as "the written description."

EAGLEBEN-SA_00353817

7:59–8:27; and the specifications describe measuring the remaining bendamustine using HPLC, *id.* at 2:26–44, 2:57–3:4, 4:22–26; Tr. 1487:11–89:11. In addition to providing exemplary test methods, the specification also lists "suitable antioxidant amounts" and "antioxidants," and provides examples of "stabilizing" amounts. #831 patent at 3:57–4:8, 7:59–9:2; Tr. 371:15–72:18, 1489:23–90:4.

In *BASF*, the Federal Circuit held the term "composition . . . effective to catalyze" not indefinite, even though the patent did not "recite a minimum level of function needed to meet this 'effective' limitation" or "a particular measurement method," because tests for determining whether a composition was catalyzing were well-known. 875 F.3d at 1366–68. Here, the term "stabilizing amount of antioxidant" is like the term "composition . . . effective to catalyze" and Plaintiffs' expert, like the expert in *BASF*, persuasively testified that a POSITA would know how to determine whether an amount of antioxidant is stabilizing. Moreover, unlike in *BASF*, the asserted patents here provide a test method.

Finally, Defendants cite the patentee's removal of antioxidant and stability limitations during prosecution as support for their indefiniteness argument. D.I. 378 at 5–6. But the removal of those limitations undercuts Defendants' argument because it confirms that the "examiner understood" the claims without those limitations. *See Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1379–80 (Fed. Cir. 2017).

EAGLEBEN-SA_00353818

I thus find that the term "stabilizing amount of antioxidant" is not indefinite and I construe it as: any amount of an antioxidant that decreases the amount of bendamustine degradation after any time period and at any temperature.

## IV.    ENABLEMENT

Defendants assert that the asserted formulation claims are invalid for lack of enablement because the formulation patents disclosed neither the use of sodium hydroxide (NaOH) or of "other undisclosed variables." D.I. 378 at 59.

### A.    Legal Standards for Enablement

"Claims are not enabled when, at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation." *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013) (citation omitted). "That some experimentation is necessary does not preclude enablement; the amount of experimentation, however, must not be unduly extensive." *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984) (citations omitted). A challenger must prove invalidity based on non-enablement by clear and convincing evidence. *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012). Enablement is a question of law based on underlying facts. *Abbott Labs.*, 720 F.3d at 1384 (citations omitted).

59

EAGLEBEN-SA_00353819

Case 1:17-cv-01154-CFC    Document 594    Filed 04/27/20    Page 62 of 76 PageID #: 14492

## B.    Discussion

Defendants argue that the asserted formulation claims are not enabled because the claims do not contain NaOH and "a pH adjuster like NaOH is necessary to obtain the PG ester levels claimed in the [a]sserted [f]ormulation [c]laims." D.I. 378 at 59. Defendants note that "Eagle's later-filed [#]879 application . . . explains [that] 'the control samples, which did not include NaOH did not provide long term storage stability,' and 'exhibited more than 28% total esters compared to initial after six months of storage at 25° C.'" D.I. 378 at 60 (citation omitted).

Evidence that some claimed formulations did not result in the PG ester limitations, however, does not establish that the claims are not enabled. Defendants have not presented any evidence to show that a POSITA would have had to undertake undue experimentation to alter the formulation to obtain the PG ester limitations. That some formulations with the claimed ingredients do not satisfy the PG ester limitations does not support non-enablement unless the number of such formulations is significant enough to have required a POSITA to experiment unduly. *See Atlas Powder*, 750 F.2d at 1576–77 ("Even if some of the claimed combinations were inoperative, the claims are not necessarily invalid. . . . Of course, if the number of inoperative combinations becomes significant, and in effect forces one of ordinary skill in the art to experiment unduly in order to

60

EAGLEBEN-SA_00353820

practice the claimed invention, the claims might indeed be invalid. That, however, has not been shown to be the case here." (citations omitted)). Defendants presented no evidence showing that the number of unsuccessful formulations is significant enough to require undue experimentation. Accordingly, they failed to establish by clear and convincing evidence that the asserted claims are invalid for lack of enablement.

## V.    WRITTEN DESCRIPTION

Apotex argues that claim 9 of the #797 patent is invalid for lack of written description. D.I. 378 at 60. It asserts that "the absence of any mention of a pH adjuster like NaOH in the [#]797 patent demonstrates that the inventors did not have possession of it at that time, as confirmed by their later filing of another patent application that discloses and claims it." D.I. 378 at 61 (citations omitted). "But written description is about whether the skilled reader of the patent disclosure can recognize that what was claimed corresponds to what was described . . . . " *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1191 (Fed. Cir. 2014). And Apotex never cites the intrinsic record to show that the asserted formulation patents claim something that they do not describe in their written descriptions. Instead, Apotex improperly cites extrinsic evidence—the later-filed Eagle patent application. Apotex has thus failed to establish that claim 9 is invalid for lack of written description.

EAGLEBEN-SA_00353821

## VI.   INFRINGEMENT

Defendants stipulated to infringement of the asserted claims with two exceptions.  Apotex, Fresenius Kabi, and Mylan argue that (1) they do not infringe the asserted formulation claims because their ANDA products do not contain "a stabilizing amount of an antioxidant" as the asserted formulation claims require, D.I. 369 at 2; and (2) they do not directly infringe or induce infringement of claim 9 of the #797 patent, which requires that the "bendamustine-containing composition ha[ve] less than or equal to 0.43 % total PG esters at about 3 months of storage at a temperature of about 25°C," because their proposed labeling does not direct physicians to store their ANDA products for about 3 months at about 25°C, D.I. 369 at 4–5.

### A.   Legal Standards for Infringement

A defendant is liable for patent infringement if it files an ANDA "for a drug claimed in a patent or the use of which is claimed in a patent."  35 U.S.C. § 271(e)(2)(A).  To establish infringement based on the filing of an ANDA under § 271(e)(2)(A), a patentee must show that "if the drug were approved based upon the ANDA, the manufacture, use, or sale of that drug would infringe the patent in the conventional sense."  *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997).

"Conventional" infringement includes direct infringement and inducement.

EAGLEBEN-SA_00353822

35 U.S.C. § 271 (a), (b). Direct infringement requires that "every limitation set forth in a claim . . . be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (citation omitted). Inducement requires a showing "that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (citation omitted). A plaintiff can prevail on a claim of inducement only if it establishes direct infringement. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("[I]nducement liability may arise if, but only if, there is direct infringement." (internal quotation marks, alterations, and citation omitted)).

A patentee must prove infringement by a preponderance of the evidence. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758 (Fed. Cir. 1984). "A patentee may prove infringement by any method of analysis that is probative of the fact of infringement, and circumstantial evidence may be sufficient." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (internal quotation marks and citations omitted).

**B.    Direct Infringement of the "Stabilizing Amount of Antioxidant" Limitation**

The asserted formulation claims require a "stabilizing amount of an antioxidant," a term that I construed as any amount of an antioxidant that decreases

63

EAGLEBEN-SA_00353823

the amount of bendamustine degradation after any time period and at any temperature.

Defendants' ANDA products each contain 5 mg/mL of the antioxidant monothioglycerol, *see* PTX-0474 at APOLIQBENDA_ANDA_0005427 (Apotex); PTX-0486 at FK_BENDA_00003243, 3245 (Fresenius Kabi); PTX-0007 at MYLBEN_000248 (Mylan); Tr. 372:19−74:13, and the formulation patents' written description shows that 5 mg/mL of monothioglycerol is a stabilizing amount. The written description identifies "5 mg/mL to about 20 mg/mL" as a "preferable" stabilizing amount of antioxidant. #831 patent at 3:49−68; #797 patent at 3:55–66. The written description also identifies "thioglycerol (also known as monothioglycerol)" as a preferred antioxidant. #831 patent at 4:1–8; #797 patent at 4:6–16. Moreover, Example 3 demonstrates that adding "5 mg/m[L] of lipoic acid . . . as a stabilizing antioxidant" to 20 mg/mL of bendamustine in PEG decreased the amount of bendamustine degradation after 15 days at 25°C and 40°C as compared to the same formulation without an antioxidant. #831 patent at 7:59−8:27; #797 patent at 7:61–8:29; Tr. 371:15−72:18. Example 4 recites dissolving 50 mg/mL bendamustine in 90% PEG and 10% PG, and adding "5 mg/m[L] of [mono]thioglycerol, α-lipoic acid or dihydrolipoic acid," an amount that it describes as "a stabilizing amount of an antioxidant." #831 patent at 8:29−65; #797 patent at 8:32–66.

EAGLEBEN-SA_00353824

Case 1:17-cv-01154-CFC    Document 594    Filed 04/27/20    Page 67 of 76 PageID #: 16457

Circumstantial evidence can establish infringement; and here, the asserted formulation patents' disclosures that 5 mg/mL of an antioxidant (and specifically monothioglycerol) is stabilizing shows that the 5 mg/mL of monothioglycerol that Defendants use in their ANDA products decreases the amount of bendamustine degradation as compared to the same formulation without an antioxidant. Finally, Fresenius Kabi and Mylan represented to the FDA that 5 mg/mL monothioglycerol was sufficient to ensure that the amount of bendamustine in their ANDA products did not fall below specification limits. *See* PTX-0054 at FK_BENDA_00000543 (Fresenius Kabi); PTX-0201 at MYL-BEN_005258 (Mylan); Tr. 374:14−77:1.

### C.    Direct and Induced Infringement of Claim 9 of the #797 Patent

Claim 1 of the #797 patent recites a "method of treating leukemia, Hodgkin's disease, or multiple myeloma" comprising "administering" the specified "liquid bendamustine-containing composition." #797 patent at 12:43–46 (claim 1). Claim 9 recites the method of claim 1, wherein the "bendamustine-containing composition has less than or equal to 0.43% total PG esters at about 3 months of storage at a temperature of about 25° C." #797 patent at claim 9.  Defendants stipulate that their ANDA Products have "less than or equal to 0.43% total PG esters at about 3 months of storage at a temperature of about 25° C," but contend that they do not directly infringe or induce infringement of claim 9 because their

EAGLEBEN-SA_00353825

proposed labeling does not recommend storing their ANDA Products for "about 3 months" at "a temperature of about 25° C." D.I. 307-4 ¶ I.a; D.I. 320 ¶ 3.

I find, however, that even though Defendants' labeling does not mention storage, Defendants' ANDA products directly and indirectly infringe claim 9 because the PG ester limitation does not require the user to store the products for three months at 25°C. Claim 9's PG ester limitation describes a characteristic of the claimed formula; it is not a method step and thus, does not require action to infringe. The claim does not recite testing for the PG ester limitation; it just describes a composition that would have less than 0.43% PG esters if one were to test for them after storing the composition for three months at 25°C.

Defendants' proposal to construe the PG ester limitation as a method step that requires actual storage under the specified conditions also fails because it "renders [claim 9] nonsensical." *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("A claim construction that renders asserted claims facially nonsensical cannot be correct." (internal quotation marks and citations omitted)). Although claim 1 of the #797 patent requires the composition to have "less than or equal to 0.11% total PG esters at about 1 month of storage *at a temperature of about 5° C*," claim 9 requires the same composition to have "less than or equal to 0.43% total PG esters at about 3 months of storage *at a temperature of about 25° C*." #797 patent at 12:61–63 (claim 1), 13:22–25

66

EAGLEBEN-SA_00353826

(claim 9). Under Defendants' proposed construction, to infringe, the user would need to store the composition simultaneously at different temperatures, which is impossible.

Defendants therefore directly infringe and induce infringement of claim 9 of the #797 patent. With respect to direct infringement, Defendants agree that their products have less than or equal to 0.43% total PG esters after storing them for three months at a temperature of about 25°C and, other than with respect to a stabilizing amount of an antioxidant, they stipulated to direct infringement of the remaining limitations. D.I. 320 ¶ 3. With respect to induced infringement, Defendants will encourage others to administer their ANDA products through their proposed labels. Although Defendants' proposed labeling does not mention the claimed PG ester limitations, Defendants know "that [their ANDA products] meet all of the claim limitations and, through [their] proposed label[s], encourage[] patients to administer [their ANDA products] in a manner that infringes the claimed method." *Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*, 282 F. Supp. 3d 793, 816 (D. Del. 2017), *rev'd in part on other grounds sub nom. Nalpropion Pharm., Inc. v. Actavis Labs. FL, Inc.*, 934 F.3d 1334 (Fed. Cir. 2019). "Whether the [user] who performs the method by administering the [products] knows that the [products] meet the [PG ester limitations] is irrelevant for the purposes of infringement." *Id.*

67

Case 1:17-cv-01154-CFC   Document 594   Filed 04/27/20   Page 70 of 70 PageID #: 14809

## VII.  CONCLUSION

For the foregoing reasons, I find that all asserted claims of the asserted patents are not invalid and that Defendants infringe and induce infringement of each of the asserted claims.

The parties will be directed to submit a proposed order by which the Court may enter final judgment consistent with this Opinion.

EAGLEBEN-SA_00353828

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 18646171 |
| Filing Date | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 107071.001394 |

## U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

## U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

## FOREIGN PATENT DOCUMENTS    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

## NON-PATENT LITERATURE DOCUMENTS    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EAGLEBEN-SA_00353829

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 1 | U.S. Appl. filed Dec. 5, 2013., 14/097,904 | ☐ |
| | 2 | U.S. Appl. filed Dec. 5, 2013., 14/098,094 | ☐ |
| | 3 | U.S. Appl. filed Feb. 14, 2013., 13/767,672 | ☐ |
| | 4 | U.S. Appl. filed Nov. 26, 2014., 14/554,269 | ☐ |
| | 5 | U.S. Appl. filed Oct. 23, 2014., 14/522,581 | ☐ |
| | 6 | U.S. Appl. filed Sep. 19, 2013., 14/031,879 | ☐ |
| | 7 | U.S. Pharmacopeia 32-NF-27-General Notices and Requirements, 2009 | ☐ |
| | 8 | US Application no. 10/010,533, 12/07/2001 | ☐ |
| | 9 | US Application no. 10/052,385, 01/18/2002 | ☐ |
| | 10 | US Application no. 16/015,656 filed on 06/22/2018 | ☐ |
| | 11 | USP 24/NF 19 (2000) entry for Propylene Glycol (USP) | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353830

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| 12 | VINOGRADOVA et al., "New Metal Chelates as Antioxidant Stabilizers for Polymers...", Polymer Yearbook 13, pp. 87-111, 1996 | ☐ |
|---|---|---|
| 13 | VLOK, Manual of Nursing, 1988m Vol. 1, 9th edition | ☐ |
| 14 | WASYLASCHUK et al., Journal Of Pharmaceutical Sciences, 2007, Vol. 96, No. 1, pp. 106-116 | ☐ |
| 15 | WATERMAN et al., "Stabilization of Pharmaceuticals to Oxidative Degradation", Pharmaceutical Development and Technology, 2002, Vol. 7, No. 1, pp. 1-32 | ☐ |
| 16 | WATSON et al., "Kinetics of phosphoramide mustard hydrolysis in aqueous solution", Journal of Pharmaceutical Sciences, 1985, Vol. 74, Issue 12, pp. 1283-1292 | ☐ |
| 17 | WEIDE et al., "Bendamustine Mitoxantrome and Rituximab (BMR): A New Effective Regimen for Refractory or Relapsed Indolent Lymphomas", Leukemia & Lymphoma, 2002, Vol. 43, No. 2, pp. 327-331 | ☐ |
| 18 | WERNER et al., Hydrolysis Products of Cancerostatic Cytostasan(Registered) (Bendamustine), 42 (4) DIE PHARMAZIE, GOVI VERLAG PHARMAZEUTISCHER VERLAG GMBH, ESCHBORN, DE, 272-73 | ☐ |
| 19 | WITTAYA-AREEKUL et al., "Freeze-Drying of tert-Butyl Alcohol/Water Cosolvent Systems: Effects of Formulation and Process Variables on Residual Solvents", Journal of Pharmaceutical Sciences, 1998, Vol. 87, No. 4, pp. 491-495 | ☐ |
| 20 | Written Opinion issued in counterpart PCT/US2013/032289 dated June 6,2013. | ☐ |
| 21 | Written Opinion issued in counterpart PCT/US2013/032295 dated June 3,2013. | ☐ |
| 22 | Written Opinion of the International Searching Authority re: International Appln. No. PCT/US2013/032289 mailing date Jun. 6, 2013. | ☐ |

EAGLEBEN-SA_00353831

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | 23 | ZIMMERMAN et al., Elements of Organic Chemistry, 1977 | ☐ |
|---|---|---|---|
| | 24 | ZIPS et al., "New Anticancer Agents: In Vitro and In Vivo Evaluation," In Vivo, 2005, Vol. 19, pp. 1-8 | ☐ |
| | 25 | ZUMDAHL et al., Chemistry, 7th Ed., 2007 | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button [ Add ]

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

EAGLEBEN-SA_00353832

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
|---|---|---|---|
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

EAGLEBEN-SA_00353833

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.1.18

EAGLEBEN-SA_00353834

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 18646171 |
| Filing Date | | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket  Number | | 107071.001394 |

### U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

### U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

### FOREIGN PATENT DOCUMENTS    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

### NON-PATENT LITERATURE DOCUMENTS    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.1.18

EAGLEBEN-SA_00353835

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | | |
|---|---|---|---|
| | 1 | SciFinder(r) Hydrolytic degradation of IMET. | ☐ |
| | 2 | SciFinder, Hydrolytic degradation of IMET 3393, American Chemical Society, 2018 | ☐ |
| | 3 | SEAGER et al., "Structure of Products Prepared by Freeze-Drying Solutions Containing Organic Solvents", PDA Journal oi Pharmaceutical Science and Technology, 1985, Vol. 39, No. 4, pp. 161-179 | ☐ |
| | 4 | Search History issued in connection with PCT/US2013/32295 dated May 10,2013. | ☐ |
| | 5 | Search History: Limited Classification Search dated May 10, 2013, PCT/US2013/032295. | ☐ |
| | 6 | SEEDHER et al., "Solubilization of Nimesulide- Use of Co-solvents", Indian J. Pharm. Sci., 2003, Vol. 65, No. 1, pp. 58-61 | ☐ |
| | 7 | SHAH et al., "Physical, Chemical, and Bioavailability Studies of Parenteral Diazepam Formulations Containing Propylene Glycol and Polyethylene Glycol 400", Drug Development and Industrial Pharm., 2008, Vol. 17, No. 12,pp. 1635-1654 | ☐ |
| | 8 | Shah et al., Physical, Chemical, and Bioavailability Studies of Parenteral Diazepam Formulations Containing 3ropylene Glycol and Polyethylene Glycol 400, Drug Development and Industrial Pharm.), 17:12, 1635-1654 (Oct. 20, 2008) | ☐ |
| | 9 | SHESKEY, Handbook of Pharmaceutical Excipients, 7th Edition, Propyl Gallate, 2012 | ☐ |
| | 10 | Sigma-Aldrich, Webpage Catalog for poly(ethylene glycol), http://www.sigmaaldrich.com/catalog/product/aldrich/202398?lang=en®ion- =US#, accessed Nov. 15, 2015, pp. 1-2 | ☐ |
| | 11 | SIKORA, "Cancer drug development in the post-genomic age", Current Science, 2001, Vol. 81 No. 5 pp. 549-554 | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353836

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|---|
| | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| 12 | Spectra Analysis, Inc., "Oxidative Degradation of Polyethyleneglycol (PEG) studied by LC-IR", Application Note 016, Mar. 2008. | | ☐ |
| 13 | Spiegel et al. ("Spiegel", J. Pharma. Sci., 1963, 52(10), 917-927). | | ☐ |
| 14 | SPIEGEL et al., "Use of Nonaqueous Solvents in Parenteral Products," Journal of Pharmaceutical Sciences, 1963, Vol. 52, No. 10 pp. 917-927 | | ☐ |
| 15 | Spiegel, et al., "Use of Nonaqueous Solvents in Parenteral Products," J. Pharmac. Sciences, vol. 52, No. 10, pp. 917-927 (1963). | | ☐ |
| 16 | STRICKLEY, "Solubilizing Excipients in Oral and Injectable Formulations", Pharmaceutical Research 2004, Vol. 21, No. 2, pp. 201-230 | | ☐ |
| 17 | Supplemental European Search Report issued in connection with PCT/US2011/022958 dated December 16, 2013. | | ☐ |
| 18 | Supplementary European Search Report in related EP 2528602 dated Jan. 2014. | | ☐ |
| 19 | Supplementary European Search Report in related EP 2528602 dated January 2014. | | ☐ |
| 20 | TAGEJA, "Bendamustine: Safety and Efficacy in the Management of Indolent Non-Hodgkin's Lymphoma", Clinical Medicine Insights: Oncology, 2011, Vol. 5, pp. 145-156 | | ☐ |
| 21 | Tageja, Bendamustine: Safety and Efficacy in the Management of Indolent Non-Hodgkins Lymphoma, Clinical Medicine Insights: Oncology 2011:5 145-156 | | ☐ |
| 22 | TEAGARDEN et al., "Practical Aspects of Freeze-Drying of Pharmaceutical and Biological Products Using Non-Aqueous Co-Solvent Systems", Chapter 8 in Freeze-Drying/Lyophilization of Pharmaceutical and Biological Products, 2004, pp. 239-276 | | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353837

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 23 | TEAGARDEN et al., "Practical Aspects of Lyophilization Using Non-Aqueous Co-Solvent Systems", Eur. J. Pharma. Sciences, 2002, Vol. 15, pp. 115-133 | ☐ |
| | 24 | Teva Pharmaceuticals International GMBH, et al. v. Apotex Inc., et al - Civil Action 1:17-cv-01164: Defendants Apotex Inc. and Apotex Corp.'s Answer to Complaint, Defenses and Counterclaims (Document 17), dated 11/27/17 | ☐ |
| | 25 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.- Civil Action No. 1:17-cv-01201: Answer to Complaint, Separate Defenses, and Counterclaims (Document 10), dated 09/15/17. | ☐ |
| | 26 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.- Civil Action No. 1:17-cv-01201: Answer to Fresenius Kabi USA, LLC'S Counterclaims (Document 14), dated 10/06/17. | ☐ |
| | 27 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.- Civil Action No. 1:17-cv-01201: Complaint (Document 1), dated 08/24/17. | ☐ |
| | 28 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.—Civil Action No. 1:17-cv-01201: Answer to Fresenius Kabi USA, LLC's Counterclaims (Document 14), dated Oct. 6, 2017. | ☐ |
| | 29 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.—Civil Action No. 1:17-cv-01201: Complaint (Document 1), dated Aug. 24, 2017. | ☐ |
| | 30 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al - Civil Action No. 1:18-cv-01586: Answer to Fresenius Kabi USA, LLC's Counterclaims (Document 13), dated 11/27/18. | ☐ |
| | 31 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al - Civil Action No. 1:18-cv-01586: Complaint (Document 1), dated 10/15/18. | ☐ |
| | 32 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al - Civil Action No. 1:18-cv-01586: Defendant Mylan Laboratories LTD.'s Answer to Complaint for Patent Infringement (Document 11), dated 11/09/18. | ☐ |
| | 33 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al.- Civil Action No. 1:18-cv-01586: Defendant Fresenius Kabi USA, LLC's Answer to Complaint, Separate Defenses, and Counterclaims (Document 9), dated 11/06/18. | ☐ |

EAGLEBEN-SA_00353838

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|---|
| | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 107071.001394 |

| | 34 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al.—Civil Action No. 1:18-cv-01586: Defendant Fresenius Kabi USA, LLC's Answer to Complaint, Separate Defenses, and Counterclaims (Document 9), dated Nov. 6, 2018. | ☐ |
|---|---|---|---|
| | 35 | Teva Pharmaceuticals International GMBH, et al. v. Mylan Laboratories Limited- Civil Action No. 1:17-cv-01790: Complaint (Document 1), dated 12/12/17. | ☐ |
| | 36 | Teva Pharmaceuticals International GMBH, et al. v. Mylan Laboratories Limited—Civil Action No. 1:17-cv-01790: Defendant Mylan Laboratories Limited's Answer to Complaint for Patent Infringement (Document 12), dated Feb. 14, 2018. | ☐ |
| | 37 | Teva Pharmaceuticals International GMBH, et al. v. Slayback Pharma Limited Liability Company- Civil Action No. 1:18-cv-00117: Complaint (Document 1), dated 01/19/18. | ☐ |
| | 38 | Teva Pharmaceuticals International GMBH, et al. v. Slayback Pharma Limited Liability Company- Civil Action No. 1:18-cv-00117: Defendant Slayback Pharma Limited Liability Company's Answer to Complaint, Addtional Defenses and Counterclaims (Document 9), dated 02/12/18. | ☐ |
| | 39 | Teva Pharmaceuticals International GMBH, etal. v. Apotex Inc., etal - Civil Action No. 1:17-cv-01164: Complaint (Document 1), dated 08/18/17. | ☐ |
| | 40 | THIESEN, "Bendamustine, a well-tollerated cytotoxic agent used in Germany for may years, is soon to be marketed in the rest of Europe for a range of indicatons including chronic lymphocytic leukaemia," 2010, pp. 1-4. Available at http://www.hospitalpharmacyeurope.com/featured-articles/bendamustine. | ☐ |
| | 41 | Third Party Observation in related EP2528602 based on PCT/US2011/022958 dated March 21, 2016. | ☐ |
| | 42 | Third Party Submission in related EP2528602 based on PCT/US2011/022958 dated Nov. 2013. | ☐ |
| | 43 | Third Party Submission in related EP2528602 based on PCT/US2011/022958 dated November 19,2013 (9 pages). | ☐ |
| | 44 | Third Party Submission in related EP2528602 dated Nov. 19, 2013. | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353839

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | 45 | Treanda label, 2008 | ☐ |
|---|---|---|---|
| | 46 | Treanda, "Highlights Of Prescribing Information," TREANDA bendamustine hydrochloride for Injection, for intravenous infusion, 2008, pp. 1-6 | ☐ |
| | 47 | TREANDA, "Highlights of Prescribing Information," TREANDA bendamustine hydrochloride for Injection, for intravenous infusion, 2010, pp. 1-13 | ☐ |
| | 48 | TREANDA, "Highlights of prescribing information", 2008 | ☐ |
| | 49 | TRIVEDI et al., "Water-Insoluble Drug Formulation", 7. Solubilization Using CoSolvent Approach, 2000, pp. 141-168 | ☐ |
| | 50 | TRIVEDI, "Water-Insoluble Drug Formulation", Second Edition, 9 Solubilization Using Cosolvent Approach, 2008, pp. 161-194 | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button [ Add ]

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EAGLEBEN-SA_00353840

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
|---|---|---|---|
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

EAGLEBEN-SA_00353841

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.1.18

EAGLEBEN-SA_00353842

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99**)

| | |
|---|---|
| Application Number | 18646171 |
| Filing Date | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 107071.001394 |

| U.S.PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 4071620 | | 1978-01-31 | SKLAR STANLEY | |
| | 2 | 4711906 | | 1987-12-08 | VON et al. | |
| | 3 | 4879286 | | 1989-11-07 | ALAM et al. | |
| | 4 | 5204335 | A | 1993-04-20 | SAUERBIER et al. | |
| | 5 | 5223515 | A | 1993-06-29 | MIKURA et al. | |
| | 6 | 5741523 | A | 1998-04-21 | TEAGARDEN et al. | |
| | 7 | 7252799 | B2 | 2007-08-07 | MIEKKA et al. | |
| | 8 | 7772274 | B1 | 2010-08-10 | PALEPU NAGESH | |

EFS Web 2.1.18

EAGLEBEN-SA_00353843

| | | | | | | |
|---|---|---|---|---|---|---|
| | | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 | | |
| | | | Filing Date | 2024-04-25 | | |
| | | | First Named Inventor | Nagesh R. Palepu | | |
| | | | Art Unit | | | |
| | | | Examiner Name | | | |
| | | | Attorney Docket  Number | 107071.001394 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 9 | 8076366 | B2 | 2011-12-13 | COURVOISIER et al. | |
| | 10 | 8344006 | B2 | 2013-01-01 | DRAGER et al. | |
| | 11 | 8389558 | B2 | 2013-03-05 | ALAKHOV et al. | |
| | 12 | 8609707 | B2 | 2013-12-17 | PALEPU et al. | |
| | 13 | 8791270 | | 2014-07-29 | BRITTAIN et al. | |
| | 14 | 9000021 | B2 | 2015-04-07 | SUNDARAM et al. | |
| | 15 | 9034908 | B2 | 2015-05-19 | SUNDARAM SRIKANTH | |
| | 16 | 9144568 | B1 | 2015-09-29 | SUNDARAM SRIKANTH | |
| | 17 | 9265831 | B2 | 2016-02-23 | PALEPU et al. | |
| | 18 | 9572796 | | 2017-02-21 | PALEPU et al. | |
| | 19 | 9572797 | | 2017-02-21 | PALEPU et al. | |

EFS Web 2.1.18

EAGLEBEN-SA_00353844

| | | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | |
|---|---|---|---|

<table>
<tr><td colspan="2">Application Number</td><td>18646171</td></tr>
<tr><td colspan="2">Filing Date</td><td>2024-04-25</td></tr>
<tr><td colspan="2">First Named Inventor</td><td>Nagesh R. Palepu</td></tr>
<tr><td colspan="2">Art Unit</td><td></td></tr>
<tr><td colspan="2">Examiner Name</td><td></td></tr>
<tr><td colspan="2">Attorney Docket  Number</td><td>107071.001394</td></tr>
</table>

| | | | | | |
|---|---|---|---|---|---|
| | 20 | 9572887 | | 2017-02-21 | SUNDARAM SRIKANTH |
| | 21 | 9572888 | | 2017-02-21 | SUNDARAM SRIKANTH |
| | 22 | 9579384 | | 2017-02-28 | SUNDARAM et al. |
| | 23 | 9597397 | | 2017-03-21 | SUNDARAM SRIKANTH |
| | 24 | 9597398 | | 2017-03-21 | SUNDARAM SRIKANTH |
| | 25 | 9597399 | | 2017-03-21 | SUNDARAM SRIKANTH |
| | 26 | 10010533 | B2 | 2018-07-03 | PALEPU et al. |
| | 27 | 10052385 | B2 | 2018-08-21 | SUNDARAM SRIKANTH |
| | 28 | 11103483 | B2 | 2021-08-31 | PALEPU et al. |
| | 29 | 11707450 | B1 | 2023-07-25 | CHINNARI et al. |

If you wish to add additional U.S. Patent citation information please click the Add button.     Add

**U.S.PATENT APPLICATION PUBLICATIONS**     Remove

EAGLEBEN-SA_00353845

| | | | Application Number | 18646171 |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | | | Filing Date | 2024-04-25 |
| | | | First Named Inventor | Nagesh R. Palepu |
| | | | Art Unit | |
| | | | Examiner Name | |
| | | | Attorney Docket Number | 107071.001394 |

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20020102215 | A1 | 2002-08-01 | KLAVENESS et al. | |
| | 2 | 20020122768 | A1 | 2002-09-05 | LIU et al. | |
| | 3 | 20040014964 | A1 | 2004-01-22 | CHEESMAN et al. | |
| | 4 | 20040043069 | A1 | 2004-03-04 | VANDERBIST et al. | |
| | 5 | 20040167152 | A1 | 2004-08-26 | RUBINO JOSEPH T et al. | Corresponds to JP 2005-537285 A |
| | 6 | 20050025702 | A1 | 2005-02-03 | DECICCO et al. | |
| | 7 | 20050042285 | A1 | 2005-02-24 | UKAI et al. | |
| | 8 | 20060001597 | A1 | 2006-01-05 | HAN SOKBOM | |
| | 9 | 20060035945 | A1 | 2006-02-16 | ATTARDO et al. | |
| | 10 | 20060128777 | A1 | 2006-06-15 | BENDALL et al. | |

EFS Web 2.1.18

EAGLEBEN-SA_00353846

| | | | | | |
|---|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99)** | Application Number | | 18646171 | | |
| | Filing Date | | 2024-04-25 | | |
| | First Named Inventor | | Nagesh R. Palepu | | |
| | Art Unit | | | | |
| | Examiner Name | | | | |
| | Attorney Docket Number | | 107071.001394 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 11 | 20060159713 | A1 | 2006-07-20 | BRITTAIN et al. | |
| | 12 | 20060205694 | A1 | 2006-09-14 | ALONSO et al. | |
| | 13 | 20070116729 | A1 | 2007-05-24 | PALEPU NAGESWARA R | |
| | 14 | 20080118544 | A1 | 2008-05-22 | WANG LIXIAO | |
| | 15 | 20090082416 | A1 | 2009-03-26 | CZARNIK ANTHONY W | |
| | 16 | 20090209606 | A1 | 2009-08-20 | BENDALL et al. | |
| | 17 | 20090264488 | A1 | 2009-10-22 | COOPER et al. | |
| | 18 | 20090325978 | A1 | 2009-12-31 | ONAI et al. | |
| | 19 | 20100092474 | A1 | 2010-04-15 | GALLAGHER et al. | |
| | 20 | 20100145266 | A1 | 2010-06-10 | ORLOWSKI MICHAEL | |
| | 21 | 20100216858 | A1 | 2010-08-26 | POPEK et al. | |

EFS Web 2.1.18

EAGLEBEN-SA_00353847

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | | | | Filing Date | 2024-04-25 | |
| | | | | First Named Inventor | Nagesh R. Palepu | |
| | | | | Art Unit | | |
| | | | | Examiner Name | | |
| | | | | Attorney Docket Number | 107071.001394 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 22 | 20100247669 | A1 | 2010-09-30 | ELIASOF et al. | |
| | 23 | 20100273730 | A1 | 2010-10-28 | HSU et al. | |
| | 24 | 20110015245 | A1 | 2011-01-20 | ALAKHOV et al. | |
| | 25 | 20110190363 | A1 | 2011-08-04 | DRAGER et al. | |
| | 26 | 20120059000 | A1 | 2012-03-08 | REN et al. | |
| | 27 | 20120071532 | A1 | 2012-03-22 | COOPER et al. | |
| | 28 | 20120157505 | A1 | 2012-06-21 | LABELL et al. | |
| | 29 | 20120308516 | A1 | 2012-12-06 | HLAVINKA et al. | |
| | 30 | 20130041003 | A1 | 2013-02-14 | BRITTAIN et al. | |
| | 31 | 20130041004 | A1 | 2013-02-14 | DRAGER et al. | |
| | 32 | 20130177572 | A1 | 2013-07-11 | CHEN YAN et al. | Corresponds to JP 2015-501814 A |

EFS Web 2.1.18

EAGLEBEN-SA_00353848

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| --- | --- | --- |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 33 | 20130210878 | A1 | 2013-08-15 | SOPPIMATH et al. | |
| | 34 | 20130210879 | A1 | 2013-08-15 | PALEPU et al. | |
| | 35 | 20130217888 | A1 | 2013-08-22 | SHRAWAT et al. | |
| | 36 | 20130288274 | A1 | 2013-10-31 | WALKER ROGER et al. | Corresponds to JP 2015-501813 A |
| | 37 | 20140094496 | A1 | 2014-04-03 | SUNDARAM SRIKANTH | |
| | 38 | 20140275196 | A1 | 2014-09-18 | SUNDARAM SRIKANTH | |
| | 39 | 20150080444 | A1 | 2015-03-19 | SUNDARAM et al. | |
| | 40 | 20180185488 | A1 | 2018-07-05 | SUNDARAM SRIKANTH | |
| | 41 | 20180296535 | A1 | 2018-10-18 | PALEPU et al. | |
| | 42 | 20180296536 | A1 | 2018-10-18 | PALEPU et al. | |
| | 43 | 20180369383 | A1 | 2018-12-27 | SUNDARAM SRIKANTH | |

EFS Web 2.1.18

EAGLEBEN-SA_00353849

| | | | | | |
|---|---|---|---|---|---|
| | | Application #Number | | 18646171 | |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>( **Not for submission under 37 CFR 1.99**) | | Filing Date | | 2024-04-25 | |
| | | First Named Inventor | | Nagesh R. Palepu | |
| | | Art Unit | | | |
| | | Examiner Name | | | |
| | | Attorney Docket  Number | | 107071.001394 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 44 | 20190192659 | A1 | 2019-06-27 | SUNDARAM SRIKANTH | |
| | 45 | 20210393594 | A1 | 2021-12-23 | PALEPU et al. | |
| | 46 | 20230115164 | A1 | 2023-04-13 | PALEPU et al. | |
| | 47 | 20230115693 | A1 | 2023-04-13 | PALEPU et al. | |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add |

**FOREIGN PATENT DOCUMENTS** | Remove |

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2787568 | CA | A1 | 2011-08-04 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 2 | 2867295 | CA | A1 | 2013-09-26 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 3 | 2867343 | CA | A1 | 2013-09-26 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 4 | 1850048 | CN | A | 2006-10-25 | SHANDONG LANJIN BIOENGINEERING | English Abstract Submitted | ☐ |
| | 5 | 101584668 | CN | A | 2009-11-25 | JIANGSU AOSAIKANG PHARMACEUTIC | English Abstract Submitted | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353850

| | | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | | 18646171 | |
|---|---|---|---|---|---|---|

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 18646171 |
| Filing Date | | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | | 107071.001394 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 6 | 102164579 | CN | A | 2011-08-24 | CEPHALON INC | English Abstract Submitted | ☐ |
| | 7 | 104302291 | CN | A | 2015-01-21 | EAGLE PHARMACEUTICALS INC | corresponds to WO 2013/142358 | ☐ |
| | 8 | 80967 | DD | A | 1970-01-19 | RICHTER | | ☐ |
| | 9 | 152989 | DD | A1 | 1981-12-16 | KUNZE KLAUS | | ☐ |
| | 10 | 159289 | DD | A1 | 1983-03-02 | OLTHOFF UWE | | ☐ |
| | 11 | 2326306 | EP | A1 | 2011-06-01 | CEPHALON INC | | ☐ |
| | 12 | 2528602 | EP | A1 | 2012-12-05 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 13 | 2827862 | EP | A1 | 2015-01-28 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 14 | 2827863 | EP | A1 | 2015-01-28 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 15 | 2015-160351 | JP | A | 2015-09-07 | SUMITOMO BAKELITE CO | English Abstract Submitted | ☐ |
| | 16 | 95/19759 | WO | A1 | 1995-07-27 | PROCTER & GAMBLE | Corresponds to JP 09-508128 A | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353851

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Not for submission under 37 CFR 1.99) | | | Application Number | 18646171 |
|---|---|---|---|---|---|
| | | | | Filing Date | 2024-04-25 |
| | | | | First Named Inventor | Nagesh R. Palepu |
| | | | | Art Unit | |
| | | | | Examiner Name | |
| | | | | Attorney Docket Number | 107071.001394 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 17 | 99/01118 | WO | A2 | 1999-01-14 | ATHEROGENICS INC | | ☐ |
| 18 | 2001/097860 | WO | | 2001-12-27 | DU PONT PHARM CO | | ☐ |
| 19 | 2001/097861 | WO | | 2001-12-27 | DU PONT PHARM CO | | ☐ |
| 20 | 2001/098294 | WO | | 2001-12-27 | DU PONT PHARM CO | | ☐ |
| 21 | 02/02125 | WO | A1 | 2002-01-10 | YE YUERONG | | ☐ |
| 22 | 2006/054315 | WO | A1 | 2006-05-26 | VENUS REMEDIES LTD | | ☐ |
| 23 | 2006/110551 | WO | A2 | 2006-10-19 | AMYLIN PHARMACEUTICALS INC | | ☐ |
| 24 | 2010/036702 | WO | A1 | 2010-04-01 | PATEL PIYUSH R | | ☐ |
| 25 | 2010/126676 | WO | A1 | 2010-11-04 | PATEL PIYUSH R | | ☐ |
| 26 | 2010/148288 | WO | A2 | 2010-12-23 | ANDERSON DAVID M | | ☐ |
| 27 | 2011/094565 | WO | A1 | 2011-08-04 | BUXTON PHILIP CHRISTOPHER | | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353852

| | | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | | | Filing Date | 2024-04-25 |
| | | | First Named Inventor | Nagesh R. Palepu |
| | | | Art Unit | |
| | | | Examiner Name | |
| | | | Attorney Docket Number | 107071.001394 |

| | 28 | 2011/103150 | WO | A2 | 2011-08-25 | CEPHALON INC | | ☐ |
| | 29 | 2012/015810 | WO | A2 | 2012-02-02 | BUXTON PHILIP CHRISTOPHER | | ☐ |
| | 30 | 2013/142358 | WO | A1 | 2013-09-26 | EAGLE PHARMACEUTICALS INC | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button  [Add]

**NON-PATENT LITERATURE DOCUMENTS**  [Remove]

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | AKERS et. al., "Excipient-Drug Interactions in Parenteral Formulations", Journal of Pharmaceutical Sciences, November 2002, Vol. 91, Issue 11, pp. 2283-2300 | ☐ |
| | 2 | AKERS, Remington, The Science and Practice of Pharmacy 21st Edition, Parenteral preparation, chapter 41, 2005, pp. 802-835 | ☐ |
| | 3 | AMDAHL et al., Chemistry, 7th Ed., 2007 | ☐ |
| | 4 | American Heart Association, "Living With Heart Failure" (https://www.heart.org/idc/groups/heart-public/@wcm/@hcm/@gwtg/documents/downloadable/ucm_309068.pdf) (2001) | ☐ |
| | 5 | American Society of Hospital Pharmacists. ASHP Technical Assistance Bulletin On Hospital Distribution and Control. Am J. Hosp. Pharm. 1980, 37:1097-103 | ☐ |
| | 6 | AMIN et al., "Lyophilization of Polyethylene Glycol Mixtures", Journal of Pharmaceutical Sciences 2004, Vol. 93, No. 9, pp. 2244-2249 | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353853

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | 7 | ARMSTRONG et al., "Separation of Drug Stereoisomers by the Formation of...beta-Cyclodextrin Inclusion Complexes", Science, May 1986, Vol. 232, pp. 1132-1135 | ☐ |
|---|---|---|---|
| | 8 | BALDI et al., "Statistical Procedures for Optimizing the Freeze-Drying of a Model Drug in Tert-Butyl Alcohol: Water Mixtures", Eur. J. of Pharm. & Biopharm., 1994, Vol. 40, No. 3, pp. 138-141 | ☐ |
| | 9 | BALFOUR et al., "Bendamustine", Drugs, 2001, Vol. 61, No. 5, pp. 631-638 | ☐ |
| | 10 | BAUER et al., Pharmazeutische Technologies, pp. 225-228, HW9, 1993 | ☐ |
| | 11 | BAUER et al., Pharmazeutische Technologies, pp. 424-425, HW10, 1993 | ☐ |
| | 12 | BERGSAGEL et al., "Effect of cyclophosphamide on Advanced Lung Cancer and the Hematological Toxicity of Large, Intermittent Intravenous Doses", Canad. Med. Ass. J., 1968, Vol. 98, pp. 532-538 | ☐ |
| | 13 | BERNARD TESTA et al., Hydrolysis in Drug and Prodrug Metabolism, pp. 681-684. | ☐ |
| | 14 | Bernard TESTA, et al., "Hydrolysis in Drug and Prodrug Metabolism", Verlag Helvetica Chimica Acta, pp. 681-684, 2003, ISBN 3-906390-25-X. | ☐ |
| | 15 | BIEDERMANN et al., "SciFinder(r) Hydrolytic degradation of IMET", 1969, 3393, Vol. 108, pp. 1-2 | ☐ |
| | 16 | BIEWENGA et al., "The Pharmacology of the Antioxidant Lipoic Acid", Gen. Pharmac., 1997, Vol. 29, No. 3, pp. 315-331 | ☐ |
| | 17 | BOYLAN et al., "Parenteral Products, Chapter 12", Modern Pharmaceutics, Fourth Ed., 2002, pp. 1-34 | ☐ |

EAGLEBEN-SA_00353854

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 18 | BRIGITTE et al., "Lipoic and Dihydrolipoic Acids..., Free Rad". Res., 1994, Vol. 20, No. 2, pp. 119-133 | ☐ |
| | 19 | BROADHEAD et al., "Pharmaceutical Preformulation and Formulation, Chapter 9 in "Parenteral Dosage Forms", Interpharm., 2001, pp. 325-347 | ☐ |
| | 20 | BROWN, Organic Chemistry 5th Edition, 2009, pp. 358-360 | ☐ |
| | 21 | Canadian Society of Hospital Pharmacists: Guidelines for Drug-Use Control, 2008, pp. 1-28 | ☐ |
| | 22 | CARPENTER et al., "A Study of the Polyethylene Glycols as Vehicles for Intramuscular and Subcutaneous Injection", Journal of the American Pharmaceutical Association, 1952, Vol. 41, No. 1, pp. 27-29 | ☐ |
| | 23 | Center for Drug Evaluation and Research, Andrew Dmytrijuk, FDA Medical Review for the Approval of Bendeka, 2015, pp. 1-35 | ☐ |
| | 24 | Cephalon, Inc., et al., v. Slayback Pharma Limited Liability Company, et al., Civil Action No. 1:17-cv-01154: Opinion, dated 04/27/20, 70 pages. | ☐ |
| | 25 | Cephalon, Inc., et al., v. Slayback Pharma Limited Liability Company, et al.- Civil Action No. 1: 17-cv-01154: Answer to Slayback Pharma Limited Liability Company's Counterclaims, dated 10/20/17. | ☐ |
| | 26 | CEPHALON, Inc., et al., v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-01154: Joint Status Report (Document 164), dated 10/19/18. | ☐ |
| | 27 | CERHALON, Inc, et al. v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-01154: Complaint (Document 1), dated 08/16/17. | ☐ |
| | 28 | CERHALON, Inc., et al., v. Slayback Pharma Limited Liability Company - Civil Action No. 1:17-cv-01154: Answer to Slayback Pharma Limited Liability Company's Counterclaims (Document 56), dated 03/05/18. | ☐ |

EAGLEBEN-SA_00353855

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|---|
| | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket  Number | 107071.001394 | |

| | | | |
|---|---|---|---|
| 29 | Cerhalon, Inc., et al., v. Slayback Pharma Limited Liability Company, etal.- Civil Action No. 1:17-cv-01154: Answer to Apotex Inc. and Apotex Corp.'s Counterclaims (Document 22), dated 12/18/17. | | ☐ |
| 30 | CERHALON, Inc., et al., v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-00154: Defendant Slayback Pharma Limited Liability Company's Answer to Complaint and Counterclaims (Document 11), dated 09/29/17. | | ☐ |
| 31 | CERHALON, Inc., et al., v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-01154: Joint Claim Construction Chart (Document 94), dated 07/24/18. | | ☐ |
| 32 | CHADHA et al., "Drug Carrier Systems For Anticancer Agents: A Review", Journal of Scientific & Industrial Reasearch, 2008, Vol. 67, pp. 185-197 | | ☐ |
| 33 | CHESON et al., "Bendamustine: Rebirth of an Old Drug", J. Clin. Oncol., 2009, Vol. 27, pp. 1492-1501 | | ☐ |
| 34 | CHEUNG et al., "Safety and Pharmacokinetics of Bendamustine Rapid-Infusion Formulation", J. of Clinical Pharmacology, 2017, Vol. 57, No. 11, pp. 1400-1408 | | ☐ |
| 35 | CHU et al., Common Chemotherapy Regimens in Clinical Practice, Physicians' Cancer Chemotherapy Drug Manual 2009 | | ☐ |
| 36 | CORBETT, "Intravenous Fluids: It's More Than Just 'Fill 'Er Up!', Series #52 PRACTICAL GASTROENTEROLOGY, 2007, pp. 44-60 | | ☐ |
| 37 | COSTANTINO, "Lyophilization Of Biopharmaceuticals", Association of Pharmaceutical Scientists, 2004 | | ☐ |
| 38 | Cyclobond(R) Handbook, A Guide to Using Cyclodextrin Bonded Phases for Chiral LC Separations, 6th ed., 2002, Advanced Separation Technologies, Inc., pp 1-58. | | ☐ |
| 39 | DERRY et al., "Application of 15N Nuclear Magnetic Resonance Spectroscopy to the Determination of the Stability of Aryl Nitrogen Mustards", J. Med. Chem., 1995, Vol. 38, pp. 2256-2258 | | ☐ |

EAGLEBEN-SA_00353856

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | |
|---|---|---|
| 40 | Draft Note for Guidance on Excipients, Antioxidants and Antimicrobial Preservatives In the Dossier for Application for Marketing Authorisation of Medicinal Product, EMEA, 2003, pp. 1-10. | ☐ |
| 41 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01459: Answer to Slayback Pharma LLC's Counterclaims (Document 13), dated 10/31/18. | ☐ |
| 42 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01459: Complaint (Document 1), dated 09/20/18. | ☐ |
| 43 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01459: Defendant Slayback Pharma .imited Liability Company's Answer to Complaint, Additional Defenses, and Counterclaims (Document 9), dated 10/10/18. | ☐ |
| 44 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Answer to Slayback Pharma LLC's Counterclaims (Document 12), dated 01/03/19. | ☐ |
| 45 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Complaint (Document 1), dated 12/11/18. | ☐ |
| 46 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Defendant Slayback Pharma .imited Liability Company's Answer to Complaint, Additional Defenses, and Counterclaims(Document 11), public version dated 12/20/18. | ☐ |
| 47 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Opening Brief in Support of Slayback Pharma Limited Liability Company's Motion for Judgment on the Pleadings (Document 17), public version dated 01/11/19. | ☐ |
| 48 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01459: Complaint (Document 1), dated Sep. 20, 2018. | ☐ |
| 49 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01953: Complaint (Document 1), dated Dec. 11, 2018. | ☐ |
| 50 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01953: Eagle Pharmaceuticals' Opposition to Slayback Pharma's Motion for Judgment on the Pleadings (Document 23), redacted—public version dated Feb. 12, 2019. | ☐ |

EAGLEBEN-SA_00353857

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

***EXAMINER:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

EAGLEBEN-SA_00353858

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE
 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EAGLEBEN-SA_00353859

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.1.18

EAGLEBEN-SA_00353860

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number: 18646171 |
| | Filing Date: 2024-04-25 |
| | First Named Inventor: Nagesh R. Palepu |
| | Art Unit: |
| | Examiner Name: |
| | Attorney Docket Number: 107071.001394 |

### U.S.PATENTS  [Remove]

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.  [Add]

### U.S.PATENT APPLICATION PUBLICATIONS  [Remove]

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.  [Add]

### FOREIGN PATENT DOCUMENTS  [Remove]

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button  [Add]

### NON-PATENT LITERATURE DOCUMENTS  [Remove]

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.1.18

EAGLEBEN-SA_00353861

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | | |
|---|---|---|---|
| | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | | |
|---|---|---|---|
| | 1 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01953: Reply Brief in Further Support of Slayback Pharma Limited Liability Company's Motion for Judgment on the Pleadings (Document 27), public verison dated Mar. 1, 2019. | ☐ |
| | 2 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc - Civil Action No. 1:18-cv-01074: Exhibit Index-Includes Confidential Information (Document 21), public version dated 09/07/18. | ☐ |
| | 3 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc- Civil Action No. 1:18-cv-01074: Complaint (Document 1), dated 07/19/18. | ☐ |
| | 4 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc- Civil Action No. 1:18-cv-01074: Hospira's Reply Brief in Support of its Motion to Dismiss Plaintiffs' Complaint (Document 29), public version dated 11/26/18. | ☐ |
| | 5 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc- Civil Action No. 1:18-cv-01074: Plaintiffs' Opposition to Motion to Dismiss (Document 26), redacted-public version dated 11/02/18. | ☐ |
| | 6 | EC Safety Data Sheet: Ribomustin(Registered) 2007 | ☐ |
| | 7 | Eric Watson, et al., Kinetics of Phosphoramide Mustard . . . , Journal of Pharmaceutical Sciences, vol. 74, No. 12, pp. 1283-1292, 1985. | ☐ |
| | 8 | FLAMBERG et al., "Low Temperature Vacuum Drying of Sterile Parenterals From Ethanol", Bulletin of the Parenteral Drug Association, 1970, Vol. 24, No. 5, pp. 209-217 | ☐ |
| | 9 | FLOSS et al., "Intravenous fluids principles of treatment", Clinical Pharmacist, 2011, Vol. 3, pp. 274-283 | ☐ |
| | 10 | FRIEDBERG et al., "Bendamustine in Patients with Rituximab-Refractory Indolent and Transformed Non-Hodgkin's Lymphoma: Results from a Phase II Multicenter, Single-Agent Study", J. Clin. Oncol., 2008, Vol. 26, No. 2, pp. 204-210 | ☐ |
| | 11 | FRIEDMAN et al., "Colorimetric Estimation of Nitrogen Mustards in Aqueous Media. Hydrolytic Behavior of Bis-(ß-chloroethyl)amine, nor HN2", Analytical Chemistry, 1961, Vol. 33, No. 7, pp. 906-910 | ☐ |

EAGLEBEN-SA_00353862

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

| | | |
|---|---|---|
| 12 | Fujisawa Deutschland GmbH Ribomustin(Registered) Products and Technical Specifications, 2002 | ☐ |
| 13 | Furst et al., "About the Hydrolytic Decomposition of IMET 3393," Pharmazeutische Zentralhalle, 1969, Vol. 108, Issue 9, pp. 608-614 (English translation and the original article) | ☐ |
| 14 | Galacid Excel 88 fact sheet (lactic acid 88%), 2012 | ☐ |
| 15 | GAMCSIK et al., "NMR Studies of the Conjugation", J. Med. Chem., 1990, Vol. 33, pp. 1009-1014 | ☐ |
| 16 | GANDHI et al., "Bendamustine in B cell malignancies: the new, 46-year old kid on the block", Clin Cancer Res., 2009, Vol. 15, No. 24, pp. 7456-7461 | ☐ |
| 17 | GATLIN et al., "Injectable Drug Development", 17. Formulation and Administration Products, pp. 401-420 | ☐ |
| 18 | GIBSON et al., "Pharmaceutical Preformulation And Formulation: A practical guide from candidate drug selection to commercial dosage form", Informa Healthcare USA, 2009, Vol. 199, 2nd ed, pp. 1-559. | ☐ |
| 19 | GLIMELIUS et al., "Bolus-Injection (2-4 min) Versus Short-term (10-20 min) Infusion of 5-Fluorouracil in Patients with Advanced Colorectal Cancer: a Prospective Randomised Trial", Eur J. Cancer, 1998, Vol. 34, pp. 674-678 | ☐ |
| 20 | Graham Solomons, Organic Chemistry, John Wiley & Sons, 3d ed. 1984 | ☐ |
| 21 | GUPTA et al., "Injectable Drug Development Techniques to Reduce Pain and Irritation", Informa Healthcare, 2008, pp. 183 | ☐ |
| 22 | GUST et al., "Investigations on the Stability of Bendamustin, a Cytostatic Agent of the Nitrogen Mustard Type I", Synthesis, Isolation, and Characterization of Reference Substances, in Monatshefte fur Chemie, 1997, Vol. 128, pp. 291-299 | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353863

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | | |
|---|---|---|---|
| 23 | Handbook of Pharmaceutical Excipients, Seventh edition 2012, Pharmaceutical Press. | ☐ |
| 24 | Handbook of Pharmaceutical Excipients, Sixth edition, 2009; Rowe; page 857 (extract from index). | ☐ |
| 25 | HEIDER et al., "Efficacy and Toxicity of Bendamustine in Patients with Relapsed Low-Grade non-Hodgkin's Lymphomas", Anticancer Drugs, 2001, Vol. 12, pp. 725-729 | ☐ |
| 26 | HFSA 2010 Comprehensive Heart Failure Practice Guideline, Journal of Cardiac Failure, 2010, Vol. 16 No. 6, | ☐ |
| 27 | HSU et al., "Reactions of N-Ethyl- (HN-1), N-Methyl-Bis(2-Chloroethyl)amine (HN-2), and Tris(2-Chloroethyl)amine (HN-3) with Peroxides, 2002, pp. 1-15 | ☐ |
| 28 | ICH Harmonised Tripartite Guideline, Stability testing of New Drug Substances and Products Q1A(R2), dated February 6, 2003 | ☐ |
| 29 | Interlocutory decision in Opposition proceedings of EP 2528602 issued April 8, 2019. | ☐ |
| 30 | International Conference on Harmonisation in Guideline on Impurities in New Drug Products: Availability, 1997, 62 Fed. Reg. 27, pp. 454-27, Page 461 | ☐ |
| 31 | International Search Report and Written Opinion for No. PCT/US2013/032289 dated Jun. 2013. | ☐ |
| 32 | International Search Report and Written Opinion issued in counterpart PCT/US2013/032295 dated Jun. 2013 (4 pages). | ☐ |
| 33 | International Search Report and Written Opinion issued in counterpart PCT/US2013/26187. | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353864

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 |
|---|---|---|---|
| | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 34 | International Search Report and Written Opinion of International application based on PCT/US2011/022958, dated Apr. 2011 (8 pages). | ☐ |
| | 35 | International Search Report of International Appln. No. PCT/US2013/032289 mailing date Jun. 6, 2013. | ☐ |
| | 36 | International Search Report PCT/US2011/022958 dated Apr. 12, 2011. | ☐ |
| | 37 | JENNINGS, "Lyophilization, Introduction and Basic Principles", 2006, original copyright 1999 | ☐ |
| | 38 | JERRY, Advanced Organic Chemistry, 4th ed., John Wiley & Sons, Inc. 1992 | ☐ |
| | 39 | JONES, "Applications of Hydrogen Peroxide and Derivatives", Royal Society of Chemistry, 1999, 1 page | ☐ |
| | 40 | JONKMAN-DE VRIES et al., "Pharmaceutical Development of (Investigational) Anticancer Agents for Parental Use-A Review", Drug Dev Ind Pharm. 1996, Vol. 22, No. 6, pp. 475-494 | ☐ |
| | 41 | KALAYCIO, "Clinical Experience With Bendamustine: A New Treatment for Patients With Chronic Lymphocytic Leukemia", Clin Leukemia., 2008, Vol. 2, No. 4, pp. 223-229 | ☐ |
| | 42 | KENNETH et al., "Remington, Parenteral Preparations", Chapter 41, 2000, pp. 780-786 | ☐ |
| | 43 | KNAUF et al., "Bendamustine Versus Chlorambucil in Treatment-Naive Patients with B-Cell Chronic Lymphocytic Leukemia (B-CLL): Results of an International Phase III Study", Blood, 2007, Vol. 110, No. 11, 609a | ☐ |
| | 44 | KOOMANS et al., "Sodium Balance in Renal Failure: A Comparison of Patients with Normal Subjects Under Extremes of Sodium Intake", Hypertension, 1985, Vol. 7, pp. 714-721 | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353865

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 |
|---|---|---|---|
| | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 107071.001394 |

| | 45 | KUMAR et al., AAPS Pharm Sci Tech., 2006, Vol. 7, No. 3, pp. E1-E7 | ☐ |
|---|---|---|---|
| | 46 | LEONARD et al., A New Synthesis of Aziridinium Salts. 2,2-Pentamethylene-1,1-tetramethyleneaziridinium Perchlorate A Prototype", J. AM. CHEMISTRY SOC'Y, 1960, Vol. 82, pp. 6418-6419 | ☐ |
| | 47 | LEONI et al., "SDX-105 (Bendamustine), a Clinically Active Antineoplastic Agent Possesses a Unique Mechanism of Action", Blood, 2003, Vol. 102, No. 11, Abstract #2363 | ☐ |
| | 48 | LIAN-FENG et al., "Water-Insoluble Drug Formulation", Second Edition, Ch. 7. Formulation Strategies and Practice. Support, pp. 113-132 | ☐ |
| | 49 | LISSITCHKOV et al., Phase-I/II study to Evaluate Dose Limiting Toxicity, Maximum Tolerated Dose, and Tolerability of Bendamustine HCl in Pre-treated Patients With B-Chronic Lymphocytic Leukaemia (Binet stages B and C) Requiring Therapy, J. Cancer Res. Clin. Oncol. 2006, Vol. 132, pp. 99-104 | ☐ |
| | 50 | Liu (ed). Water-Insoluble Drug Formulation, 1st ed., CRC Press, Chapters 7 and 9, 2000. | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button [ Add ]

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

EAGLEBEN-SA_00353866

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

EAGLEBEN-SA_00353867

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.   The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.   A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EAGLEBEN-SA_00353868

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | 18646171 |
| Filing Date | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 107071.001394 |

### U.S.PATENTS — Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. **Add**

### U.S.PATENT APPLICATION PUBLICATIONS — Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**

### FOREIGN PATENT DOCUMENTS — Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button **Add**

### NON-PATENT LITERATURE DOCUMENTS — Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EAGLEBEN-SA_00353869

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 1 | Liu (ed). Water-Insoluble Drug Formulation, 2nd ed., CRC Press, Chapters 7 and 9, 2000. | ☐ |
| | 2 | LYONDELL Tebol (Registered) 99, Tertiary Butyl Alcohol in Freeze-Drying Applications,(Lyondell Chemical Co., 2003 | ☐ |
| | 3 | Maas B: "Stabilitaet von Bendamustinhydrochlorid in Infusionsloesungen" Die Pharmazie, Govi Verlag Pharmazeutischer Verlag Gmbh, Eschborn, DE, vol. 49, No. 10, Jan. 1, 1994. | ☐ |
| | 4 | Maas et al., "Stabilitat von Bendamustinhydrochlorid in Infusionslosungen," Die Pharmazie, Govi Verlag Pharmazeutischer Verlag Gmbh, vol. 49. No. 10 pp. 775-777 (1994). (Abstract Only). | ☐ |
| | 5 | MAAS, "Stabilitat von Bendamustinhydrochlorid in Infusionslosungen", Die Pharmazie, Govi Verlag Pharmazeutischer Verlag Gmbh, Eschborn, DE, 1994, Vol. 49, No. 10, pp. 775-777 | ☐ |
| | 6 | MARGOLIN et al., "Shortening the Infusion Time of Anticancer Drugs: Who Will Benefit?", J. of Clinical Oncology, 2007, Vol. 25 No. 19, pp. 2642-2643 | ☐ |
| | 7 | MCGINITY et al., "Influence of Peroxide Impurities in Polyethylene Glycols", Journal of Pharmaceutical Sciences, 1975, Vol. 64, No. 2, pp. 356-357 | ☐ |
| | 8 | MIKHAL'CHUK et al., "Antioxidative Stabilization of Polyethylene...", Russian Journal of Applied Chemistry, 2004, Vol. 77, No. 1, pp. 131-135 | ☐ |
| | 9 | National Kidney Foundation, "Clinical Practice Guidelines and Clinical Practice Recommendations" http://kidneyfoundation.cachefly.net/professionals/KDOQI/guideline_upHD_PD_VA/hd_guide5.htm, 2006 | ☐ |
| | 10 | NEMA et al., "Excipients and Their Use in Injectable Products", PDA J. Pharma. Sci. & Tech., 1997, Vol. 51, No. 4, pp. 166-171 | ☐ |
| | 11 | NEMA et al., "Excipients and Their Use in Injectable Products", PDA Journal of Pharmaceutical Science & Technology, May 16, 1997 | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353870

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| 12 | NI et al., "Stabilization and Preformulation of Anticancer Drug-SarCNU", Int'1 J. of Pharma., 2002, Vol. 249, No. 257-264 | ☐ |
| 13 | NI et al., "Use of pure t-butanol as a solvent for freeze-drying: a case study", International Journal of Pharmaceutics, 2001, Vol. 226, pp. 39-46 | ☐ |
| 14 | Ni et al., Use of Pure t-Butanol as a Solvent for Freeze-Drying: A Case Study, Int'1. J. of Pharma., 226:39-46 (2001) | ☐ |
| 15 | NUIJEN et al., "Pharmaceutical Development of a Parenteral Lyophilized Formulation of the Novel Antitumor Agent Aplidine", PDA J. Pharmaceut. Sci. and Technol., 2000, Vol. 54, No. 3, pp. 193-208 | ☐ |
| 16 | O'CONNOR, "Hydrolysis and Alkylating Reactivity of Aromatic Nitrogen Mustards", J.Chem. Soc. Perkin Trans., 1991, Vol. 2, pp. 1933-1939 | ☐ |
| 17 | OLSON, "Volatile Solvents for Drying and Microbial Kill in the Final Container", Pharmaceutical Engineering, 1997, pp. 110-118 | ☐ |
| 18 | OLTHOFF et al., "OlthofT, DD 159289, cited in IDS filed 01/24/2014, | ☐ |
| 19 | OZEGOWSKI et al., "IMET 3393, ?-[1-Methyl-5-bis-(Beta-chloroethyl)-amino-benzimidazolyl-(2)]-butyric acid hydrochloride, a new cytostatic agent from the benzimidazole mustard gas series", 110 Zbl Pharm. 1971, Vol. 110, pp. 1013-1019 | ☐ |
| 20 | PCT Notification of Transmittal of International Search Report and Written Opinion for PCT/US2013/032295. | ☐ |
| 21 | PCT Written Opinion of International Search Authority for PCT/US2013/032295. | ☐ |
| 22 | PETHRICK et al., "Excerpt from Polymer Yearbook 13, CRC Press, 01 Oct 1996, Technology & Engineering Vinogradova et al. | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353871

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|---|
| | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 107071.001394 |

| | 23 | POKORNY et al., "Antioxidants in Food: Practical Applications", CRC Press, 2001, page 324 | ☐ |
|---|---|---|---|
| | 24 | Poulsen, Introduction to Chemistry (2010) | ☐ |
| | 25 | Pramod K. Gupta Injectable Drug Development Techniques to Reduce pain and irritation. | ☐ |
| | 26 | PREISS et al., "Pharmacological and clinical date of Bendamustine," 17th International Cancer Congress, 1998, pp. 1637-1640 | ☐ |
| | 27 | PREISS et al., "Studies on the Pharmacokinetics of Bendamustine (Cytostasan®) in Humans", Pharmazie, 1985, Vol. 40, No. 11, pp. 782-784 | ☐ |
| | 28 | PRICE, Handbook of Pharm. Excipients, 5th Edition, "Polyethylene Glycol", August 2005, pp. 545-550 | ☐ |
| | 29 | QIN et al., "Oxidative degradation of oligo(ethylene glycol)-terminated monolayers", Chem. Commun. 2009, pp. 5112-5114 | ☐ |
| | 30 | RASSACHAERT et al., "A phase 1 study of bendamustine hydrochloride administered once every 3 weeks in patients with solid tumors," Anti-Cancer Drugs, 2007, Vol. 18 No. 5, pp. 587-595 | ☐ |
| | 31 | Ready-to-Use [online] retrieved on 5/27/21 from: https://medical-dictionary.thefreedictionary.com/ready-to-use; 2021, 1 page | ☐ |
| | 32 | Remington's Pharmaceutical Sciences, 18th edition, (1990), page 1322. | ☐ |
| | 33 | Remington's Pharmaceutical Sciences, 18th edition, (1990), pp. 1286-1288. | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353872

| | | Application Number | 18646171 |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket  Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 34 | Remington's Pharmaceutical Sciences 1990 (Eighteenth Edition), Mack Publishing Company, Chapter 85, pp. 1570-1580 | ☐ |
| | 35 | Ribomustin Monograph (Updated August 2005) | ☐ |
| | 36 | Ribomustin Monograph (Updated January 2002) | ☐ |
| | 37 | Ribomustin Product Information, Janssen-Cilag Pty Ltd (Updated September 15, 2016) | ☐ |
| | 38 | ROBERTS et al., Basic Principles Of Organic Chemistry, W. A. Benjamin, Inc., 2d ed. 1977, pp. 612-618 | ☐ |
| | 39 | Rote Liste 1996 for Ribomustin (86 023) | ☐ |
| | 40 | Rote Liste 2003 for Ribomustin (86 045) | ☐ |
| | 41 | ROWE et al. Handbook of Pharmaceutical Excipients, 6th edition, 2009, pp. 454-455 | ☐ |
| | 42 | ROWE et al., "Handbook of Pharmaceutical Excipients," Pharmaceutical Press, 6th edition pp. 857 (extract from index) (2009). | ☐ |
| | 43 | ROWE et al., Handbook of Pharmaceutical Excipients, 5th ed., Pharmaceutical Press, pp. 545-550, Polyethylene Glycol, 2006. | ☐ |
| | 44 | Safety Data Sheet, Lactic Acid, 88%, Colu{acute over (m)}bus Chemical Industries, 2013. | ☐ |

EFS Web 2.1.18

EAGLEBEN-SA_00353873

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | 45 | Safety Data Sheet, Lactic Acid, 88%, Columbus Chemical Industries, 2013 | ☐ |
| | 46 | SANTACESARIA et al., "Thermal Stability Of Nonionic Polyoxyalkylene Surfactants", Journal of Applied Polymer Science, 1991, Vol. 42, pp. 2053-2061 | ☐ |
| | 47 | SCASNAR et al., "Radiochemical Assay of Stability of 14C-Cytostasan Solutions During Preparation and Storage", Journal of Radioanalytical and Nuclear Chemistry, Articles, 1988, Vol. 121, No. 2, pp. 489-497 | ☐ |
| | 48 | SCHOFFSKI et al., "Weekly Administration of Bendamustine: A phase 1 study in patients with advanced progressive solid tumors", Annals of Oncology II, 2000, pp. 729-734 | ☐ |
| | 49 | SCHOFFSKI et al., "Repeated administration of short infusions of bendamustine: a phase 1 study in patients with advanced progressive solid tumours", J. Cancer Res Clin Oncol, 2000, Vol. 126 No. 1 pp. 41-47 | ☐ |
| | 50 | SCHWANEN et al., "In vitro evaluation of bendamustine induced apoptosis in B-chronic lymphocytic leukemia", Leukemia, 2002, Vol. 16, pp. 2096-2105 | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button   Add

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

EAGLEBEN-SA_00353874

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

EAGLEBEN-SA_00353875

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.   The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.   A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.1.18

EAGLEBEN-SA_00353876

2

## Field of the Invention

The invention relates to a method for producing injection solutions which may be used for medical treatment.

## Characteristic of the Background Art

N-mustard compounds have been used for some years as highly effective cytostatics. It is estimated that mustards can be used in the therapy of 70 % of all treated malign tumors. More recent synthesis research was aimed at, for example, synthesizing a multivalent antagonist type out of said compound group. In said experiments and in vast pharmacological and clinical trials, bendamustine hydrochloride (trial ID IMET 3393), the compound synthesized by OZEGOWSKI and KREBS in 1963, was for example selected (BRUNS, KNÖLL) from a larger number of compounds. Bendamustine hydrochloride is γ-[1-methyl-5-bis-(β-chloroethyl)-aminobenzimidazo-lyl-(2)]-butyric acid hydrochloride. In 1971, the compound was introduced as pharmaceutical preparation under the trade name of CYTOSTASAN® (0.025 g bendamustine hydrochloride per dry ampoule) for the therapy of hemoblastoses, particularly such as chronic lymphadenosis, lymphoreticulosis, lymphogranulomatosis and of reticuloses.

Bendamustine hydrochloride is a relatively instable compound. Its mustard-halogen groups are almost completely hydrolyzed in aqueous solutions after a short period of time. Therefore, the injection solutions can only be produced shortly before injection. The kinetic experiments regarding the chloride hydrolysis of the N-mustard group of the bendamustine hydrochloride showed a reaction course in acid and neutral solutions which could be calculated according to the pseudo first order of the reaction for a consecutive reaction of the symmetric di-halogen compound (U. OLTHOFF, Abstr. Congr. Pharm. Hung. VI; Budapest 1974, p. 72). Independently of the pH value and of the buffer system used, the separation of the chloride and protons from the β-chloroethyl groups is complete and occurs at very high velocity. As far as this aspect is concerned, bendamustine hydrochloride is even more reactive than the particularly reactive mustards N-methyl mustard, chlorambucil and uracil mustard.

DX_190359 corrected translation.doc

EAGLEBEN-SA_00353877

3

These data explain particular difficulties encountered in the production of stable medical preparations out of bendamustine hydrochloride.

According to the patent from the former German Democratic Republic WP 80 967, the N-mustard derivative bendamustine hydrochloride has to be produced in a sterile crystal form which is free of aerosols and suited for quick dissolution. The preparation form is a dry ampoule containing a mixture of 25 mg of bendamustine hydrochloride and 175 mg of ascorbic acid. Before the application, the content of the ampoule has to be dissolved in water for the injection. The ascorbic acid is included for the objective to produce a powder mixture which can be filled and to ensure the durability and the pH value of the injection solution. Moreover, the shelf life of the dry mixture should be guaranteed. According to the present results of the experiments, the hydrolysis rate is not influenced by the addition of the ascorbic acid.

The pH value of a bendamustine hydrochloride solution, which is within the range of 2.4 to 3.0, is not significantly altered by the addition of the ascorbic acid. Thus, the addition of the ascorbic acid does not match the characteristics which are to be required from a stabilizer. After a certain storage period, solid bendamustine hydrochloride shows a pink to brown-red discoloration, which starts at the surface of the substance and which, after a longer period of time, renders the whole substance unsuitable for the production of pharmaceutical preparations. The mixture with ascorbic acid shows the same discoloration.

Furthermore, it was proposed to lyophilize the aqueous solution of the substance bendamustine hydrochloride and to dissolve it in water or sodium chloride solution before the application (production method of the ZIMET (≈ former Central Institute for microbiology and experimental therapy in the GDR), pharmaceutical expertise IfAr/ Nr. 180/ 80). The lyophilisate obtained (25 mg/ ampoule) has significant disadvantages for a technological production process. In particular, the technological realization is complicated even more by the extreme hygroscopicity and the fact that the process takes place under inert gas. Moreover, during the production of the preparation, clear signs for decomposition of 5 to 10 % of the active substance were observed. It is furthermore unsatisfying that high amounts of micro particles were

EAGLEBEN-SA_00353878

4

found after the dissolution of the lyophilisate, which indicate a further instability of the system.

The disadvantage of the extreme hygroscopicity of the lyophilisate can be eliminated by the addition of polyols which are solid at room temperature, such as in particular mannitol. In addition to the large technological efforts, also the disadvantages of significant decomposition and of the manifestation of undissolved micro particles have to be considered.

Objective of the Invention

It is the objective of the invention to produce a stable and ready-to-use injection solution out of N-mustard compounds, avoiding the technical solution of a dry ampoule.

Description of the Character of the Invention

In the technical solutions known so far, the injection preparation was realized either as a filled powder under addition of a stabilizer and other auxiliary substances respectively, or in form of a lyophilisate, if necessary, with auxiliary substances. By these measures, a suitable injection preparation can only be realized with significant disadvantages or can't be realized at all. The dry fillings thus obtained are characterized by insufficient chemical and physical stability. Besides, lyophilization means that significantly increased technical efforts have to be made, a fact which might be limiting as far as the capacities are concerned.

Surprisingly it has been found that the substance bendamustine hydrochloride has a sufficient solubility and particularly a extraordinarily high chemical stability for the production of injection solutions in monovalent alcohols, glycols and other polyvalent alcohols. The stability of the solutions produced according to the invention is unexpected, since compounds with extreme sensitivity to hydrolysis are generally also sensitive to other solvents which contain OH-groups. In the case of alcohols or polyols, such reactions are known as alcoholysis.

03_190039 corrected translation.doc

EAGLEBEN-SA_00353879

5

It has now been found that N-mustard compounds of the bendamustine hydrochloride type do not undergo an alcoholysis reaction. The use of anhydrous solvents is required in order to avoid decomposition caused by the mentioned sensitivity to hydrolysis. Under these conditions, bendamustine hydrochloride, for example, is chemically stable for long periods of time in the mentioned group of solvents and does not form the monohydroxy and dihydroxy or monoalkoxy or dialkoxy derivatives known from aqueous solutions.

In order to examine the stability, bendamustine hydrochloride in a concentration of 25 mg/ ml was dissolved in ethanol and 1,2-propylene glycol and the solution was stored at room temperature, as well as at increased temperatures (50° C, 75° C, 130° C)

examined for the formation of cleavage products by means of a specific, thin film chromatography procedure (quantity applied 0.025 mg bendamustine hydrochloride, silica gel G, mobile phase: butanol/ acetic acid/ water 4:1:5; detection UV 360 nm or respectively Dragendorff reagent); results:

Formation of decomposition products in:

| time | ethanol solution | | propylene glycol solution | | |
| --- | --- | --- | --- | --- | --- |
| | 25° C | 60° C | 25° C | 75° C | 130° C |
| 0.5 h | ~ | ~ | ~ | ~ | (traces) |
| 1 h | ~ | ~ | ~ | none | ~ |
| 1.5 h | ~ | ~ | ~ | ~ | (traces) |
| 2 h | ~ | ~ | ~ | none | minor decomposition |
| 5 h | none | none | ~ | none | ~ |
| 7 h | none | none | ~ | ~ | ~ |
| 24 h | none | ~ | ~ | ~ | ~ |
| 8 weeks | none | ~ | none | ~ | ~ |

EAGLEBEN-SA_00353880

6

For pharmacological reasons and for reasons concerning the production, monovalent alcohols are of limited use for the production of injection solutions. 1,2-propylene glycol is used more frequently. The solubilities of bendamustine hydrochloride which can be achieved at 25° C in some of the solvents used are of about

| | | |
|---|---|---|
| ethanol abs. | ca. | 50 mg/ ml |
| propylene glycol | ca. | 125 mg/ ml and |
| glycerol | ca. | 50 mg/ ml |

In the injection forms of bendamustine hydrochloride known so far, 25 mg active substance are used in 10 ml solvent. It is now proposed to dissolve the active substance in polyols, particularly in 1,2-propylene glycol in order to ensure a more simple production technology, an improved stability of the active substance during the production and storing of the solutions as well as a simplified handling during the production of the ready to inject solution when the active substance is solved in polyols, particularly in 1,2-propylene glycol and filled into ampoules. Immediately before the injection, the polyol solution is diluted by means of the addition of an aqueous diluent (sodium chloride solution in water for injection) such that the solution which is to be applied contains only about 10% polyol, sometimes even less. The polyol solutions can be diluted as desired with the diluents described before, without causing any disadvantages for the active substance. Due to the numerous possible variations of the contents of polyol and the diluent, there are several other advantages for the choice of an optimized, particularly acceptable injection preparation. In addition to the sensitivity to hydrolysis, other stability factors which have to be considered are the influence of light and atmospheric oxygen. Dry preparations and solutions change color under the influence of light and air until they have a pink or brownish color. As far as the solutions in alcohols and polyols which are stored in closed ampoules and under exclusion of light are concerned, no discoloration was observed. It is, however, recommended that the solutions are produced, filled and stored under an inert gas, such as argon or nitrogen.

EAGLEBEN-SA_00353881

7

Exemplary embodiments:

Example 1:

Bendamustine hydrochloride is dissolved under stirring in an inert gas atmosphere in 1,2-propylene glycol in an concentration of 2.5 g/ 100 ml. The solution is filtered by means of a suitable filter device, if necessary after heating to 50° C, such that it is free of aerosols and germs. 1.0 ml of the solution is filled in 10 ml ampoules, the ampoules are filled with inert gas and sealed by heating. Immediately before the injection, 9.0 ml of the chosen diluent is to be added into the opened ampoule. After reshuffling, the solution is ready to inject.

Example 2:

5.0 g bendamustine hydrochloride are dissolved in 100 ml ethanol under the conditions described in example 1, filtered and filled into ampoules. The ampoules are stored at temperatures of +15° C to +25° C.

GB_199266 corrected translation.doc

EAGLEBEN-SA_00353882

8

## CLAIMS

1. Method for producing stable injection solutions of N-mustard compounds, characterized in that N-mustard derivatives in concentrations of 25 mg/ ml to 100 mg/ ml are dissolved in an anhydrous monovalent or polyvalent alcohol (polyol), wherein the solution is dissolved, filled and stored under inert gas and the solution is diluted before medical application in a ratio of 1:5 to 1:20 with an aqueous injection medium.

2. Method according to claim 1, characterized in that benzimidazole mustards are used as active substance, in particular bendamustine hydrochloride.

3. Method according to claim 1, characterized in that particularly 1,2-propylene glycol is used as polyol.

EAGLEBEN-SA_00353883

DD 159 289 – for app. 13284220

1

Abstract: The invention relates to a method for producing stable injection solutions which can be used for medical treatment. It is the objective to produce a ready to use, stable injection solution of N-mustard compounds, avoiding the technical solution of a dry ampoule. According to the invention, the N-mustard compounds are used in concentrations of 25 mg/ml to 100 mg/ml, dissolved in an anhydrous monovalent or polyvalent alcohol (polyol), wherein the solution is dissolved, filled and stored under inert gas. Before the injection, the solutions are diluted by means of an aqueous injection medium in order to achieve the desired concentration.

EAGLEBEN-SA_00353884

(19)  DEUTSCHE DEMOKRATISCHE REPUBLIK

# PATENTSCHRIFT



Wirtschaftspatent

Erteilt gemäß § 5 Absatz 1 des Aenderungsgesetzes
zum Patentgesetz

ISSN 0433-6461    (11) **1592 89**

Int.Cl.³    3(51)  A 61 K 31/41
                   A 61 K  9/08

## AMT FUER ERFINDUNGS- UND PATENTWESEN

In der vom Anmelder eingereichten Fassung veroeffentlicht

| (21) WP A 61 K/ 2304 291 | (22) 01.06.81 | (44) 02.03.83 |
|---|---|---|

(71)  VEB JENAPHARM, JENA;DD;
(72)  OLTHOFF, UWE,DR. DIPL.-CHEM.;REICHARDT, KARIN;JACOB, JOERG,DR.;DD;
(73)  siehe (72)
(74)  VEB JENAPHARM, BFS, 6900 JENA, OTTO-SCHOTT-STR. 13

(54)  VERFAHREN ZUR HERSTELLUNG STABILER INJEKTIONSLOESUNGEN VON N-LOSTVERBINDUNGEN

(57) Die Erfindung beinhaltet ein Verfahren zur Herstellung von zur medizinischen Behandlung verwendbaren Injektionslösungen. Ziel ist die Herstellung einer stabilen und gebrauchsfertigen Injektionslösung von N-Lostverbindungen unter Umgehung der technischen Lösung als Trockenampulle. Die N-Lostderivate werden erfindungsgemäß in Konzentrationen von 25 mg/ml bis zu 100 mg/ml in einem ein- oder mehrwertigen Alkohol, insbesondere 1,2-Propylenglykol, gelöst wobei das Lösen, Abfüllen und Aufbewahren der Lösungu unter Inertgas erfolgt. Vor der Injektion werden die Lösungen mit einem wäßrigen Injektionsträger auf die gewünschte Konzentration verdünnt.

8 Seiten

*31*

BNSDOCID: <DD    1592889    I >

EAGLEBEN-SA_00353885

-1-    230429  1

## Anwendungsgebiet der Erfindung

Die Erfindung betrifft ein Verfahren zur Herstellung von zur medizinischen Behandlung verwendbaren Injektionslösungen.

## Charakteristik der bekannten technischen Lösungen

N-Lostverbindungen werden seit einigen Jahren als hochwirksame Cytostatika verwendet. Es wird eingeschätzt, daß bei 70 % aller behandelten bösartigen Geschwülste Loste bei der Therapie eingesetzt werden können. Neuere Syntheseforschungen richteten sich u. a. darauf, aus dieser Verbindungsgruppe einen multivalenten Antagonistentyp zu synthetisieren. Bei diesen Versuchen und eingehenden pharmakologischen und klinischen Prüfungen wurde aus einer größeren Anzahl Verbindungen z. B. die von OZEGOWSKI und KREBS 1963 synthetisierte Verbindung Bendamustinhydrochlorid (Versuchsbezeichnung IMET 3393) ausgewählt (BRUNS, KNÖLL). Bendamustinhydrochlorid ist-r-[1-Methyl-5-bis-(ß-chlorethyl)-aminobenzimidazolyl-(2)]-buttersäurehydrochlorid. Die Verbindung wurde 1971 als pharmazeutische Zubereitung unter dem Warenzeichen CYTOSTASAN$^R$ (0,025 g Bendamustinhydrochlorid je Trockenampulle) in die Therapie von Hämoblastosen, insbesondere

-1.JUN.1981*938209

BNSDOCID: <DD    1580888 : >

- 2 - 230429 1

bei der chronischen Lymphadenose, der Lymphoretikulose, der Lyphogranulomatose und bei Retikulosen eingeführt.

Bendamustinhydrochlorid ist eine relativ instabile Verbindung. In wäßrigen Lösungen erfolgt nach kurzer Zeit eine nahezu vollständige Hydrolyse der Lost-Halogengruppen. Deshalb ist die Herstellung der Injektionslösungen erst kurz vor der Injektion möglich. Die kinetischen Untersuchungen zur Chloridhydrolyse der N-Lostgruppe des Bendamustinhydrochlorids ergaben in sauren und neutralen Lösungen einen Reaktionsablauf, der sich nach pseudoerster Reaktionsordnung für eine Folgereaktion der symmetrischen Dihalogenidverbindung berechnen ließ (U. OLTHOFF, Abstr. Congr. Pharm. Hung. VI, Budapest 1974, S. 72). Die Chlorid- und Protonenabspaltung aus den ß-Chlorethylgruppen erfolgt unabhängig vom pH-Wert und von eingesetzten Puffersystemen vollständig und mit sehr großer Geschwindigkeit. Dabei übertrifft Bendamustinhydrochlorid sogar die besonders reaktionsfähigen Loste N-Methyl-Lost, Chlorambucil und Uracil-Lost. Diese Angaben begründen die besondere Schwierigkeiten, die sich der Herstellung stabiler medizinischer Zubereitungen des Bendamustinhydrochlorids entgegenstellen.

Nach der DDR-Patentschrift WP 80 967 muß das N-Lostderivat Bendamustinhydrochlorid steril, schwebstofffrei und in einer für die schnelle Auflösung geeigneten Kristallform hergestellt werden. Die Zubereitungsform ist eine Trockenampulle, die eine Mischung von 25 mg Bendamustinhydrochlorid und 175 mg Ascorbinsäure enthält. Vor der Anwendung ist der Ampulleninhalt in Wasser zur Injektion aufzulösen. Die Ascorbinsäure hat die Aufgaben, ein abfüllfähiges Pulvergemisch herzustellen, sowie die Haltbarkeit und den pH-Wert der Injektionslösung zu sichern. Außerdem soll auch die Lagerfähigkeit des trockenen Gemisches erreicht werden. Die Hydrolysegeschwindigkeit wird nach vorliegenden Versuchsergebnissen durch den Ascorbinsäurezusatz nicht beeinflußt.

EAGLEBEN-SA_00353887

- 3 -    230429 1

Der pH-Wert einer Bendamustinhydrochlorid-Lösung, der im
Bereich von 2,4 bis 3,0 liegt, wird durch den Ascorbinsäu-
rezusatz nicht wesentlich verändert. Der Ascorbinsäure-
zusatz erfüllt demnach nicht die an einen Stabilisator zu
stellenden Anforderungen. Bendamustinhydrochlorid zeigt als
Festsubstanz nach einiger Lagerungszeit eine rosa bis braun-
rote Verfärbung, die von der Substanzoberfläche ausgeht und
nach längerer Zeit die gesamte Substanz für die Herstellung
von pharmazeutischen Zubereitungen ungeeignet macht. Auch
die Mischung mit Ascorbinsäure zeigt diesen Effekt.

Weiterhin wurde vorgeschlagen, die wäßrige Lösung der Sub-
stanz Bendamustinhydrochlorid zu lyophilisieren und vor der
Anwendung in Wasser oder Natriumchloridlösung aufzulösen
(Herstellungsverfahren des ZIMET, Pharmazeutisches Gutachten
IfAr/Nr. 180/80). Das erhaltene Lyophilisat (25 mg/Ampulle)
weist erhebliche Nachteile für einen technologischen Herstel-
lungsprozeß auf. Insbesondere die extreme Hygroskopizität
und die Durchführung des Prozesses unter Inertgas erschweren
die technologische Realisierbarkeit. Außerdem wurden während
der Herstellung des Präparates deutliche Zersetzungserschei-
nungen im Bereich von 5 bis 10 % des Wirkstoffes nachgewie-
sen. Unbefriedigend ist auch die Feststellung großer Mengen
von Mikropartikeln nach Auflösen des Lyophilisats, die auf
eine weitere Instabilität des Systems hinweisen.

Der Nachteil der extremen Hygroskopizität des Lyophilisats
kann durch Zusätze von bei Raumtemperatur festen Polyolen,
insbesondere von Mannitol, behoben werden. Neben dem hohen
technologischen Aufwand sind jedoch weiterhin die Nachteile
einer erheblichen Zersetzung und des Auftretens von unge-
lösten Mikropartikeln gegeben.

Ziel der Erfindung

Ziel der Erfindung ist die Herstellung einer stabilen und
gebrauchsfertigen Injektionslösung von N-Lostverbindungen
unter Umgehung der technischen Lösung als Trockenampulle.

EAGLEBEN-SA_00353888

- 4 -    230429 1

Darlegung des Wesens der Erfindung

Die bisher bekannten technischen Lösungen realisierten das Injektionspräparat entweder als Pulverabfüllung unter Zugabe eines Stabilisators bzw. andersartiger Hilfsstoffe, oder als Lyophilisat, ggf. unter Zusatz von Hilfsstoffen. Durch diese Maßnahmen gelingt es nicht bzw. nur mit erheblichen Nachteilen, ein geeignetes Injektionspräparat herzustellen. Die so erhaltenen Trockenabfüllungen sind durch mangelhafte chemische und physikalische Stabilität gekennzeichnet. Außerdem stellt die Lyophilisierung einen erheblichen technischen Mehraufwand dar, der sich als kapazitätsbegrenzend erweisen kann.

Überraschend wurde nunmehr gefunden, daß der Wirkstoff Bendamustinhydrochlorid in einwertigen Alkoholen, Glykolen und anderen mehrwertigen Alkoholen eine zur Herstellung von Injektionslösungen ausreichende Löslichkeit und vor allem eine auffällig hohe chemische Stabilität aufweist. Die Stabilität der erfindungsgemäß hergestellten Lösungen ist unerwartet, weil Verbindungen mit extremer Hydrolyseempfindlichkeit in der Regel auch empfindlich gegenüber anderen OH-Gruppen enthaltenden Lösungsmitteln sind. Im Falle von Alkoholen oder Polyolen sind derartige Reaktionen als Alkoholyse bekannt.

Es wurde nunmehr gefunden, daß N-Lostverbindungen vom Typ des Bendamustinhydrochlorids keine Alkoholysereaktion eingehen. Voraussetzung ist die Verwendung wasserfreier Lösungsmittel, um Zersetzungen durch die angegebene große Hydrolyseempfindlichkeit zu vermeiden. Unter diesen Voraussetzungen ist z. B. Bendamustinhydrochlorid über lange Zeiträume in der genannten Gruppe von Lösungsmitteln chemisch stabil und bildet nicht die aus wäßrigen Lösungen bekannten Mono- und Dihydroxy- bzw. -alkoxyderivate.

Zur Untersuchung der Stabilität wurde Bendamustinhydrochlorid in einer Konzentration von 25 mg/ml in Ethanol und 1,2-Propylenglykol gelöst und die Lösung bei Raumtemperatur, sowie erhöhten Temperaturen (50 $^\circ$C, 75 $^\circ$C, 100 $^\circ$C) aufbe-

BNSDOCID: <DD    1582893  I >

EAGLEBEN-SA_00353889

- 5 -  230429 1

mittels eines spezifischen dünnschichtchromatographischen Verfahrens (Auftragmenge entspr. 0,025 mg Bendamustinhydrochlorid, Kieselgel G, Laufmittel:  Butanol/Essigsäure/ Wasser 4:1:5, Detektion UV 360 nm bzw. Dragendorff-Reagenz) auf die Bildung von Spaltprodukten hin untersucht, Befunde:

Bildung von Abbauprodukten in:

| Zeit | Ethanol-Lösung | | Propylenglykol-Lösung | | |
|------|-----|-----|-----|-----|------|
| | 25 °C | 50 °C | 25 °C | 75 °C | 130 °C |
| 0,5 h | — | — | — | — | (Spuren) |
| 1 h | — | — | — | ohne | — |
| 1,5 h | — | — | — | — | (Spuren) |
| 2 h | — | — | — | ohne | geringe Zersetzung |
| 5 h | ohne | ohne | — | ohne | — |
| 7 h | ohne | ohne | — | — | — |
| 24 h | ohne | — | — | — | — |
| 8 Wochen | ohne | — | ohne | — | — |

Aus pharmakologischen und fertigungstechnischen Gründen sind einwertige Alkohole zur Herstellung von Injektionslösungen wenig geeignet. Häufiger verwendet wird 1,2-Propylenglykol. Die erzielbaren Löslichkeiten von Bendamustinhydrochlorid in einigen der benutzten Lösungsmittel betragen bei 25 °C etwa

  Ethanol abs.   ca. 50 mg/ml
  Propylenglykol  ca. 125 mg/ml  und
  Glycerol    ca. 50 mg/ml.

In den bisher bekannten Injektionsformen des Bendamustinhydrochlorids werden 25 mg Wirkstoff in 10 ml Lösungsmittel eingesetzt. Es wird nunmehr vorgeschlagen, zur Gewährleistung einer vereinfachten Herstellungstechnologie, einer verbesserten Wirkstoffstabilität bei der Herstellung der Lösungen und deren Aufbewahrung sowie einer vereinfachten Handhabung bei der Herstellung der injektionsfertigen Lösung den Wirkstoff in Polyolen, insbesondere in 1,2-Propylenglykol zu lösen und in Ampullen abzufüllen. Unmittelbar vor der vorgesehenen Injektion wird die Polyollösung durch

BNSDOCID: <DD    1592893  1 >

EAGLEBEN-SA_00353890

- 6 -    **230429 1**

den Zusatz eines geeigneten wäßrigen Verdünnungsmittels
(Natriumchloridlösung oder Wasser zur Injektion) so ver-
dünnt, daß die zur Anwendung kommende Lösung nur noch ca.
10 % Polyol, ggf. auch weniger enthält. Die Polyollösungen
sind mit den angegebenen Verdünnungsmitteln ohne Nachteil
für den Wirkstoff beliebig verdünnbar. Durch die breite Va-
riationsmöglichkeit des Polyolanteils und der Verdünnung
ergeben sich weitere Vorteile für die Auswahl einer optimalen,
besonders gut verträglichen Injektionszubereitung. Neben der
Hydrolyseempfindlichkeit sind als weitere Stabilitätsfakto-
ren die Einwirkungen von Licht und Luftsauerstoff zu berück-
sichtigen. Trockene Zubereitungen und auch Lösungen verfär-
ben sich unter Licht- und Lufteinwirkung langsam rosa oder
bräunlich. Die Lösungen in Alkoholen und Polyolen, die in
gut verschlossenen Ampullen unter Lichtausschluß aufbewahrt
werden, zeigen keine Verfärbungserscheinungen. Es ist jedoch
zu empfehlen, die Herstellung, Abfüllung und Aufbewahrung
der Lösungen unter einem Inertgas, wie Argon oder Stickstoff
vorzunehmen.

Ausführungsbeispiele
Beispiel 1:

Bendamustinhydrochlorid wird in einer Inertgasatmosphäre in
1,2-Propylenglykol in einer Konzentration von 2,5 g/100 ml
unter Rühren gelöst. Die Lösung wird über eine geeignete
Filtereinrichtung, ggf. nach Erwärmen auf 50 $^{o}$C, schwebstoff-
frei und keimfrei filtriert. In 10-ml-Ampullen wird jeweils
1,0 ml der Lösung abgefüllt, die Ampullen mit Inertgas gefüllt
und verschmolzen. Unmittelbar vor der Injektion sind in die
geöffnete Ampulle 9,0 ml des vorgesehenen Verdünnungsmittels
zu geben. Nach dem Umschütteln ist die Lösung injektions-
fertig.

Beispiel 2:

5,0 g Bendamustinhydrochlorid werden in 100 ml Ethanol unter
den bei Beispiel 1 genannten Bedingungen gelöst, filtriert

BNSDOCID: <DD    1592893  1 >

EAGLEBEN-SA_00353891

und in Ampullen abgefüllt. Die Aufbewahrung der Ampullen erfolgt bei Temperaturen von +15 $^{o}$C bis +25 $^{o}$C.

BNSDOCID: <DD    1592898  1 >

EAGLEBEN-SA_00353892

- 8 - **230429 1**

Erfindungsanspruch

1. Verfahren zur Herstellung stabiler Injektionslösungen von N-Lostverbindungen gekennzeichnet dadurch, daß N-Lostderivate in Konzentrationen von 25 mg/ml bis zu 100 mg/ml in einem wasserfreien ein- oder mehrwertigen Alkohol (Polyol) gelöst werden, wobei das Lösen, Abfüllen und Aufbewahren der Lösung unter Inertgas erfolgt, und die Lösung vor der medizinischen Anwendung im Verhältnis von 1:5 bis 1:20 mit einem wäßrigen Injektionsträger verdünnt wird.

2. Verfahren nach Punkt 1 gekennzeichnet dadurch, daß als Wirkstoff Benzimidazol-Loste, insbesondere Bendamustinhydrochlorid angewendet werden.

3. Verfahren nach Punkt 1 gekennzeichnet dadurch, daß als Polyol insbesondere 1,2-Propylenglykol verwendet wird.

BNSDOCID: <DD    1592898  1 ·

EAGLEBEN-SA_00353893

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>18/646,171 |
|---|---|

### APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | SMALL ENTITY<br>RATE($) | SMALL ENTITY<br>FEE($) | OR | OTHER THAN SMALL ENTITY<br>RATE($) | OTHER THAN SMALL ENTITY<br>FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 320 |
| SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 700 |
| EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 800 |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 12 minus 20 = | * 0 | | | OR | x = | 0 |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 2 minus 3 = | * | | | | x = | 0 |
| APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1820 |

### APPLICATION AS AMENDED - PART II

| AMENDMENT A | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | SMALL ENTITY<br>RATE($) | SMALL ENTITY<br>ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY<br>RATE($) | OTHER THAN SMALL ENTITY<br>ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| AMENDMENT B | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | SMALL ENTITY<br>RATE($) | SMALL ENTITY<br>ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY<br>RATE($) | OTHER THAN SMALL ENTITY<br>ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

EAGLEBEN-SA_00353894



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | | 1820 | 107071.001394 | 12 | 2 |

**CONFIRMATION NO. 3701**

23377
BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

**FILING RECEIPT**

*OC00000000073182953*

Date Mailed: 05/30/2024

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

Nagesh R. Palepu, Southampton, PA;
Philip Christopher Buxton, Denham, UNITED KINGDOM;

**Applicant(s)**

Eagle Pharmaceuticals, Inc., Woodcliff Lake, NJ;

**Power of Attorney:** The patent practitioners associated with Customer Number 23377

**Domestic Priority data as claimed by applicant**

This application is a CON of 18/498,259 10/31/2023
 which is a CON of 17/412,623 08/26/2021 ABN
 which is a CON of 16/509,920 07/12/2019 PAT 11,103,483
 which is a CON of 16/015,656 06/22/2018 ABN
 which is a CON of 15/432,335 02/14/2017 PAT 10,010,533
 which is a CON of 15/013,436 02/02/2016 PAT 9,572,797
 which is a CON of 14/031,879 09/19/2013 PAT 9,265,831
 which is a CON of 13/016,473 01/28/2011 PAT 8,609,707
 which claims benefit of 61/299,100 01/28/2010

Foreign Applications for which priority is claimed (You may be eligible to benefit from the Patent Prosecution Highway program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.

EAGLEBEN-SA_00353895

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 05/28/2024
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 18/646,171**
**Projected Publication Date:** 09/05/2024
**Non-Publication Request:** No
**Early Publication Request:** No
**Title**

FORMULATIONS OF BENDAMUSTINE

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative,

EAGLEBEN-SA_00353896

this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop

EAGLEBEN-SA_00353897

technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call
+1-202-482-6800.

EAGLEBEN-SA_00353898



# United States Patent and Trademark Office

*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

---

## WELCOME TO THE UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

---

*Congratulations on taking the first step to protect your invention. You can now advertise or mark any products covered by this application for your invention as **"Patent Pending"** for as long as this application is pending!*

*We are here to help you on the rest of your journey.*

**New to the process?** The Patent Basics page will take you from "What is a patent?" to assistance with the application process.
- www.uspto.gov/PatentBasics

**Consider cost savings.** You might qualify for small entity or micro entity status, which means a discount on most USPTO patent fees.
- www.uspto.gov/EntityStatus

**Become a registered electronic filer (eFiler).** You'll gain access to the full capabilities of Patent Center. As a registered eFiler, you can electronically view your submission, track the progress of your application, and respond to USPTO correspondence.
- www.uspto.gov/NewPatentFilers

**Learn how to identify which of your creative ideas might be intellectual property assets** and how to protect them by using the USPTO Intellectual Property (IP) Identifier.
- ipidentifier.uspto.gov

We also provide Pro Se Assistance, support specifically geared for **independent inventors without an attorney or agent.** Follow the link below, call us at 866-767-3848, or email **proseassistancecenter@uspto.gov**.
- www.uspto.gov/ProSePatents

**Need help near you?** We have regional offices across the country, as well as Patent and Trademark Resource Centers in libraries in nearly every state, with specialists standing by to help you at no cost.
- www.uspto.gov/locations
- www.uspto.gov/ptrc

**Contact us:**
- **General information:** USPTO Contact Center
  - www.uspto.gov/help
- **Patent Center:**
  Patent Electronic Business Center
  - www.uspto.gov/EBC
- **Pre or post-examination:** Application Assistance Unit
  - www.uspto.gov/PatentAssistance

**Want to learn more?**
- **Access our free services** all in one spot. Find all of our contact centers, nationwide services, events, education, and training.
  - www.uspto.gov/FreeServices
- **Connect with us** on Instagram, LinkedIn, Twitter, Facebook, and YouTube.
- **Hear about resources for startups, inventors, and entrepreneurs,** as well as our initiatives engaging women, the military community, and others. These programs offer helpful tips and tricks on identifying and managing your IP, finding options for funding, and expanding your network to support your business.
  - www.uspto.gov/startups
  - www.uspto.gov/inventors
  - www.uspto.gov/initiatives
- We hope you connect with us by subscribing to receive important notifications by email.
  - www.uspto.gov/subscribe

**Kathi Vidal**
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

**Derrick Brent**
Deputy Under Secretary of Commerce for Intellectual Property and
Deputy Director of the United States Patent and Trademark Office

EAGLEBEN-SA_00353899

TO:      eofficemonitor@bakerlaw.com
FROM:    noreply@uspto.gov
CC:      patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - Correspondence Notification for Customer Number 23377

Thu May 30 05:02:38 EDT 2024


Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new outgoing correspondence. This correspondence is now available for viewing in Patent Center.

The official date of notification of the outgoing correspondence will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 18646171 | APP.FILE.REC | 05/30/2024 | 107071.001394 |
| 18646171 | WELCOME.LET | 05/30/2024 | 107071.001394 |

To view your correspondence online, please sign in to Patent Center and then select Workbench/View correspondence. To update your email address(es), select Manage/Manage customer numbers.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00353900

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 | 3701 |

| | | |
|---|---|---|
| 23377          7590          06/18/2024 | | |

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

| EXAMINER |
|---|
| CENTRAL, DOCKET |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1613 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/18/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

eofficemonitor@bakerlaw.com

PTOL-90A (Rev. 04/07)

EAGLEBEN-SA_00353901

| *Decision Granting Request for Prioritized Examination (Track I)* | Application No. 18/646,171 | | Applicant(s) Palepu et al. | |
|---|---|---|---|---|
| | Examiner CHERYL P GIBSON BAYLOR | | Art Unit OPET | AIA (FITF) Status No |

1.  THE REQUEST FILED <u>25 April 2024</u> IS **GRANTED** .

The above-identified application has met the requirements for prioritized examination
   A.   ☑ for an original nonprovisional application (Track I).
   B.   ☐ for an application undergoing continued examination (RCE).

2.  **The above-identified application will undergo prioritized examination**. The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

   A.   filing a **petition for extension of time** to extend the time period for filing a reply;

   B.   filing an **amendment to amend the application to contain more than four independent claims, more than thirty total claims** , or a multiple dependent claim;

   C.   filing a **request for continued examination** ;

   D.   filing a notice of appeal;

   E.   filing a request for suspension of action;

   F.   mailing of a notice of allowance;

   G.    mailing of a final Office action;

   H.    completion of examination as defined in 37 CFR 41.102; or

   I.   abandonment of the application.

Telephone inquiries with regard to this decision should be directed to CHERYL GIBSON BAYLOR at (571)272-3213. In his/her absence, calls may be directed to Petition Help Desk at (571) 272-3282.

| /CHERYL GIBSON BAYLOR/ Paralegal Specialist, OPET | |
|---|---|

U.S. Patent and Trademark Office
PTO-2298 (Rev. 02-2012)

EAGLEBEN-SA_00353902

TO:      eofficemonitor@bakerlaw.com
FROM:   noreply@uspto.gov
CC:      patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - Correspondence Notification for Customer Number 23377

Wed Jun 19 05:00:20 EDT 2024

Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new outgoing correspondence. This correspondence is now available for viewing in Patent Center.

The official date of notification of the outgoing correspondence will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 18646171 | TRACK1.GRANT | 06/18/2024 | 107071.001394 |

To view your correspondence online, please sign in to Patent Center and then select Workbench/View correspondence. To update your email address(es), select Manage/Manage customer numbers.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00353903

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 | 3701 |

| | |
|---|---|
| 23377    7590    07/09/2024 | EXAMINER |
| BakerHostetler | ARNOLD, ERNST V |
| 1735 Market Street | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1613 | |

Suite 3300
Philadelphia, PA 19103-7501

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/09/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

eofficemonitor@bakerlaw.com

PTOL-90A (Rev. 04/07)

EAGLEBEN-SA_00353904

| | | |
|---|---|---|
| **Office Action Summary** | **Application No.** 18/646,171 | **Applicant(s)** Palepu et al. |
| | **Examiner** ERNST V ARNOLD | **Art Unit** 1613 | **AIA (FITF) Status** No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.**    2b) ☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-12</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-12</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a)☐ All    b)☐ Some**    c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

EAGLEBEN-SA_00353905

Application/Control Number: 18/646,171                                             Page 2
Art Unit: 1613

### Notice of Pre-AIA or AIA Status

The present application is being examined under the pre-AIA first to invent

provisions.

### Claim Status

Claims 1-12 are pending.

### Priority

Parent data

18646171 filed 04/25/2024 is a Continuation of 18498259 , filed 10/31/2023
18498259 is a Continuation of 17412623 , filed 08/26/2021, now abandoned
17412623 is a Continuation of 16509920 , filed 07/12/2019 ,now U.S. Patent # 11103483 and having 1 RCE-type filing therein
16509920 is a Continuation of 16015656 , filed 06/22/2018, now abandoned
16015656 is a Continuation of 15432335 , filed 02/14/2017 ,now U.S. Patent # 10010533
15432335 is a Continuation of 15013488 , filed 02/02/2016 ,now U.S. Patent # 9572797
15013488 is a Continuation of 14031879 , filed 09/19/2013 ,now U.S. Patent # 9265831 and having 1 RCE-type filing therein
14031879 is a Continuation of 13016473 , filed 01/28/2011 ,now U.S. Patent # 8609707 and having 1 RCE-type filing therein
13016473 Claims Priority from Provisional Application 61299100 , filed 01/28/2010

The claimed subject matter does not find support in provisional application

61299100. The first disclosure of, for example, "sterile container" and "HPLC at a

wavelength of 223 nm" occurs in 13016473. Accordingly, the earliest effective filing date

is 01/28/2011.

### Information Disclosure Statement

The information disclosure statements (IDSs) submitted on 5/15/24 are in

compliance with the provisions of 37 CFR 1.97.  Accordingly, the information disclosure

statements are being considered by the examiner.

EAGLEBEN-SA_00353906

Application/Control Number: 18/646,171                                          Page 3
Art Unit: 1613

## Claim Rejections - 35 USC § 112

The following is a quotation of 35 U.S.C. 112(b):
(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 5 and 11 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C. 112, the applicant), regards as the invention. Independent claims 1 and 8, from which claims 5 and 11 depend from respectively, limit the pharmaceutically acceptable fluid with "consists of". Thus, while ethanol is an optional fluid in addition to the polyethylene glycol, it is unclear how the composition can comprise ethanol when it is limited a pharmaceutically acceptable fluid that consists of polyethylene glycol and several optional fluids. A better way to phrase such an embodiment is, for example: wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and ethanol. In the interest of compact prosecution, the claims will be examined that way. However, correction is required.

## Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject

EAGLEBEN-SA_00353907

Application/Control Number: 18/646,171                                    Page 4
Art Unit: 1613

matter as a whole would have been obvious at the time the invention was made
to a person having ordinary skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which the invention was
made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

Claims 1-12 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Brittain et al. (US 20060159713 of record) and Riebesehl et al. (US 6686365) and

Olthoff et al. (DE159289 of record) and Kumar et al. (AAPS PharmSciTech 2006;7(3):7

pages of record).


This application currently names joint inventors. In considering patentability of

the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of

the various claims was commonly owned at the time any inventions covered therein

were made absent any evidence to the contrary. Applicant is advised of the obligation

under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was

not commonly owned at the time a later invention was made in order for the examiner to

consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g)

prior art under 35 U.S.C. 103(a).

Applicant claims, for example:

EAGLEBEN-SA_00353908

Application/Control Number: 18/646,171                                        Page 5
Art Unit: 1613

1.  A sterile container containing a liquid bendamustine-containing composition comprising
    bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine
        concentration in the composition is about 25 mg/mL;
    a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one
        or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and
    a stabilizing amount of an antioxidant,
    wherein the total impurities resulting from the degradation of the bendamustine is less
        than about 5% peak area response, as determined by HPLC at a wavelength of 223
        nm after at least about 15 months at a temperature of about 5° C to about 25° C.


8. A liquid bendamustine-containing composition comprising

bendamustine, or a pharmaceutically acceptable salt thereof, and a stabilizing amount of an
        antioxidant, in a pharmaceutically acceptable fluid;


wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally
        one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and
wherein the bendamustine concentration in the pharmaceutically acceptable fluid is about 25
        mg/mL,
wherein the total impurities resulting from the degradation of the bendamustine is less than
        about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after
        at least about 15 months at a temperature of about 5° C to about 25 °C.


## Level of Ordinary Skill in the Art

### (MPEP 2141.03)

The "hypothetical 'person having ordinary skill in the art' to which the claimed

subject matter pertains would, of necessity have the capability of understanding the

scientific and engineering principles applicable to the pertinent art." *Ex parte Hiyamizu*,

10 USPQ2d 1393, 1394 (Bd. Pat. App. & Inter. 1988). The level of skill is that of a

medical/pharmaceutical research scientist, as is the case here, then one can assume

EAGLEBEN-SA_00353909

Application/Control Number: 18/646,171                                         Page 6
Art Unit: 1613

comfortably that such an educated artisan will draw conventional ideas from

pharmaceutical formulation techniques and components, pharmaceutical drugs and

medicinal chemistry— without being told to do so.

In addition, the prior art itself reflects an appropriate level (MPEP 2141.03(II)).

**Determination of the scope and content of the prior art**

**(MPEP 2141.01)**

With regard to instant claims 1, 5, 8 and 11, Brittain et al. teach pharmaceutical

formulations of lyophilized bendamustine (Abstract) where (Examiner added emphasis):

"A "pharmaceutical dosage form" as used herein means the pharmaceutical

compositions disclosed herein being in a **container** and in an amount suitable for

reconstitution and administration of one or more doses, typically about 1-2, 1-3, 1-4, 1-

5, 1-6, 1-10, or about 1-20 doses…The pharmaceutical dosage form can comprise a

vial or syringe or other suitable pharmaceutically acceptable container. The

pharmaceutical dosage form suitable for injection or infusion use can include **sterile**

aqueous solutions or dispersions or sterile powders comprising an active ingredient

which are adapted for the extemporaneous preparation of sterile injectable or infusible

solutions or dispersions. In all cases, the ultimate dosage form should be sterile, fluid

and stable under the conditions of manufacture and storage. The liquid carrier or vehicle

can be a solvent or liquid dispersion medium comprising, for example, water, **ethanol**, a

polyol such as glycerol, **propylene glycol**, or **liquid polyethylene glycols** and the like"

[0067]. It is the Examiner's position that a vial or syringe containing a sterile

bendamustine composition reads on a sterile container. Brittain et al. teach: "Such vials

EAGLEBEN-SA_00353910

Application/Control Number: 18/646,171                                    Page 7
Art Unit: 1613

are, after filling or lyophilization of the solution therein, sealed, as with a stopper, to

provide a sealed, sterile, pharmaceutical dosage form." [0099]. See also claim 7. Brittain

et al. teach that the dosage form is stable over at least 24 months when stored at 5°C

(Claims 1-10).

Regarding claims 1, 6-8 and 12, Brittain et al. teach that each vial will contain

about 10-500 mg bendamustine per vial ([0099]; claims 13-17, 73-74), which

encompasses the claimed amount of about 100 mg bendamustine. Given that 20 mL

and 50 mL vials are suggested [0008], then it is obvious to take 250 mg and in the 20

mL vial with 10 mL fluid that would provide 250g/10mL = 25 mg/mL. Especially when

Brittain et al. teach and suggest concentrations of about 2-80 mg/mL, preferably about

5-40 mg/mL and more preferably 5-20 mg/mL [0087]. The principle of law from MPEP

2144.05 states: "In the case where the claimed ranges "overlap or lie inside ranges

disclosed by the prior art" a *prima facie* case of obviousness exists. *In re Wertheim*, 541

F.2d 257, 191 USPQ 90 (CCPA 1976)."

With regard to instant claims 1 and 8, Brittain et al. teach adding antioxidants

excipients such as cysteine, butyl-hydroxytoluene (BHT) and ascorbic acid [0088].

With regard to instant claims 1 and 8, Brittain et al. teach using HPLC with dual

wavelength detector at 230 nm and 254 nm [0123, 0133].

Brittain et al. is aware of bendamustine degrading rapidly in water [0107, 0109].

Regarding claims 2, 3, 9 and 10, Riebesehl et al. teach functionally equivalent

antioxidants monothioglycerol, L-cysteine and thioglycolic acid (Abstract) which

provides enhanced safety for the caregiver handling cytotoxic materials (Column 1, lines

EAGLEBEN-SA_00353911

Application/Control Number: 18/646,171                                    Page 8
Art Unit: 1613

26-27). The concentration of the monothioglycerol is from about 0.8-5 mg/mL (Column 2, lines 18-27).

Regarding claims 1, 5, 8, 11 and 12, Olthoff et al. teach compositions of bendamustine and ascorbic acid where the antioxidant ascorbic acid is used to produce a powder mixture and ensure durability and the pH value of the injection solution and guarantee the shelf life of the dry mixture (Page 3, 2nd paragraph). Olthoff et al. teach that bendamustine has an "extraordinarily high chemical stability for the production of injection solutions in monovalent alcohols, glycols and other polyvalent alcohols (Page 3, Description of the character of the invention, 2nd paragraph). Olthoff et al. report that bendamustine is chemically stable for long periods of time in those solvents (Page 5, 1st paragraph) and exemplify 25 mg/ml bendamustine in ethanol and propylene glycol (Page 5, 2nd paragraph) .

Kumar et al. teach that it is well-known in the art that PEG is susceptible to degradation via autooxidation (Page E1, right column 2nd paragraph).

**Ascertainment of the difference between the prior art and the claims**

**(MPEP 2141.02)**

1. The difference between the instant application and Brittain et al. is that Brittain et al. do not expressly teach in a single disclosed embodiment a liquid composition comprising bendamustine, polyethylene glycol and about 5 mg/mL of the antioxidant monothioglycerol as instantly claimed. This deficiency in Brittain et al. is cured by the teachings of Brittain et al., Olthoff et al., Kumar et al., and Riebesehl et al.

2. The difference between the instant application and Brittain et al. is that Brittain et al. do not expressly teach the HPLC wavelength used for determining the total

EAGLEBEN-SA_00353912

Application/Control Number: 18/646,171                                          Page 9
Art Unit: 1613

impurities of less than about 5% peak area at the periods of time and temperature

instantly claimed.



**Finding of prima facie obviousness**

**Rational and Motivation (MPEP 2142-2143)**

1. It would have been obvious to one of ordinary skill in the art at the time the

claimed invention was made to modify the disclosure of Brittain et al. and make a single

disclosed embodiment a liquid composition comprising bendamustine, polyethylene

glycol and about 5 mg/mL of the antioxidant monothioglycerol as instantly claimed, as

suggested by Brittain et al. Olthoff et al., Kumar et al., and Riebesehl et al., and produce

the instant invention.

One of ordinary skill in the art would have been motivated to do this because

Brittain et al. directs the artisan to use liquid polyethylene glycol as the liquid

carrier/vehicle [0067] and to add antioxidants [0088] to the bendamustine liquid

composition. The art of Olthoff et al. guides the artisan to monovalent alcohols, glycols

and other polyvalent alcohols and exemplify the combination of ethanol and propylene

glycol that provide extraordinarily high chemical stability for the production of injection

solutions as discussed above. Consequently, the ordinary artisan would select

polyethylene glycol and optionally propylene glycol and/or ethanol for the carrier/vehicle

in Brittain et al. for the desirable property of "extraordinarily high chemical stability" with

those alcohols with a reasonable expectation of success. The ordinary artisan in this art

is well-aware that polyethylene glycol is subject to autooxidation to produce peroxides

EAGLEBEN-SA_00353913

Application/Control Number: 18/646,171                                    Page 10
Art Unit: 1613

through the teachings of Kumar et al. To prevent any accumulation of undesirable peroxides in the injectable preparation of Brittain et al. while under storage, the ordinary artisan would add an antioxidant to prevent the autoxidation with a reasonable expectation of success. While Brittain et al. suggest cysteine as an antioxidant [0088], Riebeshehl et al. guide the artisan to the functionally equivalent monothioglycerol in the same amounts instant claimed. The ordinary artisan is motivated to select monothioglycerol because of the desirable property of enhanced safety for caregiver handling of the cytotoxic materials of which bendamustine is cytotoxic. Accordingly it is obvious to the ordinary artisan to use polyethylene glycol as a carrier but when so doing to add an antioxidant such as monothioglycerol to prevent any autooxidation of the polyethyelene glycol to undesirable side products.Therefore, the ordinary artisan would have had a reasonable expectation of success in combining bendamustine, polyethylene glycol and the antioxidants claimed into a liquid composition with less than about 5% peak area response total impurities after at least 15 months at the temperatures claimed. The expectation is reasonable because the same components claimed are taught in the prior art and the prior art of Brittain et al. acts to limit the total impurities.

2. It would have been obvious to one of ordinary skill in the art at the time the claimed invention was made to use HPLC with a wavelength of 223 nm to determine the total impurities from the degradation of bendamustine and produce the instant invention.

One of ordinary skill in the art would have been motivated to do this because it is merely setting the HPLC device to monitor a particular wavelength is not inventive without more and Brittain et al. already teach and suggest using HPLC with dual

EAGLEBEN-SA_00353914

Application/Control Number: 18/646,171                                        Page 11
Art Unit: 1613

wavelength detectors as discussed above which the artisan has to set at some

wavelength to operate the machine and would select a wavelength for an expected

degradation product. Thus, the artisan would have a reasonable expectation of success

in using HPLC with a wavelength of 223 nm in the absence of evidence to the contrary

especially when Brittain et al. teach in one example 230 nm (Example 1), which is

virtually the same as 223 nm.

In light of the forgoing discussion, the Examiner concludes that the subject matter

defined by the instant claims would have been obvious within the meaning of 35 USC

103(a).

From the combined teachings of the references, it is apparent that one of

ordinary skill in the art would have had a reasonable expectation of success in

producing the claimed invention. Therefore, the invention as a whole was *prima facie*

obvious to one of ordinary skill in the art at the time the invention was made, as

evidenced by the combined references, especially in the absence of evidence to the

contrary.

## *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees. A nonstatutory double
patenting rejection is appropriate where the conflicting claims are not identical, but at
least one examined application claim is not patentably distinct from the reference
claim(s) because the examined application claim is either anticipated by, or would have
been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46
USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.
Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

EAGLEBEN-SA_00353915

Application/Control Number: 18/646,171                                    Page 12
Art Unit: 1613

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(I)(1) - 706.02(I)(3) for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-processed and approved immediately upon submission. For more information about eTerminal Disclaimers, refer to www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.


1. Claims 1-12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-6 of U.S. Patent No. 9265831. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to:

> We claim:
> 1. A non-aqueous liquid bendamustine-containing composition, comprising:
>   a) bendamustine or a pharmaceutically acceptable salt thereof; and
>   b) a pharmaceutically acceptable fluid comprising;
>     i) about 5% to about 10% by volume propylene glycol,
>     ii) polyethylene glycol, and

EAGLEBEN-SA_00353916

Application/Control Number: 18/646,171                                    Page 13
Art Unit: 1613

iii) a stabilizing amount of an antioxidant selected from the group consisting of thioglycerol, monothioglycerol, lipoic acid, propyl gallate, methionine, cysteine, metabisulfites, sodium formaldehyde sulfoxylate, phenol-containing aromatic and aliphatic compounds and dihydrolipoic acid;

the bendamustine-containing composition having less than or equal to 0.11% total PG esters at about 1 month of storage at a temperature of about 5° C.;

wherein the ratio of polyethylene glycol to propylene glycol is selected from the group consisting of: about 95:5, about 90:10, about 85:15, about 80:20 and about 75:25.

2. The liquid bendamustine-containing composition of claim 1, wherein said bendamustine-containing composition has less than or equal to 0.18% total PG esters at about 12 months of storage at a temperature of about 5° C.

3. The liquid bendamustine-containing composition of claim 1, wherein the amount of propylene glycol in the pharmaceutically acceptable fluid is about 10%.

4. The liquid bendamustine-containing composition of claim 1, wherein the bendamustine concentration is from about 20 mg/mL to about 60 mg/mL.

5. The liquid bendamustine-containing composition of claim 4, wherein the bendamustine concentration is from about 25 mg/mL to about 50 mg/mL.

6. The liquid bendamustine-containing composition of claim 5, wherein the bendamustine concentration is about 50 mg/mL.

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of 223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See

EAGLEBEN-SA_00353917

Application/Control Number: 18/646,171                                          Page 14
Art Unit: 1613

MPEP 2112.01(II): "Products of identical chemical composition cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

The patent does not expressly teach 5 mg/mL monothioglycerol or ethanol or that the liquid composition comprises 100 mg of bendamustine. However, the scope of the pharmaceutically acceptable fluid includes ethanol (Column 1, line 61; column 4, lines 32-34); the scope of a stabilizing amount of antioxidant is preferably about 5 mg/mL to about 20 mg/mL (Column 3, lines 55-60). See MPEP 804: "The portion of the specification of the reference that describes subject matter that falls within the scope of a reference claim may be relied upon to properly construe the scope of that claim." The 100 mg amount of bendamustine is merely at the whim of the artisan as the patent is open to any amount in independent claim 1.

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.


2. Claims 1-12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-27 of U.S. Patent No. 9572797.

Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to using the instantly claimed compositions in a method of treating, for example leukemia as shown in claim 1, with the same amounts of bendamustine:

EAGLEBEN-SA_00353918

Application/Control Number: 18/646,171                                          Page 15
Art Unit: 1613

We claim:
1. A method of treating leukemia, Hodgkin's disease, or multiple myeloma in a mammal, comprising administering to the mammal, a liquid bendamustine-containing composition comprising:
a) bendamustine or a pharmaceutically acceptable salt thereof, and
b) a non-aqueous pharmaceutically acceptable fluid comprising
about 5% to about 10%, based on the volume of the pharmaceutically acceptable fluid, of propylene glycol,
polyethylene glycol,
and a stabilizing amount of an antioxidant selected from the group consisting of thioglycerol, monothioglycerol, lipoic acid, propyl gallate, methionine, cysteine, metabisulfites, sodium formaldehyde sulfoxylate, phenol-containing aromatic and aliphatic compounds and dihydrolipoic acid;
the bendamustine-containing composition having less than or equal to 0.11% total HP1 esters at about 1 month of storage at a temperature of about 5° C.;
wherein the ratio of polyethylene glycol to propylene glycol is selected from the group consisting of: about 95:5, about 90:10, about 85:15, about 80:20, and about 75:25.

The patent teaches about 2.5-35 mg/mL antioxidant (Claim 12) monothiolglycerol (Claim 11).

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of 223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See MPEP 2112.01(II): "Products of identical chemical composition cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

EAGLEBEN-SA_00353919

Application/Control Number: 18/646,171                                      Page 16
Art Unit: 1613

The patent does not expressly teach ethanol or that the liquid composition comprises 100 mg of bendamustine. However, the scope of the pharmaceutically acceptable fluid includes ethanol (Column 1, line 61-63; column 4, lines 41-42) and the scope of the antioxidant includes monothioglycerol. See MPEP 804: "The portion of the specification of the reference that describes subject matter that falls within the scope of a reference claim may be relied upon to properly construe the scope of that claim." The 100 mg amount of bendamustine is merely at the whim of the artisan as the patent is open to any amount in independent claim 1.

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.

3. Claims 1-12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-26 of U.S. Patent No. 9572796. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to:

EAGLEBEN-SA_00353920

Application/Control Number: 18/646,171                                          Page 17
Art Unit: 1613

1. A non-aqueous liquid composition comprising:
bendamustine, or a pharmaceutically acceptable salt
thereof;
a pharmaceutically acceptable fluid comprising a mixture
of polyethylene glycol and propylene glycol, wherein
the ratio of polyethylene glycol to propylene glycol in
the pharmaceutically acceptable fluid is from about
95:5 to about 50:50; and
a stabilizing amount of an antioxidant;
wherein the composition has less than about 5% total
impurities after 15 months of storage at about 5° C., as
calculated on a normalized peak area response basis as
determined by high performance liquid chromatography
at a wavelength of 223 nm.
2. The non-aqueous liquid composition of claim 1,
wherein the bendamustine concentration is from about 10
mg/mL to about 100 mg/mL.
3. The non-aqueous liquid composition of claim 1,
wherein the bendamustine concentration is from about 20
mg/mL to about 60 mg/mL.
4. The non-aqueous liquid composition of claim 1,
wherein the bendamustine concentration is from about 25
mg/mL to about 50 mg/mL.
5. The non-aqueous liquid composition of claim 1,
wherein the bendamustine concentration is about 25 mg/mL.
6. The non-aqueous liquid composition of claim 1,
wherein the concentration of the antioxidant is from about
2.5 mg/mL to about 35 mg/mL.
7. The non-aqueous liquid composition of claim 1,
wherein the concentration of the antioxidant is from about 5
mg/mL to about 20 mg/mL.
8. The non-aqueous liquid composition of claim 1,
wherein the concentration of the antioxidant is from about
10 mg/mL to about 15 mg/mL.

The patent teaches from about 5 mg/mL antioxidant (Claim 20).

The patent does not expressly teach the instantly claimed antioxidant

monothioglycerol or pharmaceutically acceptable fluid ethanol. However, the scope of

antioxidants includes monothioglycerol (Column 4, lines 3-8) and the scope of the fluids

includes ethanol (Column 4, line 40).

The patent does not expressly teach a sterile container. However, it is obvious to

provide pharmaceutical compositions in sterile containers to avoid contamination of the

product.

Therefore, the ordinary artisan would have recognized the obvious variation of

the instantly claimed subject matter over the patented subject matter.

EAGLEBEN-SA_00353921

Application/Control Number: 18/646,171                                    Page 18
Art Unit: 1613

4. Claims 1-12 are rejected on the ground of nonstatutory double patenting as
being unpatentable over claims 1-22 of U.S. Patent No. 8609707. Although the claims
at issue are not identical, they are not patentably distinct from each other because the
patent is directed to:

We claim:
1. A long term storage stable non-aqueous liquid benda-
mustine-containing composition, comprising:

US 8,609,707 B2

### 13

a) bendamustine or a pharmaceutically acceptable salt
thereof, and
b) a pharmaceutically acceptable fluid comprising
i) about 90% polyethylene glycol and about 10% propy-
lene glycol; and
ii) a stabilizing amount of an antioxidant.
2. The long term storage stable non-aqueous liquid benda-
mustine-containing composition of claim 1, wherein the ben-
damustine concentration is from about 20 mg/mL to about 60
mg/mL.
3. The long term storage stable non-aqueous liquid benda-
mustine-containing composition of claim 2, wherein the ben-
damustine concentration is from about 25 mg/mL to about 50
mg/mL.
4. The long term storage stable non-aqueous liquid benda-

### 14

12. The long term storage stable non-aqueous liquid ben-
damustine-containing composition of claim 10, wherein the
stabilizing amount of the antioxidant is about 5 mg/mL.
13. The long term storage stable non-aqueous liquid ben-
damustine-containing composition of claim 1, wherein said
long term storage is at least 2 years.
14. A long term storage stable non-aqueous liquid benda-
mustine-containing composition, comprising:
a) bendamustine or a pharmaceutically acceptable salt
thereof, and
b) a pharmaceutically acceptable fluid comprising
i) about 90% polyethylene glycol and about 10% propy-
lene glycol; and
ii) a stabilizing amount of thioglycerol.

EAGLEBEN-SA_00353922

Application/Control Number: 18/646,171                                          Page 19
Art Unit: 1613

5. The long term storage stable non-aqueous liquid benda-mustine-containing composition of claim **4**, wherein the ben-damustine concentration is about 50 mg/mL.

6. The long term storage stable non-aqueous liquid benda-mustine-containing composition of claim **1**, wherein the anti-oxidant is selected from the group consisting of thioglycerol, monothioglycerol, lipoic acid, propyl gallate, methionine, cysteine, metabisulfites, sodium formaldehyde sulfoxylate, phenol-containing aromatic and aliphatic compounds and dihydrolipoic acid.

7. The long term storage stable non-aqueous liquid benda-mustine-containing composition of claim **6**, wherein the anti-oxidant is thioglycerol or monothioglycerol.

8. The long term storage stable non-aqueous liquid benda-mustine-containing composition of claim **6**, wherein the anti-oxidant is lipoic acid.

9. The long term storage stable non-aqueous liquid benda-mustine-containing composition of claim **1**, wherein the sta-bilizing amount of the antioxidant is from about 2.5 mg/mL to about 35 mg/mL.

10. The long term storage stable non-aqueous liquid ben-damustine-containing composition of claim **9**, wherein the stabilizing amount of the antioxidant is from about 5 mg/mL to about 20 mg/mL.

11. The long term storage stable non-aqueous liquid ben-damustine-containing composition of claim **10**, wherein the stabilizing amount of the antioxidant is from about 10 mg/mL to about 15 mg/mL.

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of 223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See MPEP 2112.01(II): "Products of identical chemical composition cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

EAGLEBEN-SA_00353923

Application/Control Number: 18/646,171                                                        Page 20
Art Unit: 1613

The patent does not expressly teach ethanol or that the liquid composition

comprises 100 mg of bendamustine. However, the scope of the pharmaceutically

acceptable fluid includes ethanol (Column 4, line 31-32) and the scope of the

antioxidant includes monothioglycerol (Column 4, line 2). See MPEP 804: "The portion

of the specification of the reference that describes subject matter that falls within the

scope of a reference claim may be relied upon to properly construe the scope of that

claim." The 100 mg amount of bendamustine is merely at the whim of the artisan as the

patent is open to any amount in independent claim 1.

Therefore, the ordinary artisan would have recognized the obvious variation of

the instantly claimed subject matter over the patented subject matter.


5. Claims 1-4, 6-10 and 12 are rejected on the ground of nonstatutory double

patenting as being unpatentable over claims 1-23 of U.S. Patent No. 9579384. Although

the claims at issue are not identical, they are not patentably distinct from each other

because the patent is directed to the same composition used in the following method:

EAGLEBEN-SA_00353924

Application/Control Number: 18/646,171                                                                Page 21
Art Unit: 1613

1. A method of treating chronic lymphocytic leukemia or indolent B cell non-Hodgkin lymphoma in a subject comprising:

parenterally administering to the subject, over a period of less than or equal to about 15 minutes, a dose of from about 25 mg/m$^2$ to about 120 mg/m$^2$ of bendamustine or a pharmaceutically acceptable salt thereof, wherein said dose of bendamustine or pharmaceutically acceptable salt thereof is provided in a liquid composition comprising:

a total volume of about 100 ml or less;

bendamustine or a pharmaceutically acceptable salt thereof, at a concentration of from about 0.5 to about 5.6 mg/ml;

a solubilizer comprising polyethylene glycol and propylene glycol, wherein the amount of solubilizer is from about 0.5 to about 26.5% by volume;

a parenterally acceptable diluent; and optionally,

an antioxidant.

2. The method of claim 1, wherein the subject is human.

3. The method of claim 1, wherein the amount of solubilizer is from about 2.0 to about 22.4% vol.

4. The method of claim 1, where the polyethylene glycol is PEG 400.

5. The method of claim 1, wherein the concentration of bendamustine, or pharmaceutically acceptable salt thereof, in said liquid composition is from about 0.1 to about 3.2 mg/ml.

6. The method of claim 1, wherein the weight ratio of polyethylene glycol to propylene glycol is about 90:10.

7. The method of claim 6, wherein the volume of the liquid composition is about 50 ml.

8. The method of claim 1, wherein the antioxidant is monothioglycerol.

The patent does not expressly teach a sterile container or less than about 5%

peak area response of total impurities as determined using HPLC with a wavelength of

223 nm to determine the total impurities from the degradation of bendamustine at the

period of time or temperatures instantly claimed. However, it is obvious to provide

pharmaceutical compositions in sterile containers to avoid contamination of the product

and the total impurities would be inherent in the composition comprising the same

components. See MPEP 2112.01(II): "Products of identical chemical composition

cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15

USPQ2d 1655, 1658 (Fed. Cir. 1990)."

EAGLEBEN-SA_00353925

Application/Control Number: 18/646,171                                         Page 22
Art Unit: 1613

The patent does not expressly teach the instantly claimed higher concentration of bendamustine or the concentration of 5 mg/ml antioxidant. However, that is merely a more concentrated solution of the drug which the artisan can make as a stock solution for future dilution and the amount of antioxidant is readily optimized to achieve the desired effect and therefore is not inventive without more.

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.

6. Claims 1-4, 6-10 and 12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-24 of U.S. Patent No. 9034908. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to: methods of treating cancer or malignant disease (claim 1) such as leukemia or non-Hodgkin's lymphoma (claims 15, 20) using a composition comprising bendamustine with a PEG/propylene glycol solubilizer and an antioxidant (claim 1) where the antioxidant can be monothioglycerol (claim 13) and the ratio of PEG:propylene glycol is about 90:10 (claim 10).

The patent does not expressly teach the instantly claimed higher concentration of bendamustine or the concentration of 5 mg/ml antioxidant. However, that is merely a more concentrated solution of the drug which the artisan can make as a stock solution for future dilution and the amount of antioxidant is readily optimized to achieve the desired effect and therefore is not inventive without more.

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of

EAGLEBEN-SA_00353926

Application/Control Number: 18/646,171                                    Page 23
Art Unit: 1613

223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See MPEP 2112.01(II): "Products of identical chemical composition cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.


7. Claims 1-4, 6-10 and 12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-17 of U.S. Patent No. 9597399 in view of Rowe et al. ("Rowe", Handbook of Pharmaceutical Excipients, 6th edition, 2009, pages 454-455, cited in IDS filed 01/24/2014 filed in parent 15432335). Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to a method of treating cancer or malignant disease using a composition comprising bendamustine, propylene glycol, PEG and an antioxidant. The patent does not expressly teach the instantly claimed higher concentration of bendamustine. However, that is merely a more concentrated solution of the drug which the artisan can make as a stock solution for future dilution and therefore is not inventive without more. The patent does not expressly identify the antioxidant. However, the scope of the antioxidant includes 5 mg/ml monothioglycerol (Example 1).

EAGLEBEN-SA_00353927

Application/Control Number: 18/646,171                                          Page 24
Art Unit: 1613

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of 223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See MPEP 2112.01(II): "Products of identical chemical composition cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.

8. Claims 1-4, 6-10 and 12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-23 of U.S. Patent No. 9144568. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to a method of treating leukemia or non-Hodgkin's lymphoma (claims 1 and 16) using a composition comprising bendamustine, a solubilizer comprising PEG and propylene glycol in a ratio of about 90:10 (claims 1-5) and the antioxidant monothioglycerol (claim 7). The patent does not expressly teach the instantly claimed higher concentration of bendamustine. However, that is merely a more concentrated solution of the drug which the artisan can make as a stock solution for future dilution and therefore is not inventive without more.

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of

EAGLEBEN-SA_00353928

Application/Control Number: 18/646,171                                          Page 25
Art Unit: 1613

223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See MPEP 2112.01(II): "Products of identical chemical composition cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.

9. Claims 1-12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-29 of U.S. Patent No. 9572887. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to a 10-100 mg/ml bendamustine composition (claim 1) with propylene glycol and PEG (claims 2 and 3) and ethanol (Claims 2 and 5) and stabilizing antioxidants (claim 14) such as monothioglycerol (claim 15).

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of 223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See MPEP 2112.01(II): "Products of identical chemical composition

EAGLEBEN-SA_00353929

cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

The patent does not expressly teach the instantly claimed higher concentration of bendamustine or the concentration of 5 mg/ml antioxidant. However, that is merely a more concentrated solution of the drug which the artisan can make as a stock solution for future dilution and the amount of antioxidant is readily optimized to achieve the desired effect and therefore is not inventive without more.

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.

10. Claims 1-12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-7 of U.S. Patent No. 9597397. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent is directed to a method employing a bendamustine composition comprising PEG, propylene glycol and the antioxidant monothioglycerol in a PEG:propylene glycol ratio of about 90:10 (claims 1-7) and monothioglycerol (Claim 7).

The patent does not expressly teach a sterile container or less than about 5% peak area response of total impurities as determined using HPLC with a wavelength of 223 nm to determine the total impurities from the degradation of bendamustine at the period of time or temperatures instantly claimed. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product and the total impurities would be inherent in the composition comprising the same components. See MPEP 2112.01(II): "Products of identical chemical composition

EAGLEBEN-SA_00353930

Application/Control Number: 18/646,171                                                    Page 27
Art Unit: 1613

cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15

USPQ2d 1655, 1658 (Fed. Cir. 1990)."

The patent does not expressly teach the instantly claimed higher concentration of

bendamustine or the concentration of 5 mg/ml antioxidant. However, that is merely a

more concentrated solution of the drug which the artisan can make as a stock solution

for future dilution and the amount of antioxidant is readily optimized to achieve the

desired effect and therefore is not inventive without more.

Therefore, the ordinary artisan would have recognized the obvious variation of

the instantly claimed subject matter over the patented subject matter.

11. Claims 1-12 are rejected on the ground of nonstatutory double patenting as

being unpatentable over claims 1-26 of U.S. Patent No. 10010533. Although the claims

at issue are not identical, they are not patentably distinct from each other because the

patent is directed to:

EAGLEBEN-SA_00353931

Application/Control Number: 18/646,171                                    Page 28
Art Unit: 1613

1. A liquid bendamustine-containing composition, com-
prising:
   a) bendamustine or a pharmaceutically acceptable salt
     thereof; and
   b) a pharmaceutically acceptable fluid comprising about
     5% to about 10% propylene glycol, polyethylene glycol
     and a stabilizing amount of an antioxidant selected
     from the group consisting of thioglycerol, monothio-
     glycerol, lipoic acid, propyl gallate, methionine, cys-
     teine, metabisulfites, sodium formaldehyde sulfoxylate,
     phenol-containing aromatic and aliphatic compounds
     and dihydrolipoic acid;
   the bendamustine-containing composition having less
     than or equal to 0.11% total PG esters at about 1 month
     of storage at a temperature of about 5° C.;
   wherein the ratio of polyethylene glycol to propylene
     glycol is selected from the group consisting of: about
     95:5, about 90:10, about 85:15, about 80:20 and about
     75:25.

pharmaceutically acceptable fluid is about 10%.

4. The liquid bendamustine-containing composition of
claim 1, wherein the bendamustine concentration is from
about 20 mg/mL to about 60 mg/mL.

5. The liquid bendamustine-containing composition of

The patent does not expressly teach a sterile container or less than about 5%

peak area response of total impurities as determined using HPLC with a wavelength of

223 nm to determine the total impurities from the degradation of bendamustine at the

period of time or temperatures instantly claimed. However, it is obvious to provide

pharmaceutical compositions in sterile containers to avoid contamination of the product

and the total impurities would be inherent in the composition comprising the same

components. See MPEP 2112.01(II): "Products of identical chemical composition

cannot have mutually exclusive properties." *In re Spada*, 911 F.2d 705, 709, 15

USPQ2d 1655, 1658 (Fed. Cir. 1990)."

The patent does not expressly teach the instantly claimed higher concentration of

bendamustine or the concentration of 5 mg/ml antioxidant. However, that is merely a

EAGLEBEN-SA_00353932

Application/Control Number: 18/646,171                                      Page 29
Art Unit: 1613

more concentrated solution of the drug which the artisan can make as a stock solution

for future dilution and the amount of antioxidant is readily optimized to achieve the

desired effect and therefore is not inventive without more.

Therefore, the ordinary artisan would have recognized the obvious variation of

the instantly claimed subject matter over the patented subject matter.


12. Claims 1-12 are rejected on the ground of nonstatutory double patenting as

being unpatentable over claims 1-16 of U.S. Patent No. 11103483. Although the claims

at issue are not identical, they are not patentably distinct from each other because the

patent is directed to and anticipating composition and method of treating cancers

leukemia and Hodgkin's disease with the same antioxidants, bendamustine-HCl in the

same concentration and same stability as shown below:

1. A ready to use liquid bendamustine-containing composition comprising

bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is from about 10 mg/mL to about 100 mg/mL;

polyethylene glycol; and

a stabilizing amount of an antioxidant;

the composition having less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC as a wavelength of 223 nm after at least 15 months at a temperature of from about 5° C. to about 25° C.

2. The ready to use liquid bendamustine-containing composition of claim 1, wherein the antioxidant is lipoic acid, thioglycerol, propyl gallate, methionine, cysteine, a metabisulfite, sodium formaldehyde sulfoxylate, a phenol-containing aromatic compound, a phenol-containing aliphatic compound, dihydrolipoic acid, or a mixture thereof.

3. The ready to use liquid bendamustine-containing composition of claim 1, having less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC as a wavelength of 223 nm after at least 15 months at a temperature of about 5° C.

EAGLEBEN-SA_00353933

Application/Control Number: 18/646,171                                             Page 30
Art Unit: 1613

The patent does not expressly teach a sterile container. However, it is obvious to

provide pharmaceutical compositions in sterile containers to avoid contamination of the

product.

The patent does not expressly teach the instantly claimed 100 mg of

bendamustine or the concentration of 5 mg/ml antioxidant. However, that is merely a

more concentrated solution of the drug which the artisan can make as a stock solution

for future dilution and the amount of antioxidant is readily optimized to achieve the

desired effect and therefore is not inventive without more.

Therefore, the ordinary artisan would have recognized the obvious variation of

the instantly claimed subject matter over the patented subject matter.


13. Claims 1-12 are provisionally rejected on the ground of nonstatutory double

patenting as being unpatentable over claims 1-9 of US Patent 11872214. Although the

claims at issue are not identical, they are not patentably distinct from each other

because the patent discloses:

1. A sterile vial containing a liquid bendamustine-containing composition comprising
about 100 mg of bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is from about 25 mg/mL;
a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and
a stabilizing amount of an antioxidant,
wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C. to about 25° C.
2. The sterile vial of claim 1, wherein the antioxidant is monothioglycerol.
3. The sterile vial of claim 1, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

EAGLEBEN-SA_00353934

Application/Control Number: 18/646,171                                        Page 31
Art Unit: 1613

> 4. The composition of claim **1**, wherein the composition is stable for at least about 15 months at 5° C. or for at least about 15 months at 25° C.
>
> 5. The sterile vial of claim **1**, wherein the liquid bendamustine-containing composition further comprises ethanol.
>
> 6. A liquid bendamustine-containing composition comprising
>
> > 100 mg of bendamustine, or a pharmaceutically acceptable salt thereof, and a stabilizing amount of an antioxidant, in a pharmaceutically acceptable fluid;
> >
> > wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and
> >
> > wherein the bendamustine concentration in the pharmaceutically acceptable fluid is from about 25 mg/mL,
> >
> > wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C. to about 25° C.
>
> 7. The composition of claim **6**, wherein the antioxidant is monothioglycerol.
>
> 8. The composition of claim **6**, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.
>
> 9. The composition of claim **6**, further comprising ethanol.

Therefore, the ordinary artisan would have recognized the obvious variation of the instantly claimed subject matter over the patented subject matter.

14. Claims 1-12 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-14 of US Patent 11844783. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent discloses:

EAGLEBEN-SA_00353935

Application/Control Number: 18/646,171                                    Page 32
Art Unit: 1613

We claim:

1. A sterile vial containing a liquid bendamustine-containing composition comprising

about 100 mg of bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is from about 25 mg/mL;

a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

a stabilizing amount of an antioxidant,

wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C. to about 25° C.

2. The sterile vial of claim 1, wherein the antioxidant is monothioglycerol.

3. The sterile vial of claim 1, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

4. The composition of claim 1, wherein the composition is stable for at least about 15 months at 5° C. or for at least about 15 months at 25° C.

5. The sterile vial of claim 1, wherein the liquid bendamustine-containing composition further comprises ethanol.

6. A liquid bendamustine-containing composition comprising

100 mg of bendamustine, or a pharmaceutically acceptable salt thereof, and a stabilizing amount of an antioxidant, in a pharmaceutically acceptable fluid;

wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

wherein the bendamustine concentration in the pharmaceutically acceptable fluid is from about 25 mg/mL,

wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C. to about 25° C.

7. The composition of claim 6, wherein the antioxidant is monothioglycerol.

8. The composition of claim 6, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

9. The composition of claim 6, further comprising ethanol.

Therefore, the ordinary artisan would have recognized the obvious variation of

the instantly claimed subject matter over the patented subject matter.

EAGLEBEN-SA_00353936

Application/Control Number: 18/646,171                                                    Page 33
Art Unit: 1613

15. Claims 1-12 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-12 of copending Application No. 18498259. Although the claims at issue are not identical, they are not patentably distinct from each other because the copending is directed to method of preparing a liquid bendamustine composition with polyethylene glycol, 25 mg./mL bendamustine concentration about 5% peak response measure by HPLC at 223 nm (Claims 1,2 and 7) with about 5 mg/mL monothioglycerol (Claims 4-5, 8 and 10-11) and ethanol (Claim 12).

The copending does not expressly teach a sterile container. However, it is obvious to provide pharmaceutical compositions in sterile containers to avoid contamination of the product.

The copending does not expressly teach 100 mg bendamustine. However, the amount of active ingredient in the formulation is readily optimized by the ordinary artisan.

This is a provisional nonstatutory double patenting rejection because the patentably indistinct claims have not in fact been patented.


16. Claims 1-12 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-14 of copending Application No. 18646329. Although the claims at issue are not identical, they are not patentably distinct from each other because the copending is directed to method of treating cancer with a liquid bendamustine composition with polyethylene glycol, 25 mg./mL bendamustine concentration about 5% peak response measure by HPLC at 223 nm (Claims 1, 3) with about 5 mg/mL monothioglycerol (Claims 6-7), the same stability (Claim 8) and ethanol

EAGLEBEN-SA_00353937

Application/Control Number: 18/646,171                                      Page 34
Art Unit: 1613

(Claims 1, 9 and 13) in a sterile vial (Claim 10). The copending also teaches

compositions used in the method with 100 mg bendamustine polyethylene glycol

monothiolglyceroal packaged in a sterile vial (Claims 11-12).

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


*Conclusion*

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to ERNST V ARNOLD whose telephone number is

(571)272-8509. The examiner can normally be reached M-F 7-3:30.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Brian Y Kwon can be reached on 571-272-0581. The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

EAGLEBEN-SA_00353938

Application/Control Number: 18/646,171                                      Page 35
Art Unit: 1613

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/ERNST V ARNOLD/
Primary Examiner, Art Unit 1613

EAGLEBEN-SA_00353939

| | | Application/Control No.<br>18/646,171 | | Applicant(s)/Patent Under Reexamination<br>Palepu et al. | |
|---|---|---|---|---|---|
| ***Notice of References Cited*** | | Examiner<br>ERNST V ARNOLD | | Art Unit<br>1613 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>YYYY-MM-DD | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-6686365-B2 | 2004-02-03 | Riebesehl; Bernd Ulrich | A61K45/06 | 514/262.1 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>YYYY-MM-DD | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in YYYY-MM-DD format are publication dates. Classifications may be US or foreign.

EAGLEBEN-SA_00353940

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/646,171 | Palepu et al. |
| | Examiner | Art Unit |
| | ERNST V ARNOLD | 1613 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. | 07/02/2024 | eva |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| filing receipt/continuity map | 07/02/2024 | eva |
| inventor name | 07/02/2024 | eva |
| parent application history | 07/02/2024 | eva |
| PE2E USPGPUB USPAT USOCR FIT FPRS EPO JPO DERWENT | 07/02/2024 | eva |
| | | |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

EAGLEBEN-SA_00353941

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/646,171 | Palepu et al. |
| | Examiner | Art Unit |
| | ERNST V ARNOLD | 1613 |

| | |
|---|---|
| | |

U.S. Patent and Trademark Office

Page 2 of 2

Part of Paper No.: 20240701

EAGLEBEN-SA_00353942

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | 18646171 | |
| Filing Date | 2024-04-25 | |
| First Named Inventor | Nagesh R. Palepu | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | 107071.001394 | |

**U.S.PATENTS** Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. Add

**U.S.PATENT APPLICATION PUBLICATIONS** Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. Add

**FOREIGN PATENT DOCUMENTS** Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button Add

**NON-PATENT LITERATURE DOCUMENTS** Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353943

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 1 | SciFinder(r) Hydrolytic degradation of IMET | ☐ |
| | 2 | SciFinder, Hydrolytic degradation of IMET 3393, American Chemical Society, 2018 | ☐ |
| | 3 | SEAGER et al., "Structure of Products Prepared by Freeze-Drying Solutions Containing Organic Solvents", PDA Journal oi Pharmaceutical Science and Technology, 1985, Vol. 39, No. 4, pp. 161-179 | ☐ |
| | 4 | Search History issued in connection with PCT/US2013/32295 dated May 10,2013. | ☐ |
| | 5 | Search History: Limited Classification Search dated May 10, 2013, PCT/US2013/032295. | ☐ |
| | 6 | SEEDHER et al., "Solubilization of Nimesulide- Use of Co-solvents", Indian J. Pharm. Sci., 2003, Vol. 65, No. 1, pp. 58-61 | ☐ |
| | 7 | SHAH et al., "Physical, Chemical, and Bioavailability Studies of Parenteral Diazepam Formulations Containing Propylene Glycol and Polyethylene Glycol 400", Drug Development and Industrial Pharm., 2008, Vol. 17, No. 12,pp. 1635-1654 | ☐ |
| | 8 | Shah et al., Physical, Chemical, and Bioavailability Studies of Parenteral Diazepam Formulations Containing 3ropylene Glycol and Polyethylene Glycol 400, Drug Development and Industrial Pharm.), 17:12, 1635-1654 (Oct. 20, 2008) | ☐ |
| | 9 | SHESKEY, Handbook of Pharmaceutical Excipients, 7th Edition, Propyl Gallate, 2012 | ☐ |
| | 10 | Sigma-Aldrich, Webpage Catalog for poly(ethylene glycol), http://www.sigmaaldrich.com/catalog/product/aldrich/202398?lang=en®ion- =US#, accessed Nov. 15, 2015, pp. 1-2 | ☐ |
| | 11 | SIKORA, "Cancer drug development in the post-genomic age", Current Science, 2001, Vol. 81 No. 5 pp. 549-554 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353944

Receipt date: 05/15/2024                                                                 18/646,171 - GAU: 1613

| | | | |
|---|---|---|---|
| | | Application Number | 18646171 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 107071.001394 |

| | | |
|---|---|---|
| 12 | Spectra Analysis, Inc., "Oxidative Degradation of Polyethyleneglycol (PEG) studied by LC-IR", Application Note 016, Mar. 2008. | ☐ |
| 13 | Spiegel et al. ("Spiegel", J. Pharma. Sci., 1963, 52(10), 917-927). | ☐ |
| 14 | SPIEGEL et al., "Use of Nonaqueous Solvents in Parenteral Products," Journal of Pharmaceutical Sciences, 1963, Vol. 52, No. 10 pp. 917-927 | ☐ |
| 15 | Spiegel, et al., "Use of Nonaqueous Solvents in Parenteral Products," J. Pharmac. Sciences, vol. 52, No. 10, pp. 917-927 (1963). | ☐ |
| 16 | STRICKLEY, "Solubilizing Excipients in Oral and Injectable Formulations", Pharmaceutical Research 2004, Vol. 21, No. 2, pp. 201-230 | ☐ |
| 17 | Supplemental European Search Report issued in connection with PCT/US2011/022958 dated December 16, 2013. | ☐ |
| 18 | Supplementary European Search Report in related EP 2528602 dated Jan. 2014. | ☐ |
| 19 | Supplementary European Search Report in related EP 2528602 dated January 2014. | ☐ |
| 20 | TAGEJA, "Bendamustine: Safety and Efficacy in the Management of Indolent Non-Hodgkin's Lymphoma", Clinical Medicine Insights: Oncology, 2011, Vol. 5, pp. 145-156 | ☐ |
| 21 | Tageja, Bendamustine: Safety and Efficacy in the Management of Indolent Non-Hodgkins Lymphoma, Clinical Medicine Insights: Oncology 2011:5 145-156 | ☐ |
| 22 | TEAGARDEN et al., "Practical Aspects of Freeze-Drying of Pharmaceutical and Biological Products Using Non-Aqueous Co-Solvent Systems", Chapter 8 in Freeze-Drying/Lyophilization of Pharmaceutical and Biological Products, 2004, pp. 239-276 | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353945

Receipt date: 05/15/2024                                                      18/646,171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| --- | --- | --- |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | |
| --- | --- | --- | --- |
| 23 | TEAGARDEN et al., "Practical Aspects of Lyophilization Using Non-Aqueous Co-Solvent Systems", Eur. J. Pharma. Sciences, 2002, Vol. 15, pp. 115-133 | | ☐ |
| 24 | Teva Pharmaceuticals International GMBH, et al. v. Apotex Inc., et al - Civil Action 1:17-cv-01164: Defendants Apotex Inc. and Apotex Corp.'s Answer to Complaint, Defenses and Counterclaims (Document 17), dated 11/27/17 | | ☐ |
| 25 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.- Civil Action No. 1:17-cv-01201: Answer to Complaint, Separate Defenses, and Counterclaims (Document 10), dated 09/15/17. | | ☐ |
| 26 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.- Civil Action No. 1:17-cv-01201: Answer to Fresenius Kabi USA, LLC'S Counterclaims (Document 14), dated 10/06/17. | | ☐ |
| 27 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.- Civil Action No. 1:17-cv-01201: Complaint (Document 1), dated 08/24/17. | | ☐ |
| 28 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.—Civil Action No. 1:17-cv-01201: Answer to Fresenius Kabi USA, LLC's Counterclaims (Document 14), dated Oct. 6, 2017. | | ☐ |
| 29 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi USA, LLC.—Civil Action No. 1:17-cv-01201: Complaint (Document 1), dated Aug. 24, 2017. | | ☐ |
| 30 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al - Civil Action No. 1:18-cv-01586: Answer to Fresenius Kabi USA, LLC's Counterclaims (Document 13), dated 11/27/18. | | ☐ |
| 31 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al - Civil Action No. 1:18-cv-01586: Complaint (Document 1), dated 10/15/18. | | ☐ |
| 32 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al - Civil Action No. 1:18-cv-01586: Defendant Mylan Laboratories LTD.'s Answer to Complaint for Patent Infringement (Document 11), dated 11/09/18. | | ☐ |
| 33 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al.- Civil Action No. 1:18-cv-01586: Defendant Fresenius Kabi USA, LLC's Answer to Complaint, Separate Defenses, and Counterclaims (Document 9), dated 11/06/18. | | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353946

Receipt date: 05/15/2024   18646171   GAU: 1613

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | | |
|---|---|---|---|
| | 34 | Teva Pharmaceuticals International GMBH, et al. v. Fresenius Kabi, LLC., et al.—Civil Action No. 1:18-cv-01586: Defendant Fresenius Kabi USA, LLC's Answer to Complaint, Separate Defenses, and Counterclaims (Document 9), dated Nov. 6, 2018. | ☐ |
| | 35 | Teva Pharmaceuticals International GMBH, et al. v. Mylan Laboratories Limited- Civil Action No. 1:17-cv-01790: Complaint (Document 1), dated 12/12/17. | ☐ |
| | 36 | Teva Pharmaceuticals International GMBH, et al. v. Mylan Laboratories Limited—Civil Action No. 1:17-cv-01790: Defendant Mylan Laboratories Limited's Answer to Complaint for Patent Infringement (Document 12), dated Feb. 14, 2018. | ☐ |
| | 37 | Teva Pharmaceuticals International GMBH, et al. v. Slayback Pharma Limited Liability Company- Civil Action No. 1:18-cv-00117: Complaint (Document 1), dated 01/19/18. | ☐ |
| | 38 | Teva Pharmaceuticals International GMBH, et al. v. Slayback Pharma Limited Liability Company- Civil Action No. 1:18-cv-00117: Defendant Slayback Pharma Limited Liability Company's Answer to Complaint, Addtional Defenses and Counterclaims (Document 9), dated 02/12/18. | ☐ |
| | 39 | Teva Pharmaceuticals International GMBH, etal. v. Apotex Inc., etal - Civil Action No. 1:17-cv-01164: Complaint (Document 1), dated 08/18/17. | ☐ |
| | 40 | THIESEN, "Bendamustine, a well-tollerated cytotoxic agent used in Germany for may years, is soon to be marketed in the rest of Europe for a range of indicatons including chronic lymphocytic leukaemia," 2010, pp. 1-4. Available at http://www.hospitalpharmacyeurope.com/featured-articles/bendamustine. | ☐ |
| | 41 | Third Party Observation in related EP2528602 based on PCT/US2011/022958 dated March 21, 2016. | ☐ |
| | 42 | Third Party Submission in related EP2528602 based on PCT/US2011/022958 dated Nov. 2013. | ☐ |
| | 43 | Third Party Submission in related EP2528602 based on PCT/US2011/022958 dated November 19,2013 (9 pages). | ☐ |
| | 44 | Third Party Submission in related EP2528602 dated Nov. 19, 2013. | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353947

Receipt date: 05/15/2024    18/646,171 - GAU: 1613

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | |
|---|---|---|
| 45 | Treanda label, 2008 | ☐ |
| 46 | Treanda, "Highlights Of Prescribing Information," TREANDA bendamustine hydrochloride for Injection, for intravenous infusion, 2008, pp. 1-6 | ☐ |
| 47 | TREANDA, "Highlights of Prescribing Information," TREANDA bendamustine hydrochloride for Injection, for intravenous infusion, 2010, pp. 1-13 | ☐ |
| 48 | TREANDA, "Highlights of prescribing information", 2008 | ☐ |
| 49 | TRIVEDI et al., "Water-Insoluble Drug Formulation", 7. Solubilization Using CoSolvent Approach, 2000, pp. 141-168 | ☐ |
| 50 | TRIVEDI, "Water-Insoluble Drug Formulation", Second Edition, 9 Solubilization Using Cosolvent Approach, 2008, pp. 161-194 | ☐ |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | /ERNST V ARNOLD/ | Date Considered | 07/02/2024 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353948

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE

 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353949

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353950

Receipt date: 05/15/2024                                                                18/646,171 - GAU: 1613

Doc code: IDS

Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99**)

| | |
|---|---|
| Application Number | 18646171 |
| Filing Date | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu |
| Art Unit | |
| Examiner Name | |
| Attorney Docket  Number | 107071.001394 |

## U.S.PATENTS   [Remove]

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 4071620 | | 1978-01-31 | SKLAR STANLEY | |
| | 2 | 4711906 | | 1987-12-08 | VON et al. | |
| | 3 | 4879286 | | 1989-11-07 | ALAM et al. | |
| | 4 | 5204335 | A | 1993-04-20 | SAUERBIER et al. | |
| | 5 | 5223515 | A | 1993-06-29 | MIKURA et al. | |
| | 6 | 5741523 | A | 1998-04-21 | TEAGARDEN et al. | |
| | 7 | 7252799 | B2 | 2007-08-07 | MIEKKA et al. | |
| | 8 | 7772274 | B1 | 2010-08-10 | PALEPU NAGESH | |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353951

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | Application Number | 18646171 |
|---|---|---|---|---|
| | | | Filing Date | 2024-04-25 |
| | | | First Named Inventor | Nagesh R. Palepu |
| | | | Art Unit | |
| | | | Examiner Name | |
| | | | Attorney Docket Number | 107071.001394 |

| | 9 | 8076366 | B2 | 2011-12-13 | COURVOISIER et al. | |
|---|---|---|---|---|---|---|
| | 10 | 8344006 | B2 | 2013-01-01 | DRAGER et al. | |
| | 11 | 8389558 | B2 | 2013-03-05 | ALAKHOV et al. | |
| | 12 | 8609707 | B2 | 2013-12-17 | PALEPU et al. | |
| | 13 | 8791270 | | 2014-07-29 | BRITTAIN et al. | |
| | 14 | 9000021 | B2 | 2015-04-07 | SUNDARAM et al. | |
| | 15 | 9034908 | B2 | 2015-05-19 | SUNDARAM SRIKANTH | |
| | 16 | 9144568 | B1 | 2015-09-29 | SUNDARAM SRIKANTH | |
| | 17 | 9265831 | B2 | 2016-02-23 | PALEPU et al. | |
| | 18 | 9572796 | | 2017-02-21 | PALEPU et al. | |
| | 19 | 9572797 | | 2017-02-21 | PALEPU et al. | |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353952

Receipt date: 05/15/2024                                                    18/646,171 - GAU: 1613

| | | | | | | |
|---|---|---|---|---|---|---|
| | | **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | Application Number | 18646171 | |
| | | | | Filing Date | 2024-04-25 | |
| | | | | First Named Inventor | Nagesh R. Palepu | |
| | | | | Art Unit | | |
| | | | | Examiner Name | | |
| | | | | Attorney Docket  Number | 107071.001394 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 20 | 9572887 | | 2017-02-21 | SUNDARAM SRIKANTH | |
| | 21 | 9572888 | | 2017-02-21 | SUNDARAM SRIKANTH | |
| | 22 | 9579384 | | 2017-02-28 | SUNDARAM et al. | |
| | 23 | 9597397 | | 2017-03-21 | SUNDARAM SRIKANTH | |
| | 24 | 9597398 | | 2017-03-21 | SUNDARAM SRIKANTH | |
| | 25 | 9597399 | | 2017-03-21 | SUNDARAM SRIKANTH | |
| | 26 | 10010533 | B2 | 2018-07-03 | PALEPU et al. | |
| | 27 | 10052385 | B2 | 2018-08-21 | SUNDARAM SRIKANTH | |
| | 28 | 11103483 | B2 | 2021-08-31 | PALEPU et al. | |
| | 29 | 11707450 | B1 | 2023-07-25 | CHINNARI et al. | |

| | |
|---|---|
| If you wish to add additional U.S. Patent citation information please click the Add button. | Add |
| **U.S.PATENT APPLICATION PUBLICATIONS** | Remove |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353953

Receipt date: 05/15/2024    18/646,171 - GAU: 1613

| | | | | | | |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | | Application Number | | 18646171 | | |
| | | Filing Date | | 2024-04-25 | | |
| | | First Named Inventor | | Nagesh R. Palepu | | |
| | | Art Unit | | | | |
| | | Examiner Name | | | | |
| | | Attorney Docket Number | | 107071.001394 | | |

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20020102215 | A1 | 2002-08-01 | KLAVENESS et al. | |
| | 2 | 20020122768 | A1 | 2002-09-05 | LIU et al. | |
| | 3 | 20040014964 | A1 | 2004-01-22 | CHEESMAN et al. | |
| | 4 | 20040043069 | A1 | 2004-03-04 | VANDERBIST et al. | |
| | 5 | 20040167152 | A1 | 2004-08-26 | RUBINO JOSEPH T et al. | Corresponds to JP 2005-537285 A |
| | 6 | 20050025702 | A1 | 2005-02-03 | DECICCO et al. | |
| | 7 | 20050042285 | A1 | 2005-02-24 | UKAI et al. | |
| | 8 | 20060001597 | A1 | 2006-01-05 | HAN SOKBOM | |
| | 9 | 20060035945 | A1 | 2006-02-16 | ATTARDO et al. | |
| | 10 | 20060128777 | A1 | 2006-06-15 | BENDALL et al. | |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353954

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | Application Number | 18646171 |
| | | Filing Date | 2024-04-25 |
| | | First Named Inventor | Nagesh R. Palepu |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 107071.001394 |

| | | | | | |
|---|---|---|---|---|---|
| 11 | 20060159713 | A1 | 2006-07-20 | BRITTAIN et al. | |
| 12 | 20060205694 | A1 | 2006-09-14 | ALONSO et al. | |
| 13 | 20070116729 | A1 | 2007-05-24 | PALEPU NAGESWARA R | |
| 14 | 20080118544 | A1 | 2008-05-22 | WANG LIXIAO | |
| 15 | 20090082416 | A1 | 2009-03-26 | CZARNIK ANTHONY W | |
| 16 | 20090209606 | A1 | 2009-08-20 | BENDALL et al. | |
| 17 | 20090264488 | A1 | 2009-10-22 | COOPER et al. | |
| 18 | 20090325978 | A1 | 2009-12-31 | ONAI et al. | |
| 19 | 20100092474 | A1 | 2010-04-15 | GALLAGHER et al. | |
| 20 | 20100145266 | A1 | 2010-06-10 | ORLOWSKI MICHAEL | |
| 21 | 20100216858 | A1 | 2010-08-26 | POPEK et al. | |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353955

| | | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | | | | |
|---|---|---|---|---|---|---|---|

| | | | Application Number | | 18646171 |
|---|---|---|---|---|---|
| | | | Filing Date | | 2024-04-25 |
| | | | First Named Inventor | Nagesh R. Palepu | |
| | | | Art Unit | | |
| | | | Examiner Name | | |
| | | | Attorney Docket Number | | 107071.001394 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 22 | 20100247669 | A1 | 2010-09-30 | ELIASOF et al. | |
| | 23 | 20100273730 | A1 | 2010-10-28 | HSU et al. | |
| | 24 | 20110015245 | A1 | 2011-01-20 | ALAKHOV et al. | |
| | 25 | 20110190363 | A1 | 2011-08-04 | DRAGER et al. | |
| | 26 | 20120059000 | A1 | 2012-03-08 | REN et al. | |
| | 27 | 20120071532 | A1 | 2012-03-22 | COOPER et al. | |
| | 28 | 20120157505 | A1 | 2012-06-21 | LABELL et al. | |
| | 29 | 20120308516 | A1 | 2012-12-06 | HLAVINKA et al. | |
| | 30 | 20130041003 | A1 | 2013-02-14 | BRITTAIN et al. | |
| | 31 | 20130041004 | A1 | 2013-02-14 | DRAGER et al. | |
| | 32 | 20130177572 | A1 | 2013-07-11 | CHEN YAN et al. | Corresponds to JP 2015-501814 A |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353956

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 | |
| | | | | Filing Date | 2024-04-25 | |
| | | | | First Named Inventor | Nagesh R. Palepu | |
| | | | | Art Unit | | |
| | | | | Examiner Name | | |
| | | | | Attorney Docket Number | 107071.001394 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 33 | 20130210878 | A1 | 2013-08-15 | SOPPIMATH et al. | |
| | 34 | 20130210879 | A1 | 2013-08-15 | PALEPU et al. | |
| | 35 | 20130217888 | A1 | 2013-08-22 | SHRAWAT et al. | |
| | 36 | 20130288274 | A1 | 2013-10-31 | WALKER ROGER et al. | Corresponds to JP 2015-501813 A |
| | 37 | 20140094496 | A1 | 2014-04-03 | SUNDARAM SRIKANTH | |
| | 38 | 20140275196 | A1 | 2014-09-18 | SUNDARAM SRIKANTH | |
| | 39 | 20150080444 | A1 | 2015-03-19 | SUNDARAM et al. | |
| | 40 | 20180185488 | A1 | 2018-07-05 | SUNDARAM SRIKANTH | |
| | 41 | 20180296535 | A1 | 2018-10-18 | PALEPU et al. | |
| | 42 | 20180296536 | A1 | 2018-10-18 | PALEPU et al. | |
| | 43 | 20180369383 | A1 | 2018-12-27 | SUNDARAM SRIKANTH | |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353957

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|---|
| | Application Number | | 18646171 |
| | Filing Date | | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | | 107071.001394 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 44 | 20190192659 | A1 | 2019-06-27 | SUNDARAM SRIKANTH | |
| | 45 | 20210393594 | A1 | 2021-12-23 | PALEPU et al. | |
| | 46 | 20230115164 | A1 | 2023-04-13 | PALEPU et al. | |
| | 47 | 20230115693 | A1 | 2023-04-13 | PALEPU et al. | |

If you wish to add additional U.S. Published Application citation information please click the Add button. [Add]

**FOREIGN PATENT DOCUMENTS** [Remove]

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2787568 | CA | A1 | 2011-08-04 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 2 | 2867295 | CA | A1 | 2013-09-26 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 3 | 2867343 | CA | A1 | 2013-09-26 | EAGLE PHARMACEUTICALS INC | | ☐ |
| | 4 | 1850048 | CN | A | 2006-10-25 | SHANDONG LANJIN BIOENGINEERING | English Abstract Submitted | ☐ |
| | 5 | 101584668 | CN | A | 2009-11-25 | JIANGSU AOSAIKANG PHARMACEUTIC | English Abstract Submitted | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353958

| | | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|---|---|
| | | | Filing Date | 2024-04-25 |
| | | | First Named Inventor | Nagesh R. Palepu |
| | | | Art Unit | |
| | | | Examiner Name | |
| | | | Attorney Docket Number | 107071.001394 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6 | 102164579 | CN | A | 2011-08-24 | CEPHALON INC | English Abstract Submitted | ☐ |
| 7 | 104302291 | CN | A | 2015-01-21 | EAGLE PHARMACEUTICALS INC | corresponds to WO 2013/142358 | ☐ |
| 8 | 80967 | DD | A | 1970-01-19 | RICHTER | | ☐ |
| 9 | 152989 | DD | A1 | 1981-12-16 | KUNZE KLAUS | | ☐ |
| 10 | 159289 | DD | A1 | 1983-03-02 | OLTHOFF UWE | | ☐ |
| 11 | 2326306 | EP | A1 | 2011-06-01 | CEPHALON INC | | ☐ |
| 12 | 2528602 | EP | A1 | 2012-12-05 | EAGLE PHARMACEUTICALS INC | | ☐ |
| 13 | 2827862 | EP | A1 | 2015-01-28 | EAGLE PHARMACEUTICALS INC | | ☐ |
| 14 | 2827863 | EP | A1 | 2015-01-28 | EAGLE PHARMACEUTICALS INC | | ☐ |
| 15 | 2015-160351 | JP | A | 2015-09-07 | SUMITOMO BAKELITE CO | English Abstract Submitted | ☐ |
| 16 | 95/19759 | WO | A1 | 1995-07-27 | PROCTER & GAMBLE | Corresponds to JP 09-508128 A | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353959

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | Application Number | | 18646171 | | | | |
| | | Filing Date | | 2024-04-25 | | | | |
| | | First Named Inventor | | Nagesh R. Palepu | | | | |
| | | Art Unit | | | | | | |
| | | Examiner Name | | | | | | |
| | | Attorney Docket Number | | 107071.001394 | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 17 | 99/01118 | WO | A2 | 1999-01-14 | ATHEROGENICS INC | | ☐ |
| | 18 | 2001/097860 | WO | | 2001-12-27 | DU PONT PHARM CO | | ☐ |
| | 19 | 2001/097861 | WO | | 2001-12-27 | DU PONT PHARM CO | | ☐ |
| | 20 | 2001/098294 | WO | | 2001-12-27 | DU PONT PHARM CO | | ☐ |
| | 21 | 02/02125 | WO | A1 | 2002-01-10 | YE YUERONG | | ☐ |
| | 22 | 2006/054315 | WO | A1 | 2006-05-26 | VENUS REMEDIES LTD | | ☐ |
| | 23 | 2006/110551 | WO | A2 | 2006-10-19 | AMYLIN PHARMACEUTICALS INC | | ☐ |
| | 24 | 2010/036702 | WO | A1 | 2010-04-01 | PATEL PIYUSH R | | ☐ |
| | 25 | 2010/126676 | WO | A1 | 2010-11-04 | PATEL PIYUSH R | | ☐ |
| | 26 | 2010/148288 | WO | A2 | 2010-12-23 | ANDERSON DAVID M | | ☐ |
| | 27 | 2011/094565 | WO | A1 | 2011-08-04 | BUXTON PHILIP CHRISTOPHER | | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353960

| | | | | | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 | | | |
| | Filing Date | 2024-04-25 | | | |
| | First Named Inventor | Nagesh R. Palepu | | | |
| | Art Unit | | | | |
| | Examiner Name | | | | |
| | Attorney Docket Number | 107071.001394 | | | |

| | 28 | 2011/103150 | WO | A2 | 2011-08-25 | CEPHALON INC | | ☐ |
|---|---|---|---|---|---|---|---|---|
| | 29 | 2012/015810 | WO | A2 | 2012-02-02 | BUXTON PHILIP CHRISTOPHER | | ☐ |
| | 30 | 2013/142358 | WO | A1 | 2013-09-26 | EAGLE PHARMACEUTICALS INC | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button  [ Add ]

## NON-PATENT LITERATURE DOCUMENTS  [ Remove ]

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | AKERS et. al., "Excipient-Drug Interactions in Parenteral Formulations", Journal of Pharmaceutical Sciences, November 2002, Vol. 91, Issue 11, pp. 2283-2300 | ☐ |
| | 2 | AKERS, Remington, The Science and Practice of Pharmacy 21st Edition, Parenteral preparation, chapter 41, 2005, pp. 802-835 | ☐ |
| | 3 | AMDAHL et al., Chemistry, 7th Ed., 2007 | ☐ |
| | 4 | American Heart Association, "Living With Heart Failure" (https://www.heart.org/idc/groups/heart-public/@wcm/@hcm/@gwtg/documents/downloadable/ucm_309068.pdf) (2001) | ☐ |
| | 5 | American Society of Hospital Pharmacists. ASHP Technical Assistance Bulletin On Hospital Distribution and Control. Am J. Hosp. Pharm. 1980, 37:1097-103 | ☐ |
| | 6 | AMIN et al., "Lyophilization of Polyethylene Glycol Mixtures", Journal of Pharmaceutical Sciences 2004, Vol. 93, No. 9, pp. 2244-2249 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353961

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 18646171 |
| Filing Date | | 2024-04-25 |
| First Named Inventor | | Nagesh R. Palepu |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket  Number | | 107071.001394 |

| | | | |
|---|---|---|---|
| | 7 | ARMSTRONG et al., "Separation of Drug Stereoisomers by the Formation of...beta-Cyclodextrin Inclusion Complexes", Science, May 1986, Vol. 232, pp. 1132-1135 | ☐ |
| | 8 | BALDI et al., "Statistical Procedures for Optimizing the Freeze-Drying of a Model Drug in Tert-Butyl Alcohol: Water Mixtures", Eur. J. of Pharm. & Biopharm., 1994, Vol. 40, No. 3, pp. 138-141 | ☐ |
| | 9 | BALFOUR et al., "Bendamustine", Drugs, 2001, Vol. 61, No. 5, pp. 631-638 | ☐ |
| | 10 | BAUER et al., Pharmazeutische Technologies, pp. 225-228, HW9, 1993 | ☐ |
| | 11 | BAUER et al., Pharmazeutische Technologies, pp. 424-425, HW10, 1993 | ☐ |
| | 12 | BERGSAGEL et al., "Effect of cyclophosphamide on Advanced Lung Cancer and the Hematological Toxicity of Large, Intermittent Intravenous Doses", Canad. Med. Ass. J., 1968, Vol. 98, pp. 532-538 | ☐ |
| | 13 | BERNARD TESTA et al., Hydrolysis in Drug and Prodrug Metabolism, pp. 681-684. | ☐ |
| | 14 | Bernard TESTA, et al., "Hydrolysis in Drug and Prodrug Metabolism", Verlag Helvetica Chimica Acta, pp. 681-684, 2003, ISBN 3-906390-25-X. | ☐ |
| | 15 | BIEDERMANN et al., "SciFinder(r) Hydrolytic degradation of IMET", 1969, 3393, Vol. 108, pp. 1-2 | ☐ |
| | 16 | BIEWENGA et al., "The Pharmacology of the Antioxidant Lipoic Acid", Gen. Pharmac., 1997, Vol. 29, No. 3, pp. 315-331 | ☐ |
| | 17 | BOYLAN et al., "Parenteral Products, Chapter 12", Modern Pharmaceutics, Fourth Ed., 2002, pp. 1-34 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353962

Receipt date: 05/15/2024

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | 18646171 | |
| Filing Date | 2024-04-25 | |
| First Named Inventor | Nagesh R. Palepu | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | 107071.001394 | |

| | | | |
|---|---|---|---|
| | 18 | BRIGITTE et al., "Lipoic and Dihydrolipoic Acids..., Free Rad". Res., 1994, Vol. 20, No. 2, pp. 119-133 | ☐ |
| | 19 | BROADHEAD et al., "Pharmaceutical Preformulation and Formulation, Chapter 9 in "Parenteral Dosage Forms", Interpharm., 2001, pp. 325-347 | ☐ |
| | 20 | BROWN, Organic Chemistry 5th Edition, 2009, pp. 358-360 | ☐ |
| | 21 | Canadian Society of Hospital Pharmacists: Guidelines for Drug-Use Control, 2008, pp. 1-28 | ☐ |
| | 22 | CARPENTER et al., "A Study of the Polyethylene Glycols as Vehicles for Intramuscular and Subcutaneous Injection", Journal of the American Pharmaceutical Association, 1952, Vol. 41, No. 1, pp. 27-29 | ☐ |
| | 23 | Center for Drug Evaluation and Research, Andrew Dmytrijuk, FDA Medical Review for the Approval of Bendeka, 2015, pp. 1-35 | ☐ |
| | 24 | Cephalon, Inc., et al., v. Slayback Pharma Limited Liability Company, et al., Civil Action No. 1:17-cv-01154: Opinion, dated 04/27/20, 70 pages. | ☐ |
| | 25 | Cephalon, Inc., et al., v. Slayback Pharma Limited Liability Company, et al.- Civil Action No. 1: 17-cv-01154: Answer to Slayback Pharma Limited Liability Company's Counterclaims, dated 10/20/17. | ☐ |
| | 26 | CEPHALON, Inc., et al., v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-01154: Joint Status Report (Document 164), dated 10/19/18. | ☐ |
| | 27 | CERHALON, Inc, et al. v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-01154: Complaint (Document 1), dated 08/16/17. | ☐ |
| | 28 | CERHALON, Inc., et al., v. Slayback Pharma Limited Liability Company - Civil Action No. 1:17-cv-01154: Answer to Slayback Pharma Limited Liability Company's Counterclaims (Document 56), dated 03/05/18. | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353963

Receipt date: 05/15/2024                                                                18/646,171 - GAU: 1613

| | | INFORMATION DISCLOSURE | Application Number | 18646171 |
|---|---|---|---|---|

<table>
<tr><td rowspan="5"><strong>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</strong><br>( Not for submission under 37 CFR 1.99)</td><td>Application Number</td><td>18646171</td></tr>
<tr><td>Filing Date</td><td>2024-04-25</td></tr>
<tr><td>First Named Inventor</td><td>Nagesh R. Palepu</td></tr>
<tr><td>Art Unit</td><td></td></tr>
<tr><td>Examiner Name</td><td></td></tr>
<tr><td>Attorney Docket Number</td><td>107071.001394</td></tr>
</table>

| | | |
|---|---|---|
| 29 | Cerhalon, Inc., et al., v. Slayback Pharma Limited Liability Company, etal.- Civil Action No. 1:17-cv-01154: Answer to Apotex Inc. and Apotex Corp.'s Counterclaims (Document 22), dated 12/18/17. | ☐ |
| 30 | CERHALON, Inc., et al., v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-00154: Defendant Slayback Pharma Limited Liability Company's Answer to Complaint and Counterclaims (Document 11), dated 09/29/17. | ☐ |
| 31 | CERHALON, Inc., et al., v. Slayback Pharma Limited Liability Company- Civil Action No. 1:17-cv-01154: Joint Claim Construction Chart (Document 94), dated 07/24/18. | ☐ |
| 32 | CHADHA et al., "Drug Carrier Systems For Anticancer Agents: A Review", Journal of Scientific & Industrial Reasearch, 2008, Vol. 67, pp. 185-197 | ☐ |
| 33 | CHESON et al., "Bendamustine: Rebirth of an Old Drug", J. Clin. Oncol., 2009, Vol. 27, pp. 1492-1501 | ☐ |
| 34 | CHEUNG et al., "Safety and Pharmacokinetics of Bendamustine Rapid-Infusion Formulation", J. of Clinical Pharmacology, 2017, Vol. 57, No. 11, pp. 1400-1408 | ☐ |
| 35 | CHU et al., Common Chemotherapy Regimens in Clinical Practice, Physicians' Cancer Chemotherapy Drug Manual 2009 | ☐ |
| 36 | CORBETT, "Intravenous Fluids: It's More Than Just 'Fill 'Er Up!', Series #52 PRACTICAL GASTROENTEROLOGY, 2007, pp. 44-60 | ☐ |
| 37 | COSTANTINO, "Lyophilization Of Biopharmaceuticals", Association of Pharmaceutical Scientists, 2004 | ☐ |
| 38 | Cyclobond(R) Handbook, A Guide to Using Cyclodextrin Bonded Phases for Chiral LC Separations, 6th ed., 2002, Advanced Separation Technologies, Inc., pp 1-58. | ☐ |
| 39 | DERRY et al., "Application of 15N Nuclear Magnetic Resonance Spectroscopy to the Determination of the Stability of Aryl Nitrogen Mustards", J. Med. Chem., 1995, Vol. 38, pp. 2256-2258 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353964

Receipt date: 05/15/2024    18/646,171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| 40 | Draft Note for Guidance on Excipients, Antioxidants and Antimicrobial Preservatives In the Dossier for Application for Marketing Authorisation of Medicinal Product, EMEA, 2003, pp. 1-10. | ☐ |
| 41 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01459: Answer to Slayback Pharma LLC's Counterclaims (Document 13), dated 10/31/18. | ☐ |
| 42 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01459: Complaint (Document 1), dated 09/20/18. | ☐ |
| 43 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01459: Defendant Slayback Pharma .imited Liability Company's Answer to Complaint, Additional Defenses, and Counterclaims (Document 9), dated 10/10/18. | ☐ |
| 44 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Answer to Slayback Pharma LLC's Counterclaims (Document 12), dated 01/03/19. | ☐ |
| 45 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Complaint (Document 1), dated 12/11/18. | ☐ |
| 46 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Defendant Slayback Pharma .imited Liability Company's Answer to Complaint, Additional Defenses, and Counterclaims(Document 11), public version dated 12/20/18. | ☐ |
| 47 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC- Civil Action No. 1:18-cv-01953: Opening Brief in Support of Slayback Pharma Limited Liability Company's Motion for Judgment on the Pleadings (Document 17), public version dated 01/11/19. | ☐ |
| 48 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01459: Complaint (Document 1), dated Sep. 20, 2018. | ☐ |
| 49 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01953: Complaint (Document 1), dated Dec. 11, 2018. | ☐ |
| 50 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01953: Eagle Pharmaceuticals' Opposition to Slayback Pharma's Motion for Judgment on the Pleadings (Document 23), redacted—public version dated Feb. 12, 2019. | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353965

Receipt date: 05/15/2024                                                                18/646,171 - GAU: 1613

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

**EXAMINER SIGNATURE**

| Examiner Signature | /ERNST V ARNOLD/ | Date Considered | 07/02/2024 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353966

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
|---|---|---|---|
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353967

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353968

^ **Title:** FORMULATIONS OF BENDAMUSTINE

**Application number:** 18/646,171

**Status:** 37/SPECIAL NEW (Status Date: 06/17/2024)

**Examiner:** 80868 / ARNOLD,ERNST

**Filing date:** 04/25/2024

**GAU:** 1613

**Continuity/foreign:** YES

IDS flag clearance

---

⌄ **Inventor information**

| Inventor name | City | State/country | Inventor oath compliant? |
|---|---|---|---|
| Palepu, Nagesh R. | Southampton | PENNSYLVANIA, UNITED STATES | N/A |
| Buxton, Philip Christopher | Denham | UNITED KINGDOM | N/A |

---

⌄ **Applicant information**

| Applicant name | City | State/country |
|---|---|---|
| Eagle Pharmaceuticals, Inc. | Woodcliff Lake | NEW JERSEY, UNITED STATES |

---

⌄ **Assignee information**

# No assignee information

**Application URL:** https://opsg-portal.uspto.gov/OPSGPortal/?externalurl=true&General Information=applicantInventor&applicationNo=18646171 (https://opsg-portal.uspto.gov/OPSGPortal/?externalurl=true&General Information=applicantInventor&applicationNo=18646171)

EAGLEBEN-SA_00353969



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 3701**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 **RULE** | 514 | 1613 | 107071.001394 |

**APPLICANTS**
Eagle Pharmaceuticals, Inc., Woodcliff Lake, NJ;

**INVENTORS**
Nagesh R. Palepu, Southampton, PA;
Philip Christopher Buxton, Denham, UNITED KINGDOM;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
This application 18/646,171 04/25/2024
is a CON of 18/498,259 10/31/2023
which is a CON of 17/412,623 08/26/2021 ABN
which is a CON of 16/509,920 07/12/2019 PAT 11103483
which is a CON of 16/015,656 06/22/2018 ABN
which is a CON of 15/432,335 02/14/2017 PAT 10010533
which is a CON of 15/013,436 02/02/2016 PAT 9572797
which is a CON of 14/031,879 09/19/2013 PAT 9265831
which is a CON of 13/016,473 01/28/2011 PAT 8609707
which claims benefit of 61/299,100 01/28/2010

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\***
05/28/2024

| Foreign Priority claimed ☐ Yes ☑ No | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | ☐ Met after Allowance | PA | | 12 | 2 |
| Verified and Acknowledged　/ERNST V ARNOLD/　Examiner's Signature | EA　Initials | | | | |

**ADDRESS**

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501
UNITED STATES

**TITLE**
FORMULATIONS OF BENDAMUSTINE

| FILING FEE RECEIVED 0.00 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |

BIB (Rev. 05/07).

EAGLEBEN-SA_00353970

❑ Credit

BIB (Rev. 05/07).

EAGLEBEN-SA_00353971

Receipt date: 05/15/2024                                                                 18/646,171 - GAU: 1613

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( **Not for submission under 37 CFR 1.99)**

| | |
|---|---|
| Application Number | 18646171 |
| Filing Date | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 107071.001394 |

## U.S. PATENTS    `Remove`

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. `Add`

## U.S. PATENT APPLICATION PUBLICATIONS    `Remove`

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. `Add`

## FOREIGN PATENT DOCUMENTS    `Remove`

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button `Add`

## NON-PATENT LITERATURE DOCUMENTS    `Remove`

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353972

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 1 | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC—Civil Action No. 1:18-cv-01953: Reply Brief in Further Support of Slayback Pharma Limited Liability Company's Motion for Judgment on the Pleadings (Document 27), public verison dated Mar. 1, 2019. | ☐ |
| | 2 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc - Civil Action No. 1:18-cv-01074: Exhibit Index-Includes Confidential Information (Document 21), public version dated 09/07/18. | ☐ |
| | 3 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc- Civil Action No. 1:18-cv-01074: Complaint (Document 1), dated 07/19/18. | ☐ |
| | 4 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc- Civil Action No. 1:18-cv-01074: Hospira's Reply Brief in Support of its Motion to Dismiss Plaintiffs' Complaint (Document 29), public version dated 11/26/18. | ☐ |
| | 5 | Eagle Pharmaceuticals, Inc., et al. v. Hospira, Inc- Civil Action No. 1:18-cv-01074: Plaintiffs' Opposition to Motion to Dismiss (Document 26), redacted-public version dated 11/02/18. | ☐ |
| | 6 | EC Safety Data Sheet: Ribomustin(Registered) 2007 | ☐ |
| | 7 | Eric Watson, et al., Kinetics of Phosphoramide Mustard . . . , Journal of Pharmaceutical Sciences, vol. 74, No. 12, pp. 1283-1292, 1985. | ☐ |
| | 8 | FLAMBERG et al., "Low Temperature Vacuum Drying of Sterile Parenterals From Ethanol", Bulletin of the Parenteral Drug Association, 1970, Vol. 24, No. 5, pp. 209-217 | ☐ |
| | 9 | FLOSS et al., "Intravenous fluids principles of treatment", Clinical Pharmacist, 2011, Vol. 3, pp. 274-283 | ☐ |
| | 10 | FRIEDBERG et al., "Bendamustine in Patients with Rituximab-Refractory Indolent and Transformed Non-Hodgkin's Lymphoma: Results from a Phase II Multicenter, Single-Agent Study", J. Clin. Oncol., 2008, Vol. 26, No. 2, pp. 204-210 | ☐ |
| | 11 | FRIEDMAN et al., "Colorimetric Estimation of Nitrogen Mustards in Aqueous Media. Hydrolytic Behavior of Bis-(ß-chloroethyl)amine, nor HN2", Analytical Chemistry, 1961, Vol. 33, No. 7, pp. 906-910 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353973

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | 12 | Fujisawa Deutschland GmbH Ribomustin(Registered) Products and Technical Specifications, 2002 | ☐ |
|---|---|---|---|
| | 13 | Furst et al., "About the Hydrolytic Decomposition of IMET 3393," Pharmazeutische Zentralhalle, 1969, Vol. 108, Issue 9, pp. 608-614 (English translation and the original article) | ☐ |
| | 14 | Galacid Excel 88 fact sheet (lactic acid 88%), 2012 | ☐ |
| | 15 | GAMCSIK et al., "NMR Studies of the Conjugation", J. Med. Chem., 1990, Vol. 33, pp. 1009-1014 | ☐ |
| | 16 | GANDHI et al., "Bendamustine in B cell malignancies: the new, 46-year old kid on the block", Clin Cancer Res., 2009, Vol. 15, No. 24, pp. 7456-7461 | ☐ |
| | 17 | GATLIN et al., "Injectable Drug Development", 17. Formulation and Administration Products, pp. 401-420 | ☐ |
| | 18 | GIBSON et al., "Pharmaceutical Preformulation And Formulation: A practical guide from candidate drug selection to commercial dosage form", Informa Healthcare USA, 2009, Vol. 199, 2nd ed, pp. 1-559. | ☐ |
| | 19 | GLIMELIUS et al., "Bolus-Injection (2-4 min) Versus Short-term (10-20 min) Infusion of 5-Fluorouracil in Patients with Advanced Colorectal Cancer: a Prospective Randomised Trial", Eur J. Cancer, 1998, Vol. 34, pp. 674-678 | ☐ |
| | 20 | Graham Solomons, Organic Chemistry, John Wiley & Sons, 3d ed. 1984 | ☐ |
| | 21 | GUPTA et al., "Injectable Drug Development Techniques to Reduce Pain and Irritation", Informa Healthcare, 2008, pp. 183 | ☐ |
| | 22 | GUST et al., "Investigations on the Stability of Bendamustin, a Cytostatic Agent of the Nitrogen Mustard Type I", Synthesis, Isolation, and Characterization of Reference Substances, in Monatshefte fur Chemie, 1997, Vol. 128, pp. 291-299 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353974

Receipt date: 05/15/2024                                                    18/646,171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 23 | Handbook of Pharmaceutical Excipients, Seventh edition 2012, Pharmaceutical Press. | ☐ |
| | 24 | Handbook of Pharmaceutical Excipients, Sixth edition, 2009; Rowe; page 857 (extract from index). | ☐ |
| | 25 | HEIDER et al., "Efficacy and Toxicity of Bendamustine in Patients with Relapsed Low-Grade non-Hodgkin's Lymphomas", Anticancer Drugs, 2001, Vol. 12, pp. 725-729 | ☐ |
| | 26 | HFSA 2010 Comprehensive Heart Failure Practice Guideline, Journal of Cardiac Failure, 2010, Vol. 16 No. 6, | ☐ |
| | 27 | HSU et al., "Reactions of N-Ethyl- (HN-1), N-Methyl-Bis(2-Chloroethyl)amine (HN-2), and Tris(2-Chloroethyl)amine (HN-3) with Peroxides, 2002, pp. 1-15 | ☐ |
| | 28 | ICH Harmonised Tripartite Guideline, Stability testing of New Drug Substances and Products Q1A(R2), dated February 6, 2003 | ☐ |
| | 29 | Interlocutory decision in Opposition proceedings of EP 2528602 issued April 8, 2019. | ☐ |
| | 30 | International Conference on Harmonisation in Guideline on Impurities in New Drug Products: Availability, 1997, 62 Fed. Reg. 27, pp. 454-27, Page 461 | ☐ |
| | 31 | International Search Report and Written Opinion for No. PCT/US2013/032289 dated Jun. 2013. | ☐ |
| | 32 | International Search Report and Written Opinion issued in counterpart PCT/US2013/032295 dated Jun. 2013 (4 pages). | ☐ |
| | 33 | International Search Report and Written Opinion issued in counterpart PCT/US2013/26187. | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353975

| | | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|---|---|
| | | | Filing Date | 2024-04-25 |
| | | | First Named Inventor | Nagesh R. Palepu |
| | | | Art Unit | |
| | | | Examiner Name | |
| | | | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 34 | International Search Report and Written Opinion of International application based on PCT/US2011/022958, dated Apr. 2011 (8 pages). | ☐ |
| | 35 | International Search Report of International Appln. No. PCT/US2013/032289 mailing date Jun. 6, 2013. | ☐ |
| | 36 | International Search Report PCT/US2011/022958 dated Apr. 12, 2011. | ☐ |
| | 37 | JENNINGS, "Lyophilization, Introduction and Basic Principles", 2006, original copyright 1999 | ☐ |
| | 38 | JERRY, Advanced Organic Chemistry, 4th ed., John Wiley & Sons, Inc. 1992 | ☐ |
| | 39 | JONES, "Applications of Hydrogen Peroxide and Derivatives", Royal Society of Chemistry, 1999, 1 page | ☐ |
| | 40 | JONKMAN-DE VRIES et al., "Pharmaceutical Development of (Investigational) Anticancer Agents for Parental Use-A Review", Drug Dev Ind Pharm. 1996, Vol. 22, No. 6, pp. 475-494 | ☐ |
| | 41 | KALAYCIO, "Clinical Experience With Bendamustine: A New Treatment for Patients With Chronic Lymphocytic Leukemia", Clin Leukemia., 2008, Vol. 2, No. 4, pp. 223-229 | ☐ |
| | 42 | KENNETH et al., "Remington, Parenteral Preparations", Chapter 41, 2000, pp. 780-786 | ☐ |
| | 43 | KNAUF et al., "Bendamustine Versus Chlorambucil in Treatment-Naive Patients with B-Cell Chronic Lymphocytic Leukemia (B-CLL): Results of an International Phase III Study", Blood, 2007, Vol. 110, No. 11, 609a | ☐ |
| | 44 | KOOMANS et al., "Sodium Balance in Renal Failure: A Comparison of Patients with Normal Subjects Under Extremes of Sodium Intake", Hypertension, 1985, Vol. 7, pp. 714-721 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353976

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket  Number | 107071.001394 | |

| 45 | KUMAR et al., AAPS Pharm Sci Tech., 2006, Vol. 7, No. 3, pp. E1-E7 | ☐ |
|---|---|---|
| 46 | LEONARD et al., A New Synthesis of Aziridinium Salts. 2,2-Pentamethylene-1,1-tetramethyleneaziridinium Perchlorate A Prototype", J. AM. CHEMISTRY SOC'Y, 1960, Vol. 82, pp. 6418-6419 | ☐ |
| 47 | LEONI et al., "SDX-105 (Bendamustine), a Clinically Active Antineoplastic Agent Possesses a Unique Mechanism of Action", Blood, 2003, Vol. 102, No. 11, Abstract #2363 | ☐ |
| 48 | LIAN-FENG et al., "Water-Insoluble Drug Formulation", Second Edition, Ch. 7. Formulation Strategies and Practice. Support, pp. 113-132 | ☐ |
| 49 | LISSITCHKOV et al., Phase-I/II study to Evaluate Dose Limiting Toxicity, Maximum Tolerated Dose, and Tolerability of Bendamustine HCl in Pre-treated Patients With B-Chronic Lymphocytic Leukaemia (Binet stages B and C) Requiring Therapy, J. Cancer Res. Clin. Oncol. 2006, Vol. 132, pp. 99-104 | ☐ |
| 50 | Liu (ed). Water-Insoluble Drug Formulation, 1st ed., CRC Press, Chapters 7 and 9, 2000. | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button [ Add ]

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | /ERNST V ARNOLD/ | Date Considered | 07/02/2024 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353977

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT<br>( **Not for submission under 37 CFR 1.99**) | Application Number | 18646171 |
| --- | --- | --- |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

 A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
| --- | --- | --- | --- |
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353978

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.     The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.     A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.     A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.     A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.     A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.     A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.     A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.     A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.     A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353979

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 18646171 |
| Filing Date | | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket  Number | | 107071.001394 |

### U.S.PATENTS   Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.   Add

### U.S.PATENT APPLICATION PUBLICATIONS   Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   Add

### FOREIGN PATENT DOCUMENTS   Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button   Add

### NON-PATENT LITERATURE DOCUMENTS   Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353980

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 | |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | |
|---|---|---|
| 1 | Liu (ed). Water-Insoluble Drug Formulation, 2nd ed., CRC Press, Chapters 7 and 9, 2000. | ☐ |
| 2 | LYONDELL Tebol (Registered) 99, Tertiary Butyl Alcohol in Freeze-Drying Applications,(Lyondell Chemical Co., 2003 | ☐ |
| 3 | Maas B: "Stabilitaet von Bendamustinhydrochlorid in Infusionsloesungen" Die Pharmazie, Govi Verlag Pharmazeutischer Verlag Gmbh, Eschborn, DE, vol. 49, No. 10, Jan. 1, 1994. | ☐ |
| 4 | Maas et al., "Stabilitat von Bendamustinhydrochlorid in Infusionslosungen," Die Pharmazie, Govi Verlag Pharmazeutischer Verlag Gmbh, vol. 49. No. 10 pp. 775-777 (1994). (Abstract Only). | ☐ |
| 5 | MAAS, "Stabilitat von Bendamustinhydrochlorid in Infusionslosungen", Die Pharmazie, Govi Verlag Pharmazeutischer Verlag Gmbh, Eschborn, DE, 1994, Vol. 49, No. 10, pp. 775-777 | ☐ |
| 6 | MARGOLIN et al., "Shortening the Infusion Time of Anticancer Drugs: Who Will Benefit?", J. of Clinical Oncology, 2007, Vol. 25 No. 19, pp. 2642-2643 | ☐ |
| 7 | MCGINITY et al., "Influence of Peroxide Impurities in Polyethylene Glycols", Journal of Pharmaceutical Sciences, 1975, Vol. 64, No. 2, pp. 356-357 | ☐ |
| 8 | MIKHAL'CHUK et al., "Antioxidative Stabilization of Polyethylene...", Russian Journal of Applied Chemistry, 2004, Vol. 77, No. 1, pp. 131-135 | ☐ |
| 9 | National Kidney Foundation, "Clinical Practice Guidelines and Clinical Practice Recommendations" http://kidneyfoundation.cachefly.net/professionals/KDOQI/guideline_upHD_PD_VA/hd_guide5.htm, 2006 | ☐ |
| 10 | NEMA et al., "Excipients and Their Use in Injectable Products", PDA J. Pharma. Sci. & Tech., 1997, Vol. 51, No. 4, pp. 166-171 | ☐ |
| 11 | NEMA et al., "Excipients and Their Use in Injectable Products", PDA Journal of Pharmaceutical Science & Technology, May 16, 1997 | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353981

| | INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) |  |
|---|---|---|

| Application Number | 18646171 |
|---|---|
| Filing Date | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu |
| Art Unit | |
| Examiner Name | |
| Attorney Docket  Number | 107071.001394 |

| 12 | NI et al., "Stabilization and Preformulation of Anticancer Drug-SarCNU", Int'1 J. of Pharma., 2002, Vol. 249, No. 257-264 | ☐ |
|---|---|---|
| 13 | NI et al., "Use of pure t-butanol as a solvent for freeze-drying: a case study", International Journal of Pharmaceutics, 2001, Vol. 226, pp. 39-46 | ☐ |
| 14 | Ni et al., Use of Pure t-Butanol as a Solvent for Freeze-Drying: A Case Study, Int'1. J. of Pharma., 226:39-46 (2001) | ☐ |
| 15 | NUIJEN et al., "Pharmaceutical Development of a Parenteral Lyophilized Formulation of the Novel Antitumor Agent Aplidine", PDA J. Pharmaceut. Sci. and Technol., 2000, Vol. 54, No. 3, pp. 193-208 | ☐ |
| 16 | O'CONNOR, "Hydrolysis and Alkylating Reactivity of Aromatic Nitrogen Mustards", J.Chem. Soc. Perkin Trans., 1991, Vol. 2, pp. 1933-1939 | ☐ |
| 17 | OLSON, "Volatile Solvents for Drying and Microbial Kill in the Final Container", Pharmaceutical Engineering, 1997, pp. 110-118 | ☐ |
| 18 | OLTHOFF et al., "OlthofT, DD 159289, cited in IDS filed 01/24/2014, | ☐ |
| 19 | OZEGOWSKI et al., "IMET 3393, ?-[1-Methyl-5-bis-(Beta-chloroethyl)-amino-benzimidazolyl-(2)]-butyric acid hydrochloride, a new cytostatic agent from the benzimidazole mustard gas series", 110 Zbl Pharm. 1971, Vol. 110, pp. 1013-1019 | ☐ |
| 20 | PCT Notification of Transmittal of International Search Report and Written Opinion for PCT/US2013/032295. | ☐ |
| 21 | PCT Written Opinion of International Search Authority for PCT/US2013/032295. | ☐ |
| 22 | PETHRICK et al., "Excerpt from Polymer Yearbook 13, CRC Press, 01 Oct 1996, Technology & Engineering Vinogradova et al. | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353982

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | |
|---|---|---|
| 23 | POKORNY et al., "Antioxidants in Food: Practical Applications", CRC Press, 2001, page 324 | ☐ |
| 24 | Poulsen, Introduction to Chemistry (2010) | ☐ |
| 25 | Pramod K. Gupta Injectable Drug Development Techniques to Reduce pain and irritation. | ☐ |
| 26 | PREISS et al., "Pharmacological and clinical date of Bendamustine," 17th International Cancer Congress, 1998, pp. 1637-1640 | ☐ |
| 27 | PREISS et al., "Studies on the Pharmacokinetics of Bendamustine (Cytostasan®) in Humans", Pharmazie, 1985, Vol. 40, No. 11, pp. 782-784 | ☐ |
| 28 | PRICE, Handbook of Pharm. Excipients, 5th Edition, "Polyethylene Glycol", August 2005, pp. 545-550 | ☐ |
| 29 | QIN et al., "Oxidative degradation of oligo(ethylene glycol)-terminated monolayers", Chem. Commun. 2009, pp. 5112-5114 | ☐ |
| 30 | RASSACHAERT et al., "A phase 1 study of bendamustine hydrochloride administered once every 3 weeks in patients with solid tumors," Anti-Cancer Drugs, 2007, Vol. 18 No. 5, pp. 587-595 | ☐ |
| 31 | Ready-to-Use [online] retrieved on 5/27/21 from: https://medical-dictionary.thefreedictionary.com/ready-to-use; 2021, 1 page | ☐ |
| 32 | Remington's Pharmaceutical Sciences, 18th edition, (1990), page 1322. | ☐ |
| 33 | Remington's Pharmaceutical Sciences, 18th edition, (1990), pp. 1286-1288. | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353983

Receipt date: 05/15/2024                                                                18/646,171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| | 34 | Remington's Pharmaceutical Sciences 1990 (Eighteenth Edition), Mack Publishing Company, Chapter 85, pp. 1570-1580 | ☐ |
| | 35 | Ribomustin Monograph (Updated August 2005) | ☐ |
| | 36 | Ribomustin Monograph (Updated January 2002) | ☐ |
| | 37 | Ribomustin Product Information, Janssen-Cilag Pty Ltd (Updated September 15, 2016) | ☐ |
| | 38 | ROBERTS et al., Basic Principles Of Organic Chemistry, W. A. Benjamin, Inc., 2d ed. 1977, pp. 612-618 | ☐ |
| | 39 | Rote Liste 1996 for Ribomustin (86 023) | ☐ |
| | 40 | Rote Liste 2003 for Ribomustin (86 045) | ☐ |
| | 41 | ROWE et al. Handbook of Pharmaceutical Excipients, 6th edition, 2009, pp. 454-455 | ☐ |
| | 42 | ROWE et al., "Handbook of Pharmaceutical Excipients," Pharmaceutical Press, 6th edition pp. 857 (extract from index) (2009). | ☐ |
| | 43 | ROWE et al., Handbook of Pharmaceutical Excipients, 5th ed., Pharmaceutical Press, pp. 545-550, Polyethylene Glycol, 2006. | ☐ |
| | 44 | Safety Data Sheet, Lactic Acid, 88%, Colu{acute over (m)}bus Chemical Industries, 2013. | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353984

Receipt date: 05/15/2024 18/646171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | 45 | Safety Data Sheet, Lactic Acid, 88%, Columbus Chemical Industries, 2013 | ☐ |
|---|---|---|---|
| | 46 | SANTACESARIA et al., "Thermal Stability Of Nonionic Polyoxyalkylene Surfactants", Journal of Applied Polymer Science, 1991, Vol. 42, pp. 2053-2061 | ☐ |
| | 47 | SCASNAR et al., "Radiochemical Assay of Stability of 14C-Cytostasan Solutions During Preparation and Storage", Journal of Radioanalytical and Nuclear Chemistry, Articles, 1988, Vol. 121, No. 2, pp. 489-497 | ☐ |
| | 48 | SCHOFFSKI et al., "Weekly Administration of Bendamustine: A phase 1 study in patients with advanced progressive solid tumors", Annals of Oncology II, 2000, pp. 729-734 | ☐ |
| | 49 | SCHOFFSKI et al., "Repeated administration of short infusions of bendamustine: a phase 1 study in patients with advanced progressive solid tumours", J. Cancer Res Clin Oncol, 2000, Vol. 126 No. 1 pp. 41-47 | ☐ |
| | 50 | SCHWANEN et al., "In vitro evaluation of bendamustine induced apoptosis in B-chronic lymphocytic leukemia", Leukemia, 2002, Vol. 16, pp. 2096-2105 | ☐ |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

| EXAMINER SIGNATURE | | | |
|---|---|---|---|
| Examiner Signature | /ERNST V ARNOLD/ | Date Considered | 07/02/2024 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353985

Receipt date: 05/15/2024                                                    18/646,171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353986

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353987

DAV - 18/646,171 - FORMULATIONS OF BENDAMUSTINE

Application: 18/646,171 (07/01/2024)
Total: 16 nodes
Filter: No Filters



EAGLEBEN-SA_00353988

DAV - 18/646,171 - FORMULATIONS OF BENDAMUSTINE



EAGLEBEN-SA_00353989

Receipt date: 05/15/2024                                                    18/646,171 - GAU: 1613

Doc code: IDS

Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
## ( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 18646171 |
| Filing Date | 2024-04-25 |
| First Named Inventor | Nagesh R. Palepu |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 107071.001394 |

## U.S. PATENTS [Remove]

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. [Add]

## U.S. PATENT APPLICATION PUBLICATIONS [Remove]

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. [Add]

## FOREIGN PATENT DOCUMENTS [Remove]

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button [Add]

## NON-PATENT LITERATURE DOCUMENTS [Remove]

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353990

Receipt date: 05/15/2024    18/646,171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18865 | 18646171 |
| --- | --- | --- | --- |
| | Filing Date | 2024-04-25 | |
| | First Named Inventor | Nagesh R. Palepu | |
| | Art Unit | | |
| | Examiner Name | | |
| | Attorney Docket Number | 107071.001394 | |

| | | | |
| --- | --- | --- | --- |
| | 1 | U.S. Appl. filed Dec. 5, 2013., 14/097,904 | ☐ |
| | 2 | U.S. Appl. filed Dec. 5, 2013., 14/098,094 | ☐ |
| | 3 | U.S. Appl. filed Feb. 14, 2013., 13/767,672 | ☐ |
| | 4 | U.S. Appl. filed Nov. 26, 2014., 14/554,269 | ☐ |
| | 5 | U.S. Appl. filed Oct. 23, 2014., 14/522,581 | ☐ |
| | 6 | U.S. Appl. filed Sep. 19, 2013., 14/031,879 | ☐ |
| | 7 | U.S. Pharmacopeia 32-NF-27-General Notices and Requirements, 2009 | ☐ |
| | 8 | US Application no. 10/010,533, 12/07/2001 | ☐ |
| | 9 | US Application no. 10/052,385, 01/18/2002 | ☐ |
| | 10 | US Application no. 16/015,656 filed on 06/22/2018 | ☐ |
| | 11 | USP 24/NF 19 (2000) entry for Propylene Glycol (USP) | ☐ |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353991

<table>
<tr><td rowspan="6">INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT<br>( Not for submission under 37 CFR 1.99)</td><td>Application Number</td><td>18646171</td></tr>
</table>

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 107071.001394 |

| | | | |
|---|---|---|---|
| 12 | VINOGRADOVA et al., "New Metal Chelates as Antioxidant Stabilizers for Polymers...", Polymer Yearbook 13, pp. 87-111, 1996 | | ☐ |
| 13 | VLOK, Manual of Nursing, 1988m Vol. 1, 9th edition | | ☐ |
| 14 | WASYLASCHUK et al., Journal Of Pharmaceutical Sciences, 2007, Vol. 96, No. 1, pp. 106-116 | | ☐ |
| 15 | WATERMAN et al., "Stabilization of Pharmaceuticals to Oxidative Degradation", Pharmaceutical Development and Technology, 2002, Vol. 7, No. 1, pp. 1-32 | | ☐ |
| 16 | WATSON et al., "Kinetics of phosphoramide mustard hydrolysis in aqueous solution", Journal of Pharmaceutical Sciences, 1985, Vol. 74, Issue 12, pp. 1283-1292 | | ☐ |
| 17 | WEIDE et al., "Bendamustine Mitoxantrome and Rituximab (BMR): A New Effective Regimen for Refractory or Relapsed Indolent Lymphomas", Leukemia & Lymphoma, 2002, Vol. 43, No. 2, pp. 327-331 | | ☐ |
| 18 | WERNER et al., Hydrolysis Products of Cancerostatic Cytostasan(Registered) (Bendamustine), 42 (4) DIE PHARMAZIE, GOVI VERLAG PHARMAZEUTISCHER VERLAG GMBH, ESCHBORN, DE, 272-73 | | ☐ |
| 19 | WITTAYA-AREEKUL et al., "Freeze-Drying of tert-Butyl Alcohol/Water Cosolvent Systems: Effects of Formulation and Process Variables on Residual Solvents", Journal of Pharmaceutical Sciences, 1998, Vol. 87, No. 4, pp. 491-495 | | ☐ |
| 20 | Written Opinion issued in counterpart PCT/US2013/032289 dated June 6,2013. | | ☐ |
| 21 | Written Opinion issued in counterpart PCT/US2013/032295 dated June 3,2013. | | ☐ |
| 22 | Written Opinion of the International Searching Authority re: International Appln. No. PCT/US2013/032289 mailing date Jun. 6, 2013. | | ☐ |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353992

Receipt date: 05/15/2024    18/646,171 - GAU: 1613

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
|---|---|---|
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

| | 23 | ZIMMERMAN et al., Elements of Organic Chemistry, 1977 | ☐ |
|---|---|---|---|
| | 24 | ZIPS et al., "New Anticancer Agents: In Vitro and In Vivo Evaluation," In Vivo, 2005, Vol. 19, pp. 1-8 | ☐ |
| | 25 | ZUMDAHL et al., Chemistry, 7th Ed., 2007 | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button `Add`

**EXAMINER SIGNATURE**

| Examiner Signature | /ERNST V ARNOLD/ | Date Considered | 07/02/2024 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353993

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 18646171 |
| | Filing Date | 2024-04-25 |
| | First Named Inventor | Nagesh R. Palepu |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 107071.001394 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Scott R. Conley/ | Date (YYYY-MM-DD) | 2024-05-15 |
| Name/Print | Scott R. Conley | Registration Number | 57289 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353994

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /E.V.A/

EAGLEBEN-SA_00353995

## PE2E SEARCH - Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|-------|------|--------------|-----|------------------|---------|---------------------|------------|
| L1 | 22488 | (bendamustine AND (antioxidant OR monothioglycerol OR thioglycerol)) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 07:41 AM |
| L2 | 1878 | L1 AND @ad<"20100128" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 07:41 AM |
| L3 | 2 | L2 AND (bendamustine.clm. AND (monothioglycerol OR thioglycerol)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 07:42 AM |
| L4 | 21 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, | OR | ON | ON | 2024/07/02 07:59 AM |

EAGLEBEN-SA_00353996

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | thioglycerol)).clm. | HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | | | | |
| L5 | 19 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 08:00 AM |
| L6 | 122 | (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 08:01 AM |
| L7 | 0 | L6 AND @ad<"20100128" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 08:02 AM |
| L8 | 10 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. AND (sterile WITH container) | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 08:49 AM |
| L9 | 0 | L6 AND @ad<"20110128" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, | OR | ON | ON | 2024/07/02 08:53 AM |

EAGLEBEN-SA_00353997

| | | | AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | | | | |
|---|---|---|---|---|---|---|---|
| L10 | 12 | ((bendamustine AND antioxidant).clm. AND @ad<"20100128") | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 08:53 AM |
| L11 | 201 | ((bendamustine AND ((polyalkylene ADJ glycol) OR (polyethylene ADJ glycol) OR PEG)).clm. AND @ad<"20100128") | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 09:02 AM |
| L12 | 38 | L11 AND (antioxidant OR thioglycerol OR monothioglycerol OR thioglycolate) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, | OR | ON | ON | 2024/07/02 09:02 AM |

EAGLEBEN-SA_00353998

| | | | WO); FPRS; EPO; JPO; DERWENT) | | | | |
|---|---|---|---|---|---|---|---|
| L13 | 291 | ((bendamustine SAME ((polyalkylene ADJ glycol) OR (polyethylene ADJ glycol) OR PEG)) AND @ad<"20100128") | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 09:09 AM |
| L14 | 24 | ((bendamustine SAME ((polyalkylene ADJ glycol) OR (polyethylene ADJ glycol) OR PEG) SAME table) AND @ad<"20100128") | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 09:09 AM |
| L15 | 5 | "8609707".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 09:32 AM |
| L16 | 2 | "7772274".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, | OR | ON | ON | 2024/07/02 09:33 AM |

EAGLEBEN-SA_00353999

| | | | NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | | | | |
|---|---|---|---|---|---|---|---|
| L17 | 10 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. AND (sterile WITH container) AND (HPLC WITH "223") | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 10:23 AM |
| L18 | 140 | (monothioglycerol OR thioglycerol OR thioglycerin OR thiovanol OR (glycerol WITH thiol) OR (mercapto WITH propanediole)).clm. AND ((alkylating ADJ agent) OR (nitrogen ADJ mustard) OR bendamustine) | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 12:00 PM |
| L19 | 2 | (((((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (sterile WITH (vial OR container))).clm.) | (USPAT) | OR | ON | ON | 2024/07/02 05:10 PM |
| L20 | 0 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. AND (bendamustine AND (sterile WITH (vial OR container))).clm.) | (USPAT) | OR | ON | ON | 2024/07/02 05:11 PM |
| L21 | 0 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. AND ((sterile WITH (vial OR container))).clm.) | (USPAT) | OR | ON | ON | 2024/07/02 05:11 PM |
| L22 | 0 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. AND ((sterile WITH (vial OR container))).clm.) | (US-PGPUB; USPAT) | OR | ON | ON | 2024/07/02 05:11 PM |

## PE2E SEARCH - Search History (Interference)

There are no Interference searches to show.

EAGLEBEN-SA_00354000



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | | 1820 | 107071.001394 | 12 | 2 |

**CONFIRMATION NO. 3701**

23377
BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

**FILING RECEIPT**

*OC00000000073182953*

Date Mailed: 05/30/2024

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

Nagesh R. Palepu, Southampton, PA;
Philip Christopher Buxton, Denham, UNITED KINGDOM;

**Applicant(s)**

Eagle Pharmaceuticals, Inc., Woodcliff Lake, NJ;

**Power of Attorney:** The patent practitioners associated with Customer Number 23377

**Domestic Priority data as claimed by applicant**

This application is a CON of 18/498,259 10/31/2023
    which is a CON of 17/412,623 08/26/2021 ABN
    which is a CON of 16/509,920 07/12/2019 PAT 11,103,483
    which is a CON of 16/015,656 06/22/2018 ABN
    which is a CON of 15/432,335 02/14/2017 PAT 10,010,533
    which is a CON of 15/013,436 02/02/2016 PAT 9,572,797
    which is a CON of 14/031,879 09/19/2013 PAT 9,265,831
    which is a CON of 13/016,473 01/28/2011 PAT 8,609,707
    which claims benefit of 61/299,100 01/28/2010

Foreign Applications for which priority is claimed  (You may be eligible to benefit from the Patent Prosecution Highway program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.

EAGLEBEN-SA_00354001

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 05/28/2024
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 18/646,171**
**Projected Publication Date:** 09/05/2024
**Non-Publication Request:** No
**Early Publication Request:** No
**Title**

                  FORMULATIONS OF BENDAMUSTINE

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative,

EAGLEBEN-SA_00354002

this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop

EAGLEBEN-SA_00354003

technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call
+1-202-482-6800.

EAGLEBEN-SA_00354004

TO:      eofficemonitor@bakerlaw.com
FROM:   noreply@uspto.gov
CC:      patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - Correspondence Notification for Customer Number 23377

Tue Jul 09 05:01:27 EDT 2024


Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new outgoing correspondence. This correspondence is now available for viewing in Patent Center.

The official date of notification of the outgoing correspondence will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 18646171 | CTNF | 07/09/2024 | 107071.001394 |
| 18646171 | 892 | 07/09/2024 | 107071.001394 |
| 18646171 | 1449 | 07/09/2024 | 107071.001394 |
| 18646171 | 1449 | 07/09/2024 | 107071.001394 |
| 18646171 | 1449 | 07/09/2024 | 107071.001394 |
| 18646171 | 1449 | 07/09/2024 | 107071.001394 |
| 18646171 | 1449 | 07/09/2024 | 107071.001394 |

To view your correspondence online, please sign in to Patent Center and then select Workbench/View correspondence. To update your email address(es), select Manage/Manage customer numbers.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00354005



# United States Patent and Trademark Office

*Office of the Commissioner for Patents*

*Dear Applicant,*

*You recently received an Office action from your examiner. Review of your patent application is under way! You can continue to advertise or mark any products covered by your application for your invention as "Patent Pending" for as long as this application is pending. This letter provides information about how to continue through the patent application process and the help available to you on your journey.*

**Where are you in the patent application process?** Your patent application is now in step 3, Application Prosecution (www.uspto.gov/UtilityPatentGuide.) Though the Office action includes a "rejection," that does not mean that you don't have a good idea you can patent. It means your examiner believes your application is not yet ready for allowance.

**Ready to respond?** Responding to the Office action is your opportunity to address the issues raised by your examiner. Responses must be timely, complete, and in writing. In your response, you may want to consider amending your application (www.uspto.gov/patents/maintain/responding-office-actions).

**We provide Pro Se Assistance,** support specifically geared for independent inventors without an agent or attorney. Visit www.uspto.gov/ProSePatents for a consolidated list of resources, including a sample amendment format. Full description of amendment formatting can be found at www.uspto.gov/web/offices/pac/mpep/s714.html. Call us at 866-767-3848, or email proseassistancecenter@uspto.gov.

**Have questions about the Office action?** Contact your examiner! A conversation with your examiner (called an "interview") may help clarify and resolve any issues and possibly identify what you can patent. While an interview does not stop the clock for your official response or substitute for a response, there is no fee for an interview. To schedule a call or video, you can:

1. use the USPTO's Automated Interview Request (AIR) form (www.uspto.gov/patents/uspto-automated-interview-request-air-form);

2. file the Applicant Initiated Interview Request form (PTOL-413A) (www.uspto.gov/sites/default/files/documents/PTOL413A.pdf); or

3. contact your examiner directly via telephone (contact information is provided at the end of your Office action).

**Need help near you?** We have regional offices across the country (www.uspto.gov/locations), as well as Patent and Trademark Resource Centers in libraries in nearly every state (www.uspto.gov/ptrc), with specialists standing by to help you at no cost.

**Become a *registered electronic filer* (registered eFiler).** As a registered eFiler, you can electronically view your submission, track progress of your application, and respond to USPTO correspondence. (www.uspto.gov/NewPatentFilers)

**Contact us**

- General information: USPTO Contact Center — 800-786-9199 • TTY/TDD 800-877-8339 • www.uspto.gov/help

- Patent Center: Patent Electronic Business Center www.uspto.gov/EBC

- Inventors Assistance Center www.uspto.gov/inventorassistance

**Want to learn more?**

- Hear about resources for startups, inventors, and entrepreneurs, as well as our initiatives engaging women, the military community, and others. These programs offer helpful tips and tricks on identifying and managing your IP, finding options for funding, and expanding your network to support your business.

    - www.uspto.gov/startups

    - www.uspto.gov/inventors

    - www.uspto.gov/initiatives

- Access our free services all in one spot. Find all of our contact centers, nationwide services, events, education and training. (www.uspto.gov/FreeServices)

- Connect with us on Instagram, LinkedIn, Twitter, Facebook, and YouTube.

- Hear about the great things we are doing by subscribing at www.uspto.gov/subscribe.

Best,

**Vaishali Udupa**
**Commissioner for Patents**
**United States Patent and Trademark Office**

EAGLEBEN-SA_00354006

TO:    eofficemonitor@bakerlaw.com
FROM:  noreply@uspto.gov
CC:    patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - Correspondence Notification for Customer Number 23377

Tue Jul 16 05:01:47 EDT 2024

Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new outgoing correspondence. This correspondence is now available for viewing in Patent Center.

The official date of notification of the outgoing correspondence will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 18646171 | WELCOME.LET2 | 07/15/2024 | 107071.001394 |

To view your correspondence online, please sign in to Patent Center and then select Workbench/View correspondence. To update your email address(es), select Manage/Manage customer numbers.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00354007

**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION #<br>18/646,171 | RECEIPT DATE / TIME<br>07/19/2024 01:11:41 PM Z ET | ATTORNEY DOCKET #<br>107071.001394 |
|---|---|---|

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
|---|---|---|---|
| CONFIRMATION # | 3701 | FILED BY | Stephanie Lodise |
| PATENT CENTER # | 66437976 | AUTHORIZED BY | - |
| CUSTOMER # | 23377 | FILING DATE | 04/25/2024 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Nagesh R. Palepu |

## Payment Information

| PAYMENT METHOD<br>DA / 233050 | PAYMENT TRANSACTION ID<br>E202471D11599117 | PAYMENT AUTHORIZED BY<br>Stephanie Lodise |
|---|---|---|

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1814 | STATUTORY DISCLAIMER, INCLUDING TERMINAL DISCLAIMER | 170.00 | 1 | 170.00 |
|  |  |  | TOTAL AMOUNT: | $170.00 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**

EAGLEBEN-SA_00354008

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00354009

Doc Code: DIST.E.File
Description: Electronic Terminal Disclaimer - Filed

PTO/SB/25

 UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PRIOR PATENT

| APPLICATION # | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET # |
|---|---|---|---|
| 18646171 | 04/25/2024 | Nagesh Palepu | 107071.001394 |

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

 Filing of terminal disclaimer does not obviate requirement for response under 37 CFR 1.111 to outstanding Office Action

 This electronic Terminal Disclaimer is not being used for a Joint Research Agreement.

| Owner | Percent Interest |
|---|---|
| Eagle Pharmaceuticals, Inc. | 100% |
| Total | 100% |

The owner(s) of percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending reference Application Number(s)

| Application # | Filing Date |
|---|---|
| 18498259 | 10/31/2023 |
| 18646329 | 04/25/2024 |

as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed

EAGLEBEN-SA_00354010

prior to the grant of any patent on the pending reference application. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the reference application are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term of any patent granted on said reference application, "as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference application," in the event that any such patent granted on the pending reference application: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

---

The owner(s) of percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of prior patent number(s)

| Patent # |
| --- |
| 9265831 |
| 9572797 |
| 9572796 |
| 8609707 |
| 9579384 |
| 9034908 |
| 9597399 |
| 9144568 |
| 9572887 |
| 9597397 |
| 10010533 |
| 11103483 |
| 11872214 |

EAGLEBEN-SA_00354011

as the term of said prior patent is presently shortened by any terminal disclaimer. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the prior patent, "as the term of said prior patent is presently shortened by any terminal disclaimer," in the event that said prior patent later:

* expires for failure to pay a maintenance fee;
* is held unenforceable;
* is found invalid by a court of competent jurisdiction;
* is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
* has all claims canceled by a reexamination certificate;
* is reissued; or
* is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

 Terminal disclaimer fee under 37 CFR 1.20(d) included with Electronic Terminal Disclaimer request.

**Applicant claims the following entity status:**
Regular Undiscounted

I hereby declare that all statements made herein of my own knowledge are true and that all statemnts made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I certify, in accordance with 37 CFR 1.4(d)(4) that I am: An attorney or agent registered to practice before the Patent and Trademark Office who is of record in this application

| Signature | Name | Registration # |
|---|---|---|
| /Stephanie A. Lodise/ | Stephanie  Lodise | 51430 |

* Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner). Form PTO/SB/96 may be used for making this certification. See MPEP 324.

EAGLEBEN-SA_00354012

Doc. code : DISCL.EFILE
Description : Electronic Terminal Disclaimer - Approved

 UNITED STATES
PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# APPROVAL LETTER

**APPLICATION #**
18/646,171

**FILING DATE**
04/25/2024

**APPLICANT/PATENT UNDER REEXAMINATION**
Nagesh Palepu

## Title of Invention
FORMULATIONS OF BENDAMUSTINE

Electronic terminal disclaimer filed on 07/19/2024

 Approved

This patent is subject to a Terminal Disclaimer

Approved / Disapproved by: Electronic Terminal Disclaimer automatically approved

EAGLEBEN-SA_00354013



UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/646,171** | RECEIPT DATE / TIME<br>**07/19/2024 01:11:41 PM Z ET** | ATTORNEY DOCKET #<br>**107071.001394** |
|---|---|---|

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 3701 | FILED BY | Stephanie Lodise |
| PATENT CENTER # | 66437976 | FILING DATE | 04/25/2024 |
| CUSTOMER # | 23377 | FIRST NAMED INVENTOR | Nagesh R. Palepu |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | - |

## Documents                              TOTAL DOCUMENTS: 2

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| petition-request.pdf | 3 | Terminal Disclaimer-Filed (Electronic) | 56 KB |
| grantLetter.pdf | 1 | Terminal Disclaimer-Electronic-Approved | 19 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| petition-request.pdf | 09A82E1DC518C7804AC659DE70A5B8F9360EE82EDEE2EE6C 6D1FCD28C51C22471660AE51E6B26C17ECC6188DE28603254 |

EAGLEBEN-SA_00354014

666A0C7DFA63C81262D999E0CAE066C

grantLetter.pdf

924415D175AEB8F62664379E358BED81457D7A5C1036BEB3C
C9ED95E0791318C01991FE58A170317FA180561831D36384A8
E564E483C590DC571810EA19A542E

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00354015

 UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/646,171 | 07/31/2024 12:10:54 PM Z ET | 107071.001394 |

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 3701 | FILED BY | VeAndra Luckett |
| PATENT CENTER # | 66592769 | AUTHORIZED BY | Stephanie Lodise |
| CUSTOMER # | 23377 | FILING DATE | 04/25/2024 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Nagesh R. Palepu |

## Payment Information

**PAYMENT METHOD**
DA / 233050

**PAYMENT TRANSACTION ID**
E20247UC11488416

**PAYMENT AUTHORIZED BY**
VeAndra Luckett

**PRE-AUTHORIZED ACCOUNT**
233050

**PRE-AUTHORIZED CATEGORY**
37 CFR 1.16 (National application filing, search, and examination fees); 37 CFR 1.17 (Patent application and reexamination processing fees); 37 CFR 1.19 (Document supply fees); 37 CFR 1.20 (Post Issuance fees); 37 CFR 1.21 (Miscellaneous fees and charges)

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1202 | EACH CLAIM IN EXCESS OF 20 | 100.00 | 2 | 200.00 |
| | | | TOTAL AMOUNT: | $200.00 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d)

EAGLEBEN-SA_00354016

and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

## National Stage of an International Application under 35 U.S.C. 371

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

## New International Application Filed with the USPTO as a Receiving Office

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00354017



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/646,171** | RECEIPT DATE / TIME<br>**07/31/2024 12:10:54 PM Z ET** | ATTORNEY DOCKET #<br>**107071.001394** |
|---|---|---|

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 3701 | FILED BY | VeAndra Luckett |
| PATENT CENTER # | 66592769 | FILING DATE | 04/25/2024 |
| CUSTOMER # | 23377 | FIRST NAMED INVENTOR | Nagesh R. Palepu |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Stephanie Lodise |

## Documents                                      TOTAL DOCUMENTS: 3

| DOCUMENT | | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| 107071.001394 BEND01-US-CON12 Response NFOA 7-9-2024 as filed.pdf | | 18 | - | 564 KB |
| 107071.001394 BEND01-US-CON12 Response NFOA 7-9-2024 as filed-A....pdf | (1-1) | 1 | Amendment/Request for Reconsideration-After Non-Final Rejection | 86 KB |
| 107071.001394 BEND01-US-CON12 Response NFOA 7-9-2024 as filed-CLM.pdf | (2-4) | 3 | Claims | 103 KB |
| 107071.001394 BEND01- | (5-18) | 14 | Applicant Arguments/Remarks | 538 KB |

EAGLEBEN-SA_00354018

US-CON12 Response NFOA 7-9-2024 as filed-REM.pdf

Made in an Amendment

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| 107071.001394 BEND01-US-CON12 Response NFOA 7-9-2024 as filed.pdf | AEFE3724228329892E004933FE40F6BA74055AD14B72A63EB2 6F52031D6FFB50524ECB70930B40078D46F1E7BCD6677CDE4 069C260E5E36C3DA49F13A383DDD7 |
| 107071.001394 BEND01-US-CON12 Response NFOA 7-9-2024 as filed-A....pdf | C764387A9C7FAF3DCAADE6B397B018674320470C08B937C1F 210F3E7F4280086B5D3FCBD5CC5A22CD043ADA6DB11C7122 DD2D61E5367C1637C1D9989BC1297FC |
| 107071.001394 BEND01-US-CON12 Response NFOA 7-9-2024 as filed-CLM.pdf | 66C84397EAB79E855C8ED3E6A707D62BBA850BB1C66A01913 7E19443A1DE2C7DDA141FAFFA677831FB9D8E30D6FD9CA0A F8345E16A7105A1E574ED146688BD9A |
| 107071.001394 BEND01-US-CON12 Response NFOA 7-9-2024 as filed-REM.pdf | 052BCEBC68C45D7770BF7611CD3D2861B3B57EC2CCB0F464 C253932B0C16253E62B0F7B820AABF18D3593856BD8495F9D2 562B96462A0EE650E0112BDFE5D27D |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

### New Applications Under 35 U.S.C. 111

If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

### National Stage of an International Application under 35 U.S.C. 371

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

### New International Application Filed with the USPTO as a Receiving Office

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00354019

**DOCKET NO.:** 107071.001394                                                    **PATENT**
**Application No.:** 18/646,171
**Office Action Dated: July 09, 2024**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**In re Application of:**

    **Nagesh R. Palepu et al.**

**Application No.: 18/646,171**

**Filing Date: April 25, 2024**

**For:    FORMULATIONS OF BENDAMUSTINE**

**Confirmation No.: 3701**

**Group Art Unit: 1613**

**Examiner: ERNST V ARNOLD**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Commissioner:

## REPLY PURSUANT TO 37 CFR § 1.111

    In response to the Official Action dated July 09, 2024, reconsideration is respectfully requested in view of the amendments and/or remarks as indicated below:

    **Amendments to the Specification** begin on page of this paper.

    **Amendments to the Abstract** begin on page of this paper.

    **Amendments to the Claims** are reflected in the listing of the claims which begins on page 2 of this paper.

    **Amendments to the Drawings** begin on page of this paper and include an attached replacement sheet.

    **Remarks** begin on page 5 of this paper.

    The Commissioner is hereby authorized to charge any fee deficiency, charge any additional fees, or credit any overpayment of fees, associated with this application in connection with this filing, or any future filing, submitted to the U.S. Patent and Trademark Office during the pendency of this application, to Deposit Account No. 50-2036.

EAGLEBEN-SA_00354020

**DOCKET NO.:** 107071.001394                                                                                    **PATENT**
**Application No.:** 18/646,171
**Office Action Dated: July 09, 2024**

This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1.  (Original) A sterile container containing a liquid bendamustine-containing composition comprising

    bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is about 25 mg/mL;

    a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

    a stabilizing amount of an antioxidant,

    wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C to about 25° C.

2. (Original) The sterile container of claim 1, wherein the antioxidant is monothioglycerol.

3. (Original) The sterile container of claim 1, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

4. (Original) The sterile container of claim 1, wherein the composition is stable for at least about 15 months at 5 °C or for at least about 15 months at 25 °C.

5. (Currently Amended) The sterile container of claim 1, wherein the ~~liquid bendamustine-containing composition comprises ethanol~~ pharmaceutically acceptable fluid consists of polyethylene glycol and one or more of propylene glycol, ethanol, benzyl alcohol, and glycofurol.

6. (Original) The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises about 100 mg of bendamustine, or a pharmaceutically acceptable salt thereof.

Page 2 of 18

EAGLEBEN-SA_00354021

DOCKET NO.: 107071.001394                                                    PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

7. (Original) The sterile container of claim 1, wherein the liquid bendamustine-containing composition comprises about 100 mg of bendamustine.

8. (Original) A liquid bendamustine-containing composition comprising
bendamustine, or a pharmaceutically acceptable salt thereof, and a stabilizing amount of an
    antioxidant, in a pharmaceutically acceptable fluid;
wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally
    one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and
wherein the bendamustine concentration in the pharmaceutically acceptable fluid is about 25
    mg/mL,
wherein the total impurities resulting from the degradation of the bendamustine is less than
    about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after
    at least about 15 months at a temperature of about 5° C to about 25 °C.

9. (Original) The composition of claim 8, wherein the antioxidant is monothioglycerol.

10. (Original) The composition of claim 8, wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL.

11. (Currently Amended) The composition of claim 8, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and one or more of propylene glycol, ethanol, benzyl alcohol, and glycofurolcomprising ethanol.

12.    (Original) The composition of claim 8, wherein the bendamustine concentration in the composition is 25 mg/mL.

13.    (New) The sterile container of claim 5, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol.

Page 3 of 18

EAGLEBEN-SA_00354022

DOCKET NO.: 107071.001394                                                          PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

14.    (New) The sterile container of claim 5, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and propylene glycol.

15.    (New) The sterile container of claim 5, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and ethanol.

16.    (New) The sterile container of claim 5, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and benzyl alcohol.

17.    (New) The sterile container of claim 5, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and glycofurol.

18.    (New) The composition of claim 11, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol.

19.    (New) The composition of claim 11, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and propylene glycol.

20.    (New) The composition of claim 11, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and ethanol.

21.    (New) The composition of claim 11, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and benzyl alcohol.

22.    (New) The composition of claim 11, wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and glycofurol.

EAGLEBEN-SA_00354023

DOCKET NO.: 107071.001394                                                      PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

## REMARKS

Claims 5 and 11 have been amended.  Claims 13-22 are new and are supported by the specification. No new subject matter has been added.

## Claim Rejections – 35 U.S.C. § 112

The Examiner alleges that claim 5 and 11 are indefinite for reciting "comprises." Claims 5 and 11 have been amended to recite that the pharmaceutically acceptable fluid "consists of" polyethylene glycol and one or more of propylene glycol, ethanol, benzyl alcohol, and glycofurol, which should obviate the rejection. Claims 13-17 and 18-22 are new and further limit claims 5 and 11, respectively. No new matter has been added.

## Claim Rejections – 35 U.S.C. § 103

The Examiner alleges that claims 1-12 would have been obvious over Brittain,[1] Riebesehl,[2] Olthoff,[3] and Kumar.[4] At the time of the invention, one of ordinary skill in the art would not have been motivated to make a liquid bendamustine-containing composition incorporating polyethylene glycol (PEG) and an antioxidant, as claimed.  Without the benefit of Applicant's specification, those of ordinary skill in the art would not have produced a composition including bendamustine (or a salt thereof) at a concentration of ~25 mg/mL, along with an antioxidant and any of the recited fluids, nor would they have considered putting such a composition in a sterile container, as claimed. Moreover, the person of ordinary skill in the art would not have predicted that any recited composition would have exhibited the stability presently claimed. Applicant respectfully requests reconsideration and withdrawal of the rejection.

---

[1] U.S. Publication No. 2006/0159713
[2] U.S. Patent No. 6,686,365
[3] DE Publication No. 159289
[4] AAPS PharmSCiTech 2006;7(3):7. Kumar is cited merely for its purported description that "PEG is susceptible to degradation *via* autooxidation." As discussed *infra*, PEG's susceptibility to degradation would have dissuaded the person of ordinary skill in the art from using PEG in a bendamustine formulation. Kumar further evidences the patentability of the inventions.

EAGLEBEN-SA_00354024

### Those of Ordinary Skill in the Art Would Not Have Had Any Reason to Prepare a Bendamustine-Containing Liquid Having a Concentration of About 25 mg/ml

Brittain fails to motivate anyone of skill in the art to prepare a liquid composition having a bendamustine concentration of about 25 mg/mL. Prior to Applicant's invention, Treanda® (lyophilized bendamustine hydrochloride) was commercially available and would have informed those of ordinary skill about administering bendamustine to a human. In view of that information, the skilled person would not have arbitrarily deviated from those Treanda® administration instructions.

The Prescribing Information for Treanda®, which is of record in this application, instructs that lyophilized bendamustine should be reconstituted with water to a concentration of no more than 5 mg/mL, before being added to a 500 mL infusion bag of aqueous dextrose/sodium chloride to achieve further dilution to 0.2 – 0.6 mg/mL for patient administration:

2.3   Reconstitution/Preparation for Intravenous Administration
Aseptically reconstitute each TREANDA vial as follows:
o    25 mg TREANDA vial: Add 5 mL of only Sterile Water for Injection, USP.
o    100 mg TREANDA vial: Add 20 mL of only Sterile Water for Injection, USP.

Shake well to yield a clear, colorless to a pale yellow solution with a bendamustine HCl concentration of 5 mg/mL. The lyophilized powder should completely dissolve in 5 minutes. If particulate matter is observed, the reconstituted product should not be used.

Aseptically withdraw the volume needed for the required dose (based on 5 mg/mL concentration) and immediately transfer to a 500 mL infusion bag of 0.9% Sodium Chloride Injection, USP (normal saline). As an alternative to 0.9% Sodium Chloride Injection, USP (normal saline), a 500

mL infusion bag of 2.5% Dextrose/0.45% Sodium Chloride Injection, USP, may be considered. The resulting final concentration of bendamustine HCl in the infusion bag should be within 0.2 – 0.6 mg/mL. The reconstituted solution must be transferred to the infusion bag within 30 minutes of reconstitution. After transferring, thoroughly mix the contents of the infusion bag. The admixture should be a clear and colorless to slightly yellow solution.

(Treanda at Section 2.3; *see also*, Brittain at paragraph [0100] (stating that Brittain's lyophilized formulations are reconstituted with water and then further diluted with, *e.g.*, saline). Brittain refers to polyethylene glycol as an example of a "liquid carrier or vehicle" for preparing the ultimate dosage form. (Brittain at paragraph [0067]). Brittain does not suggest, however, that the skilled person should deviate from the concentrations specified by Treanda®.

While Treanda® refers to a concentrated solution of bendamustine which is subsequently further diluted for administration, it is clear that Treanda® refers to 5 mg/mL (bendamustine in water), which is much more dilute than presently claimed. Treanda® then instructs that this concentration should be "immediately" transferred to an infusion bag to provide the 0.2-0.6 mg/mL concentration for administration. Without Applicant's disclosure, those skilled in the art

EAGLEBEN-SA_00354025

DOCKET NO.: 107071.001394                                    PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

would have had no reason to prepare more concentrated bendamustine liquids, *e.g.,* about 25
mg/mL. Nor would they have had any expectation that more concentrated liquids would have
had the claimed stability characteristics. The rejection should be withdrawn for at least these
reasons.

That bendamustine could *theoretically* be diluted to a concentration of about 25 mg/mL
also fails to establish a *prima facie* case of obviousness. The obviousness inquiry requires that
the Examiner explain why a person of ordinary skill in the art would have selected ~25 mg/mL
as a suitable bendamustine concentration. Here, the evidence establishes that the skilled person
would have prepared much more dilute bendamustine concentrations.

Brittain does not suggest that the skilled person should deviate from the concentrations
specified by Treanda®. Without the benefit of Applicant's specification, they would have had no
reason to prepare bendamustine at a ~25 mg/ml concentration, as claimed. Applicant respectfully
requests reconsideration and withdrawal of the rejection.

## Those of Ordinary Skill in the Art Would Not Have Included an Antioxidant in Any Liquid Bendamustine Composition

Brittain does not suggest that an antioxidant should be added to a liquid
bendamustine/PEG composition. In fact, those of ordinary skill in the art would not have
expected the addition of an antioxidant to be beneficial to bendamustine's storage stability
because no reference had suggested that bendamustine degraded *via* an oxidative mechanism.[5,6]
Moreover, industry guidance discouraged the use of antioxidants, recommending other methods
for reducing oxidation.

### *Brittain does not teach that an antioxidant should be added to a liquid bendamustine composition*

The Examiner alleges that Brittain teaches lyophilizing bendamustine with an
antioxidant. (Action at 7). Brittain provides no such disclosure. None of Brittain's exemplified
compositions includes an antioxidant. Moreover, the paragraph relied upon by the Examiner
merely states that an antioxidant could be used as a lyophilization excipient only "if desired."

---

[5] *See, e.g.,* Exhibit B, Excerpts from the *Responsive Expert Report of Juergen Siepmann, Ph.D.* ("Siepmann
Report").

[6] *See also,* Exhibit A, pages 25-26 (finding that "Defendants did not establish by clear and convincing evidence that
[the prior art] would have motivated a POSITA to use an antioxidant" to curb PEG oxidation).

Page 7 of 18

DOCKET NO.: 107071.001394                                                    PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

(Brittain at paragraph [0088]; Action at 7). This statement hardly provides the "clear and unambiguous" instruction to include an antioxidant, as the Examiner appears to imply. The Examiner has not articulated how Brittain would have suggested to one of ordinary skill in the art that an antioxidant should be included in a liquid bendamustine/PEG composition and the rejection should be withdrawn for at least this reason.

### The art does not teach that bendamustine can degrade via an oxidative mechanism

Bendamustine rapidly degrades in water *via* several pathways, none of which are oxidative. (*See, e.g.,* Specification at page 2). One pathway by which bendamustine degrades is *via* aziridinium ring hydrolysis, which produces HP1 and HP2:

(Brittain at paragraph [0022]; Maas,[7] Studies and Results, Scheme; U.S. 8,344,066 (the 066 patent)[8] at col. 1, lines 50-65; col. 4, lines 33-45).

Bendamustine also degrades *via* dimer formation, which occurs when a molecule of bendamustine attacks the aziridinium ring:

---

[7] Maas is of record in this application.
[8] The 066 patent is of record in this application.

EAGLEBEN-SA_00354027

DOCKET NO.: 107071.001394
Application No.: 18/646,171
Office Action Dated: July 09, 2024

PATENT

(Brittain at paragraph [0027]; the 066 patent at col. 4, lines 50-67).

Another pathway for bendamustine degradation is esterification of the -COOH with mono- and poly-hydroxy-containing compounds. Various bendamustine ester degradation products have been reported in the art:

(Brittain at paragraph [0111]; the 066 patent at col. 5, lines 13-44).

While many bendamustine degradation mechanisms have been reported, the art did *not* teach that bendamustine degrades *via* any oxidative pathway.

Page 9 of 18

EAGLEBEN-SA_00354028

"Antioxidants are used to reduce the oxidation of active substances and excipients in the finished product." (Note for Guidance, European Agency for the Evaluation of Medicinal Products, page 8 of 9 (of record)). Since bendamustine was not known to degrade *via* an oxidative process, those of ordinary skill in the art would not have tried to reduce degradation by adding an antioxidant to a bendamustine composition.[9] The claims are non-obvious for at least this reason.

### Those of Ordinary Skill in the Art Would Not Have Included Polyethylene Glycol and an Antioxidant in Any Liquid Bendamustine Composition

The Examiner alleges that a person skilled in the art would have prepared a bendamustine composition with polyethylene glycol (PEG). Action at 9. The Examiner further contends that since PEG was known to produce peroxides, the skilled person would have added an antioxidant to the liquid to prevent that from happening. Action at 9-10. The evidence of record establishes that this proposed scenario would not have been undertaken by anyone skilled in the art.

The rejection relies on a person of ordinary skill picking one of Britain's lyophilized compositions and selecting PEG as a reconstitution vehicle, prior to intravenous administration. Office Action at 9. The rejection notes that PEG's use as an excipient was impeded by its oxidative liabilities. *Id.* at 9-10. The rejection supposes that, rather than selecting a less troublesome reconstitution vehicle, *e.g.* water, the person of ordinary skill would have proceeded with PEG because the oxidative problem can be "cured" by adding an antioxidant. The cited art, as well as expert testimony presented during district court litigation, demonstrates that this series of events would not have taken place.

Industry guidance at the time of the invention discouraged antioxidant use in pharmaceuticals, instructing that antioxidants should only be used when there is no other way to avoid oxidation. For example, the European Agency for the Evaluation of Medicinal Product (EMEA) stated:

Antioxidants should only be included in a formulation if it has been proven that their use cannot be avoided. This applies to cases where the manufacturing process is optimised to minimise the potential for oxidation.

---

[9] Noteworthy is that the Treanda® lyophilized product does not include any antioxidant – it contains only bendamustine HCl and mannitol. (Treanda® at Section 11).

EAGLEBEN-SA_00354029

DOCKET NO.: 107071.001394                                                                    PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

(EMEA Guidance at 8 of 9). Indeed, it had been suggested at the time of the invention that the use of antioxidants in liquid formulations intended for parenteral administration was "now in decline" and that a "preferred method of preventing oxidation is simply to exclude oxygen":

**Use of Excipients**

Excipients may be useful in preventing chemical and physical instability. Antioxidants are included in parenteral formulations, although their use is now in decline, and EU guidelines discourage their use unless no other alternative exists (see sect. "Parenteral Products and the

Broadhead at 334.

The Office Action relies on a person of ordinary skill not only selecting the troublesome PEG for lyophilizate dissolution, it requires that the person of ordinary skill also try to address PEG's known oxidative liabilities by pre-emptively including an antioxidant. Expert testimony clearly explains why a person of ordinary skill in the art would not have selected an antioxidant-containing PEG excipient to prepare a liquid bendamustine product, especially since the only known therapeutic use of such a product would have been for parenteral administration.

During district court litigation, an antioxidant-PEG excipient hypothesis, similar to the one proposed by the Examiner, was alleged. There, the court found Dr. Siepmann's testimony persuasive. Dr. Siepmann testified that a person of ordinary skill in the art would not have chosen PEG as a bendamustine excipient. Dr. Siepmann explained that none of the four marketed PEG-containing parenteral formulations available in the United States as of this application's priority date contained an antioxidant. In addition, a person of skill in the art would have understood that antioxidants were not routinely added to any PEG-containing formulation that would have been parenterally administered. In fact, adding an antioxidant to fix the degradation caused by PEG was not conventional, so a person of skill in the art would not have used PEG if it necessitated using an antioxidant. And finally, a person of skill in the art would not have used PEG with a drug that was subject to degradation *via* PEG's oxidation products.

As Dr. Siepmann's testified:

355. A review of the marketed parenteral formulations available in the United States as of the priority date that contained PEG indicates that those formulations do not have antioxidants:

EAGLEBEN-SA_00354030

DOCKET NO.: 107071.001394                                                                PATENT
Application No.: 18/646,171
Office Action Dated:  July 09, 2024

- Ativan® (lorazepam) contains "0.18 mL polyethylene glycol 400 in propylene glycol with 2.0% benzyl alcohol as preservative." Ativan® Label at 1 (2006). JDG_BENDA_00005945 at 5948.

- Busulfex™ (busulfan) contains "N-N-dimethylacetamide (DMA) 33% wt/wt and polyethylene glycol 400, 67% wt/wt." Busulfex™ Label at 1 (1999). JDG_BENDA_00005643 at 5643.

- Robaxin® (methocarbamol) contains "polyethylene glycol 300, NF 0.5 mL, Water for Injection, USP q.s." Robaxin® Label at 1 (2003). JDG_BENDA_00005854 at 5854.

- VePesid® (etoposide) contains 60% PEG 300, 30% ethanol, 8.0% Tween 80, 3% benzyl alcohol, and 2 mg/mL citric acid. Strickley 2004 at 219. JDG_BENDA_00003290 at 3308.

356.    Of the four formulations listed above containing PEG, none of them contain excipients that are listed in Nema 1997's list of Antioxidants/Reducing Agents (Table IV). Nema 1997 at 167, JDG_BENDA_00002272 at 2273.  This state of the art refutes clearly Dr. Pinal's opinion that the POSA would have used PEG and then added an antioxidant to avoid the oxidation of PEG.

358.    From the above information, the POSA would have understood that, as of the priority date, none of the four commercially available parenteral formulations that contained PEG 300 or PEG 400 also contained an antioxidant.  This would have taught the POSA that antioxidants were not routinely added to parenteral formulations containing PEG. ███████

████████████████                    REDACTED

359.    The POSA likewise would have understood that Dr. Pinal's suggested formulation approach—to add PEG to the formulation and also to add an antioxidant to fix the degradation caused by the PEG—was not conventional.  Rather, in view of the small number of

Page 12 of 18

EAGLEBEN-SA_00354031

DOCKET NO.: 107071.001394                                                    PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

marketed parenteral drugs containing PEG, and the fact that none of those drugs contained an

antioxidant, the POSA would have inferred that formulators simply did not use PEG with drugs

that might be susceptible to degradation via PEG's oxidation products. In my opinion, and based

on my experience as a formulator, the POSA would not have been motivated or had reason to

add PEG to a formulation if she or he believed that doing so would have necessitated also adding

an antioxidant.

360. In view of the lack of any marketed parenteral drugs containing PEG and an

antioxidant, the POSA likely would have hypothesized that PEG was only used with drugs that

were not subject to degradation by PEG oxidation products (for example, acid-catalyzed

esterification). To test that hypothesis, the POSA could have reviewed the molecular structures

of the four APIs listed above. I have depicted those structures below. Most notably, none of

those molecules contain a carboxylic acid moiety. As such, none of those molecules would have

been prone to esterification via the PEG molecule, which is the only degradation pathway that

Dr. Pinal has identified as motivating the use of an antioxidant in formulations of the claimed

inventions. This would have bolstered the POSA's understanding that PEG was only used in

liquid parenteral formulations where the active ingredients were not susceptible to degradation

via PEG's oxidation products. Because bendamustine plainly is a drug molecule whose

degradation is accelerated by such oxidation products—as Dr. Pinal acknowledges—the POSA

would have avoided using PEG with bendamustine.

Siepmann Report at ¶¶355-356, 358-360, of record in this application.

No evidence in the cited art supports the sequence of steps that the Office Action alleges
would have been taken by a person of ordinary skill in the art. PEG would not have been selected
for bendamustine's dissolution, but even if it was, antioxidants would have been excluded, not
added. Applicant respectfully requests reconsideration and withdrawal of the rejection.

EAGLEBEN-SA_00354032

DOCKET NO.: 107071.001394                                                    PATENT
Application No.: 18/646,171
Office Action Dated: **July 09, 2024**

**The Claimed Compositions Are Surprisingly and Unexpectedly Stable During Storage**

As reported in the specification, a composition including bendamustine in PEG exhibited 2.28% of impurities after storage at room temperature for 15 days and 41.9% impurities after storage for 15 days at 40 °C. (Specification at Example 3, page 13, Table 3, reproduced below).

| Antioxidant | T°C | Time days | % Initial | % Imp RRT 0.58 | % Total Imps |
|---|---|---|---|---|---|
| None | 25 | 15 | 97.6 | 2.08 | 2.28 |
|  | 40 | 15 | 56.3 | 2.17 | 41.9 |
| Lipoic Acid 5 mg/ml | 25 | 15 | 98.5 | <LD | 0.23 |
|  | 40 | 15 | 97.5 | 0.33 | 0.53 |

<LD = Below Level of Detection

Based on these poor stability results, a person would have forsaken development of a liquid bendamustine/PEG composition. A composition presenting such a poor initial stability profile would have been deemed unsuitable as a starting point to create a storage-stable composition. *See, e.g.,* Exhibit B, attached hereto, Siepmann Report at ¶¶ 359, 469-71, reproduced, below:

359. The POSA likewise would have understood that Dr. Pinal's suggested formulation approach—to add PEG to the formulation and also to add an antioxidant to fix the degradation caused by the PEG—was not conventional. Rather, in view of the small number of marketed parenteral drugs containing PEG, and the fact that none of those drugs contained an antioxidant, the POSA would have inferred that formulators simply did not use PEG with drugs that might be susceptible to degradation via PEG's oxidation products. In my opinion, and based on my experience as a formulator, the POSA would not have been motivated or had reason to add PEG to a formulation if she or he believed that doing so would have necessitated also adding an antioxidant.

Page 14 of 18

EAGLEBEN-SA_00354033

DOCKET NO.:  107071.001394                                                PATENT
Application No.:  18/646,171
Office Action Dated:  July 09, 2024

469.    I further agree with Dr. Pinal that it was known that PEG could form various degradation products.  As I explain above, the POSA would have viewed the degradation products of PEG as a disadvantage that would have discouraged the use of that solvent.  *See, e.g.,* ¶¶ 339–360.

470.    I disagree, however, with Dr. Pinal that PEG's known sensitivity to oxidation would have motivated or provided reason for the POSA to use an antioxidant with PEG.  I likewise disagree that the POSA would have been motivated or had reason to use an antioxidant in conjunction with PG and bendamustine.

471.    As I explain in detail above, the POSA would have been strongly motivated to avoid using an antioxidant in the formulation.  *See* ¶¶ 344–360.  The POSA would have preferred to keep the formulation as simple as possible; adding an antioxidant would have introduced substantial complexity into the formulation, including increasing the risk of unwanted interactions between the excipients and bendamustine.  *See* ¶¶ 344–345.  The POSA would have understood that antioxidants are particularly reactive and likely to cause unwanted interactions in the formulation.  *See* ¶ 346.  Adding an antioxidant would also have been undesirable because the concentration of the antioxidant would have to be maintained throughout the shelf life of the product—in effect, the stability of the product would become dependent on the antioxidant.  *See* ¶ 347.  The POSA also would have understood that an antioxidant might not completely solve any potential oxidation problem and that finding an appropriate antioxidant would, in the first instance, be an unpredictable research effort.  *See* ¶¶ 349–352.

Despite the poor stability of bendamustine/PEG, surprisingly, adding an antioxidant substantially eliminated the formation of degradation products.  As shown in the specification, and the Table above, a bendamustine/PEG composition including antioxidant exhibited no

Page 15 of 18

EAGLEBEN-SA_00354034

DOCKET NO.: 107071.001394                                                          PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

substantial increase in degradants after storage for 15 days at either room temperature or 40 °C. (Specification at Example 3, page 13, Table 3).

The claimed liquid bendamustine/PEG compositions exhibit surprising storage stability if an antioxidant is added. Such an unexpected result could not have been predicted. This result is particularly unexpected given the absence of any report in the literature of an oxidative degradation pathway for bendamustine. The claims are patentable for at least these reasons.

**None of the Secondary References Cure Brittain's Deficiencies**

Applicant submits, *per arguendo*, that even if those skilled in the art would have been motivated to arrive at the claimed subject matter based on a modification of Brittain (which Applicant does not stipulate to), the disclosures of the secondary references would not have led to the claimed subject matter.

With respect to Riebesehl, the Examiner alleges:

"[w]hile Brittain et al. suggest cysteine as an antioxidant [0088], Riebeshehl et al. guide the artisan to the functionally equivalent monothioglycerol in the same amounts instant claimed. The ordinary artisan is motivated to select monothioglycerol because of the desirable property of enhanced safety for caregiver handling of the cytotoxic materials of which bendamustine is cytotoxic. Accordingly it is obvious to the ordinary artisan to use polyethylene glycol as a carrier but when so doing to add an antioxidant such as monothioglycerol to prevent any autooxidation of the polyethyelene glycol to undesirable side products. Therefore, the ordinary artisan would have had a reasonable expectation of success in combining bendamustine, polyethylene glycol and the antioxidants claimed into a liquid composition with less than about 5% peak area response total impurities after at least 15 months at the temperatures claimed. The expectation is reasonable because the same components claimed are taught in the prior art and the prior art of Brittain et al. acts to limit the total impurities."

Action at 10.

Those of ordinary skill in the art would not have combined the disclosures of Brittain and Riebesehl. Riebesehl does not describe any bendamustine formulations; instead, it refers to a very different drug, pemetrexed.

pemetrexed

EAGLEBEN-SA_00354035

DOCKET NO.: 107071.001394                                                    PATENT
Application No.: 18/646,171
Office Action Dated: July 09, 2024

bendamustine

Pemetrexed and bendamustine are structurally dissimilar chemotherapeutic agents and the Examiner has provided no evidence that the aforementioned challenges of producing pharmaceutically usable formulations of bendamustine are the same (or even remotely similar) to the challenges of producing pharmaceutically usable formulations of pemetrexed. A thorough reading of Brittain and Riebesehl informs those skilled in the art that such an equivalence cannot be established. The claims are non-obvious over Riebesehl's disclosure, whether considered alone or in combination with any other cited reference.

The Examiner alleges that Olthoff is relevant for its disclosure of "monovalent alcohols, glycols, and other polyvalent alcohols" for use with bendamustine. Action at 9. The Examiner acknowledges that Olthoff fails to exemplify any bendamustine formulation including PEG. *Id.* As discussed *supra*, Applicant discovered that bendamustine/PEG compositions *degrade* and expert testimony confirms that a person of ordinary skill in the art would *not* have developed a bendamustine formulation that included PEG. The claims are non-obvious over Olthoff's disclosure, whether considered alone or in combination with any other cited reference.

Kumar is cited for its purported disclosure that PEG is subject to autooxidation, which the Examiner alleges would have suggested to the person of ordinary skill that an antioxidant should be added to PEG to prevent the autoxidation. Action at 9-10. As the expert testimony establishes (*see supra*), PEG would not have been selected for bendamustine's dissolution. But even if it was, antioxidants would have been *excluded* from a bendamustine formulation intended to be intravenously administered to humans (*see supra*). The claims are non-obvious over Kumar's disclosure, whether considered alone or in combination with any other cited reference.

For at least the reasons provided herein, Applicant submits that the Examiner has failed to establish *prima facie* obviousness over the claimed subject matter. Applicant asks the Examiner to withdraw these rejections.

EAGLEBEN-SA_00354036

DOCKET NO.: 107071.001394                                                      PATENT
Application No.: 18/646,171
Office Action Dated:  July 09, 2024

### Claim Rejections – Double Patenting

Claims 1-12 stand rejected for non-statutory double patenting as being unpatentable over claims 1-6 of U.S. Patent No. 9,265,831; claims 1-27 of U.S. Patent No. 9,572,797; claims 1-26 of U.S. Patent No. 9,572,796; claims 1-22 of U.S. Patent No. 8,609,707; claims 1-23 of U.S. Patent No. 9,579,384; claims 1-24 of U.S. Patent No. 9,034,908; claims 1-17 of U.S. Patent No. 9,597,399; claims 1-23 of U.S. Patent No. 9,144,568; claims 1-29 of U.S. Patent No. 9,572,887; claims 1-7 of U.S. Patent No. 9,597,397; claims 1-26 of U.S. Patent No. 10,010,533; claims 1-16 of U.S. Patent No. 11,103,483; claims 1-9 of U.S. Patent No. 11,872,214; claims 1-14 of U.S. Patent No. 11,844,783; 1-12 of copending U.S. Application No. 18/498,259; and claims 1-14 of copending U.S. Application No. 18/646,329.

Without conceding to the propriety of the rejections, terminal disclaimers have been filed in this application on July 19, 2024, to obviate the rejections.


### CONCLUSION

Applicant respectfully submits that the present application is in condition for allowance. Reconsideration of the application and an early Notice of Allowance are respectfully requested. In the event the Examiner cannot allow the application for any reason, the Examiner is encouraged to contact Applicant's representative.



Date: July 31, 2024                              /Stephanie A. Lodise/
                                                 Stephanie A. Lodise
                                                 Registration No. 51430


BakerHostetler
1050 Connecticut Avenue
NW, Suite 1100
Washington, D.C. 20036
Telephone: 202.861.1500
Facsimile:  202.861.1783

EAGLEBEN-SA_00354037

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>18/646,171 | Filing Date<br>04/25/2024 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 07/31/2024 | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 22 | Minus | ** 20 | = 2 | | x $100 = | 200 |
| | Independent<br>(37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 200 |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | SLIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /NICHELE D PETERSON/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EAGLEBEN-SA_00354038

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

23377    7590    08/21/2024

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

| EXAMINER |
|---|
| ARNOLD, ERNST V |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1613 | |

DATE MAILED: 08/21/2024

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 | 3701 |

TITLE OF INVENTION: FORMULATIONS OF BENDAMUSTINE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 11/21/2024 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 11/23)

EAGLEBEN-SA_00354039

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

By mail, send to:    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to:    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 23377 | 7590 | 08/21/2024 |

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 | 3701 |

TITLE OF INVENTION: FORMULATIONS OF BENDAMUSTINE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 11/21/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ARNOLD, ERNST V | 1613 | 514-394000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                     (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ❏ Corporation or other private group entity ❏ Government

4a. Fees submitted:    ❏ Issue Fee    ❏ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❏ Electronic Payment via the USPTO patent electronic filing system    ❏ Enclosed check    ❏ Non-electronic payment by credit card (Attach form PTO-2038)

❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (11/23) Approved for use through 03/31/2026    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

EAGLEBEN-SA_00354040

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 | 3701 |

23377      7590      08/21/2024

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

| EXAMINER |
|---|
| ARNOLD, ERNST V |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1613 | |

DATE MAILED: 08/21/2024

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 11/23)

EAGLEBEN-SA_00354041

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974** (**P.L. 93-579**) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013).
https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

EAGLEBEN-SA_00354042

| *Notice of Allowability* | Application No.<br>18/646,171 | | Applicant(s)<br>Palepu et al. | |
|---|---|---|---|---|
| | Examiner<br>ERNST V ARNOLD | | Art Unit<br>1613 | AIA (FITF) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 7/31/24.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 1-22 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All      b) ☐ Some*      c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| | /ERNST V ARNOLD/<br>Primary Examiner, Art Unit 1613 |
|---|---|

U.S. Patent and Trademark Office
PTOL-37 (Rev. 08-13)                              **Notice of Allowability**                    Part of Paper No./Mail Date 20240814

EAGLEBEN-SA_00354043

Application/Control Number: 18/646,171                                                          Page 2
Art Unit: 1613

## Notice of Pre-AIA or AIA Status

The present application is being examined under the pre-AIA first to invent

provisions.


## Claim Status

Claims 13-22 are new.

Claims 1-22 are pending.


## Withdrawn rejections

Applicant's amendments and arguments filed 7/31/24 are acknowledged and

have been fully considered.  The Examiner has re-weighed all the evidence of record.

Any rejection and/or objection not specifically addressed below is herein withdrawn.

Claims 5 and 11 were rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA),

second paragraph and claims 1-12 were rejected under 35 U.S.C. 103(a) as being

unpatentable over Brittain et al. (US 20060159713 of record) and Riebesehl et al. (US

6686365) and Olthoff et al. (DE159289 of record) and Kumar et al. (AAPS

PharmSciTech 2006;7(3):7 pages of record). Applicant's amendments and arguments

are persuasive.


## Terminal Disclaimer

The terminal disclaimer filed on 7/19/24 disclaiming the terminal portion of any

patent granted on this application which would extend beyond the expiration date of **US**

**applications: 18498259 and 18646329; and US Patent numbers:**

EAGLEBEN-SA_00354044

Application/Control Number: 18/646,171                                                          Page 3
Art Unit: 1613

9265331

9572797

9572796

8609707

9579384

9034903

9597399

9144568

9572857

9597397

10010533

11163483

11872214

11844788

has been reviewed and is accepted.  The terminal disclaimer has been recorded.

EAGLEBEN-SA_00354045

Application/Control Number: 18/646,171                                                      Page 4
Art Unit: 1613

### *Allowable Subject Matter*

The following is an examiner's statement of reasons for allowance: Applicant persuasively argued that the Examiner's anti-oxidant-PEG excipient hypothesis had already been argued in district court litigation where the court found Dr. Seipmann's expert testimony persuasive. Since the Examiner is not in a position to contradict the expert testimony or challenge the court's findings, then the rejection is withdrawn and the claims are allowed.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

Claims 1-22 are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to ERNST V ARNOLD whose telephone number is (571)272-8509. The examiner can normally be reached M-F 7-3:30.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

EAGLEBEN-SA_00354046

Application/Control Number: 18/646,171                                              Page 5
Art Unit: 1613

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Brian Y Kwon can be reached on 571-272-0581. The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/ERNST V ARNOLD/
Primary Examiner, Art Unit 1613

EAGLEBEN-SA_00354047

| **Search Notes** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 18/646,171 | Palepu et al. |
| | **Examiner** | **Art Unit** |
| | ERNST V ARNOLD | 1613 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. | 07/02/2024 | eva |
| (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND ((treanda OR SDX-105 OR bendamustine OR (benzimidazole WITH chloroethyl)) AND (liquid OR solution) AND antioxidant AND ( PEG OR polyethyleglycol OR (polyethylene ADJ glycol) OR polyoxyalkylene)) | 08/16/2024 | eva |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| filing receipt/continuity map | 07/02/2024 | eva |
| inventor name | 07/02/2024 | eva |
| parent application history | 07/02/2024 | eva |
| PE2E USPGPUB USPAT USOCR FIT FPRS EPO JPO DERWENT | 07/02/2024 | eva |
| search update PE2E USPGPUB USPAT USOCR FIT FPRS EPO JPO DERWENT | 08/16/2024 | eva |

| | |
|---|---|
| | |

EAGLEBEN-SA_00354048

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/646,171 | Palepu et al. |
| | **Examiner** | **Art Unit** |
| | ERNST V ARNOLD | 1613 |

### Interference Search

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| A61K | 31/4184; 47/10, 12, 18, 20, 22; 9/0019, 08 and  (( treanda OR SDX-105 OR bendamustine OR ( benzimidazole WITH chloroethyl)) AND (liquid OR solution) AND antioxidant AND (PEG OR polyethyleglycol OR (polyethylene ADJ glycol) OR polyoxyalkylene)).clm. | 08/16/2024 | eva |

| | |
|---|---|
| | |

EAGLEBEN-SA_00354049

| Index of Claims | Application/Control No. 18/646,171 | Applicant(s)/Patent Under Reexamination Palepu et al. |
|---|---|---|
| | Examiner ERNST V ARNOLD | Art Unit 1613 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☑ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☑ T.D. | | ☐ R.1.47 | | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/16/2024 | | | | | | | | |
| | 1 | = | | | | | | | | |
| | 2 | = | | | | | | | | |
| | 3 | = | | | | | | | | |
| | 4 | = | | | | | | | | |
| | 5 | = | | | | | | | | |
| | 6 | = | | | | | | | | |
| | 7 | = | | | | | | | | |
| | 8 | = | | | | | | | | |
| | 9 | = | | | | | | | | |
| | 10 | = | | | | | | | | |
| | 11 | = | | | | | | | | |
| | 12 | = | | | | | | | | |
| | 13 | = | | | | | | | | |
| | 14 | = | | | | | | | | |
| | 15 | = | | | | | | | | |
| | 16 | = | | | | | | | | |
| | 17 | = | | | | | | | | |
| | 18 | = | | | | | | | | |
| | 19 | = | | | | | | | | |
| | 20 | = | | | | | | | | |
| | 21 | = | | | | | | | | |
| | 22 | = | | | | | | | | |

EAGLEBEN-SA_00354050

| *Issue Classification* | Application/Control No. | | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|---|
| | 18/646,171 | | Palepu et al. | |
| | **Examiner** | | **Art Unit** | |
| | ERNST V ARNOLD | | 1613 | |

**CPC**

| Symbol | | | | Type | Version |
|---|---|---|---|---|---|
| A61K | / | 31 | / | 4184 | F | 2013-01-01 |
| A61K | / | 47 | / | 10 | I | 2013-01-01 |
| A61K | / | 9 | / | 08 | I | 2013-01-01 |
| A61K | / | 47 | / | 20 | I | 2013-01-01 |
| A61K | / | 47 | / | 12 | I | 2013-01-01 |
| A61K | / | 47 | / | 18 | I | 2013-01-01 |
| A61K | / | 47 | / | 22 | I | 2013-01-01 |
| A61K | / | 9 | / | 0019 | A | 2013-01-01 |

**CPC Combination Sets**

| Symbol | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|
| | / | | / | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 22 | |
| /ERNST V ARNOLD/ Primary Examiner, Art Unit 1613 | 16 August 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No.: 20240814

Page 1 of 3

EAGLEBEN-SA_00354051

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/646,171 | Palepu et al. |
| | **Examiner** | **Art Unit** |
| | ERNST V ARNOLD | 1613 |

**INTERNATIONAL CLASSIFICATION**

**CLAIMED**

| A61K | / | 9 | / | 08 |
|---|---|---|---|---|
| A61K | / | 31 | / | 41 |
| A61K | / | 47 | / | 10 |

**NON-CLAIMED**

| | / | | / | |
|---|---|---|---|---|

**US ORIGINAL CLASSIFICATION**

| CLASS | SUBCLASS |
|---|---|
| | |

**CROSS REFERENCES(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| NONE | | **Total Claims Allowed:** | | |
|---|---|---|---|---|
| (Assistant Examiner) | (Date) | 22 | | |
| /ERNST V ARNOLD/ Primary Examiner, Art Unit 1613 | 16 August 2024 | O.G. Print Claim(s) | | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | | none |

U.S. Patent and Trademark Office

Part of Paper No.: 20240814

Page 2 of 3

EAGLEBEN-SA_00354052

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/646,171 | Palepu et al. |
| | **Examiner** | **Art Unit** |
| | ERNST V ARNOLD | 1613 |

| ☑ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☑ T.D. | ☐ R.1.47 |

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 22 | |
| /ERNST V ARNOLD/ Primary Examiner, Art Unit 1613 | 16 August 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No.: 20240814

Page 3 of 3

EAGLEBEN-SA_00354053

# UNITED STATES PATENT AND TRADEMARK OFFICE



UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 3701**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 **RULE** | 514 | 1613 | 107071.001394 |

**APPLICANTS**
Eagle Pharmaceuticals, Inc., Woodcliff Lake, NJ;

**INVENTORS**
Nagesh R. Palepu, Southampton, PA;
Philip Christopher Buxton, Denham, UNITED KINGDOM;

** **CONTINUING DATA** ***************************
This application is a CON of 18/498,259 10/31/2023
which is a CON of 17/412,623 08/26/2021 ABN
which is a CON of 16/509,920 07/12/2019 PAT 11103483
which is a CON of 16/015,656 06/22/2018 ABN
which is a CON of 15/432,335 02/14/2017 PAT 10010533
which is a CON of 15/013,436 02/02/2016 PAT 9572797
which is a CON of 14/031,879 09/19/2013 PAT 9265831
which is a CON of 13/016,473 01/28/2011 PAT 8609707
which claims benefit of 61/299,100 01/28/2010

** **FOREIGN APPLICATIONS** **************************

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** **
05/28/2024

| | | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|
| Foreign Priority claimed ☐ Yes ☑ No | | | PA | | 22 | 2 |
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | ☐ Met after Allowance | | | | | |
| Verified and Acknowledged | /ERNST V ARNOLD/ Examiner's Signature | EA Initials | | | | |

**ADDRESS**

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501
UNITED STATES

**TITLE**
FORMULATIONS OF BENDAMUSTINE

| FILING FEE RECEIVED 0.00 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |

BIB (Rev. 05/07).

EAGLEBEN-SA_00354054

❏ Credit

BIB (Rev. 05/07).

EAGLEBEN-SA_00354055

## PE2E SEARCH - Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L1 | 22488 | (bendamustine AND (antioxidant OR monothioglycerol OR thioglycerol)) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 07:41 AM |
| L2 | 1878 | L1 AND @ad<"20100128" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 07:41 AM |
| L3 | 2 | L2 AND (bendamustine.clm. AND (monothioglycerol OR thioglycerol)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 07:42 AM |
| L4 | 21 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, | OR | ON | ON | 2024/07/02 07:59 AM |

EAGLEBEN-SA_00354056

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | thioglycerol)).clm. | HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | | | | |
| L5 | 19 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 08:00 AM |
| L6 | 122 | (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 08:01 AM |
| L7 | 0 | L6 AND @ad<"20100128" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 08:02 AM |
| L8 | 10 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. AND (sterile WITH container) | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 08:49 AM |
| L9 | 0 | L6 AND @ad<"20110128" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, | OR | ON | ON | 2024/07/02 08:53 AM |

EAGLEBEN-SA_00354057

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | | | | |
| L10 | 12 | ((bendamustine AND antioxidant).clm. AND @ad<"20100128") | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 08:53 AM |
| L11 | 201 | ((bendamustine AND ((polyalkylene ADJ glycol) OR (polyethylene ADJ glycol) OR PEG)).clm. AND @ad<"20100128") | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | OR | ON | ON | 2024/07/02 09:02 AM |
| L12 | 38 | L11 AND (antioxidant OR thioglycerol OR monothioglycerol OR thioglycolate) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, | OR | ON | ON | 2024/07/02 09:02 AM |

EAGLEBEN-SA_00354058

| | | | WO);  FPRS;  EPO; JPO;  DERWENT) | | | | |
|---|---|---|---|---|---|---|---|
| L13 | 291 | ((bendamustine SAME ((polyalkylene ADJ glycol) OR (polyethylene ADJ glycol) OR PEG)) AND @ad<"20100128") | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO);  FPRS;  EPO; JPO;  DERWENT) | OR | ON | ON | 2024/07/02 09:09 AM |
| L14 | 24 | ((bendamustine SAME ((polyalkylene ADJ glycol) OR (polyethylene ADJ glycol) OR PEG) SAME table) AND @ad<"20100128") | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO);  FPRS;  EPO; JPO;  DERWENT) | OR | ON | ON | 2024/07/02 09:09 AM |
| L15 | 5 | "8609707".pn. | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO);  FPRS;  EPO; JPO;  DERWENT) | OR | ON | ON | 2024/07/02 09:32 AM |
| L16 | 2 | "7772274".pn. | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, | OR | ON | ON | 2024/07/02 09:33 AM |

EAGLEBEN-SA_00354059

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | | | | |
| L17 | 10 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (monothioglycerol OR thioglycerol)).clm. AND (sterile WITH container) AND (HPLC WITH "223") | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 10:23 AM |
| L18 | 140 | (monothioglycerol OR thioglycerol OR thioglycerin OR thiovanol OR (glycerol WITH thiol) OR (mercapto WITH propanediole)).clm. AND ((alkylating ADJ agent) OR (nitrogen ADJ mustard) OR bendamustine) | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2024/07/02 12:00 PM |
| L19 | 2 | (((((pelepu near3 nagesh) OR (buston near3 christopher)).in. OR Eagle.as.) AND (bendamustine AND (sterile WITH (vial OR container))).clm.) | (USPAT) | OR | ON | ON | 2024/07/02 05:10 PM |
| L20 | 0 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. AND (bendamustine AND (sterile WITH (vial OR container))).clm.) | (USPAT) | OR | ON | ON | 2024/07/02 05:11 PM |
| L21 | 0 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. AND ((sterile WITH (vial OR container))).clm.) | (USPAT) | OR | ON | ON | 2024/07/02 05:11 PM |
| L22 | 0 | (((pelepu near3 nagesh) OR (buston near3 christopher)).in. AND ((sterile WITH (vial OR container))).clm.) | (US-PGPUB; USPAT) | OR | ON | ON | 2024/07/02 05:11 PM |
| L23 | 121 | (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, | OR | ON | ON | 2024/08/16 10:56 AM |

EAGLEBEN-SA_00354060

| | | A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND ((treanda OR SDX-105 OR bendamustine OR (benzimidazole WITH chloroethyl)) AND (liquid OR solution) AND antioxidant AND (PEG OR polyethyleglycol OR (polyethylene ADJ glycol) OR polyoxyalkylene)).clm. | EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT) | | | | |

## PE2E SEARCH - Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| N1 | 46 | (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND ((treanda OR SDX-105 OR bendamustine OR (benzimidazole WITH chloroethyl)) AND (liquid OR solution) AND antioxidant AND (PEG OR polyethyleglycol OR (polyethylene ADJ glycol) OR polyoxyalkylene)).clm. | (US-PGPUB; USPAT) | OR | ON | ON | 2024/08/16 10:56 AM |
| N2 | 17 | (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND ((treanda OR SDX-105 OR bendamustine OR (benzimidazole WITH chloroethyl)) AND (liquid OR solution) AND antioxidant AND (PEG OR polyethyleglycol OR (polyethylene ADJ glycol) OR polyoxyalkylene)).clm. | (USPAT) | OR | ON | ON | 2024/08/16 10:56 AM |

EAGLEBEN-SA_00354061

| N3 | 2 | (A61K31/4184 OR A61K9/08 OR A61K47/10 OR A61K47/12 OR A61K47/18 OR A61K47/20 OR A61K47/22 OR A61K9/0019).cpc. AND ((treanda OR SDX-105 OR bendamustine OR (benzimidazole WITH chloroethyl)) AND ((sterile OR sterilized) WITH (vial OR container)) AND (liquid OR solution) AND antioxidant AND (PEG OR polyethyleglycol OR (polyethylene ADJ glycol) OR polyoxyalkylene)).clm. | (USPAT) | OR | ON | ON | 2024/08/16 10:57 AM |

EAGLEBEN-SA_00354062

TO:      eofficemonitor@bakerlaw.com
FROM:    noreply@uspto.gov
CC:      patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - Correspondence Notification for Customer Number 23377

Wed Aug 21 05:01:10 EDT 2024

Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new outgoing correspondence. This correspondence is now available for viewing in Patent Center.

The official date of notification of the outgoing correspondence will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 18646171 | NOA | 08/21/2024 | 107071.001394 |

To view your correspondence online, please sign in to Patent Center and then select Workbench/View correspondence. To update your email address(es), select Manage/Manage customer numbers.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00354063



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 |

**CONFIRMATION NO. 3701**

23377
BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

**PUBLICATION NOTICE**


*OC000000077447710*

Date Mailed: 09/05/2024

**Title:** FORMULATIONS OF BENDAMUSTINE

**Publication No.** US-2024-0293372-A1
**Publication Date:** 09/05/2024

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be viewed using the USPTO's publicly available Searchable Databases via the Patent Public Search tool at www.uspto.gov. The direct link to access the Patent Public Search tool is currently https://ppubs.uspto.gov/pubwebapp/static/pages/ppubsbasic.html.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through Patent Center, the USPTO's electronic patent application filing and management system. The direct link to access this status information is currently https://patentcenter.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of Patent Center.

Further assistance in electronically accessing the publication, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

EAGLEBEN-SA_00354064

TO:      eofficemonitor@bakerlaw.com
FROM:   noreply@uspto.gov
CC:      patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - Correspondence Notification for Customer Number 23377

Thu Sep 05 05:02:21 EDT 2024


Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new outgoing correspondence. This correspondence is now available for viewing in Patent Center.

The official date of notification of the outgoing correspondence will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 18646171 | NTC.PUB | 09/05/2024 | 107071.001394 |

To view your correspondence online, please sign in to Patent Center and then select Workbench/View correspondence. To update your email address(es), select Manage/Manage customer numbers.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00354065



**UNITED STATES
PATENT AND TRADEMARK OFFICE**



P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/646,171 | 10/04/2024 09:00:19 AM Z ET | 107071.001394 |

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 3701 | FILED BY | VeAndra Luckett |
| PATENT CENTER # | 67434646 | FILING DATE | 04/25/2024 |
| CUSTOMER # | 23377 | FIRST NAMED INVENTOR | Nagesh R. Palepu |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Donald Scaltrito |

## Documents

# TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| 107071_001394_Issue_Fee__as_filed.pdf | 1 | Issue Fee Payment (PTO-85B) | 233 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| 107071_001394_Issue_Fee__as_filed.pdf | 69EC30D77D4045E54050761E595490DEA8519D1620AE1DE9A14F85204E55E59753E86FB113300A2DD313B6C77F42865E10A44EFBA5BE48CE92F28D88F6A4F583 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

EAGLEBEN-SA_00354066

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00354067

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

23377        7590        08/21/2024

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

|  |  |
|---|---|
|  | (Typed or printed name) |
|  | (Signature) |
|  | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 | 3701 |

TITLE OF INVENTION: FORMULATIONS OF BENDAMUSTINE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 11/21/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ARNOLD, ERNST V | 1613 | 514-394000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 BakerHostetler

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE
**Eagle Pharmaceuticals, Inc.**

(B) RESIDENCE: (CITY and STATE OR COUNTRY)
**Woodcliff Lake, NJ**

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☒ Issue Fee   ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via the USPTO patent electronic filing system   ☐ Enclosed check   ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. **23-3050**

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | /Donald V. Scaltrito/ | Date | October 4, 2024 |
| Typed or printed name | Donald V. Scaltrito | Registration No. | 59985 |

PTOL-85 Part B (11/23) Approved for use through 03/31/2026    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

EAGLEBEN-SA_00354068

**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/646,171 | 10/04/2024 09:00:19 AM Z ET | 107071.001394 |

## Title of Invention

FORMULATIONS OF BENDAMUSTINE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 3701 | FILED BY | VeAndra Luckett |
| PATENT CENTER # | 67434646 | AUTHORIZED BY | Donald Scaltrito |
| CUSTOMER # | 23377 | FILING DATE | 04/25/2024 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Nagesh R. Palepu |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| DA / 233050 | E202404000597800 | **VeAndra Luckett** |

**PRE-AUTHORIZED ACCOUNT**

233050

**PRE-AUTHORIZED CATEGORY**

**37 CFR 1.16 (National application filing, search, and examination fees); 37 CFR 1.17 (Patent application and reexamination processing fees); 37 CFR 1.19 (Document supply fees); 37 CFR 1.20 (Post Issuance fees); 37 CFR 1.21 (Miscellaneous fees and charges)**

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1501 | UTILITY ISSUE FEE | 1200.00 | 1 | 1200.00 |
| | | | **TOTAL AMOUNT:** | **$1,200.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement

EAGLEBEN-SA_00354069

Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EAGLEBEN-SA_00354070

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 11/12/2024 | 12138248 | 107071.001394 | 3701 |

23377        7590        10/23/2024
BakerHostetler
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above. The patent will issue electronically. The electronically issued patent is the official patent grant pursuant to 35 U.S.C. § 153. The patent may be accessed on or after the issue date through Patent Center at https://patentcenter.uspto.gov/. The patent will be available in both the public and the private sides of Patent Center. Further assistance in electronically accessing the patent, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-888-217-9197.

The USPTO is implementing electronic patent issuance with a transition period, during which period the USPTO will mail a ceremonial paper copy of the electronic patent grant to the correspondence address of record. Additional copies of the patent (i.e., certified and presentation copies) may be ordered for a fee from the USPTO's Certified Copy Center at https://certifiedcopycenter.uspto.gov/index.html. The Certified Copy Center may be reached at (800)972-6382.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Center (https://patentcenter.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Patents Stakeholder Experience (OPSE), Stakeholder Support Division (SSD) at (571)-272-4200.

IR103 (Rev. 10/09)

EAGLEBEN-SA_00354071

INVENTOR(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional inventors):

Nagesh R. Palepu, Southampton, PA;
Philip Christopher Buxton, Denham, UNITED KINGDOM;

APPLICANT(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional applicants):

Eagle Pharmaceuticals, Inc., Woodcliff Lake, NJ;


The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

EAGLEBEN-SA_00354072

TO:     eofficemonitor@bakerlaw.com
FROM:   noreply@uspto.gov
CC:     patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - Correspondence Notification for Customer Number 23377

Thu Oct 24 05:01:59 EDT 2024


Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new outgoing correspondence. This correspondence is now available for viewing in Patent Center.

The official date of notification of the outgoing correspondence will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 18646171 | ISSUE.NTF | 10/23/2024 | 107071.001394 |

To view your correspondence online, please sign in to Patent Center and then select Workbench/View correspondence. To update your email address(es), select Manage/Manage customer numbers.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00354073

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/646,171 | 04/25/2024 | Nagesh R. Palepu | 107071.001394 | 3701 |

| | | |
|---|---|---|
| 23377          7590          11/12/2024 | | EXAMINER |
| BakerHostetler | | ARNOLD, ERNST V |
| 1735 Market Street | | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1613 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/12/2024 | ELECTRONIC |

Suite 3300
Philadelphia, PA 19103-7501

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

eofficemonitor@bakerlaw.com

PTOL-90A (Rev. 04/07)

EAGLEBEN-SA_00354074

| APPLICATION NO. | ISSUE DATE | PATENT NO. |
|---|---|---|
| 18/646,171 | 12-Nov-2024 | 12138248 |

BakerHostetler
1735 Market Street
Philadelphia, PA 19103-7501

# EGRANT NOTIFICATION

Your electronic patent grant (eGrant) is now available, which can be accessed via Patent Center at https://patentcenter.uspto.gov

The electronic patent grant is the official patent grant under 35 U.S.C. 153. For more information, please visit https://www.uspto.gov/electronicgrants

EAGLEBEN-SA_00354075

TO:      eofficemonitor@bakerlaw.com
FROM:    noreply@uspto.gov
CC:      patentcenter_eofficeaction@uspto.gov
SUBJECT: USPTO: Patent Electronic System - eGrant Notification for Customer Number 23377

Tue Nov 12 06:26:19 EST 2024


Dear Patent Center Customer:

Correspondence Address:

BakerHostetler
1735 Market Street
Suite 3300
Philadelphia,PENNSYLVANIA,19103-7501
UNITED STATES

This is a courtesy notification regarding the following USPTO patent application(s) associated with your Customer Number, 23377, that have new eGrant(s) and eCofC(s). The eGrant and eCofC are now available for viewing in Patent Center.

The official date of the eGrant notification will be indicated on the form (e.g., PTOL-90) accompanying the correspondence.

Disclaimer:

The list of documents shown below are provided as a courtesy and is not part of the official file wrapper. The content of the images shown in the Image File Wrapper is the official record.

| Application | Patent | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|---|
| 18646171 | 12138248 | EGRANT.NTF | 11/12/2024 | 107071.001394 |

To examine your eGrant and eCofC online, please access Patent Center then search using the listed application or patent number. To download your eGrant, click on the eGrant and eCofC link on the left-hand menu or select the "Download eGrant" link on the Application data page. To download your eCofC, click on the eGrant and eCofC link on the left-hand menu.

If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday – Friday, 6 a.m. to midnight ET.

Please do not reply to this email as it was sent from an unmonitored mailbox.

Sincerely,

The Patent Center Team

EAGLEBEN-SA_00354076