**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

EAGLE PHARMACEUTICALS, INC. and
EAGLE SUB1 LLC,

      Plaintiffs,

    v.

SLAYBACK PHARMA LLC and AZURITY
PHARMACEUTICALS, INC.,

      Defendants.

C.A. No. 24-65-JLH

**REDACTED PUBLIC VERSION**

**DEFENDANTS SLAYBACK PHARMA LLC AND AZURITY
PHARMACEUTICALS, INC'S OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

*Of Counsel:*

Jason A. Lief
Alan H. Pollack
Daniel E. Forchheimer
Robyn Ast-Gmoser
Audrey R. Sparschu

**WINDELS MARX LANE &
MITTENDORF LLC**
1 Giralda Farms
Madison, NJ 07940
(973) 966-3200

156 West 56th Street
New York, NY 10019
(212) 237-1000

jlief@windelsmarx.com
apollack@windelsmarx.com
dforchheimer@windelsmarx.com
rast-gmoser@windelsmarx.com
asparschu@windelsmarx.com

Dated: June 5, 2026

**SMITH KATZENSTEIN & JENKINS LLP**

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Defendants Slayback Pharma LLC
and Azurity Pharmaceuticals, Inc.*

**TABLE OF CONTENTS**

TABLE OF CITATIONS ..................................................................................................................... iii

I.      NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.     SUMMARY OF ARGUMENT ........................................................................................ 2

III.    STATEMENT OF FACTS ............................................................................................... 4

        A.      The Patents-In-Suit .............................................................................................. 4

                1.      The Claims-In-Suit.................................................................................... 4

                2.      The Specification Of The Patents-In-Suit Make Clear That A
                        "Pharmaceutically Acceptable Fluid" Need Not Be a Solvent ................... 4

                3.      The File Histories Of The Patents-in-Suit ................................................. 5

                4.      The Related Abandoned Patent Application Teaches That
                        Aqueous Sodium Hydroxide Is A Pharmaceutically Acceptable
                        Fluid .......................................................................................................... 5

        B.      The Slayback Accused Vivimusta® Product............................................................ 6

IV.     ARGUMENT ................................................................................................................... 9

        A.      The Law Of Summary Judgment............................................................................ 9

        B.      The Law Of Infringement And "Consisting Of" .................................................... 9

                1.      The "Narrow" Impurity Exception ............................................................ 10

                2.      The "Rare" Unprelated Exception .............................................................. 11

        C.      The Plain And Ordinary Meaning Of The Claim Term "Fluid" Should
                Govern – A Liquid That Flows................................................................................ 11

        D.      ████████████████████████████
                ████████████████████
                ████████████████████████████

                ████████████████████████████
                ████████████████████████████

                ████████████████████████████
                ████████████████████████████

E.    Plaintiffs Are Precluded From Asserting Equivalents As A Matter of Law ........................................................................................................ 18

V.    CONCLUSION.......................................................................................................... 20

## TABLE OF CITATIONS

**Cases**

*360Heros, Inc. v. GoPro, Inc.*,
No. 17-1302-MFK-CJB, 2022 WL 1746854 (D. Del. May 31, 2022) ............................... 9

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
C.A. No. 12-1264-LPS, 2015 WL 10935836 (D. Del. Jan. 26, 2015) ............................... 9

*American Permahedge, Inc. v. Barcana, Inc.*,
105 F.3d 1441 (Fed. Cir. 1997) ..................................................................................... 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 9

*Arbutus Biopharma Corp. v. Moderna, Inc.*,
No. 22-252, 2024 WL 1434526 (D. Del. Apr. 3, 2024) .................................................. 12

*Azurity Pharms., Inc. v. Alkem Labs. Ltd.*,
582 F. Supp. 3d 192 (D. Del. 2022) ............................................................................... 11

*Biagro W. Sales, Inc. v. Grow More, Inc.*,
423 F.3d 1296 (Fed. Cir. 2005) ..................................................................................... 20

*Conoco, Inc. v. Energy & Env't. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ........................................................................... 10, 11, 16

*Exxon Chem. Pats. v. Lubrizol Corp.*,
64 F.3d 1553 (Fed. Cir. 1995) ....................................................................................... 12

*Felix v. Am. Honda Motor Co.*,
562 F.3d 1167 (Fed. Cir. 2009) ..................................................................................... 18

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) ........................................................................................ 3, 18, 19, 20

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001) ..................................................................................... 12

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
376 F.3d 1339 (Fed. Cir. 2004) ..................................................................................... 11

*Glaxo, Inc. v. Novopharm, Ltd.*,
110 F.3d 1562 (Fed. Cir. 1997) ..................................................................................... 9

*Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*,
  C.A. No. 15-819-LPS-CJB, 2017 WL 3578695 (D. Del. Aug. 18, 2017) ........................ 10

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999) ..................................................................................... 12

*Jonsson v. Stanley Works,*
  903 F.2d 812 (Fed. Cir. 1990) ..................................................................................... 18

*Markman v. Westview Instruments Inc.*,
  517 U.S. 370, 372 (1996) ............................................................................................ 12

*Norian Corp. v. Stryker Corp.*,
  363 F.3d 1321 (Fed. Cir. 2004) .............................................................................. 11, 17

*Otsuka Pharm. Co. v. Lupin Ltd.*,
  C.A. No. 21-900-RGA, 2022 WL 2952759 (D. Del. July 26, 2022) ......................... 10, 11

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................................... 12

*Shire Dev. Inc. v. Cadila Healthcare, Ltd.*,
  C.A. No. 10-581-KAJ, 2015 WL 4596410 (D. Del. July 28, 2015) ................................ 10

*Shire Dev., LLC v. Watson Pharms., Inc.*,
  848 F.3d 981 (Fed. Cir. 2017) ..................................................................................... 11

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*,
  15 F.4th 1136 (Fed. Cir. 2021) ..................................................................................... 18

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
  212 F.3d 1377 (Fed. Cir. 2000) .................................................................................... 10

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ..................................................................................... 12

Defendants Slayback Pharma LLC and Azurity Pharmaceuticals Inc. (collectively, "Slayback") move for summary judgment of non-infringement of all Asserted Claims. ████ ███████ ██████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████ Nor can plaintiffs assert infringement by equivalents. During the prosecution of the patents-in-suit, plaintiffs attempted to obtain broad claims that would have included any fluid, but those claims were rejected by the Examiner. In response, plaintiffs narrowed their claims by including the closed "pharmaceutically acceptable fluids consisting of …" limitation. Thus, prosecution history estoppel precludes plaintiffs from using the doctrine of equivalents to recapture subject matter it surrendered in securing its claims. Because Slayback cannot infringe under any legal theory, and because there is no genuine dispute of material fact, the Court should grant summary judgment.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement suit pursuant to 35 U.S.C. § 271 where plaintiffs allege willful infringement and seek damages. (D.I. 150). Although this case involves pharmaceutical patents and products, it is _not_ a Hatch-Waxman case. (_Id._) Defendant Slayback won two prior Hatch-Waxman cases brought by Eagle regarding the same Vivimusta® product accused in this case. In one case Slayback's motion for judgment of non-infringement on the pleadings was granted. (C.A. No. 1:18-cv-1953-CFC, D.I. 28). In the second case, Chief Judge Connolly abruptly ended the trial on the first day to rule from the bench that Slayback did not infringe. (C.A. No. 1:21-cv-1256-CFC-JLH, D.I. 117). It was only after those victories that Slayback launched its Vivimusta® product into the marketplace.

In response, plaintiffs returned to the Patent Office and re-wrote their patent claims to ultimately obtain, after many rejections and claim amendments, the patents asserted here.

The above-captioned case was filed on January 17, 2024, asserting U.S. Patent No. 11,844,783 ("the '783 patent"), and U.S. Patent No. 11,872,214 ("the '214 patent"). (D.I. 1). On January 17, 2025, plaintiffs filed C.A. No. 25--75, asserting U.S. Patent No. 12,138,248 ("the '248 patent"). On June 27, 2025, the two cases were consolidated. (D.I. 156). On February 2, 2026, the plaintiffs withdrew the '783 patent with prejudice. (D.I. 294). Plaintiffs assert claims 1-9 of the '214 patent, and claims 1-11, 15, and 20 of the '248 patent ("Asserted Claims"). (Sparschu Declaration, Ex. 1).[1]

A *Markman* Hearing was held on January 31, 2025. (D.I. 92). Fact discovery closed on December 5, 2025. Expert discovery closed on May 11, 2026. This motion is timely submitted pursuant to the Court's Scheduling Order. (D.I. 304).

## II.    SUMMARY OF ARGUMENT

1.



---

[1] All references to Exhibits ("Ex.") are to Exhibits 1-31 attached to the Declaration of Audrey Sparschu filed contemporaneously.



3.      Plaintiffs are precluded by prosecution history estoppel from arguing infringement under the doctrine of equivalents.  During the prosecution of the applications that resulted in the patents-in-suit, the applicants attempted to get much broader claims that would have captured all fluids.  However, those proposed claims were rejected by the Patent Office over prior art.  In response, the applicants amended and narrowed their claims to include the "pharmaceutically acceptable fluid consisting of …" limitation.  As a result, plaintiffs are presumed to be estopped from arguing infringement by equivalents.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002).  ███████████████████████████████████ ████████████████████████████████████████████████ Like estoppel generally, tangentiality is a question of law, and, as discussed below, the tangential exception does not apply.  (*See* Section V.E, below).  Plaintiffs are estopped from arguing infringement by equivalents.

4.      The claim term "fluid" should be given in its plain and ordinary meaning – a liquid that flows.[2]  Plaintiffs never formally raised a different construction for "fluid" during the *Markman* process, but now appear[3] to advocate for a new construction that a "fluid" is a "solvent"

---

[2] Although fluids include liquids or gases, there is no dispute that gases are not relevant here.
[3] The word "appear" is used because Slayback was unable to obtain a clear answer from plaintiffs' expert, Dr. Trout, during his deposition on this issue, or almost any other issue.  In addition to Dr.

or a "co-solvent" or a "solvent system." That should not be allowed at this stage. To the extent the issue is re-opened, the plain and ordinary meaning is the appropriate construction of "fluid."

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

## III.    STATEMENT OF FACTS

### A.    The Patents-In-Suit

#### 1.    The Claims-In-Suit

Only one claim limitation, common to all Asserted Claims, is pertinent to this Motion:

> a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

(*E.g.*, Ex. 2, '214 Patent, 14:7-9).

#### 2.    The Specification Of The Patents-In-Suit Make Clear That A "Pharmaceutically Acceptable Fluid" Need Not Be a Solvent

Although plaintiffs argue that the "pharmaceutically acceptable fluid" must be a solvent, the specification states that it does *not* need to be a solvent. (Ex. 2, '214 Patent, 3:39-41; Ex. 3, '248 Patent, 3:35-37 (" *is not necessarily, a solvent* for the bendamustine or salt thereof")) (emphasis added)). Further, the specification also discusses liquid bendamustine formulations that are *dispersions* or solutions. (*See e.g.*, Ex. 2, '214 Patent, 6:30-33). Thus, the specification does not limit the inventions to solutions (or solvents) – and does not contradict the plain and ordinary meaning, *i.e.*, a liquid that flows.

---

Trout's evasive answers, counsel for plaintiffs interjected long argumentative speaking objections throughout that deposition. We invite a review of the Trout deposition Transcript at Ex. 9.

4 ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

### 3.    The File Histories Of The Patents-in-Suit

During the prosecution of the '214 patents-in-suit (and relevant predecessor patent applications), the applicant attempted to obtain broader claims that would have covered all fluids. However, those claims were rejected over prior art.  In response to those rejections, the applicant amended their claims to include the narrowing "pharmaceutically acceptable fluid consisting of " limitation.  After several other rejections and responses, those narrowed claims were ultimately allowed.  The application for the '248 patent included that same narrowed claim from the outset. A detailed recitation of the events of the file history can be found in Ex. 5, Sinko Report at ¶¶ 81-118; *see also* Exs. 12-14 (file histories).

During prosecution, the applicant never defined "fluid" or "pharmaceutically acceptable fluid" as a solvent; and made no arguments that the claimed formulations used fluids that were only solvents or that the prior art involved non-solvents.

**4.**

5



### B.    The Slayback Accused Vivimusta® Product



███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████    The term "inactive ingredient" is used in the pharmaceutical field synonymously with "excipient" and refers to chemicals in a pharmaceutical formulation that are not the active drug substance but are nonetheless part of the formulation.  (Ex. 5, Sinko Report, at ¶ 152; Ex. 27, Pilaniya, at 302 (quoting from the ICH); Ex. 28, Martin's Pharmacy, at pg. 610).  "Inactive ingredients" or "excipients" are not the same thing as degradants or impurities, which are unwanted chemicals in a formulation.  For instance, the FDA website (https://www.fda.gov/drugs/drug-approvals-and-databases/inactive-ingredients-approved-drug-products-search-frequently-asked-questions), states:

**8. Does the Inactive Ingredient Database include contaminants found in approved drug products?**

No. The Inactive Ingredients Database does not include contaminants found in approved drug products.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████ ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

8

## IV.    ARGUMENT

### A.    The Law Of Summary Judgment

Summary judgment should be granted where there is no disputed material fact and, as a matter of law, the moving party is entitled to judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A]ll evidence must be construed in the light most favorable to the party opposing summary judgment." *Id*. at 261 n.2. However, summary judgment is not avoided by the assertion of incredible or conclusory "disputes" of fact. As this Court has explained:

> To defeat a motion for summary judgment, the nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.' … However, the 'mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;' and a factual dispute is genuine only where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, C.A. No. 12-1264-LPS, 2015 WL 10935836, at \*3 (D. Del. Jan. 26, 2015) (internal citations omitted); *see also 360Heros, Inc. v. GoPro, Inc.*, No. 17-1302-MFK-CJB, 2022 WL 1746854, at \*11 (D. Del. May 31, 2022) (granting summary judgment of non-infringement when plaintiff's argument was "nonsensical").

### B.    The Law Of Infringement And "Consisting Of"

The plaintiffs have the burden of proving infringement by a preponderance of the evidence. *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1567 (Fed. Cir. 1997). The determination of infringement is a two-step process. First, the claims must be properly construed. Then the properly construed claims are compared to the accused product. *Id*. at 1565. Literal infringement requires that *every* limitation of the claim be found in the accused product – either literally or, where permissible, under the doctrine of equivalents. The absence of a single limitation from the accused product requires a finding of no infringement. *Id.* at 1565-66.

"Consisting of" claim language is exclusionary. This means that an accused product can have only the components listed after "consisting of" and "nothing else." A product does not infringe if it contains additional ingredients. As the Federal Circuit explained in *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000):

> The phrase '***consisting of' is a term of art in patent law signifying restriction and exclusion*** … In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows ***and nothing else***.' (emphases added).

There are two "rare" exceptions to "consisting of" non-infringement that do not apply.

### 1.    The "Narrow" Impurity Exception

"[I]mpurities that a person of ordinary skill in the relevant art would ordinarily associate with a component on the 'consisting of' list do not exclude the accused product or process from infringement." *Conoco, Inc. v. Energy & Env't. Int'l, L.C.*, 460 F.3d 1349, 1360 (Fed. Cir. 2006).

The impurity exception is considered "narrow" and rarely overcomes the exclusionary nature of "consisting of." *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, C.A. No. 15-819-LPS-CJB, 2017 WL 3578695, at *5 (D. Del. Aug. 18, 2017) (identifying "two ***narrow exceptions*** to the above-referenced rule"(emphasis added)); *Shire Dev. Inc. v. Cadila Healthcare, Ltd.*, C.A. No. 10-581-KAJ, 2015 WL 4596410, at *7 (D. Del. July 28, 2015) ("exceptions to the terms' absolute exclusion are ***narrow*** — the Federal Circuit has only mentioned ***impurities*** or aspects truly unrelated to the invention."(emphasis added).

Deliberately or purposefully-added ingredients (excipients) are *not* "impurities" for purposes of "consisting of" law. *Otsuka Pharm. Co. v. Lupin Ltd.*, C.A. No. 21-900-RGA, 2022 WL 2952759, at *4 (D. Del. July 26, 2022). This court has stated:

> ***The Federal Circuit has held that 'excipients' contrast with 'impurities' in the pharmaceutical context.*** 'Excipients are almost universally used with the active ingredient, and therefore do not act to affect the purity of the drug.' . . . ***excipients are 'inactive***

10

> ***ingredients*** that are routinely and purposefully added to the active ingredient to ***enhance the performance*** of the active ingredient.'

*Id.* (emphasis added) (quoting *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1347 (Fed. Cir. 2004)).  Chemicals deliberately added to improve stability – "enhance performance" – are not impurities for purposes of "consisting of" non-infringement law.  *Conoco.*, 460 F.3d at 1360-61 ("If, however, MIBK had been added to adjust the stability … EEI would most likely not infringe.").

### 2.    The "Rare" Unrelated Exception

The second exception to the "consisting of" rule is for additional components in the accused product that are "unrelated to the invention."  Again, this exception is considered "rare." *See, e.g.*, *Shire Dev., LLC v. Watson Pharms., Inc.*, 848 F.3d 981, 984 (Fed. Cir. 2017) ("Though the 'consisting of' presumption is very strong, we permit ***the rare exception*** for 'aspects unrelated to the invention.'") (emphasis added) (quoting *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331 (Fed. Cir. 2004)).  In the cited *Norian* case, the Federal Circuit "considered whether adding a spatula to a calcium phosphate chemical kit designed to repair teeth and bones took the accused product outside the scope of the asserted patent." *Id.*; *see also Azurity Pharms., Inc. v. Alkem Labs. Ltd.*, 582 F. Supp. 3d 192, 198 (D. Del. 2022) ("I recognize it is a '***rare exception***' that an ingredient is ***wholly unrelated*** to the mixture containing it."(emphasis added)).

### C.    The Plain And Ordinary Meaning Of The Claim Term "Fluid" Should Govern – A Liquid That Flows

Plaintiffs never formally proposed that "fluid" should be construed as a "solvent" during the *Markman* process.  That departure from the plain and ordinary meaning should not be countenanced now.  To the extent that this issue is re-opened, the plain and ordinary meaning applies, as discussed below.

11

Claim construction is a question of law for the court. *Markman v. Westview Instruments Inc.*, 517 U.S. 370, 372, 391 (1996). It is "[t]he duty of the trial judge … to determine the meaning of the claims at issue, and to instruct the jury accordingly." *Exxon Chem. Pats. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995).

Claim construction begins with, and focuses on, the language in the claims themselves. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("the claims are 'of primary importance, in the effort to ascertain precisely what it is that is patented.'"). Second, the specification of the patent is also considered. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Although the specification is relevant to claim construction, it is improper to import limitations from the specification into the claims. *Phillips*, 415 F.3d at 1320 ("***one of the cardinal sins of patent law*** – reading a limitation from the written description into the claims") (emphasis added). Third in the hierarchy of claim construction evidence, the prosecution file history may also be considered. *Vitronics*, 90 F.3d at 1582. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

There is a "heavy presumption" that claim terms are to be given their plain and ordinary meaning. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("heavy presumption in favor of the ordinary meaning of claim language"); *Arbutus Biopharma Corp. v. Moderna, Inc.*, No. 22-252, 2024 WL 1434526, at *2 (D. Del. Apr. 3, 2024) ("'heavy presumption' that they mean what they say and have their ordinary and customary meaning."). To depart from the ordinary meaning of a claim term, the specification or file history must expressly give the term a "special meaning." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342-43 (Fed. Cir. 2001)

("[no] special meaning to the phrase … no express representations made in obtaining the patent … and [construction] may be ascertained from the plain language of that claim."). Courts may consider dictionary definitions of the plain and ordinary meaning, where they do not contradict the intrinsic record. *See, e.g.*, *American Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1444 (Fed. Cir. 1997) (relying on The American Heritage Dictionary).

The claim term "fluid" should be given its plain and ordinary meaning – a liquid that flows. By contrast, plaintiffs appear to now argue that "fluid" means a "solvent" or "co-solvent" or "solvent system." There is no serious dispute that the plain and ordinary meaning of "fluid" is a liquid that flows. That is what dictionaries say. (Exs. 19-21). That is what textbooks say. (Exs. 22-23). That is what a person of skill in the art would understand. (Ex. 5, Sinko Report at ¶¶ 41-49 ("POSA would understand that both liquids and gases are 'fluids,' and that all liquids are also fluids"). Plaintiffs' expert, Dr. Trout, also said that in his own patent applications:

> As used herein, a ***"fluid" is given its ordinary meaning; i.e., a liquid or a gas***. A fluid cannot maintain a defined shape and ***will flow***

(Ex. 24, Trout Patent Application WO2015/095533 at pg. 20, line 30 (emphases added)). Thus, the real question is not what is the plain and ordinary meaning of the term "fluid," but whether there is any express definition in the patents that *requires* a departure from the "heavy presumption" in favor of the plain and ordinary meaning – and a departure from where this issue was left after the *Markman* process. In short, there is not.

The claims never use the word "solvent" or "co-solvent" or "solvent system." Further, nowhere in the patents-in-suit is there a statement *requiring* that "fluids" be "solvents." Indeed, the specification states the fluids are *not* required to be a solvent:

> In several embodiments of the invention, ***pharmaceutically acceptable fluid*** is non-aqueous and may be, ***but is not necessarily, a solvent*** for the bendamustine or salt thereof.

13

(Ex. 2, '214 Patent, 3:39-41; Ex. 3, '248 Patent, 3:35-37 (emphasis added)). In addition, the patent specification explicitly discusses embodiments where the fluids form dispersions as contrasted with solutions – showing that not all fluids will be solvents. (Ex. 2, '214 Patent, 6: 30-32; Ex. 3, '248 Patent, 6:27-29).

Plaintiffs also argue that "fluid" means "solvent" because each of the Examples in the specification discusses bendamustine being "dissolved." (Ex. 25, Trout Opening Report at ¶ 119). However, that does not define the word "fluid." While the Examples may disclose solutions where certain "pharmaceutically acceptable fluids" are solvents, that does not limit the broader word "fluid." Plaintiffs' argument is an attempt to commit the "cardinal sin" of claim construction – reading limitations from the specification into the claims.

Further, nowhere in the prosecution file histories for the patents-in-suit is the word "fluid" expressly (or otherwise) defined to be a solvent, co-solvent or solvent system. Indeed, it is not defined at all. Nor did applicants ever respond to an Examiner's rejection by distinguishing their invention from the prior art because the claimed invention was supposedly based on solvents while the prior art was supposedly based on non-solvents.

The plain and ordinary meaning of "fluid" – a "liquid that flows" – applies here.

**D.**





16



The "rare" exception that allows for infringement of a "consisting of" limitation where an additional component is "unrelated" does not apply here. The classic example of this "rare" exception is the spatula that is added to a kit of chemicals. *See, e.g.*, *Norian Corp.*, 363 F.3d at 1331.

17

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

### E.    Plaintiffs Are Precluded From Asserting Equivalents As A Matter of Law

A patentee cannot use the doctrine of equivalents to recapture claim scope surrendered during prosecution to gain allowance of the claims.  *Festo*, 535 U.S. at 734.  Prosecution history estoppel is a question of law.  *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1146 (Fed. Cir. 2021).  In the present case, the patentee attempted to obtain much broader claims that would have included all fluids.  But those claims were rejected.  (*See* Section III.A.(3), above).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████

There is no dispute that the amendment at issue narrowed the claims – and did so in response to a rejection based on patentability.  Thus, the entire claim scope between the original claim and the narrowed claim is presumed surrendered and the patentee is estopped from arguing any equivalents.  *Festo*, 535 U.S. at 734.  Estoppel also applies to subsequent applications with the same claim limitations.  *Jonsson v. Stanley Works,* 903 F.2d 812, 817-818 (Fed. Cir. 1990).  And estoppel also applies where an amendment does not result in immediate allowance.  *Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1182-83 (Fed. Cir. 2009) ("The fact that the first amendment did not succeed and that a further amendment was required to place the claim in allowable form, however, is of no consequence as to the estoppel.").

The Supreme Court has explained that: "the patentee still might rebut the presumption that estoppel bars a claim of equivalence.  The patentee must show that *at the time of the amendment*

18

one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Festo*, 535 U.S. at 741 (emphasis added). The presumption of estoppel can be rebutted where:

> The equivalent may have been ***unforeseeable*** at the time of the application; the rationale underlying the amendment may bear no more than a ***tangential relation*** to the equivalent in question; or there may be ***some other reason*** suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question.

*Id.* at 740-41 (emphasis added).

19



"[T]he patentee bears the burden of rebutting the presumption of surrender." *Biagro*, 423 F.3d at 1305. "[W]hether the presumption has been rebutted is a question of law." *Id.* In the present case, the patentee cannot establish any of the three grounds for rebutting the presumption of prosecution history estoppel. Summary judgment of no infringement under the doctrine of equivalents should be granted.

## V.   CONCLUSION

For the reasons set forth above, summary judgment of non-infringement should be granted. There is no literal infringement because the "consisting of" limitation is violated and none of the exceptions apply. And plaintiffs are estopped from resort to the doctrine of equivalents to recapture what they gave up during prosecution.

20

Dated: June 5, 2026

*Of Counsel:*

Jason A. Lief
Alan H. Pollack
Daniel E. Forchheimer
Robyn Ast-Gmoser
Audrey R. Sparschu

**WINDELS MARX LANE & MITTENDORF LLC**
1 Giralda Farms
Madison, NJ 07940
(973) 966-3200

156 West 56th Street
New York, NY 10019
(212) 237-1000

jlief@windelsmarx.com
apollack@windelsmarx.com
dforchheimer@windelsmarx.com
rast-gmoser@windelsmarx.com
asparschu@windelsmarx.com

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

21