## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC,<br><br>Defendants. | REDACTED PULBIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DAMAGES**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................2

    A.    The Opinions of Eagle's Damages Expert, Dr. Christopher Vellturo .....................2

    B.    The Rebuttal Opinions of Slayback's Damages Expert, James Malackowski ....................................................................................................3

III.   LEGAL STANDARDS .........................................................................................4

IV.   ARGUMENT.........................................................................................................4

    A.    Eagle is Entitled to Summary Judgment that *Panduit* Factor 1 Is Met....................4

    B.    Eagle is Entitled to Summary Judgment that *Panduit* Factor 3 Is Met....................5

    C.    Slayback's PAS NDA Formulation is Not "Available" as a Matter of Law ...........6

V.    CONCLUSION.....................................................................................................7

# TABLE OF AUTHORITIES[1]

## CASES

*AMP Inc. v. Lantrans, Inc.*,
No. 90-1525, 1991 WL 253796 (C.D. Cal. Nov. 7, 1991) ........................................................... 5

*Clark v. Linzer Prods. Corp.*,
No. 95-1744, 1996 WL 377075 (N.D. Ill. July 2, 1996) ........................................................... 5

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ........................................................................................... 7

*Glaukos Corp. v. Ivantis, Inc.*,
No. 18-620, 2020 WL 10501845 (C.D. Cal. June 17, 2020) ..................................................... 4, 5

*Gyromat Corp. v. Champion Spark Plug Co.*,
735 F.2d 549 (Fed. Cir. 1984) ............................................................................................. 4

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
No. 14-1480-RGA, 2022 WL 4548644 (D. Del. Sept. 29, 2022) ............................................... 4

*Micro Chemical, Inc. v. Lextron, Inc.*,
318 F.3d 1119 (Fed. Cir. 2003) ........................................................................................... 6

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
575 F.2d 1152 (6th Cir. 1978) ............................................................................................. 4

*Parker-Hannifin Corp. v. Champion Labs, Inc.*,
No. 06-2616, 2008 WL 1843922 (N.D. Ohio Aug. 4, 2008) ..................................................... 5

*Puff Corp. v. SHO Prods., LLC*,
No. 22-2008, 2024 WL 2208929 (C.D. Cal. Aug. 19, 2024) ..................................................... 6, 7

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) (en banc) ............................................................................... 4

*Sherwin-Williams Co. v. PPG Indus., Inc.*,
No. 17-1023, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2020) ..................................................... 6

*The Nielsen Co. (US), LLC v. TVision Insights, Inc.*,
No. 22-57-CJB, 2026 WL 1091330 (D. Del. Apr. 17, 2026) ..................................................... 6, 7

---

[1] All emphasis added, and internal citations and quotations omitted, unless otherwise noted.

ii

## I.    INTRODUCTION

Eagle seeks lost profits damages under the *Panduit* test; Slayback disputes only *Panduit* Factors 2 and 4.  Thus, to reduce the issues for trial, Eagle moves for partial summary judgment that Factors 1 and 3 are established.  Eagle also requests summary judgment that Slayback's redesigned "PAS NDA" formulation would not be "available" at the hypothetical negotiation.

*First*, *Panduit* Factor 1 is met as a matter of law because demand undisputedly exists for the five patented products—Eagle's Belrapzo, Slayback's Vivimusta, and the liquid bendamustine products sold by third-parties Teva, Apotex, and Baxter ("Patented Products").  Eagle's expert, Dr. Christopher Vellturo, found this factor is met because, over the last decade, these companies earned $3.6 billion from selling 2.5 million units of these products.  And Slayback's expert, James Malackowski, readily agreed that demand exists.  *See* Ex. 3 at 41; Ex. 4 at 85:14-16 ("Q. You and Dr. Vellturo agree that *Panduit* Factor 1 has been met in this case; correct? A. Correct.").

*Second*, *Panduit* Factor 3 is met as a matter of law because Eagle indisputably had the capacity to meet the demand for the infringing lost sales.  As Dr. Vellturo explains, the infringing sales are "relatively small" in comparison to Eagle's "total supply" during the damages period, and Eagle readily could have met this demand.  And Slayback's damages expert agreed with Dr. Vellturo.  *See* Ex. 3 at 41; Ex. 4 at 118:19-119:3 ("Q. And in this case, you analyzed factor 3 and concluded that it is met, in agreement with Dr. Vellturo; correct? A. Yes.").

*Third*, Mr. Malackowski derives his proposed 3.0% royalty rate based on the cost Slayback ostensibly incurred to develop the PAS NDA formulation.  This alternative fails as a matter of law because Slayback cannot show it would have been "available" as of the hypothetical negotiation in January 2024.  Slayback spent over three years developing this formulation and did not receive FDA authorization until October 2025—21 months after the hypothetical negotiation.  And the PAS NDA formulation has never been offered for sale, sold, or used.  Even crediting Slayback's

1

guess that it will be released by "the end of 2026," that is about ***three years*** after the hypothetical negotiation—which well exceeds the amount of time that courts have held precludes "availability."

## II.    STATEMENT OF FACTS

Eagle filed suit in January 2024 and accuses Slayback's Vivimusta product of infringing the Asserted Patents.  Statement of Undisputed Material Facts ("SOUF") ¶¶ 1-2.  The five Patented Products have been available in the market during the damages period.  SOUF ¶ 3.  Because each of those products practices the Asserted Patents, Eagle seeks lost profits damages under *Panduit*.

### A.    The Opinions of Eagle's Damages Expert, Dr. Christopher Vellturo

**Factor 1**. Dr. Vellturo calculated the unit sales and net revenue of the Patented Products to analyze whether Factor 1 was met.  Ex. 1 ¶¶ 106-113.  The results are below (*see id.* ¶¶ 109-110):

| Product | Sales Period | Units Sales | Net Revenue |
|---|---|---|---|
|  |  |  |  |
| Vivamsuta | Dec. 2022 – Sept. 2025 | 34,000 | $44.0 million |
| Apotex | May 2023 – Nov. 2025 | 23,000 | $19.5 million |
| Baxter | Feb. 2023 – Sept. 2025 | 20,000 | $24.8 million |
| **Total** | N/A | **2.5 million** | **$3.6 billion** |

Accordingly, Dr. Vellturo found these "significant unit and dollar sales show … strong historical and continuing demand for the patented products," and "*Panduit* Factor 1 is satisfied."  *Id.* ¶ 113.

**Factor 3**. Dr. Vellturo analyzed Eagle's historical relationships with its suppliers and the operative manufacturing agreements for Belrapzo and Bendeka.  *Id.* ¶¶ 130-132.  Next, he analyzed their incremental unit sales in the "but for" world, and found they are "relatively small" compared to Eagle's total supply during the damages period.[2]  *Id.* ¶ 131, Fig. 15.  He also found the evidence "shows that Eagle was able to consistently meet demand" and "ramp up its supply" when needed; conversely, he saw "no evidence" that Eagle would have faced significant supply disruptions in

---

[2] Teva does not own the Asserted Patents, but Eagle earns royalties on Bendeka sales such that any lost sales are properly recoverable as lost royalties and thus analyzed under *Panduit* Factor 3.

the damages period.  *Id.* ¶¶ 133-135.  Finally, Dr. Vellturo analyzed Eagle's sales and marketing personnel, budgets, and expenditures, finding it "would have had the marketing capacity to capture additional sales."  *Id.* ¶¶ 136-137.  Thus, Dr. Vellturo found *Panduit* Factor 3 satisfied.  *Id.* ¶ 138.

### B.        The Rebuttal Opinions of Slayback's Damages Expert, James Malackowski

On March 16, 2026, Slayback served Mr. Malackowski's rebuttal report.  Under Factor 1, Mr. Malackowski analyzed only Slayback's infringing sales of Vivimusta. Ex. 3 at 40, App. 4.2. In two paragraphs, he agreed with Dr. Vellturo that Slayback sold 34,479 units for $44.0 million as of Q3 2025, and concluded "demand exists for this allegedly-infringing product."  *Id.* at 41.

Mr. Malackowski's analysis of *Panduit* Factor 3 spans three paragraphs.  *Id.* at 42.  After reciting the legal standard, he repeated certain evidence Dr. Vellturo discussed and opined: "Eagle had the capacity to achieve the additional unit sales of Belrapzo® and Bendeka® quantified in my market share analysis."  *Id.*  He concluded, however, lost profits are not warranted because, under Factor 2, powder bendamustine and non-bendamustine drugs are acceptable, non-infringing alternatives.  Relevant here, he did not rely on the PAS NDA formulation as a Factor 2 alternative.

However, to calculate his reasonable royalty rate, Mr. Malackowski analyzed the costs that Slayback allegedly incurred to develop the PAS NDA formulation under the "Cost Approach." Ex. 3 at 52-54, 73.  He calculated the total cost to be about $1.4 million, then converted this amount to a percentage of Slayback's infringing revenue to derive an implied 3.9% royalty rate.  *Id.* at 73.

None of Slayback's clinical or technical experts addressed the availability of the PAS NDA formulation.  *See, e.g.*, Ex. 5 ¶ 73 ("I have been asked to assume that the PAS Product would meet the requirement of being available …").  Nor does Mr. Malackowski actually opine in his report that this alleged alternative would have been "available" at the hypothetical negotiation; instead, he addresses certain facts related to availability in two paragraphs. Ex. 3 at 53-54; *id.* at 72 (same). He begins by recounting the timeline from its conception (July 2021) to the FDA application filing

(Oct. 2024), and then to FDA authorization (Oct. 2025). *Id.* at 53. He acknowledges that "as of February 2026 Slayback, did not identify an anticipated date of the first offer for sale or actual sale." *Id.* Next, he quotes Slayback's interrogatory response, which states without citation that Slayback "plans to commercially launch" the PAS NDA formulation, and "expects [it] will happen by the end of 2026." *Id.* (citing Ex. 6 at 6). And Mr. Malackowski confirmed at his April 15, 2026 deposition that Slayback still had not offered this formulation for sale. *See* Ex. 4 at 241:6-242:2.

## III.    LEGAL STANDARDS

"Summary judgment must be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, No. 14-1480, 2022 WL 4548644, at *1 (D. Del. Sept. 29, 2022). A fact dispute is genuine only where "a reasonable jury could return a verdict for the non-moving party." *Id.*

To recover lost profits, Eagle must show a "reasonable probability" it would have made the infringing sales "but for the infringement." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). Under the four-factor test from *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978), Eagle must show: "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Id.* The Court may properly grant partial summary judgment on one or more *Panduit* factors. *See, e.g.*, *Glaukos Corp. v. Ivantis, Inc.*, No. 18-620, 2020 WL 10501845, at *13 (C.D. Cal. June 17, 2020).

## IV.    ARGUMENT

### A.    Eagle is Entitled to Summary Judgment that *Panduit* Factor 1 Is Met

Courts routinely grant summary judgment that Factor 1 is established where, as here, there are substantial sales of the patented products. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984) ("The substantial number of sales by Champion of infringing

4

products … is compelling evidence of the demand for the product."). In *AMP Inc. v. Lantrans, Inc.*, the court did so where it was "uncontroverted" that the defendant "sold more than 200,000 infringing keystone jacks" in the 20-month damages period. No. 90-1525, 1991 WL 253796, at *1 (C.D. Cal. Nov. 7, 1991). In *Glaukos*, the court granted summary judgment that Factor 1 was met where the defendant "conceded that there is demand for the [] products." 2020 WL 10501845, at *14; *see Parker-Hannifin Corp. v. Champion Labs, Inc.*, No. 06-2616, 2008 WL 1843922, at *7 (N.D. Ohio Aug. 4, 2008) (188,229 infringing filters sold over 10-month period shows demand); *Clark v. Linzer Prods. Corp.*, No. 95-1744, 1996 WL 377075, at *3 (N.D. Ill. July 2, 1996).

Here, it is undisputed that demand exists for the Patented Products, which compete in the market. SOUF ¶¶ 3-4, 6. Eagle's expert found that Factor 1 is met because the Patented Products have earned over $3.6 billion in net sales. SOUF ¶¶ 5-12. Slayback's expert did not dispute these calculations (*see id.*; Ex. 4 at 87:22-88:2), admitted that demand exists for the Patented Products (Ex. 4 at 87:7-12), and agreed that Factor 1 is met. *Id.* at 85:14-16 ("Q. You and Dr. Vellturo agree that *Panduit* Factor 1 has been met in this case; correct? A. Correct."); Ex. 3 at 41. Because there is no dispute that demand exists for the Patented Products (SOUF ¶¶ 5-6), the Court should enter partial summary judgment that *Panduit* Factor 1 is met. *See Glaukos*, 2020 WL 10501845, at *14.

**B.      Eagle is Entitled to Summary Judgment that *Panduit* Factor 3 Is Met**

For similar reasons, there is no genuine dispute that *Panduit* Factor 3 is satisfied. Eagle's expert Dr. Vellturo concluded that Eagle had the manufacturing and marketing capacity to capture the accused, lost sales. SOUF ¶ 13 (citing Ex. 1 ¶¶ 130-138). In his report, Mr. Malackowski found: "Eagle had the capacity to achieve the additional unit sales of Belrapzo® and Bendeka®" quantified in his analysis. Ex. 3 at 42. He then confirmed at deposition that he does ***not*** dispute Dr. Vellturo's opinion that Factor 3 is met. *See* Ex. 4 (Malackowski Dep.) at 118:19-119:3 ("Q. And in this case, you analyzed factor 3 and concluded that it is met, in agreement with Dr. Vellturo;

5

correct? A. Yes."), 120:6-20 ("Q. And you don't dispute that in your report; fair? A. I'm not specifically disputing his conclusion on factor 3."). Because there is no dispute that Eagle had the capacity to capture the infringing sales (SOUF ¶¶ 13-14), partial summary judgment is warranted.

### C.    Slayback's PAS NDA Formulation is Not "Available" as a Matter of Law

A reasonable royalty "can involve consideration of acceptable non-infringing alternatives," but "there must be some showing" that they "would have been available … as of the date of the hypothetical negotiation." *The Nielsen Co. (US), LLC v. TVision Insights, Inc.*, No. 22-57, 2026 WL 1091330, at *1 (D. Del. Apr. 17, 2026). An "alternative cannot be relevant to the reasonable royalty analysis unless available ***at the time infringement began***." *Puff Corp. v. SHO Prods., LLC*, No. 22-2008, 2024 WL 2208929, at *13 (C.D. Cal. Aug. 19, 2024) (emphasis in original). Where an alternative "is not on the market," the infringer "must overcome an inference that it was not available with more than just speculation or conclusory assertions." *Nielsen*, 2026 WL 1091330, at * 1. *Micro Chemical, Inc. v. Lextron, Inc.* is instructive. There, the Federal Circuit held "the district court erred in granting summary judgment that the Type 5 machine was an available substitute," and "should have granted summary judgment" that it "was not available at the time of infringement" because it "took over ***four months*** to convert all of its infringing Type 2 machines to Type 5 machines." 318 F.3d 1119, 1122-24 (Fed. Cir. 2003). In *Sherwin-Williams Co. v. PPG Indus., Inc.*, the court granted summary judgment that an alternative was not available where it was not "in the market during the damages period" and there were no "actual sales or customers." No. 17-1023, 2020 WL 1283465, at *8-10 (W.D. Pa. Mar. 18, 2020). The *Puff* court held "the Carta 2 device cannot be used as a non-infringing alternative" to calculate a royalty where the defendants did "not dispute" it "was not available at the time alleged infringement began" and was "not launch[ed] … until two years later, in February 2022." 2024 WL 2208929, at *13.

6

Here, it is undisputed that Slayback's PAS NDA formulation has never been on the market. SOUF ¶ 24. Thus, Slayback must overcome the inference of unavailability. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331-32 (Fed. Cir. 2009); *Nielsen*, 2026 WL 1091330, at *1. Regardless of who has the burden, this alleged alternative fails as a matter of law.

Slayback claims to have conceived of this formulation in July 2021 (SOUF ¶¶ 16-17), but it undisputedly took Slayback over three years to develop it (e.g., to conduct laboratory trials, proof of concept studies, analytical validation, etc.). SOUF ¶ 19. Slayback did not make a submission batch of this formulation until May 2024 (SOUF ¶ 18), three months after the hypothetical negotiation. And, while Slayback admits it could not market and sell this new formulation in the U.S. absent FDA authorization (SOUF ¶ 20), it did not even apply for FDA authorization until October 25, 2024 and did not receive FDA authorization until October 29, 2025—nearly two years after the hypothetical negotiation. SOUF ¶¶ 21-23. Even to this day, this alternative formulation undisputedly has not been offered for sale, sold, or used by a clinician. SOUF ¶¶ 25-26 (citing Ex. 1 ¶ 128; Ex. 2 ¶ 89; Ex. 4 at 241:23-242:2; Ex. 7 ¶ 56; Ex. 8 ¶ 72. As of February 2026, Slayback admittedly did not have an expected date of the first offer for sale or actual sale of the PAS NDA formulation, had not determined a price for this formulation, and had neither evaluated nor estimated any expected financial data. *See* SOUF ¶¶ 27, 29-30. And, even crediting Slayback's best guess, this formulation will not be on the market until "the end of 2026" (SOUF ¶ 28)—about ***three years*** after the hypothetical negotiation, which far exceeds the amount of time that courts have found render alternatives unavailable as a matter of law. *See Puff*, 2024 WL 2208929, at *13.

## V.    CONCLUSION

Eagle respectfully requests summary judgment that *Panduit* Factors 1 and 3 are established, and that Slayback's PAS NDA formulation is not "available" as a matter of law.

7

Dated: June 5, 2026

**MCCARTER & ENGLISH, LLP**

*/s/ Daniel M. Silver*

OF COUNSEL:

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)

Kenneth G. Schuler
McCarter & English, LLP
Marc N. Zubick
405 N. King Street, 8th Floor
Alex Grabowski
Wilmington, DE 19801
Michelle Chin
(302) 984-6300
Latham & Watkins LLP
dsilver@mccarter.com
330 North Wabash Avenue, Suite 2800
ajoyce@mccarter.com
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
*Attorneys for Plaintiffs*
marc.zubick@lw.com
alex.grabowski@lw.com
michelle.chin@lw.com

Brett M. Sandford
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 9411
(415) 391-0600
brett.sandford@lw.com

Ramya Sri Vallabhaneni
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

Kelly A. Welsh
Latham & Watkins LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
kelly.welsh@lw.com

8

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on June 5, 2026, on the following counsel in the manner indicated:                                   **VIA EMAIL:**

Daniel A. Taylor
Neal C. Belgam
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
Dtaylor@skjlaw.com
Nbelgam@skjlaw.com

Jason A. Lief
Allan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Daniel E. Forchheimer
Kiersten A. Fowler
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
dforchheimer@windelsmarx.com
kfowler@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

/s/ Daniel M. Silver
Daniel M. Silver (#4758)

ME1\61334401.v1