**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC,<br><br>Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S MOTION FOR SUMMARY JUDGMENT <u>REGARDING INFRINGEMENT</u>**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENTS ...............................................1

II.  NATURE AND STAGE OF THE PROCEEDINGS ........................................................3

III. LEGAL STANDARD ........................................................................................................3

IV.  ARGUMENT ......................................................................................................................3

    A.   There is No Genuine Dispute that Vivimusta Meets the "Pharmaceutically Acceptable Fluid" Limitation ................................................................................3

    B.   There is No Genuine Dispute that Vivimusta Meets the "Stability" Limitation ................................................................................................................7

    C.   There is No Triable Issue Regarding the Remaining Limitations .........................9

V.   CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES[1]

## CASES

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003) ..................................................................................... 6

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
  460 F.3d 1349 (Fed. Cir. 2006) ..................................................................................... 7

*Ferring B.V. v. Watson Labs., Inc.*,
  764 F.3d 1401 (Fed. Cir. 2014) ..................................................................................... 6

*Innov. Memory Sys., Inc. v. Micron Tech., Inc.*,
  No. 14-1480, 2022 WL 4548644 (D. Del. Sept. 29, 2022) ...................................... 3, 6

---

[1] All emphasis added, and internal citations and quotations omitted, unless otherwise noted.

ii

## I.    INTRODUCTION

This case presents a straightforward question of patent infringement with the undisputed evidence showing that Slayback's NDA Product, Vivimusta, infringes claims 6 and 9 of Eagle's U.S. Patent No. 11,872,214 ("'214 Patent") and claims 8, 11, and 20 of Eagle's U.S. Patent No. 12,138,248 ("'248 Patent") (the "Asserted Claims" and the "Asserted Patents," respectively). Representative independent claim 6 of the '214 Patent recites:

> A liquid bendamustine-containing composition comprising
> 100 mg of bendamustine, or a pharmaceutically acceptable
> salt thereof and a stabilizing amount of an antioxidant,
> in a pharmaceutically acceptable fluid;
> wherein the pharmaceutically acceptable fluid consists of
> polyethylene glycol and optionally one or more of
> propylene glycol, ethanol, benzyl alcohol and glycofurol; and
> wherein the bendamustine concentration in pharmaceutically
> acceptable fluid is about 25 mg/mL,[2]
> wherein the total impurities resulting from the degradation
> of the bendamustine is less than about 5% peak
> area response, as determined by HPLC at a wavelength
> of 223 nm after at least about 15 months at a temperature
> of about 5° C. to about 25° C.

Dependent claim 9 recites: "The composition of claim 6, further comprising ethanol."

The Asserted Patents cover Eagle's patented liquid bendamustine product, Belrapzo, which Slayback relied on to market and sell its version of the product via FDA's 505(b)(2) New Drug Application process ("Vivimusta"). According to Vivamusta's label, "[e]ach milliliter contains 25 mg of bendamustine hydrochloride equivalent to 22.7 mg of bendamustine, 5 mg of monothioglycerol, 39.45 mg (5% v/v) of absolute alcohol, and q.s. to 1 mL polyethylene glycol 400." Statement of Undisputed Material Facts ("SOUF") ¶¶ 1-2; Ex. 1 at -947; Ex. 2 at -924. Slayback raises three non-infringement defenses. Each fails as a matter of law.

---

[2] Consistent with the Court's *Markman* Order, the language "from about 25 mg/mL" in the claim has been corrected to "about 25 mg/mL."

1

*First*, Slayback contends that ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ During claim construction,

the parties agreed that "pharmaceutically acceptable fluid" means "a fluid which is suitable for

pharmaceutical use." SOUF ¶ 19. Moreover, every pharmaceutically acceptable fluid recited in

the claims is a solvent. ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ SOUF ¶ 23.

*Second*, Slayback contends that ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████

*Third*, Slayback contends that Eagle has not met its burden to show that Vivimusta satisfies

the "stability" limitation requiring less than about 5% total impurities after at least about 15

months. But Slayback's bald assertion is not evidence, and the undisputed evidence shows that:

(1) ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██ and (4) ███████████████████████ Dr. Kittendorf independently completed High-

2

Performance Liquid Chromatography ("HPLC") testing ███████████████████████ ████████████████████ and found the mean normalized peak response for total impurities in Vivimusta Product samples to be well below 5% at both 223 nm and ████████.

As to every other claim limitation—*i.e.*, liquid composition, bendamustine salt, concentration, antioxidant identity and amount, and ethanol—Slayback advances no limitation-specific non-infringement arguments. Instead, Slayback's non-infringement claim charts simply incorporate general sections by reference, and Slayback's non-infringement expert, Dr. Sinko's, expert report does not contest that these limitations are met. The undisputed evidence, drawn primarily from Slayback's Label ██████████████, confirms that each limitation is satisfied.

Eagle respectfully requests summary judgment of infringement on the Asserted Claims.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Eagle filed suit in January 2024 accusing Slayback's Vivimusta product of infringing the '214 and '248 patents. SOUF ¶¶ 17-18. Both fact and expert discovery are complete.

## III.    LEGAL STANDARD

"Summary judgment must be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Innov. Memory Sys., Inc. v. Micron Tech., Inc.*, No. 14-1480, 2022 WL 4548644, at *1 (D. Del. Sept. 29, 2022) (citation omitted). A factual dispute is genuine only where "a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted).

## IV.    ARGUMENT

Eagle is entitled to summary judgment that Slayback infringes the Asserted Claims because there is no genuine dispute that Vivimusta satisfies all claim limitations.

### A.    There is No Genuine Dispute that Vivimusta Meets the "Pharmaceutically Acceptable Fluid" Limitation

3

The Asserted Claims require bendamustine and "a stabilizing amount of an antioxidant, *in* a pharmaceutically acceptable fluid . . . wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol."  No. 24-65, D.I. 1-1, Exhibit B ('214 patent) at Claim 6; No. 25-75, D.I. 1-1 ('248 patent) at Claim 8.  Each of PEG and the other "optional" listed compounds is a solvent.  Ex. 3 at 64:24-65:8, 67:6-11, 70:19-71:7, 71:16-72:14, 107:21-22; SOUF ¶¶ 6-7.  Indeed, the claim's recitation that the bendamustine and antioxidant are "in" said solvents underscores that they are dissolved therein.  No. 24-65, D.I. 1-1, Exhibit B ('214 patent) at Claim 6; No. 25-75, D.I. 1-1 ('248 patent) at Claim 8; Ex. 4 ¶ 71.  The specification notes that data in Table 1 (which has testing in PG, ethanol, and benzyl alcohol), shows that the "bendamustine formulations are very stable in solutions containing solvent and chloride salt."  No. 25-75, D.I. 1-1 ('248 patent) at 7:25-26.  Thus, as the Court recognized, the "consisting of" limitation as a whole means that "there can't be another solvent system that's not on the list of pharmaceutically acceptable fluids."  Ex. 5 at 67:23-25.

1.   ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

**2.** ███████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

6

**B.    There is No Genuine Dispute that Vivimusta Meets the "Stability" Limitation**

Slayback contends that it does not infringe because Eagle has not met its burden to show that Vivimusta contains "total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C to about 25° C.  No. 24-65, D.I. 1-1, Exhibit

7

B ('214 patent) at Claim 6; No. 25-75, D.I. 1-1 ('248 patent) at Claim 8; *see* Ex. 12 at 19-20. However, there is no genuine dispute that Vivimusta meets the stability limitation based on

████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

Indeed, Slayback could not sell Vivimusta if the total impurities were above 5% at 15 months. Since Slayback continues to sell Vivimusta, and ████████████████████████ ████████ there is no evidence to suggest that the impurities would be materially different such that it would ***not*** meet the impurity limitations set out in the '214 and '248 patents.

To the extent Slayback argues that ████████████████████████████

████████████████████████████████████████████████

████████ that is incorrect. Ex. 12 at 2, 19-20. Eagle's testing expert, Dr. Kittendorf, completed direct HPLC testing of Vivimusta at 223 nm and ██████. Ex. 21 at Tables B1, B2. Dr. Kittendorf ████████████████████████████ which ████████████████████████

████████████████████████████████████ *Id.* ¶¶ 34-37; *see generally* Ex. 22; Ex. 24. Dr. Kittendorf then ran ████████████████████████████

████████ using 10 vials of Slayback's liquid bendamustine product, which were set to expire in ████████████ Ex. 21 ¶ 31. The mean normalized peak response for total impurities in Vivimusta

8

samples was measured to be ███████████████████████████. *Id.* at Tables B1, B2, ¶ 54; SOUF ¶ 25. ████████████████████████████████████████



██████████████████████████████████████████████████

████████████████████████████████ Vivimusta would still meet the 15-month impurity limitation. Ex. 21 ¶¶ 54-55.

Notably, Slayback did not provide any competing testing contradicting ████████████ ████████████████████████████ and Slayback's testing expert, Dr. Smith, does not offer any opinion that total impurities for Vivimusta are ***above*** 5% after 15 months at the relevant storage conditions.  As a result, Slayback has no competent evidence rebutting the evidence establishing that Vivimusta meets this limitation or no genuine criticism of Eagle's evidence.  For that reason, there is no genuine dispute as to whether Vivimusta meets this claim limitation.

## C.    There is No Triable Issue Regarding the Remaining Limitations

As summarized at the beginning of Slayback's Final Non-Infringement Contentions,

██████████████████████████████████████████████████████████████

███████████████████████████ Ex. 12 at 1-2.  Slayback does not contest that Vivimusta meets the remaining limitations of the Asserted Claims.  Indeed, Slayback's expert on non-infringement, Dr. Sinko, does not address any claim limitation other than the "pharmaceutically acceptable fluid consisting of" limitation.  *See* Ex. 13 § VIII.  Thus, no genuine factual dispute exists for trial.

### 1.    "A liquid bendamustine-containing composition comprising"

Vivimusta undisputedly is a liquid bendamustine-containing composition.  SOUF ¶¶ 1-2.

### 2.    "100 mg of bendamustine, or a pharmaceutically acceptable salt thereof, and"

It is undisputed that Vivimusta comprises bendamustine hydrochloride as the active ingredient; bendamustine hydrochloride is a pharmaceutically acceptable salt of bendamustine;

9

and Vivimusta is provided as a 100 mg/4 mL formulation, which means that each vial of Vivimusta contains about 100 mg bendamustine hydrochloride.  SOUF ¶¶ 3-4, 9.

> **3.    "A stabilizing amount of an antioxidant" / "wherein the antioxidant is monothioglycerol" / "wherein the antioxidant is monothioglycerol in a concentration of about 5 mg/mL"**

It is undisputed that Vivimusta comprises 5 mg/mL monothioglycerol, which is a stabilizing amount of an antioxidant.  SOUF ¶ 5.

> **4.    "wherein the bendamustine concentration in the pharmaceutically acceptable fluid is about 25 mg/mL"**

Vivimusta undisputedly comprises about 25 mg/mL bendamustine hydrochloride.  SOUF ¶ 3.

> **5.    "further comprising ethanol" / "wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and one or more of propylene glycol, ethanol, benzyl alcohol, and glycofurol" / "wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and ethanol"**

It is undisputed and Slayback does not contest that Vivimusta includes a "pharmaceutically acceptable fluid" that consists of polyethylene glycol 400 and ethanol.  SOUF ¶¶ 1-2, 6, 8, 11.

## V.    CONCLUSION

Eagle requests summary judgment that Vivimusta meets each claim limitation and thus literally infringes the Asserted Claims.

Dated: June 5, 2026

**MCCARTER & ENGLISH, LLP**

*/s/ Daniel M. Silver*

OF COUNSEL:

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Michelle Chin
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 9411
(415) 391-0600

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on June 5, 2026, on the following counsel in the manner indicated:    **<u>VIA EMAIL:</u>**

Daniel A. Taylor
Neal C. Belgam
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
Dtaylor@skjlaw.com
Nbelgam@skjlaw.com

Jason A. Lief
Allan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Daniel E. Forchheimer
Kiersten A. Fowler
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
dforchheimer@windelsmarx.com
kfowler@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)

ME1\61334401.v1