## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC.,<br><br>Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S *DAUBERT* MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' EXPERT, DR. BRIAN SMITH**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................................1

III.    LEGAL STANDARD.............................................................................................................2

IV.    ARGUMENT...........................................................................................................................2

V.     CONCLUSION........................................................................................................................3

i

## TABLE OF AUTHORITIES [1]

### CASES

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579  (1993) ................................................................................................ 2, 3

*Intellectual Ventures I LLC v. Xilinx, Inc.*,
   No. 10-1065-LPS, 2014 WL 1814384 (D. Del. Apr. 14, 2014)................................... 3

*Minerva Surgical Inc. v. Hologic, Inc.*,
   No. 18-217, 2021 WL 3048447 (D. Del. July 20, 2021)............................................. 3

*Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*,
   127 F.4th 1340 (Fed. Cir. 2025) ................................................................................. 2

### RULES

Fed. R. Evid. 401 .............................................................................................................. 3

Fed. R. Evid. 403 .............................................................................................................. 3

Fed. R. Evid. 702 .............................................................................................................. 3

---

[1] All emphasis added, and internal citations and quotation marks omitted, unless otherwise noted.

## I.    INTRODUCTION

Eagle accuses Slayback of infringing U.S. Patent Nos. 11,872,214 ("'214 Patent") and 12,138,248 ("'248 Patent") ("Asserted Patents").  To prove infringement of the "stability" claim limitation, Eagle retained Dr. Jeffrey Kittendorf to test Slayback's accused Vivimusta product. Slayback then served the rebuttal report of Dr. Brian Smith.  Unable to respond to the merits of Dr. Kittendorf's testing, Dr. Smith resorted to proffering opinions that disregard the claimed "peak area response" limitation.  Eagle thus requests the Court exclude Dr. Smith's opinions on the reliability of peak area response and Dr. Kittendorf's use of it.

## II.    STATEMENT OF FACTS

Each asserted claim requires that "the total impurities resulting from the degradation of the bendamustine is less than about 5% *peak area response*, as determined by HPLC at a *wavelength of 223 nm*."  '214 Patent at cls. 1, 6; '248 Patent at cls. 1, 8.  To quantify the impurities in Vivimusta, Dr. Kittendorf did high-performance liquid chromatography ("HPLC") analyses using ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 ¶¶ 34-52; Ex. 2 at -997-98.  To assess the impact of different detection wavelengths, Dr. Kittendorf collected data at ▮▮▮▮ ▮▮▮▮▮ and the claimed 223 nm wavelength.  He then quantified the total impurities using the claimed peak area response method and found the total impurities in Vivimusta to be below 5% regardless of the wavelength. Ex. 1 ¶ 54.  Specifically, he found "the mean normalized peak response for total impurities … was measured to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.*  Eagle's infringement expert, Dr. Trout, relied on these results, in part, for purposes of his infringement opinions.  *See* Ex. 3 ¶¶ 392-408.

In response, Dr. Smith argues Dr. Kittendorf's "peak area response" method is based on the "false assumption" that all analytes have the same response factor and, because those factors are not identical, the peak area response method produces inaccurate results. Ex. 4 ¶¶ 83-87.  He

also testified that "a POSA would not choose" the peak area response technique as it "is inaccurate" "in this application." Ex. 5 at 89:19-22, 94:16-18.  Notably, Dr. Smith conducted no experiments of his own to quantify the impurities in Slayback's product or to show they exceed the "about 5%" limitation recited in the claims.  *See* Ex. 4, *passim*.

### III.    LEGAL STANDARD

The Court's "gatekeeping function" is "important" as expert testimony can be "powerful and quite misleading."  *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340, 1349 (Fed. Cir. 2025).  Slayback must show Dr. Smith's opinions are based on sufficient facts, the product of reliable methods, and "supported by appropriate validation—*i.e.*, good grounds, based on what is known."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993).

### IV.    ARGUMENT

Dr. Smith's disagreements as to the applicability or accuracy of peak area response disregard the claim language, which requires "the total impurities resulting from the degradation of the bendamustine is less than about 5% **peak area response**."  '214 Patent at cls. 1, 6; '248 Patent at cls. 1, 8.  The peak area response method, by definition, assumes the response factors for each analyte are identical.  Ex. 4 ¶¶ 51, 83.  ███████████   ██████████████████████

████████████████████████████████████████████████████████████████  Ex. 5 at 98:15-19.  Yet, he nevertheless argues the assumption of equal response factors is "false."  *E.g.*, Ex. 4 ¶¶ 57, 93.  His opinion that a POSA would use ████████████████████████ to measure impurities fails to meet the standards of *Daubert* for two reasons.

**First**, Dr. Smith's assertion that peak area response is an inaccurate or unreliable method is irrelevant.[2]  His criticisms, at best, attack the claims as written.  But Dr. Smith is not an expert

---

[2] It is also scientifically misguided, as peak area response is "widely used."  *See, e.g.*, Ex. 6 at -07.

on validity or infringement, and none of Slayback's experts relied on his opinions. *See* Ex. 5 at 131:16-19, 157:22-158:1; Ex. 4 ¶ 19. Dr. Smith's entire job was to cast doubt on Dr. Kittendorf's testing. ██████████████████████████████████████████████████ ██████ *See* Ex. 4 ¶ 25 (████████████████████████████████████████████ ██████████████████████████████████████. The infringement inquiry assesses whether "an accused product practices every limitation of a properly construed claim." *Minerva Surgical Inc. v. Hologic, Inc.*, No. 18-217, 2021 WL 3048447, at \*6 (D. Del. July 20, 2021). Dr. Smith's analysis is inadmissible for this reason alone. *See id.* ("An expert's opinion that applies a legally erroneous or irrelevant analysis is inadmissible."); *see also* Fed. R. Evid. 401, 403, 702.

**Second**, any probative value of Dr. Smith's ███████████████████████ are substantially outweighed by the concrete risks of juror confusion and unfair prejudice to Eagle. Allowing him to present this testimony would invite the jury to ignore the claim's requirement to use peak area response, thus improperly questioning the patent drafter's choice of quantitation method—which is not at issue. *Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-1065-LPS, 2014 WL 1814384, at \*3-4 (D. Del. Apr. 14, 2014) (striking "unreliable" analysis where expert's "understanding of the law is incorrect"). Dr. Smith does not have free reign to testify about an unclaimed test method to improperly suggest non-infringement, as the claims expressly require determining the total impurities in terms of "peak area response." Any suggestion to the contrary is legally improper and is not "sufficiently tied to the facts of the case." *Daubert*, 509 U.S. at 591.

## V.   CONCLUSION

Eagle requests the Court exclude Dr. Smith's opinions relating to the reliability of the peak area response method, including Sections V.C., V.D., and VI of his rebuttal expert report (Ex. 4).

3

Dated: June 5, 2026

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Michelle Chin
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 9411
(415) 391-0600

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

**MCCARTER & ENGLISH, LLP**

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

4