**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC, <br><br> Plaintiffs, <br><br> v. <br><br> APOTEX INC. and APOTEX CORP., <br><br> Defendants. | C.A. No. 24-64-JLH <br><br> **REDACTED PUBLIC VERSION** |
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC., <br><br> Defendants. | C.A. No. 24-65-JLH <br><br> **REDACTED PUBLIC VERSION** |

**DEFENDANTS SLAYBACK AND APOTEX'S OPENING BRIEF IN SUPPORT OF
THEIR JOINT MOTION TO EXCLUDE THE EXPERT OPINIONS AND
TESTING OF DR. JEFFREY D. KITTENDORF**

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
**SMITH KATZENSTEIN & JENKINS LLP**
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Defendants Slayback Pharma
LLC and Azurity Pharmaceuticals, Inc.*

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
**MORRIS JAMES LLP**
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendants Apotex Inc. and
Apotex Corp.*

## TABLE OF CONTENTS

TABLE OF CITATIONS ...................................................................................................... iii

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF THE ARGUMENT ................................................................................ 1

III.   STATEMENT OF FACTS ............................................................................................... 2

       A.    DR. KITTENDORF'S HPLC TEST WAS NOVEL ............................................. 2

       B.    DR. KITTENDORF'S NOVEL HPLC TEST WAS NOT VALIDATED
             AND ................................................................................................................... 3

       THERE WAS NO DETERMINATION OF ACCURACY............................................. 3

       C.    DR. KITTENDORF'S NOVEL HPLC TEST IS INACCURATE AND ............... 4

       SIGNIFICANTLY UNDERESTIMATES IMPURITIES ............................................... 4

       D.    DR. KITTENDORF'S RESULTS ARE IRRELEVANT – THE
             "IMPURITIES" WERE NOT IDENTIFIED AND MAY OR MAY NOT
             BE "DEGRADANTS OF BENDAMUSTINE" ...................................................... 6

       E.    DR. KITTENDORF'S EXTRAPOLATION METHODOLOGY IS
             UNKNOWN .......................................................................................................... 6

IV.    ARGUMENT .................................................................................................................... 6

V.     CONCLUSION ................................................................................................................. 7

## TABLE OF CITATIONS

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)......................................................................................... 1, 6

*Hollins v. Walmart.*,
    No. 2:19-cv-05526-SVW, 2021 LX 51022 (C.D. Cal. Aug. 17, 2021)................................... 6

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) .................................... 7

*Shire Development v. Cadila Healthcare*,
    C.A. No. 10-581-KAJ, D.I. 453 (D. Del. Sep. 16, 2016)........................................................ 7

**Rules**

Federal Rule of Evidence 702................................................................................................... 1

Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc. ("Slayback") and Defendants Apotex, Inc. and Apotex Corp. ("Apotex") (collectively, "Defendants") respectfully request that this Court exclude the opinions and testing of plaintiff's expert Dr. Jeffrey D. Kittendorf, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  Dr. Kittendorf's results are inaccurate; not validated; and are irrelevant because Dr. Kittendorf does not know the chemical identity of the analytes and does not know if they are "impurities resulting from the degradation of bendamustine" as required by the claims-in-suit.  Dr. Kittendorf's results are neither reliable nor relevant and should be excluded.

## I.       NATURE AND STAGE OF THE PROCEEDINGS

The nature and stage of the proceedings are set forth in defendant Slayback's Motion for Summary Judgment of Non-Infringement.  This *Daubert* motion is timely brought.  (C.A. No 24-65, D.I. 304)[1].

## II.      SUMMARY OF THE ARGUMENT

Dr. Kittendorf conducted a "high performance liquid chromatography" ("HPLC") experiment on samples of Slayback's Vivimusta® product and Apotex's bendamustine in an attempt to show infringement of the claim limitation "total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm."  However, Dr. Kittendorf's testing results, and his opinions based thereon, are neither reliable nor relevant.  In fact, they are woefully inaccurate.  The Court should exclude Dr. Kittendorf's testing and opinions for any and all of the following independent reasons:

1.       Dr. Kittendorf's HPLC *results are wrong* – underestimating at least two of the major impurities by approximately half (with unknown accuracy for the other nine);

---

[1] All docket citations in this brief are to the docket in C.A. No. 24-65-JLH.

2.      Dr. Kittendorf *did not validate* his novel HPLC method (and *did not assess accuracy*) – a requirement for any novel HPLC method;

3.      Dr. Kittendorf's *results are irrelevant* – the chemical identity of his analytes (and whether most of them are "degradants of bendamustine" as required by the claims) is unknown.

In sum, Dr. Kittendorf's testing and opinions should be excluded.

## III.     STATEMENT OF FACTS

All claims-in-suit require "total impurities resulting from the degradation of the bendamustine … less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm …." (Ex. 1,'214 Patent cl. 1; Ex. 2, '248 Patent cl. 1).  Dr. Kittendorf performed a novel HPLC test on (i) Slayback's Vivimusta® product at 223 nm ███████████ using a peak area normalization technique (Ex. 3, Kittendorf Op. Rep. at ¶¶ 3, 4); and (ii) on a pooled sample of Apotex's bendamustine product at 223 nm ███████████ using a unique column (Ex. 17, Kittendorf Apotex Report at ¶¶ 37).

### A.      Dr. Kittendorf's HPLC Test Was Novel

Dr. Kittendorf used a novel HPLC method that was never used before by anyone. (Ex. 4, Smith Rep. at ¶ 63-64).  Dr. Kittendorf purports to have used the same HPLC method that Slayback uses and was validated and accepted by the United States Food and Drug Administration ("FDA").  However, Dr. Kittendorf made significant changes to the Slayback test – changing the detection wavelength from ██████ to 223 nm, and changing the ████████████████████ to a "peak area response" method.  Similarly, Dr. Kittendorf altered the parameters of the Apotex test by not only changing the wavelength ███████████ to 223 nm) but using a ██████████ than the one specified in the validated Apotex method. (Ex. 8, Kittendorf Tr. 175:22-23).   Thus, Dr. Kittendorf's test was novel.  (Ex. 4, Smith Rep. at ¶¶ 63, 70-73, 82, 108).

2

**B.** **Dr. Kittendorf's Novel HPLC Test Was Not Validated and There Was No Determination of Accuracy**

Novel HPLC tests are required to be validated – particularly when the detection wavelength is changed.  The United States Pharmacopeia ("USP") requires that.  (Ex. 5, USP Ch. <621> in *passim*, specifically at 14).  The Food and Drug Administration ("FDA") requires that.  (Ex. 6, FDA Guideline at 14).  And good laboratory practice also requires that.  (Ex. 4, Smith Rep. at ¶¶ 63-66, 71, 108; Ex. 7, Sinko Rep. at ¶ 62).

Dr. Kittendorf admitted that he did not validate his method.  (Ex. 8, Kittendorf Tr. at 40:24-41:4, 102:23-103:23).  He further admitted that the FDA would require Slayback to re-validate if Slayback changed its method in the ways that Dr. Kittendorf did.  (Ex. 8, Kittendorf Tr. at 40:3-18, 67:11-22, 85:6-17, 91:2-92:17, 115:15-116:5).  Nonetheless, Dr. Kittendorf does not believe those rules apply to him – despite relying on the validation of Slayback's FDA method to justify his test.  (Ex. 8, Kittendorf Depo. Tr. at 116:13-117:9).  That is not correct.

A change of wavelength requires a new validation because the same chemical – let alone 11 or 12 different analytes as in Dr. Kittendorf's tests – can absorb very differently at different wavelengths.  (Ex. 4, Smith Rep. at 43-45, 50-59, 83-94; Ex. 9, Inventor Buxton Depo. Day 2, at 23:10-22; Ex. 10, Snyder 1977 excerpt at 655).  And sometimes a chemical may not absorb at all at one wavelength, despite absorbing at a different wavelength.  (Ex. 8, Kittendorf Tr. at 63:19-64:19).  For instance, within Dr. Kittendorf's own work, he found 12 impurity peaks at ███████ but found only 11 impurity peaks at 223 nm.  (Ex. 3, Kittendorf Op. Rep. at ¶ 53 and Table B1, Table B2, Table B3, and Table B4).  The missing peak at 223 nm was only caused by the change in wavelength because the different results derive from the exact same sample being run on the exact same HPLC column, during the exact same injection.  (Ex. 8, Kittendorf Tr. at 64:3-19).  For these reasons, a new validation using known standards at known concentrations is necessary.  (Ex.

3

11, USP Ch. <1225> at 1; Ex. 5, USP Ch. <621> at 19-20; Ex. 6, FDA Guideline at 6-9; Ex. 4, Smith Rep. at ¶¶ 61-62, 65-66).

A proper validation includes several different tests, including: accuracy, precision, specificity, detection limit, quantitation limit, linearity, range, and robustness. (*See, e.g.*, Ex. 11, USP Ch. <1225> at 1-2, 6; Ex. 4, Smith Rep. at ¶¶ 66, 77-82). Dr. Kittendorf did not do any of these except for limit of detection tests for a small number of his analytes and precision experiment. (Ex. 4, Smith Rep. at 74-82, 101, 108; Ex. 8, Kittendorf Tr. at 40:24-41:4, 102:23-103:23). Importantly, Dr. Kittendorf cannot say what the accuracy of his test is. (Ex. 8, Kittendorf Tr. at 102:23-103:11). That is because he did no accuracy testing against known standards at known concentrations using his novel HPLC method. (Ex. 8, Kittendorf Depo. Tr. at 82:13-15).

### C.     Dr. Kittendorf's Novel HPLC Test Is Inaccurate and Significantly Underestimates Impurities

Although Dr. Kittendorf did not calculate the accuracy of his methodology, we know that some of his results are woefully inaccurate. An accurate peak area normalization requires that the "absorptivities" (also referred to as "response factors") be the same for all analytes in order to generate an accurate answer. (Ex. 4, Smith Rep. at ¶¶ 43-60, 109-110; Ex. 12, Snyder 2010 at 525-26). If the response factors for all analytes are not the same then the results of a peak area normalization will not be accurate and can be off by "orders of magnitude." (Ex. 12, Snyder 2010 at 525-26). Scientists also refer to "relative response factors" which are the ratio of the response factors for an analyte to the main analyte (*e.g.*, bendamustine). The "relative response factors," must all be "1" to obtain accurate results. (Ex.4, Smith Rep. at ¶¶ 43-60, 94, 109-110).

Dr. Kittendorf did *not* calculate any of the "response factors" for the analytes he separated by HPLC. (Ex. 8, Kittendorf Tr. at 46:17-46:21 ("A Correct. We did not calculate response factors for our data analysis."); 219:5-8 (Q: RRF values will impact measurements of any particular

4

impurity, correct? A. Correct)).  Instead, he assumed that the response factors for all of his analytes were the same.  (Ex. 8, Kittendorf Tr. at 133:4-7 (Q With that belief, you would believe that the RRFs at 223 are, in fact, also not all equal to 1 or equal to each other; correct? A *I would suspect they're not all equal to 1*.) (emphasis added); Kittendorf Tr. at 127:18-128:9 ("Q The testing that you did at ███████████ in the Slayback case, in this litigation, am I correct that your peak area normalization numbers are *premised upon the assumption that the relative response factors are all 1; correct?* A *Right*. ….") (emphasis added).  *See also* Ex. 3, Kittendorf Op. Rep. at 53; Ex. 4, Smith Rep. at 93, 96).

But that assumption is demonstrably wrong.  Indeed, for results at ███████████, Dr. Kittendorf had the response factors from Slayback and Apotex, respectively, showing they were different.  (Ex. 13, (Exhibit H of Kittendorf Opening Rep. at 8 (right-hand column of data); and Ex. 8, Kittendorf Tr. at 132:9-14; 220:8-25).  At 223nm, there are several data points from Dr. Kittendorf's testing that allow for calculation of the response factors for bendamustine and two impurities.  (Ex. 4, Smith Rep. at ¶¶ 90-94; Ex. 3, Kittendorf Op. Rep. at ¶ 46; Ex. 14, (Excerpt from Chromatogram in Exhibit I of Kittendorf Op. Rep. file name: "20260112_LW_Bendamustine_SlaybackLOQ12_01_2026003.pdf).  The response factors for those two impurities are around half of those of bendamustine.  Dr. Kittendorf admitted that response factors of around 0.5 would underestimate an analyte by half.  (Ex. 4, Smith Rep. at ¶¶ 90-101, 110; Ex. 8, Kittendorf Tr. at 144:24-145:5 (response factors of half would underestimate by half); 220:22-25.  There is no data to determine the response factors for the other nine analytes at 223 nm.  The absence of those data make any correction to those percentages of those other impurities impossible.  (Ex. 4, Smith Rep. at ¶ 101).

5

**D.     Dr. Kittendorf's Results are Irrelevant – The "Impurities" Were Not Identified And May or May Not Be "Degradants of Bendamustine"**

The claims require a measurement of the "total impurities *resulting from the degradation of the bendamustine*." (Exs. 1, 2, Claims). Dr. Kittendorf admitted that he did not perform experiments to identify the analytes that he separated in his HPLC experiments and does not know what they are. (Ex. 8, Kittendorf Tr. at 54:1-58:2, 56:13-56:17, 57:18-22). He further admitted that he simply does not know whether most of the HPLC peaks are degradants of bendamustine or not. (Ex. 8, Kittendorf Tr. at 54:17-56:7).

**E.     Dr. Kittendorf's Extrapolation Methodology Is Unknown**

Dr. Kittendorf did not conduct any tests that meet the "after at least about 15 months" element of the claims for the Apotex products. All of his testing was done at 13 months. (Ex. 8, Kittendorf Tr. 232:4-8). Dr. Kittendorf did not conduct any other testing that would allow him to extrapolate from his 13 month data. *Id.* at 236:23-237:16. His opinion that Apotex's products meet the 15 month limitation is purely speculative. (Ex. 17, Kittendorf Report at ¶ 24). Dr. Kittendorf identified no methodology that would allow a POSA to extrapolate testing data from a single time point to beyond 15 months. (Ex. 18, Dyar Rebuttal Report ¶¶ 285-287).

**IV.     ARGUMENT**

Rule 702 of the Federal Rules of Civil Procedure, and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), require trial judges to act as gatekeepers and to keep unreliable and irrelevant expert opinion from the jury. Analytical tests that are not validated and inaccurate should be excluded. *Hollins v. Walmart.*, No. 2:19-cv-05526-SVW, 2021 LX 51022, at *7 (C.D. Cal. Aug. 17, 2021) (excluding test because the "[expert] admitted at the evidentiary hearing that none of his test methods are validated."). Analytical tests that do not identify the analytes (*e.g.*, whether they are bendamustine degradants) should be

disregarded.  (Ex. 15, *Shire Development v. Cadila Healthcare*, C.A. No. 10-581-KAJ, D.I. 453 at 34-35, ¶ 69 (D. Del. Sep. 16, 2016) ("Without the ability to confirm whether the substance tested by Dr. O'Halloran was the hydrated form of magnesium stearate present in the Zydus ANDA product, the results of his experiments are irrelevant to the question at hand, and so I disregard them.")).  Moreover, any extrapolations from flawed methodologies are properly excluded as unreliable.  *In re TMI Litig.*, 193 F.3d 613, 677 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000).

Dr. Kittendorf's tests are neither reliable nor relevant.  The tests are not validated; the accuracy of the tests are unknown; and the tests are premised on a *false* assumption that all the "response factors" for all the analytes are the same – thus underestimating at least two impurities by approximately half.[2]  Further, Dr. Kittendorf does not know whether most of the analytes that he found are degradants of bendamustine or not – making the test irrelevant to the claims-in-suit which requires an assessment of degradants of bendamustine.

## V.    CONCLUSION

For the reasons stated, Defendants Slayback and Apotex respectfully request that Dr. Kittendorf's test results and opinions, and the opinions of other witnesses based on Dr. Kittendorf's testing, be excluded.

---

[2] These same criticisms also apply to earlier testing that Dr. Kittendorf did in another case – *Eagle v. Hospira*, that plaintiffs' expert Dr. Trout also relies on and those results and opinions should also be excluded.  (Ex. 16 (Kittendorf Report in *Hospira*); and Ex. 4, Smith Rep. at ¶¶ 102-107, and 111 (critique of the *Hospira* Report)).

Dated: June 5, 2026

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Of Counsel:*

Jason A. Lief
Alan H. Pollack
Daniel E. Forchheimer
Robyn Ast-Gmoser
Kiersten A. Fowler
Audrey R. Sparschu

**WINDELS MARX LANE & MITTENDORF, LLP**

180 Park Ave
Florham Park, NJ 07932
(973) 966-3200

156 West 56th Street
New York, NY 10019
(212) 237-1000

jlief@windelsmarx.com
apollack@windelsmarx.com
dforchheimer@windelsmarx.com
rast-gmoser@windelsmarx.com
kfowler@windelsmarx.com
asparschu@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**MORRIS JAMES LLP**

*/s/ Cortlan S. Hitch*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Of Counsel:*

Deepro Murkerjee
Jitendra Malik
Joseph M. Janusz
Lance A. Soderstrom
Matthew T. Messina
Rachel L. Schweers
Christopher B. Ferenc

**KATTEN MUCHIN ROSENMAN LLP**

50 Rockefeller Center
New York, NY 10020
(212) 940-8800

550 South Tryon Street, Suite 2900
Charlotte, NC 28202
(704) 444-2000

1919 Pennsylvania Ave., NW., Suite 800
Washington, DC 20006
(202) 625-3500

525 W. Monroe St.
Chicago, IL 60661
(312) 902-5200

deepro.mukerjee@katten.com
jitty.malik@katten.com
joe.janusz@katten.com
lance.soderstrom@katten.com
matthew.messina@katten.com

rachel.schweers@katten.com
christopher.ferenc@katten.com

*Attorneys for Defendants Apotex Inc. and
Apotex Corp.*

9