**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>   Plaintiffs,<br><br>   v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC,<br><br>   Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br> C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |

**PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S
RESPONSE TO DEFENDANTS SLAYBACK PHARMA LLC AND AZURITY
PHARMACEUTICALS, INC.'S CONCISE STATEMENT OF FACTS IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT REGARDING NON-INFRINGEMENT**

Eagle provides the following responses to Slayback's concise statement of undisputed facts for Slayback's motion for summary judgment of non-infringement (D.I. 362).[1]

## I.      Patents-in-Suit

1.      Admitted.

2.      Denied.  Claim 6 of the '214 patent and Claim 8 of the '248 patent state "wherein the pharmaceutically acceptable fluid consists of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol."  D.I. 365-1, Ex. 2 at Claim 6, Col. 14:29-32 and Ex. 3 at Claim 8, Col. 14:6-9.

3.      Irrelevant.

4.      Irrelevant.

5.      Admitted that the specification of the '214 and '248 patents states that "[f]or purposes of *this embodiment*, the amount of fluid which is sufficient is an amount which allows the bendamustine to be dissolved or dispersed to a degree which renders the liquid composition ready for use."  D.I. 365-1, Ex. 2 at 6:30-33 (emphasis added).  Denied as to the remaining statements in paragraph 5.

## II.      The Accused Product

6.      Admitted that Vivimusta's label states that "[e]ach milliliter contains 25 mg of bendamustine hydrochloride equivalent to 22.7 mg of bendamustine, 5 mg of monothioglycerol, 39.45 mg (5% v/v) of absolute alcohol, and q.s. to 1 mL polyethylene glycol 400. Sodium hydroxide is used to adjust pH of polyethylene glycol 400."  D.I. 365-1, Ex. 4, at § 11, speaks for itself.  Denied as to the remaining statements in paragraph 6.

---

[1] All docket citations to consolidated case No. 24-65 unless otherwise stated.

7.    Denied.  Sodium hydroxide is a solid.  C.A. No. 24-64, D.I. 351, Ex. 1 at -719

("Sodium hydroxide occurs as a white or nearly white fused mass."); Ex. 9 at -647 (describing

sodium hydroxide as a solid); Ex. 10 (same).  ███████████████████████████

███████████████████ D.I. 365-1, Ex, 5 ¶¶ 73-76, 135.  ███████████████

███████████████████████████████████████ D.I. 387, Ex. 2 at

-924.  ██████████████████████████████████████████████

████████████████████████████████████████████ D.I.

373-1, Ex. 25 ¶ 324.  ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

8.    Denied.  D.I. 365-1, Ex. 7, speaks for itself.  U.S. 2013/0210879 ("the '879

Publication") does not ████████████████████████████████████

██████████████████████████████████████████████████

9.    Admitted that in a letter dated July 14, 2023, the FDA wrote to Defendants:



Denied as to the remaining statements in paragraph 9.

10.    Denied.  While pH adjustment can impact stability, there is no evidence that pH adjustment necessarily does so or that it is always required.  *See* Ex. 2 ¶ 107 ("sodium hydroxide is not necessary for the stability of the claimed formulations. . . NaOH is only needed to condition PEG lots that have suboptimal incoming pH due to variable levels of acidic impurities from PEG manufacturing").

11.    Denied.  D.I. 365-1, Ex. 10, at -698 speaks for itself.

**III.**    

13.    Denied.  *See* Fact 7 above.

**IV.**    

14.    Denied.  *See* Fact 7 above.

15.    Denied.  *See* Fact 10 above.

**V.**    

16.    Denied.  *See* Fact 7 above.

17.    Denied.  D.I. 365-1, Ex. 9 at 220:8-221:14, speaks for itself.  At his deposition, Dr. Trout testified that the five *solvents* that make up the "pharmaceutically acceptable fluid" may contribute relatively to stability.  D.I. 365-1, Ex. 5 at ¶ 210, speaks for itself.  In Dr. Sinko's expert report, he opined about                            which are not relevant to the five *solvents* recited contributing to the stability of the *claimed* formulations.  D.I. 365-1, Ex. 2 at 1:60-67, 2:1-11, and 2:18-20 also does not pertain to the five *solvents* recited contributing to the stability of the *claimed*

3

formulations.  D.I. 372-1, Ex. 16 at -319, speaks for itself.  █████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████

18.  Denied.  *See* Facts 7 and 10 above.

## VI.  Estoppel and File Histories

19.  Denied.  D.I. 366-1, Ex. 12, at -1105, speaks for itself.  Initial claim 1 recited "[a] sterile vial containing a liquid bendamustine-containing composition comprising bendamustine, or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is from about 20 mg/mL to about 60 mg/mL; polyethylene glycol; and a stabilizing amount of an antioxidant."

20.  Vague, and therefore denied.  D.I. 366-1, Ex. 12, at -1172, speaks for itself.  Claims 1-3, 6-8, 11-13 and 16-18 were initially "rejected [by the Examiner] under 35 U.S.C. 103(a) as being unpatentable over Drager et al."    Claims 4, 5, 14 and 15 were initially "rejected [by the Examiner] under 35 U.S.C. 103(a) as being unpatentable over Drager et al. (US 20110190363), as applied to claims 1-3, 6-8, 11-13 and 16-18 above, in further view of Tait et al. (WO 0202125), of record.  *Id.* at -1176.  Claims 9 and 10 were initially "rejected [by the Examiner] under 35 U.S.C. 103(a) as being unpatentable over Drager et al."  *Id.* at -1179.  Ultimately, the Applicants were able to overcome the rejection as the Examiner confirmed "that the rejections over Drager have been withdrawn."  *Id.* at -1925.

21.  Denied.  D.I. 366-1, Ex. 12, at -1271-72, speaks for itself.  On June 14, 2023, Applicant provided amendments to Claim 1 and Claim 11 adding:

4

1. (Currently Amended) A sterile vial containing a liquid bendamustine-containing composition comprising

bendamustine, or a pharmaceutically acceptable salt thereof,

wherein the bendamustine concentration in the composition is from about 20 mg/mL to about 60 mg/mL;

a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

a stabilizing amount of an antioxidant.

11. (Currently Amended) A bendamustine-containing composition comprising

bendamustine, or a pharmaceutically acceptable salt thereof, and a stabilizing amount of an antioxidant, in a pharmaceutically acceptable fluid;

wherein the pharmaceutically acceptable fluid comprises consists of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol and glycofurol; and

wherein the bendamustine concentration in the pharmaceutically acceptable fluid is from about 20 mg/mL to about 60 mg/mL.

22.    Vague, and therefore denied.  D.I. 367-1, Ex. 12, speaks for itself.  The amended claims as set forth on November 8, 2023 were allowed and the '214 patent issued.

23.    Denied.  The Asserted Claims list five possible "pharmaceutically acceptable fluids:" polyethylene glycol, propylene glycol, ethanol, benzyl alcohol, and glycofurol.  There is no dispute that each is a solvent.  Ex. 2 ¶ 110.  During prosecution history of the '214 patent, in response to the Examiner's rejection over Drager, Eagle amended the claims to require "pharmaceutically acceptable fluid consisting of" a defined group of polar protic *solvents* to distinguish from Drager's disclosure of polar aprotic *solvents*.  D.I. 366-1, Ex. 12, at -1271-72.  Eagle explained in its remarks that "Drager teaches that each of its formulations must include some amount of polar aprotic *solvent*.  While Drager references that polar protic *solvent* may be used, that is only in addition to, not instead of, the polar aprotic *solvent*.  Drager fails to disclose or suggest any bendamustine formulations with *solvent systems* composed of protic *solvent* in the absence of any aprotic *solvent*.  Indeed, Drager teaches away from the use of formulations including only polar protic *solvent*. . ." *See id.* at -1275-76.

5

24.    Denied.  The "pharmaceutically acceptable fluid consisting of" limitation was added specifically to exclude certain solvents in a prior art reference.  The original claims in the '214 patent required that the liquid bendamustine containing composition comprise polyethylene glycol.  D.I. 366-1, Ex. 12, at -1105.  The Examiner then rejected the claims over WO 2010/036702 to Drager ("Drager"), reasoning that Drager already taught liquid bendamustine formulations comprising polyethylene glycol.  *Id.* at -1173.  However, Drager also required additional "polar aprotic solvents."  C.A. No. 24-64, D.I. 359, Ex. 4 at 2:18-20.  In response to the Examiner's rejection, Eagle amended the claims to require "pharmaceutically acceptable fluid consisting of" a defined group of polar protic solvents to distinguish from Drager's disclosure of polar aprotic solvents.  *Id.* at -1173, -1271-72; *see also id.* at -1274-76.  The addition of the "consisting of" claim language was meant to limit the solvent to ***only*** the listed polar protic solvents in order to carve out the inclusion of any polar aprotic solvents disclosed in Drager.  The Examiner agreed, and in fact, separately confirmed that "pharmaceutically acceptable fluid" referred to "the liquid ***carrier*** for the ultimate dosage form," *i.e.*, the solvent system.  *Id.* at -1899-90; *see also id*. at -1904 (noting that the solvent was limited to "liquid polyethylene glycol, propylene glycol, ethanol or mixtures thereof"); D.I. 373-1, Ex. 25 ¶¶ 151, 294.

## VII.    The Tangentiality Exception Does Not Apply

25.    Denied.  *See* Fact 7 above.

26.    Denied.  *See* Facts 7, 10, and 17 above.

27.    Denied.  D.I. 366-1, Ex. 12, at -1271-72, speaks for itself.  On June 14, 2023, Applicant provided amendments to Claim 1 and Claim 11.  *See* Fact 21 above.  The amended claims added five specific ***polar protic solvents*** to the claim.  *Id.*

28.    Denied.  *See* Fact 8 above.

6

Dated: July 1, 2026

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Michelle Chin
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
michelle.chin@lw.com

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
brett.sandford@lw.com

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
kelly.welsh@lw.com

MCCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

7

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing

documents were caused to be served on July 1, 2026, on the following counsel in the manner

indicated:                              **VIA EMAIL:**

Daniel A. Taylor
Neal C. Belgam
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
Dtaylor@skjlaw.com
Nbelgam@skjlaw.com

Jason A. Lief
Allan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Daniel E. Forchheimer
Kiersten A. Fowler
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
dforchheimer@windelsmarx.com
kfowler@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

*/s/ Alexandra M. Joyce*
Alexandra M. Joyce (#6423)

ME1\61695075.v1