# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC,<br><br>Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br>███████████████ |

**PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S RESPONSE TO DEFENDANTS SLAYBACK PHARMA LLC AND AZURITY PHARMACEUTICALS, INC'S CONCISE STATEMENT OF FACTS IN OPPOSITION TO PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S MOTION FOR SUMMARY JUDGMENT REGARDING INFRINGEMENT**

Eagle provides the following responses to Slayback's answering statement of facts in opposition to Eagle's motion for summary judgment of infringement (D.I. 418).[1]

1.    Denied.  As explained by Dr. Trout, to a POSA, the "relevant inquiry under the Asserted Claims is not whether a given substance 'flows' in the abstract; it is what function that substance serves in the claimed formulation."  *See, e.g.*, D.I. 429-1, Ex. 34 ¶¶ 25-28.

2.    Irrelevant.

3.    Irrelevant.

4.    Denied.  The "pharmaceutically acceptable fluid consisting of" limitation was added specifically to exclude certain types of solvents in a prior art reference.  The original claims in the '214 Patent required that the liquid bendamustine containing composition comprise polyethylene glycol. D.I. 424-1, Ex. 45 at -1105.  The Examiner then rejected the claims over WO 2010/036702 to Drager ("Drager"), reasoning that Drager already taught liquid bendamustine formulations comprising polyethylene glycol.  *Id.* at -1173.  However, Drager required the formulations to contain "polar aprotic solvents."  C.A. No. 24-64, D.I. 359, Ex. 4 at 2:18-20.  In response to the Examiner's rejection and distinguish Drager's inclusion of polar aprotic solvents, Eagle amended the claims to require "pharmaceutically acceptable fluid consisting of" a defined group of polar protic solvents.  D.I. 424-1, Ex. 45 at -1173, -1271-72; *see also id.* at -1274-76. The addition of the "consisting of" claim language was thus meant to limit the solvent to **_only_** the listed polar protic solvents in order to carve out the inclusion of any polar aprotic solvents disclosed in Drager.  The Examiner agreed, and in fact, confirmed that "pharmaceutically acceptable fluid" referred to "the liquid *carrier* for the ultimate dosage form," *i.e.*, the solvent system.  D.I. 425-1 at -1899-904; *see also id.* at -1904 (noting the solvent was limited to "liquid polyethylene glycol,

---

[1] All docket citations are to consolidated case No. 24-65 unless otherwise stated.

propylene glycol, ethanol or mixtures thereof"); D.I. 429-1, Ex. 36 ¶¶ 151, 294.

5.      Denied.  D.I. 420-1, Ex. 2 and Ex. 3 speak for themselves.  U.S. 2013/0210879 (the "'879 Publication") does not "state that aqueous sodium hydroxide" is a "pharmaceutically acceptable fluid."  Nor does U.S. 13/767,672 (the "'672 Application").  The phrase, "aqueous sodium hydroxide," does not appear in either the '879 Publication or '672 Application.

6.      Irrelevant.

7.      Denied.  D.I. 429-1, Ex. 10 and Ex. 11 speak for themselves.  ███████████ ████████████████████████████████████████████████████████████████ ██████████████" D.I. 429-1, Ex. 10 at -698; *see also id.*, Ex. 35 at -128 (███████████████ ███████████████████████████████████"). The phrase, ██████████████████████ does not appear in either document.

8.      Denied.  Sodium hydroxide is a solid.  C.A. No. 24-64, D.I. 351, Ex. 1 at -719 ("Sodium hydroxide occurs as a white or nearly white fused mass."); D.I. 423, Ex. 9 at -647 (describing sodium hydroxide as a solid); D.I. 423, Ex. 10 at -975 (same).  ████████████ ██████████████████████████████████████ D.I. 429-1, Ex. 9 ¶¶ 73-76, 135. Vivimusta's label does not list water as an ingredient, and does not state that Vivimusta contains sodium hydroxide.  D.I. 387, Ex. 2 at -924.  Moreover, ████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████ D.I. 429-1, Ex. 36 ¶ 324.  ████████████████ ████████████████████████████████████" D.I. 429-1, Ex. 34 ¶¶ 34, 117; *see* D.I. 423 Ex. 11 at -476 (███████████████████████████████████████████ ██████); *cf.* D.I. 429-1, Ex. 9 ¶¶ 53-54 (conflating melting with dissolution).

9.      Denied.  ████████████████████████████████████████████

2

████  *See* Fact 8 above.

10.    Denied.  *See* Fact 8 above.

11.    Irrelevant.

12.    Denied.  ████████████████████████████████████████████

██████████████.”  D.I. 387, Ex. 4 ¶ 37; *see also* Fact 8 above.

13.    Irrelevant.  ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████.  *See* D.I. 429-1, Ex. 34 ¶¶ 148-50.

14.    Denied.  *See* Facts 8 and 12 above.

15.    Denied.  *See* Facts 8 and 12 above.

16.    Denied.  While pH adjustment can impact stability, there is no evidence that pH adjustment necessarily does so or that it is always required.  *See* D.I. 429-1, Ex. 34 ¶ 107 ("sodium hydroxide is not necessary for the stability of the claimed formulations. . . NaOH is only needed to condition PEG lots that have suboptimal incoming pH due to variable levels of acidic impurities from PEG manufacturing").  ████████████████████████████████████████

████████████████████████████████████████████████████████

17.    Denied.  D.I. 429-1, Ex. 19 at 220:8-221:14, speaks for itself.  At his deposition, Dr. Trout testified that the five solvents that make up the "pharmaceutically acceptable fluid" may contribute relatively to stability.  D.I. 429-1, Ex. 9 at ¶ 210, speaks for itself.  In Dr. Sinko's expert report, he opined ████████████████████████████████████████

████████████████████████████████████████.  D.I. 420-1, Ex. 26 at 1:60-67, 2:1-11, and 2:18-20 ████████████████████████████████████████

████████████████.  D.I. 429-1, Ex. 24 at -329, speaks for itself.  ████████████████



18.    Denied.  As Dr. Trout explains, sodium hydroxide is associated with the production of PEG.  *See* D.I. 429-1, Ex. 36 ¶¶ 243-54.  In manufacturing purified PEG 400 grades, commercial suppliers such as Croda commonly employ sodium hydroxide as a catalyst or process aid, and trace sodium is therefore expected as part of that excipient's normal impurity profile.  *Id.* ¶ 247.

19.    Denied.  *See* Fact 18 above.

20.    Vague, and therefore denied. Eagle's testing expert, Dr. Kittendorf, completed HPLC testing of Vivimusta ███████████████.  D.I. 387, Ex. 21 at Tables B1, B2.  Dr. Kittendorf adopted ████████████████████████████████████████████████████████████████████████.  *Id*. ¶¶ 34-37; *see generally* D.I. 387, Ex. 22, Ex. 24.  ████████████████████████████████████████████████████████████████████████.  *Id*., Ex. 21 at Tables B1, B2, ¶ 54.  Dr. Kittendorf concluded that r███████████████████████████████████████████████████████████████████  *Id*. ¶¶ 54-55.

21.    Denied.  The Asserted Claims do not "require impurity testing."  The Asserted Claims recite "wherein the total impurities resulting from the degradation of the bendamustine is less than about 5% peak area response, as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C. to about 25° C."  D.I. 420-1, Ex. 26, at Claims; D.I. 422-1, Ex. 44, at Claims.

Dated: July 20, 2026

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Michelle Chin
Nathan Fuller
Manuela Burek
Hanna Bondarowicz
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
michelle.chin@lw.com
nathan.fuller@lw.com
manuela.burek@lw.com
hanna.bondarowicz@lw.com

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
brett.sandford@lw.com

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
kelly.welsh@lw.com

Respectfully submitted,

MCCARTER & ENGLISH, LLP

/s/ Alexandra M. Joyce
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

5

Cecilia Bain
LATHAM & WATKINS LLP
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
(650) 328-4600
cecilia.bain@lw.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on July 20, 2026, on the following counsel in the manner indicated:                    **VIA EMAIL:**

Daniel A. Taylor
Neal C. Belgam
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
Dtaylor@skjlaw.com
Nbelgam@skjlaw.com

Jason A. Lief
Allan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Daniel E. Forchheimer
Kiersten A. Fowler
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
dforchheimer@windelsmarx.com
kfowler@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

*/s/ Alexandra M. Joyce*
Alexandra M. Joyce (#6423)

ME1\61695075.v1