# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC.,<br><br>        Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br>█████████████████ |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S *DAUBERT* MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' EXPERT, JAMES MALACKOWSKI**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................1

    A.  Mr. Malackowski's Patent-Counting Methodology Is Unreliable...........................1

    B.  Mr. Malackowski's Reliance On The ███████████████████████ Is Legally Improper And Not Merely A Factual Dispute ........................................4

    C.  The Third-Party Licenses Remain Non-Comparable Regardless of Their Use ..................................................................................................................5

III. CONCLUSION......................................................................................................6

# TABLE OF AUTHORITIES[1]

## CASES

*Biscotti Inc. v. Microsoft Corp.*,
2017 WL 2607882 (E.D. Tex. May 25, 2017)........................................................................... 6

*Commonwealth Sci. and Indus. Rsch. Org. v. Cisco Sys., Inc.*,
2014 WL 3805817 (E.D. Tex. July 23, 2014) ......................................................................... 2

*Golden Bridge Tech. v. Apple Inc.*,
2014 WL 2194501 (N.D. Cal. May 18, 2014) ................................................................. 2, 4, 8

*GPNE Corp. v. Apple, Inc.*,
2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ......................................................................... 2

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
No. 17-269, 2019 WL 4198194 (D. Del. Sept. 4, 2019)........................................................... 3

*Open Text S.A. v. Box, Inc.*,
2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ........................................................................... 2

*Puff Corp. v. SHO Prods., LLC*,
No. 22-2008, 2024 WL 2208929 (C.D. Cal. Apr. 19, 2024) ................................................. 4, 5

*Sherwin-Williams Co. v. PPG Indus., Inc.*,
No. 17-1023, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2020) ..................................................... 4

*TC Tech. LLC v. Sprint Corp.*,
2019 WL 2515779 (D. Del. June 18, 2019)............................................................................. 6

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011).............................................................................................. 3

*WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*,
No. 18-529, 2022 WL 2773292 (M.D. Fla. May 23, 2022)...................................................... 5

## RULES

Rule 403 ................................................................................................................................ 6

---

[1] All emphasis added, and internal citations and quotations omitted, unless otherwise noted.

## I.    INTRODUCTION

Slayback's opposition confirms that Mr. Malackowski's reasonable royalty analysis rests on unreliable methods that fail *Daubert* at each turn.  Rather than defend the merits, Slayback mischaracterizes the law, rewrites his analysis, and attacks Dr. Vellturo's opinions—arguments that belong in Slayback's own *Daubert* motion, not this one.  Each of Slayback's arguments fails.

***First***, Slayback admits that Mr. Malackowski derived his implied ██ "per patent" rate by dividing the ███ rate in the ████████████ by the number of licensed patents—the textbook "patent-counting" method that courts have repeatedly condemned.  Slayback tries to dress up that mechanical exercise with additional considerations that Mr. Malackowski allegedly layered on top.  None appear in his report or formed the basis for his so-called apportionment; even if they did, his baseline figure still rests on a legally unfounded assumption of equal patent value.

***Second***, Slayback's argument that the availability of the ████████████ is a "question of fact" ignores the settled legal standard requiring that a non-infringing alternative be available as of the hypothetical negotiation date.  As Eagle's summary judgment motion shows,

██████████████████████████████████████████████████

██████████████████████████████████████████████████

***Third***, Slayback contends that Mr. Malackowski's third-party license analysis is reliable because he used them "for corroboration," not to quantify the royalty.  D.I. 394 ("Opp.") at 7.  That is legal error.  Regardless of label, licenses must satisfy technical and economic comparability, and be adjusted for their differences.  These radically disparate licenses fail that test, and Mr. Malackowski's unreliable, misleading, and prejudicial analysis of them should be excluded.

## II.    ARGUMENT

### A.    Mr. Malackowski's Patent-Counting Methodology Is Unreliable

1

Slayback admits that Mr. Malackowski performed a "per-patent" calculation dividing the ███ rate in the █████████████████ by the ██ licensed patents, which he then "doubled to ████ for the two Asserted Patents." Opp. at 2. That is precisely the arithmetic exercise courts have excluded under *Daubert* (*see* D.I. 345 at 6-7, collecting cases), and the same result is warranted here. Slayback's main defense—that Mr. Malackowski's division was "informed by" other factors, including his licensing experience, the Sedona Conference factors, the *Georgia Pacific* factors, and Eagle's litigation history (Opp. at 4-5)—fails on both the facts and the law.

Slayback never cites Mr. Malackowski's report to support this attorney argument, much less any portion showing he actually used these factors to apportion. He did not, and this post hoc rationalization cannot disguise his admitted methodology of improper patent counting:

> Q.    I just want to be clear on your methodology was to take the stated ███████ rate and divide by the number of patents licensed in the ████████████ ?
>
> A.    ***Yes, that was the methodology***.

D.I. 346, Ex. 4 at 201:17-21; *see id.*, Ex. 3 at 68. That unambiguous admission shows his analysis starts from the very equal-value assumption the case law "makes clear" renders his opinion unreliable. *Golden Bridge Tech. v. Apple Inc.*, 2014 WL 2194501, at *6 (N.D. Cal. May 18, 2014).

Even if the other factors were considered, they do not save Mr. Malackowski's opinions. ***First***, an expert's "licensing experience" is no basis for apportioning—it is "an abstraction not visible to the eyes of the Court, the jury, and opposing counsel, or testable in the crucible of cross-examination." *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015); *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) ("30 years of experience alone does not constitute a sufficiently reliable and testable methodology to prevent exclusion under *Daubert*."). Mr. Malackowski should know this, as his opinions have been excluded on this very basis. *Commonwealth Sci. and Indus. Rsch. Org. v. Cisco Sys., Inc.*, 2014

2

WL 3805817, at *7 (E.D. Tex. July 23, 2014) (his "drastic final apportionment is arbitrary, capricious, and supported by no sound economic methodology" other than his "experience in teaching licensing courses and conducting licensing negotiations"). **Second**, Mr. Malackowski analyzed "the Sedona Conference **comparability** factors" to establish comparability, **not** to apportion the rate. *See* D.I. 346, Ex. 4 at 171:8-11 ("Q. Okay. And then to assess economic comparability, you analyze the Sedona Commentary License Comparability Factors; right? A. Correct."). **Third**, Mr. Malackowski summarized "Eagle's litigation history" (D.I. 395-1 at 10-16, App. 10.1.1) but not to apportion, as confirmed by its absence from the one paragraph setting forth his "apportionment," *id.* at 68. Indeed, the licensed patents were asserted in very unequal amounts (*id.* at App. 10.1.1) and thus cannot support the equal value Mr. Malackowski assigned them. D.I. 346, Ex. 4 at 199:2-200:21, 201:17-21. That he ultimately "increased" his rate to ▮ based on the *Georgia Pacific* factors and other valuation analyses (e.g., cost approach) is irrelevant—the ▮ figure is admittedly a "baseline" input (Opp. at 4) on which his ultimate royalty rests. D.I. 346, Ex. 4 at 154:13-18; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("Beginning from a fundamentally flawed premise" yields "a fundamentally flawed conclusion.").

Slayback's argument that Dr. Vellturo's apportionment is "categorically worse" is wrong and irrelevant. Even if that critique had merit, which it does not because Dr. Vellturo did not simply apply the entire portfolio rate (*see* D.I. 406), it would not make Mr. Malackowski's patent-counting exercise any more reliable. *See Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 2019 WL 4198194 at *7 (D. Del. Sept. 4, 2019) ("*Civiq*") ("An expert's opinion that is not … the product of reliable principles and methods cannot survive simply because the opposing party's expert also offers an improper opinion."). Slayback's attempt to distinguish *PMC* and *Limelight*—while ignoring Eagle's other cases (D.I. 345 at 6-8)—as involving only a "blind assumption of equal

patent value [] with no analysis" fails.  Opp. at 4.  That is precisely what Mr. Malackowski did: he divided ▮▮▮ by ▮▮, assumed each patent contributed equally, got no technical input, and did no analysis to assess the relative value of individual licensed patents.  D.I. 345 at 4, 6-8.  This is identical to the flawed analyses stricken in *PMC*, *Limelight*, and *Golden Bridge*.

**B.**   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Is Legally Improper And Not Merely A Factual Dispute**

Unable to dispute the facts establishing that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Slayback raises three arguments to deflect from this fundamental flaw in Mr. Malackowski's analysis.  Opp. at 5-6.  Each fails.

First, Slayback argues Mr. Malackowski's analysis is admissible because availability is a "question of fact."  Opp. at 5.  Slayback conflates the jury's role to weigh evidence with the Court's gatekeeping role.  "[A]n allegedly non-infringing alternative cannot be ***relevant*** to the reasonable royalty analysis unless available ***at the time infringement began***."  *Puff Corp. v. SHO Prods., LLC*, 2024 WL 2208929, at *13 (C.D. Cal. Apr. 19, 2024) (original emphasis).  And "where there is no evidence to support the availability … of an alternative product during the damages period, summary judgment is proper."  *Sherwin-Williams Co. v. PPG Indus., Inc.*, 2020 WL 1283465, at *9 (W.D. Pa. Mar. 18, 2020).  Here, the undisputed facts set forth in Eagle's summary judgment motion establish that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ renders his methodology unreliable.  *See* D.I. 345 at 9 (collecting *Daubert* cases).

Second, Slayback distorts the legal standard by asserting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,"  Opp. at 1, and that "the relevant inquiry" is whether an alternative would be

"a realistic opinion," which "does not demand FDA approval, market launch, or commercial readiness." *Id.* at 5-6. Slayback invites legal error. Under black letter law, Slayback must establish this alternative would be "available ***at the time infringement began***." *Puff*, 2024 WL 2208929, at *13 (original emphasis). Slayback's novel "realistic option" standard has no basis in law, and its remaining arguments are strawmen: Eagle never argued that Mr. Malackowski used this alternative "to limit Eagle's lost profits" or that FDA approval is a *per se* requirement. Opp. at 1.

Slayback argues ███████████████████████████████████ ███████████████████████ creating "the opposite temporal relationship" from *Puff*. Opp. at 6. That misses the point. The relevant inquiry is availability at the hypothetical negotiation, not when development began, as Slayback's cited cases confirm. *See WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*, 2022 WL 2773292, at *2 (M.D. Fla. May 23, 2022) ("the question for the Court is whether acceptable non-infringing alternatives were available to Comcast on September 19, 2016"). Slayback's cited cases—*WhereverTV*, *Abbott*, and *Zygo*—are inapt because none involved an alternative requiring FDA authorization. *Abbott* and *Zygo* were lost-profits cases applying a distinct legal test "misplaced to calculate the reasonable royalty." *WhereverTV*, 2022 WL 2773292, at *4. And in *WhereverTV*, the court denied summary judgment only because availability presented "a close call," while still acknowledging that availability "may not be merely conjectural." *Id.* at *6. Here, it is entirely conjectural to claim, as Mr. Malackowski does, ████ ███████████████████████████████████████████████████ ███████████████████████████████

### C.      The Third-Party Licenses Remain Non-Comparable Regardless of Their Use

Slayback concedes that Mr. Malackowski had no technical input to support his third-party license analysis, admits that those licenses have differences from the hypothetical license that place "upward pressure on the royalty," and concedes that he made no adjustment for those differences.

5

Opp. at 7.  Even assuming the licenses were economically comparable (they are not), these concessions alone provide two independent bases for excluding his unreliable analysis.

Slayback contends that Mr. Malackowski need only show his ▮ royalty rate "is consistent with broadly analogous pharmaceutical formulation licenses" because he used them "only for corroboration."  Opp. at 1, 7.  Not true.  That standard is cut from whole cloth; it ignores established law holding that using licenses as a "reasonableness check" does not excuse an expert "from meeting *Daubert* standards," including establishing comparability and adjusting for the differences to the hypothetical license.  *TC Tech. LLC v. Sprint Corp.*, 2019 WL 2515779, at *9 n.7 (D. Del. June 18, 2019).  As one court held in rejecting an identical argument, whether licenses are used to drive a reasonable royalty rate or merely to confirm it, in both instances they are used as evidence to support the expert's ultimate damages opinion—a "distinction without a difference." *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2607882, at *3 n.1 (E.D. Tex. May 25, 2017).  That Mr. Malackowski uses the rates from these radically different non-comparable licenses as corroboration, while only "recognizing" but never adjusting for their significant differences from the hypothetical license (Opp. at 7), "proves very little while exposing the jury to misleading numbers." *TC Tech.*, 2019 WL 2515779, at *9 n.7.  Thus, even if his methodology were reliable (it is not), the Court should "surely exclude it under Rule 403, as its probative value is substantially outweighed by the risk of unfair prejudice to [Eagle] of putting the [] rates into evidence."[2]  *Id.*

## III.    CONCLUSION

Eagle requests that the Court exclude Mr. Malackowski's reasonable royalty opinions.

---

[2] Slayback again seeks to deflect from Mr. Malackowski's shortcomings by attacking Dr. Vellturo, this time claiming that Dr. Vellturo "lacked any technical comparison" of the licensed and Asserted Patents.  Opp. at 8.  That is false—Dr. Vellturo relied on Dr. Trout's extensive technical analysis (D.I. 406 at 4)—and irrelevant regardless.  *See supra* at 3; *Civiq*, 2019 WL 4198194, at *7.

Dated: July 20, 2026

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Michelle Chin
Nathan Fuller
Manuela Burek
Hanna Bondarowicz
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
michelle.chin@lw.com
nathan.fuller@lw.com
manuela.burek@lw.com
hanna.bondarowicz@lw.com

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
brett.sandford@lw.com

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
kelly.welsh@lw.com

MCCARTER & ENGLISH, LLP

/s/ Alexandra M. Joyce
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

7

Cecila Bain
LATHAM & WATKINS LLP
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
(650) 328-4600
cecilia.bain@lw.com

8

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that true and correct copies of the foregoing

documents were caused to be served on July 20, 2026, on the following counsel in the manner

indicated:                                          <u>**VIA EMAIL:**</u>

Daniel A. Taylor
Neal C. Belgam
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
Dtaylor@skjlaw.com
Nbelgam@skjlaw.com

Jason A. Lief
Allan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Daniel E. Forchheimer
Kiersten A. Fowler
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
dforchheimer@windelsmarx.com
kfowler@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

*/s/ Alexandra M. Joyce*
Alexandra M. Joyce (#6423)

ME1\61695075.v1