**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC.,<br><br>    Defendants. | C.A. No. 24-65-JLH<br><br>**REDACTED PUBLIC VERSION**<br>**Filed August 7, 2026** |

**DEFENDANTS SLAYBACK PHARMA LLC AND
AZURITY PHARMACEUTICALS, INC'S ANSWERING BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
DEFENDANTS' EXPERT, JAMES MALACKOWSKI (D.I. 343)**

*Of Counsel:*

Jason A. Lief
Alan H. Pollack
Daniel E. Forchheimer
Robyn Ast-Gmoser
Audrey R. Sparschu

**WINDELS MARX LANE &
MITTENDORF LLC**
1 Giralda Farms
Madison, NJ 07940
(973) 966-3200

156 West 56th Street
New York, NY 10019
(212) 237-1000

jlief@windelsmarx.com
apollack@windelsmarx.com
dforchheimer@windelsmarx.com
rast-gmoser@windelsmarx.com
asparschu@windelsmarx.com

Dated: July 1, 2026

**SMITH KATZENSTEIN & JENKINS LLP**

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Defendants Slayback Pharma LLC
and Azurity Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

II. SUMMARY OF ARGUMENT ................................................................................. 1

III. COUNTER-STATEMENT OF FACTS ................................................................ 2

    A. The ████████████████ and Mr. Malackowski's Apportionment ........................... 2

    B. ████████████████ ................................................................................. 2

    C. The Third-Party Licenses ................................................................................. 3

IV. ARGUMENT ........................................................................................................... 3

    A.   Legal Standard ................................................................................................. 3

    B. Mr. Malackowski's Apportionment Is Reliable—and Far More Defensible Than Dr. Vellturo's Failure to Apportion at All ................................................................. 4

    C. Mr. Malackowski's Consideration of ████████████████ ........................ 5

    D. Mr. Malackowski's Use of Third-Party Licenses for Corroboration Satisfies the Comparability Standard ................................................................................. 7

V. CONCLUSION ......................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Diabetes Care Inc. v. Dexcom, Inc.*,
2024 WL 4875131 (D. Del. Nov. 13, 2024) ...............................................................................5

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)..................................................................................................4

*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) .................................................................................................6, 7

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)..................................................................................................3

*AVM Technologies, LLC v. Intel Corp.*
2013 WL 126233 (D. Del. Jan. 4, 2013)..................................................................................4, 5

*Bayer HealthCare LLC v. Baxalta Inc.*,
2019 WL 330149 (D. Del. Jan. 25, 2019)..................................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).............................................................................................................1, 3, 6

*Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*,
2024 WL 2258127 (D. Del. May 17, 2024)...............................................................................7

*Golden Bridge Tech. v. Apple Inc.*,
2014 WL 2194501 (N.D. Cal. May 18, 2014) ...........................................................................4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
2011 WL 197869 (E.D. Tex. Jan. 20, 2011)..............................................................................6

*Limelight Networks, Inc. v. XO Commc'ns, LLC*,
2018 WL 678245 (E.D. Va. Feb. 2, 2018).................................................................................4

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009).................................................................................................3

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
2021 WL 662237 (E.D. Tex. Feb. 20, 2021) .............................................................................4

*Puff Corp. v. SHO Prods., LLC*,
2024 WL 2208929 (C.D. Cal. Aug. 19, 2024)...........................................................................6

*SmartSky Networks, LLC v. Gogo Bus. Aviation LLC*,
    2025 WL 2972258 (D. Del. Oct. 21, 2025) ...............................................................................4

*Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*,
    2015 WL 456154 (D. Del. Jan. 30, 2015).................................................................................7

*The Nielsen Co. (US), LLC v. TVision Insights, Inc.*,
    2026 WL 1091330 (D. Del. Apr. 17, 2026).............................................................................6

*WhereverTV, Inc. v. Comcast Cable Commun., LLC*,
    2022 WL 2773292 (M.D. Fla. May 23, 2022)........................................................................5

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996)................................................................................................5

## I. NATURE AND STAGE OF THE PROCEEDINGS

This is a consolidated patent infringement action in which Eagle alleges that Slayback infringes the '214 and '248 patents. Fact and expert discovery have closed. Eagle moves under *Daubert* to exclude Mr. Malackowski's reasonable royalty opinion. (D.I. 345). Defendants have concurrently moved to exclude Dr. Vellturo's opinions (the "Vellturo Motion") (D.I. 339). Defendants submit this answering brief in opposition to Eagle's motion.

## II. SUMMARY OF ARGUMENT

Eagle's motion is a merits dispute dressed as a *Daubert* motion. Each challenge—to Mr. Malackowski's apportionment of the ████████████████, his consideration of ████████ ████████████, and his use of third-party licenses—targets the weight of his opinions, disputed factual predicates, or contested legal questions this Court has not yet resolved. None establishes an unreliable methodology. The motion is also one-sided: every criticism Eagle levels at Mr. Malackowski applies with at least equal force—often greater force—to Dr. Vellturo, who performed no apportionment of the same Agreement and imported its ████ portfolio-wide rate as the floor for a two-patent license. If Eagle's "patent-counting" critique has merit—and it does not—Dr. Vellturo's failure to apportion at all is categorically worse.

**First**, Mr. Malackowski applied the well-established Cost and Market Approaches, and his per-patent apportionment of the ████████████████████ was a reasoned, conservative judgment—not the blind "patent counting" Eagle describes. **Second**, whether ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ to limit Eagle's lost profits. **Third**, Mr. Malackowski's third-party license analysis satisfies the comparability standard, particularly because he used those licenses only for corroboration.

## III. ANSWERING COUNTER-STATEMENT OF FACTS

**A. The** ████████████████████ **and Mr. Malackowski's Apportionment**

1.      Both experts rely on the ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ (Forchheimer Declaration Exhibit A at 57–61, 67 (Malackowski)).[1] Dr. Vellturo opines

that the reasonable royalty for the Asserted Patents alone should be no lower than the Agreement's

███ rate. (Ex. B at ¶¶ 20, 200–203, 215–224, 268–269 (Vellturo)).

2.      Mr. Malackowski reached a different conclusion. Rather than apply the full

portfolio rate to a two-patent license, he performed a per-patent apportionment of the

Agreement's ███ rate—expressly excluding the additional ████████████████ increases

████████████████████████████████████, not to patent

value. Forchehimer Ex. A (Malackowski) at 67–68. That apportionment yields approximately

███████████t, which Mr. Malackowski ████████████ two Asserted Patents and then

further adjusted through a full *Georgia-Pacific* analysis, consideration of the Sedona Conference

comparability factors, and evaluation of Eagle's litigation history across all ████████████.

*Id.* at 75–77.

**B. The PAS NDA Formulation**

3.      ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] References to Exhibits A-B ("Ex.") in this brief are to the Exhibits attached to the Declaration of Daniel Forchheimer filed contemporaneously herewith.

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

[BLACK REDACTION BAR]

### C. The Third-Party Licenses

4.  To corroborate his independently-derived [REDACTED] rate, Mr. Malackowski evaluated two agreements from a database search: the 2006 Chen-Bridgetech Agreement and the 2013 Johns Hopkins-Signpath Agreement, both involving rights to formulations of cancer treatments. (*Id*. at 62–66). Applying the Sedona Conference comparability factors, Mr. Malackowski identified similarities and differences—including that the parties were not direct competitors, a difference he expressly recognized places upward pressure on the royalty. (*Id*. at 64, 66). He did not derive his [REDACTED] rate from these agreements; he used them only as a reasonableness check on the rate already derived from the Cost Approach and [REDACTED] apportionment. (*Id*. at 67, 76).

## IV. ARGUMENT

### A. Legal Standard

Eagle, as the patentee, bears the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee."). That burden does not shift because Eagle files a *Daubert* motion against Defendants' rebuttal expert. The reliability inquiry under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993), focuses on whether the expert's methodology is sound—not whether the Court agrees with the conclusions. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

Apportionment need not be mathematically exact; "the record may support a range of 'reasonable' royalties, rather than a single value." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). When relying on actual licenses to prove a reasonably royalty, the licenses "need not be perfectly analogous[.]" *SmartSky Networks, LLC v. Gogo Bus. Aviation LLC*, 2025 WL 2972258, at *8 (D. Del. Oct. 21, 2025) (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012)).

### B. Mr. Malackowski's Apportionment Is Reliable—and Far More Defensible Than Dr. Vellturo's Failure to Apportion at All

Eagle reduces Mr. Malackowski's per-patent rate to simple division (D.I. 345 at 7)—but that arithmetic was informed by the Sedona Conference comparability factors, Eagle's extensive litigation history involving all ███████████  ███████████████████████ ███████████ Mr. Malackowski's extensive licensing experience, and the overall scope of the ███████████ Agreement relative to the hypothetical negotiation. Critically, Mr. Malackowski's analysis ultimately *increased* his proposed royalty to ███, up from the ███████████ baseline— hardly the mechanical division Eagle describes.

Eagle's cases are distinguishable. In each, the excluded expert made a *blind* assumption of equal patent value—with no analysis, and often despite record evidence affirmatively showing unequal value. *See Personalized Media Commc'ns, LLC v. Apple, Inc.*, 2021 WL 662237, at *6–7 (E.D. Tex. Feb. 20, 2021) (finding the expert's determination of patent value to be "unreliable" when expert assigned equal value to all patents and divided profitability by 53 patents ); *Limelight Networks, Inc. v. XO Commc'ns, LLC*, 2018 WL 678245, at *7 (E.D. Va. Feb. 2, 2018) (expert "admit[ted] that he did not perform any analysis to determine whether the four buckets of technology had equal value" yet divided anyway). Mr. Malackowski's analysis bears none of these hallmarks.

4

Critically, if "mere patent counting and dividing is not enough," *Golden Bridge Tech. v. Apple Inc.*, 2014 WL 2194501, at *6 (N.D. Cal. May 18, 2014), then declining to divide *at all*—importing the full ▇▇▇▇▇▇▇ rate for a two-patent license—is necessarily worse. The controlling principle from *AVM Technologies, LLC v. Intel Corp.* forecloses Dr. Vellturo's approach: "a patentee may not argue that prior licenses granting rights to entire portfolios of patents are comparable to a license that the parties would have negotiated for a single asserted patent." No. 10-610-RGA, 2013 WL 126233, at *3 (D. Del. Jan. 4, 2013) (citation omitted). The same logic applies where the asserted patents are two of ▇▇▇▇▇ Mr. Malackowski did what *AVM* requires. Dr. Vellturo did not.

**C. Mr. Malackowski's Consideration of ▇▇▇▇▇▇▇▇▇▇ Is Proper**

Eagle's second challenge identifies no flaw in Mr. Malackowski's methodology. (D.I. 345 at 9). It argues that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the precise issue Eagle has raised in its concurrently-filed summary judgment motion on damages. (*Id.*). This is a quintessential question of fact for the jury. *Abbott Diabetes Care Inc. v. Dexcom, Inc.*, C.A. No. 21-977-KAJ, 2024 WL 4875131, at *13 (D. Del. Nov. 13, 2024) (citation omitted) ("The availability of an acceptable noninfringing alternative is a question of fact.").

The standard for "availability" in the reasonable royalty context does not demand FDA approval, market launch, or commercial readiness at the hypothetical negotiation date. *See WhereverTV, Inc. v. Comcast Cable Commun., LLC*, No. 2:18-cv-529, 2022 WL 2773292, at *5–7 (M.D. Fla. May 23, 2022) ("Thus, to survive summary judgment of no non-infringing alternatives, a defendant need not propose an alternative that was actually in existence at the time of the hypothetical negotiation if the defendant introduces evidence that, during the damages period, it could have redesigned the allegedly infringing product to be non-infringing."). The

5

relevant inquiry is whether the alternative would have been a realistic option that sophisticated parties would have factored into the negotiated royalty, including pipeline products under active development. *Cf. Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996) ("Wyko would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device 'in the wings.'").

Mr. Malackowski's availability analysis rests on ▇▇▇▇▇▇▇▇▇▇▇▇▇



The cases Eagle cites involve alternatives with no documented developmental trajectory connecting them to the hypothetical negotiation date. (D.I. 345 at 9–10). In *Puff Corp. v. SHO Prods., LLC*, the proposed alternative was not launched until two years *after* the hypothetical negotiation, with no evidence connecting its development back to that date. No. 22-2008, 2024 WL 2208929, at *13 (C.D. Cal. Aug. 19, 2024). ▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Similarly, in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, the alleged alternatives were never shown to have been "on the market" and amounted to "speculation that it might have been theoretically possible" to produce them. No. 06-348, 2011 WL 197869, at *3 (E.D. Tex. Jan. 20, 2011). ▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

6

Eagle's reliance on *The Nielsen Co. (US), LLC v. TVision Insights, Inc.*, is similarly misplaced, as that case confirms only that "there must be some showing that the alternative would have been available," No. 22-57-CJB, 2026 WL 1091330 (D. Del. Apr. 17, 2026) (citation omitted)—██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████.

### D. Mr. Malackowski's Use of Third-Party Licenses for Corroboration Satisfies the Comparability Standard

The Federal Circuit has not required that third party licenses be perfectly analogous; the expert must "account for differences in the technologies and economic circumstances of the contracting parties." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022) (internal quotation marks and citation omitted). Eagle's brief collapses this standard into a requirement of near-identity. (D.I. 345 at 10–13). No case imposes that bar, and Eagle's own expert could not meet it: Dr. Vellturo's primary benchmark, the ███████████████ Agreement, is itself ██████████████████████████ executed nearly a decade before the hypothetical negotiation, ██████████████ the two Asserted Patents.

Mr. Malackowski did not derive his ███ rate from the Chen-Bridgetech and Johns Hopkins-Signpath agreements; he derived that rate independently from the Cost Approach and ███████ ████████ apportionment, and used these licenses only to confirm the rate fell within an observed market. (Ex. A at 61–68). For corroboration, they need only show a ███ rate is consistent with broadly analogous pharmaceutical formulation licenses. Mr. Malackowski's Sedona analysis expressly addresses differences as well as similarities—recognizing that non-competing licensors/licensees places *upward* pressure on the royalty. (*Id*. at 64, 66). That is precisely the two-sided comparability analysis *Adasa* requires.

7

In *Adasa*, the Federal Circuit affirmed exclusion because the expert "did not undertake any meaningful comparison of the licensed technology with the invention disclosed." 55 F.4th at 915. Mr. Malackowski's Report, by contrast, contains an explicit, multi-page Sedona Conference comparability analysis for each corroborating license addressing both technical and economic factors. (Ex. A at 62–66). The *Bayer HealthCare LLC v. Baxalta Inc.* case is distinguishable because the expert there made "no effort" to reconcile exclusive licenses with up-front, ongoing, and milestone payments against a non-exclusive hypothetical license, 2019 WL 330149, at *6 (D. Del. Jan. 25, 2019)—the precise reconciliation Mr. Malackowski's Report expressly provides. (Ex. A at 63, 65). In addition, *Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*, 2015 WL 456154 (D. Del. Jan. 30, 2015), and *Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*, 2024 WL 2258127 (D. Del. May 17, 2024), are likewise distinguishable because the proponents there made *no* attempt to address temporal gaps or party non-comparability—unlike Mr. Malackowski. And Eagle's complaint that Mr. Malackowski lacked a technical sign-off (D.I. 345 at 13) proves too much: Dr. Vellturo's primary benchmark, the ▮▮▮▮▮▮▮▮ Agreement, lacked any technical comparison of ▮▮▮▮▮▮▮▮▮▮ to the two Asserted Patents. (Ex. 2 ¶¶ 20, 200–203, 215–224, 268–269). The same standard Eagle would impose on Mr. Malackowski's corroborating licenses requires excluding Dr. Vellturo's far more consequential primary benchmark.

## V. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Eagle's Motion.

8

Dated: July 1, 2026

**SMITH KATZENSTEIN & JENKINS LLP**

*Of Counsel:*

Jason A. Lief
Alan Pollack
Daniel E. Forchheimer
Robyn Ast-Gmoser
Audrey R. Sparschu

**WINDELS MARX LANE &
MITTENDORF LLC**
1 Giralda Farms
Madison, NJ 07940
(973) 966-3200

156 West 56th Street
New York, NY 10019
(212) 237-1000

jlief@windelsmarx.com
apollack@windelsmarx.com
dforchheimer@windelsmarx.com
rast-gmoser@windelsmarx.com
asparschu@windelsmarx.com

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Defendants Slayback Pharma
LLC and Azurity Pharmaceuticals, Inc.*