# EXHIBIT A

# REDACTED
# PUBLIC VERSION

FILED UNDER SEAL



**EAGLE PHARMACEUTICALS, INC, AND EAGLE SUB1 LLC.**

**V.**

**SLAYBACK PHARMA LLC AND AZURITY PHARMACEUTICALS, INC.**

Civil Action No. 1:24-cv-00065-JLH

United States District Court for the District of Delaware

---

# EXPERT REPORT OF JAMES MALACKOWSKI

**March 16, 2026**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

| 1 | FIRM BACKGROUND AND QUALIFICATIONS | 1 |
|---|---|---|
| 2 | ASSIGNMENT | 3 |
| 3 | SUMMARY OF OPINIONS | 4 |
| | 3.1 My Affirmative Opinions Concerning Eagle's Damages | 4 |
| | 3.2 Evaluation of the Vellturo Report | 6 |
| 4 | THE PARTIES | 7 |
| | 4.1 Plaintiff - Eagle Pharmaceuticals, Inc. | 7 |
| | 4.2 Plaintiff – Eagle Sub1 LLC | 10 |
| | 4.3 Defendant – Slayback Pharma LLC | 10 |
| | 4.4 Defendant – Azurity Pharmaceuticals, Inc | 10 |
| 5 | EAGLE LITIGATION INVOLVING BENDAMUSTINE PATENTS | 11 |
| | 5.1 Pending Litigation | 11 |
| | 5.2 Prior Litigation | 14 |
| 6 | THE ASSERTED PATENTS | 17 |
| | 6.1 The '214 Patent | 17 |
| | 6.2 The '248 Patent | 18 |
| | 6.3 Purported Benefits and Advantages of the Asserted Patents | 18 |
| 7 | THE BENDAMUSTINE PRODUCTS MARKET | 20 |
| | 7.1 FDA Approved Treatments for CLL and NHL | 20 |
| | 7.2 FDA-Approved Bendamustine Products | 23 |
| | 7.3 Evidence Supporting Inclusion of Powder Products in Market Definition | 28 |
| | 7.4 Quarterly Unit-Sales Based Market Shares of Bendamustine Products | 32 |
| | 7.5 Factors Influencing Sales of Bendamustine Products | 35 |
| | 7.6 Conclusions Concerning Vivimusta® and the Bendamustine Product Market | 38 |
| 8 | QUANTIFICATION OF EAGLE'S LOST PROFITS | 40 |
| | 8.1 The Panduit-Test | 40 |
| | 8.2 Quantification of Lost Profits Under Scenario A: Only Liquid Products | 42 |
| | 8.3 Quantification of Lost Profits Under Scenario B – Liquid & Powder Products | 45 |
| | 8.4 Price Erosion | 48 |
| 9 | REASONABLE ROYALTY FRAMEWORK | 49 |
| | 9.1 Reasonable Royalty Approach | 49 |
| | 9.2 Hypothetical Negotiation Parameters | 50 |
| | 9.3 Royalty Base | 51 |
| | 9.4 Royalty Rate | 52 |
| 10 | QUANTITATIVE VALUATION FACTORS | 52 |
| | 10.1 The Cost Approach | 52 |
| | 10.2 The Income Approach | 54 |
| | 10.3 The Market Approach | 55 |
| 11 | REASONABLE ROYALTY DETERMINATION | 67 |
| | 11.1 The Georgia-Pacific Factors | 67 |
| | 11.2 Reasonable Royalty Conclusion | 76 |
| 12 | EVALUATION OF THE VELLTURO REPORT | 77 |
| | 12.1 Dr. Vellturo's Market Analysis Improperly Excludes Powder Bendamustine Products | 77 |
| | 12.2 Dr. Vellturo's Lost Profits Opinions are Defective and Unreliable | 79 |
| | 12.3 Dr. Vellturo's Price Erosion Opinions Are Defective and Unreliable | 85 |
| | 12.4 Dr. Vellturo's Opinions Re: ▬▬▬▬▬ Are Defective and Unreliable | 88 |
| | 12.5 Dr. Vellturo Fails to Properly Evaluate Eagle License Agreements | 92 |
| | 12.6 Dr. Vellturo's Edgeworth Box Analyses Are Defective and Unreliable | 94 |
| | 12.7 Dr. Vellturo Fails to Consider Customary Royalty Rates | 95 |
| | 12.8 Dr. Vellturo Fails to Consider ▬▬ ▬ ▬▬▬▬ | 96 |
| 13 | PREJUDGMENT INTEREST | 96 |
| 14 | SIGNATURE | 97 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

## 1    FIRM BACKGROUND AND QUALIFICATIONS

I am the Chief Intellectual Property Officer (CIPO) of J.S. Held LLC and the firm's Intellectual Property (IP) Practice Leader.  I am also a Co-founder and Senior Managing Director of Ocean Tomo, LLC, a part of J.S. Held.  Ocean Tomo provides Financial Expert, Management Consulting, Advisory, and Specialty Services focused on matters involving IP and other intangible assets.  Practice offerings address economic damage calculations and testimony; technical and intangible asset valuation; strategy and risk management consulting; debt and equity private placement; and IP brokerage.  With more than 100 offices globally, J.S. Held assists clients – corporations, insurers, law firms, governments, and institutional investors – on complex technical, scientific, and financial matters across all assets and value at risk.[1]

Along with Supreme Court Justice Stephen Breyer, I was inducted into the IP Hall of Fame in 2022, chosen by the IP Hall of Fame Academy from a long list of nominees put forward by the global IP community.  I was recognized by the Academy in 2022 with the Q. Todd Dickinson Award, which honors those who have made significant contributions to IP as a business asset.  My inclusion into the IP Hall of Fame follows annual recognition since 2007 by leading industry publications as one of the "World's Leading IP Strategists."  Significantly, I have been listed among "50 Under 45" by IP Law & Business™; included in the National Law Journal's inaugural list of 50 Intellectual Property Trailblazers & Pioneers; and named as one of "The Most Influential People in IP" by Managing Intellectual Property™.  I was named as one of 50 individuals, companies, and institutions that framed the first 50 issues of IAM Magazine as well as one of 60 leading global Economics Expert Witnesses by the same publication in 2014.  In 2011, I was selected by the World Economic Forum as one of less than twenty members of the Network of Global Agenda Councils to focus on questions of IP policy.  In 2013, I was inducted into the Chicago Area Entrepreneurship Hall of Fame by the Institute for Entrepreneurial Studies at the University of Illinois at Chicago College of Business Administration.  In 2018, I joined the Standards Development Organization Board of the Licensing Executives Society (USA & Canada), Inc. governing voluntary consensus-based professional practices that are guided in their development by the American National Standards Institute's (ANSI's) Essential Requirements.  LES standards are designed to encourage and teach consensus practices in many of the business process aspects of intellectual capital management.

On more than one hundred occasions, I have served as an expert in U.S. Federal Court, U.S. Bankruptcy Court, State Court, Court of Chancery, the Ontario Superior Court of Justice, the U.S. Patent and Trademark Office Patent Trial and Appeal Board, and global arbitrations on questions relating to intellectual property economics including the subject of valuation, reasonable royalty, lost profits, price erosion, commercial success, corrective advertising, creditor allocations, Hatch Waxman Act market exclusivity, business significance of licensing terms including RAND obligations, venture financing including expected risk / return, and equities of a potential injunction.  My experience extends to matters of general business valuation and commercial disputes, both domestic and foreign.  I have publicly addressed policy issues affecting

---

[1] J.S. Held, its affiliates and subsidiaries are not certified public accounting firm(s) and do not provide audit or attest services.  J.S. Held is not a law firm and does not provide legal advice.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

international trade and have provided expert opinions concerning antidumping and countervailing duties imposed by the U.S. Department of Commerce as well as testimony on domestic industry, bond, and remedies before the International Trade Commission. I have substantial experience as a Board Director for leading technology corporations and research organizations as well as companies with critical brand management issues.

I am a Past President of The Licensing Executives Society International, Inc. ("LESI"), with oversight for more than ten thousand members in thirty-two countries. As President of LESI, I helped facilitate the development of professional standards among members engaged in the licensing of technology of IP rights. I also oversaw initiatives to inform and educate the public—international bodies, government bodies, and the business community—concerning the economic significance of licensing and importance of developing professional standards.

I focus my non-for-profit efforts with organizations leveraging science and innovation for the benefit of children and students, including those located in lesser developed countries. For more than ten years, I served as a Director of Chicago's Stanley Manne Children's Research Institute, advancing the organization's agenda to measure and report the impact of its pediatric research. I most recently served on the Pritzker School of Molecular Engineering Council at the University of Chicago.

I am a frequent speaker on emerging technology markets and related financial measures. I have addressed mass media audiences including Bloomberg Morning Call, Bloomberg Evening Market Pulse, Bloomberg Final Word, CNBC Closing Bell, CNBC On the Money, CNBC Street Signs, CNBC World-Wide Exchange, CBS News Radio, and Fox Business National Television, as well as other recognized news-based internet video channels. I currently am or have previously been a judge for the following programs: Illinois Technology Association's CityLIGHTS™ Innovation Awards program, the University of Notre Dame McCloskey Venture Competition, 1st Source Faculty Commercialization Awards, and PBS's Everyday Edisons.

As an inventor, I have more than twenty issued U.S. patents. I am a frequent instructor for graduate studies on IP management and markets and a Summa Cum Laude graduate of the University of Notre Dame majoring in accountancy and philosophy. I am Certified/Accredited in Financial Forensics, Business Valuation, and Blockchain Fundamentals. I am a Certified Licensing Professional and a Registered Certified Public Accountant in the State of Illinois. I have been certified to receive U.S. Sensitive Security Information (SSI) as governed by Title 49 Code of Federal Regulations.

A detailed version of my *curriculum vitae* is attached as **Appendix 1**. Ocean Tomo is presently being compensated for my work in this matter at a rate of $▮▮▮ per hour. Other Ocean Tomo consultants are assisting me in this engagement and are being compensated at various rates that are less than $1,600 per hour. No part of Ocean Tomo's compensation depends on the outcome of this litigation.

This report is designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the September 9, 2024 Protective Order as specified in the footer on each page. This report is to be used only for the purpose of this litigation. No part of this report may be published or used for any other purpose without written consent.

INTELLECTUAL CAPITAL EQUITY

## 2      ASSIGNMENT

Ocean Tomo was retained in October 2025 by counsel for Defendants, Slayback Pharma LLC ("Slayback") and Azurity Pharmaceuticals, Inc. ("Azurity" collectively, "Defendants") in connection with this matter. Ocean Tomo was asked to analyze certain accounting, financial, economic, marketing, and other business information to determine the measure and amount of damages due Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC (collectively "Eagle" or "Plaintiffs") in the event one or more of the asserted claims of U.S. Patent No. 11,872,214 ("the '214 patent") and U.S. Patent No. 12,138,248 ("the '248 patent", collectively, "the Asserted Patents") are found to be valid and infringed by the Defendants' manufacture, promotion, and sale of Vivimusta®, a chemotherapy drug prescribed to treat Chronic Lymphocytic Leukemia ("CLL") and certain B-cell non-Hodgkin's Lymphoma ("NHL").  Ocean Tomo was also asked to review and evaluate the Expert Report of Christopher A. Vellturo ("Dr. Vellturo") dated February 6, 2026 ("Vellturo Report") and the Supplemental Expert Report of Dr. Vellturo dated March 6, 2026.[2]  To  accurately assess the measures and amounts of damages due Plaintiffs, Ocean Tomo has considered the following types of documents and other information:

- The pleadings and other court filings;
- The Asserted Patents;
- Documents produced by Eagle;
- Documents produced by Slayback;
- Slayback sales and profit data for Vivimusta®;
- Transcripts of and related exhibits to depositions of Eagle and Slayback/Azurity witnesses;[3]
- The 2015 agreement between ███████████████████████████████
- The Vellturo Report dated February 6, 2026 and March 6, 2026;
- The reports of other experts in this case,[4] and
- Other publicly available information.

Ocean Tomo interviewed Mr. Josh Mathew, V.P. of the Oncology Franchise at Azurity Pharmaceuticals. Among other things, Mr. Mathew provided information concerning the products that compete in the bendamustine product market, Vivimusta® product pricing, and the importance of Vivimusta®'s 20-minute infusion time to certain hospitals, cancer clinics, and cancer patients.

Ocean Tomo also interviewed Dr. Michael Brandt, PHARMD, FASHP.[5]  Dr. Brandt provided information concerning the available FDA-approved treatments for CLL and NHL, including bendamustine and non-

---

[2] The Supplemental Vellturo Report provides the same opinions as the Vellturo Report.

[3] Appendix 2.1.

[4] Appendix 2.2.

[5] Fellow of the American Society of Health-System Pharmacists.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

bendamustine products.  Dr. Brandt also provided information concerning the factors Oncologists and pharmacists consider when selecting a bendamustine product.

In addition, Ocean Tomo interviewed Dr. Michael J. Thirman, M.D.  Dr. Thirman provided information concerning the availability of acceptable non-infringing alternatives for treating CLL and NHL.  Dr. Thirman also provided information concerning the factors oncologists focus on in preparing a treatment plan.

A detailed listing of documents considered by Ocean Tomo in connection with this litigation to date is included in **Appendix 2.2**.  References to documents and testimony herein are meant to provide examples of supporting information but are not intended to be a comprehensive or exhaustive list of all known support.  In addition to this report, I may rely on video excerpts taken from videotaped depositions and/or demonstrative exhibits that illustrate the concepts and conclusions in this report.  Such excerpts and/or demonstratives have not yet been prepared.

The opinions discussed throughout this report are based on my current understanding of the facts and circumstances surrounding this matter, my review of the produced documentation, testimony, third party information available to date, and any underlying assumptions upon which I have relied.  As such, the analyses and opinions described herein are subject to change based upon additional discovery or any other relevant development.

In connection with my work in this matter, I have assumed that the Asserted Patents are valid, enforceable, and infringed.  That assumption is made exclusively for the purpose of determining the measures and amounts of damages, and in no way represents or relates to any form of legal conclusion.

## 3    SUMMARY OF OPINIONS

### 3.1    My Affirmative Opinions Concerning Eagle's Damages

Compensatory damages in patent infringement are governed by 35 U.S.C. § 284, which states:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

The two most common forms of damages for patent infringement are lost profits and a reasonable royalty.  Damages may also be awarded as a combination of lost profits and reasonable royalty.[6]

#### 3.1.1    Lost Profits

As set forth below, the record evidence indicates that sales of Vivimusta® had little impact on unit sales of Belrapzo®.  However, in the event it is determined that lost profits – based on lost unit sales – is an appropriate measure of recovery, I have calculated lost profits under two alternative scenarios.  Under

---

[6] *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).

Scenario A, the market is limited to liquid bendamustine products and market-share-based percentages of Vivimusta® accused sales are allocated only to Bendeka® and Belrapzo®. **Figure 1** summarizes the Plaintiffs' damages under Scenario A totaling ███████ for the period Q1 2024 through Q3 2025.

**Figure 1**
**Scenario A: Damages Due Plaintiffs Based on Liquid-Only Formulations[7]**



As illustrated in **Appendix 3.1.3**, because all Vivimusta® accused sales are allocated to Bendeka® and Belrapzo®, no Vivimusta® unit sales are subject to a reasonable royalty.

Under Scenario B, the market includes both liquid and powder formulations of bendamustine, and market-share-based percentages of Vivimusta® accused sales are allocated to Bendeka®, Belrapzo®, Teva's Treanda®, and Treanda® generics. **Figure 2** summarizes the Plaintiffs' damages under Scenario B totaling ███████ for the period Q1 2024 through Q3 2025.

**Figure 2**
**Scenario B: Damages Due Plaintiffs Based on Both Liquid and Powder Formulations[8]**



As illustrated in **Appendix 3.2.3**, a total of ████████████████████████████████████████ ████████████████████████████████████████████████████████████[10]

Based on the record evidence, I have concluded that Eagle ███████████████████████ ███████.

---

[7] Appendix 3.1. ████████████████████████████████████████████████████.
[8] Appendix 3.2. ███████████████████████████████████████████
█████████████████).
[10] Appendix 3.2. ███████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**INTELLECTUAL CAPITAL EQUITY**

### 3.1.2    Reasonable Royalty

Slayback's cost relating to ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████

**Figure 3** summarizes the reasonable royalty due Plaintiffs at a royalty rate of ████████ Vivimusta® net revenue during the damages period of January 16, 2024 through September 30, 2025.

**Figure 3**
**Reasonable Royalty for Sales of Vivimusta® During the Damages Period[11]**

|  | Q1 2024 | Q2 2024 | Q3 2024 | Q4 2024 | Q1 2025 | Q2 2025 | Q3 2025 | Total |
|---|---|---|---|---|---|---|---|---|
| ██████ | █████████████████████████████████████████████████████ | | | | | | | |
| ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ |
| ██████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ | ████ |

As **Figure 3** illustrates, assuming the Asserted Patents are found to be valid and infringed, the reasonable royalty due Eagle is ████████

### 3.2    Evaluation of the Vellturo Report

Dr. Vellturo contends that the Plaintiffs sustained lost profits of ███████████████████████ ███████████████████████████████████████████ Dr. Vellturo's opinions are defective and unreliable for at least the following reasons:

- Dr. Vellturo improperly excludes █████████████████████████████████ ████████████

- Dr. Vellturo's lost profits analyses are based on false premises and defective analyses which render his opinions unreliable.[15]

- Dr. Vellturo's ████████ opinions are defective and unreliable.[16]

- Dr. Vellturo's opinions concerning the ██████████████ are defective and unreliable.[17]

---

[11] Appendix 3.3.
[12] Appendix 3.3. ████████████████████████████████████████████████████
[13] Vellturo Report, February 6, 2026, pp. 5 – 6.
[14] Vellturo Report, February 6, 2026, p. 18.
[15] Vellturo Report, February 6, 2026, Exhibit 21.
[16] Vellturo Report, February 6, 2026, pp. 60 – 65.
[17] Vellturo Report, February 6, 2026, pp. 65 – 67.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

- Dr. Vellturo fails to properly evaluate ██████████████.[18]

- Dr. Vellturo's ███████████████ are defective and unreliable.

- Dr. Vellturo ████████████████████████████████████.

- Dr. Vellturo fails to consider the Slayback's costs relating to ████████████.

## 4    THE PARTIES

### 4.1    Plaintiff - Eagle Pharmaceuticals, Inc.

Eagle is a Delaware corporation[19] founded in 2007,[20] and headquartered in New Jersey.[21]  According to Eagle, it is a pharmaceutical company "working to advance safe and effective treatments for critical care and oncology patients, their care teams, and the overall health system."[22]  Eagle's product portfolio includes Barhemsys®, Byfavo®, Pemfexy®, Belrapzo®, and Ryanodex®.[23]  **Appendix 8.1** summarizes Eagle's annual operating results for the years 2017 to Q2 2025.  Eagle currently has about 52 employees.[24]

### 4.1.1    Agreements Concerning Development and Commercialization of Bendamustine Treatments



---

[18] Vellturo Report, February 6, 2026, pp. 77 – 82.

[19] Second Amended Complaint, June 12, 2025, p. 2.

[20] https://www.wsj.com/market-data/quotes/EGRX/company-people.

[21] Second Amended Complaint, June 12, 2025, p. 2.

[22] https://www.eagleus.com/about/.

[23] https://www.eagleus.com/products/.

[24] Deposition of Christopher Krawtschuk, December 5, 2025, p. 89.

[25] EAGLEBEN-SA_00242343 – 378 at 343.

[26] EAGLEBEN-SA_00242303 – 337 at 303.

[27] EAGLEBEN-SA_00242343 – 378 at 347.

[28] EAGLEBEN-SA_00242382 – 389 at 382 – 383.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**



---

[29] EAGLEBEN-SA_00242343 – 378 at 378.

[30] EAGLEBEN-SA_00242343 – 378 at 347, 351.

[31] EAGLEBEN-SA_00242382 – 389 at 382.

[32] EAGLEBEN-SA_00242382 – 389 at 382 – 383.

[33] EAGLEBEN-SA_00072300 – 400 at 325 – 326.

[34] Appendix 11.1; Appendix 11.2.

[35] EAGLEBEN-SA_00072300 – 400 at 330.

[36] EAGLEBEN-SA_00072300 – 400 at 330 – 331.

[37] EAGLEBEN-SA_00072300 – 400 at 331. ███████████████████████████
████████████

[38] EAGLEBEN-SA_00072401 – 405 at 402.

[39] https://www.tevausa.com/news-and-media/press-releases/teva-and-eagle-pharmaceuticals-announce-commercial-availability-of-bendeka-bendamustine-hydrochloride-/.

[40] Deposition of David Bricker, November 25, 2025, p. 32.

[41] Deposition of David Bricker, November 25, 2025, p. 33.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



---

[42] EAGLEBEN-SA_00072300 – 400 at 301.

[43] https://ir.tevapharm.com/news-and-events/press-releases/press-release-details/2011/Teva-Completes-Acquisition-of-Cephalon/default.aspx.

[44] https://www.tevausa.com/news-and-media/press-releases/cms-establishes-unique-j-code-for-bendeka-bendamustine-hydrochloride-injection/.

[45] https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-pricing-initial-public-offering.

[46] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

[47] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15; https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5200-series.

[48] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

[49] EAGLEBEN-SA_00347447-500 at 477.

[50] EAGLEBEN-SA_00347447-500 at 477.

[51] EAGLEBEN-SA_00347447-500 at 477.

[52] EAGLEBEN-SA_00347447-500 at 499.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



INTELLECTUAL CAPITAL EQUITY

[REDACTED]

## 4.2    Plaintiff – Eagle Sub1 LLC

Plaintiffs contend that Eagle Sub1 LLC is a Delaware limited liability company located at the same New Jersey address as Eagle.[54]  Eagle Sub1 LLC is a wholly owned subsidiary of Eagle.[55]

[REDACTED]

## 4.3    Defendant – Slayback Pharma LLC

Slayback is a Delaware corporation[59] formed in 2011 and based in Princeton, New Jersey.[60]  According to Slayback, it is a pharmaceutical R&D firm that conceptualizes and develops complex generic and specialty pharmaceutical drugs and products. Slayback contends that it "focuses on products that are complex to develop and/or manufacture, such as oil-in-water emulsions, a sterile long acting injectable using nano-spheres, sterile suspensions with particle physics, and hormonal products with cross-contamination issues."[61]

Slayback was acquired in September 2023 by Azurity from investors which included Kohlberg Kravis Roberts & Co. L.P. ("KKR") and Everstone Capital.[62]  Slayback is now a wholly owned subsidiary of Azurity.[63]

## 4.4    Defendant – Azurity Pharmaceuticals, Inc

Azurity is a Delaware corporation located in Woburn, Massachusetts.[64]  According to Azurity, it is a privately-held company committed to delivering innovative, high quality medicines for overlooked patients.[65]  Azurity maintains a global footprint operating in 50 countries with a diversified portfolio of more than 50 medicines

---

[53] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 39 – 40; EAGLEBEN-SA_00346062-439 at 078.

[54] Second Amended Complaint, June 12, 2025, pp. 2 – 3.

[55] Second Amended Complaint, June 12, 2025, p. 3.

[56] EAGLEBEN-SA_00347447-500 at 499.

[57] EAGLEBEN-SA_00347447-500 at 499.

[58] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 39 – 40; EAGLEBEN-SA_00346062-439 at 078.

[59] Defendants' Response to Second Amended Complaint, July 8, 2025, p. 4.

[60] https://pitchbook.com/profiles/company/169368-76#overview.

[61] https://www.capitaliq.spglobal.com/apisv3/spg-webplatform-core/company/profile?id=5322477.

[62] https://azurity.com/azurity-pharmaceuticals-acquires-slayback-pharma/.

[63] https://azurity.com/azurity-pharmaceuticals-acquires-slayback-pharma/.

[64] Defendants' Response to Second Amended Complaint, July 8, 2025, p. 4.

[65] https://azurity.com/.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

spanning ten dosage forms in ten key therapeutics areas.[66]  Azurity has FDA-approved branded medicine across six therapeutic areas including anti-infective, cardiovascular, central nervous system, gastrointestinal, endocrine, and oncology.[67]  Within oncology, Azurity offers Vivimusta®, a bendamustine hydrochloride injection.[68]  According to Azurity, ███████████████████████████████████████

## 5       EAGLE LITIGATION INVOLVING BENDAMUSTINE PATENTS

### 5.1       Pending Litigation

### 5.1.1       This Dispute: Eagle and Eagle Sub1 v. Slayback and Azurity

In January 2024, Eagle filed a Complaint against Slayback in Delaware District Court alleging infringement of U.S. Patent Nos. 11,844,783 ("the '783 patent") and the '214 patent.[70]  In June 2025, Eagle filed a Second Amended Complaint which added Azurity as a Defendant and Eagle Sub1 LLC as a Plaintiff.[71]

In January 2025, Eagle filed a separate Complaint against Slayback in Delaware District Court alleging infringement of the '248 patent.[72]  In February 2025, Azurity was added as a Defendant,[73] and in June 2025, Eagle Sub1 LLC was added as a Plaintiff.[74]

These two cases were consolidated in June 2025.[75]  In February 2026, the parties stipulated to dismiss all claims, counterclaims, and defenses relating to the '783 patent.[76]  Eagle claims direct infringement of the '214 patent[77] and the '248 patent.[78]  More specifically, Eagle contends that Slayback directly infringes the Asserted Patents through unauthorized importation into the United States, and use, sale, and/or offer for sale of

---

[66] https://azurity.com/.

[67] https://azurity.com/pipeline/.

[68] https://azurity.com/products/.

[69] https://azurity.com/pipeline/.

[70] Complaint, *Eagle v. Slayback*, No. 1:24-cv-00065-JLH, January 17, 2024, p. 1.

[71] Second Amended Complaint, *Eagle v. Slayback*, No. 1:24-cv-00065-JLH, June 12, 2025, p. 1.

[72] Complaint, *Eagle v. Slayback*, No. 1:25-cv-00075-JLH, January 17, 2025, p. 1.

[73] First Amended Complaint, *Eagle v. Slayback*, No. 1:25-cv-00075-JLH, February 28, 2025, p. 1.

[74] Second Amended Complaint, *Eagle v. Slayback*, No. 1:25-cv-00075-JLH, June 12, 2025, p. 1.

[75] Joint Order Regarding Case Consolidation and Coordination, June 27, 2025, p. 3.

[76] Stipulation Order to Dismiss, February 2, 2026.

[77] Second Amended Complaint, *Eagle v. Slayback*, No. 1:24-cv-00065-JLH, June 12, 2025, p. 1.

[78] Amended Complaint, *Eagle v. Slayback*, No. 1:25-cv-00075-JLH, June 12, 2025, p. 1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

Vivimusta® in the United States.[79]  Eagle seeks damages and other equitable remedies for the alleged infringement of the Asserted Patents.[80]

### 5.1.2    Eagle v. Apotex Inc. and Apotex Corp.

In January 2024, Eagle filed a Complaint against Apotex Inc. and Apotex Corp. (collectively, "Apotex") in Delaware District Court alleging infringement of the '783 patent and the '214 patent.[81]  In June 2025, Eagle Sub1 LLC was added as a plaintiff.[82]

In January 2025, Eagle filed a separate Complaint against Apotex in Delaware District Court alleging infringement of the '248 patent.[83]  In April 2025, Eagle Sub1 LLC was added as a plaintiff.[84]

These two cases were consolidated in June 2025.[85]  In February 2026, the parties stipulated to dismiss all claims, counterclaims, and defenses relating to the '783 patent.[86]  Eagle claims direct infringement of the '214 patent[87] and the '248 patent.[88]  More specifically, Eagle contends that Apotex directly infringes the Asserted Patents through unauthorized importation into the United States, and use, sale, and/or offer for sale of its New Drug Application ("NDA") Product, Bendamustine Hydrochloride Injection, 100 mg/4 mL (25 mg/mL) in the United States.[89]  Eagle seeks damages and other equitable remedies for the alleged infringement of the Asserted Patents.[90]

---

[79] Second Amended Complaint, *Eagle v. Slayback*, No. 1:24-cv-00065-JLH, June 12, 2025, pp. 1 – 2; Second Amended Complaint, *Eagle v. Slayback*, No. 1:25-cv-00075-JLH, June 12, 2025, pp. 1 – 2.

[80] Second Amended Complaint, *Eagle v. Slayback*, No. 1:24-cv-00065-JLH, June 12, 2025, pp. 19 – 20; Second Amended Complaint, *Eagle v. Slayback*, No. 1:25-cv-00075-JLH, June 12, 2025, p. 16.

[81] Complaint, *Eagle v. Apotex*, No. 1:24-cv-00064-JLH, January 17, 2024, p. 1.

[82] Second Amended Complaint, *Eagle v. Apotex*, No. 1:24-cv-00064-JLH, June 12, 2025, p. 1.

[83] Complaint, *Eagle v. Apotex*, No. 1:25-cv-00074-JLH, January 17, 2025, p. 1.

[84] First Amended Complaint, *Eagle v. Apotex*, No. 1:25-cv-00074-JLH, April 7, 2025, p. 1.

[85] Joint Order Regarding Case Consolidation and Coordination, June 27, 2025, pp. 2 – 3.

[86] Stipulation Order to Dismiss, February 2, 2026.

[87] Second Amended Complaint, *Eagle v. Apotex*, No. 1:24-cv-00064-JLH, June 12, 2025, p. 1.

[88] First Amended Complaint, *Eagle v. Apotex*, No. 1:25-cv-00074-JLH, April 7, 2025, p. 1.

[89] Second Amended Complaint, *Eagle v. Apotex*, No. 1:24-cv-00064-JLH, June 12, 2025, pp 1 – 2; First Amended Complaint, *Eagle v. Apotex*, No. 1:25-cv-00074-JLH, April 7, 2025, pp. 1 – 2.

[90] Second Amended Complaint, *Eagle v. Apotex*, No. 1:24-cv-00064-JLH, June 12, 2025, pp. 18 – 19; First Amended Complaint, *Eagle v. Apotex*, No. 1:25-cv-00074-JLH, April 7, 2025, pp. 15 – 16.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

### 5.1.3    Eagle v. Baxter Healthcare Corp.

In January 2024, Eagle filed a Complaint against Baxter Healthcare Corporation ("Baxter") in Delaware District Court alleging infringement of the '783 patent and the '214 patent.[91]  In June 2025, Eagle Sub1 LLC was added as a plaintiff.[92]

In January 2025, Eagle filed a separate Complaint against Baxter in Delaware District Court alleging infringement of the '248 patent.[93]  In April 2025, Eagle Sub1 LLC was added as a plaintiff.[94]

On June 27, 2025 the two cases were consolidated.[95]  On February 2, 2026, the parties stipulated to dismiss all claims, counterclaims, and defenses relating to the '783 patent.[96]  Eagle claims direct infringement of the '214 patent[97] and the '248 patent.[98]  More specifically, Eagle contends that Baxter directly infringes the Asserted Patents through unauthorized importation into the United States, and use, sale, and/or offer for sale of its bendamustine product in the United States.[99]  Eagle seeks damages and other equitable remedies for the alleged infringement of the Asserted Patents.[100]

### 5.1.4    Eagle v. Dr. Reddy's Laboratories

In February 2024, Eagle filed a Complaint against Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (collectively, "Dr. Reddy's") asserting infringement of the '214 patent and the '783 patent.[101]  In August 2025, Eagle filed a Second Amended Complaint that includes patent infringement claims for the '248.[102]  In its Answer to Eagle's Second Amended Complaint, Dr. Reddy's contends that these patents are invalid and/or unenforceable, and that its bendamustine hydrochloride product does not infringe these patents.[103]

---

[91] Complaint, *Eagle v. Baxter*, No. 1:24-cv-00066-JLH, January 17, 2024, p. 1.

[92] Second Amended Complaint, *Eagle v. Baxter*, No. 1:24-cv-00066-JLH, June 12, 2025, p. 1.

[93] Complaint, *Eagle v. Baxter*, No. 1:25-cv-00079-JLH, January 17, 2025, p. 1.

[94] First Amended Complaint, *Eagle v. Baxter*, No. 1:25-cv-00079-JLH, April 07, 2025, p. 1.

[95] Joint Order Regarding Case Consolidation and Coordination, June 27, 2025, pp. 2 – 3.

[96] Stipulation Order to Dismiss, February 2, 2026.

[97] Second Amended Complaint, *Eagle v. Baxter*, No. 1:24-cv-00066-JLH, June 12, 2025, p. 1.

[98] First Amended Complaint, *Eagle v. Baxter*, No. 1:25-cv-00079-JLH, April 7, 2025, p. 1.

[99] First Amended Complaint, *Eagle v. Baxter*, No. 1:24-cv-00066-JLH, April 15, 2024, p. 1; First Amended Complaint, *Eagle v. Baxter*, No. 1:25-cv-00079-JLH, April 7, 2025, p. 1.

[100] Second Amended Complaint, *Eagle v. Baxter*, No. 1:24-cv-00066-JLH, June 12, 2025, p. 16; First Amended Complaint, *Eagle v. Baxter*, No. 1:25-cv-00079-JLH, April 7, 2025, p. 13.

[101] Complaint, *Eagle v. Dr. Reddy's Laboratories, Ltd.,* 2:24-cv-00637, February 2, 2024, pp. 1 – 2.

[102] Second Amended Complaint, *Eagle v. Dr. Reddy's Laboratories, Ltd.*, 2:24-cv-00637, August 1, 2025, pp. 1 – 2.

[103] Dr. Reddy's Answer and Separate Defenses, 2:24-cv-00637, September 12, 2025, pp. 24 – 26.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

## 5.2     Prior Litigation

### 5.2.1    Cephalon Inc. v. Eagle Pharmaceuticals, Inc.

As set forth in Section 4.1.1.1, the ███████████████████████████████████████████████████████ ████████████████████████████████████████████████  The litigation that led to the ████████████████████████████████████████████  began in August 2014 when Cephalon filed a Complaint in response to Eagle's NDA seeking approval for liquid concentrate formulations of Treanda®.[105]

As part of the ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████

### 5.2.2    Eagle v. Slayback

This is the sixth time Eagle has pursued patent litigation against Slayback in Delaware District Court relating to bendamustine treatments.  The following are summaries of the five previous cases.

- 2017-cv-01154 – In August 2017, Cephalon and Eagle filed a Complaint against Slayback alleging infringement of Cephalon's '270 patent.  According to those plaintiffs, the alleged infringement arose out of Slayback's submission of Abbreviated New Drug Application ("ANDA") No. 210617 to the U.S. FDA seeking approval to manufacture and sell a generic version of Bendeka® prior to the expiration of the '270 patent.[107]  In September 2019 the parties resolved plaintiffs' allegations through the granting of a consent judgment.[108]

- 2018-cv-00117 – In January 2018, Teva, Cephalon, and Eagle filed a Complaint against Slayback alleging infringement of Eagle U.S. Patent No. 9,572, 887 ("the '887 patent").  According to those plaintiffs, the alleged infringement arose out of Slayback's submission of ANDA No. 210617 to the U.S. FDA seeking approval to manufacture and sell a generic version of Bendeka® prior to the expiration of the '887 patent.[109]  Following a bench trial, the Court entered a final judgment in July

---

[104] EAGLEBEN-SA_00072300 – 400 at 301.

[105] Complaint, *Cephalon v Eagle,* No. 1:14-cv-01042-GMS, August 12, 2014, p. 1.

[106] EAGLEBEN-SA_00072300-400 at 368, 372, 379.

[107] Complaint, *Eagle v Slayback*, 1:17-cv-01154, August 16, 2017, p. 1.

[108] Stipulation and Order as to Slayback and Plaintiffs, *Eagle v Slayback*, 1:17-cv-01154, September 10, 2019, p. 1.

[109] Complaint, *Teva, Cephalon, Eagle v Slayback*, 1:18-cv-00117, January 19, 2018, p. 1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

2020 finding that Slayback's filing of ANDA No. 210617 infringed claim 13 of the '887 patent.[110] The judgment was affirmed on appeal.[111]

- 2018-cv-01459 – In September 2018, Eagle filed a Complaint against Slayback alleging infringement of U.S. Patent Nos. 8,609,707 ("the '707 patent"); 9,265,831 ("the '831 patent"); 9,572,796 ("the '796 patent); 9,572,797 ("the '797 patent"); and 10,010,533 ("the '533 patent").[112] According to Eagle, the alleged infringement arose out of the submission of ANDA No. 212230 to the U.S. FDA seeking approval to manufacture and sell a generic version of bendamustine hydrochloride prior to the expiration of these Eagle patents.[113] Following a bench trial, the Court found the asserted claims of the asserted patents were not invalid.[114]

- 2018-cv-01953 – In December 2018, Eagle filed a Complaint against Slayback alleging infringement of the '831 patent, the '796 patent, the '797 patent, and the '533 patent. According to Eagle, the alleged infringement arose out of the submission of NDA No. 212209 to the U.S. FDA seeking approval to manufacture and sell a product alleged to be a bioequivalent to Eagle's Belrapzo® bendamustine hydrochloride product.[115] Vivimusta® was approved in December 2022 from NDA 212209.[116]

All the independent claims of the patents asserted in this case set forth a formulation containing: (1) bendamustine; (2) a solvent system comprising a mixture of propylene glycol (PG) and polyethylene glycol (PEG) in specified ratios; and (3) a stabilizing amount of an antioxidant.[117] Slayback's proposed product similarly contained bendamustine and an antioxidant, but used ethanol instead of propylene glycol as the co-solvent.[118] Because ethanol was not literally within the claim language, Eagle alleged infringement under the doctrine of equivalents, contending that ethanol was an insubstantial substitute for PG in the claimed formulation.[119] Slayback, in turn, moved for judgement on the pleadings, contending that the asserted patents disclosed ethanol as an alternative but did not claim it, thereby dedicating ethanol-containing formulations to the public and precluding a finding of infringement by equivalence.[120]

---

[110] Final Judgment Order, *Teva, Cephalon, Eagle v Slayback*, 1:18-cv-00117, July 6, 2020, p. 4.

[111] Final Judgment Order, *Teva, Cephalon, Eagle v Slayback*, 1:18-cv-00117, August 5, 2021.

[112] Complaint, *Eagle v Slayback*, 1:18-cv-01459, September 20, 2018, p. 1.

[113] Complaint, *Eagle v Slayback*, 1:18-cv-01459, September 20, 2018, p. 1.

[114] Final Judgment Order, 1:18-cv-01459, January 25, 2023, p. 2.

[115] Complaint, *Eagle v Slayback*, 1:18-cv-01953, December 11, 2018, p. 1.

[116] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf.

[117] The '831 patent, p. 3.; the '796 patent, p. 3, the '797 patent, p. 3, the '533 patent, p. 4.

[118] *Eagle Pharms. Inc. v. Slayback Pharma LLC,* 958 F.3d 1171 (Fed. Cir. 2020).

[119] Complaint, *Eagle v Slayback*, 1:18-cv-01953-UNA, December 11, 2018, pp. 7 – 17.

[120] Motion for Judgement on the Pleadings, *Eagle v Slayback*, Civil Action No. 18-1953-CFC, January 11, 2019, p. 1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

In May 2019, the Delaware District Court granted Slayback's Motion.[121]  According to the Court, no genuine issue of material fact existed as the patents indicated that ethanol was unclaimed and Slayback's use of ethanol did not infringe.[122]  On appeal, the Federal Circuit affirmed, finding no error in the application of the disclosure-dedication doctrine and upholding the judgment of non-infringement.[123]

- <u>2021-cv-01256</u> – In August 2021, Eagle filed a Complaint against Slayback and Apotex alleging infringement of U.S. Patent No. 11,103,483 ("the '483 patent").  According to Eagle, the alleged infringement arose out of the submission of NDA No. 212209 by Slayback and NDA No. 215033 by Apotex to the U.S. FDA seeking approval to manufacture and sell stable, ready-to-use formulations of bendamustine that relied on data from bioavailability and/or bioequivalence studies contained in the approved labeling form Eagle's Belrapzo® bendamustine hydrochloride product prior to expiration of the '483 patent.[124]

  In October 2022, the Delaware District Court found that Slayback's bendamustine product did not infringe the '483 patent.[125]  The Federal Circuit later affirmed on appeal.[126]

### 5.2.3    Other Prior Eagle Bendamustine-Related Litigation

During the period 2017 through 2025, Eagle filed a dozen or so other patent infringement actions against such pharmaceutical firms as Mylan, Hospira, Lupin, and Dr. Reddy's.[127]  **Appendix 10.1.1** contains a summary of Eagle's actions by defendant and asserted patent claiming formulations containing and treatment using bendamustine.

---

[121] Memorandum Opinion, *Eagle v Slayback*, Civil Action No. 18-1953-CFC, May 9, 2019, pp. 1, 15.

[122] Memorandum Opinion, *Eagle v Slayback*, Civil Action No. 18-1953-CFC, May 9, 2019, pp. 11 – 12.

[123] *Eagle Pharms. Inc. v. Slayback Pharma LLC,* 958 F.3d 1171 (Fed. Cir. 2020).

[124] Complaint, *Eagle v Slayback*, 1:21-cv-01256, August 31, 2021, p. 1.

[125] Final Judgement, *Eagle v Slayback*, Civil Action No. 21-1256-CFC, October 25, 2022, p. 2.

[126] *Eagle v Slayback*, 2023-1110, Fed. Circ., January 16, 2024, p. 2.

[127] Appendix 10.1.1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

## 6    THE ASSERTED PATENTS

**Figure 4** contains summary information concerning the Asserted '214 and '248 patents.

**Figure 4**
**The Asserted Patents**

| Patent No. | Title | Priority Date | Priority App No. | App Date | Issuance Date | Est. Expir. Date |
|---|---|---|---|---|---|---|
| 11,872,214 | Formulations of Bendamustine | 1/28/2011 | US13/016,473 | 12/14/2022 | 1/16/2024 | 1/28/2031 |
| 12,138,248 | Formulations of Bendamustine | 1/28/2011 | US13/016,473 | 4/25/2024 | 11/12/2024 | 1/28/2031 |

As **Figure 4** illustrates, the Asserted Patents share the same title, claimed priority date, and expiration date. The following subsections provide information concerning the Asserted Patents.

### 6.1    The '214 Patent

The '214 patent is titled "Formulations of Bendamustine," and was issued on January 16, 2024 to Eagle Pharmaceuticals, Inc., with Nagesh R. Palepu and Philip Christopher Buxton as the named inventors.[128]  The application that resulted in the issuance of the '214 patent was filed on December 14, 2022 and claims priority to application No. 13/016,473, filed on January 28, 2011, with provisional application No. 61/299,100 filed on January 28, 2010.[129]  The abstract of the '214 patent states:

> Long term storage stable bendamustine-containing compositions are disclosed.  The compositions can include bendamustine or a pharmaceutically acceptable salt thereof, and a pharmaceutically acceptable fluid which can include in some embodiments PEG, PG or mixtures thereof and an antioxidant or chloride ion source. The bendamustine-containing compositions have less than about 5% total impurities, on a normalized peak area response ("PAR") basis as determined by high performance liquid chromatography ("HPLC") at a wavelength of 223 nm, after at least about 15 months of storage at a temperature of from about 5° C. to about 25° C.[130]

I understand that the asserted claims of the '214 patent are claims 1 – 9.[131]  Claim 1 and 6 are independent.[132] Independent claim 1 is directed to a sterile vial containing a liquid bendamustine-containing composition comprising about 100 mg of bendamustine or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is about 25 mg/mL, a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol, and glycofurol, and a stabilizing amount of an antioxidant, wherein the total impurities resulting from degradation

---

[128] The '214 patent, p. 1.

[129] The '214 patent, p. 1.

[130] The '214 patent, p. 1.

[131] Vellturo Report, February 6, 2026, p. 1.

[132] The '214 patent, p. 12.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

of the bendamustine is less than about 5% peak area response as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C. to about 25° C.[133]

## 6.2    The '248 Patent

The '248 patent is titled "Formulations of Bendamustine," and was issued on November 12, 2024 to Eagle Pharmaceuticals, Inc., with Nagesh R. Palepu and Philip Christopher Buxton as the named inventors.[134] The application that resulted in the issuance of the '248 patent was filed on April 25, 2024 and claims priority to application No. 13/016,473, filed on January 28, 2011, with provisional application No. 61/299,100, filed on January 28, 2010.[135] The abstract of the '248 patent states:

> Long term storage stable bendamustine-containing compositions are disclosed. The compositions can include bendamustine or a pharmaceutically acceptable salt thereof, and a pharmaceutically acceptable fluid which can include in some embodiments PEG, PG or mixtures thereof and an antioxidant or chloride ion source. The bendamustine-containing compositions have less than about 5% total impurities, on a normalized peak area response ("PAR") basis as determined by high performance liquid chromatography ("HPLC") at a wavelength of 223 nm, after at least about 15 months of storage at a temperature of from about 5° C. to about 25° C.[136]

I understand that the asserted claims of the '248 patent are claims 1-6, 8-11, 15, and 20.[137] Independent claim 1 is directed to a sterile container containing a liquid bendamustine-containing composition comprising bendamustine or a pharmaceutically acceptable salt thereof, wherein the bendamustine concentration in the composition is about 25 mg/mL, a pharmaceutically acceptable fluid consisting of polyethylene glycol and optionally one or more of propylene glycol, ethanol, benzyl alcohol, and glycofurol, and a stabilizing amount of an antioxidant, wherein the total impurities resulting from degradation of the bendamustine is less than about 5% peak area response as determined by HPLC at a wavelength of 223 nm after at least about 15 months at a temperature of about 5° C. to about 25° C.[138]

## 6.3    Purported Benefits and Advantages of the Asserted Patents

Dr. Vellturo, referencing Dr. Trout and his Expert Report, states that the '214 and '248 patents describe novel liquid bendamustine compositions suitable for long-term storage, addressing the clinical inconvenience and limited shelf-life of existing lyophilized formulations.[139] The '214 patent claims a formulation with ~100 mg bendamustine dissolved in polyethylene glycol (PEG) plus optional co-solvents and an antioxidant,[140]

---

[133] The '214 patent, p. 12.

[134] The '248 patent, p. 1.

[135] The '248 patent, p. 1.

[136] The '248 patent, p. 1.

[137] Vellturo Report, February 6, 2026, p. 1.

[138] The '248 patent, p. 13.

[139] Vellturo Report, February 6, 2026, p. 33.

[140] Vellturo Report, February 6, 2026, pp. 33 – 34.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

while the '248 patent specifies a similar composition in a sterile container.[141]  Dr. Vellturo asserts these patents provide essential components for commercially viable liquid products and, supported by opinions from Dr. Ashraf and Dr. Attia, notes that ready-to-dilute liquids are preferred over powders due to fewer reconstitution errors and longer shelf-life.[142]

Despite Dr. Vellturo's description, it is my understanding that the asserted patents provide no new therapeutic function or clinical benefit. By explicitly claiming ethanol-based solvents and chloride stabilizers, Eagle is reclaiming rights to formulations that courts previously ruled were dedicated to the public.[143] I am aware of no record evidence that the formulations change bendamustine's mechanism of action, clinical efficacy, or dosing. The active ingredient, dose, and route of administration remain identical to patents in the same patent family.

The '214 and '248 patents are part of a long chain of continued patents by Eagle.[144]  The first of Eagle's ready-to-use liquid patent, the '707 patent, disclosed dissolving bendamustine in PEG or propylene glycol (PG) with an antioxidant and demonstrated < 5 percent impurities after fifteen months.[145]  The '707 patent originated from application No. 13/016,473, filed on January 28, 2011, the same application the Asserted Patents claim priority from.[146]  Therefore, the '707 patent expires the same day as the Asserted Patents, January 28, 2031. Later patents (U.S. 9,000,021 and U.S. 9,034,908) lowered the infusion volume and added PG co-solvent to permit rapid 10-minute infusion, providing a meaningful clinical advantage.[147]

The Asserted Patents in this case were filed much later (December 2022 and April 2024).[148]  I understand that the subject matter of the Asserted Patents do not reduce infusion time or change dosage; instead they expand the list of acceptable co-solvents to include ethanol and benzyl alcohol and emphasize that PEG can be a mixture of different molecular-weight PEGs.[149] It is my understanding that these continuation patents do not materially confer additional clinical advantages. This is supported by the fact that the specification of the '214 and '248 patents is almost identical to that of the '707 patent, issued in 2013.[150]

Eagle's experts highlight that liquid bendamustine offers practical advantages over lyophilized powder, such as eliminating the need for reconstitution, which purportedly reduces dosing errors and improves safety.  Dr. Ashraf notes that incorrect ratios during preparation can lead to under- or overdosing,[151] while Dr. Attia

---

[141] Vellturo Report, February 6, 2026, p. 34.

[142] Vellturo Report, February 6, 2026, pp. 92 – 93.

[143] Memorandum Opinion, *Eagle v Slayback*, Civil Action No. 18-1953-CFC, May 9, 2019, p. 11.

[144] Appendix 10.1.

[145] The '707 patent, p. 2.

[146] The '707 patent, p. 1.

[147] U.S. Patent No. 9,000,021, pp. 2 – 3; U.S. Patent No. 9,034,908, pp. 2 – 3.

[148] Figure 4.

[149] The 214 patent, pp. 7 – 8, 12; The '248 patent, pp. 7 – 10, 13.

[150] Appendix 10.1.1.

[151] Expert Report of Khaleel K. Ashraf, February 6, 2026, p. 22.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

emphasizes shorter preparation time, fewer compounding errors, and longer shelf life for liquids.[152]  Neither expert claims that the asserted patents improve the efficacy of bendamustine. Notably, these purported benefits were already realized by earlier liquid formulations (Belrapzo®/Bendeka®) marketed under the 2015 rapid-infusion patents.  Thus, I understand that the asserted patents do not confer additional clinical advantages.[153]

In addition, Dr. Vellturo highlights the Asserted Patents as if they underpin modern liquid bendamustine products; however, I understand that these patents merely replicate a decade-old specification and broaden the list of solvents and claim containers.[154] Dr. Thirman states in his assessment that the National Comprehensive Cancer Network guidelines for bendamustine do not suggest any elements that are covered by the Eagle family of patents.[155] It is my understanding that earlier patents (U.S. Patent 9,000,021 and U.S. Patent 9,034,908) introduced the genuine clinical innovation: small-volume rapid infusion.[156]  The asserted '214 and '248 patents do not improve bendamustine's clinical efficacy or safety; instead, they concern long-term stability and logistical convenience, benefits I understand to be already available in the prior art.[157]

Dr. Brandt contends that while the Asserted Patents may slightly improve stability, shelf life is typically not a significant factor for oncology products, as they are purchased and used per patient treatment regime rather than stored long-term.[158]  I understand that hospitals, pharmacies, and cancer clinics would likely view non-infringing alternatives with shorter shelf lives as commercially acceptable alternatives, since any reduction in shelf life would not impact storage, clinical use, or operations.  Therefore, a shorter shelf life should not materially affect demand, pricing, or adoption.  Economically, this implies that any incremental shelf-life stability that may be conferred by the Asserted Patents does not provide additional value and does not undermine the feasibility of non-infringing alternatives.

## 7    THE BENDAMUSTINE PRODUCTS MARKET

### 7.1    FDA Approved Treatments for CLL and NHL

Bendamustine is a chemotherapy drug.  Certain bendamustine products have been approved to treat chronic lymphocytic leukemia (CLL) and non-Hodgkin lymphoma (NHL).  Approved bendamustine treatments compete with dozens of other FDA approved cancer drugs and treatments.  The following subsections provide information concerning FDA-approved treatments of CLL and NHL.

---

[152] Expert report of Caroline Attia, February 6, 2026, pp. 10 – 14.

[153] Expert Report of Michael L. Brandt, March 16, 2026 (The "Brandt Report"), pp. 35 – 36; Expert Report of Michael J. Thirman (The "Thirman Report"), March 16, 2026, pp. 19 – 23.

[154] Brandt Report, March 16, 2026, pp. 35 – 36.

[155] Thirman Report, March 16, 2026, p. 22.

[156] U.S. Patent No. 9,000,021, pp. 2 – 3; U.S. Patent No. 9,034,908, pp. 2 – 3.

[157] Discussion with Dr. Brandt, March 16, 2026; Brandt Report, March 16, 2026, pp. 35 – 36.

[158] Brandt Report, March 16, 2026, pp. 26 – 27.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

### 7.1.1    FDA Approved CLL Treatments

I understand that CLL is one of the most common types of leukemia in adults.[159]  Leukemia generally is a cancer that starts in the white blood cells called lymphocytes in the bone marrow.[160]  However, over time the cells can spread to other parts of the body including the lymph nodes, liver, and spleen.[161]  Leukemia is either chronic or acute.[162]  CLL is chronic leukemia and grows more slowly than acute leukemia.[163]

According to Cancer.org, CLL treatments depend on disease stage, symptoms, and patient-specific factors.[164]  Cancer.org reports that, for individuals diagnosed with early-stage CLL who do not have symptoms, the standard approach is "watch and wait," meaning active surveillance without immediate treatment.[165]  When treatment becomes necessary due to disease progression or the onset of symptoms, the therapeutic landscape offers several options, including targeted therapy, chemotherapy, and immunotherapy.  FDA approved treatments for CLL include those listed in **Appendix 11.1**.

I also understand that, in certain cases, low-dose radiation therapy or surgery may be an option, and less commonly a stem cell transplant may be appropriate.[166]  Therapies for second-line or later treatments are generally the same as the options for first-line therapy with the options depending on past treatments and the effectiveness of those treatments.[167]

### 7.1.2    FDA-Approved NHL Treatments

I understand that NHL is a cancer type known as lymphoma because it starts in white blood cells called lymphocytes.[168]  The type of lymphoma cancer depends in part on the type of lymphocyte cell that is affected (B cells or T cells) and how mature the cells are when they become cancerous.[169]  B lymphocytes ("B cells") normally make proteins called antibodies that help protect the body against bacteria or viruses.[170]  T lymphocytes ("T cells") either destroy germs or abnormal cells in the body or help boost or slow the activity

---

[159] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/about/what-is-cll.html.

[160] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/about/what-is-cll.html.

[161] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/about/what-is-cll.html.

[162] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/about/what-is-cll.html.

[163] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/about/what-is-cll.html.

[164] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/treating/treatment-by-risk-group.html.

[165] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/treating/treatment-by-risk-group.html.

[166] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/treating/treatment-by-risk-group.html.

[167] https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/treating/treatment-by-risk-group.html.

[168] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

[169] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

[170] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

of other immune system cells, depending on the type of T cells.[171]  While lymphoma can start in either type of lymphocytes, B-cell lymphomas are most common.[172]

NHL may also be evaluated based on how fast the cells grow and spread.[173]  Indolent lymphomas grow and spread slowly, so some indolent lymphomas can be watched closely instead of being treated.[174]  Aggressive lymphomas grow and spread quickly, so they are typically treated when found.[175]

I understand that FDA-approved treatments for NHL depend on the type and stage of the lymphoma, the patient's health, and other factors.[176]  Treatments for NHL may include chemotherapy, immunotherapy, targeted drug therapy, radiation therapy, high-dose chemotherapy and stem cell transplant, and surgery.[177]  FDA approved treatments for NHL include those listed in **Appendix 11.2**.

### 7.1.3    Evidence of Competition Among These FDA-Approved Treatments

The record evidence indicates that the FDA-approved treatments for CLL and NHL compete for prescriptions, administrations, and sales.  For example,



In addition, Teva's 2024 Form 10-K confirms that:

> [C]ompetitors to BENDEKA include combination therapies such as R-CHOP (a combination of cyclophosphamide, vincristine, doxorubicin, and prednisone in combination with rituximab)… for the treatment of NHL, as well as a combination of fludarabine, doxorubicin

---

[171] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

[172] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

[173] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

[174] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

[175] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

[176] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/treating.html.

[177] https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/treating.html.

[178] EAGLEBEN-SA_00351787 – 789 at 787.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

and rituximab for the treatment of CLL and newer targeted oral therapies, such as ibrutinib, idelilisib and venetoclax.[179]

Teva's 2025 Form 10-K likewise indicates that "competitors to BENDEKA include combination therapies for the treatment of NHL, as well as a combination for the treatment of CLL and newer targeted oral therapies."[180] According to Teva, "BENDEKA and TREANDA combined revenues in our United States segment in 2025 decreased by 13% to $147 million, compared to 2024, mainly due to competition from alternative therapies, as well as from generic bendamustine products."[181]

## 7.2    FDA-Approved Bendamustine Products

Bendamustine was first synthesized in Germany in the early 1960s.[182] Bendamustine was first introduced in Europe in the 1990s and in the U.S. in 2001.[183] Bendamustine was first FDA approved in 2008 for CLL and certain B-cell NHL under the brand name Treanda®.[184] Bendeka® was approved in 2015.[185] Belrapzo® received tentative approval in 2014 and final approval in 2018.[186] Generic bendamustine powder products were first FDA approved as early as December 2022 as generic formulations of Treanda®.[187] Vivimusta® was FDA approved in December 2022.[188]

Currently bendamustine is offered in two forms – lyophilized powder and solution.[189] Lyophilized powder is reconstituted before administration, while solutions are ready-to-dilute formulations that eliminate the need for reconstitution.[190] Lyophilized powder is widely utilized due to its stability and extended shelf life which is beneficial in hospital settings, whereas solution-based products are popular for their convenience.[191] The following are summaries of FDA approved liquid and powder formulations of bendamustine.

---

[179] Teva 2024 Form 10-K, p. 10.

[180] Teva 2025 Form 10-K, p. 10.

[181] Teva 2025 Form 10-K, p. 63.

[182] "Bendamustine: An old drug for a potential new indication," Cancer Research, Statistics, and Treatment, p. 156.

[183] "Bendamustine: An old drug for a potential new indication," Cancer Research, Statistics, and Treatment, p. 156.

[184] https://www.accessdata.fda.gov/drugsatfda_docs/label/2008/022303lbl.pdf.

[185] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000Approv.pdf.

[186] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2018/205580Orig1s000OtherR.pdf.

[187] https://www.fda.gov/drugs/drug-and-biologic-approval-and-ind-activity-reports/2022-first-generic-drug-approvals.

[188] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf.

[189] https://dataintelo.com/report/bendamustine-market.

[190] https://dataintelo.com/report/bendamustine-market.

[191] https://dataintelo.com/report/bendamustine-market.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### 7.2.1    Liquid Bendamustine Products

#### 7.2.1.1   Teva's Bendeka®

Bendeka® was approved by the FDA in December 2015 via the 505(b)(2) NDA pathway.[192]  Bendeka® was first sold in the U.S. in January 2016.[193]  Bendeka® is indicated to treat patients with CLL and certain B-cell NHL that has progressed during or within six months of treatment with rituximab or a rituximab-containing regimen.[194]

Current dosage and administration information for Bendeka® indicates that for CLL, Bendeka® should be administered as 100 mg/m$^2$ [195] infused intravenously over 10 minutes on days 1 and 2 of a 28-day cycle, with up to six cycles.[196]  For NHL Bendeka® should be administered as 120 mg/m$^2$ infused intravenously over 10 minutes on days 1 and 2 of a 21-day cycle, with up to eight cycles.[197]

#### 7.2.1.2   Eagle's Belrapzo®

Belrapzo® received tentative approval from the FDA in July 2014 and final approval in 2018 via the 505(b)(2) NDA pathway.[198]  Belrapzo® was first sold in June 2019.[199]  Belrapzo® is indicated to treat patients with CLL and certain B-cell NHL that has progressed during or within six months of treatment with rituximab or a rituximab-containing regimen.[200]

Current dosage and administration information for Belrapzo® indicates that for CLL Belrapzo® should be administered as 100 mg/m$^2$ infused intravenously over 30 minutes on days 1 and 2 of a 28-day cycle, with up to six cycles.[201]  For NHL, Belrapzo® should be administered as 120 mg/m$^2$ infused intravenously over 60 minutes on days 1 and 2 of a 21-day cycle, with up to eight cycles.[202]

---

[192] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000Approv.pdf.  The FDA's 505(b)(2) pathway is a hybrid NDA process that allows approval for drugs similar to, but not identical to, previously approved drugs by relying on existing data, such as public literature. https://www.thefdagroup.com/blog/505b2.

[193] https://investor.eagleus.com/news-releases/news-release-details/fda-does-not-grant-seven-year-orphan-drug-exclusivity-bendeka.

[194] https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/208194s000lbl.pdf.

[195] The abbreviation mg/m$^2$ refers to milligrams per square meter and is an important unit in pharmacology, especially in cancer treatment and pediatrics. This measurement is determined by the patient's body surface area (BSA), offering a more accurate dosing approach for potent medications than simply using body weight.

[196] https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/208194s026lbl.pdf.

[197] https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/208194s026lbl.pdf.

[198] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2018/205580Orig1s000OtherR.pdf.

[199] https://investor.eagleus.com/news-releases/news-release-details/cms-establishes-unique-j-code-belrapzotm-bendamustine-500ml.

[200] https://www.accessdata.fda.gov/drugsatfda_docs/label/2018/205580s002lbl.pdf.

[201] https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/205580s013lbl.pdf.

[202] https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/205580s013lbl.pdf.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**INTELLECTUAL CAPITAL EQUITY**



### 7.2.1.3  Slayback's Vivimusta®

Vivimusta® was approved by the FDA in December 2022 via the 505(b)(2) NDA pathway.[208]  Vivimusta® is indicated to treat patients with CLL and certain B-cell NHL that has progressed during or within six months of treatment with rituximab or a rituximab-containing regimen.[209]  Vivimusta® was first sold in the U.S. in December 2022.[210]

Current dosage and administration information for Vivimusta® indicates that for CLL, Vivimusta® should be administered as 100 mg/m$^2$ infused intravenously over 20 minutes on days 1 and 2 of a 28-day cycle, with up to six cycles.  For NHL, Vivimusta® should be administered as 120 mg/m$^2$ infused intravenously over 20 minutes on days 1 and 2 of a 21-day cycle, with up to eight cycles.[211]

A March 2023 Slayback corporate presentation identifies



---

[203] Deposition of David Bricker, November 25, 2025, p. 23.

[204] Deposition of David Bricker, November 25, 2025, pp. 95 – 96.

[205] Deposition of David Bricker, November 25, 2025, p. 23.

[206] Deposition of David Bricker, November 25, 2025, p. 23.

[207] Deposition of David Bricker, November 25, 2025, p. 24.

[208] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf.

[209] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/212209s000lbl.pdf; Deposition of Harish Chinnari Vol 2, December 11, 2025, pp. 166 – 167.

[210] Appendix 4.2.

[211] https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/212209s005lbl.pdf.

[212] SLBEND-REV0000125197, slide 46.

[213] SLBEND-REV0000125197, slide 44.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

**Figure 5**
**Slayback Identified Advantages of Vivimusta®[214]**



#### 7.2.1.4  Belrapzo® Theraputic Equivalents – Apotex and Baxter

Currently, Apotex and Baxter offer versions of liquid bendamustine considered therapeutic equivalents to Belrapzo®.[215]  Apotex's liquid bendamustine product was approved by the FDA in December 2022 via the 505(b)(2) NDA pathway,[216] and first sold in the U.S. in Q2 2023.[217]  The dosage and administration information for Apotex's product is the same as that of Belrapzo®.

Baxter's liquid bendamustine product was approved by the FDA in December 2022 via the 505(b)(2) NDA pathway,[218] and first sold in the US. in Q1 2023.[219]  The dosage and administration information for Baxter's product is the same as that of Belrapzo®.

---

[214] SLBEND-REV0000125197, slide 46.

[215] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=BasicSearch.process, Search "Belrapzo".

[216] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/215033Orig1s000ltr.pdf.

[217] Appendix 6.1.

[218] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/216078Orig1s000ltr.pdf.

[219] Appendix 6.1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

### 7.2.2    Lyophilized Powder Formulations

#### 7.2.2.1  Teva's Treanda®

Treanda® was approved by the FDA in March 2008[220] to treat patients with CLL and certain B-cell NHL that has progressed during or within six months of treatment with rituximab or a rituximab-containing regimen.[221] Treanda® was available in two formulations, a liquid offered in two doses, 45 mg/0.5 mL or 180 mg/2 mL (90 mg/mL) in a single-dose vial, and a lyophilized powder offered in two doses, 25 mg or 100 mg, in a single-dose vial for reconstitution.[222]  Treanda®'s liquid formulations have been discontinued.[223]

In January 2016, Teva announced the introduction of Bendeka®.  At that time, Paul Rittman, Senior Vice President and General Manager, Teva Oncology, provided that "We believe BENDEKA represents an important benefit to both patients and healthcare providers, and are pleased it is now available.  Based on the product profile, we expect BENDEKA to replace TREANDA® liquid."[224]  Upon launch of Bendeka®, Teva promoted Bendeka®'s low-volume (50 mL) and short infusion time (10 minutes).[225]

Current dosage and administration information for Treanda® indicates that for CLL, Treanda® should be administered as 100 mg/m² infused intravenously over 30 minutes on days 1 and 2 of a 28-day cycle, up to six cycles.[226]  For NHL, Treanda® should be administered as 120 mg/m² infused intravenously over 60 minutes on days 1 and 2 of a 21-day cycle, up to eight cycles.[227]

#### 7.2.2.2  Treanda® Generics

According to the FDA, the bendamustine lyophilized powder products of Accord Healthcare, Dr. Reddy's, Eugia Pharma, and Meithal Pharmaceuticals have been approved as therapeutical equivalents to Treanda® lyophilized powder bendamustine.[228]  The bendamustine products of Accord Healthcare and Dr. Eddys were approved in December 2022, and the bendamustine products of Eugia Pharma and Meithal Pharmaceuticals were approved in June 2023.[229]

---

[220] https://www.accessdata.fda.gov/drugsatfda_docs/label/2008/022249lbl.pdf.

[221] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/022249s026lbl.pdf.

[222] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/022249s026lbl.pdf.

[223] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=022249.

[224] https://www.tevausa.com/news-and-media/press-releases/teva-and-eagle-pharmaceuticals-announce-commercial-availability-of-bendeka-bendamustine-hydrochloride-/.

[225] https://www.tevausa.com/news-and-media/press-releases/teva-and-eagle-pharmaceuticals-announce-commercial-availability-of-bendeka-bendamustine-hydrochloride-/.

[226] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/022249s026lbl.pdf.

[227] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/022249s026lbl.pdf.

[228] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=022249.

[229] https://www.fda.gov/media/71474/download?attachment, at 3-56.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## 7.3      Evidence Supporting Inclusion of Powder Products in Market Definition

### 7.3.1      Legal Precedence and Clinical Evidence

An evaluation of whether products compete in the same market often focuses on substitution. This typically involves determining whether purchasers perceive products or services as acceptable substitutions or alternatives and would switch between them in response to changes in certain factors such as price. In evaluating this issue, the U.S. Supreme Court stated the "determination of the competitive market for commodities depends upon . . . how far buyers will go to substitute one commodity for another," and that "commodities reasonably interchangeable by consumers for the same purposes" constitute the relevant market.[230] The Supreme Court later similarly reiterated that the "outer boundaries" of a relevant product market are determined by "reasonable interchangeability of use or the cross-elasticity of demand" between a product and a substitute.[231]

The regulatory and compendial[232] framework for parenteral drugs supports treating lyophilized and liquid injectables as alternatives designated to achieve the same therapeutic benefits. The injections nomenclature of the United States Pharmacopeia ("USP"), which sets quality standards for drugs, distinguishes between "[DRUG] Injection," defined as "liquid preparations," and "[DRUG] for Injection," defined as "dry solids that, upon the addition of suitable vehicles, yield solutions" meeting injection requirements, explicitly recognizing that dry and liquid forms converge on the same end use after constitution.[233] That baseline matters because if a ready-to-dilute ("RTD") liquid and a lyophilized powder version of the same active pharmaceutical ingredient ("API") are both available to satisfy the same clinical order (e.g., "administer bendamustine" or "administer ceftriaxone"), the purchaser's selection between these products becomes an economic choice among substitutes rather than a choice between different therapeutic categories.

Bendamustine regulatory and clinical records provide direct evidence of interchangeability, overlapping indications, comparable safety profiles, and manufacturer intent. FDA's clinical review for Bendeka® states, "[f]rom a clinical perspective [Bendeka®] should be granted approval for the following indications which are the same indications as the reference drug," and then identifies the CLL and B-cell NHL indications.[234] The FDA review further identifies the reference drug as Treanda® and explains that Treanda® was "manufactured as a lyophilized powder for injection," and expressly states that "both of the approved bendamustine hydrochloride formulations (lyophilized powder and injectable solution) have the same indications as those proposed for Bendeka."[235] This is direct regulatory confirmation that, at the indication level, bendamustine

---

[230] *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956).

[231] *Brown Shoe Co., Inc. v. United States*, 370 U.S. 294 (1962); Clayton Antitrust Act of 1914, 15 U.S.C. §§ 12-27.

[232] Compendial refers to standards, methods, and specifications for pharmaceutical raw materials and finished products outlined in official, recognized publications like the U.S. Pharmacopeia-National Formulary (USP/NF).

[233] https://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q08_pf_ira_33_2_2007_chapter_1.pdf.

[234] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000MedR.pdf.

[235] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000MedR.pdf.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

RTD and lyophilized formulations occupy the same therapeutic space and therefore can be demand substitutes for the same treatment decision.[236]

The FDA Bendeka® review also provides explicit support for a comparable safety/risk profile. The FDA reviewer states that "the proportion of patients with adverse events and severity of adverse events in the bioequivalence study … were similar for Bendeka infusion over 10 minutes compared to Treanda infusion over 60 minutes," and further concludes that "it does not appear that the more rapid infusion of Bendeka compared to Treanda increases the risk or severity of adverse reactions for the intended populations."[237] The FDA further states: "[o]verall, the risk benefit assessment favors the approval of the Bendeka formulation for the same indications as that of the Treanda formulation," while describing the principal differences as administration logistics (rapid infusion and device compatibility) rather than a new therapeutic purpose.[238] In economic terms, this demonstrates competition within the market: two products address the same clinical need, have comparable risk profiles, and compete on convenience and handling attributes.

Peer-reviewed and clinical-trial materials reinforce the same "same space, comparable risks" conclusion and also provide direct evidence of Eagle's sponsorship and comparative intent. The 2015 American Society of Hematology (ASH) Blood journal abstract titled "*Phase 1, Open-Label, Randomized, Bioequivalence Study of 2 Bendamustine Hydrochloride Formulations; A Ready-to-Dilute Low-Volume, Rapid Infusion Solution and a Lyophilized Powder Formulation*" states in its Introduction that the study "assessed the bioequivalence (BE) and safety of an investigational, ready-to-dilute … solution … and the approved bendamustine lyophilized powder formulation."[239] The abstract reports that "the overall safety profiles of [test and reference] were similar" and concludes that the "safety profile of the two drugs was comparable with no new safety signals."[240] Critically, the abstract identifies the "Sponsor: Eagle Pharmaceuticals, Inc." and discloses multiple author relationships with Eagle (research funding and employment), linking the comparative exercise to Eagle's strategy and interests.[241]

Furthermore, ClinicalTrials.gov corroborates this sponsorship and clarifies the 2013 study's purpose in plain terms: the record lists "Sponsor: Eagle Pharmaceuticals, Inc." and states the purpose is "to demonstrate that a new formulation … is bioequivalent (BE) (similar) to the commercially available product," and further describes the study as intended "to demonstrate the BE, and safety and tolerability profile of 2 formulations ... Eagle-BDM and Teva-BDM."[242] These sources together provide direct evidence that Eagle itself sponsored and disseminated a head-to-head comparison between an RTD formulation and a lyophilized formulation, framed the products as addressing the same therapeutic use (bendamustine infusion), and

---

[236] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000MedR.pdf; *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377 (1956).

[237] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000MedR.pdf.

[238] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000MedR.pdf.

[239] https://doi.org/10.1182/blood.V126.23.4857.4857.

[240] https://doi.org/10.1182/blood.V126.23.4857.4857.

[241] https://doi.org/10.1182/blood.V126.23.4857.4857.

[242] https://clinicaltrials.gov/study/NCT02162888; "Teva-BDM" represents Treanda®, which was the only commercially available bendamustine formulation from Teva in 2013.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

emphasized comparable safety and bioequivalence, consistent with Eagle viewing the products as alternatives rather than distinct product markets.

An academic abstract supports the same conclusion. The abstract of the 2017 Journal of Clinical Pharmacology paper titled "*Safety and Pharmacokinetics of Bendamustine Rapid-Infusion Formulation*", which is similarly sponsored by Eagle and has several co-authors with Eagle employment, states that "the overall safety profiles of the 2 BDM formulations were comparable, with no new safety signals identified and no differences in infusion-related adverse events," which directly supports a conclusion that the liquid and lyophilized formulations occupy the same clinical risk space and are competing products.[243]

### 7.3.2    Eagle Business Records

Eagle's contemporaneous business records consistently



---

[243] https://doi.org/10.1002/jcph.942.

[244] Deposition of Alan Eagle, November 18, 2025, Exhibit 5 (EAGLEBEN-SA_00344611-762 at 629 – 630), p. 23.

[245] EAGLEBEN-SA_00344611-762 at 629 – 630.

[246] EAGLEBEN-SA_00344611-762 at 642.

[247] EAGLEBEN-SA_00344400-610 at 439 – 440; EAGLEBEN-SA_00344611-762 at 643.

[248] EAGLEBEN-SA_00344400-610 at 439, 443.

[249] Deposition of Alan Eagle, November 18, 2025, Exhibit 5 (EAGLEBEN-SA_00344611-762 at 643), p. 43.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY





### 7.3.3    The Testimony of Eagle Representatives

Deposition testimony of Eagle witnesses confirms the same conclusion.

[250] EAGLEBEN-SA_00344611-762 at 644.

[251] EAGLEBEN-SA_00344611-762 at 644, 648.

[252] EAGLEBEN-SA_00344611-762 at 688.

[253] EAGLEBEN-SA_00347285-311 at 308.

[254] EAGLEBEN-SA_00344611-762 at 688; https://www.tevapharm.com/news-and-media/latest-news/teva-launches-liquid-formulation-of-treanda-bendamustine-hci-injection-in-u.s/.

[255] EAGLEBEN-SA_00344400-610 at 443.

[256] EAGLEBEN-SA_00344400-610 at 443.

[257] Deposition of Alan Eagle, November 18, 2025, pp. 23, 56 – 59.

[258] EAGLEBEN-SA_00344611-762.

[259] Deposition of Alan Eagle, November 18, 2025, Exhibit 5 (EAGLEBEN-SA_00344611-762 at 629), pp. 26 – 27;

[260] Deposition of Alan Eagle, November 18, 2025, pp. 26 – 27, 118.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



## 7.4 Quarterly Unit-Sales Based Market Shares of Bendamustine Products

**Appendix 5.3** contains quarterly unit sales of the FDA bendamustine products described in Section 7.2. As **Appendix 5.3** illustrates, Bendeka®, Belrapzo®, and Treanda® were each introduced prior to 2022. During

---

[261] Deposition of Alan Eagle, November 18, 2025, Exhibit 5 (EAGLEBEN-SA_00344611-762 at 643), p. 43.

[262] Deposition of Alan Eagle, November 18, 2025, p. 45.

[263] Deposition of Alan Eagle, November 18, 2025, pp. 22, 45.

[264] Deposition of Alan Eagle, November 18, 2025, Exhibit 5 (EAGLEBEN-SA_00344611-762 at 644), pp. 28, 46 – 48.

[265] EAGLEBEN-SA_00344611-762 at 644, 648.

[266] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 62 – 63; EAGLEBEN-SA 00353678, Tab: 2016–24.

[267] Deposition of Christopher Krawtschuk, December 5, 2025, p. 157.

[268] EAGLEBEN-SA_00344611-762 at 688; EAGLEBEN-SA_00344400-610 at 443; Deposition of Alan Eagle, November 18, 2025, pp. 26 – 27.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



**Figure 6**
**U.S. Market Shares of Bendamustine Products: Q1 2022 to Q3 2025**[274]



---

[269] In December 2022. Appendix 5.3.

[270] Appendix 5.3.

[271] Appendix 5.3.

[272] Appendix 5.3, (2.5 percent + 0.6 percent = 3.1 percent).

[273] Appendix 5.3.

[274] Appendix 5.3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



---

[275] Appendix 5.3.

[276] Appendix 5.3, (3.7 percent + 5.9 percent = 9.6 percent).

[277] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, p. 31.

[278] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, pp. 25 – 26, 228.

[279] Deposition of Christopher Krawtschuk, December 5, 2025, p. 15.

[280] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 117 – 118.

[281] EAGLEBEN-SA_00358761.

[282] EAGLEBEN-SA_00358761.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

### 7.5    Factors Influencing Sales of Bendamustine Products

#### 7.5.1    Infusion Time

Mr. Joshua Mathew, Azurity V.P. of Oncology, contends that infusion time is an important consideration of oncologists, other healthcare providers, and patients in evaluating bendamustine products.  According to Mr. Mathew, bendamustine products are infused at the end of a cancer patient's treatment regimen which may include infusion of other drugs such as biologics, and the infusions of those other drugs may take several hours.[283]  Mr. Mathew also indicated that Slayback and Azurity promote Vivimusta®'s relatively-short 20-minute period of infusion to potential purchasers.[284]  **Figure 8** summarizes the infusion times of bendamustine products.

**Figure 8**
**Bendamustine Product Infusion Times[285]**

| Bendamustine Product | Infusion Time |
|---|---|
| Belrapzo | CLL = 30 minutes; NHL = 60 minutes |
| Bendeka | 10 minutes |
| Treanda | CLL = 30 minutes; NHL = 60 minutes |
| Treanda Generics | CLL = 30 minutes; NHL = 60 minutes |
| Vivimusta | 20 minutes |
| Baxter | CLL = 30 minutes; NHL = 60 minutes |
| Apotex | CLL = 30 minutes; NHL = 60 minutes |

The importance of infusion time is confirmed by a market research report conducted by Clarion Healthcare, a life sciences strategy and organizational consulting firm located in Boston Massachusetts.  Clarion Healthcare performed research for Slayback in 2023, and reported that



---

[283] Discussion with Josh Mathew, March 6, 2026.  Discussion with Dr. Michael L. Brandt, March 6, 2026.

[284] Discussion with Josh Mathew, March 6, 2026.

[285] EAGLEBEN-SA_00351777-786 at 779; https://ndclist.com/ndc/71225-120/label; https://ndclist.com/ndc/10019-079/label; https://ndclist.com/ndc/60505-6228/label.

[286] SLAY-VIVMUS0083159-177 at 164.

[287] SLAY-VIVMUS0083159-177 at 164.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

### 7.5.2    Product Cost and Hospital/Clinic Economics

According to Mr. Mathew, the specific economics of hospitals and cancer clinics – including product costs and reimbursement rates – influence bendamustine purchasing decisions.[288]  With respect to reimbursement rates, I understand a factor considered by certain clinics is the 20-minute infusion time of Vivimusta®.

Many cancer patients are older adults who receive Medicare or Medicaid benefits.  I understand that infusion times of less than 15 minutes are typically billed under specific Current Procedural Terminology (CPT) codes and reimbursed by Centers for Medicare & Medicare Services (CMS) as an "IV push" or "injection" rather than as an infusion.[289]  I also understand that infusion times of more than 15 minutes are typically billed at different CPT codes and reimbursed by CMS as full 60-minute infusions, which reimbursement rates are significantly higher than "IV push" rates.  Thus, according to Mr. Mathew, clinics that operate at or near capacity benefit economically from Vivimusta®'s 20-minute infusion time and higher CMS reimbursement rates.

The economic (i.e., reimbursement) benefit of and patient-related preference for Vivimusta®'s relatively-shorter 20-minute infusion time enables Slayback to ███████████████████████████
██████████████████████████     █████████████████████████████████████
██████████████████████████████████████████████████████

**Figure 9**
**Reported Average Net Revenue per Unit: Q1 2024 and Q1 – Q3 2025**



---

[288] Discussion with Josh Mathew, March 6, 2026.

[289] Discussion with Dr. Michael L. Brandt, March 6, 2026. Discussion with Josh Mathew, March 6, 2026.

[290] Appendix 6.1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

As **Figure 9** illustrates, in 2024, the ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████████████████
█████  The ASPs reported by CMS are based on the reports of drug manufacturers.[294]
████████████  ██████████████████████████████████████████
███████████████████████████████████  ████████  █████████████
██████  ██████████████████████████████████████████████████
████████████████████  ████████  ██████████████████████████
█████████████████████████

**Figure 10**
**CMS Reported ASP + 4.3%: Q2 2024 and Q3 2024**[300]



██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

<hr />

[291] Appendix 6.1.

[292] Appendix 6.1.

[293] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, pp. 199, 226 – 229.

[294] https://www.cms.gov/medicare/payment/part-b-drugs/asp-reporting.

[295] ████████████████████████

[296] Appendix 6.2.

[297] Appendix 6.2.

[298] Appendix 6.2.

[299] Appendix 6.2.

[300] Appendix 6.2.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**INTELLECTUAL CAPITAL EQUITY**



**Figure 11**
**CMS Reported ASP + 4.3%: Q3 2023 – Q4 2025**[302]



## 7.6    Conclusions Concerning Vivimusta® and the Bendamustine Product Market

As illustrated in **Appendix 5.3**, despite its favorable 20-minutes infusion time, Vivimusta █████████

---

[301] Appendix 6.2.

[302] Appendix 6.2.

[303] Discussion with Josh Mathew, March 6, 2026.

[304] Figure 8.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**INTELLECTUAL CAPITAL EQUITY**

**Figure 12**
**Eagle's 2023 Evaluation of Vivimusta® Market Impact**[305]





---

[305] EAGLEBEN-SA_00344611-762 at 644.

[306] Appendix 5.3.

[307] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, pp. 251 – 252.

[308] Appendix 5.3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[309] Appendix 6.2.

[310] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, p. 252.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



INTELLECTUAL CAPITAL EQUITY

## 8      QUANTIFICATION OF EAGLE'S LOST PROFITS

I understand that the lost profits inquiry for patent infringement focuses on the position the patentee would have been in "but for" the infringement.  *Rite-Hite Corp. v. Kelley Co.* states that "the general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement.  To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer."[314]

### 8.1      The *Panduit*-Test

In practical terms, to assess potential damages in a patent infringement case, a determination must be made as to whether and to what extent the plaintiff would have realized additional sales "but for" the defendant's infringement.  One non-exclusive test for establishing "but for" causation is described in the *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.* case.[315]  Pursuant to *Panduit,* a patentee may show an inference of lost profits by demonstrating the following four factors:

- Demand for the patented product;

- Absence of acceptable non-infringing alternatives;

- Manufacturing and marketing capability to exploit the demand; and

- The amount of profit that the claimant would have made absent the infringement.[316]

---

[311] Appendix 6.2.

[312] Appendix 6.2.

[313] Appendices 11.1 and 11.2.

[314] *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

[315] *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978).

[316] *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

The application of the "but for" analysis for calculating patent damages was affirmed by the United States Court of Appeals for the Federal Circuit ("CAFC") in *Grain Processing Corp. v. American Maize-Products Company*.[317]

### 8.1.1    Demand for the Patented Product

I understand that the first *Panduit* factor addresses "whether demand existed for the patented product" and "the focus on particular features corresponding to individual claim limitations is unnecessary when considering whether demand exists for a patented product."[318]

As reflected in **Appendix 4.2**, Slayback sold ▮▮▮▮▮▮▮ of Vivimusta® during the period December 2022 through September 2025.[319]  In connection with these sales, Slayback reported net revenues of ▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### 8.1.2    Absence of Acceptable Non-Infringing Alternatives

The second *Panduit* factor evaluates the availability of acceptable non-infringing alternatives.  As set forth in Section 7.1, the record evidence indicates that FDA-approved treatments for CLL and NHL compete with bendamustine products.  **Appendix 11.1** lists FDA-approved treatments for CLL, and **Appendix 11.2** lists FDA-approved treatments for NHL.  Teva's 2024 Form 10-K is an example of such record evidence, stating:

> [C]ompetitors to BENDEKA include combination therapies such as R-CHOP (a combination of cyclophosphamide, vincristine, doxorubicin, and prednisone in combination with rituximab)… for the treatment of NHL, as well as a combination of fludarabine, doxorubicin and rituximab for the treatment of CLL and newer targeted oral therapies, such as ibrutinib, idelilisib and venetoclax.[321]

As set forth in Section 7.3, the record evidence also demonstrates that, although liquid and powder formulations may differ in certain respects, they are alternatives within the bendamustine product market.[322]

I understand that the Federal Circuit has held that when more than two suppliers exist in the product market, a patentee may satisfy the second prong of the *Panduit* test by substituting proof of its competing product(s) market share for proof of the absence of acceptable non-infringing substitutes.[323]  I have utilized this widely accepted market share approach to quantify Eagle's lost profits.

---

[317] *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999).

[318] *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330-1331 (Fed. Cir. 2009); *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 2016-2297, 2017 WL 3499240, at *7.

[319] Appendix 4.2.

[320] Appendix 4.2.

[321] Teva 2024 Form 10-K, p. 10.

[322] EAGLEBEN-SA_00344611-762 at 688; EAGLEBEN-SA_00344400-610 at 443.

[323] *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

### 8.1.3    Manufacturing and Distribution Capacity

The third prong of the *Panduit* test requires that a patentee demonstrate that it possessed sufficient manufacturing, distribution, and financial capacity to make the additional unit sales it claims to have lost due to the infringement.

Eagle sells Belrapzo® to hospitals and cancer clinics. ███████████████████████████████████
██████████████████████████ As set forth in Section 7.2.1.2, I understand that ████████████████████
████████████████████████████ According to Mr. Bricker, Eagle's Sr. V.P. and Head of Global Manufacturing and
Supply,[327] he █████████████████████████████████████████████████████████
███████████████████████████████████

As illustrated in **Appendix 5.4**, Eagle reported ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████

### 8.1.4    Quantification of Lost Profits

The record evidence indicates that ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████

## 8.2    Quantification of Lost Profits Under Scenario A: Only Liquid Products

### 8.2.1    Eagle's Lost Profits from Lost Belrapzo® Sales – Scenario A

The calculation of Eagle's lost profits from lost Belrapzo® sales under Scenario A is contained in **Appendix 3.1.2**.  As **Appendix 3.1.2** illustrates, during the damages period of ███████████ through September 30,

---

[324] EAGLEBEN-SA_00353678.

[325] Deposition of David Bricker, November 25, 2025, pp. 23 – 24.

[326] Deposition of David Bricker, November 25, 2025, pp. 23 – 24.

[327] Deposition of David Bricker, November 25, 2025, pp. 95 – 96, Exhibit 3.

[328] Deposition of David Bricker, November 25, 2025, p. 116.

[329] Appendix 5.1.

[330] Appendix 5.1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

2025, Slayback sold ███████ of Vivimusta®.  Based on Belrapzo®'s adjusted quarterly market shares which range from a low of ████████████████████████████████████████████ ████████████████████████

**Appendix 7.2** reflects Eagle's reported quarterly Profit and Loss Statements for Belrapzo®.  During the damages period, Eagle's reported ████████████████████████████████████████ ███████████████████████████████████████████████████ ██████ ██████████████████████████████

**Appendix 7.2** also contains Eagle's reported quarterly average cost of sales per unit of Belrapzo®.  During the damages period, Eagle reported average cost of sales per Belrapzo® unit ranged from ███████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████



---

331 Appendix 3.1.2.

332 Appendix 7.2.

333 EAGLEBEN-SA_00353678, Tab: 2025Q2, Cell J37.

334 Appendix 3.1.2.

335 EAGLEBEN-SA_00242343 – 378 at 343.

336 EAGLEBEN-SA_00242303 – 337 at 303.

337 EAGLEBEN-SA_00242382 – 389 at 382.

338 EAGLEBEN-SA_00242382 – 389 at 382 – 383.

339 Vellturo Report, February 6, 2026, pp. 57, 64.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



INTELLECTUAL CAPITAL EQUITY

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

### 8.2.2    Eagle's Lost Profits from Lost Bendeka® Sales – Scenario A

The calculation of Eagle's lost profits from lost sales of Bendeka® (by Teva) under Scenario A is contained in **Appendix 3.1.1**.  During the damages period of January 16, 2024 through September 30, 2025, Slayback sold ██████████ of Vivimusta®. ████████████████████████████████████████

██████████████████████████████████████████████████████

**Appendix 7.1** reflects Eagle's reported quarterly Profit and Loss Statements for Bendeka®.  As **Appendix 7.1** illustrates, Eagle ███████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████

[340] Appendix 3.1.2.

[341] Appendix 5.1.

[342] Appendix 3.1.1.

[343] Deposition of Christopher Krawtschuk, December 5, 2025, p. 71.

[344] Deposition of Christopher Krawtschuk, December 5, 2025, p. 15.

[345] Deposition of Christopher Krawtschuk, December 5, 2025, p. 71.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**



### 8.3        Quantification of Lost Profits Under Scenario B – Liquid & Powder Products

### 8.3.1    Eagle's Lost Profits from Lost Belrapzo® Sales – Scenario B

The calculation of Eagle's lost profits from lost Belrapzo® sales under Scenario B is contained in **Appendix 3.2.2**, and is the same as under Scenario A except for the quarterly Belrapzo® adjusted market shares. ▆

**Appendix 7.2** reflects Eagle's reported quarterly Profit and Loss Statements for Belrapzo®.  During the damages period, Eagle's

---

[346] Appendix 3.1.1.

[347] EAGLEBEN-SA_00242343 – 378 at 343.

[348] EAGLEBEN-SA_00242303 – 337 at 303.

[349] EAGLEBEN-SA_00242382 – 389 at 382.

[350] EAGLEBEN-SA_00242382 – 389 at 382 – 383.

[351] Appendix 7.2.1.

[352] Appendix 3.2.2.

[353] Appendix 7.2.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



354 EAGLEBEN-SA_00353678, Tab: 2025Q2, Cell J37.

355 Appendix 3.2.2.

356 EAGLEBEN-SA_00242343 – 378 at 343.

357 EAGLEBEN-SA_00242303 – 337 at 303.

358 EAGLEBEN-SA_00242382 – 389 at 382.

359 EAGLEBEN-SA_00242382 – 389 at 382 – 383.

360 Vellturo Report, February 6, 2026, pp. 57, 64.

361 Appendix 3.2.2.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

**8.3.2    Eagle's Lost Profits from Lost Bendeka® Sales – Scenario B**

The calculation of Eagle's lost profits from lost sales of Bendeka® (by Teva) is contained in **Appendix 3.1.1**.

**Appendix 7.1** reflects Eagle's reported quarterly Profit and Loss Statements for Bendeka®.

---

362 Appendix 3.2.1.

363 Deposition of Christopher Krawtschuk, December 5, 2025, p. 71.

364 Deposition of Christopher Krawtschuk, December 5, 2025, p. 15.

365 Deposition of Christopher Krawtschuk, December 5, 2025, p. 71.

366 Appendix 3.1.1.

367 EAGLEBEN-SA_00242343 – 378 at 343.

368 EAGLEBEN-SA_00242303 – 337 at 303.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**



### 8.4    Price Erosion

As indicated above, economic (i.e., reimbursement) benefit of and patient-related preference for Vivimusta®'s relatively-shorter 20-minute infusion time ██████████████████████████████████ ██████████████████████████████████████████████ For example, as illustrated in **Figure 9** above, in 2024, the reported per-unit average net revenue of Vivimusta® was ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████

████████ ██████ ████████████████████████████████████████████ ████████████████████

**Figure 11** illustrates the reported average quarterly ASPs for Treanda®, Bendeka®, Belrapzo® and Vivimusta® for the period Q3 2023 through Q4 2025.   As **Figure 11** illustrates, Vivimusta® ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████

In addition, the record evidence indicates that, ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

---

[369] EAGLEBEN-SA_00242382 – 389 at 382.

[370] EAGLEBEN-SA_00242382 – 389 at 382 – 383.

[371] Appendix 7.2.1.

[372] Appendix 6.1.

[373] Appendix 6.1.

[374] Appendix 6.2.

[375] Appendix 6.3.

[376] Appendix 5.3 (████████████████████████████████████

[377] Appendix 6.2.

[378] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, p. 252.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



INTELLECTUAL CAPITAL EQUITY

## 9        REASONABLE ROYALTY FRAMEWORK

### 9.1        Reasonable Royalty Approach

In the absence of an established royalty, a reasonable royalty may be based on a hypothetical negotiation between a willing licensee and a willing licensor around the time infringement began ("the hypothetical negotiation date").  The parties to the negotiation would assume that the Asserted Patents are valid and infringed by the manufacture, use, promotion and sale of Vivimusta® unless Defendants obtained a license. My reasonable royalty analysis focuses on the economic and bargaining positions of Eagle, as licensor, and Slayback, as licensee, at the time of the hypothetical negotiation.

My use of the term "reasonable royalty" is consistent with the definition of the term in *Georgia-Pacific Corp. v. United States Plywood Corp.*, which states in part that, "[the royalty] that a licensor [such as Eagle] and a licensee [such as Slayback] would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license."[382]

To assess the proper reasonable royalty in this case, I have applied the following methodology which I have relied upon many times in patent infringement matters:

- Consider the relevant hypothetical negotiation parameters;

- Determine the appropriate royalty structure(s) and compensation period(s);

- Determine the royalty base, including evaluation of apportionment;

- Evaluate common valuation methods; and

- Determine the reasonable royalty rate based on:

---

[379] Appendix 6.2.

[380] Appendix 6.2.

[381] Appendices 11.1 and 11.2.

[382] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

✓ The hypothetical negotiation parameters

✓ The royalty structures and compensation periods

✓ The common valuation methods

✓ The *Georgia-Pacific* factor analysis

## 9.2    Hypothetical Negotiation Parameters

The following factors are typically considered in the determination of a reasonable royalty under the hypothetical negotiation construct.

- **Hypothetical Negotiation Date**

  The hypothetical negotiation is assumed to take place in the period leading up to the first infringement of an Asserted Patent.  Slayback began promoting Vivimusta® on December 7, 2022 following its approval by the FDA.[383]  However, the first Asserted Patent, the '214 patent, was not issued until January 16, 2024.[384]  Accordingly, my reasonable royalty analysis assumes the hypothetical negotiation would have taken place ███████████████████████████████████ ████   My reasonable royalty analysis also assumes that the parties would negotiate one license for non-exclusive rights to both Asserted Patents.

- **Parties to the Negotiation**

  Assuming the Asserted Patents are found to be valid and infringed, Eagle would be the hypothetical licensor and Slayback would be the hypothetical licensee.

- **Hypothetical v. Real-World Negotiations**

  Hypothetical negotiations are similar to real-world negotiations, but with three main differences.  First, in the hypothetical world, the asserted patents are assumed to be both valid and infringed.  In real-world negotiations, there may be doubts that a patent is valid or that a patent will be infringed by a particular product.  Second, in the hypothetical world, the parties have an understanding of the coverage and scope of the asserted claims of the asserted patents.  Third, in the hypothetical negotiation, the parties are assumed to have an understanding of the other side's position based on the relevant facts and circumstances.

---

[383] https://www.nirvanahealth.com/wp-content/uploads/resources/clinical-notices/bendamustin-%20hydrochloride-injection_Vivimusta_New-Drug-Approval_12.7.2022.pdf.

[384] The '214 patent, p. 1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

- **Nature of Licensed Rights**

  A hypothetical negotiation is assumed to result in a naked license for the '214 patent and the '248 patent.  While many real-world licenses include rights to other patented technologies, related know-how, technical support, consulting services, marketing assistance, and/or other rights and privileges, in this case, a hypothetical license would be for only rights to the Asserted Patents.

## 9.3   Royalty Base

- **Compensation Period**

  As discussed in Section 6, the '214 patent was issued January 16, 2024 and the '248 patent was issued November 12, 2024.[385]  Slayback began selling Vivimusta® on December 7, 2022.  Therefore, I have limited my damages calculation to U.S. sales of Vivimusta® beginning on ██████████████

  ███████████████████████████████████████████████████
  ██████████████████

  ███████████████████████████████████████████████████
  ████████████████

- **Royalty Structures**

  Royalties may be structured as lump-sum payments, as running royalties based on unit sales or revenues from sales of accused products, or as a combination of an upfront payment plus running royalties.

  The appropriate structure of a reasonable royalty depends on the facts and circumstances of a case and considers such factors as the licensing practice of the patentee, relevant industry practices, the nature and benefits of the patented subject matter, and the non-infringing options available to the licensee for avoiding infringement.

- **Apportionment**

  The Federal Circuit has stated that "the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone."[387]  Federal courts have acknowledged that this apportionment can be assessed

---

[385] The '248 patent, p. 1.

[386] Appendix 4.2.

[387] *Exmark Mfg. Co. v. Briggs & Stratton Power Products,* 879 F.3d 1332 (Fed. Cir. 2018), citing *Ericsson,* 773 F.3d at 1226.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

in a variety of ways, including "by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof."[388]

## 9.4    Royalty Rate

*Georgia-Pacific Corp. v. United States Plywood Corp.* identifies fifteen non-exclusive factors which may be relevant to the determination of a reasonable royalty, although it is possible that certain of the fifteen factors have no relevance to the hypothetical negotiation. The *Georgia-Pacific* factors are addressed in Section 11 below. Certain of the *Georgia-Pacific* factors concern quantitative valuation factors are addressed in Section 10.

## 10    QUANTITATIVE VALUATION FACTORS

Determining a reasonable royalty involves valuing intangible asset(s) and determining what a user would pay for the use of the assets. There are three common approaches to value intangible assets in evaluating reasonable royalty damages – the Cost Approach, the Income Approach, and the Market Approach. My consideration of these approaches is discussed below.

## 10.1    The Cost Approach

As described in Economic Damages in Intellectual Property:

> The cost approach values assets based on the cost to create and develop the assets. The premise behind the cost approach is that no party involved in an arm's-length transaction would be willing to pay more to use the property than the cost to replace the property. In the context of patents, for instance, a potential licensee would not pay more to license a patent than the cost to design around the technology contributed by the patent. An alternative to designing around the technology would be to purchase the technology. Accordingly, a potential licensee would not pay more to license the technology than it would have to pay to purchase or create the technology.[389]

Under the cost approach, the licensee would pay no more in royalties than the cost of a non-infringing alternative. Properly applied, the cost approach considers out-of-pocket expenditures, as well as risks, lost sales and other adverse economic impacts connected with the alternative technology. The cost approach has been recognized and accepted by Federal courts for determining reasonable royalties for patent infringement:

> [A] fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed. Without the infringing product, a rational would-be infringer is likely to offer an acceptable non-infringing alternative, if available, to compete with the patent owner rather than

---

[388] *Gree Inc. v. Supercell Oy*, 2020 WL 4057640 (E.D.Tx. 2020); *AstraZeneca AB v. Apotex,* 782 F.3d 1324 (Fed. Cir. 2015).
[389] Slottje, Daniel, Economic Damages in Intellectual Property, 2006, p. 291.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

leave the market altogether. . . .  Moreover, only by comparing the patented invention to its next-best available alternative(s) – regardless of whether the alternative(s) were actually produced and sold during the infringement – can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right.[390]





---

[390] *Grain Processing Corp. v. American Maize-Products Co.,* 185 F.3d 1341, 1350 – 1351 (Fed. Cir. 1999).

[391] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf; Appendix 4.2.

[392] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 14.

[393] Prior Approval Supplement (PAS) New Drug Application (NDA).

[394] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 15.

[395] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 36.

[396] Brandt Report, March 16, 2026, p. 26.

[397] Brandt Report, March 16, 2026, pp. 26 – 27.

[398] Brandt Report, March 16, 2026, pp. 26 – 27.

[399] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 37.

[400] Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[401] Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**



## 10.2    The Income Approach

The Income Approach provides a systematic framework for estimating an asset's price based on the value of the benefits derived from the use of that asset. As described in *Economic Damages in Intellectual Property*:

> The income approach is a method used to value intellectual property assets based on the present value of the future income stream generated by an asset. There are three major inputs to the income approach: (1) expected future cash flows from the asset; (2) economic life of the asset; and (3) business risk associated with the realization of the cash flow stream. The key goal is to

---

[402] Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, pp. 5 – 6.

[403] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 37.

[404] Appendix 9.1; Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[405] Brandt Report, March 16, 2026, p. 26.

[406] Defendants' Response to Interrogatories (Nos. 10-12), February 5, 2026, p. 6.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

estimate the present value of incremental profits generated by the asset over its economic life, taking into account the risk associated with generating those profits. Once the present value of the incremental profits is determined, these profits are split in some manner between the licensor and licensee, typically in the form of a royalty.[407]

As set forth in Section 6.3, I understand that the asserted patents provide no new therapeutic function or clinical benefit. I understand that by explicitly claiming ethanol-based solvents and chloride stabilizers, Eagle is reclaiming rights to formulations that courts previously ruled were dedicated to the public.[408] I am aware of no record evidence that the formulations change bendamustine's mechanism of action, clinical efficacy, or dosing. The active ingredient, dose, and route of administration remain identical to patents in the same patent family.

I also understand that the subject matter of the Asserted Patents do not reduce infusion time, but instead, expand the list of acceptable co-solvents to include ethanol and benzyl alcohol and emphasize that PEG can be a mixture of different molecular-weight PEGs.[409]

As indicated above,

## 10.3    The Market Approach

The market approach values assets based on comparable transactions between unrelated parties. As described in the well-known text, *Economic Damages in Intellectual Property:*

> The market approach references a market with comparable transactions to determine the fair market value of an asset. The degree of reliance on comparable transactions depends on an assessment of the transactions to determine if they are sufficiently similar to provide an indication of the fair market value for the assets in question. Factors to consider include the nature of the assets being transferred, the industry and products involved, agreement terms, and other factors that may affect the agreed-on compensation. The market approach is often helpful in determining the running royalty rates in specific licensing transactions based on similar

---

[407] Slottje, Daniel, Economic Damages in Intellectual Property, 2006, pp. 291 – 293.

[408] Memorandum Opinion, *Eagle v Slayback*, Civil Action No. 18-1953-CFC, May 9, 2019, p. 11.

[409] The 214 patent, pp. 7 – 8, 12; The '248 patent, pp. 7 – 10, 13.

[410] Brandt Report, March 16, 2026, p. 26.

[411] Brandt Report, March 16, 2026, pp. 26 – 27.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

transactions in the marketplace. . . Any market approach analysis will likely require reasonable adjustments.[412]

### 10.3.1    The Sedona Conference Comparability Factors

The Sedona Conference is a nonpartisan, nonprofit research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation, and intellectual property rights.[413]  As part of the Sedona Conference Working Group Series, in December 2016, the Sedona Conference Working Group on Patent Damages and Remedies published a paper entitled "Commentary on Patent Reasonable Royalty Determinations" ("the Sedona Commentary").

The Sedona Commentary addressed the comparability of license agreements used to inform royalties for patent infringement.  With respect to assessing comparability, the Sedona Commentary stated that:

> Courts, however, have not yet provided a definitive, comprehensive outline stating what criteria must be evaluated to determine if a license agreement is properly "comparable."  Indeed, a one-size-fits-all list may be impossible and the components of any such list, like the *Georgia-Pacific* factors, may not all be appropriate for the facts of a given case.[414]

In recognition of the absence of a comprehensive outline of criteria, the Sedona Conference Working Group on Patent Damages and Remedies presented the following Principle: "Any proposed comparable license offered as 'comparable' to the hypothetical license must be evaluated for its similarities to and differences from the hypothetical license."[415]  The Working Group on Patent Damages and Remedies stated that it:

> [S]upports a rigorous analysis to determine the comparability of license agreements.  Rigorously analyzing and adjusting for any material differences between a benchmark license and the hypothetical license, based upon evidence presented, provides a rational and justifiable basis for determining what royalty would result from the hypothetical negotiation.[416]

To assist licensing professionals in rigorously analyzing the comparability "and therefore the probative value, of a benchmark license to the hypothetical license," the Sedona Commentary provided the 15 factors listed in **Figure 13**.[417]

---

[412] Slottje, Daniel, Economic Damages in Intellectual Property, 2006, pp.  291 – 292.

[413] https://thesedonaconference.org/.

[414] "Commentary on Patent Reasonable Royalty Determinations", Sedona Conference, December 2016, p. 11.

[415] "Commentary on Patent Reasonable Royalty Determinations", Sedona Conference, December 2016, p. 35.

[416] "Commentary on Patent Reasonable Royalty Determinations", Sedona Conference, December 2016, p. 35.

[417] "Commentary on Patent Reasonable Royalty Determinations", Sedona Conference, December 2016, p. 36.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

**Figure 13**
**Sedona Commentary License Comparability Factors[418]**

| | |
|---|---|
| 1 | Cross-license provisions |
| 2 | Agreements licensing the patent(s)-in-suit |
| 3 | Agreements licensing patent(s)-in-suit plus additional patents |
| 4 | Any technology, property, "know-how," or other grant of rights in addition to or instead of patent rights |
| 5 | Agreements licensing different patents from the patent(s)-in-suit |
| 6 | Any business relationship between the parties to the patent license agreement that exist outside of the agreement |
| 7 | The scope of the patent rights granted |
| 8 | The product or service for which the patent(s) were licensed |
| 9 | The royalty base used in the agreement |
| 10 | The relative bargaining positions of the parties |
| 11 | Whether the agreement was a bona fide agreement and royalties were actually paid |
| 12 | The royalty structure |
| 13 | The date and term of the agreement |
| 14 | Any assumption (or lack thereof) of validity and infringement |
| 15 | Litigation factors for litigation settlement agreements |

### 10.3.2   Comparability Evaluation of the 2015 ███████████████████

*Georgia-Pacific* Factor 1 concerns the royalties and other economic consideration received by the patentee for the licensing of the Asserted Patents.  This represents a quantitative valuation metric associated with the determination of a reasonable royalty.  ████████████████████████████████████████

---

[418] "Commentary on Patent Reasonable Royalty Determinations", Sedona Conference, December 2016, pp. 36 – 40.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



---

[419] EAGLEBEN-SA_00072300 – 400 at 325 – 326.

[420] Appendix 7.2.1.

[421] EAGLEBEN-SA_00072300 – 400 at 301.

[422] https://www.eagleus.com/about/.

[423] ███████████████████████████████████████████

[424] EAGLEBEN-SA_00072300 – 400 at 314 – 315, 318 – 326.

[425] EAGLEBEN-SA_00072300 – 400 at 325 – 326.

[426] EAGLEBEN-SA_00072300 – 400 at 324 – 325.

[427] EAGLEBEN-SA_00072300 – 400 at 336.

[428] EAGLEBEN-SA_00072300 – 400 at 304.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



INTELLECTUAL CAPITAL EQUITY

---

[429] EAGLEBEN-SA_00072300 – 400 at 304 – 305.

[430] EAGLEBEN-SA_00072300 – 400 at 305.

[431] EAGLEBEN-SA_00072300 – 400 at 360 – 362.

[432] Appendix 10.1.1.

[433] EAGLEBEN-SA_00072300 – 400 at 330.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



434 EAGLEBEN-SA_00072300 – 400 at 330 – 331.

435 EAGLEBEN-SA_00072300 – 400 at 331.

436 EAGLEBEN-SA_00072401 – 405 at 401-402.

437 EAGLEBEN-SA_00072401 – 405 at 402.

438 Eagle 2022 10-K, p, 19.

439 EAGLEBEN-SA_00072300 – 400 at 304 – 305, 360 – 362. .

440 Appendix 10.1.1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**Figure 14** is a summary of the Sedona Commentary License Comparability factors for the 2015 Eagle – Cephalon Agreement.

**Figure 14**
**Sedona Commentary Factors Considered for the** ███████████████████



---

[441] Appendix 10.1.1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

### 10.3.3  Comparabilty Evauations of Third-Party License Agreements

Ocean Tomo identified potentially comparable third-party licenses through searches of publicly available license databases such as RoyaltyStat® and ktMINE.  RoyaltyStat® is a subscription database of more than 23,000 license and service agreements.[442]  ktMINE was founded by industry practitioners and technologists who were set to provide data and insights for royalty benchmarking.  According to ktMINE, it "offers the most comprehensive royalty rate data, offering over 86,000 royalty rates across various industries coming from over 26,000 license agreements – the largest repository on the market."[443]

Comparable license agreements were identified through searches of the RoyaltyStat® and ktMINE databases using keyword and combination-of-keyword searches.  The keywords and combinations included, for example, "Oncology," "Formulation," "Chronic Lymphocytic Leukemia," and "Non-Hodgkin's Lymphoma."  Through searches of the RoyaltyStat® and ktMINE databases and other industry sources conducted at my direction, eight third-party license agreements were identified for further review and evaluation.

**Appendix 10.2** contains summary information concerning the eight identified license agreements.  As **Appendix 10.2** illustrates, these agreements are between third parties involved in the life sciences industry, involve transfers of cancer and/or formulation technologies, and typically have running royalties based on percentages of revenues from future sales of products.  Upon further review of the agreements summarized in **Appendix 10.2**, the following two licenses were evaluated for comparability to a hypothetically negotiated license based in part on the Sedona Commentary License Comparability factors set forth in **Figure 13**.  Both of these licenses concern formulation related technology for cancer treatments.

### 10.3.3.1  The 2006 Chen – Bridgetech Holdings Int'l Agreement

The Parties – The parties to the 2006 Chen – Bridgetech Agreement ("2006 Bridgetech Agreement") are Mr. Andrew Xian Chen ("Chen") as the licensor, and Bridgetech Holdings International, Inc. ("Bridgetech") as the licensee.[444]  In or about 2006, Mr. Chen was the President of Latitude Pharmaceuticals, Inc. ("Latitude").  Latitude is a drug formulation development company based in San Diego, California.[445]  In 2006, Bridgetech was a Florida corporation focused primarily on the business of facilitating the transfer of medical drugs, devices and diagnostics from the U.S. to China and other international locations.[446]

The Nature of the Agreement - The 2006 Bridgetech Agreement granted Bridgetech an exclusive license to technology to develop, manufacture, sell and otherwise commercialize lyophilized docetaxel intravenous

---

[442] https://royaltystat.com/.

[443] https://www.ktmine.com/why-ktmine/our-data/royalty-rates/.

[444] The 2006 Chen – Bridgetech Agreement, April 29, 2006, p. 1.

[445] https://www.latitudepharma.com/formulation.

[446] Bridgetech Holdings Int'l Inc. Form 10-SB, July 2006, F-44.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

emulsion formulations[447] and lyophilized paclitaxel intravenous emulsion formulations[448] for cancer treatment in the People's Republic of China, Hong Kong, Macau, and Taiwan.[449]  The 2006 Bridgetech Agreement also granted Bridgetech rights to lyophilized formulations of vancomycin and clarithromycin for the treatment of infectious diseases in the People's Republic of China, Hong Kong, Macau, and Taiwan.[450]  Under the agreement, Bridgetech was responsible for all regulatory and patent related costs.[451]

The Technology – As of the date of the 2006 Bridgetech Agreement, the cancer-related patented technology included U.S. Patent Application No. 11/192,439, WO Patent Application No. US2005/026783, both filed on July 28, 2005,[452] and two U.S. provisional patent applications filed in February 2006.[453]  Know-how is defined as including all knowledge, ideas, inventions, data, instructions, tangible or intangible materials, processes, formulas, expert opinions and information.[454]

Economic Consideration – In exchange for the exclusive rights to the licensed technology, Bridgetech agreed to pay Mr. Chen a running royalty of 4.0 percent of net revenue from sales of licensed products.  Bridgetech also agreed to pay Mr. Chen an upfront payment of $500,000 and regulatory and other milestone payments of up to $2.0 million, depending in part on the number of and timing of clinical trials.[455]

Observations and Inferences -

- Points of Similarity: Like the hypothetical negotiation, the 2006 Bridgetech Agreement involves rights to formulations of cancer treatments with APIs that were FDA approved years earlier.  Like the hypothetical negotiation, both parties are involved with the development and/or commercialization of drug products – Mr. Chen representing a willing licensor, and Bridgetech representing a willing licensee.  There is no indication that the parties' relative bargaining positions were unequal.  In addition, like the hypothetical negotiation, the 2006 Bridgetech Agreement grants rights to a limited number of formulation-related technologies.

---

[447] The 2006 Chen – Bridgetech Agreement, April 29, 2006, Appendix A.  Docetaxel was first FDA approved in 1996. It is currently approved to treat such cancers as breast cancer, lung cancer, prostate cancer, and stomach cancer. https://www.mayoclinic.org/drugs-supplements/docetaxel-intravenous-route/description/drg-20068305; https://www.accessdata.fda.gov/drugsatfda_docs/nda/2014/202356Orig1s000OtherR.pdf.

[448] The 2006 Chen – Bridgetech Agreement, April 29, 2006, Appendix A.  Paclitaxel was first FDA approved in 1992.  It is currently approved to treat such cancers as ovarian cancer, breast cancer, lung cancer and pancreatic cancer. https://www.mayoclinic.org/drugs-supplements/paclitaxel-intravenous-route/description/drg-20065247; https://www.accessdata.fda.gov/drugsatfda_docs/nda/2010/020262Orig1s048.pdf.

[449] The 2006 Chen – Bridgetech Agreement, April 29, 2006, pp. 2 – 3.

[450] The 2006 Chen – Bridgetech Agreement, April 29, 2006, pp. 2, 15.

[451] The 2006 Chen – Bridgetech Agreement, April 29, 2006, p. 5.

[452] U.S. Patent Application No. 11/192,439 was published as U.S. Patent Application Publication No. 2006/0024360 and WO Patent Application No. US2005/026783 was published as WO 2006/015120.

[453] The 2006 Chen – Bridgetech Agreement, April 29, 2006, Appendix A.

[454] The 2006 Chen – Bridgetech Agreement, April 29, 2006, p 1.

[455] The 2006 Chen – Bridgetech Agreement, April 29, 2006, p 3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

- Differences that place upward pressure on the royalty: Unlike the hypothetical negotiation, the consideration of the 2006 Bridgetech Agreement included an upfront payment and milestone payments totaling as much as $2.0 million.  Also, unlike the hypothetical negotiation, the licensed products to which Bridgetech received rights had not been commercialized at the time of the license. In addition, the licensed patent rights were to applications, and Bridgetech was responsible for the cost of future prosecution in the territory as well as for all future regulatory costs - including for clinical trials.[456] Furthermore, although the parties to the 2006 Bridgetech agreement were involved in the pharmaceutical industry, unlike the parties to the hypothetical negotiation, they were not competing in the same product segment.  These factors would place upward pressure on the royalty rate of the hypothetical negotiation compared to the royalty rate of the 2006 Bridgetech Agreement.

- Differences that place downward pressure on the royalty: The exclusive nature of the 2006 Bridgetech Agreement places downward pressure on the hypothetically negotiated royalty rate for non-exclusive rights to the Asserted Patents.  The 2006 Bridgetech Agreement also includes rights to Mr. Chen's know-how.[457]  These factors would place downward pressure on the royalty rate of the hypothetical negotiation compared to the royalty rate of the 2006 Bridgetech Agreement.

- Conclusions: On balance, these considerations indicate that the 2006 Bridgetech Agreement is comparable to the hypothetically negotiated license, and that the parties to the hypothetical negotiation would consider its exclusive nature, the scope of granted IP rights, and Bridgetech's requirement to finance future patent and regulatory costs in determining its influence on the hypothetically negotiated royalty rate for rights to the Asserted Patents.

### 10.3.3.2  The 2013 John Hopkins - Signpath Agreement

The Parties – The parties to the 2013 John Hopkins – Signpath Agreement ("the 2013 John Hopkins Agreement") are John Hopkins University as the licensor and Signpath Pharma as the licensee.[458]  John Hopkins University is a highly-ranked, private medical research university located in Baltimore, Maryland. According to its Form S-1 dated January 2015, Signpath Pharma was a clinical stage biotechnology company founded in May 2006 to develop synthesized proprietary formulations of curcumin, a naturally occurring compound found in the root of the Curcuma longa Linn plant, for applications in human diseases.[459]

The Nature of the Agreement – The 2013 John Hopkins Agreement granted Signpath exclusive rights to an invention that was developed by the parties through a previous license agreement in 2007.[460]  Through the 2013 John Hopkins Agreement, John Hopkins granted Signpath an exclusive worldwide license to use "a

---

[456] The 2006 Chen – Bridgetech Agreement, April 29, 2006, Appendix B.

[457] The 2006 Chen – Bridgetech Agreement, April 29, 2006, p. 1.

[458] 2013 John Hopkins Agreement, June 5, 2013, p. 1.

[459] Signpath Pharma Inc. Form S – 1, January 27, 2015, p. 3.

[460] Signpath Pharma Inc. Form S – 1, January 27, 2015, p. 46.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

composite polymeric nanoparticle for overcoming multidrug resistance to cancer chemotherapeutics and treatment-related systemic toxicity."[461]

The Technology – As set forth in Exhibit A of the 2013 John Hopkins Agreement, the licensed technology consisted of one U.S. Provisional Patent Application 61/421,709 and Int'l Patent Application PCT/US2011/063870.[462]  The invention is described as "[a] composite polymeric nanoparticle for overcoming multidrug resistance to cancer chemotherapeutics and treatment-related systemic toxicity."[463]

Economic Consideration – The 2013 John Hopkins Agreement required Signpath to pay an initial license fee of $10,000, $15,000 within one year, with minimum annual royalties of $10,000 in year three, $20,000 in year four, and $30,000 in year five.  Signpath was also required to pay a royalty of 3.0 percent of revenue from sales of the licensed product for a minimum of 10 years from the first commercial sale of the licensed product.  The 2013 John Hopkins Agreement required Signpath to pay milestone payments based on the first patent dosing in Phases I, II and III clinical trials and then upon regulatory approval, increasing from $25,000 to $150,000.[464]  The term of the Agreement ended with the last to expire patent in each country, or if no patents are issued then 20 years from June 5, 2013, subject to earlier termination.[465]

- Points of Similarity: Like the hypothetical negotiation, the 2013 John Hopkins Agreement involves rights to formulations of cancer treatments.  Like the hypothetical negotiation, both parties are involved with the research, development and/or commercialization of drug products – John Hopkins representing a willing licensor, and Signpath representing a willing licensee.  There is no indication that the parties' relative bargaining positions were unequal.  In addition, like the hypothetical negotiation, the 2013 John Hopkins Agreement grant rights to a limited number of formulation-related technologies.

- Differences that place upward pressure on the royalty: Unlike the hypothetical negotiation, the consideration of the 2013 John Hopkins Agreement included an upfront payment and milestone payments.  Also, unlike the hypothetical negotiation, the licensed product to which Signpath received rights had not been commercialized at the time of the license and Signpath was responsible for developing the product.  In addition, the licensed patent rights were to patent applications.  Furthermore, although the parties to the 2013 John Hopkins Agreement were involved in the pharmaceutical industry, unlike the parties to the hypothetical negotiation, they were not competing in the same product segment.  These factors would place upward pressure on the royalty rate of the hypothetical negotiation compared to the royalty rate of the 2013 John Hopkins Agreement.

---

[461] Signpath Pharma Inc. Form S – 1, January 27, 2015, p. 47.
[462] 2013 John Hopkins Agreement, June 5, 2013, Exhibit A.  U.S. Provisional Patent Application 61/421,709 and Int'l Patent Application PCT/US2011/063870 were published as U.S. Patent Application Publication No. 2013/0330412.
[463] 2013 John Hopkins Agreement, June 5, 2013, Exhibit A.
[464] 2013 John Hopkins Agreement, June 5, 2013, Exhibit A.
[465] Signpath Pharma Inc. Form S – 1, January 27, 2015, p. 46.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

- Differences that place downward pressure on the royalty: The exclusive nature of the 2013 John Hopkins Agreement places downward pressure on the hypothetically negotiated royalty rate for non-exclusive rights to the Asserted Patents. This factor would place downward pressure on the royalty rate of the hypothetical negotiation compared to the royalty rate of the 2013 John Hopkins Agreement.

- Conclusions: On balance, these considerations indicate that the 2013 John Hopkins Agreement is comparable to the hypothetically negotiated license, and that the parties to the hypothetical negotiation would consider its exclusive nature, and Signpath's requirement to finance future product development and regulatory costs, in determining its influence on the hypothetically negotiated royalty rate for rights to the Asserted Patents.

### 10.3.3.3  Conclusions Concerning Comparability of Third-Party Agreements

Given the indicated similarities of these licenses, I consider these third-party agreements to be informative of the royalty to which Eagle and Slayback would have agreed during the hypothetical negotiation for rights to the Asserted Patents. My summary of observations and inferences of these agreements explains the basis for any upward or downward influence at the hypothetical negotiation. **Figure 15** is a summary of the Sedona Commentary factors for the third-party agreements evaluated above.

**Figure 15**
**Sedona Commentary Factors Considered for Third-Paty Agreements**

| | Sedona Conference Factors | Bridge | JHU | Conclusion |
|---|---|---|---|---|
| 1 | Cross-license provisions | ✓ | ✓ | No cross licenses: more comparable |
| 2 | Agreements licensing patents (also 3 and 5) | ✓ | ✓ | Benchmarks for formulation/cancer patents: more comparable |
| 4 | Other technology, property, or "know-how" | ✓ | ✓ | Form & Bridge include know-how; Bridge includes milestones |
| 6 | Any business relationship between the parties | ✓ | ✓ | Unrelated parties: more comparable |
| 7 | The scope of the patent rights granted | ✓ | ✓ | Scope of granted patent rights similar: more comparable |
| 8 | The product or service of the patents | ✓ | ✓ | Involve fromulation/cancer technology: more comparable |
| 9 | The royalty base used in the agreement | ✓ | ✓ | Royalties structured as % of net revenue: more comparable |
| 10 | Parties relative bargaining positions (also 15) | ✓ | ✓ | Between willing licensors and licensees: more comparable |
| 11 | Bona fide agreement and royalties paid | ✓ | ✓ | Are bona fide agreements: more comparable |
| 12 | The royalty structure | X | ✓ | Running royalty % of sales; Bridge upfront fee + milestones |
| 13 | The date and term of the agreement | ✓ | ✓ | Dates within 5 to 18 years of hypothetical negotiation |
| 14 | Validity and infringement assumptions | X | X | As discussed in Georgia-Pacific factors |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

## 11    REASONABLE ROYALTY DETERMINATION

### 11.1    The Georgia-Pacific Factors

As set forth above, a reasonable royalty is generally determined using the construct of a hypothetical negotiation between the patentee and the accused infringer.  *Georgia-Pacific Corp. v. United States Plywood Corp.*[466] identifies fifteen non-exclusive factors which may be relevant to the determination of a reasonable royalty, although it is possible that certain of the fifteen factors have no relevance to the hypothetical negotiation.  In the subsections that follow, I give consideration to each of the 15 factors, and identify relevant information and facts that would influence the hypothetically negotiated royalty.

### 11.1.1



Eagle contends that

---

[466] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

[467] Eagle's Response to Defendants' Second Set of Interrogatories (No. 4), September 23, 2025, p. 11.

[468] Eagle's Response to Defendants' Second Set of Interrogatories (No. 4), September 23, 2025, p. 11.

[469] Vellturo Report, February 6, 2025, p. 44.

[470] Vellturo Report, February 6, 2025, p. 87.

[471] EAGLEBEN-SA_00072300 – 400 at 360 – 362.

[472] Appendix 10.1.1.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



### 11.1.2   Factor No. 2: The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

Factor No. 2 also relates to the Market Approach and considers licenses entered into by the licensee which may provide relevant insight into the hypothetical negotiation.



---

[473] EAGLEBEN-SA_00072300 – 400 at 331.

[474] EAGLEBEN-SA_00072401 – 405 at 402.

[475] Eagle 2022 10-K, p. 19.

[476] Deposition of Josh Mathew, December 17, 2025, pp. 38 – 39.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

### 11.1.3   Factor No. 3: The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

The hypothetical negotiation would be for ███████████ to the Asserted Patents to develop and commercialize Vivimusta®.  The hypothetically negotiated license would be ████████████████



### 11.1.4   Factor No. 4: The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.



### 11.1.5   Factor No. 5: The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

As illustrated in **Appendix 5.3**, despite its favorable 20-minutes infusion time, ████████████

---

[477] Eagle's Response to Defendants' Second Set of Interrogatories (No. 4), September 23, 2025, p. 12.

[478] Discussion with Josh Mathew, March 6, 2026.

[479] Figure 8.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



INTELLECTUAL CAPITAL EQUITY

███████████████████████████████████████████████████████████████████████
█████████████

███████████████████████████████████████████████████████████████████████
██████████████

### 11.1.6    Factor No. 6: The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

Consumer demand for certain patented products can influence sales of related, non-patented goods and services. ████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████

████████████████████████████████████████████████████████

### 11.1.7    Factor No. 7: The duration of the patent and the term of the license.

My reasonable royalty analysis assumes the hypothetical negotiation would have taken place ███████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████

████████████████████████████████████████████████████████

### 11.1.8    Factor No. 8: The established profitability of the product made under the patent; its commercial success; and its current popularity.

Factor 8, in part, represents a quantitative valuation metric associated with the sales and profitability of the products that embody the subject matter of the asserted patents.



---

[480] EAGLEBEN-SA_00344611-762 at 644.

[481] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, pp. 251 – 252.

[482] Complaint, *Eagle v. Slayback*, No. 1:24-cv-00065-JLH, January 17, 2024, pp. 1 – 2; Complaint, *Eagle v. Slayback*, No. 1:25-cv-00075-JLH, January 17, 2025, pp. 1 – 2.

[483] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf.

[484] Appendix 4.2.

[485] Appendix 4.2.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



**11.1.9    Factor No. 9: The utility and advantages of the patented property over old modes or devices, if any, that had been used for working out similar results.**

**11.1.10    Factor No. 10: The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.**

Factors No. 9 and Factor No. 10 are frequently analyzed together due to their similarity and inherent overlap and relate to the advantages of the patented invention over prior methods that may have existed to achieve similar results, as well as the benefits provided to those who have used it.

As set forth in Section 6.3, I understand that



As previously stated, the '214 and '248 patents are part of a chain of continued patents by Eagle.[488]  As illustrated in **Appendix 10.1**, the first of Eagle's ready-to-use liquid patent, the '707 patent, disclosed dissolving bendamustine in PEG or propylene glycol (PG) with an antioxidant and demonstrated < 5 percent impurities after fifteen months.[489]  Later patents (U.S. 9,000,021 and U.S. 9,034,908) lowered the infusion volume and added PG co-solvent to permit rapid 10-minute infusion, providing a meaningful clinical advantage.[490]  The Asserted Patents in this case were filed much later (December 2022 and April 2024).[491]  I understand that the subject matter of the Asserted Patents do not reduce infusion time or change dosage;

---

[486] Appendix 7.3.

[487] Memorandum Opinion, *Eagle v Slayback*, Civil Action No. 18-1953-CFC, May 9, 2019, p. 11.

[488] Appendices 10.1.

[489] The '707 patent, p. 1.

[490] U.S. Patent No. 9,000,021, pp. 2 – 4; U.S. Patent No. 9,034,908, pp. 2 – 4.

[491] Figure 4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

instead they expand the list of acceptable co-solvents to include ethanol and benzyl alcohol and emphasize that PEG can be a mixture of different molecular-weight PEGs.[492]  It is my understanding that these continuation patents do not materially confer additional clinical advantages.  This is supported by the fact that the specification of the '214 and '248 patents is almost identical to that of the '707 patent, issued in 2013.[493]

Eagle's experts highlight that liquid bendamustine offers practical advantages over lyophilized powder, such as eliminating the need for reconstitution, which purportedly reduces dosing errors and improves safety.  Dr. Ashraf notes that incorrect ratios during preparation can lead to under- or overdosing,[494] while Dr. Attia emphasizes shorter preparation time, fewer compounding errors, and longer shelf life for liquids.[495]  Neither expert claims that the asserted patents improve the efficacy of bendamustine.  Notably, these purported benefits were already realized by earlier liquid formulations (Belrapzo®/Bendeka®) marketed under the 2015 rapid-infusion patents.  Thus, I understand that the asserted patents do not confer additional clinical advantages.[496]

In addition, Dr. Vellturo highlights the asserted patents as if they underpin modern liquid bendamustine products; however, I understand that these patents merely replicate a decade-old specification and broaden the list of solvents and claim containers.[497]  Dr. Thirman states in his assessment that the National Comprehensive Cancer Network guidelines for bendamustine do not suggest any elements that are covered by the Eagle family of patents.[498]  It is my understanding that earlier patents (U.S. Patent 9,000,021 and U.S. Patent 9,034,908) introduced the genuine clinical innovation: small-volume rapid infusion.[499]  Thus, I understand that the asserted '214 and '248 patents do not improve bendamustine's clinical efficacy or safety; instead, they concern long-term stability and logistical convenience, benefits I understand to be already available in the prior art.[500]

████████████████████████████████████████████████████████

---

[492] The 214 patent, pp. 7 – 8, 12; The '248 patent, pp. 7 – 10, 13.

[493] Appendix 10.1.1.

[494] Expert Report of Khaleel K. Ashraf, February 6, 2026, p. 22.

[495] Expert Report of Caroline Attia, February 6, 2026, pp. 10 – 13.

[496] Brandt Report, March 16, 2026, pp. 35 – 36.

[497] Brandt Report, March 16, 2026, pp. 35 – 36; The '214 patent, pp. 7 – 8; The '248 patent, pp. 7 – 10, 13.

[498] Thirman Report, March 16, 2026, p. 22.

[499] U.S. Patent No. 9,000,021, p. 2; U.S. Patent No. 9,034,908, p. 2.

[500] Discussion with Dr. Michael L. Brandt, March 6, 2026; Brandt Report, March 16, 2026, p. 36.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

**11.1.11 Factor No. 11: The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.**



**11.1.12 Factor No. 12: The portion of the profit or the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.**

Like Factors No. 1 and No. 2, Factor No. 12 relates to the Market Approach and considers licenses and licensing practices within the relevant industry.

As set forth in Section 10.3, Ocean Tomo conducted searches of the ktMINE® and RoyaltyStat® license databases for potentially comparable license agreements using keyword and combination-of-keyword searches. Through searches of the ktMINE® and RoyaltyStat® databases conducted at my direction, eight agreements were identified. These agreements are summarized in **Appendix 12.1**.

Upon further review of the agreements summarized in **Appendix 12.1**, the 2006 Bridgetech Agreement and the 2013 John Hopkins Agreement were evaluated for comparability to a hypothetically negotiated license based in part on the Sedona Commentary License Comparability factors set forth in **Figure 13**. As set forth in Section 10.3, given the indicated similarities of these licenses, I consider these third-party agreements to be informative of the hypothetically negotiated royalty rate for rights to the Asserted Patents. The revenue-based royalty rate of the 2006 Bridgetech Agreement is 4.0 percent. And the revenue-based royalty rate of the 2013 John Hopkins Agreement is 3.0 percent.

---

[501] Appendix 3.2.1.

[502] Appendix 3.3.

[503] Appendix 9.1; Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[504] Defendants' Response to Interrogatories (Nos. 10-12), February 5, 2026, p. 6.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

**11.1.13 Factor No. 13: The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.**

Factor No. 13 extends the analysis performed in Factors No. 8 and No. 11 and relates to the portion of the realizable profit that should be attributed to non-patented elements. Analysis of this factor is sometimes related to the Income Approach in the context of intellectual property valuation. The Income Approach attempts to value an asset by measuring the benefits derived from use of the asset.[505]

Apportioning profits from Vivimusta® sales to the Asserted Patents requires consideration of the value or the API – bendamustine. As set forth in Section 7.2, bendamustine was first synthesized in Germany in the early 1960s.[506] Bendamustine was first introduced in Europe in the 1990s and in the U.S. in 2001.[507] Bendamustine was first FDA approved in 2008 for CLL and certain B-cell NHL under the brand name Treanda®.[508] The 2008 date of first FDA approval is before the earliest priority date of Eagle's 19 formulation patents listed in **Appendix 10.1**. Given that Vivimusta® is prescribed for the therapeutic effect provided by bendamustine, the majority of Vivimusta®'s profits is attributable to bendamustine.

Apportioning profits from Vivimusta® sales also requires consideration of the contributions of Slayback and Azurity to its commercialization. Slayback/Azurity have been and continue to be responsible for obtaining regulatory approvals, promotional and sales efforts, and overseeing manufacturing and/or distribution. With respect to promotional and sales efforts, Slayback has 70 sales-related employees in two teams.[509] Slayback's strategic accounts team communicates with oncology product distributors and certain other economically significant customers.[510] Slayback's institutional sales team communicates with other customers, including hospitals and community oncology centers with the sales team communicating with specific locations Vivimusta® will be used.[511]

I would also note that the concept of apportionment was presumably considered by the parties to the various licenses discussed in Section 10.3. As a result, the issue of apportionment has largely been considered through my evaluation of the terms of these comparable third-party licenses as well as the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ In addition, I understand that when the Market Approach is utilized, apportionment to the smallest salable patent-practicing unit is not required.[512] I also understand that "otherwise comparable

---

[505] Slottje, Daniel, Economic Damages in Intellectual Property, 2006, pp. 291 – 293.

[506] "Bendamustine: An old drug for a potential new indication," Cancer Research, Statistics, and Treatment, p. 156.

[507] "Bendamustine: An old drug for a potential new indication," Cancer Research, Statistics, and Treatment, p. 156.

[508] https://www.accessdata.fda.gov/drugsatfda_docs/label/2008/022303lbl.pdf.

[509] Defendants' Supp. Resp. to Plaintiff's 3rd Common Rogs. (Nos. 12-13), September 23, 2025, p. 6.

[510] Defendants' Supp. Resp. to Plaintiff's 3rd Common Rogs. (Nos. 12-13), September 23, 2025, p. 4.

[511] Defendants' Supp. Resp. to Plaintiff's 3rd Common Rogs. (Nos. 12-13), September 23, 2025, p. 4.

[512] *Commonwealth Sci. & Indus. Research Organization v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2530, 195 L. Ed. 2d 859 (2016).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

licenses are not inadmissible solely because they express the royalty rate as a percentage of total revenues, rather than in terms of the smallest salable unit."[513]

### 11.1.14   Factor No. 14: The opinion testimony of qualified experts.

The extent to which I have considered the opinion testimony of qualified experts is reflected throughout this report.  I reserve the right to supplement my opinions upon the review of other expert reports and testimony that are provided after the date of this report.

### 11.1.15   Factor No. 15: The royalty that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

Factor 15 describes the integration of the other factors within the willing buyer/willing seller hypothetical negotiation framework.  As the name implies, the parties in the negotiation are presumed to be willing.  They both seek, as businesspeople, to reach an agreement.  The consideration and circumstances discussed throughout this report would frame the hypothetical negotiation.

As set forth above, in determining the reasonable royalty due Eagle for Slayback/Azurity's alleged non-licensed use of the Asserted Patents, I utilized common methods of valuing intangible assets, including the Cost Approach and the Market Approach, and I considered the *Georgia-Pacific* factors.

### 11.1.15.1   Royalty Indicated by The Cost Approach

According to Slayback, during the period leading up to the FDA's approval of Vivimusta® – through the FDA's 505(b)(2) NDA pathway – and Slayback's introduction of Vivimusta® in December 2022,[514]



---

[513] *Commonwealth Sci. & Indus. Research Organization v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2530, 195 L. Ed. 2d 859 (2016).

[514] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf; Appendix 4.2.

[515] ████████████████████████████████████████

[516] Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[517] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 15.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**



### 11.1.15.2  Royalty Indicated by The Market Approach

### 11.1.15.3  Royalty Indicated by the *Georgia-Pacific* Factors

## 11.2    Reasonable Royalty Conclusion

---

[518] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 36.

[519] Appendix 9.1; Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[520] ████████████████████.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

**Figure 16**
**Reasonable Royalty Summary[521]**





## 12    EVALUATION OF THE VELLTURO REPORT

### 12.1    Dr. Vellturo's Market Analysis Improperly Excludes Powder Bendamustine Products

Dr. Vellturo's market analysis improperly █████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████████████

With respect to his calculations of Eagle's lost profits from lost unit sales of Bendeka® and Belrapzo®, the
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████        An evaluation of whether products compete in the same market often focuses on whether purchasers perceive products or services as acceptable substitutions or alternatives and would switch between them in response to changes in certain factors such as price.

As set forth above, the regulatory and compendial[524] framework for parenteral drugs supports treating lyophilized and liquid injectables as alternatives designated to achieve the same therapeutic benefits.

---

[521] Appendix 3.3.

[522] Appendix 3.3.

[523] Vellturo Report, February 6, 2026, p. 18.

[524] Compendial refers to standards, methods, and specifications for pharmaceutical raw materials and finished products outlined in official, recognized publications like the U.S. Pharmacopeia-National Formulary (USP/NF).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**INTELLECTUAL CAPITAL EQUITY**



Peer-reviewed and clinical-trial materials reinforce the same "same space, comparable risks" conclusion and provide direct evidence of Eagle's sponsorship and comparative intent. For example, the 2015 American Society of Hematology (ASH) Blood journal abstract titled "*Phase 1, Open-Label, Randomized, Bioequivalence Study of 2 Bendamustine Hydrochloride Formulations; A Ready-to-Dilute Low-Volume, Rapid Infusion Solution and a Lyophilized Powder Formulation*" states in its Introduction that the study "assessed the bioequivalence (BE) and safety of an investigational, ready-to-dilute … solution … and the approved bendamustine lyophilized powder formulation."[526]

In addition,

<hr />

[525] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000MedR.pdf; *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377 (1956).

[526] https://doi.org/10.1182/blood.V126.23.4857.4857.

[527] EAGLEBEN-SA_00344611-762 at 629 – 630; Deposition of Alan Eagle, November 18, 2025, p. 23.

[528] EAGLEBEN-SA_00344611-762 at 629 – 630.

[529] EAGLEBEN-SA_00344611-762 at 642.

[530] EAGLEBEN-SA_00344400-610 at 439 – 440; EAGLEBEN-SA_00344611-762 at 643.

[531] EAGLEBEN-SA_00344400-610 at 439, 443.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**



## 12.2    Dr. Vellturo's Lost Profits Opinions are Defective and Unreliable

---

[532] EAGLEBEN-SA_00344611-762 at 688.

[533] EAGLEBEN-SA_00347285-311 at 308.

[534] EAGLEBEN-SA_00344611-762 at 688.

[535] Deposition of Alan Eagle, November 18, 2025, p. 43; EAGLEBEN-SA_00344611-762 at 643.

[536] Deposition of Alan Eagle, November 18, 2025, p. 45.

[537] Deposition of Alan Eagle, November 18, 2025, pp. 22, 45.

[538] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 62 – 63; EAGLEBEN-SA 00353678, Tab: 2016–24.

[539] Deposition of Christopher Krawtschuk, December 5, 2025, p. 157.

[540] Vellturo Report, February 6, 2026, Exhibit 5.

[541] Vellturo Report, February 6, 2026, Exhibit 3.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



### 12.2.1   Erroneous Contention that ▮▮▮▮▮ of Vivimusta® Sales Replaced Belrapzo®

Dr. Vellturo erroneously contends that ▮▮▮▮▮▮▮▮▮▮▮

---

[542] Vellturo Report, February 6, 2026, Exhibit 21.

[543] Vellturo Report, February 6, 2026, p. 56.

[544] Vellturo Report, February 6, 2026, Exhibit 17, Note 2.

[545] EAGLEBEN-SA_00344611-762 at 644.

[546] EAGLEBEN-SA_00344611-762 at 644.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

**Figure 17**



#### 12.2.2   Dr. Vellturo Fails to Consider Price Elasticity of Demand - Belrapzo®

---

547 Vellturo Report, February 6, 2026, p. 55.

548 Discussion with Dr. Michael L. Brandt, March 6, 2026.

549 Thirman Report, March 16, 2026, p. 12.

550 Vellturo Report, February 6, 2026, Exhibit 15.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



---

551 Vellturo Report, February 6, 2026, Exhibit 15, Note 3.

552 Vellturo Report, February 6, 2026, Exhibit 15.

553 Vellturo Report, February 6, 2026, Exhibit 15.

554 

555 Vellturo Report, February 6, 2026, Exhibit 15.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

**Figure 19**



Drug manufacturers are required to report their average sales prices (ASP) to Centers for Medicare & Medicaid Services (CMS).[561] CMS then calculates the payment allowance limits as ASP plus 6.0 percent to determine the amounts for which hospitals and cancer clinics are reimbursed.[562] The ASPs are published by CMS on a quarterly basis.[563] According to Dr. Brandt and Mr. Mathew, the ASPs of competing products are considered by hospitals and cancer clinics in their drug purchasing decisions, including decisions concerning bendamustine products.[564]



---

[556] Vellturo Report, February 6, 2026, Exhibit 15.

[557] Appendix 7.2.

[558] Appendix 5.3 (████████████████████████████████████████████████.

[559] Appendix 6.2.

[560] Appendix 6.2.

[561] https://www.cms.gov/medicare/payment/part-b-drugs/asp-reporting.

[562] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, Exhibit 19 (EAGLE-SA_0351772), p. 199.

[563] https://www.cms.gov/medicare/payment/part-b-drugs/asp-reporting.

[564] Discussion with Dr. Michael L. Brandt, March 6, 2026.  Discussion with Mr. Josh Mathew, March 6, 2026.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

██████████████████████████    In *Crystal Semiconductor v. Tritech Microelectronics*,[565] the Federal Circuit found the patentee's damages analysis flawed because it failed to account for a potential reduction in quantity that might have corresponded to price increases the patentee claimed it would have realized but for the alleged infringement.[566] ████████████████████████████████████████ ████████████████

### 12.2.3   Dr. Vellturo Fails to Consider Price Elasticity of Demand - Bendeka®

████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████
████████████████████████████████    ██████  ████████████

████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████.

### 12.2.4   Dr. Vellturo Fails to Deduct ████████████████ – Belrapzo® and Bendeka®

████████████████████████████████████████████
████████████████████████████████████████

---

[565] 246 F.3d 1336 (C.A.F.C. 2001).

[566] *Crystal Semiconductor v. Tritech Microelectronics,* 246 F.3d 1336 (C.A.F.C. 2001).

[567] EAGLEBEN-SA_00242343 – 378 at 343.

[568] EAGLEBEN-SA_00242303 – 337 at 303.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



## 12.3    Dr. Vellturo's ███████████ Are Defective and Unreliable

███████████

### 12.3.1    Vivimusta®'s Pricing had Little, if any, Influence on Belrapzo® or Bendeka® Pricing

**Figure 9** illustrates the reported annual average net revenue per unit for Belrapzo®, Bendeka®, Vivimusta®, and Baxter's and Apotex's bendamustine products for 2024 and the nine-months ended September 30,

---

569 EAGLEBEN-SA_00242343 – 378 at 347, 349.

570 EAGLEBEN-SA_00242382 – 389 at 382.

571 EAGLEBEN-SA_00242382 – 389 at 382 – 383.

572 Vellturo Report, February 6, 2026, p. 98.

573 Appendix 7.2.1.

574 Appendix 7.2.1.

575 EAGLEBEN-SA_00242303 – 337.

576 EAGLEBEN-SA_00072300 – 400 at 301; EAGLEBEN-SA_00353668, Tab: 2024Q1, Cell J37.

577 EAGLEBEN-SA_00353678, Tab: 2024Q1, Cell L37.

578 Vellturo Report, February 6, 2026, Exhibit 6.

579 Vellturo Report, February 6, 2026, Exhibit 4.

 **INTELLECTUAL CAPITAL EQUITY**

2025.[580] ███████ ████████████████████████████████████████



### 12.3.2 Dr. Vellturo Improperly ███████████ ████████████████

I understand that The Healthcare Common Procedure Coding System (HCPCS) assigns "J-codes" to injectable drugs for reimbursement under Medicare and other payers. Historically, CMS grouped multisource 505(b)(2) products under a single J-code, assuming they were generic copies and fully therapeutically equivalent.

Within the bendamustine product market, Belrapzo® and the ready-to-dilute solutions marketed by Baxter and Apotex currently share HCPCS code J9036,[584] whereas Vivimusta® has a distinct ("single-source") code (J9056).[585] CMS guidelines indicate that Apotex' and Baxter's bendamustine products began sharing

---

[580] Appendix 6.1.

[581] Appendix 6.1.

[582] Appendix 6.1.

[583] Appendix 5.3.

[584] https://ndclist.com/hcpcs/J9036.

[585] https://ndclist.com/hcpcs/J9056; Vellturo Report, February 6, 2026, p. 27.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

Belrapzo®'s J-Code in December 2024, at which point their previous single-source J-codes were terminated.[586]

I also understand that Apotex and Baxter's bendamustine products are AP-rated to Belrapzo®. The FDA's AP rating indicates that these products have bioequivalent injectable aqueous solutions.[587] Vivimusta® is not AP rated to Belrapzo® or any other product. I understand from Mr. Mathew that while Apotex and Baxter petitioned the FDA to assign a therapeutic equivalence code to their bendamustine products, Slayback did not petition the FDA to have Vivimusta® be rated therapeutically equivalent to Belrapzo® or any other product.

Notwithstanding these product distinctions, Dr. Vellturo improperly groups Vivimusta® with Apotex's and Baxter's bendamustine products together in his price erosion analyses. According to Dr. Vellturo:

### 12.3.3   Dr. Vellturo's Allocation of Purported ▮▮▮▮▮ Losses is Erroneous

---

[586] https://www.cms.gov/files/document/r13044cp.pdf, p. 4.
[587] https://www.fda.gov/drugs/development-approval-process-drugs/orange-book-preface.
[588] Vellturo Report, February 6, 2026, p. 60.
[589] Deposition of Alan Eagle, November 18, 2025, p. 253.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**



### 12.3.4  Dr. Vellturo Fails to Consider Price Elasticity of Demand

For the same reasons set forth in Sections 12.2.2 and 12.2.3 concerning lost profits from lost unit sales, Dr. Vellturo's ███████████████████████████ renders his █████████ analyses defective and unreliable. ███████████████████████████████



### 12.4     Dr. Vellturo's Opinions Re: The ████████████████ are Defective and Unreliable

---

590 Vellturo Report, February 6, 2026, p. 64.

591 Vellturo Report, February 6, 2026, Exhibit 18.

592 Vellturo Report, February 6, 2026, p. 64.

593 Appendix 7.2.

594 Discussion with Dr. Michael L. Brandt, March 6, 2026.  Discussion with Mr. Josh Mathew, March 6, 2026.

595 Vellturo Report, February 6, 2026, p. 65.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



---

596 EAGLEBEN-SA_00347447-500 at 477.

597 EAGLEBEN-SA_00347447-500.

598 EAGLEBEN-SA_00347447-500 at 477.

599 EAGLEBEN-SA_00347447-500 at 477.

600 EAGLEBEN-SA_00347447-500 at 477.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



---

601 EAGLEBEN-SA_00347447-500 at 478.

602 https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

603 https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15; https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5200-series.

604 https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

605 EAGLEBEN-SA_00346062-439 at 066.

606 EAGLEBEN-SA_00346062-439 at 078.

607 EAGLEBEN-SA_00346062-439 at 082; EAGLEBEN-SA_00347447-500 at 499.

608 EAGLEBEN-SA_00347447-500 at 478.

609 Deposition of Christopher Krawtschuk, December 5, 2025, p. 15.

610 Deposition of Christopher Krawtschuk, December 5, 2025, pp. 45 – 47.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



---

[611] Vellturo Report, February 6, 2026, p. 67.

[612] Vellturo Report, February 6, 2026, p. 67.

[613] Vellturo Report, February 6, 2026, p. 66.

[614] Eagle Consolidated Financial Statements as of March 31, 2025, p. F-2; Vellturo Report, February 6, 2026, Exhibit 19.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



specially relative to the influence of Treanda® generics and Apotex's and Baxter's bendamustine products.

### 12.5    Dr. Vellturo Fails to Properly Evaluate Eagle License Agreements

### 12.5.1    Dr. Vellturo Fails to Apportion the ████████████████████████

---

[615] ████████████████████████

[616] Vellturo Report, February 6, 2026, Exhibit 19; Eagle Consolidated Financial Statements as of March 31, 2025, p. F-2.

[617] Eagle Consolidated Financial Statements as of March 31, 2025, p. F-2.

[618] Vellturo Report, February 6, 2026, p. 67.

[619] Vellturo Report, February 6, 2026, Exhibit 18.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**12.5.2 Dr. Vellturo Fails to Consider** ███████████████████████

[620] Vellturo Report, February 6, 2026, p. 6.

[621] EAGLEBEN-SA_00072300 – 400 at 331.

[622] Appendix 10.1.

[623] EAGLEBEN-SA_00333048-069 at 051, 069.

[624] EAGLEBEN-SA_00333070-127 at 076.

[625] Vellturo Report, February 6, 2026, p. 82.

[626] Vellturo Report, February 6, 2026, p. 82.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

**12.6    Dr. Vellturo's** ███████████ **Analyses Are Defective and Unreliable**



---

[627] Vellturo Report, February 6, 2026, p. 6.
[628] Vellturo Report, February 6, 2026, p. 6.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



### 12.7    Dr. Vellturo Fails to Consider Customary Royalty Rates

As set forth above, *Georgia-Pacific* Factor No. 12 concerns "[t]he portion of the profit or the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions."



---

[629] Appendix 9.1; Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[630] ███████████████████████████ .

[631] Vellturo Report, February 6, 2026, p. 99.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

**12.8    Dr. Vellturo Fails to Consider** ████████████████████████████



**13    PREJUDGMENT INTEREST**

---

[632] https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf; Appendix 4.2.

[633] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 14.

[634] Prior Approval Supplement (PAS) New Drug Application (NDA).

[635] Defendants' Fifth Supplemental Response to Interrogatories (No. 7), December 5, 2025, p. 15.

[636] Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[637] Appendix 9.1; Defendants' Response to Interrogatories (Nos. 10 – 12), February 5, 2026, p. 6.

[638] Vellturo Report, February 6, 2026, pp. 46 – 47.

[639] Vellturo Report, February 6, 2026, pp. 46 – 47.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

## 14    SIGNATURE

Respectfully submitted,

_____          March 16, 2026
_____

James E. Malackowski          Date

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



200 West Madison, Suite 1020

Chicago, IL 60606

(312) 327-4400

www.oceantomo.com

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Appendix 1

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

February 11, 2026

# JAMES E. MALACKOWSKI
# CURRICULUM VITAE

**James E. Malackowski** is the Chief Intellectual Property Officer (CIPO) of J.S. Held LLC and the firm's Intellectual Property (IP) Practice Leader with shared responsibility for the firm's Artificial Intelligence strategy.  He is a Co-founder and Senior Managing Director of Ocean Tomo, a part of J.S. Held.  Ocean Tomo provides Expert Opinion, Management Consulting, Advisory, and Patent Analytics and Reverse Engineering (PARE) services focused on matters involving intellectual property and other intangible assets. Practice offerings address economic damage calculations and testimony; business licensing strategy and contract interpretation; patent-focused business intelligence; portfolio development strategy; litigation support; trade secret reasonable measures; asset and business valuation; strategy and risk management consulting; merger and acquisition advisory; debt and equity private placement; and IP brokerage. With more than 80 offices globally, J.S. Held assists clients – corporations, insurers, law firms, governments, and institutional investors – on complex technical, scientific, and financial matters across all assets and value at risk.

In 2025 the Licensing Executives Society International (LES) recognized Mr. Malackowski with its highest honor in the business of intellectual property – the LES Gold Medal. Mr. Malackowski is only the 31st recipient of the LES Gold Medal, first awarded in 1971. In 2022, along with Supreme Court Justice Stephen Breyer, Mr. Malackowski was inducted as the 87th member of the IP Hall of Fame, chosen by the IP Hall of Fame Academy from a long list of nominees put forward by the global IP community. Mr. Malackowski was further recognized by the Academy with the Q. Todd Dickinson Award, which honors those who have made significant contributions to IP as a business asset. Notably, Mr. Malackowski is only the seventh person to be recognized both with the LES Gold Medal and inclusion in the IP Hall of Fame, a combination generally regarded as the ultimate recognition in the IP services industry.

Mr. Malackowski was first acknowledged in 2007 by leading industry publications as one of the 'World's Leading IP Strategists'.   Significantly, Mr. Malackowski is listed among "50 Under 45" by *IP Law & Business™*; included in the *National Law Journal's* inaugural list of 50 Intellectual Property Trailblazers & Pioneers; and, named as one of "The Most Influential People in IP" by *Managing Intellectual Property™*. Mr. Malackowski was named as1 of 50 individuals, companies and institutions that framed the first 50 issues of *IAM Magazine* as well as 1 of 60 leading global Economics Expert Witnesses by the same publication in 2014.  In 2011 Mr. Malackowski was selected by the World Economic Forum as one of less than twenty members of the Network of Global Agenda Councils to focus on questions of IP policy.  In 2013 he was inducted into the Chicago Area Entrepreneurship Hall of Fame by the Institute for Entrepreneurial Studies at the University of Illinois at Chicago College of Business Administration.  In 2018, Mr. Malackowski joined the Standards Development Organization Board of the Licensing Executives Society (USA & Canada), Inc. governing voluntary consensus-based professional practices that are guided in their development by the American National Standards Institute's (ANSI's) Essential Requirements.  LES standards are designed to encourage and teach consensus practices in many of the business process aspects of intellectual capital management.

On more than one hundred occasions, Mr. Malackowski has served as an expert in U.S. Federal Court, U.S. Bankruptcy Court, State Court, Court of Chancery, the Ontario Superior Court of Justice, the Federal Court of Australia, the U.S. Patent and Trademark Office Patent Trial and Appeal Board, and global arbitrations on questions relating to intellectual property economics including the subject of valuation, reasonable royalty, lost profits, price erosion, corrective advertising, creditor allocations, Hatch Waxman Act market exclusivity, business significance of licensing terms including RAND obligations and exhaustion, venture

financing including expected risk / return, and the existence of markets or potential markets to assess copyright fair use. Apart from his damage-related work, Mr. Malackowski has also testified to commercial success, licensing practice, the on-sale bar limitation on patentability, Rule 60 Motions, and equities of a potential injunction.  Mr. Malackowski's experience extends to matters of general business valuation and commercial disputes, both domestic and foreign.

Mr. Malackowski has publicly addressed policy issues affecting international trade and has provided expert opinions concerning antidumping and countervailing duties imposed by the U.S. Department of Commerce as well as testimony on domestic industry, bond, and remedies before the International Trade Commission. Mr. Malackowski is a recognized expert in matters addressing artificial intelligence as intellectual property and an industry leader in advancing the role of the CIPO in AI governance. He has published seminal work on *AI as IP™* and was part of the 2025 cohort of Georgetown University's program in Artificial Intelligence Management, the first ever such master's degree accreditation.

Mr. Malackowski has substantial experience as a Board Director for leading technology corporations and research organizations as well as companies with critical brand management issues.  He is Past President of The Licensing Executives Society International, Inc., with oversight for more than ten thousand members in thirty-two countries.  Mr. Malackowski has focused his non-for-profit efforts on organizations leveraging science and innovation for the benefit of children and students, including those located in lesser developed countries.  He served for more than two decades as a Trustee or Director of the National Inventors Hall of Fame, Inc., an organization providing summer enrichment programs for more than 100,000 students annually.  For more than ten years Mr. Malackowski was a Director of Chicago's Stanley Manne Children's Research Institute, advancing the organization's agenda to measure and report the impact of its pediatric research.  He most recently completed service at the Pritzker School of Molecular Engineering Council at the University of Chicago and continues as an Advisor to the Venture Builder Community at the University of Notre Dame.

Mr. Malackowski is a frequent speaker of emerging technology markets and related financial measures. He has addressed mass media audiences including Bloomberg Morning Call, Bloomberg Evening Market Pulse, Bloomberg Final Word, CNBC Closing Bell, CNBC On the Money, CNBC Street Signs, CNBC Worldwide Exchange, CBS News Radio and Fox Business National Television as well as other recognized news-based internet video channels.  Mr. Malackowski is a current or past judge for numerous new venture competitions awarding financial grants recognizing intellectual property protected products and services developed by students, university faculty, and professional entrepreneurs.

As an inventor, Mr. Malackowski has more than twenty issued U.S. patents with further recent pending applications covering Artificial Intelligence quality ratings.  He is a frequent instructor for graduate studies on IP management and markets. Recently, Mr. Malackowski has lectured on his pioneering "AI as IP" framework as well as the application of intangible asset valuation models to corporate Environmental, Social, and Governance (ESG) standards, including applicability of United Nations Sustainable Development Goals (SDGs) to investment decisions. He is a Summa Cum Laude graduate of the University of Notre Dame majoring in accountancy and philosophy.  Mr. Malackowski is Certified/Accredited in Financial Forensics, Business Valuation and Blockchain Fundamentals; a Certified Licensing Professional and a Registered Certified Public Accountant in the State of Illinois; and, certified to receive United States Sensitive Security Information (SSI) as governed by Title 49 Code of Federal Regulations.

| | |
|---|---|
| **EMPLOYMENT** | Chief Intellectual Property Officer (CIPO) and IP Practice Leader, *J.S. Held LLC*, April 1, 2025 to present.

Co-Founder and Senior Managing Director, *Ocean Tomo, LLC, a part of J.S. Held.,* July 1, 2003 to present.  Mr. Malackowski shares responsibility for all aspects of the firm's intellectual property focused merchant banking practice.  Mr. Malackowski served as Chairman from the firm's founding in 2003 until acceptance of Bow River Capital as a strategic partner in 2020.  He served as Chief Executive Officer of Ocean Tomo, LLC from formation until its sale to J.H. Held in 2022.

President and Chief Executive Officer, *IP Equity Management, LLC,* doing business as Duff & Phelps Capital Partners, March 1, 2002 to June 30, 2003.  The firm's intellectual property structured finance efforts were consolidated with Ocean Tomo on July 1, 2003.

Principal and Founder, *VIGIC Services, LLC*, July 1, 2000 to February 28, 2002.  Mr. Malackowski identified and evaluated intellectual capital based private equity investment opportunities and served as an advisor to four completed transactions.

Principal and co-Founder, *IPC Group LLC*, August 1, 1988 – June 30, 2000.  Mr. Malackowski also held the offices of President and CEO and was a Board member / chairman of the firm.  Along with four co-founders, Mr. Malackowski grew IPC Group to become the largest professional services firm specializing in intellectual property valuation and strategy consulting.  IPC Group was sold in 1999 later changing its name to InteCap.

Executive Consultant, *Peterson & Co. Consulting*, Chicago, June 3, 1985 – July 30, 1988.  Mr. Malackowski began with Peterson as a Staff Consultant and was the firm's quickest promotion to both Senior Consultant and Executive Consultant.  Mr. Malackowski helped to establish the firm's intellectual property litigation and valuation practice.  Peterson & Co. was sold to Saatchi & Saatchi PLC in 1988. |
| **NON-PROFIT AND ASSOCIATION EXPERIENCE** | Mr. Malackowski has been active in The Licensing Executives Society (LES) locally, nationally and internationally.  LES is the premiere global professional association of technology transfer and intellectual asset management professionals with more than 9,000 members in more than 32 countries.

Mr. Malackowski is Past President of the Licensing Executives Society International, LLC, where his experience included the following positions:

- Director, LES Standards Development Organization (2018 – present)
- Chair, Past President's Council (2012 – 2013)
- President and Member of the Board (2011 - 2012)
- President Elect and Member of the Board (2010 - 2011) |

- Secretary and Member of the Board (2007 - 2010)
- Member and Permanent Alternate, Board of Delegates (1992 - 2005)
- Past Chair, Membership, Investment, Education, Long-range Planning and Global Technology Impact Forum Committees.

Mr. Malackowski's term as President of LESI has been recognized for creation of the LESI Global Technology Impact Forum and concurrent Invent For Humanity™ Technology Transfer Exchange Fair; formalizing the National Presidents' Council; establishing the position of a permanent Executive Director; and, restructuring the leadership of LESI committees utilizing a Chair, Past Chair, Chair Elect ladder combined with functional responsibilities for committee Vice Chairs. This later organizational stamp is based largely on Mr. Malackowski's experience as President of LES USA & Canada described below where he led a restructuring of the Board from a regional to a functional focus for each officer and Trustee. As with his tenure at his national Society discussed below, Mr. Malackowski led a financial turn-around returning LESI to positive cash flow following its' only two years of loss.

Mr. Malackowski is also Past President of The Licensing Executives Society (USA and Canada), Inc. where he held numerous offices in the organization including:

- President and Member of the Board (2001 – 2002)
- International Vice President and Member of the Board (2000)
- Treasurer and Member of the Board (1996 -- 1999)
- Trustee and Member of the Board (1992 – 1996)
- Chair, Annual Meeting in Miami Beach (1998) and the Summer Meeting in Chicago (1997)

Mr. Malackowski presided over a restructuring of the LES USA & Canada Board and a financial turn-around returning the organization to positive cash flow following its only two years of loss to such date. Mr. Malackowski is the youngest President to hold office at LES USA & Canada as well as at LES International.

In 2007, Mr. Malackowski was the Founding Chair of the Board of Governors for what is now Certified Licensing Professionals, Inc., administrator of the Certified Licensing Professional (CLP) program for professionals in the fields of licensing, business development and commercialization of intellectual property. More than 1,000 individuals involved in patenting, marketing, valuation, IP law, negotiation, and intellectual asset management have earned the CLP certification. CLP, Inc. is a 501(c)(6) organization whose mission is to elevate the licensing profession through knowledge and standards.

In 2018 Mr. Malackowski joined the Standards Development Organization Board of LES USA & Canada. LES standards are voluntary consensus-based professional practices that are guided in their development by the "American National Standards Institute's (ANSI's) Essential Requirements." ANSI is the unique accrediting agency in the United States for voluntary consensus standards development organizations. LES is an accredited ANSI Standards Developer and as such guarantees its constituents that its standards will be

developed in a fair, balanced, consensus-based, due process driven way.  LES standards are designed to encourage and teach consensus practices in many of the business process aspects of intellectual capital management and, where appropriate, offer enterprises the opportunity to differentiate themselves based on their use of these consensus professional practices, through certification of conformance to those standards.

Mr. Malackowski extends significant time to non-profit activities directed towards a further understanding of the economic importance of innovation and intellectual property, in both the United States and developing economies. These efforts include:

- Founding Board Member and member of the Executive Committee, United Stages Intellectual Property Alliance (USIPA) and Global Intellectual Property Alliance, (2020 -)
- Judge, University of Notre Dame McCloskey Venture Competition (2019 -)
- Advisory Council, University of Chicago, Pritzker School of Molecular Engineering (2018 - 2022)
- Judge, Illinois Technology Association, CityLIGHTS™ Innovation Awards (2013 - 2020)
- Member, World Economic Forum Network of Global Agenda Councils (2011 - 2012)
- Member, Master of IP Management & Markets Advisory Council, Chicago-Kent College of Law | Illinois Tech (2008 - 2018)
- Director, International Intellectual Property Institute, Washington D.C., (2002 - 2007)
- Resident Advisor, U.S. Information Agency, (1999)
- Resident Advisor, U.S. Department of Commerce Commercial Law and Development Program (1997)
- Founder and Chairman, The Center for Applied Innovation, Inc. (2004 -)

Recognizing the economic value created by new businesses enterprise protected by intellectual property, Mr. Malackowski has been appointed as a judge in numerous new venture competitions including:

- Judge, University of Notre Dame McCloskey Venture Competition (2019 -)
- Judge, 1st Source Bank Commercialization Awards (2019 -)
- Judge, Illinois Technology Association, CityLIGHTS™ Innovation Awards (2013 – 2020)
- PBS *Everyday Edisons* (2008)

In addition to his university instruction described herein, Mr. Malackowski focuses his non-for-profit efforts with those organizations leveraging science and innovation for the benefit of children.

- Director, Children's Research Fund (2013); Co-Chair Annual Fund Campaign (2013)
- Director, National Inventors Hall of Fame, Inc. (NIHF) including service as a Member, Trustee or Director of related subsidiaries and Board Committees (2001 - 2022).   The NIHF has provided summer enrichment programs for significantly more than one million students including Camp

Invention™ for kids in grades 1-6 (and their parents and teachers); Collegiate Inventors Competition™ for college students (and their mentors); and, Club Invention™ for kids in grades 1-6 (and their parents and teachers). NIHF provides more than 20,000 camp scholarships annually for children in financial need.

- President's Council, Chicago Museum of Science and Industry (2005 - 2011) including participation on the Education Advisory Committee (2007 - 2009) and the Alternative Revenue Committee (2008 - 2011)
- Director, Stanley Manne Children's Research Institute (2009 - 2020) including Chair of the Board's Technology Transfer Committee (2014 - 2020) and the Strategic Planning Resources Committee (2011 - 2012). Mr. Malackowski is recognized for initiating the development of a program to measure and track innovation metrics relevant to the Institute.

Mr. Malackowski was the Founder of the Center for Applied Innovation, a Chicago based non-for-profit with both local and international programs. CAI was created to manage education, public policy outreach and related economic activity around applied technology and intellectual property (IP) rights in the State of Illinois and around the world.

- CAI created and patented the first commoditized contract for technology licensing, the Unit License Right™. This innovation has been licensed to the Chicago-based Intellectual Property Exchange International.
- Under Mr. Malackowski's continued leadership as Chairman, CAI organizes the Invent for Humanity™ Technology Transfer Exchange Fair (InventforHumanity.org) launched in January, 2012, in Geneva, Switzerland. Invent for Humanity showcases field-ready, sustainable innovations, known as "appropriate technologies", leveraging the experience of licensing professionals to match and structure the actual transfer of such technology to meet recognized needs of emerging market economies.

Mr. Malackowski's association and non-profit activities are informed in part by his participation in the Harvard Business School Executive Education Program on Governing for Nonprofit Excellence, November 2000. Mr. Malackowski's Board service is informed by his participation at the Rock Center Corporate Governance Directors College for Venture-Backed Company Directors, Stanford University, March 2016.

---

**RELATED OFFICES**

*AIQA, LLC*, Board of Managers. The company was formed to develop quality ratings for enterprise implementation of Artificial Intelligence technology. (2025 – present)

*BPG Bio, LLC*, Member, Council of Advisors, Senior Advisor, Intellectual Property Licensing & Innovation (2012 - 2015)

*The Copyright Hub, LLC d/b/a 3Discovered*, Founder. The company was formed as a collaborative venture between Ocean Tomo, LLC and Liberty Advisor Group in 2013. 3Discovered is a current portfolio company of US-

based venture capital firm AITV.  Mr. Malackowski served as Chairman of the company through September 2016.  (2103 – 2106)

*Career Capture, LLC*, Secretary (2022 - 2025).  Career Capture is a video based recruiting platform focused on engineering and technical school graduates entering the labor market.  The company is a University of Southern California Iovine & Young Academy project led by Chase J. Malackowski (son).

*Curious Networks, Inc.*, Director, (1999 - 2000), Co-Chair of the Board's Strategic Partnership Committee.  Mr. Malackowski led the company's first and second round of venture funding.

*Encant.ai*, (2020 – present), Advisor.  Encant.ai has developed and seeks to commercialize an AI-based threaded video technology controlling frame rates and benefiting advanced streaming and compression applications.

*ewireless, Inc.* (f/k/a JEMAN Holdings, Inc. d/b/a Cellular Linking), Director, (1995-1999, 2000-2002)

*Ford Global Technologies, Inc.*, Ford Motor Company, Director (1997 - 2001).  Mr. Malackowski advised Ford Motor Company on the original business strategy which led to the formation of FGTI.  FGTI was the largest known technology management company in the United States during Mr. Malackowski's term.

*Infocast, Corporation* (OTC BB: IFCC.OB), Director (2001-2002).  Member of the Audit and Compensation Committees.  Mr. Malackowski led the transition of the company's senior management team and continued U.S. based funding efforts.

*Insignis, Inc.*, Director (2000 - 2002)  Mr. Malackowski led the company's first round of venture funding.  Insignis is a Chicago based provider of institutional financial data services.

*The Intellectual Property Coin Group, Inc.*, Chairman and Co-Founder (2018 - 2021).  The company is a planned Ethereum based blockchain platform and related cryptocurrency designed to facilitate IP based transactions.

*The Intellectual Property Exchange International, Inc*.  Mr. Malackowski was the founder of the company guiding initial product development of IPXI and recruitment of executive management.  In 2011, IPXI was funded by an industry consortium including the Chicago Board Options Exchange.  Mr. Malackowski was the Chair or Co-Chair of the Exchange from inception to February 26, 2015.

*JEMAN Technologies, Inc*., Founder. (1995 – 1999).  Mr. Malackowski led the company's efforts to develop new technologies related to wireless direct response services.  JEMAN was sold to ewireless, Inc. in 1999 as part of a venture transaction funded by Bedrock Capital Partners and Tredegar Investments.

*Positive Growth Ventures, LLC*, Chairman. (2021 - ).  Mr. Malackowski organized the formation of an industry collective to facilitate direct-to-consumer cooperative advertising for health supplements and related medical products.

*Silent-Yachts Italia, Srl*, Member, Advisory Board (2021 - 2023).  Mr. Malackowski provided general business advice to both the company's chief executive as well as its original U.S. distributor of solar-electric catamarans. Silent-Yachts Italia is located in Fano, Italy.  Mr. Malackowski led the creditors committee of contracted yacht buyers through a corporate restructuring in December 2023.

*Solutionary, Inc.*, Director (2000 - 2013).  Arranged and advised on Solutionary's asset acquisition of S3Networks effective August 31, 2001 and sale to strategic buyer in 2013.  Member of the Board's Compensation Committee.

*Sendle, Pty*, Advisor (2012 - 2015).  See [www.Sendle.com](www.Sendle.com).

---

**EDUCATION AND CERTIFICATION**

University of Notre Dame, B.B.A., Bachelor of Business Administration with majors in Accountancy and Philosophy.  Graduated Summa Cum Laude, 1985.

Georgetown University, Masters In Artificial Intelligences Management, Current, 2025 Cohort, Select Classes.

Certified Licensing Professional, Certificate Number 1606 issued July 1, 2008; Recertification through November 30, 2026.

Registered Certified Public Accountant, State of Illinois Certificate Number 41,187 issued October 3, 2006; License No. 239.007831; Expires September 30, 2026.

Certified in Financial Forensics, CFF™, American Institute of Certified Public Accountants, Certificate Number 391 issued July 31, 2008; Expires August 1, 2026.

Accredited in Business Valuation, ABV™, American Institute of Certified Public Accountants, Certificate Number 4278 issued May 31, 2014; Expires August 1, 2026.

Accredited in Blockchain Fundamentals for Accounting and Finance Professionals, American Institute of Certified Public Accountants, Certificate Number 15860970, 2018 - 2020.

---

**UNIVERSITY INSTRUCTION**

John Marshall Law School, Intellectual Property Damages (1992 - 1994)

DePaul University, Intellectual Property Entrepreneurial Finance (2003)

The George Washington University Law School, Intellectual Property Management (2004)

The University of Chicago Graduate School of Business:

- Intellectual Property Investment (2004 - 2006)
- Entrepreneurial Discovery, MBA Course 34705, Adjunct Professors Mark Tebbe and Brian Coe (Fall 2014 - 2015)

Indiana University Kelly School of Business, Intellectual Property Finance (2005)

University of Notre Dame, Mendoza College of Business, Adjunct Instructor:

- MBA Interterm Intensives, Intellectual Property Based Market Transactions, Valuation and Trading (Fall 2006, Fall 2008)
- MBA Executive Program, Course MBAE 70639, Intellectual Property, (Spring Semester 2008)
- MBA Program, Litigation Support and Valuation (Spring 2009)
- Notre Dame Law School, Advanced Trial Advocacy, LAW 75713-10 (Spring 2017)
- Member, Venture Builder Community Advisory Board (2019 - )
- MBA 60452: Climate Resilience In Business & Communities (Fall 2023)

University of California at Berkeley Haas School of Business, Innovation Markets (2008)

Chicago-Kent College of Law, Adjunct Professor of Law, IP Financial Markets and Legal Principles (Fall 2008)

Rutgers Professional Science Master's Program, Fundamentals of Intellectual Property (Summer 2011, 2024, 2025)

Northwestern University Kellogg School of Management, Adjunct Instructor:

- MGMT 441, Intellectual Property Management, Clinical Professor James G. Conley (Fall 2012, Spring 2013 - 2017)
- DSGN 460, Innovation in Context, McCormick Engineering School (Spring 2017)

University of Texas McCombs School of Business, MBA Course:  Open Innovation, Professor Sirkka Jarvenpaa (Spring 2013)

University of Arizona, James E. Rogers College of Law, Advisor, Intellectual Property & Entrepreneurship Clinic

- IP Valuation (Spring 2017)
- IP Valuation for Commercial Transactions (Spring 2019)

University of Southern California, Lloyd Greif Center for Entrepreneurial Studies at the Marshall School of Business, Entrepreneurs Guide to Intellectual Property, Professor Luke L. Dauchot, JFF 322 (Fall 2017)

University of Wisconsin-Milwaukee Lubar College of Business, Venture Finance (Fall 2025)

|  |  |
| --- | --- |
| **MEMBERSHIPS** | American Institute of Certified Public Accountants, Member 01182237 (1985 -)<br>Private Directors Association (2023 - )<br>The Economic Club of Chicago (1990 - 2019)<br>The Licensing Executives Society (1988 - )<br>Young Presidents' Organization (YPO / YPO Gold Chicago Chapter, 2006 – 2017) (Mid-America U.S. At Large Chapter, 2019 - 2021) (YPO Gold Miami Chapter 2025 - ) |

**RECOGNITION AND AWARDS**

Individually, Mr. Malackowski has been recognized for his expertise as well as his work in developing markets for intellectual property transfer including:

- Gold Medal Recipient, Licensing Executives Society International (2025). Mr. Malackowski is only the 31st recipient of the LES Gold Medal, first awarded in 1971.
- Inductee, IP Hall of Fame (2022). Mr. Malackowski was inducted as the 87th member of IP Hall of Fame, joining 13 current or former Directors of governmental patent offices, 10 former judges, two past U.S. Presidents, Nikola Tesla, and Thomas Edison.
- Received Q. Todd Dickinson Award, which honors those who have made significant contributions to IP as a business asset (2022)
- *EY Entrepreneur Of The Year®*, Regional Semifinalist (2019 and 2020)
- "IAM Global Leaders", *IAM Magazine* (2020)
- "IAM Patent 1000: The World's Leading Patent Professionals", *IAM Magazine* (2015-2021)
- Named to the *National Law Journal's* inaugural list of 50 Intellectual Property Trailblazers & Pioneers. (August 2014)
- Named as 1 of 60 leading global Economics Expert Witnesses in the *IAM Patent 1000, IAM Magazine.* Selection based on interviews by IAM researchers with more than 100 patent litigators. (May 2014)
- Inductee, Chicago Area Entrepreneurship Hall of Fame as selected by the Institute for Entrepreneurial Studies at the University of Illinois at Chicago College of Business Administration, (2013; 28th Year of Program)
- Named as 1 of 50 Individuals, Companies and Institutions that Framed the First 50 Issues of *IAM Magazine*, November / December 2011.
- "IP Personalities of 2008", *IAM blog* by Joff Wild, Editor
- "IAM Strategy 300: The World's Leading IP Strategists", *IAM Magazine* (2012-2021); formally presented and included as "World's 250 Leading IP Strategists", *IAM Magazine* (2009-2011)
- "50 Under 45", *IP Law & Business™* (2008)
- "The Most Influential People in IP", *Managing Intellectual Property™* (2007)

- Member, IP Hall of Fame Academy (2007- )

Mr. Malackowski is only the seventh person to be recognized both with the LES Gold Medal and inclusion in the IP Hall of Fame, a combination generally regarded as the ultimate recognition in the IP services industry.  Others who have been previously recognized with both such awards are Dudley B. Smith who was instrumental in forming the Licensing Executives Society; Heinz Goddar who is widely regarded as a global IP luminary dedicating his career to advancing the understanding of IP across academia, research, governmental and commercial enterprises; Thierry Sueur who helped shape IP policy in his role at the International Chamber of Commerce as well as his work as chairman of the IP Committee of the French business federation MEDEF and vice chairman of the board of the French Patent Office; Francis Gurry as the former Director General of the World Intellectual Property Organization (WIPO); Randall R. Rader as former Chief Judge of the United States Court of Appeals for the Federal Circuit; and, Hon. Pauline Newman who was appointed to the United States Court of Appeals for the Federal Circuit in 1984.

Ocean Tomo as a firm has been likewise recognized for its accomplishments including:

- Ocean Tomo was chosen as the exclusive U.S. representative for the 2016 Healthcare & Pharma Leading Expert Awards by *Global Health & Pharma Magazine.*
- Ocean Tomo was recognized as a member of the *2015 Inc.5000®* list of fastest-growing private companies in America.
- Ocean Tomo was honored in 2011 with the "Best of Chicago Award in Investment Advisory Services" by the U.S. Commerce Association (USCA).
- In addition to Mr. Malackowski, Ocean Tomo as a firm was named as 1 of 50 Individuals, Companies, and Institutions that Framed the First 50 Issues of *IAM Magazine*, November / December 2011 and the only firm other than Microsoft (2 of 50 mentions) to be recognized multiple times (5 of 50 mentions).
- The firm's Chicago office was presented the *2011 Alfred P. Sloan Awards for Business Excellence in Workplace Flexibility* after having been finalist for scoring in the top 20% of all firm's measured nationally.
- Ocean Tomo was recognized in 2010 by Corporate Voices for Working Families for its work-life balance as part of the National Workplace Flexibility Campaign published by *USA Today*.
- Ocean Tomo was recognized as a juried Finalist for the Illinois Technology Association 2010 CityLIGHTS Award for raising the stature of the Illinois technology industry.
- Selected as case study organization for Haas School of Business, University of California, Berkeley (2009)
- Selected as case study organization for Harvard Business School MBA Program (2008)
- Ocean Tomo was named one of 20 small and mid-sized firms recognized as the "Best Places to Work in Illinois" by Best Companies Group in a competition sponsored by the Illinois Chamber of Commerce and the Illinois State Council Society for Human Resource (2007)

- Ocean Tomo Auctions received the 2006 Chicago Innovation Award for most innovative new product or service introduced between January 1, 2005, and July 31, 2006, that uniquely satisfied unmet needs in the marketplace. The award was presented by Kuczmarski & Associates and the *Chicago Sun-Times*.
- Ocean Tomo Auctions was awarded the Department of Commerce Technology Administration & National Knowledge & Intellectual Property Management 2006 Innovator of the Year Award.
- Ocean Tomo was recognized as a "Top Ten IP Newsmakers of 2006" by *IP Law & Business*, Almanac 2006.

Numerous authors and graduate business programs have written case studies about Ocean Tomo and its affiliates including:

- Piscione, Deborah Perry, The Risk Factor, Copyright 2014.
- Houle, David, Entering the Shift Age, Copyright 2013.
- Kuczmarski, Thomas D., Dan Miller and Luke Tanen, Innovating Chicago-Style:  How Local Innovators Are Building The National Economy, Copyright 2012.
- Houle, David, The Shift Age, Copyright 2007.
- Chesbrough, Henry, Open Business Models: How to Thrive in the New Innovation Landscape, Copyright 2006.
- Harvard Business School Case Study
- University of California Business School Case Study

---

| | |
|---|---|
| **RELATED U.S. SPEECHES AND PUBLICATIONS** | "The Determination of a Reasonable Royalty: Hypothetical Negotiation v. A General License Agreement", The Licensing Executives Society, Chicago Chapter, December 8, 1987. |

"The Business Economics of Technology Development", The Licensing Executives Society, New England Chapter, February 9, 1988.

"The Importance of Protecting Intellectual Property Through Corporate Transition", Licensing Executives Society, National Meeting, October 18, 1989, Moderator.

"Valuation of Intellectual Property Rights", The Chicago Bar Association, March 6, 1990.

"Dispute Resolution -- There Are Alternatives!", Licensing Executives Society, National Meeting, October 22, 1990.

"How to Value a License", Adding to the Bottomline Through Licensing, LES / John Marshall Law School, November 1, 1990.

"An Advanced Discussion on Licensing and Patent Damages", Licensing Executives Society, National Meeting, October 28, 1992.

"An Advanced Discussion on Patent Damages", Licensing Executives Society, National Meeting, October 18, 1993.

Royalty Provisions in Technology License Agreements, Technology Transfers, American Conference Institute, November 15 & 16, 1993.

"Commercializing Technology and the Intellectual Property Quality Management Imperative", Technology Transfer, American Conference Institute, June 20 & 21, 1994.

"How to Accurately Value Software", The Software Protection and Litigation Institute, July 28 & 29, 1994.

"IP Damages Advanced Case Studies", Licensing Executives Society, National Meeting, October 19, 1994.

"Preparation and Presentation of Damages by Outside Consultants", AIPLA Mid-Winter Meeting, February 1, 1995

"Damages Discovery - An Expert's Perspective", Intellectual Property Law Association, New York, December 15, 1995.

"Pre-Litigation Damages Techniques: Patents and More", The Intellectual Property Strategist, March 1996.

"Corporate Exposures to Copyright, Patent, Trademark, and Trade Secret Claims", Digital Bullets - Digital Shields: A Financial Perspective, American Conference Institute, New York, March 5, 1996.

"IP Management and Taxation - How companies are proactively managing IP assets to maximize shareholder value, including measuring contribution of IP protection to corporate value", American Bar Association, Virginia, April 11, 1996.

"Effectively Select & Use Experts in Trademark & Copyright Cases", AIPLA Spring Meeting, Boston, May 1, 1996.

"The Industry-University Interface: Mechanisms For Technology Transfer", 1996 AUTM Central Region / Licensing Executives Society Chicago Chapter, Chicago, July 21, 1996.

"Valuing Health Care Technologies", Licensing Executives Society Winter Meeting, South Carolina, March 13, 1997.

"Creative Marketing & Packaging - How to Differentiate Yourself in a Competitive Market", CTIA Annual Meeting, Atlanta, February 23, 1998.

"Intellectual Property Valuation: The Latest Techniques from Boardroom and Courtroom", Patent Law Association of South Florida Annual Meeting, Fort Lauderdale, October 22, 1998.

"The Aftermath of *Rite-Hite v. Kelly*", 16th Judicial Conference of the U.S. Court of Appeals for the Federal Circuit, Washington D.C., April 6, 1999.

"Expert Admissibility After Daubert", Wisconsin Academy of Trial Lawyers, Milwaukee, December 3, 1999.

"Intellectual Property Strategic Planning: a Corporate Perspective", Research Directors Association of Chicago, Winter Meeting, January 10, 2000.

"Intellectual Property Asset Management: Linking IP and Corporate Strategy", 44th Annual Conference on Developments in Intellectual Property Law, John Marshall Law School, Chicago, February 25, 2000.

"Boost Your Client's Intellectual Capital IQ: Get Top Management Involved", Corporate Legal Times, October 2000, p. 104.

"Strategic and Financial Opportunities for Privately Held and Public Middle Market Companies: Building Shareholder Value", The Standard Club, Chicago, October 5, 2000.

"Commercializing Intellectual Capital Through Venture Funding", LESI Expanded Board of Directors Meeting and Seminar, Delray Beach, Florida, January 26, 2001; LES Chicago Meeting, May 10, 2001.

"New Paths to Growth: Joint Ventures and Accessing Equity Capital", Panel Presentation and Discussion, LaSalle Street Project Economic Summit, Chicago, May 10, 2001.

*ViewPoints*, The Newsletter of the Licensing Executives Society (U.S.A. and Canada), Inc., President's Column: Vol. VIII No. 5, Nov. / Dec. 2001, "President Changes the Way LES Does Business"; Vol. VIV No. 1, Jan. / Feb. 2002, "It's Time To Count Our Intellectual Assets"; Vol. VIV No. 2; Vol. VIV No. 3, May / June 2002, "Mid-Year Review"; Vol. VIV No. 4, July / August 2002, "Ethical Issues Related To Intellectual Property".

"Venture Investment Grounded In Intellectual Capital", From Ideas To Assets: Investing Wisely in Intellectual Property, Edited by Bruce Berman, John Wiley & Sons, Inc., 2002.

"Current Issues in Accounting for Intangibles", Congressional Economic Leadership Institute, Panel Presentation and Discussion with Steven H. Wallman, Former Commissioner, United States Securities and Exchange Commission, Washington, DC, May 1, 2002.

"Intellectual Capital Based Corporate Carve-outs: Strategy, Structure and Funding", James E. Malackowski and Suzanne Harrison, The LESI Guide to Licensing Best Practices, Edited by Robert Goldscheider, John Wiley & Sons, Inc., 2002.

"Intellectual Property Finance: Securitization to Venture Capital", American Bar Association Intellectual Property Law Conference, Philadelphia, June 28, 2002.

"The IIPI Roundtable:  The New Emphasis on Patent Value – Opportunities and Challenges", Washington DC, July 22, 2002.

"Moving Technology from University to Marketplace:  Business Creation and the Venture Capital Community, Licensing Executives Society Annual Conference, Chicago, September 24, 2002.

"Presidents' Forum on Intellectual Property:  A Leadership Discussion with The Licensing Executives Society, the American Intellectual Property Law Association, the Association of University Technology Managers, the Intellectual Property Owners Association, The National Inventors Hall of Fame, and BIO", Licensing Executives Society Annual Conference, Chicago, September 24, 2002.

"Extracting Value From Your Intellectual Asset Portfolio: Ensuring ROI from IP and Technology Assets", World Research Group, November 22, 2002, Chicago, Illinois.

"Licensing", American Intellectual Property Law Association 2003 Mid-Winter Institute, Marco Island, Florida, January 22 – 25, 2003.

"Cashing in on Chicago: A Closer Look at Liquidity in the Heartland", The Executives' Club of Chicago, Panel Discussion, February 11, 2003.

Conference Chair and Speaker, "Optimizing Valuation & Value Realization of your IP/Intellectual Assets", World Research Group, Las Vegas, February 27-28, 2003.

Live Webcast, "Turning Your Intellectual Property into Cash", Ernst & Young Business Insights, April 28, 2003.

Intermediate PDS Workshop:  Application of Private Equity and Leveraged Finance Investing to Intellectual Property, LES / AUTM Summer Meeting, Philadelphia, May 8, 2003.

World Research Group, Advanced Intellectual Property Structured Finance, Conference Co-Chairperson, New York City, June 29-30, 2003.

The Conference Board, The 2003 Conference on Intellectual Asset Management & Value Reporting, "Application of Private Equity and Leveraged Finance Investing to Intellectual Property", Chicago, June 4, 2003.

Intellectual Property and Information Technology for Investment Funds, "Intellectual Capital Equity Management", Panel Discussion Sponsored by Schulte Roth & Zabel, New York City, June 18, 2003.

Chicago Capital Access Forum III, "Private Investors: The Case for Domestic Emerging Market Investments", Panel Discussion, Chicago, June 26, 2003.

Pension Consultants' Forum, "Extracting Value from Private Equity Investing", World Research Group, Chicago, July 22, 2003.

Midwest Intellectual Property Institute, "Intellectual Capital Equity Management", Minneapolis, September 19, 2003.

"Intellectual Asset Strategies", Add-On Seminar at the 2003 Licensing Executives Society Annual Meeting, San Diego, September 25, 2003.

"Leveraging Intellectual Property", Keynote Speaker, Thomson Financial Thought Leadership Forum, New York, October 8, 2003.

"Beyond Licensing: Innovative Techniques for Extracting Value", Advanced Forum on Licensing Intellectual Property, San Francisco, December 9, 2003.

Intellectual Asset Management, *Column: IP Merchant Banker*, Douglas R. Elliott & James E. Malackowski, Issue 01, "Challenges of the Fifth Epoch", July / August 2003; Issue 02, "What the Market Fortells", September / October 2003; Issue 03, "Economics, Ethos and Intellectual Ethics", December / January 2004; Issue 04, "Patent Predictions – facts or fictions?", February / March 2004; "Wealth management in the age of patents", June / July 2004; "Patent pools – the 80% solution", August / September 2004.

"Intellectual Capital Equity Management: IP as an Asset Class", Minnesota State Bar Association Continuing Legal Education, Minneapolis, January 15-16, 2004.

"Understanding the Motivations Behind an IP Structured Finance Transaction", "Analyzing the Anatomy of A Patent-Based Structured Finance Transaction", World Research Group, New York, January 21-22, 2004.

"Managing Your Intellectual Property", Investment Banking for Women / Minority Owned Business Enterprises, Annual Forum, Conference Co-Chairperson, Chicago, March 3-5, 2004.

"Private Equity: Investor Capital for Mature Businesses", Dream*Makers* Forum 2004, Santa Barbara, California, March 7 – 10, 2004.

"IP Finance: Convergence of IP Valuation and Value Creation", World Research Group 2nd Annual Strategies and Solutions for Optimizing IP Valuation & Value Creation, Chicago, March 23 – 24, 2004.

"Leveraging the Value of Intellectual Property", Creating, Managing & Valuing an Intellectual Property Portfolio, Vedder Price Conference Series, Chicago, April 28, 2004.

"Federal Circuit Damages Decision Emphasizes the Importance of Sound Economic Models", IP Review, McDermott Will & Emery, with Robert M. Hess, Spring 2004.

"Intellectual Property Merchant Banking: Leveraging Corporate Intangible Assets", The Licensing Executives Society (U.S.A. & Canada), Inc., Fairfield-Westchester Counties Chapter, June 23, 2004.

"Intellectual Property Financing and Securitization: Conclusions and Future Implications for Financing the IP Market", New York, New York, July 21, 2004.

"Emerging Financial Concepts in IP Asset Management", Mining Patent Portfolios, Seattle, Washington, September 13, 2004.

"Intellectual Property Investment", National Institutes of Health, Commercialization Assistance Program, Larta Institute, Chicago, November 12, 2004.

"Using Intellectual Property to Grow", The Beacon, Chicagoland Entrepreneurial Center, Volume 3, Issue 4, December 10, 2004.

"Techniques for Assessing the Value of Your IP Portfolio", The Wall Street Transcript Intellectual Property Conference, New York, January 27, 2005.

"The Tipping Point: Assessing Major Challenges and Growth Opportunities in IP Finance", Moderator, The 3rd Annual Advancing IP Structured Finance World Research Group Conference", New York, February 3, 2005.

"Commerce One IP Auction", Optimizing IP Valuation and Value Creation, World Research Group Conference, Miami, March 30-31, 2005.

"Intellectual Capital Equity Management: IP As An Asset Class", Minnesota Continuing Legal Education Conference, Minneapolis, May 12, 2005.

"Techniques for Evaluating IP Potential", Life for After Rembrandts, Law Seminars International, Chicago, Illinois, August 4, 2005.

Keynote Address, 2nd Annual Intellectual Property Financing and Securitization Summit, New York, September 26, 2005.

"The Power of Intellectual Property in Private Equity Deals", Association for Corporate Growth and The Licensing Executives Society Connecticut Chapters, Greenwich, Connecticut, October 6, 2005.

"Maximizing the Value of Distressed Debt Backed by Intellectual Property", Financial Research Associates Distressed Debt Summit 2005, New York, October 7, 2005.

"To Sell or Not to Sell", Licensing in the Boardroom 2005, a supplement to *Intellectual Asset Management* magazine, 2005.

Patent Auctions & Marketplaces: Leveraging Value from Under-employed Technologies, IP Master Class Presentation, Washington DC, January 10, 2006.

"Risky Business: Overlooking Patents as Financial Assets", Making Innovation Pay, Edited by Bruce Berman, Published by John Wiley & Sons, Inc., 2006.

"The State of Development & Current Trends in IP Structured Finance" and "The Tipping Point: Assessing Major Challenges, Growth Opportunities and

Future Trends in IP Finance", Moderator, The 4th Annual Summit on IP Structured Finance, New York, March 22-23, 2006.

"Generating Revenue From Your Inventions", IIR 2nd Annual Summit on IP Rights for Financial Services, New York, April 25-26, 2006.

"A Behind the Scenes Look at the Patent Bazaar: How Companies and Industry Are Buying and Selling Patents", Innovators in IP Litigation, IP Law & Business, San Jose, California, May 17, 2006.

"Patent Markets and Their Impact to R&D Strategy", Industrial Research Institute Annual Meeting, May 21-24, 2006, Colorado.

USC Gould School of Law 2006 Intellectual Property Institute; Featured Speaker, "A Final Word"; Panelist, "Patent Trolls: The Good, the Bad and the Ugly"; May 23, 2006, Los Angeles.

"Patent Auctions: Past, Present & Future", The 50th Annual Conference on Developments in Intellectual Property Law, John Marshall Law School Center for Intellectual Property Law, May 25-26, 2006, Chicago.   Speech published as "The Intellectual Property Marketplace: Past, Present and Future", 5 J. Marshall Rev. of Intell. Prop. L. 605, (2006)

"Patent Auctions: Risky Endeavor or Legitimate Market Opportunity?", Strafford Legal Teleconference Presentations, June 8, 2006.

The Intellectual Property Investment Summit:  Connecting Investors with Strategic Intellectual Property Opportunities, presented by the Center for Applied Innovation, Summit Co-Chairperson, June 15, 2006, Chicago.

Innovative Structures for Acquiring Intellectual Property:  The Benefits, Challenges and Process, LSI Law Seminars International, Program Co-Chair, July 17, 2006, Chicago.

"Licensing and Intellectual Property", Chicago Regional Independent Inventor's Conference, Presented by the United States Patent and Trademark Office, Northwestern University School of Law, and the National Inventors Hall of Fame Foundation, July 28-29, 2006, Chicago.

"Reinventing the IP Marketplace – The Exclusive Ocean Tomo Patent Auction Case Study", IP Licensing Summit: Practical Strategies to Maximize Revenue in Today's Challenging Intellectual Property Marketplace, August 21-23, 2006, New York.

"Unlocking the Value of Intellectual Property Rights", Conference of the International Bar Association, September 20, 2006, Chicago.

"This Too Shall Pass", Americas IP Focus 2006, Managing Intellectual Property Rights, Copyright, Euromoney Institutional Investor, PLC, 2006.

"Developing Markets for Intellectual Assets and Technology", 21st Annual Intellectual Assets and Technology Law Institute, October 5 & 6, 2006, Irving, Texas.

"Patent Damages" and "Patent Reform Efforts: An Update and Review", The Sedona Conference Patent Litigation VII, October 12-13, 2006, Sedona, Arizona.

"Patent Auctions", 44th Annual Intellectual Property Law Conference, The Center for American and International Law, November 9-10, 2006, Plano, Texas.

"The Future of Developing IP Markets", 3rd Annual Monetization of Intellectual Property & Intangible Assets, Strategic Research Institute, November 16-17, 2006, Boston.

"The IP Transactional Landscape", Economics of IP Based Transactions, National Knowledge & Intellectual Property Management Taskforce Series Program, November 29-30, 2006, Washington, D.C.

Keynote Presentation, The Business of Intellectual Property Conference, Tech Council of Maryland, Rockville, Maryland, January 10, 2007.

Luncheon Speaker, Corporate Intellectual Property Roundtable, Georgia State University College of Law, Atlanta, January 24, 2007.

"Patent Markets", American Intellectual Property Law Association, 2007 Mid-Winter Institute, New Orleans, January 24-27, 2007.

"Assessing the Real Value of Your IP Portfolio" and "Growing IP Impact on Public and Semi-Public Markets", The 5th Annual Summit on Monetizing, Financing & Securitizing IP, New York, January 30-31, 2007.

"Ocean's 300", Moderator, World Intellectual Property Review 2007, pp. 16-20.

"The Intellectual Property Marketplace: Emerging Transaction and Investment Vehicles", Co-author with Cardoza, Gray and Conroy, *The Licensing Journal*, Aspen Publishers, Vol. 27, No. 2, pages 1 - 11, February 2007.

"The Importance of Emerging Intellectual Property Market Opportunities to the City of Chicago", Keynote Speaker, Notre Dame Club of Chicago Meeting, Chicago, March 8, 2007.

"The Intellectual Property Marketplace", Harvard Business School Club of New York, New York, April 12, 2007.

Keynote Address, BRICs & Mortar: Technological Drivers in Booming Economies of Brazil, Russia, India and China, Northwestern University Journal of Technology & Intellectual Property Second Annual Symposium, Chicago, April 13, 2007.

"Innovation Measurement:  The Economic Impact of Patent Value", Co-author with Barney, Cardoza, Walker and Gray, Submission to United States Department of Commerce Economics and Statistics Administration, Pursuant to Notice in the Federal Register, Vol. 72, No. 71, 18627, May 11, 2007.

"Objective Patent Valuation", Business Meeting, Association of Corporate Patent Counsel, Newport, Rhode Island, June 27, 2007.

"Intellectual Property Exchange Chicago", a two-day symposium presented by The National Knowledge & Intellectual Property Management Taskforce and The Center for Applied Innovation, Moderator and Speaker, July 17 – 18, 2007, Chicago.

"Start-up Stories: Tales from the Front Line", TiE Midwest, August 1, 2007, Chicago.

Keynote Address, Notre Dame Financial Executives Alumni Conference, September 21, 2007, South Bend, Indiana.

"The Birth of an IP Marketplace", Missouri Bar Association Seminar, November 2, 2007, St. Louis, Missouri.

"Market Forces and IP", The Giles S. Rich American Inn of Court, Howard University, January 17, 2008.

"Market for Technology:  Challenges and Opportunities", Panel Discussion on Impediments to Technology Markets, Duke University's Fuqua School of Business, February 20, 2008.

"IP Markets – An Intangible Walk Down Wall Street", Keynote Address, Securities Industry and Financial Markets Association, March 11, 2008, New York.

"Patent Valuation, Is there One or Many?", Mini-Plenary Session of the High Tech Sector, The Licensing Executives Society International Annual Meeting, May 7, 2008, Chicago.

"What is Patent Quality – A Merchant Banc's Perspective", with Jonathan A. Barney, *les Nouvelles*, June 2008, p. 123 – 134.

"Intangibles in the Firm and Financial Markets", *Intangible Assets: Measuring and Enhancing Their Contribution to Corporate Value and Economic Growth*, The National Academies, Washington DC, June 23, 2008.

"Developing IP Markets:  Opportunity for the Financial Services Industry", Keynote Address, The 5th Annual Patents & The Financial Services Industry Symposium, New York, July 29, 2008.

"New Trends in Monetizing IP Rights:  Trolls, Licensing and Securitization", Managing *Intellectual Property* Webinar, September 3, 2008.

"Magnificent Mile – Shopping for the Ideal IP Expert", DRI Intellectual Property Litigation Seminar, September 4-5, 2008, Chicago.

From Assets to Profits: Competing for IP Value and Return, Contributing Author, Edited by Bruce Berman, John Wiley & Sons, November 2008.

Ocean Tomo:  The New Kid on the (Auction) Block is All Grown Up, Institute for Law and Technology, 46th Annual Conference on Intellectual Property Law, November 10 – 11, 2008, Plano, Texas.

Federal Trade Commission:  The Evolving Intellectual Property Marketplace, Keynote Address, Public Hearings, April 17, 2009, Washington, DC.

"Protecting and Commercializing New Ideas", CoreNet Global Chicago Chapter Meeting, Chicago, May 13, 2009.

"The Future of the IP Marketplace", Moderator and Plenary Speaker, IP Markets 2009, Chicago, July 23, 2009.

"Staying Ahead of the Curve – Strategic Intelligence, Value Assessments and Monetization in a Highly Competitive Economy", The 6th Annual Patents & The Financial Services Industry Conference, New York City, July 28-29, 2009.

"Helping Companies in a Down Economy: Strategic Planning for Identifying and Valuing Your IP", American Bar Association Annual Meeting, Chicago, July 31, 2009.

"Managing IP During Uncertain Times", NanoBusiness Alliance Conference, Chicago, September 8, 2010.

National Economic Framework for Intellectual Property Based Commerce, A Research Report by the National Knowledge & Intellectual Property Management Taskforce, Net Worth Press, 2009.

"The Role of IP in Tough Economic Times and How to Use it to Your Advantage:  Corporate Recovery and Restructuring", Licensing Executives Society Annual Meeting, San Francisco, October 19, 2009.

"Global IP Market Development", 11th Annual Utah IP Summit, Salt Lake City, February 13, 2010.

"Law, Economics, Business and Policy Implications for Innovation and Competition of Diverse Business Models for Using Patents", Stanford University Hoover Institution Annual Conference, Stanford, California, June 25, 2010.

"Establishing an Objective Value of IP", IPO Annual Meeting, Atlanta, September 14, 2010.

"Intellectual Property and the Marketplace:  Hot Topics Impacting the Role of Patents, Trademarks and Copyrights in Today's Business World", Vedder Price Illinois Continuing Legal Education Forum, Chicago, October 6, 2010.

"IP Essentials for the Chief Executive Officer", Illinois Technology Association, Chairman's Dinner Keynote Speaker, Chicago, October 20, 2010.

"Valuation of IP in Emerging Market Platforms", 2010 IP Damages Institute, CalCPA Education Foundation, Los Angeles, November 8, 2010.

"Shifting Sands:  What is Discoverable and Admissible for Damages, Willfulness and Other Purposes", Intellectual Property Owners Association CLE Roundtable, Washington, DC, March 21, 2011.

"Intellectual Property: From Asset-to-Asset Class", Intellectual Property Strategies for the 21st Century Corporation, Bryer, Lebson & Asbell Editors, John Wiley & Sons, Inc., 2011.

"The Next Big Think in Monetizing IP: A Natural Progression to Exchange-Traded Units", Ian D. McClure co-author, *LANDSLIDE*, A Publication of the ABA Section of Intellectual Property Law, Volume 3, Number 5, May/June 2011, pp. 32-37.

"Risk Management Strategies to Defend Against Patent Trolls and the New Trend in Patent Royalty Trusts", 2011 Congress on Patent Strategies for the Financial Services Industry, New York, September 19-20, 2011.

"Patent Quality and its Impact on Valuation", Licensing Executives Society United States and Canada, Inc., Annual Meeting, San Diego, October 17, 2011.

Introduction, "LESI Global Technology Impact Forum (GTIF) Creates Tech Transfer Platform", *les Nouvelles*, Journal of the Licensing Executives Society International, Volume XLVII No. 2, June 2012.

Panelist, "IP Monetization", McDermott Will & Emery 2012 Intellectual Property Symposium, Chicago, June 14, 2012.

Keynote Address, Northwestern Law Fifth Annual Conference on Entrepreneurship and Innovation, Chicago, June 14, 2012.

"IP Market Development", 38th Annual Intellectual Property Law Summer Institute, Sponsored by the Intellectual Property Law Section of the State Bar of Michigan, Traverse City, Michigan, July 21, 2012.

"An Investors' Perspective on IP", CenterForce IP Strategy Summit, New York City, New York, November 13, 2012.

"Investing in IP", DealFlow Media Webinar, January 10, 2013.

"Evolving IP Marketplace", American Intellectual Property Law Association, Mid-Winter Meeting, Tampa, Florida, February 1, 2013.  Includes paper: *New Emphasis on the Analytical Approach of Apportionment In Determination of a Reasonable Royalty* by James E. Malackowski, Justin Lewis and Robert Mazur.

"An Inventor's Walk Down Wall Street", PatCon 3 at Illinois Institute of Technology Chicago-Kent School of Law, Chicago, April 12, 2013.

*Report on Judge Rader Comments at the 2013 LESI Annual Conference*, LES Global News, Vol. XLVIII No. 2, June 2013.

"Strategic Insights", Plenary Panel Discussion, IPBC 2013, IP Business Congress, Boston, June 9, 2013.

"IP and Antitrust", Panel Discussion, McDermott 2013 IP Symposium, June 13, 2013, Chicago.

*IP Investments and Markets* Presented by the Center for Applied Innovation, Panelist on IP Marketplace, Chicago, June 25-26, 2013.

*Capturing Innovation*, Irish Entrepreneurs:  An Affiliate Group of the Notre Dame Club of Chicago, Chicago, September 5, 2013.

*Preventing the Napsterization of 3D Printing:  Areas for Industry Collaboration and Transparency*, Inside 3D Printing Conference and Expo, San Jose, California, September 18, 2013.

*The Latest Thinking about Non-Practicing Entities*, 2013 AIPLA Annual Meeting, Washington, DC, October 25, 2013.

*Challenges and Opportunities in Asia*, Think Asia, Think Hong Kong: IP, Technology & China/U.S. Opportunities, The Hong Kong Business Association of the Midwest, Chicago, November 19, 2013.

*Rationalizing Remedies,* The 2013 Patent Institute presented by Cravath Swain & Moore, New York, December 5, 2013.

*Special Address:  Looking to the Future of the Intellectual Property Marketplace – Where Will We Be in 2020?,* Best Practices in Patent Monetization, Law Seminars International, San Francisco, March 6-7, 2014.

*Reinventing Finance:  Funding Innovation Beyond Silicon Valley*, Forbes Reinventing America Summit, Chicago, March 27-28, 2014.

*IP Pricing – Current Issues for Markets and Courts*, Georgia State University / Licensing Executives Society Joint Meeting, Atlanta, May 28, 2014.

*The Growing Global 3DP IP Market & How Much Is At Stake*, 3D Printing Politics, Washington D.C., September 17, 2014.

*The Changing Role of the Expert*, 2014 IP Institute presented by the Engleberg Center on Innovation Law & Policy at New York University and Cravath, Swaine & Moore, LLP, New York, December 4, 2104.

"Intellectual Property Exchange", Dallas Chapter Meeting of the Licensing Executives Society (USA & Canada), Inc., Dallas, January 22, 2015.

"Actavis, Valuation, and Fairness Opinions", 2015 Generic Pharmaceutical Association Annual Meeting, Miami, February 9-11, 2015.

Patent Damages Roundtable, USC Gould School of Law 2015 Intellectual Property Institute, Los Angeles, March 23, 2015.

"Intellectual Property Impact on M&A", Transaction Advisors Midwest Symposium, Chicago, September 17, 2015

"The Changing Landscape of Patent Value and Patent Risks", 2016 Berkeley Law / Cleary Gottlieb M&A-IP-Antitrust Conference, Berkeley Center for Law, Business and the Economy, San Francisco, January 29, 2016.

"Damages Experts on Evidence and Gatekeeping", The University of Texas School of Law Conference on Patent Damages, Austin, Texas, June 9-10, 2016.

"Investing In Innovation: Global Trends In Innovation and Sustainability", CFA Society of Chicago, Chicago, September 28, 2016.

IP Remedies Roundtable and Workshop, USC Gould School of Law 2017 Intellectual Property Institute, Los Angeles, March 20, 2017.

"Economic Tools Used for Damages Estimation", Panel Discussion, Intellectual Property Owners Association, Chicago, June 7, 2017.

"Quantitative Approaches to Determining FRAND Royalties", Intellectual Property Owners Association Annual Meeting, San Francisco, September 18, 2017.

"The Intersection of Intellectual Property, Blockchain and Cryptocurrency", Licensing Executives Society International Annual Conference, San Diego, April 30, 2018 – May 1, 2018.

"Best Practices and Useful Tools for Assessing the Value of Your Company's IP", American Intellectual Property Law Association 2018 Spring Meeting, May 15 - 17, 2018.

"Practical Blockchain", IDEA Week Innovation Festival, South Bend, Indiana, April 8, 2019.

"Blockchain Primer," Introductory Remarks by Hon. Kara F. Stoll, The Giles S. Rich American Inn of Court, Washington D.C., February 11, 2020.

*Managing Your Intellectual Property*, LESI Business Briefings, Series Co-author, May 2020.

"IP Transaction Ecosystem: An Update on Market Activity", LES USA & Canada, Inc., Greater Washington D.C. Chapter, September 9, 2021.

"Judicial Perspectives on Using Damages Specialty Experts", Intellectual Property Law Association of Chicago, Litigation Committee, September 15, 2021

"Global Patent Issues", Plenary Panel, University of Illinois Chicago 65th Annual IP Law Conference, UIC School of Law, Chicago, November 4, 2021.

"Issue 6: Damages.  What are the proper standards for the admissibility of expert testimony regarding patent damages?  What are the proper uses for licenses in a patent damages analysis?", Panelist, The Naples Roundtable, a part of the Leahy Institute, February 17-18, 2025.

"*Peeling Back the Value: Why Art is Worth More Than Meets the Eye*", with Erin Hollenbank, Claims Journal, March 15, 2025.

*"Evolving Landscape of Technology Rights Enforcement"*, with Cole Kartman, CVA, JD Supra, April 24, 2025.

*"The Impact of Counterfeit Goods in Global Commerce"*, with David Fraser, Matthew Brown, JD Supra, June 3, 2025.

*"EcoFactor Should Remind Damages Experts They Are Not Mind Readers"*, with Cole Kartman, IAM, Law Business Research Company, June 16, 2025.

*"Trade Secret Protection in the Age of Large Language Models: Risks, Reasonable Measures, and Legal Remedies"*, with Robert McSorley, JD, CPA, JD Supra, June 25, 2025.

*AI AS INTELLECTUAL PROPERTY: A Strategic Framework for the Legal Profession*, with Eric Carnick, JD Supra September 18, 2025.

*"Increasing Exit Multiples:  IP and AI Asset Management in M&A Transactions",* with Angelica Hofmann, The M&A Journal, Vol. 24 No. 8, October 21, 2025.

*AI AS INTELLECTUAL PROPERTY: A Framework for Boards, Executives, and Investors*, with Eric Carnick and David Ngo, JD Supra November 26, 2025.

*AI IN INSURANCE: Innovation, Exposure, and the New Frontier of Claims and Liability*, with Jonathan Held, Katie Twomey, Mike Guadet, JD Supra January 2026.

---

**INTERNATIONAL SPEECHES AND PUBLICATIONS**

"Taxation Issues when Licensing with the U.S.", Licensing Executives Society International, South Africa Conference, January 28, 1996.

"Intellectual Property Damages: Advanced Case Studies", Licensing Executives Society Annual Meeting, Puerto Rico, September 30, 1996.

"License Agreement Royalty Audits: Untapped Riches Or Fool's Gold?", Licensing Executives Society Annual Meeting, Puerto Rico, October 1, 1996

"Valuation of IPR", Conference on Appeals Related to Intellectual Property, Bucharest, Romania, November 20, 1997.

"Avaliacao e Contabilizacao de Propriedade Intellectual – Metodologia e Aspectos Fiscais", XIX Seminario Nacional de Propriedade Intellectual, Rio de Janeiro, Brazil, August 16, 1999.

"Avaliacao e Contabilizacao de Propriedade Intelectual", Conferencia pela Consulate General of the United States of America, Sao Paolo, Brazil, August 18, 1999.

"Avaliacao e Contabilizacao de Propriedade Intelectual", Conferencia pela Consulate General of the United States of America, Curitiba, Brazil, August 20, 1999.

"IP Valuation Trends", Licensing Add-on Seminar, LESI Annual Conference, Krasnapolsky, Amsterdam, Netherlands, May 21, 2000.

"Intellectual Property from a Board Room Window", Plenary Session II LESI Strategies, LESI Annual Conference, Krasnapolsky, Amsterdam, Netherlands, May 23, 2000.

"Due Diligence in an Intellectual Capital Focused Investment", LES Annual Conference Add-on Session, Toronto, September 14, 2000.

"What's New in Intellectual Property Asset Management", Panel Discussion, 8th Annual Intellectual Property Law Institute, State Bar of Georgia,  Puerto Vallarta Mexico,  November 15, 2002.

"Les brevets en tant qu'actifs economiques: comment les exploiter au mieux" and "Brevets et financement: couvrir les couts, trouver des investisseurs", Un System Du Brevet Competitif Pour L'Europe,  sponsored by the European Patent Office, Brussels, May 3-4, 2006.

"What is Patent Quality?", Co-author with Jonathan A. Barney, Paper Presented to the Colloquium on a Comprehensive Approach to Patent Quality, Federation Internationale Des Conseils En propriete Industrielle, Amsterdam, June 8-9, 2007.

"Fostering Innovation with Seed Money and Venture Capital", Licensing Executives Society International Annual Conference, Zurich, June 19, 2007.

"Legal Problems Arising from Auctioning of IPR", Bi-Annual International Forum, Association Internationale Pour La Protection De La Propriete Intellectuelle, October 6, 2007.

"IP Auctions", Plenary Address, The Licensing Executives Society Annual Meeting, October 16, 2007, Vancouver, Canada.

"IP Valuation for IPO's", Warsaw Stock Exchange Executive Conference, June 27, 2008, Warsaw, Poland.

"IP As A Business Tool", Licensing Executives Society International Conference, January 29-30, 2009, New Delhi, India.

"Global IP Market Development", Keynote Address, The Licensing Executives Society Australia and New Zealand, April 2-4, 2009, Camberra, Australia.

"Global IP Market Development", The Licensing Executives Society Philippines, June 8, 2009, Manila, Philippines.
Entwicklung einer Infrastruktur im Blickpunkt, Der Intellectual Property Exchange, *IP Manager: Journal for the Knowledge Economy*, 01/2009.

"Global IP Market View", Division des Analyses Economiques et des Statistiques, Organization de Cooperation et de Developpement Economiques, January 8, 2010, Paris, France.

"Global IP Market View", BusinessEurope Patents Working Group Meeting, The Confederation of European Business a.l.a.b.l., January 28, 2010, Brussels, Belgium.

"Global IP Market View", Inaugural Annual Conference, LES Turkey, January 29, 2010, Istanbul, Turkey.

"Commercialization Strategies for Industrial Property Assets", LES Brazil Annual Congress, January 28, 2011, Rio de Janeiro, Brazil.

"Developing Commercial IP Markets", LES Arab Countries and Abu Dhabi Higher Colleges of Technology Seminar, October 12, 2011, Abu Dhabi, UAE.

"Asian IP Market Development", LES Asia Pacific Meeting, LES Singapore, November 9-10, 2011, Singapore.

"Patent Auctions & Technology in an Emerging Global Economy", LES Philippines, November 16, 2011, Manila.

"Tech Transfer for Humanitarian Purpose", LESI Annual Conference, April 2, 2012, Auckland.

Moderator, "New Challenges in ICT: How to Compete Using IP Assets", LES Pan European Meeting, Rome, June 12, 2012.

Workshop Panelist, "Accelerate Licensing & Avoid Litigation: Effective Use of Transparency, Investors & Risk Management Tools", LES Pan European Meeting, Rome, June 12, 2012.

Keynote Speech, "Research Trends Around the Globe on Licensing", LES Asia Pacific Regional Conference, Tokyo, Japan, September 3, 2012.

"Investing in IP and Developing IP Monetization and Risk Markets: U.S. Perspective", LES Scandinavia Annual Meeting, Helsinki, Finland, September 12, 2012.

"El Mercado Global De Tecnologia", LESI Innovation Tour, LES Mexico and Asociacion Mexicana de Directivos de la Investigation Aplicada y el Desarrollo Tecnologico, A.C., Mexico City, Mexico, September 21, 2012.

Research Handbook on Intellectual Property Licensing, Forward, Jacques de Werra, University of Geneva, Editor, Edward Elgar Publishing, 2012.

"Markets for Humanitarian Technology Transfer" and "Adoption by Resolution of LESI IP Business Principles", LESI Global Technology Impact Forum, Geneva, Switzerland, January 22, 2013.

Forward, Research Handbook on Intellectual Property Licensing, Edited by Jacques de Werra, Edward Elgar Publishing Limited, 2013.

"IP Market Development" / "Simplicity in Global IP Valuation", LESI Annual Conference, Rio de Janeiro, Brazil, April 10, 2013.

"Collaboration for IP Based Accounting and Reporting", LESI Global Technology Impact Forum, Geneva, Switzerland, January 20-21, 2014.

"IP Licensing and Intermediaries", LES Asia-Pacific Regional Conference, Seoul, Korea, November 4-6, 2014.

"Building IP Transaction Platforms", Keynote Presentation, 14th Annual Shanghai International Intellectual Property Forum, Hosted by the World Intellectual Property Organization, (Shenzhen, China, December 7, 2017 as an advance local presentation) Shanghai, China, December 13, 2017.

"Building and Enforcing a Global Portfolio for Protection and Monetization", Moderator, 2018 LES IP100 Executive Forum, Phoenix, Arizona, February 15-16, 2018.

"Valuation of IP In the Eye of the Beholder" and "IP Monetization Lifecycle", Moderator, Inaugural IP Conference on Issues that Make a Difference, University of Arizona Law, Tucson, Arizona, March 5-6, 2018.

Best Practices and Useful Tools For Assessing the Value of IP, Co-authored with Mick Baciu and Drew Sills, American Intellectual Property Law Association 2018 Spring Meeting, Seattle, Washington, May 15-17, 2018.

"Toward Early Dispute Resolution of Standard Essential Patents in the 5G Era", International Arbitration Center Tokyo, Mock Arbitration, Tokyo, Japan, June 29, 2018.

"Practical Blockchain", LESI Annual Conference, Yokohama, Japan, May 28, 2019.

"Managing Your Intellectual Property", LESI Business Briefing Report, published by the Licensing Executives Society International, Inc., Copyright 2020.

"Managing Your Intellectual Property", Rigorous Empirical Research on Intellectual Property, virtual presentation by 4iP Council and the Licensing Executives Society International, September 29, 2020.

"A Global Economic Framework for Intellectual Based Commerce", World IP Forum, India, April 30, 2021.

"Growth Financing", European Patent Office High-Tech Business Forum, European Patent Academy, October 28, 2021.

European Patent Office / Licensing Executives Society International, HTB Forum on IPR for Growth Financing, March 17, 2025.

---

**TELEVISION, RADIO AND EDITORIAL**

Bloomberg Morning Call with Brian Sullivan, "Patent Auctions", March 3, 2006.

CNBC Closing Bell, "Patents for Purchase", Interview with Maria Bartilomo, April 4, 2006.

CNBC On the Money, "Patents for Sale", Interview and Report by Scott Wapner, April 7, 2006.

Bloomberg Morning Call with Brian Sullivan, "Ocean Tomo 300 Index" and "Fall Intellectual Property Auction", September 13, 2006.

CBS WBBM-AM News Radio with Andy Giersher, Noon Business Hour, "New Stock Market Index", December 2, 2006 plus repeats.

Bloomberg Evening *Market Pulse* with Pimm Fox, "Stock Selections with Strong Patents", January 9, 2007.

Judge, *Everyday Edisons: Ordinary People, Extraordinary Ideas*, a Public Broadcasting System documentary series, 2nd Season, to be aired 2008.

Bloomberg Final Word with Brian Sullivan, "Changes in IP Laws Affect Stock Price", March 10, 2008.

FOX Business National, "Investing in Patents", June 5, 2008.

"It's the auto technology, Congress", *The Detroit News*, detnews.com, December 2, 2008.

FOX Business National, "Capturing Value from IP During a Recession", January 12, 2009.

FOX Business National, "The Value of Technology and Patents in a Chrysler Bankruptcy", May 1, 2009.

FOX Business National, "Exchange Looks to Value Patents", October 5, 2009.

TV Tokyo, "IP Markets, October 4, 2010.

FOX Business National, "Patent Litigation Trends", October 4, 2010.

CNBC Street Signs, "Patent-Palooza", July 26, 2011.

CNBC Street Signs, "Patent Battleground", August 15, 2011.

CNBC Street Signs, "IPXI: Trading Patents in 2012", December 14, 2011.

CEO IntroNet, May 16, 2012.

CNBC Street Signs, "Research In Motion's Patent Portfolio, May 30, 2012.

Crain's Chicago Business, Chicago Business Video, "Preview of the Eureka Index", April 25, 2013.

CNBC Street Signs, "Valuing Intangible Assets", August 5, 2013.

Chicago Tribune Blue Sky Innovation, "Why Robots Roam the Halls…", July 16, 2014.

CNBC Worldwide Exchange, "The Big Battle Over Intellectual Property:  U.S. – China Trade Tariffs and IP", March 26, 2018.

IP Fridays Podcast with Dr Rolf Claessen, "The Ocean Tomo Story", Jan 31 2025.

---

**EXPERT TESTIMONY**

01 Communique Laboratory, Inc. v. Citrix Systems, Inc. & Citrix Online, LLC
Civil Action 1:06-CV-0253 (N.D. Ohio)
United States District Court for the Northern District of Ohio
Deposition Testimony

Abiomed Inc. v. Maquet Cardiovascular LLC
No. 1:16-cv-10914-FDS
United States District Court for the District of Massachusetts
Deposition Testimony

ABS Global, Inc. v. Inguran, LLC d/b/a Sexing Technologies and XY, LLC v. Genus, PLC
Civil Action: 14-cv503-wmc
United States District Court for the Western District of Wisconsin
Trial and Deposition Testimony

Acadia Research Group, LLC and Lifeport Sciences, LLC v. Boston Scientific Corporation
AAA File No. 02-15-0004-9460
American Arbitration Association
Hearing and Deposition Testimony

Acantha LLC v. DePuy Synthese Sales, Inc., DePuy Synthes Products, Inc., DePuy Synthes, Inc., Johnson & Johnson, Inc. Synthes, Inc. Synthes USA, LLC, DePuy Orthopaedics, Inc. and DePuy Spine, LLC
Case No. 1:15-cv-01257-WCG
United States District Court for the Eastern District of Wisconsin Green Bay Division
Trial and Deposition Testimony

Acorda Therapeutics, Inc. v. Alkermes PLC
Case No. 01-20-0010-8421
American Arbitration Association
Hearing and Deposition Testimony

Advanced Accelerator Applications USA, Inc. et al v. Curium US LLC et al. and Lantheus Medical Imaging Inc. et al.
Case No. 24-1161-MN and 24-95- MN
United States District Court for the District of Delaware
Trial and Deposition Testimony

Advanced Aerospace Technologies, Inc. v. The United States of America and The Boeing Company and Institu, Inc.
Case No. 12-85C
United States Court of Federal Claims
Deposition Testimony

Advanced Micro Devices, Inc. and ATI Technologies, ULC v. Samsung Electronics Co. Ltd. et al.
No. CV-08-0986-SI
United States District Court for the Northern District of California San Francisco Division
Deposition Testimony

Advanced Technology Materials, Inc. v. Praxair, Inc.,
Civil Action No.03 CV 5161 (RO)
United States District Court for the Southern District of New York
Deposition Testimony

A.I.T. Industries, Inc., f/k/a Photocentron, Inc. v. Yordan Vurich and Opti-Vue, Inc.
Civil Action No.94-C-5196
Deposition Testimony

Allan Stimmel v. Eugene Weiner, Kurt Gutfreund and M & L International, Inc.
Civil Action No. 89 C 6510 (ACW)
United States District Court for the Northern District of Illinois, Eastern Division
Deposition Testimony

Allscripts Healthcare, LLC v. DR / Decision Resources, LLC
Case No. 1:19-cv-11038
United States District Court for the District of Massachusetts
Trial and Deposition Testimony

Allele Biotechnology and Pharmaceuticals, Inc. v. Regeneron Pharmaceuticals, Inc.
Case No. 7:20-cv-08255-PMH
United States District Court for the Southern District of New York
Deposition Testimony

Altana Pharma AG and Wyeth v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries Ltd., et. al.
Civil Action No. 04-2355
United States District Court for the District of New Jersey
Deposition Testimony

Altria Client Services LLC and U.S. Smokeless Tobacco Company LLC v. R.J. Reynolds Vapor Company and Modoral Brands, Inc.
Civil Action No. 1:20-cv-00472
Trial and Deposition Testimony

Analog Devices, Inc. v. Christopher Michalski, Kiran Karnik and Maxim Integrated Products, Inc.
Case 01 CVS 10614
State of North Carolina Superior Court Division, County of Guilford
Deposition Testimony

Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC and SmithKline Beecham Corporation
Case No. 05-23264-CIV-Graham/O'Sullivan
United States District Court for the Southern District of Florida
Deposition Testimony

Appian Corporation v. Pegasystems Inc. and Youyong Zou
Case No 2020 07216
Virginia: In the Circuit Court of the Fairfax County
Trial and Deposition Testimony

Apple, Inc. v. Masimo Corporation and Sound United, LLC
Masimo Corporation v. Apple, Inc.
C.A. No. 22-1377-MN-JLH
United States District Court for the District of Delaware
Deposition Testimony

Appliance Computing III, Inc. Redfin Corporation
Case No. 6:20-cv-00376-ADA
United States District Court for the Western District of Texas
Trial and Deposition Testimony

Applied Medical Resources Corporation v. Gaya Limited
AAA Case No. 50 133T00316 06
Arbitration Testimony

Arendi S.A.R.L. v. Apple Inc.
Case No. 1:12-cv-01596
United States District Court for the District of Delaware

Deposition Testimony

Arthur Takeall v. PepsiCo, Inc.
Civil Action S92-766
United States District Court for the District of Maryland
Deposition Testimony

Ashley Furniture Industries v. Laura Ashley Holdings Plc and Laura Ashley, Inc.
AAA File No. 51 133 Y 01056 08
American Arbitration Association
Arbitration and Deposition Testimony

Asus Technology Licensing Inc. & Celerity IP, LLC v. AT&T Corp, AT&T
Mobility LLC, AT&T Mobility II LLC and AT&T Services, Inc.
United States District Court for the Eastern District of Texas Marshall Division
C.A. No. 2:23-cv-00486
Deposition Testimony

Atlantic Richfield Company, Chevron U.S.A., Inc., Exxon Corporation, Mobil
Oil Corporation, Shell Oil Products Company and Texaco Refining &
Marketing, Inc. v. Unocal Corporation and Union Oil Company of California
and  Union Oil Company of California v. Atlantic Richfield Company, Chevron
U.S.A., Inc., Exxon Corporation, Mobil Oil Corporation, Shell Oil Products
Company and Texaco Refining & Marketing, Inc.
Civil Action No. CV-95-2379 KMW(JRx)
Trial and Deposition Testimony

Avery Dennison Corp. et al v. FLEXcon Company, Inc.
Civil Action No. 96-C 4820
United States District Court for the Northern District of Illinois, Eastern
Division
Deposition Testimony

Aylus Networks, Inc. vs. Apple, Inc.
Case No. 3:13-cv-4700
United States District Court for the Northern District of California
Deposition Testimony

Bath & Body Works Brand Management, Inc. v. Summit Entertainment, LLC
Case No. 11 Civ 1594 (GBD)
United States District Court for the Southern District of New York
Deposition Testimony

Baxalta Inc. and Baxalta, GMbH v. Genentech, Inc.
C.A. No. 17-cv-00509-TBD
United States District Court for the District of Delaware
Deposition Testimony

Baxter International Inc. and Baxter Healthcare Corp. v. CyDex
Pharmaceuticals, Inc.
AAA Case No. 01-21-0002-6106
American Arbitration Association

Deposition Testimony

Bayer Pharma AG, Bayer Intellectual Property GMBH and Bayer Healthcare
Pharmaceuticals, Inc. v. Watson Laboratories, Inc.
Civil Action No 12-517-GMS
United States District Court for the District of Delaware
Trial and Deposition Testimony

Beloit Corp v. Voith, Inc. & J.M. Voith GmbH
Civil Action No. 92 C 0168 C
United States District Court for the Western District of Wisconsin
Trial and Deposition Testimony

Bio-Rad Laboratories, Inc. and the President and Fellows of Harvard College v.
10x Genomics, Inc.
Case No. 1:19-cv-12533
United States District Court for the District of Massachusetts
Deposition Testimony

Bio-Rad Laboratories, Inc., the University of Chicago, Lawrence Livermore
National Security, LLC and Fellows of Harvard College v. Stilla Technologies,
Inc and Stilla Technologies
Case No. 1:19-cv-11587
United States District Court for the District of Massachusetts
Deposition Testimony

Bio-Rad Laboratories, Inc. and the University of Chicago v. 10x Genomics, Inc.
Case No. 15-152-RGA
United States District Court for the District of Delaware
Trial and Deposition Testimony

BioNTech SE and Pfizer Inc., Petitioners v. Moderna TX, Inc., Patent Owner
Case IPR2023-01358 / Patent No. 10,702,600
Case IPR2023-01359 / Patent No. 10,933,127
United States Patent and Trademark Office Before the Patent Trial and Appeal
Board (PTAB)
Deposition Testimony

Board of Trustees of the Leland Stanford Junior University and Litton Systems,
Inc. v. Tyco International LTD., Tyco International, Inc., Tyco
Telecommunications, Inc, Tyco Networks, Inc., Lucent Technologies, Inc.,
Agere Systems, Inc., JDS Uniphase Corporation, Ciena Corporation, Pirelli
S.p.A., Ericsson, Inc., Telefonaktiebolaget Lm Ericsson and Ericsson
Microelectronics Ab, Optoelectronic Products.
Case No. Cv-00-10584-TJH (RCx)
United States District Court for the Central District of California – Western
California
Deposition Testimony

Bracco Diagnostics, Inc. v. Amersham Health Inc., Amersham Health AS,
Amersham plc and Amersham Health Inc. v. Bracco Diagnostics, Inc.
Civil Action No. 03-6025

United States District Court for the District of New Jersey
Trial and Deposition Testimony

Brian D. Zdeb, et al v. Baxter International, Inc.
Civil Action No. 91-L-8726
Appellate Court of Illinois, First District, Sixth Division
Trial and Deposition Testimony

Briggs & Stratton Corporation v. Kohler Company
Case No. 05-C-0025-C
United States District Court for the Western District of Wisconsin
Deposition Testimony

Bristol-Myers Squibb Company v. Apotex Inc. and Apotex Corp.
Civil Action No. 3:10-cv-05810 (MLC)
United States District Court for District of New Jersey
Deposition Testimony

Brocade Communications Systems, Inc. and Foundry Networks, LLC v. A10
Networks, Inc. et al.
Case No. 10-cv-03428 LHK
United States District Court for the Northern District of California San Jose
Division
Trial and Deposition Testimony

Brook + Whittle Ltd. v. Nestle USA, Inc., Fuji Seal International, Inc.
Case No. 2:24-cv-00735-JRG-RSP
United States District Court for Eastern District of Texas Marshall Division
Deposition Testimony

Callpod, Inc. v. GN Netcom, Inc. et al.
Case No. 06-CV-4961
United States District Court for the Northern District of Illinois Eastern Division
Deposition Testimony

CareDx, Inc. v. Natera, Inc.
Case No. 1:19-cv-00662-CFC-CJB
United States District Court for the District of Delaware
Trial and Deposition Testimony

CareFusion 303 v. Sigma International
Case No 10cv0442 DMS (WMC)
United States District Court for the Northern District of California
Trial and Deposition Testimony

Carter Bryant v. Mattel, Inc. and Consolidated Actions
United States District Court for the Central District of California Southern
Division
Case No. CV 04-9049-DOC (RNBx)
Consolidated with Nos. CV 04-9059 and CV 05-2727
Trial and Deposition Testimony

Catalina Marketing Corp. v. Advanced Promotion Technologies, Inc.
Civil Action No. CV 93-4741 WJR (Sx)
Deposition Testimony

Caterpillar Inc. v. International Truck & Engine Corp., Siemens Diesel Systems
Technology, LLC, Sturman Industries, Inc., Sturman Engine Systems, LLC,
Oded E. Sturman and Carol K. Sturman
United States District Court for the District of South Carolina, Columbia
Division
Case No. 3:03-1739-17
Deposition Testimony

Catherine Alexander v. Take-Two Interactive Software, et al.
United States District Court for the Southern District of Illinois East St. Louis
Division
Civil Action No. 3:18-cv-966-MJR-MAB
Trial Testimony

CEATS, Inc. v. Continental Airlines, Inc., AeroSvit Airlines, CJSC, Air China,
Ltd., Air Europa Lineas Aereas, SAU, AirTran Airways, Inc., Alaska Airlines,
Inc., Horizon Air Industries, Inc., All Nippon Airways Co., Ltd., Aerovias Del
Contenente Americano SA, Brendan Airways, LLC, Caribbean Airlines, Ltd.,
Delta Air Lines, Inc., EgyptAir Airlines, Co., Frontier Airlines, Inc., JetBlue
Airways Corporation, Malaysia Airline System Berhad, Qatar Airways
Company QCSC, Alia Royal Jordanian, PLC, TAM, SA, Thai Airways
International Public Co., Ltd., United Air Lines, Inc., US Airways, Inc., Virgin
America, Inc.
Case No. 6:10-cv-120 LED
United States District Court for the Eastern District of Texas Tyler Division
Trial and Deposition Testimony

CEATS, Inc. v. Granada Theater, Live Nation Worldwide, Inc., Ticketmaster, LLC,
Tickets.com, Inc., Ticket Software, LLC, Ticket Network, Inc., TicketsNow.com,
Inc., TNow Entertainment Group, Inc., Concur Technologies, Inc.
Case No. 6:10-cv-120 LED
United States District Court for the Eastern District of Texas Tyler Division
Trial and Deposition Testimony

Celerity IP LLC, Asus technology Licensing Inc., and Innovative Sonic Ltd. v.
AT&T Corp, AT&T Mobility LLC, AT&T Mobility II LLC, AT&T Services,
Inc. Cellco Partnership D/B/A Verizon Wireless, T-Mobile USA, Inc. and
Ericsson, Inc.
In the United States District Court for the Eastern District of Texas Marshall
Division
C.A. No. 2:24-cv-00721
Deposition Testimony

Centripetal Networks, Inc. v. Cisco Systems, Inc.
Case No. 2:18-CV-00094-HCM-LRL
United States District Court for the Eastern District of Virginia Norfolk Division
Trial and Deposition Testimony

Centripetal Networks, LLC v. Palo Also Networks, Inc.
No. 2:21-cv-00137-EWH-RJK
United States District Court for the Eastern District of Virginia Norfolk Division
Trial and Deposition Testimony

Cheetah Omni, LLC v. Alcatel-Lucent USA Inc., et al. (on behalf of Tellabs North America, Inc.)
Case No.  6:11CV390
United States District Court for the Eastern District of Texas Tyler Division
Deposition Testimony

Ciba Specialty Chemicals Corporation v. Hercules Inc. and Cytec Industries, Inc.
Civil Action No. 04-293
United States District Court for the District of Delaware
Deposition Testimony

Cisco Systems, Inc. and Cisco Technology, Inc. v. Jedd Williams
In Arbitration before JAMS
Reference No. 1310025030
Deposition Testimony

Cisco Systems, Inc. and Cisco Technology, Inc. v. Plantronics, Inc., et al.
Case No. 4:19-CV-07562
United States District Court for the Northern District of California
Deposition Testimony

Comair Rotron, Inc. v. Matsushita Electric Corporation of America, et al. - New Jersey Action
Civil Action No. 85-4308 (HLS)
Trial and Deposition Testimony

Comet Technologies USA Inc. v. XP Power LLC
Case No. 5:20-CV-06408-NC
United States District Court for the Northern District of California
Trial and Deposition Testimony

Commonwealth Scientific and Industrial Research Organization v. Lenovo (United States) et al.
United States District Court for the Eastern District of Texas Tyler Division
Case No. 6:09-cv-00399-LED
Deposition Testimony

Commonwealth Scientific and Industrial Research Organization v. Cisco Systems, Inc.
United States District Court for the Eastern District of Texas Tyler Division
Case No. 6:11-cv-00343-LED
Trial and Deposition Testimony

Commonwealth Scientific and Industrial Research Organization v. MediaTek Inc., et al.
United States District Court for the Eastern District of Texas Tyler Division
Case No. 6:12-cv-578-LED

Deposition Testimony

Computer Generated Solutions, Inc. v. Peter Loral, Loral Incorporated, PJK, Inc. and Belle Loral, LLC
Civil Action No. 97 Civ. 6298 (MBM)
Deposition Testimony

Confidential Parties
Case No. 01-21-4508
American Arbitration Association
Hearing Testimony

Construction Technology, Inc. v. Cybermation, Inc. et al.
Civil Action No. 91 Civ. 7474 (JSM)
United States District Court for the Southern District of New York
Trial and Deposition Testimony

ControlSoft, Inc, v The Dow Chemical Company
Case No. 1:22-cv-02004-DAP
United States District Court of Ohio Eastern Division
Deposition Testimony

Cordis Corporation v. SciMed Life Systems, Inc.
Case No. CV 4-96-261
United States Court for the District of Minnesota
Deposition Testimony

CoStar Realty Information, Inc. v. Civix-DDI, LLC and Civix-DDI, LLC v. LoopNet, Inc.
Case No. 1:12-cv-04968 (consolidated with 07091 and 08632)
United States District Court for the Northeastern District of Illinois Eastern Division
Deposition Testimony

C.R. Bard v. M3 Systems
Civil Action No. 93 C-4788
Trial Testimony

Crocs, Inc. v. Effervescent, Inc. et al.
Civil Action No. 06-cv-00605-PAB-KMT
United States District Court for the District of Colorado
Deposition Testimony

Cuker Interactive, LLC v. Pillsbury Winthrop Shaw Pittman LLP
AAA Case No. 01-18-0001-5005
American Arbitration Association
Arbitration Testimony

Curtis Amplatz and Carina Royalty, LLC v. AGA Medical Corporation
Court File No. 27-CV-10-27664
State of Minnesota District Court, County of Hennepin, Fourth Judicial District
Trial Testimony

DaiNippon Screen Mfg., Co. Ltd. *et al*. v. Scitex Corp. Ltd. *et al*.
Case No. C 96-3296 FMS
United States District Court for the Northern District of California
Arbitration and Deposition Testimony

Dalmatia Import Group, Inc. and Maia MaGee v. Foodmatch, Inc., Lancaster
Fine Foods, Inc. et al.
Case No. 2:16-cv-02767-EGS
United States District Court for the Eastern District of Pennsylvania
Trial and Deposition Testimony

Dana-Farber Cancer Institute, Inc. v. Bristol-Myers Squibb, Co., E.R. Squibb &
Sons, LLC and Ono Pharmaceutical Co. Ltd.
Civil Action No. 1:19-cv-11380
United States District Court for the District of Massachusetts
Deposition Testimony

Digital-Vending Services International, Inc. v. The University of Phoenix, Inc.
Civil Action No. 2:09-cv-00555
United States District Court for the Eastern District of Virginia
Deposition Testimony

Design Solange, Ltd., Inc. v. Lane Bryant, Inc.
Civil Action No. 94 CIV 1299 (JFK)
United States District Court for the Southern District of New York
Trial and Deposition Testimony

Donald R. Cameron, et al. v. Apple Inc.
Civil Action No. 4:19-cv-03074-YGR
United States District Court for the Northern District of California
Deposition Testimony

DTS, Inc. and DTS Licensing Ltd. v. Nero AG and Nero Inc.
Case No. 2:14-cv-09791-RGK-PJW
United States District Court for the Central District of California
Deposition Testimony

Durel Corporation v. Osram Sylvania, Inc.
Civil Action No. 95-1750 PHx (EHC)
United States District Court for the District of Arizona
Trial and Deposition Testimony

Dynetix Design Solutions, Inc. v. Synopsys, Inc. and Does 1-50
Case No. 5:11-cv-05973-PSG
United States District Court for the Northern District of California
Deposition Testimony

Dyson, Inc. v. Bissell Homecare, Inc.
Case No. 10-cv-08126
United States District Court for the Northern District of Illinois Eastern Division
Deposition Testimony

Earthlink, LLC v. Charter Communications Operating, LLC
Index No. 654332/2020
Supreme Court of the State of New York, County of New York Commercial Division, Part 48
Deposition Testimony

Edward K. Isbey, Jr. v. Cooper Companies, Inc.
Civil Action No. 89-CVS-3776
Supreme Court of North Carolina
Deposition Testimony

Ellison v. The Chicago Heart Association
Civil Action No. 92-K-706
Deposition Testimony

Emblaze Ltd. v. Apple Inc.
Civil Action No. 45:11-cv-01079-SBA (PSG)
United States District Court for the Northern District of California San Jose Division
Trial and Deposition Testimony

Energy Conversion Devices Liquidation Trust v. Ovonyx, Inc., Micron Technology Inc. and Intel Corporation et al.
Case No. 12-43166-TJT
United States Bankruptcy Court, Eastern District of Michigan Southern Division
Deposition Testimony

Enterasys Networks, Inc. v. Extreme Networks, Inc.
Civil Action No. 07-C-0229-C
United States District Court for the Western District of Wisconsin
Trial and Deposition Testimony

Epic Games, Inc. v. Apple Inc.
Civil Action No. 4:20-cv-05640-YGR
United States District Court for the Northern District of California Oakland Division
Trial and Deposition Testimony

Errant Gene Therapeutics, LLC v. Sloan Kettering Institute for Cancer Research and Bluebird Bio Inc.
Index No. 150586/2017
Supreme Court of the State of New York
Trial and Deposition Testimony

Escada Beaute, et al. v. The Limited Inc. et al.
Civil Action No. 92-CIV-7530 (LLS)
United States District Court for the Southern District of New York
Trial and Deposition Testimony

Esquel Enterprises, Ltd., v. TAL Apparel Limited and TALTECH Limited
Civil Action No. C04-974Z

United States District Court for the Western District of Washington at Seattle
Deposition Testimony

EVEMeta, LLC v. Siemens Convergence Creators Corporation, Synacore, Inc.
Case No. 23139/MK
Supreme Court of New York for the County of New York
Deposition Testimony

Express, LLC v. Fetish Group, Inc.
Civil Action No. CV05-2931 SWV (JTLx)
United States District Court for the Central District of California Western
Division
Deposition Testimony

Extreme Networks, Inc. v. Enterasys Networks, Inc.
Civil Action No. 07-C-0229-C
United States District Court for the Western District of Wisconsin
Trial and Deposition Testimony

Facebook, Inc. & Subsidiaries v. Commission of Internal Revenue
Docket No. 21959-16
U.S. Tax Court
Trial Testimony

Fairchild Semiconductor Corporation and System General Corporation v. Power
Integrations, Inc.
Civil Action No. 12-00540
United States District Court for the District of Delaware
Trial and Deposition Testimony

Faye Fish Estate et al. v. Beech Aircraft et al.
Civil Action No. 631333
Deposition Testimony

Ferring Pharmaceuticals Inc., Rebiotix Inc., v. Finch Therapeutics Group, Inc. et
al.
Civil Action No. 21-01694-RGA
United States District Court for the District of Delaware
Trial and Deposition Testimony

FidoPharm, Inc. & Omnipharm, Ltd. v. Cheminova, Inc. A/S
AAA Case No. 50 503 T 00266 12
American Arbitration Association
Hearing Testimony

First Quality Tissue, LLC v. Irving Consumer Products Limited and Irving
Consumer Products, Inc.
Case No. 1:19-cv-00428
United States District Court for the District of Delaware
Deposition Testimony

Footstar, Inc. et al v. Kmart Corporation

Chapter 11 Case No. 04-22350 (ASH)
United States Bankruptcy Court for the Southern District of New York
Deposition Testimony

Fortis Advisors LLC, solely in its capacity as representative of former stockholders of Auris Health, Inc. v. Johnson & Johnson, et al.
C.A. No. 2020-0881-LWW
In the Court of Chancery of the State of Delaware
Trial and Deposition Testimony

Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.
Case No.: CV07-02-962
United States District Court for the Central District for the State of California
Deposition Testimony

Fractus, S.A. v. Samsung Electronics Co. Ltd.; et al (including LG Electronics, Inc. and related parties)
Civil Action No. 6:09cv203
United States District Court for the Eastern District of Texas Tyler Division
Deposition Testimony

Fraunhofer-Gesellschaft Zur Forderlung der Andgwandten Forschung E.V. v. Sirius XM Radio Inc.
Civil Action No. 1:17-cv-00184
United States District Court for the District of Delaware
Trial and Deposition Testimony

Fujitsu Ltd. v. Tellabs, Inc. et al.
Case No. 1:09-cv-04530
United States District Court for the Northern District of Illinois Eastern Division
Trial and Deposition Testimony

FXOne, LLC & Rosario Ingargiola v. Seabury Financial Solutions, et. al
JAMS New York, New York
Arbitration Hearing Testimony

General Mills, Inc. and General Mills IP Holdings II, LLC v. Fage Dairy Industry, S.A., Fage USA Dairy Industry, Inc. and Fage USA Holdings, Inc.
United States District Court for the Northern District of New York
Deposition Testimony

Georgia-Pacific Corp. v. United States Gypsum Co. and L&W Supply Co.
Civil Action No. 94-989-RRM
United States District Court for the District of Delaware
Trial Testimony

Gibson Guitar Corp. v. Heritage Guitar, Inc. and Lasar Music Corp.
Civil Action No. 3-90-0009
Deposition Testimony

Gilberto Arvelo v. American International Insurance
Civil Action No. 93-1287

United States District Court for the District of Puerto Rico
Deposition Testimony

The Gillette Company LLC v. Dollar Shave Club, Inc., Dorco Company Ltd.,
and Pace Shave, Inc.
Case No. 1:15-CV-01158 (LPS)
United States District Court for the District of Delaware
Deposition Testimony

Google LLC v. Anthony Levandowski and Lior Ron
JAMS Ref No. 1100086069
Hearing and Deposition Testimony

Google LLC v. Sonos, Inc.
United States District Court for Northern District of California
Civil Action No. 3:20-cv-06754
Trial and Deposition Testimony

Government Employees Insurance Company v. Google, Inc. and Overture
Services, Inc.
United States District Court, Eastern District of Virginia, Alexandria Division
Civil Action No: 1:04cv507
Deposition Testimony

Group One v. Hallmark
Civil Action No. 97-1224-CV-W-1
United States District Court for the Western District of Missouri, Western
Division
Deposition Testimony

GSI Technology, Inc. v. United Memories, Inc., Integrated Silicon Solution, Inc.
Case No. 13-CV-1081-PSG
United States District Court for the Northern District of California, San Jose
Division
Trial and Deposition Testimony

Guardant Health, Inc. v. Natera, Inc.
Case No. 3:21-CV-04062-EMC
United States District Court for the Northern District of California San
Francisco Division
Trial and Deposition Testimony

hiQ Labs, Inc. v. LinkedIn Corporation
Civil Action No. 3:17-cv-03301
United States District Court for the Northern District of California
Deposition Testimony

Hitachi, Ltd. v. Samsung Display Devices Co., Ltd. and Samsung Display
Devices Co., Inc. and Samsung Electronics Co., Ltd. and Samsung Electronics
America Inc. and Office Depot
Civil Action No. 97-1988-A
United States District Court for the Eastern District of Virginia

Deposition Testimony

Hoechst Celanese Corporation v. Chase Plastic Services and Kevin P. Chase
Civil Action No. 94-75361
United States District Court
Trial and Deposition Testimony

Hoechst Celanese Corporation v. Nylon Engineering Resins, Inc.
Civil Action No. 94-346-CIV-FTM-24D
United States District Court for the Middle District of Florida
Trial Testimony

Huawei Technologies Co. Ltd. v. Verizon Communications, Inc. et al.
Civil Action No. 2:20-cv-00030
United States District Court for the Eastern District of Texas Marshall Division
Trial and Deposition Testimony

ICON Health & Fitness, Inc. v. Peloton Interactive, Inc.
Case No. 1:20-cv-01386-RGA
United States District Court for the District of Delaware
Deposition Testimony

iHance, Inc. v. Eloqua Limited and Eloqua Corporation
Case No. 2;11-CV-257-MSD-TEM
United States District Court for the Eastern District of Virginia Norfolk Division
Deposition Testimony

Illumina, Inc. et. al v. Ariosa Diagnostics, Inc.
Case No 3:14-cv-01921-SI
United States District Court for the Northern District of California
Trial and Deposition Testimony

Immunocept, LLC, Patrice Anne Lee, and James Reese Matson v. Fullbright & Jaworski, LLP
Cause No. A 05 CA 334 SS
United States District Court of Texas, Austin Division
Deposition Testimony

Impact Engine, Inc. v. Google LLC
Case No. 3:19-cv-01301-CAB-DEB
United States District Court for the Southern District of California
Deposition Testimony

In Re Apple iPhone Antitrust Litigation
Civil Action No. 4:11-cv-06714-YGR
United States District Court for the Northern District of California
Deposition Testimony

In Re Gabapentin Patent Litigation
MDL Docket No. 1384 (FSH)
Master Civil Action No. 00-2931 (FSH)

On behalf of Defendants Teva Pharmaceutical Industries Ltd. and IVAX
Corporation and related parties
United States District Court for the District of New Jersey
Deposition Testimony

In Re Nortel Networks Inc. et al. and
In the Matter of the Companies' Creditors Arrangement Act
Case No. 09-10138 (KG) and R.S.C. 1985, c. C-36
United States Bankruptcy Court for the District of Delaware and the Ontario
Superior Court of Justice
Trial and Deposition Testimony

In the Matter of Arbitration Between Open Text, Inc., Claimant, and State
Employee's Credit Union, Respondent
JAMS Arbitration No. 1400015026
Arbitration Testimony

In the Matter of Certain Botulinum Toxin Products, Processes for
Manufacturing or Relating to Same and Certain Products Containing Same
Investigation No. 337-TA-1145
On behalf of Allergan plc, Allergan, Inc. and Medytox Inc.
United States International Trade Commission
Hearing and Deposition Testimony

In the Matter of Certain Computer Network Security Equipment and Systems,
Related Software, Components Thereof, and Products Containing Same
Investigation No. 337-TA-1314
On behalf of Respondent Centripetal Networks, Inc.
United States International Trade Commission
Hearing and Deposition Testimony

In the Matter of Certain Electronic Devices with Graphics Data Processing
Systems, Components Thereof, and Associated Software
Investigation No. 337-TA-813
On behalf of Respondent Apple Inc.
United States International Trade Commission
Deposition Testimony

In the Matter of Certain High-Strength Aluminum or Aluminum Alloy-Coated
Steel, and Automotive Products and Automobiles Containing Same
Investigation No. 337-TA-813
On behalf of Complainant ArcelorMittal
United States International Trade Commission
Hearing and Deposition Testimony

In the Matter of Certain Medical Programmers with Printed Circuit Boards
Components
Investigation No. 337-TA-1396
On behalf of Respondent Axonics, Inc.
United States International Trade Commission
Deposition Testimony

In the Matter of Certain Pre-Filled Syringes for Intravitreal Injection and Components Thereof
Investigation No. 337-TA-1207
United States International Trade Commission
Deposition Testimony

In the Matter of Certain Robotic Floor Cleaning Devices and Components Thereof
Case No. 337-TA-1252
On behalf of the Respondents SharkNinja Operating LLC, SharkNinja Management LLC, SharkNinja Management Company, SharkNinja Sales Company, SharkNinja Hong Kong Co. Ltd., and EP Midco LLC
United States International Trade Commission
Hearing and Deposition Testimony

In the Matter of Certain Semiconductor Chips with Minimized Chip Package Size and Products Containing Same (III)
Investigation No. 337-TA-630
On behalf of Respondents Acer, Nanya and Powerchip
United States International Trade Commission
Hearing and Deposition Testimony

In the Matter of Certain Short-Wavelength Light Emitting Diodes, Laser Diodes, and Products Containing Same
Investigation No. 337-TA-640
On behalf of Respondent Panasonic
United States International Trade Commission
Deposition Testimony

In the Matter of Certain Wearable Activity Tracking Devices, Systems and Components Thereof
Investigation No. 337-TA-973
On Behalf of Complainant Fitbit, Inc.
United States International Trade Commission
Deposition Testimony

In the Matter of Certain Wiper Blades
Investigation No. 337-TA-816
On behalf of Respondents
United States International Trade Commission
Hearing (written) and Deposition Testimony

In re Apple iPhone Antitrust Litigation
Case No. 4:11-cv-06714-YGR
United States District Court for the Northern District of California
Deposition Testimony

Industrial Print Technologies, LLC v. O'Neil Data Systems, Inc. and Hewlett-Packard Company et. al
Case No. 3:15-cv-01100-M, 01101-M, 01103-M, 01104-M and 01106-M
United States District Court for the Northern District of Texas Dallas Division
Deposition Testimony

InLine Connection, Corp v. AOL Time Warner, Inc. and American Online, Inc
Civil Action 02-272
United States District Court for the District of Delaware
Deposition Testimony

InLine Connection, Corp v. Earthlink, Inc.
Civil Action 02-477
United States District Court for the District of Delaware
Deposition Testimony

Innovention Toys, LLC v. MGA Entertainment, Inc., Wal-Mart Stores, Inc. and
Toys 'R Us, Inc.
Civil Action No. 07-6510
United States District Court for the Eastern District of Louisiana
Trial and Deposition Testimony

Intel Corporation v. Future Link Systems, LLC
Civil Action No. 14-377(LPS)
United States District Court for the District of Delaware
Deposition Testimony

InterDigital Technology Corporation v. Motorola, Inc.
Civil Action No. 94-73
United States District Court for the District of Delaware
Trial and Deposition Testimony

International Business Machines Corporation v. Groupon, Inc.
C.A. No. 16-122-LPS-CJB
United States District Court for the District of Delaware
Trial and Deposition Testimony

Invensas Corporation v. Renesas Electronics Corporation and Renesas
Electronics America, Inc.
Case No. 11-cv-00448-GMS
United States District Court for the District of Delaware
Deposition Testimony

Invention Capital Partners v. Phoenix Technologies Ltd., Marlin Equity
Partners, et. al
Case No: 113CV242491
Superior Court of the State of California County of Santa Clara
Deposition Testimony

Isogon Corporation v. Amdahl Corporation
Civil Action No. 97 CIV 6219 (SAS)
United States District Court for the Southern District of New York
Deposition Testimony

J.M. Voith GmbH v. Beloit Corp.
Civil Action No. 93C-0902C
United States District Court for the Western District of Wisconsin

Trial Testimony

J.M. Voith GmbH v. Beloit Corp.
Civil Action No. 93C-0905C
United States District Court for the Western District of Wisconsin
Trial and Deposition Testimony

Jaguar Land Rover Limited v. Bentley Motors Limited and Bentley Motors, Inc.
Case No. 2:18-cv-320-MSD-LRL
United States District Court for the Eastern District of Virginia, Norfolk
Division
Deposition Testimony

Jamdat Mobile, Inc. v. JAMSTER International Sarl, Ltd; JAMBA! GMBH; and
Verisign, Inc.
Civil Action No. CV05-3945 PA (FMOx)
Deposition Testimony

James Hayden v. 2K Games, Inc. and Take-Two Interactive Software, Inc.
Civil Action No. 1:17-cv-02636-CAB
United States District Court for the Northern District of Ohio Eastern Division
Trial and Deposition Testimony

Jenner & Block LLP v. Parallel Networks, LLC and EpicRealm Licensing LP
JAMS Arbitration No. 1310019934
Arbitration and Deposition Testimony

John W. Evans, et al. v. General Motors Corporation
Docket # X06-CV-94-0156090S
Superior Court of Connecticut Judicial District of Waterbury
Deposition Testimony

Joy Recovery Technology Corp. v. The Penn Central Corp. and Carol Cable
Company, Inc., aka General Cable Industries, Inc.
Civil Action No. 93 C 0992
Deposition Testimony

K-Tube Corp. v. Sterling Stainless Tube Corp. et al.
Case No. CV 90 1653 JLQ (M)
Trial and Deposition Testimony

Kay-Cee Enterprises, Inc. v. Amoco Oil Company
Civil Action No. 97-2406 (JWL)
United States District Court for the District of Kansas
Trial and Deposition Testimony

Kennecott Corporation v. Kyocera International
Civil Action No. 80-0516 R (M)
United States District Court for the Southern District of California
Deposition Testimony

Keurig, Inc. v. Kraft Foods Global, Inc., Tassimo Corp., and Kraft Foods Inc.

C.A. No. 07-17 (GMS)
United States District Court for the District of Delaware
Deposition Testimony

Kimberly-Clark Corporation v. Cardinal Health 200, LLC
Civil Action No. 1:10 CV-0034-CAP
United States District Court Northern District of Georgia, Atlanta Division
Deposition Testimony

Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc. and Wake Forest
University Health Services v. Bluesky Medical Group, Inc., Richard Weston,
Medela AG, Medela, Inc., and Patient Care Systems, Inc.
Civil Action SA-03-CA-0832-RG
United States District Court Western District of Texas San Antonio Division
Trial and Deposition Testimony

Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc. and Wake Forest
University Health Services v. Bluesky Medical Group, Inc. and Smith &
Nephew, Inc.
Case No. SA:08-CV-00102-WRF
United States District Court Western District of Texas San Antonio Division
Preliminary Injunction Hearing, Trial and Deposition Testimony

Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc., KCI Medical
Resources, Medical Holdings Limited, KCI Manufacturing and Wake Forest
University Health Sciences v. Convatec, Inc., Boehringer Wound Systems, LLC
and Boehringer Technologies, LP
Civil Action No. 1:08-CV-00918-WO-LPA
United States District Court for the Middle District of North Carolina
Deposition Testimony

Kruse Technology Partnership v. Caterpillar, Inc.
Case No. CV 04-10435
United States District Court for the Central District of California
Deposition Testimony

Kuryakan Holdings LLC v. Ciro, LLC et al
Civ. No. 3:15-CV-00703
United States District Court for the Western District of Wisconsin
Deposition Testimony

Leo Pharma A/S v. Tolmar, Inc. et al.
C.A. No. 10-269 (SLR)
Deposition Testimony

Lincoln Electric Company, et al. v. National Standard, LLC
No. 1:09-cv-01886-DCN
United States District Court of Ohio Eastern Division
Deposition Testimony

LG Electronics Inc. v. Intellectual Ventures I, LLC et. al
C.A. No. N22C-11-145 SKR-CCLD

Superior Court of the State of Delaware
Trial Testimony

LNP Engineering Plastics, Inc. and Kawasaki Chemical Holding Co., Inc. v.
Miller Waste Mills, Inc. trading as RTP Company
Civil Action No. 96-462 (RRM)
United States District Court for the District of Delaware
Trial Testimony

Lotes Co. Ltd. v. Hon Hai Precision Industry Co. Ltd and Foxconn Electronics, Inc.
Civil Action No. 3:11-cv-01036-WHA
United States District Court for the Northern District of California San
Francisco Division
Deposition Testimony

Lucent Technologies Inc. v. Extreme Networks, Inc.
Civil Action No. 03-508 (JJF)
United States District Court for the District of Delaware
Trial and Deposition Testimony

Lunar Corp. & The UAB Research Foundation v. EG&G Astrophysics Research Corp.
Civil Action No. 96-C-199-S
Trial Testimony

Maquet Cardiovascular, LLC v. Abiomed, Inc, & Abiomed R&D, Inc.
Case No. 1:17-cv-12311-FDS
United States District Court for the District Massachusetts
Deposition Testimony

Match Group, LLC v. Bumble Trading Inc. et al.
Civil Action 6:18-cv-00080
United States District Court for the Western District of Texas Waco Division
Deposition Testimony

Matsushita Electric Industrial Co., Ltd. v. MediaTek, Inc., Oppo Digital., and
Micro-Star International Computer Corp.
Case No. C05-03148 MMC
United States District Court for the Northern District of California San
Francisco Division
Deposition Testimony

McKinley v. Zdeb
Civil Action No. 99-S-1178
United States District Court for the District of Colorado
Fact Deposition Testimony

Medgraph, Inc. v. Medtronic, Inc.
Case No. 6:09-cv-06610-DGL-MWP
United States District Court for the Western District of New York
Rochester Division
Deposition Testimony

MedImpact Healthcare Systems, Inc. et al v. IQVIA, Inc. et al.
Case No. 3:19-cv-1865-GPC-DEB
United States District Court for the Southern District of California
Deposition Testimony

Medtronic Xomed, Inc. v. Gryus ENT LLC
Case No.: 3:04CV400-J-32 MCR
United States District Court for the Middle District of Florida
Jacksonville Division
Deposition Testimony

MEI, Inc. v. JCM American Corp & Japan Cash Machine Co. Ltd.
Civil Action No. 09-00351
United States District Court for the District of New Jersey
Deposition Testimony

Meribear Productions, Inc. v. Showroom Interiors, Inc. et. al.
Case No. VC065653
Superior Court of the State of California, County of Los Angeles
Deposition Testimony

Message Phone, Inc. v. SVI Systems, Inc. and Tharaldson Properties
Civil Action No. 379CV-1813H
Trial Testimony

Mexichem Amanco Holdings, S.A. de C.V. v. The Chemours Company and The Chemours Company FC, LLC
Civil Action No. 4:20-cv-01960
Deposition Testimony

MGA Entertainment, Inc. and Isaac Larian v. Hartford Insurance Company of the Midwest, Harford Fire Insurance Company, The Hartford Financial Services Group and Does 1 through 10.
Case No. CV 08-0457 DOC (RNBx)
United States District Court for the Central District of California Southern Division
Deposition Testimony

Military Professional Services, Inc. v. BancOhio National Bank
Civil Action No. 91-5032
Deposition Testimony

Milwaukee Electric Tool Corporation, Metco Battery Technologies, LLC AC (Macao Commercial Offshore) Limited and Techtronic Industries Co. Ltd. v. Snap-On Incorporated
Case No. 2:14-cv-01296
United States District Court for the Eastern District of Wisconsin
Trial and Deposition Testimony

Minebea Co., Ltd., Precision Motors Deutsche Minebea GmbH, and Nippon Miniature Bearing Corp. v. George Papst, Papst Licensing GmbH, and Papst Licensing Verwaltungsgesellschaft MIT Beschrankter Haftung

Civil Action No. 97-CV-590 (PLF)
Trial and Deposition Testimony

Mitek Surgical Products, Inc. v. Arthrex, Inc.
Case No. 1:96CV 0087S
United States District Court for the District of Utah, Central Division
Deposition Testimony

Mitsubishi Electric Corp., Koninklijke Philips N.V., Thomson Licensing, GE Technology Development, Inc. Panasonic Corporation and Sony Corporation v. Sceptre, Inc.
Case No. 2:14-cv-04994-ODW-AJW
United States District Court for the Central District of California
Deposition Testimony

Money Suite Company v. Insurance Answer Center, LLC; Answer Financial, Inc.; AllState Insurance Company; Esurance Insurance Services, Inc.
United States District Court Central District of California Southern Division
Deposition Testimony

Motorola, Inc. v. InterDigital Technology Corporation
Civil Action No. 93-488
United States District Court for the District of Delaware
Trial and Deposition Testimony

Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN, BHD v. Hytera Communications Corporation Ltd., Hytera America, Inc. and Hytera Communications America (West), Inc.
Civil Action No. 1:17-cv-1973
United States District Court for the Northern District of Illinois Eastern Division
Trial and Deposition Testimony

Motorola Solutions, Inc. v. Hytera Communications Corporation Ltd.
Civil Action No. 1:17-cv-1972
United States District Court for the Northern District of Illinois Eastern Division
Deposition Testimony

Motorsport Aftermarket Group, Inc. v. Thomas Ellsworth
AAA Case No. 01-15-0006-1319
American Arbitration Association
Hearing Testimony

Natera, Inc. v. ArcherDx, Inc., ArcherDx, LLC and Invitae Corp.
Civil Action No. 20-125-LPS
United States District Court for the District of Delaware
Trial and Deposition Testimony

Natera, Inc. v. Neogenomics Laboratories, Inc.
C.A. No. 1:23-cv-629
United States District Court for the Middle District of North Carolina
Deposition Testimony

Nellcor Puritan Bennett, LLC v. CAS Medical Systems, Inc.
Case No. 2:11-CV-15697
United States District Court for the Eastern District of Michigan Southern Division
Deposition Testimony

Netlist, Inc. v. Diablo Technologies, Inc.
Civil Action No. 4:13-CV-05962-YGR
United States District Court for the Central District of California Oakland Division
Trial Testimony

Nike, Inv. v. Lululemon USA, Inc.
Case No. 1:23-cv-00771-AS
United States District Court for the Southern District of New York
Trial and Deposition Testimony

Nomadix, Inc. v. Hewlett-Packard Company, et al.
Civil Action No. CV09-08441 DDP(VBKx)
United States District Court for the Central District of California Western Division
Deposition Testimony

Nomix Corporation v. Quikrete Companies, Inc.
Civil Action No. H88-463-AHN
Trial and Deposition Testimony

Optical Air Data Systems, LLC v. L-3 Communications Corporation et al.
Civil Action No. N17C-05-619
Superior Court of the State of Delware
Trial and Deposition Testimony

Option3 Cyber Investments, LLC and Option3 Ventures, LLC v. Centripetal Networks, Inc.
Case No. 2021-15490
Circuit Court for the County of Fairfax
Deposition Testimony

Oracle America, Inc. v. Google, Inc.
Case No. 3:10-CV-03561-WHA
United States District Court for the Northern District of California San Francisco Division
Deposition Testimony

Orthofix, Inc., et al v. EBI Medical Systems, Inc., et al.
Civil Action No. 95-6035 (SMO)
United States District Court for the District of New Jersey
Trial and Deposition Testimony

PACT XPP Schweiz AG et al. v. Intel Corporation
Civil Action No. 19-cv-01006-JDW
United States District Court for the District of Delaware

Deposition Testimony

Pharmacia & Upjohn Company, LLC v. Sicor Inc. and Sicor Pharmaceuticals, Inc.
Civil Action No. 04-833 (KAJ)
United States District Court for the District of Delaware
Deposition Testimony

Picker International, Inc. v. Mayo Foundation, et al.
Case No. 95-CV-2028
United States District Court for the Northern District of Ohio, Eastern Division
Trial and Deposition Testimony

Penda Corporation v. United States of America and Cadillac Products, Inc.
Case No. 473-89-C
United States Court of Federal Claims
Trial and Deposition Testimony

PepsiCo, Inc. v. Commissioner of Taxation and
Stokely-Van Camp, Inc. v. Commissioner of Taxation
VID53/2022, VID55/2022, VID57/2022, VID74/2022, VID82/2022
Federal Court of Australia
Hearing Testimony

Peter Daou and James Boyce v. Arianna Huffington, Kenneth Lerer and
TheHuffingtonPost.com, Inc.
Index No. 651997/2010
Supreme Court of the State of New York, County of New York
Deposition Testimony

PlastiPak Packaging, Inc. v. Premium Waters Inc.
Case No. 3:20-cv-00098
United States District Court for the Western District of Wisconsin
Deposition Testimony

Plexxikon Inc. v. Novartis Pharmaceuticals Corporation
Case No. 4:17-cv-04405-HSG
United States District Court for the Northern District of California Oakland
Division
Trial Deposition Testimony

Power Integrations, Inc. v. Fairchild Semiconductor International, Inc., Fairchild
Semiconductor Corporation and System General Corporation
Case No. 3:09-cv-05235-MMC
United States District Court for the Northern District of California
Trial and Deposition Testimony

Powertech Technology, Inc. v. Tessera, Inc.
Case No. CV10-00945EMC
United States District Court for the Northern District of California
Deposition Testimony

Praxair, Inc. and Praxair Technology, Inc. v. ATMI, Inc. and Advanced Technology Materials, Inc.
Civil Action No. 03-1158-SLR
United States District Court District of Delaware
Deposition Testimony

Prism Technologies, LLC v. AT&T Mobility, LLC
Civil Action No. 8:12-cv-122-LES-TDT
United States District Court of Nebraska
Deposition Testimony

Prism Technologies, LLC v. T-Mobile USA, Inc.
Civil Action No. 8:12-cv-00124
United States District Court of Nebraska
Trial and Deposition Testimony

Prism Technologies, LLC v. Sprint Spectrum L.P. d/b/a/ Sprint PCS
Civil Action No. 8:12-cv-123-LES-TDT
United States District Court of Nebraska
Trial and Deposition Testimony

The Procter & Gamble Company v. Paragon Trade Brands, Inc.
Civil Action No. 94-16-LON
United States District Court for the District of Delaware
Trial and Deposition Testimony

Promptu Systems Corporation v. Comcast Corporation and Comcast Cable Communications LLC
C.A. No. 2:16-cv-06516-JS
United States District Court for the Eastern District of Pennsylvania
Trial and Deposition Testimony

Purecircle USA Inc. and Purecircle SDN BHD v. Sweegen, Inc. and Phyto Tech Corp.
Case No. 8:18-CV-1679 JVS (JDE)
United States District Court for Central District of California Southern Division
Deposition Testimony

QR Spex, Inc. and Thomas G. Swab v. Motorola, Inc. and Frog Design, Inc.
Civil Action No 03-6284 JFW (FMOx)
United States District Court for the Central District of California
Deposition Testimony

Qualcomm, Inc. v. InterDigital Communications Corporation
Case No. 93-1091G (LSP)
Deposition Testimony

Quickie, LLC v. Medtronic, Inc.
Civil Action No. 02 CV 1157 (GEL)
United States District Court for the Southern District of New York
Deposition Testimony

Radware, LTD, and Radware, Inc. v. F5 Networks, Inc.
Civil Action No. 5:13-cv-02024 RMW
United States District Court for the Southern District of California San Jose Division
Trial and Deposition Testimony

Regeneron Pharmaceuticals, Inc. v. Celltrion, Inc.
Civil Action No. 1:23-cv-89-TSK
United States District Court for the Northern District of West Viginia, Clarksburg Division
Deposition Testimony

Regeneron Pharmaceuticals, Inc. v. Novartis Pharma AG et. Al
Case IPR2021-00816
United States Patent and Trademark Office Before the Patent Trial and Appeal Board
Deposition Testimony and Written Declaration

Remcor v. Scotsman/Booth
Civil Action No. 93 C 1822
United States District Court for the Northern District of Illinois, Eastern Division
Deposition Testimony

Remcor v. Servend
Civil Action No. 93 C 1823
United States District Court for the Northern District of Illinois, Eastern Division
Deposition Testimony

Rensselaer Polytechnic Institute and Dynamic Advances, LLC v. Apple Inc.
Case No 1:13-cv-00633 (DNH/DEP)
United States District Court for the Northern District of New York
Deposition Testimony

Research Corporation Technologies, Inc. v. Hewlett-Packard Company
Civil Action No. CIV 95-490-TUC-JMR
United States District Court for the District of Arizona
Deposition Testimony

Robert E. Morley, Jr. and REM Holdings 3, LLC v. Square, Inc., Jack Dorsey and James McKelvey, Jr.
No. 4:14-cv-00172-CDP
United States District Court for the Eastern District of Missouri
Deposition Testimony

Roche Diabetes Care, Inc. v. Insulet Corporation
Case No. 1:20-cv-00825
United States District Court for the District of Delaware
Deposition Testimony

Rommy Hunt Revson v. The Limited, Inc. et al.

Civil Action No. 90-3840 (MGC)
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. Ameren Corporation; Union
Electric Company; Central Illinois Public Service Company; Cilcorp, Inc.;
Central Illinois Light Company
Case No. 07-4955 RGK (FFMx)
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. AOL, LLC, CompuServe
Interactive Services and Netscape Communications Corporation
CV 07-2134 RGK (FFMx)
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. Cablevision Systems Corporation
et. al.
Case No. 2:07-ML-01816 / 02314 RGK-FFM
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. Charter Communications, Inc.;
Charter Communications Holding Company, LLC; Charter Communications
Operating, LLC; and Charter Communications Entertainment I, LLC
CV 07-2134 RGK (FFMx)
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. CIGNA Corporation, CIGNA
Health Corporation, CIGNA HealthCare of Delaware, Inc., Tel-Drug of
Pennsylvania, LLC and Tel-Drug, Inc.
CV 07-2192 RGK (FFMx)
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. Comcast Corporation, Sirius-XM
Radio, Inc., et al.
NO. 2:07-ML-01816-C RGK (FFMx)
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. DHL Holdings (USA) Inc., DHL
Express (USA), Inc., and Sky Courier, Inc.
Case No. 07-ml-01816-B RGK (FFMx)
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. Fifth Third Bankcorp, Fifth Third
Bank, Fifth Third Bank (Central Ohio)
Case No. 07-4960 RGK (FFMx)
United States District Court for the Central District of California

Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. Time Warner Cable Inc., Time Warner NY Cable LLC and Time Warner Entertainment Company, L.P.
CV 07-2134 RGK (FFMx)
United States District Court for the Central District of California
Deposition Testimony

Ronald A. Katz Technology Licensing, LP v. United States Cellular Corporation, TDS Telecommunications Corporation and TDS Metrocom, LLC
Case No.07-ML-01816-B-RGK (FFMX)
United States District Court for the Central District of California
Deposition Testimony

Rosetta Stone Ltd. v. Google Inc.
Civil Action No. 1:09 CV 736 GBL / JFA
United States District Court for the Eastern District of Virginia
Deposition Testimony

RTC Industries, Inc. v. Banner & Witcoff, Ltd. et al.
Case No. 2023 L 000809
In the Circuit Court of Cook County, Illinois County Department, Law Division
Deposition Testimony

RTC Industries, Inc. v. Fasteners for Retail, Inc.
Case No. 1:18-CV-00861
United States District Court for Northern District of Illinois Eastern Division
Deposition Testimony

RWM Kinetic Enterprises, Inc. and Thomas J. Ring v. Kinetic Concepts, Inc. and KCI Therapeutic Services, Inc.
Case No. SA-96-CA-603-OG
United States District Court for the Western District of Texas San Antonio Division
Trial Testimony

Sanofi-Aventis U.S. LLC and Regeneron Pharmaceuticals, Inc. v. Genentech, Inc. and City of Hope
Case No. 2:15-CV-05685
United States District Court for the Central District of California Western Division
Deposition Testimony

Sanyo Electric Co., Ltd. v. Intel Corporation
Civil Action No. 2018-0723-MTZ
Court of Chancery of the State of Delaware
Deposition Testimony

Saxon Innovations, LLC v. Nokia Corp, et al. (including Samsung Electronics, Co. and related parties)
Civil Action No. 6:07-cv-490-LED-JDL
United States District Court for the Eastern District of Texas Tyler Division

Deposition Testimony

SecurityPoint Holdings, Inc. v. The United States
Case No. 1:11-cv-00268-EGB
In the United States Federal Court of Claims
Deposition and Trial Testimony

Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.,
S-LCD Corporation, Samsung Electronics America, Inc. Samsung
Telecommunications America, LLC
Civil Action No. 3:09-cv-00001
United States District Court for the Western District of Wisconsin
Deposition Testimony

Selex Galileo, Inc. v. Nomir Medical Technologies, Inc.
Case No. 01-17-0003-0930
American Arbitration Association
Hearing Testimony

Seven Networks, LLC v. Apple Inc.
Civil Action No. 2:19-cv-115-JRG
United States District Court for the Western District of Texas Marshall Division
Deposition Testimony

Shuffle Tech International, LLC and Aces Up Gaming, Inc. and Poydras-Talrick
Holdings, LLC v. Scientific Games Corporation and Bally Technologies, Inc.
(d/b/a SHFL Entertainment or Shuffle Master) and Bally Gaming, Inc.
Civil Action No. 1:15-cv-3702
United States District Court for the Northern District of Illinois Eastern Division
Trial and Deposition Testimony

Silicon Image, Inc. v. Analogix Semiconductor, Inc.
Case No. C 07-00635 JCS
United States District Court for the Northern District of California, San
Francisco Division
Deposition Testimony

Site Microsurgical Systems v. The Cooper Companies
Civil Action S92-766
Deposition Testimony

Slot Speaker Technologies, Inc. v. Apple Inc.
Case No. 4:13-cv-01161-HSG
United States District Court Northern District of California Oakland Division
Deposition Testimony

SmartPhone Technologies, LLC v. Research In Motion Corp. et. al (on behalf
LG Electronics, Inc. and LG Electronics USA, Inc.)
Civil Action No. 6:10cv74-LED
United States District Court Eastern District of Texas Tyler Division
Deposition Testimony

St. Clair Intellectual Property Consultants v. Fuji Photo Film Co., Ltd., Fuji
Photo Film U.S.A., Inc., Fujifilm America, Inc., et al.
Civil Action No. 03-241 JJF
United States District Court for the District of Delaware
Trial and Deposition Testimony

Steven E. Berkheimer v. Hewlett-Packard Company
Case No. 1:12-cv-09023
United States District Court for the Northern District of Illinois Eastern Division
Deposition Testimony

STMicroelectronics, Inc. v. SanDisk Corp.
C.A. No. 4:05CV44
United States District Court of Texas Sherman Division
Deposition Testimony

STMicroelectronics, Inc. v. SanDisk Corp.
C.A. No. 4:05CV45
United States District Court of Texas Sherman Division
Deposition Testimony

Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc., U.S. Oil,
and Technics, Inc.
Civil Action No. 4:19-cv-01145
United States District Court for the Southern District of Texas Houston Division
Trial and Deposition Testimony

Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc., U.S. Oil,
and Technics, Inc.
Civil Action No. 1:15-CV-8178
United States District Court for the Northern District of Illinois Eastern Division
Deposition Testimony

Synopsys, Inc. v. Ubiquiti Networks, Inc. et al.
Civil Action No. 3:17-cv-00561-WHO
United States District Court for the Northern District of California
Deposition Testimony

Takata Corp. v. Allied Signal, Inc. and Breed Technologies, Inc.
Civil Action CV-95-1750
Deposition Testimony

Technol Medical Products, Inc., et al v. Robert Busse & Co., Inc.
Civil Action No. 3:94-CV-2284-X
Deposition Testimony

Tekmira Pharmaceuticals Corporation and Protiva Pharmaceuticals, Inc. v.
Alnylam Pharmaceuticals, Inc. and AlCana Technologies, Inc.
Civil Action No. 11-1010-BLS2
Massachusetts Superior Court for Suffolk County
Deposition Testimony

Tessera, Inc. v. Advanced Micro Devices, Inc. et al.
Case No. 4:05-cv-04063-CW
United States District Court for Northern District of California Oakland Division
Deposition Testimony

Tessera, Inc. v. UTAC (Taiwan) Corporation
Case No.: 5:10-cv-04435-EJD
United States District Court for Northern District of California San Jose Division
Deposition Testimony

Therma-Tru Corporation v. Caradon Peachtree, Inc.
Civil Action No. 95-CV-75534-DT
Deposition Testimony

Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation, v. ROSS Intelligence Inc.
Case No. 20-613-SB
United States District Court for the District of Delaware
Deposition Testimony

Toro Company v. MTD Products Inc., MTD Consumer Group Inc., and Cub Cadet LLC
Civil Action No 10-cv-007-JNE-TNL
United States District Court for the District of Minnesota
Deposition Testimony

Trustees of the University of Pennsylvania v. Genentech, Inc.
Case No. 1:22-cv-00145-JLH
United States District Court for the District of Delaware
Deposition Testimony

Ultratec, Inc. and CapTel, Inc. v. Sorenson Communications, Inc. and CaptionCall, LLC
Case No.: 3:14-cv-66-BBC
United States District Court for the Western District of Wisconsin
Trial and Deposition Testimony

Unicorn Energy AG v. Tesla, Inc.
Civil No. 5:21-cv-07476-BLF
United States District Court for the Northern District of California San Jose Division
Deposition Testimony

Unwired Planet, LLC v. Apple, Inc.
Case No. 3:13-cv-4134-VC
United States District Court for the Northern District of California San Francisco Division
Deposition Testimony

U.S.A. Dawgs, Inc. et al. v. Ronald Synder, et al.
Civil Action No. 16-cv-02004-PAB-KMT

United States District Court for the District of Colorado
Deposition Testimony

Valeo Schalter und Sensoren GmbH v. Nvidia Corporation
Case No. 5:23-cv-05721
United States District Court for the Northern District of California
Deposition Testimony

Valmet Paper Machinery, Inc. and Valmet-Charlotte, Inc. v. Beloit Corporation
Civil Action No. 93-C-587-C
United States District Court for the Western District of Wisconsin
Trial and Deposition Testimony

Verinata Health, Inc. and the Board of Trustees of the Leland Stanford Junior
University v. Sequenom, Inc. and Sequenom Center for Molecular Medicine, LLC.
Case No. 3:12-cv-00865-SI
Deposition Testimony

Verinata Health, Inc. v. Ariosa Diagnostics, Inc.
Case No. 3:12-cv-055501-SI
United States District Court for the Northern District of California
Trial and Deposition Testimony

VirtaMove Corp v. International Business Machines Corp.
Civil Action No. 2-24-CV-00064
United States District Court for the Eastern District of Texas Marshall Division
Deposition Testimony

Viacom International Inc. v. MGA Entertainment, Inc.
Case No.: 2:15-cv-09621-R (Ex)
United States District Court for the Central District of California
Deposition Testimony

VimpelCom Ltd. v. Orascom TMT Investments S.a.r.l.
London Court of International Arbitration
Arbitration No: 153077
Hearing Testimony

Volterra Semiconductor Corporation v. Primarion, Inc., Infineon Technologies
AG and Infineon Technologies North America Corporation
Case No. C 08-05129 CRB
United States District Court for the Northern District of California San
Francisco Division
Deposition Testimony

Wang Laboratories, Inc. v. America Online, Inc. and Netscape Communications
Corporation
Civil Action No. 97-1628-A
United States District Court for the Eastern District of Virginia
Deposition Testimony

Wang Laboratories, Inc. v. FileNet Corporation

Civil Action No. 94-12141-RCL
Deposition Testimony

Waukesha Cherry-Burrell v. Wrightech Corporation
Civil Action No. 96-CV-00384
Deposition Testimony

Waymo LLC v. Uber Technologies, Inc., Ottomotto LLC and Otto Trucking LLC
Case No. 3:17-cv-00939-WHA
United States District Court for the Northern District of California San
Francisco Division
Deposition Testimony

Whirlpool Corporation v. Drinker Biddle & Reath LLP et. al.
Case No. 2015-L-007631
Circuit Court of Cook County, Illinois
Trial and Deposition Testimony

Wisk Aero LLC v. Archer Aviation Inc.
Civil Action No. 3:21-cv-02450-WHO
United States District Court for the Northern District of California
Deposition Testimony

Zenith Electronics LLC, Panasonic Corporation, U.S., Philips Corporation, and
the Trustees of Columbia University in the City of New York v. Sceptre, Inc.
Case No. 9:13-CV-80567
United States District Court for the Central District of California
Deposition Testimony

Zenith Electronics LLC v. Vizio, Inc.; Westinghouse Digital Electronics LLC, et al.
No. 5:06CV246-DF
United States District Court for the Eastern District of Texas
Texarkana Division
Deposition Testimony

ZiiLabs Inc., Ltd. v. Samsung Electronics Co. Ltd (and related Samsung parties)
and Apple Inc.
Case No. 2:14-cv-00203
United States District Court for the Eastern District of Texas Marshall Division
Deposition Testimony

---

**PATENTS**

Inventor, United States Patent No. 5,752,186, Access Free Wireless Telephony
Fulfillment Service System, May 12, 1998.

Inventor, United States Patent No. 5,867,780, Access Free Wireless Telephony
Fulfillment Service System, February 2, 1999.

Inventor, United States Patent No. 6.397,057, System and Method of Providing
Advertising Information to a Subscriber Through a Wireless Device, May 28,
2002.

Inventor, United States Patent No. 6,411,803, System and Method of Providing Service Information to a Subscriber Through a Wireless Device, June 25, 2002.

Inventor, United States Patent No. 6,769,767, Eyewear with Exchangeable Temples Housing a Transceiver Forming Ad Hoc Networks with Other Devices, August 3, 2004.

Inventor, United States Patent No. 6,839,556, System and Method of Providing Information to a Subscriber through a Wireless Device, January 4, 2005.

Inventor, United States Patent No. 6,911,172, Method of Manufacturing Eyewear, June 28, 2005.

Inventor, United States Patent No. 6,929,365, Eyewear with Exchangeable Temples Housing Bluetooth Enable Apparatus, August 16, 2005.

Inventor, United States Patent No. 7,181,200, Method of Providing Information to a Telephony Subscriber, February 20, 2007.

Inventor, United States Patent No. 7,353,202, System and Method of Risk Minimization and Enhanced Returns In An Intellectual Capital Based Venture Investment, April 1, 2008.

Inventor, United States Patent No. 7,769,685, System and Method of Risk Minimization and Enhanced Returns In An Intellectual Capital Based Venture Investment, August 3, 2010.

Inventor, United States Patent No. 7,813,716, Method of Providing Information to a Telephony Subscriber, October 12, 2010.

Inventor, United States Patent No. 7,885,897, Intellectual Property Trading Exchange and a Method for Trading Intellectual Property Rights, February 8, 2011.

Inventor, United States Patent No. 7,930,231, System and Method of Risk Minimization and Enhanced Returns In An Intellectual Capital Based Venture Investment, April 19, 2011.

Inventor, United States Patent No. 7,987,142, Intellectual Property Trading Exchange, July 26, 2011.

Inventor, United States Patent No. 8,041,341, System of Providing Information to a Telephony Subscriber, October 18, 2011.

Inventor, United States Patent No. 8,180,711, Intellectual Property Trading Exchange, May 15, 2012.

Inventor, United States Patent No. 8,255,932, System and Method for Managing Intellectual Property-Based Risks, January 15, 2013.

Inventor, United States Patent No. 8,515,851, Method and System for Generating an Index of Securities, August 20, 2013.

Inventor, United States Patent No. 8,554,687, Intellectual Property Trading Exchange and a Method for Trading Intellectual Property Rights, October 8, 2013.

Inventor, United States Patent No. 8,694,419, Methods and Systems for Utilizing Intellectual Property Assets and Rights, April 8, 2014.

Inventor, United States Patent No. 8,787,878, System of Providing Information to a Telephony Subscriber, July 22, 2014.

Inventor, United States Patent No. 8,831,985, Financial Instrument Based on Content and Methods for Valuation, September 9, 2014.

Inventor, United States Patent No. 8,880,031, System of Providing Information to a Telephony Subscriber, November 4, 2014.

Inventor, United States Patent No. 9,058,628, Marketplace for Trading Intangible Asset Derivatives and a Method for Trading Intangible Asset Derivatives, June 16, 2015.

Inventor, United States Patent No. 9,244,292, Eyewear with Exchangeable Temples Housing A Radio Frequency, January 26, 2016.

---

**CONTACT**       James E. Malackowski, CPA, CLP
Chief Intellectual Property Officer
J.S. Held LLC
Co-founder and Senior Managing Director
Ocean Tomo, LLC, a part of J.S. Held
North Miami Beach, Florida

312-327-4410 Direct
james.malackowski@jsheld.com

# Appendix 2

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

**Appendix 2.1**

**Plaintiffs' Witnesses**

– Alan Eagle, Vice President of Oncology at Eagle Pharmaceuticals, Inc., November 18, 2025.[1]

– Christopher Krawtschuk, Chief Financial Officer at Eagle Pharmaceuticals, Inc., December 5, 2025.[2]

– David Bricker, Senior Vice President, Head Global Manufacturing and Supply at Eagle Pharmaceuticals, Inc, November 25, 2025.[3]

– Jacob Whitt, Vice President of Intellectual Property at Eagle Pharmaceuticals, Inc., December 11, 2025.[4]

– Jeffrey Lovesy, Former Senior Vice President of Oncology at Eagle Pharmaceuticals, Inc., February 6, 2026.[5]

**Defendants' Witnesses**

– Harish Chinnari, Senior Director in Research and Development at Azurity Pharmaceuticals, December 10, 2025, December 11, 2025, February 20, 2026.[6]

– Josh Mathew, Vice President of the Oncology Franchise at Azurity Pharmaceuticals, December 17, 2025.[7]

– Ravindhar Gonti, Associate Director of Regulatory Affairs at Azurity Pharmaceuticals, December 4, 2025 and December 5, 2025.[8]

**Third-Party Witnesses**

– Michael Mercanti, Partner at Lucas and Mercanti, December 18, 2025.[9]

– Phillip Buxton, Former Pharmaceutical Consultant at Scidose, August 22, 2025.[10]

– Srikanth Sundaram, President and Chief Scientific Officer at MAIA Pharmaceuticals, November 20, 2025.[11]

– Stephanie Lodise, Partner at Baker and Hostetler, January 8, 2026.[12]

---

[1] Deposition of Alan Eagle, 30(b)(6) November 18, 2025, p. 31.
[2] Deposition of Christopher Krawtschuk, December 5, 2025, p. 15.
[3] Deposition of David Bricker, November 25, 2025, pp. 95 – 96, Exhibit 3.
[4] Deposition of Jacob Whitt, December 11, 2025, p. 7.
[5] Deposition of Jeffrey Lovesey, February 6, 2026, pp. 12 – 13.
[6] Deposition of Harish Chinnari, December 10, 2025; Deposition of Harish Chinnari, December 11, 2025; Deposition of Harish Chinnari, February 20, 2026, p. 7.
[7] Deposition of Josh Mathew, December 17, 2025, pp. 10 – 11.
[8] Deposition of Ravindhar Gonti, December 4, 2025 p. 31, Exhibit 4.
[9] Deposition of Michael Mercanti, December 18, 2025, p. 7.
[10] Deposition of Phillip Buxton, August 22, 2025, pp. 9, 20; https://www.linkedin.com/in/chris-buxton-b5121a74/?originalSubdomain=uk.
[11] Deposition of Srikanth Sundaram, November 20, 2025, p. 7.
[12] Deposition of Stephanie Lodise, January 8, 2026, p. 6; https://www.bakerlaw.com/professionals/stephanie-a-lodise/.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00001063 | EAGLEBEN-SA_00001076 | EAGLEBEN-SA_00332612 | EAGLEBEN-SA_00332631 | SLAY-VIVMUS0012174 | SLAY-VIVMUS0012175 |
| EAGLEBEN-SA_00002115 | EAGLEBEN-SA_00002127 | EAGLEBEN-SA_00332632 | EAGLEBEN-SA_00332690 | SLAY-VIVMUS0012176 | SLAY-VIVMUS0012177 |
| EAGLEBEN-SA_00002128 | EAGLEBEN-SA_00002128 | EAGLEBEN-SA_00332691 | EAGLEBEN-SA_00332691 | SLAY-VIVMUS0012178 | SLAY-VIVMUS0012179 |
| EAGLEBEN-SA_00002130 | EAGLEBEN-SA_00002130 | EAGLEBEN-SA_00332692 | EAGLEBEN-SA_00332692 | SLAY-VIVMUS0012180 | SLAY-VIVMUS0012183 |
| EAGLEBEN-SA_00002132 | EAGLEBEN-SA_00002132 | EAGLEBEN-SA_00332693 | EAGLEBEN-SA_00332694 | SLAY-VIVMUS0012184 | SLAY-VIVMUS0012184 |
| EAGLEBEN-SA_00002133 | EAGLEBEN-SA_00002133 | EAGLEBEN-SA_00332695 | EAGLEBEN-SA_00332696 | SLAY-VIVMUS0012211 | SLAY-VIVMUS0012212 |
| EAGLEBEN-SA_00002134 | EAGLEBEN-SA_00002134 | EAGLEBEN-SA_00332697 | EAGLEBEN-SA_00332698 | SLAY-VIVMUS0012213 | SLAY-VIVMUS0012223 |
| EAGLEBEN-SA_00002135 | EAGLEBEN-SA_00002135 | EAGLEBEN-SA_00332699 | EAGLEBEN-SA_00332699 | SLAY-VIVMUS0012224 | SLAY-VIVMUS0012225 |
| EAGLEBEN-SA_00002137 | EAGLEBEN-SA_00002137 | EAGLEBEN-SA_00332700 | EAGLEBEN-SA_00332701 | SLAY-VIVMUS0012226 | SLAY-VIVMUS0012227 |
| EAGLEBEN-SA_00002138 | EAGLEBEN-SA_00002138 | EAGLEBEN-SA_00332702 | EAGLEBEN-SA_00332702 | SLAY-VIVMUS0012228 | SLAY-VIVMUS0012229 |
| EAGLEBEN-SA_00002140 | EAGLEBEN-SA_00002140 | EAGLEBEN-SA_00332703 | EAGLEBEN-SA_00332703 | SLAY-VIVMUS0012230 | SLAY-VIVMUS0012257 |
| EAGLEBEN-SA_00002148 | EAGLEBEN-SA_00002155 | EAGLEBEN-SA_00332704 | EAGLEBEN-SA_00332704 | SLAY-VIVMUS0012258 | SLAY-VIVMUS0012285 |
| EAGLEBEN-SA_00002156 | EAGLEBEN-SA_00002156 | EAGLEBEN-SA_00332705 | EAGLEBEN-SA_00332705 | SLAY-VIVMUS0012312 | SLAY-VIVMUS0012313 |
| EAGLEBEN-SA_00002157 | EAGLEBEN-SA_00002157 | EAGLEBEN-SA_00332706 | EAGLEBEN-SA_00332706 | SLAY-VIVMUS0012314 | SLAY-VIVMUS0012315 |
| EAGLEBEN-SA_00002159 | EAGLEBEN-SA_00002159 | EAGLEBEN-SA_00332707 | EAGLEBEN-SA_00332707 | SLAY-VIVMUS0012316 | SLAY-VIVMUS0012317 |
| EAGLEBEN-SA_00002161 | EAGLEBEN-SA_00002161 | EAGLEBEN-SA_00332708 | EAGLEBEN-SA_00332709 | SLAY-VIVMUS0012343 | SLAY-VIVMUS0012343 |
| EAGLEBEN-SA_00002162 | EAGLEBEN-SA_00002162 | EAGLEBEN-SA_00332710 | EAGLEBEN-SA_00332710 | SLAY-VIVMUS0013080 | SLAY-VIVMUS0013081 |
| EAGLEBEN-SA_00002165 | EAGLEBEN-SA_00002165 | EAGLEBEN-SA_00332711 | EAGLEBEN-SA_00332711 | SLAY-VIVMUS0013082 | SLAY-VIVMUS0013090 |
| EAGLEBEN-SA_00002171 | EAGLEBEN-SA_00002171 | EAGLEBEN-SA_00332712 | EAGLEBEN-SA_00332713 | SLAY-VIVMUS0013091 | SLAY-VIVMUS0013108 |
| EAGLEBEN-SA_00002172 | EAGLEBEN-SA_00002172 | EAGLEBEN-SA_00332714 | EAGLEBEN-SA_00332714 | SLAY-VIVMUS0013109 | SLAY-VIVMUS0013130 |
| EAGLEBEN-SA_00002173 | EAGLEBEN-SA_00002173 | EAGLEBEN-SA_00332715 | EAGLEBEN-SA_00332715 | SLAY-VIVMUS0013185 | SLAY-VIVMUS0013186 |
| EAGLEBEN-SA_00002174 | EAGLEBEN-SA_00002174 | EAGLEBEN-SA_00332716 | EAGLEBEN-SA_00332716 | SLAY-VIVMUS0042330 | SLAY-VIVMUS0042333 |
| EAGLEBEN-SA_00002175 | EAGLEBEN-SA_00002175 | EAGLEBEN-SA_00332717 | EAGLEBEN-SA_00332717 | SLAY-VIVMUS0042554 | SLAY-VIVMUS0042558 |
| EAGLEBEN-SA_00002183 | EAGLEBEN-SA_00002183 | EAGLEBEN-SA_00332718 | EAGLEBEN-SA_00332718 | SLAY-VIVMUS0058455 | SLAY-VIVMUS0058460 |
| EAGLEBEN-SA_00002185 | EAGLEBEN-SA_00002185 | EAGLEBEN-SA_00332719 | EAGLEBEN-SA_00332719 | SLAY-VIVMUS0071737 | SLAY-VIVMUS0071740 |
| EAGLEBEN-SA_00002186 | EAGLEBEN-SA_00002186 | EAGLEBEN-SA_00332720 | EAGLEBEN-SA_00332720 | SLAY-VIVMUS0071745 | SLAY-VIVMUS0071748 |
| EAGLEBEN-SA_00002187 | EAGLEBEN-SA_00002187 | EAGLEBEN-SA_00332721 | EAGLEBEN-SA_00332721 | SLAY-VIVMUS0071782 | SLAY-VIVMUS0071784 |
| EAGLEBEN-SA_00002190 | EAGLEBEN-SA_00002190 | EAGLEBEN-SA_00332722 | EAGLEBEN-SA_00332722 | SLAY-VIVMUS0072067 | SLAY-VIVMUS0072102 |
| EAGLEBEN-SA_00002191 | EAGLEBEN-SA_00002191 | EAGLEBEN-SA_00332723 | EAGLEBEN-SA_00332723 | SLAY-VIVMUS0072180 | SLAY-VIVMUS0072183 |
| EAGLEBEN-SA_00002193 | EAGLEBEN-SA_00002193 | EAGLEBEN-SA_00332724 | EAGLEBEN-SA_00332724 | SLAY-VIVMUS0072195 | SLAY-VIVMUS0072210 |
| EAGLEBEN-SA_00002194 | EAGLEBEN-SA_00002194 | EAGLEBEN-SA_00332725 | EAGLEBEN-SA_00332725 | SLAY-VIVMUS0072213 | SLAY-VIVMUS0072238 |
| EAGLEBEN-SA_00002197 | EAGLEBEN-SA_00002197 | EAGLEBEN-SA_00332726 | EAGLEBEN-SA_00332727 | SLAY-VIVMUS0072266 | SLAY-VIVMUS0072328 |
| EAGLEBEN-SA_00002198 | EAGLEBEN-SA_00002198 | EAGLEBEN-SA_00332728 | EAGLEBEN-SA_00332728 | SLAY-VIVMUS0072661 | SLAY-VIVMUS0072666 |
| EAGLEBEN-SA_00002200 | EAGLEBEN-SA_00002200 | EAGLEBEN-SA_00332729 | EAGLEBEN-SA_00332729 | SLAY-VIVMUS0072757 | SLAY-VIVMUS0072770 |
| EAGLEBEN-SA_00002201 | EAGLEBEN-SA_00002201 | EAGLEBEN-SA_00332730 | EAGLEBEN-SA_00332731 | SLAY-VIVMUS0072867 | SLAY-VIVMUS0072877 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00002202 | EAGLEBEN-SA_00002202 | EAGLEBEN-SA_00332732 | EAGLEBEN-SA_00332732 | SLAY-VIVMUS0073058 | SLAY-VIVMUS0073068 |
| EAGLEBEN-SA_00002204 | EAGLEBEN-SA_00002204 | EAGLEBEN-SA_00332733 | EAGLEBEN-SA_00332733 | SLAY-VIVMUS0073081 | SLAY-VIVMUS0073114 |
| EAGLEBEN-SA_00002205 | EAGLEBEN-SA_00002205 | EAGLEBEN-SA_00332734 | EAGLEBEN-SA_00332734 | SLAY-VIVMUS0073234 | SLAY-VIVMUS0073234 |
| EAGLEBEN-SA_00002206 | EAGLEBEN-SA_00002206 | EAGLEBEN-SA_00332735 | EAGLEBEN-SA_00332735 | SLAY-VIVMUS0073278 | SLAY-VIVMUS0073281 |
| EAGLEBEN-SA_00002207 | EAGLEBEN-SA_00002207 | EAGLEBEN-SA_00332736 | EAGLEBEN-SA_00332736 | SLAY-VIVMUS0073311 | SLAY-VIVMUS0073335 |
| EAGLEBEN-SA_00002208 | EAGLEBEN-SA_00002208 | EAGLEBEN-SA_00332737 | EAGLEBEN-SA_00332737 | SLAY-VIVMUS0073369 | SLAY-VIVMUS0073371 |
| EAGLEBEN-SA_00002210 | EAGLEBEN-SA_00002210 | EAGLEBEN-SA_00332738 | EAGLEBEN-SA_00332738 | SLAY-VIVMUS0073484 | SLAY-VIVMUS0073535 |
| EAGLEBEN-SA_00002212 | EAGLEBEN-SA_00002212 | EAGLEBEN-SA_00332739 | EAGLEBEN-SA_00332740 | SLAY-VIVMUS0073747 | SLAY-VIVMUS0073748 |
| EAGLEBEN-SA_00002213 | EAGLEBEN-SA_00002213 | EAGLEBEN-SA_00332741 | EAGLEBEN-SA_00332742 | SLAY-VIVMUS0073780 | SLAY-VIVMUS0073781 |
| EAGLEBEN-SA_00002214 | EAGLEBEN-SA_00002214 | EAGLEBEN-SA_00332743 | EAGLEBEN-SA_00332743 | SLAY-VIVMUS0073782 | SLAY-VIVMUS0073783 |
| EAGLEBEN-SA_00002215 | EAGLEBEN-SA_00002215 | EAGLEBEN-SA_00332744 | EAGLEBEN-SA_00332744 | SLAY-VIVMUS0073784 | SLAY-VIVMUS0073784 |
| EAGLEBEN-SA_00002217 | EAGLEBEN-SA_00002217 | EAGLEBEN-SA_00332745 | EAGLEBEN-SA_00332745 | SLAY-VIVMUS0073794 | SLAY-VIVMUS0073796 |
| EAGLEBEN-SA_00002219 | EAGLEBEN-SA_00002219 | EAGLEBEN-SA_00332746 | EAGLEBEN-SA_00332746 | SLAY-VIVMUS0073976 | SLAY-VIVMUS0073978 |
| EAGLEBEN-SA_00002220 | EAGLEBEN-SA_00002220 | EAGLEBEN-SA_00332747 | EAGLEBEN-SA_00332747 | SLAY-VIVMUS0074020 | SLAY-VIVMUS0074021 |
| EAGLEBEN-SA_00002221 | EAGLEBEN-SA_00002221 | EAGLEBEN-SA_00332748 | EAGLEBEN-SA_00332748 | SLAY-VIVMUS0074148 | SLAY-VIVMUS0074150 |
| EAGLEBEN-SA_00002232 | EAGLEBEN-SA_00002232 | EAGLEBEN-SA_00332749 | EAGLEBEN-SA_00332749 | SLAY-VIVMUS0074170 | SLAY-VIVMUS0074170 |
| EAGLEBEN-SA_00002233 | EAGLEBEN-SA_00002233 | EAGLEBEN-SA_00332750 | EAGLEBEN-SA_00332750 | SLAY-VIVMUS0074171 | SLAY-VIVMUS0074171 |
| EAGLEBEN-SA_00002235 | EAGLEBEN-SA_00002235 | EAGLEBEN-SA_00332751 | EAGLEBEN-SA_00332751 | SLAY-VIVMUS0074940 | SLAY-VIVMUS0074940 |
| EAGLEBEN-SA_00002240 | EAGLEBEN-SA_00002240 | EAGLEBEN-SA_00332752 | EAGLEBEN-SA_00332752 | SLAY-VIVMUS0074999 | SLAY-VIVMUS0074999 |
| EAGLEBEN-SA_00002242 | EAGLEBEN-SA_00002242 | EAGLEBEN-SA_00332753 | EAGLEBEN-SA_00332753 | SLAY-VIVMUS0075512 | SLAY-VIVMUS0075513 |
| EAGLEBEN-SA_00002245 | EAGLEBEN-SA_00002245 | EAGLEBEN-SA_00332754 | EAGLEBEN-SA_00332754 | SLAY-VIVMUS0075676 | SLAY-VIVMUS075678 |
| EAGLEBEN-SA_00002246 | EAGLEBEN-SA_00002246 | EAGLEBEN-SA_00332755 | EAGLEBEN-SA_00332755 | SLAY-VIVMUS0075688 | SLAY-VIVMUS0075717 |
| EAGLEBEN-SA_00002248 | EAGLEBEN-SA_00002248 | EAGLEBEN-SA_00332756 | EAGLEBEN-SA_00332756 | SLAY-VIVMUS0075719 | SLAY-VIVMUS0075722 |
| EAGLEBEN-SA_00002250 | EAGLEBEN-SA_00002250 | EAGLEBEN-SA_00332757 | EAGLEBEN-SA_00332757 | SLAY-VIVMUS0076710 | SLAY-VIVMUS0076715 |
| EAGLEBEN-SA_00002251 | EAGLEBEN-SA_00002251 | EAGLEBEN-SA_00332758 | EAGLEBEN-SA_00332758 | SLAY-VIVMUS0077011 | SLAY-VIVMUS0077047 |
| EAGLEBEN-SA_00002257 | EAGLEBEN-SA_00002257 | EAGLEBEN-SA_00332759 | EAGLEBEN-SA_00332760 | SLAY-VIVMUS0077059 | SLAY-VIVMUS0077061 |
| EAGLEBEN-SA_00002266 | EAGLEBEN-SA_00002266 | EAGLEBEN-SA_00332761 | EAGLEBEN-SA_00332761 | SLAY-VIVMUS0077281 | SLAY-VIVMUS0077287 |
| EAGLEBEN-SA_00002274 | EAGLEBEN-SA_00002274 | EAGLEBEN-SA_00332762 | EAGLEBEN-SA_00332762 | SLAY-VIVMUS0077328 | SLAY-VIVMUS0077329 |
| EAGLEBEN-SA_00002284 | EAGLEBEN-SA_00002284 | EAGLEBEN-SA_00332763 | EAGLEBEN-SA_00332763 | SLAY-VIVMUS0077337 | SLAY-VIVMUS0077339 |
| EAGLEBEN-SA_00002296 | EAGLEBEN-SA_00002296 | EAGLEBEN-SA_00332764 | EAGLEBEN-SA_00332765 | SLAY-VIVMUS0079037 | SLAY-VIVMUS0079039 |
| EAGLEBEN-SA_00002318 | EAGLEBEN-SA_00002318 | EAGLEBEN-SA_00332766 | EAGLEBEN-SA_00332766 | SLAY-VIVMUS0079044 | SLAY-VIVMUS0079044 |
| EAGLEBEN-SA_00002319 | EAGLEBEN-SA_00002319 | EAGLEBEN-SA_00332767 | EAGLEBEN-SA_00332767 | SLAY-VIVMUS0079589 | SLAY-VIVMUS0079589 |
| EAGLEBEN-SA_00002320 | EAGLEBEN-SA_00002320 | EAGLEBEN-SA_00332768 | EAGLEBEN-SA_00332768 | SLAY-VIVMUS0079931 | SLAY-VIVMUS0079931 |
| EAGLEBEN-SA_00002330 | EAGLEBEN-SA_00002330 | EAGLEBEN-SA_00332769 | EAGLEBEN-SA_00332769 | SLAY-VIVMUS0079988 | SLAY-VIVMUS0079988 |
| EAGLEBEN-SA_00002331 | EAGLEBEN-SA_00002331 | EAGLEBEN-SA_00332770 | EAGLEBEN-SA_00332770 | SLAY-VIVMUS0080027 | SLAY-VIVMUS0080027 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00002336 | EAGLEBEN-SA_00002336 | EAGLEBEN-SA_00332771 | EAGLEBEN-SA_00332772 | SLAY-VIVMUS0081876 | SLAY-VIVMUS0081877 |
| EAGLEBEN-SA_00002350 | EAGLEBEN-SA_00002350 | EAGLEBEN-SA_00332773 | EAGLEBEN-SA_00332773 | SLAY-VIVMUS0082773 | SLAY-VIVMUS0082776 |
| EAGLEBEN-SA_00002354 | EAGLEBEN-SA_00002354 | EAGLEBEN-SA_00332774 | EAGLEBEN-SA_00332774 | SLAY-VIVMUS0082942 | SLAY-VIVMUS0082944 |
| EAGLEBEN-SA_00002359 | EAGLEBEN-SA_00002359 | EAGLEBEN-SA_00332775 | EAGLEBEN-SA_00332775 | SLAY-VIVMUS0083044 | SLAY-VIVMUS0083051 |
| EAGLEBEN-SA_00002376 | EAGLEBEN-SA_00002376 | EAGLEBEN-SA_00332776 | EAGLEBEN-SA_00332776 | SLAY-VIVMUS0083159 | SLAY-VIVMUS0083177 |
| EAGLEBEN-SA_00002377 | EAGLEBEN-SA_00002377 | EAGLEBEN-SA_00332777 | EAGLEBEN-SA_00332777 | SLAY-VIVMUS0083178 | SLAY-VIVMUS0083178 |
| EAGLEBEN-SA_00002378 | EAGLEBEN-SA_00002378 | EAGLEBEN-SA_00332778 | EAGLEBEN-SA_00332779 | SLAY-VIVMUS0083196 | SLAY-VIVMUS0083196 |
| EAGLEBEN-SA_00002384 | EAGLEBEN-SA_00002384 | EAGLEBEN-SA_00332780 | EAGLEBEN-SA_00332780 | SLAY-VIVMUS0083197 | SLAY-VIVMUS0083197 |
| EAGLEBEN-SA_00002385 | EAGLEBEN-SA_00002385 | EAGLEBEN-SA_00332781 | EAGLEBEN-SA_00332781 | SLAY-VIVMUS0083298 | SLAY-VIVMUS0083298 |
| EAGLEBEN-SA_00002395 | EAGLEBEN-SA_00002395 | EAGLEBEN-SA_00332782 | EAGLEBEN-SA_00332782 | SLAY-VIVMUS0083787 | SLAY-VIVMUS0083788 |
| EAGLEBEN-SA_00002401 | EAGLEBEN-SA_00002401 | EAGLEBEN-SA_00332783 | EAGLEBEN-SA_00332783 | SLAY-VIVMUS0083789 | SLAY-VIVMUS0083791 |
| EAGLEBEN-SA_00002446 | EAGLEBEN-SA_00002446 | EAGLEBEN-SA_00332784 | EAGLEBEN-SA_00332784 | SLAY-VIVMUS0083994 | SLAY-VIVMUS0083998 |
| EAGLEBEN-SA_00002447 | EAGLEBEN-SA_00002450 | EAGLEBEN-SA_00332785 | EAGLEBEN-SA_00332785 | SLAY-VIVMUS0085432 | SLAY-VIVMUS0085432 |
| EAGLEBEN-SA_00002460 | EAGLEBEN-SA_00002464 | EAGLEBEN-SA_00332786 | EAGLEBEN-SA_00332786 | SLAY-VIVMUS0087470 | SLAY-VIVMUS0087470 |
| EAGLEBEN-SA_00002465 | EAGLEBEN-SA_00002465 | EAGLEBEN-SA_00332787 | EAGLEBEN-SA_00332787 | SLAY-VIVMUS0087475 | SLAY-VIVMUS0087475 |
| EAGLEBEN-SA_00002470 | EAGLEBEN-SA_00002470 | EAGLEBEN-SA_00332788 | EAGLEBEN-SA_00332788 | SLAY-VIVMUS0089522 | SLAY-VIVMUS0089562 |
| EAGLEBEN-SA_00002471 | EAGLEBEN-SA_00002471 | EAGLEBEN-SA_00332789 | EAGLEBEN-SA_00332789 | SLAY-VIVMUS0092320 | SLAY-VIVMUS0092320 |
| EAGLEBEN-SA_00002481 | EAGLEBEN-SA_00002481 | EAGLEBEN-SA_00332790 | EAGLEBEN-SA_00332790 | SLAY-VIVMUS0093269 | SLAY-VIVMUS0093272 |
| EAGLEBEN-SA_00002483 | EAGLEBEN-SA_00002485 | EAGLEBEN-SA_00332791 | EAGLEBEN-SA_00332791 | SLAY-VIVMUS0093441 | SLAY-VIVMUS0093454 |
| EAGLEBEN-SA_00002486 | EAGLEBEN-SA_00002486 | EAGLEBEN-SA_00332792 | EAGLEBEN-SA_00332792 | SLAY-VIVMUS0093489 | SLAY-VIVMUS0093490 |
| EAGLEBEN-SA_00002487 | EAGLEBEN-SA_00002487 | EAGLEBEN-SA_00332793 | EAGLEBEN-SA_00332793 | SLAY-VIVMUS0093503 | SLAY-VIVMUS0093516 |
| EAGLEBEN-SA_00002488 | EAGLEBEN-SA_00002500 | EAGLEBEN-SA_00332794 | EAGLEBEN-SA_00332794 | SLAY-VIVMUS0093540 | SLAY-VIVMUS0093546 |
| EAGLEBEN-SA_00002501 | EAGLEBEN-SA_00002501 | EAGLEBEN-SA_00332795 | EAGLEBEN-SA_00332795 | SLAY-VIVMUS0094463 | SLAY-VIVMUS0094476 |
| EAGLEBEN-SA_00002502 | EAGLEBEN-SA_00002502 | EAGLEBEN-SA_00332796 | EAGLEBEN-SA_00332796 | SLAY-VIVMUS0094724 | SLAY-VIVMUS0094727 |
| EAGLEBEN-SA_00002503 | EAGLEBEN-SA_00002503 | EAGLEBEN-SA_00332797 | EAGLEBEN-SA_00332798 | SLAY-VIVMUS0095081 | SLAY-VIVMUS0095104 |
| EAGLEBEN-SA_00002504 | EAGLEBEN-SA_00002504 | EAGLEBEN-SA_00332798 | EAGLEBEN-SA_00332798 | SLAY-VIVMUS0095106 | SLAY-VIVMUS0095112 |
| EAGLEBEN-SA_00002505 | EAGLEBEN-SA_00002505 | EAGLEBEN-SA_00332799 | EAGLEBEN-SA_00332799 | SLAY-VIVMUS0095456 | SLAY-VIVMUS0095469 |
| EAGLEBEN-SA_00002506 | EAGLEBEN-SA_00002506 | EAGLEBEN-SA_00332800 | EAGLEBEN-SA_00332800 | SLAY-VIVMUS0096892 | SLAY-VIVMUS0096892 |
| EAGLEBEN-SA_00002507 | EAGLEBEN-SA_00002507 | EAGLEBEN-SA_00332801 | EAGLEBEN-SA_00332801 | SLAY-VIVMUS0097068 | SLAY-VIVMUS0097069 |
| EAGLEBEN-SA_00002520 | EAGLEBEN-SA_00002523 | EAGLEBEN-SA_00332802 | EAGLEBEN-SA_00332802 | SLAY-VIVMUS0097079 | SLAY-VIVMUS0097079 |
| EAGLEBEN-SA_00002528 | EAGLEBEN-SA_00002528 | EAGLEBEN-SA_00332803 | EAGLEBEN-SA_00332803 | SLAY-VIVMUS0097391 | SLAY-VIVMUS0097391 |
| EAGLEBEN-SA_00002529 | EAGLEBEN-SA_00002529 | EAGLEBEN-SA_00332804 | EAGLEBEN-SA_00332804 | SLAY-VIVMUS0097392 | SLAY-VIVMUS0097392 |
| EAGLEBEN-SA_00002530 | EAGLEBEN-SA_00002530 | EAGLEBEN-SA_00332805 | EAGLEBEN-SA_00332805 | SLAY-VIVMUS0107487 | SLAY-VIVMUS0107487 |
| EAGLEBEN-SA_00002532 | EAGLEBEN-SA_00002532 | EAGLEBEN-SA_00332806 | EAGLEBEN-SA_00332807 | SLAY-VIVMUS0107493 | SLAY-VIVMUS0107494 |
| EAGLEBEN-SA_00002533 | EAGLEBEN-SA_00002533 | EAGLEBEN-SA_00332808 | EAGLEBEN-SA_00332808 | SLAY-VIVMUS0108016 | SLAY-VIVMUS0108019 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00002534 | EAGLEBEN-SA_00002534 | EAGLEBEN-SA_00332809 | EAGLEBEN-SA_00332809 | SLAY-VIVMUS0122652 | SLAY-VIVMUS0122654 |
| EAGLEBEN-SA_00002535 | EAGLEBEN-SA_00002536 | EAGLEBEN-SA_00332810 | EAGLEBEN-SA_00332810 | SLAY-VIVMUS0123911 | SLAY-VIVMUS0123912 |
| EAGLEBEN-SA_00002543 | EAGLEBEN-SA_00002543 | EAGLEBEN-SA_00332811 | EAGLEBEN-SA_00332811 | SLAY-VIVMUS0125205 | SLAY-VIVMUS0125211 |
| EAGLEBEN-SA_00002544 | EAGLEBEN-SA_00002544 | EAGLEBEN-SA_00332812 | EAGLEBEN-SA_00332812 | SLAY-VIVMUS0125694 | SLAY-VIVMUS0125694 |
| EAGLEBEN-SA_00002546 | EAGLEBEN-SA_00002546 | EAGLEBEN-SA_00332813 | EAGLEBEN-SA_00332813 | SLAY-VIVMUS0126514 | SLAY-VIVMUS0126516 |
| EAGLEBEN-SA_00002547 | EAGLEBEN-SA_00002547 | EAGLEBEN-SA_00332814 | EAGLEBEN-SA_00332814 | SLAY-VIVMUS0126854 | SLAY-VIVMUS0126855 |
| EAGLEBEN-SA_00002548 | EAGLEBEN-SA_00002548 | EAGLEBEN-SA_00332815 | EAGLEBEN-SA_00332824 | SLAY-VIVMUS0132934 | SLAY-VIVMUS0132935 |
| EAGLEBEN-SA_00002549 | EAGLEBEN-SA_00002549 | EAGLEBEN-SA_00332825 | EAGLEBEN-SA_00332858 | SLAY-VIVMUS0137041 | SLAY-VIVMUS0137042 |
| EAGLEBEN-SA_00002575 | EAGLEBEN-SA_00002575 | EAGLEBEN-SA_00332859 | EAGLEBEN-SA_00332899 | SLAY-VIVMUS0137043 | SLAY-VIVMUS0137043 |
| EAGLEBEN-SA_00002576 | EAGLEBEN-SA_00002576 | EAGLEBEN-SA_00332900 | EAGLEBEN-SA_00332904 | SLAY-VIVMUS0137044 | SLAY-VIVMUS0137044 |
| EAGLEBEN-SA_00002577 | EAGLEBEN-SA_00002577 | EAGLEBEN-SA_00332905 | EAGLEBEN-SA_00332912 | SLAY-VIVMUS0137071 | SLAY-VIVMUS0137072 |
| EAGLEBEN-SA_00002581 | EAGLEBEN-SA_00002581 | EAGLEBEN-SA_00332913 | EAGLEBEN-SA_00332933 | SLAY-VIVMUS0137073 | SLAY-VIVMUS0137074 |
| EAGLEBEN-SA_00002582 | EAGLEBEN-SA_00002583 | EAGLEBEN-SA_00332934 | EAGLEBEN-SA_00332969 | SLAY-VIVMUS0137075 | SLAY-VIVMUS0137076 |
| EAGLEBEN-SA_00002584 | EAGLEBEN-SA_00002584 | EAGLEBEN-SA_00332970 | EAGLEBEN-SA_00333009 | SLAY-VIVMUS0137077 | SLAY-VIVMUS0137078 |
| EAGLEBEN-SA_00002590 | EAGLEBEN-SA_00002593 | EAGLEBEN-SA_00333010 | EAGLEBEN-SA_00333012 | SLAY-VIVMUS0137105 | SLAY-VIVMUS0137106 |
| EAGLEBEN-SA_00002594 | EAGLEBEN-SA_00002597 | EAGLEBEN-SA_00333013 | EAGLEBEN-SA_00333014 | SLAY-VIVMUS0137107 | SLAY-VIVMUS0137108 |
| EAGLEBEN-SA_00002604 | EAGLEBEN-SA_00002607 | EAGLEBEN-SA_00333015 | EAGLEBEN-SA_00333036 | SLAY-VIVMUS0137109 | SLAY-VIVMUS0137131 |
| EAGLEBEN-SA_00002613 | EAGLEBEN-SA_00002613 | EAGLEBEN-SA_00333037 | EAGLEBEN-SA_00333038 | SLAY-VIVMUS0137132 | SLAY-VIVMUS0137137 |
| EAGLEBEN-SA_00002615 | EAGLEBEN-SA_00002616 | EAGLEBEN-SA_00333039 | EAGLEBEN-SA_00333047 | SLAY-VIVMUS0137138 | SLAY-VIVMUS0137139 |
| EAGLEBEN-SA_00002617 | EAGLEBEN-SA_00002617 | EAGLEBEN-SA_00333048 | EAGLEBEN-SA_00333069 | SLAY-VIVMUS0137166 | SLAY-VIVMUS0137167 |
| EAGLEBEN-SA_00002619 | EAGLEBEN-SA_00002619 | EAGLEBEN-SA_00333070 | EAGLEBEN-SA_00333070 | SLAY-VIVMUS0137168 | SLAY-VIVMUS0137178 |
| EAGLEBEN-SA_00002620 | EAGLEBEN-SA_00002620 | EAGLEBEN-SA_00333128 | EAGLEBEN-SA_00333145 | SLAY-VIVMUS0137179 | SLAY-VIVMUS0137206 |
| EAGLEBEN-SA_00002621 | EAGLEBEN-SA_00002626 | EAGLEBEN-SA_00344174 | EAGLEBEN-SA_00344189 | SLAY-VIVMUS0137207 | SLAY-VIVMUS0137207 |
| EAGLEBEN-SA_00002627 | EAGLEBEN-SA_00002632 | EAGLEBEN-SA_00344190 | EAGLEBEN-SA_00344218 | SLAY-VIVMUS0137234 | SLAY-VIVMUS0137235 |
| EAGLEBEN-SA_00002633 | EAGLEBEN-SA_00002633 | EAGLEBEN-SA_00344219 | EAGLEBEN-SA_00344246 | SLAY-VIVMUS0137236 | SLAY-VIVMUS0137236 |
| EAGLEBEN-SA_00002634 | EAGLEBEN-SA_00002634 | EAGLEBEN-SA_00344247 | EAGLEBEN-SA_00344273 | SLAY-VIVMUS0137237 | SLAY-VIVMUS0137237 |
| EAGLEBEN-SA_00002634 | EAGLEBEN-SA_00002634 | EAGLEBEN-SA_00344274 | EAGLEBEN-SA_00344318 | SLAY-VIVMUS0137264 | SLAY-VIVMUS0137265 |
| EAGLEBEN-SA_00002635 | EAGLEBEN-SA_00002642 | EAGLEBEN-SA_00344319 | EAGLEBEN-SA_00344399 | SLAY-VIVMUS0137266 | SLAY-VIVMUS0137277 |
| EAGLEBEN-SA_00002635 | EAGLEBEN-SA_00002635 | EAGLEBEN-SA_00344400 | EAGLEBEN-SA_00344610 | SLAY-VIVMUS0137419 | SLAY-VIVMUS0137419 |
| EAGLEBEN-SA_00052743 | EAGLEBEN-SA_00052748 | EAGLEBEN-SA_00344611 | EAGLEBEN-SA_00344762 | SLAY-VIVMUS0137420 | SLAY-VIVMUS0137420 |
| EAGLEBEN-SA_00052756 | EAGLEBEN-SA_00052757 | EAGLEBEN-SA_00345390 | EAGLEBEN-SA_00345610 | SLAY-VIVMUS0137421 | SLAY-VIVMUS0137422 |
| EAGLEBEN-SA_00052868 | EAGLEBEN-SA_00052868 | EAGLEBEN-SA_00345611 | EAGLEBEN-SA_00345953 | SLAY-VIVMUS0137423 | SLAY-VIVMUS0137424 |
| EAGLEBEN-SA_00053541 | EAGLEBEN-SA_00053546 | EAGLEBEN-SA_00345954 | EAGLEBEN-SA_00345959 | SLAY-VIVMUS0137425 | SLAY-VIVMUS0137427 |
| EAGLEBEN-SA_00053547 | EAGLEBEN-SA_00053547 | EAGLEBEN-SA_00345960 | EAGLEBEN-SA_00345963 | SLAY-VIVMUS0137428 | SLAY-VIVMUS0137429 |
| EAGLEBEN-SA_00056292 | EAGLEBEN-SA_00056293 | EAGLEBEN-SA_00345964 | EAGLEBEN-SA_00345967 | SLAY-VIVMUS0137431 | SLAY-VIVMUS0137448 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*

**DOCUMENTS CONSIDERED**

Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00056294 | EAGLEBEN-SA_00056295 | EAGLEBEN-SA_00345968 | EAGLEBEN-SA_00345977 | SLAY-VIVMUS0137458 | SLAY-VIVMUS0137459 |
| EAGLEBEN-SA_00057701 | EAGLEBEN-SA_00057712 | EAGLEBEN-SA_00345978 | EAGLEBEN-SA_00345983 | SLAY-VIVMUS0141164 | SLAY-VIVMUS0141225 |
| EAGLEBEN-SA_00057716 | EAGLEBEN-SA_00057719 | EAGLEBEN-SA_00345984 | EAGLEBEN-SA_00346020 | SLAY-VIVMUS0141789 | SLAY-VIVMUS0141802 |
| EAGLEBEN-SA_00057723 | EAGLEBEN-SA_00057734 | EAGLEBEN-SA_00346021 | EAGLEBEN-SA_00346024 | SLAY-VIVMUS0148749 | SLAY-VIVMUS0148749 |
| EAGLEBEN-SA_00057737 | EAGLEBEN-SA_00057738 | EAGLEBEN-SA_00346025 | EAGLEBEN-SA_00346027 | SLAY-VIVMUS0149588 | SLAY-VIVMUS0149593 |
| EAGLEBEN-SA_00057739 | EAGLEBEN-SA_00057739 | EAGLEBEN-SA_00346028 | EAGLEBEN-SA_00346061 | SLAY-VIVMUS0152647 | SLAY-VIVMUS0152647 |
| EAGLEBEN-SA_00057748 | EAGLEBEN-SA_00057749 | EAGLEBEN-SA_00346062 | EAGLEBEN-SA_00346457 | SLAY-VIVMUS0153446 | SLAY-VIVMUS0153449 |
| EAGLEBEN-SA_00057750 | EAGLEBEN-SA_00057756 | EAGLEBEN-SA_00346440 | EAGLEBEN-SA_00346453 | SLAY-VIVMUS0153734 | SLAY-VIVMUS0153737 |
| EAGLEBEN-SA_00057757 | EAGLEBEN-SA_00057767 | EAGLEBEN-SA_00346454 | EAGLEBEN-SA_00346457 | SLAY-VIVMUS0154238 | SLAY-VIVMUS0154241 |
| EAGLEBEN-SA_00057768 | EAGLEBEN-SA_00057768 | EAGLEBEN-SA_00346458 | EAGLEBEN-SA_00346481 | SLAY-VIVMUS0155197 | SLAY-VIVMUS0155218 |
| EAGLEBEN-SA_00057769 | EAGLEBEN-SA_00057769 | EAGLEBEN-SA_00346482 | EAGLEBEN-SA_00346509 | SLAY-VIVMUS0155879 | SLAY-VIVMUS0155879 |
| EAGLEBEN-SA_00072300 | EAGLEBEN-SA_00072400 | EAGLEBEN-SA_00346504 | EAGLEBEN-SA_00346506 | SLAY-VIVMUS0158697 | SLAY-VIVMUS0158697 |
| EAGLEBEN-SA_00072401 | EAGLEBEN-SA_00072405 | EAGLEBEN-SA_00346510 | EAGLEBEN-SA_00346559 | SLAY-VIVMUS0163038 | SLAY-VIVMUS0163038 |
| EAGLEBEN-SA_00161064 | EAGLEBEN-SA_00161166 | EAGLEBEN-SA_00346560 | EAGLEBEN-SA_00346591 | SLAY-VIVMUS0163039 | SLAY-VIVMUS0163039 |
| EAGLEBEN-SA_00242303 | EAGLEBEN-SA_00242337 | EAGLEBEN-SA_00346592 | EAGLEBEN-SA_00346663 | SLAY-VIVMUS0163040 | SLAY-VIVMUS0163040 |
| EAGLEBEN-SA_00242338 | EAGLEBEN-SA_00242338 | EAGLEBEN-SA_00346664 | EAGLEBEN-SA_00346761 | SLAY-VIVMUS0163041 | SLAY-VIVMUS0163041 |
| EAGLEBEN-SA_00242339 | EAGLEBEN-SA_00242342 | EAGLEBEN-SA_00346762 | EAGLEBEN-SA_00346887 | SLAY-VIVMUS0163042 | SLAY-VIVMUS0163042 |
| EAGLEBEN-SA_00242343 | EAGLEBEN-SA_00242378 | EAGLEBEN-SA_00346888 | EAGLEBEN-SA_00346888 | SLAY-VIVMUS0163043 | SLAY-VIVMUS0163043 |
| EAGLEBEN-SA_00242379 | EAGLEBEN-SA_00242381 | EAGLEBEN-SA_00346888 | EAGLEBEN-SA_00347198 | SLAY-VIVMUS0163044 | SLAY-VIVMUS0163044 |
| EAGLEBEN-SA_00242382 | EAGLEBEN-SA_00242389 | EAGLEBEN-SA_00347199 | EAGLEBEN-SA_00347199 | SLAY-VIVMUS0163045 | SLAY-VIVMUS0163045 |
| EAGLEBEN-SA_00243681 | EAGLEBEN-SA_00243706 | EAGLEBEN-SA_00347200 | EAGLEBEN-SA_00347235 | SLAY-VIVMUS0163046 | SLAY-VIVMUS0163046 |
| EAGLEBEN-SA_00259185 | EAGLEBEN-SA_00259255 | EAGLEBEN-SA_00347236 | EAGLEBEN-SA_00347237 | SLAY-VIVMUS0163047 | SLAY-VIVMUS0163063 |
| EAGLEBEN-SA_00266221 | EAGLEBEN-SA_00266225 | EAGLEBEN-SA_00347238 | EAGLEBEN-SA_00347239 | SLAY-VIVMUS0163064 | SLAY-VIVMUS0163080 |
| EAGLEBEN-SA_00266223 | EAGLEBEN-SA_00266223 | EAGLEBEN-SA_00347240 | EAGLEBEN-SA_00347244 | SLAY-VIVMUS0163081 | SLAY-VIVMUS0163082 |
| EAGLEBEN-SA_00266224 | EAGLEBEN-SA_00266224 | EAGLEBEN-SA_00347245 | EAGLEBEN-SA_00347246 | SLAY-VIVMUS0163083 | SLAY-VIVMUS0163084 |
| EAGLEBEN-SA_00266225 | EAGLEBEN-SA_00266225 | EAGLEBEN-SA_00347247 | EAGLEBEN-SA_00347250 | SLAY-VIVMUS0163085 | SLAY-VIVMUS0163086 |
| EAGLEBEN-SA_00266226 | EAGLEBEN-SA_00266226 | EAGLEBEN-SA_00347251 | EAGLEBEN-SA_00347268 | SLAY-VIVMUS0163087 | SLAY-VIVMUS0163088 |
| EAGLEBEN-SA_00266227 | EAGLEBEN-SA_00266228 | EAGLEBEN-SA_00347269 | EAGLEBEN-SA_00347284 | SLAY-VIVMUS0163089 | SLAY-VIVMUS0163089 |
| EAGLEBEN-SA_00266229 | EAGLEBEN-SA_00266233 | EAGLEBEN-SA_00347285 | EAGLEBEN-SA_00347211 | SLAY-VIVMUS0163090 | SLAY-VIVMUS0163090 |
| EAGLEBEN-SA_00266234 | EAGLEBEN-SA_00266237 | EAGLEBEN-SA_00347312 | EAGLEBEN-SA_00347312 | SLAY-VIVMUS0163091 | SLAY-VIVMUS0163091 |
| EAGLEBEN-SA_00266238 | EAGLEBEN-SA_00266239 | EAGLEBEN-SA_00347313 | EAGLEBEN-SA_00347381 | SLAY-VIVMUS0163092 | SLAY-VIVMUS0163092 |
| EAGLEBEN-SA_00266240 | EAGLEBEN-SA_00266240 | EAGLEBEN-SA_00347382 | EAGLEBEN-SA_00347436 | SLAY-VIVMUS0163093 | SLAY-VIVMUS0163093 |
| EAGLEBEN-SA_00266241 | EAGLEBEN-SA_00266241 | EAGLEBEN-SA_00347437 | EAGLEBEN-SA_00347441 | SLAY-VIVMUS0163094 | SLAY-VIVMUS0163094 |
| EAGLEBEN-SA_00266242 | EAGLEBEN-SA_00266246 | EAGLEBEN-SA_00347442 | EAGLEBEN-SA_00347446 | SLAY-VIVMUS0163095 | SLAY-VIVMUS0163095 |
| EAGLEBEN-SA_00266242 | EAGLEBEN-SA_00266246 | EAGLEBEN-SA_00347447 | EAGLEBEN-SA_00347500 | SLAY-VIVMUS0163096 | SLAY-VIVMUS0163096 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00266247 | EAGLEBEN-SA_00266247 | EAGLEBEN-SA_00347562 | EAGLEBEN-SA_00347564 | SLAY-VIVMUS0163097 | SLAY-VIVMUS0163097 |
| EAGLEBEN-SA_00272201 | EAGLEBEN-SA_00272204 | EAGLEBEN-SA_00347565 | EAGLEBEN-SA_00347572 | SLAY-VIVMUS0163098 | SLAY-VIVMUS0163098 |
| EAGLEBEN-SA_00301140 | EAGLEBEN-SA_00301144 | EAGLEBEN-SA_00347573 | EAGLEBEN-SA_00347580 | SLAY-VIVMUS0163099 | SLAY-VIVMUS0163099 |
| EAGLEBEN-SA_00301145 | EAGLEBEN-SA_00301176 | EAGLEBEN-SA_00347581 | EAGLEBEN-SA_00347585 | SLAY-VIVMUS0163100 | SLAY-VIVMUS0163102 |
| EAGLEBEN-SA_00301654 | EAGLEBEN-SA_00301677 | EAGLEBEN-SA_00347591 | EAGLEBEN-SA_00347630 | SLAY-VIVMUS0163103 | SLAY-VIVMUS0163103 |
| EAGLEBEN-SA_00301683 | EAGLEBEN-SA_00301691 | EAGLEBEN-SA_00351777 | EAGLEBEN-SA_00351786 | SLAY-VIVMUS0163104 | SLAY-VIVMUS0163105 |
| EAGLEBEN-SA_00321330 | EAGLEBEN-SA_00321330 | EAGLEBEN-SA_00351787 | EAGLEBEN-SA_00351790 | SLAY-VIVMUS0163106 | SLAY-VIVMUS0163106 |
| EAGLEBEN-SA_00321330 | EAGLEBEN-SA_00321330 | EAGLEBEN-SA_00351791 | EAGLEBEN-SA_00351791 | SLAY-VIVMUS0163107 | SLAY-VIVMUS0163107 |
| EAGLEBEN-SA_00321331 | EAGLEBEN-SA_00321336 | EAGLEBEN-SA_00351803 | EAGLEBEN-SA_00351803 | SLAY-VIVMUS0163108 | SLAY-VIVMUS0163108 |
| EAGLEBEN-SA_00321337 | EAGLEBEN-SA_00321345 | EAGLEBEN-SA_00351804 | EAGLEBEN-SA_00351804 | SLAY-VIVMUS0163109 | SLAY-VIVMUS0163109 |
| EAGLEBEN-SA_00321346 | EAGLEBEN-SA_00321382 | EAGLEBEN-SA_00352404 | EAGLEBEN-SA_00352404 | SLAY-VIVMUS0163110 | SLAY-VIVMUS0163110 |
| EAGLEBEN-SA_00321383 | EAGLEBEN-SA_00321387 | EAGLEBEN-SA_00352405 | EAGLEBEN-SA_00352405 | SLAY-VIVMUS0163111 | SLAY-VIVMUS0163111 |
| EAGLEBEN-SA_00321388 | EAGLEBEN-SA_00321395 | EAGLEBEN-SA_00352406 | EAGLEBEN-SA_00352406 | SLAY-VIVMUS0163112 | SLAY-VIVMUS0163112 |
| EAGLEBEN-SA_00321396 | EAGLEBEN-SA_00321403 | EAGLEBEN-SA_00352407 | EAGLEBEN-SA_00352407 | SLAY-VIVMUS0163113 | SLAY-VIVMUS0163113 |
| EAGLEBEN-SA_00321404 | EAGLEBEN-SA_00321411 | EAGLEBEN-SA_00352408 | EAGLEBEN-SA_00352408 | SLAY-VIVMUS0163114 | SLAY-VIVMUS0163114 |
| EAGLEBEN-SA_00321412 | EAGLEBEN-SA_00321419 | EAGLEBEN-SA_00352409 | EAGLEBEN-SA_00352409 | SLAY-VIVMUS0163115 | SLAY-VIVMUS0163115 |
| EAGLEBEN-SA_00321420 | EAGLEBEN-SA_00321437 | EAGLEBEN-SA_00352410 | EAGLEBEN-SA_00352410 | SLAY-VIVMUS0163116 | SLAY-VIVMUS0163116 |
| EAGLEBEN-SA_00321438 | EAGLEBEN-SA_00321971 | EAGLEBEN-SA_00352411 | EAGLEBEN-SA_00352411 | SLAY-VIVMUS0163117 | SLAY-VIVMUS0163117 |
| EAGLEBEN-SA_00321972 | EAGLEBEN-SA_00321979 | EAGLEBEN-SA_00352412 | EAGLEBEN-SA_00352412 | SLAY-VIVMUS0163119 | SLAY-VIVMUS0163120 |
| EAGLEBEN-SA_00321980 | EAGLEBEN-SA_00321999 | EAGLEBEN-SA_00352413 | EAGLEBEN-SA_00352413 | SLAY-VIVMUS0163121 | SLAY-VIVMUS0163121 |
| EAGLEBEN-SA_00322000 | EAGLEBEN-SA_00322005 | EAGLEBEN-SA_00352414 | EAGLEBEN-SA_00352414 | SLAY-VIVMUS0163122 | SLAY-VIVMUS0163122 |
| EAGLEBEN-SA_00322006 | EAGLEBEN-SA_00322539 | EAGLEBEN-SA_00352415 | EAGLEBEN-SA_00352415 | SLAY-VIVMUS0163123 | SLAY-VIVMUS0163123 |
| EAGLEBEN-SA_00322540 | EAGLEBEN-SA_00322547 | EAGLEBEN-SA_00352416 | EAGLEBEN-SA_00352416 | SLAY-VIVMUS0163124 | SLAY-VIVMUS0163125 |
| EAGLEBEN-SA_00322548 | EAGLEBEN-SA_00322577 | EAGLEBEN-SA_00352417 | EAGLEBEN-SA_00352417 | SLAY-VIVMUS0163126 | SLAY-VIVMUS0163126 |
| EAGLEBEN-SA_00323078 | EAGLEBEN-SA_00323085 | EAGLEBEN-SA_00352418 | EAGLEBEN-SA_00352418 | SLAY-VIVMUS0163127 | SLAY-VIVMUS0163127 |
| EAGLEBEN-SA_00323086 | EAGLEBEN-SA_00323105 | EAGLEBEN-SA_00352419 | EAGLEBEN-SA_00352419 | SLAY-VIVMUS0163128 | SLAY-VIVMUS0163128 |
| EAGLEBEN-SA_00323106 | EAGLEBEN-SA_00323111 | EAGLEBEN-SA_00352420 | EAGLEBEN-SA_00352420 | SLAY-VIVMUS0163129 | SLAY-VIVMUS0163129 |
| EAGLEBEN-SA_00323112 | EAGLEBEN-SA_00323645 | EAGLEBEN-SA_00352421 | EAGLEBEN-SA_00352421 | SLAY-VIVMUS0163130 | SLAY-VIVMUS0163130 |
| EAGLEBEN-SA_00323646 | EAGLEBEN-SA_00323688 | EAGLEBEN-SA_00352422 | EAGLEBEN-SA_00352422 | SLAY-VIVMUS0163131 | SLAY-VIVMUS0163131 |
| EAGLEBEN-SA_00324189 | EAGLEBEN-SA_00324203 | EAGLEBEN-SA_00352423 | EAGLEBEN-SA_00352423 | SLAY-VIVMUS0163132 | SLAY-VIVMUS0163132 |
| EAGLEBEN-SA_00324204 | EAGLEBEN-SA_00324204 | EAGLEBEN-SA_00352424 | EAGLEBEN-SA_00352424 | SLAY-VIVMUS0163133 | SLAY-VIVMUS0163133 |
| EAGLEBEN-SA_00324205 | EAGLEBEN-SA_00324210 | EAGLEBEN-SA_00352425 | EAGLEBEN-SA_00352425 | SLAY-VIVMUS0163134 | SLAY-VIVMUS0163134 |
| EAGLEBEN-SA_00324211 | EAGLEBEN-SA_00324218 | EAGLEBEN-SA_00352426 | EAGLEBEN-SA_00352426 | SLAY-VIVMUS0163135 | SLAY-VIVMUS0163135 |
| EAGLEBEN-SA_00324219 | EAGLEBEN-SA_00324226 | EAGLEBEN-SA_00352427 | EAGLEBEN-SA_00352427 | SLAY-VIVMUS0163136 | SLAY-VIVMUS0163136 |
| EAGLEBEN-SA_00324227 | EAGLEBEN-SA_00324234 | EAGLEBEN-SA_00352428 | EAGLEBEN-SA_00352428 | SLAY-VIVMUS0163137 | SLAY-VIVMUS0163138 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00324235 | EAGLEBEN-SA_00324250 | EAGLEBEN-SA_00352429 | EAGLEBEN-SA_00352429 | SLAY-VIVMUS0163139 | SLAY-VIVMUS0163139 |
| EAGLEBEN-SA_00324251 | EAGLEBEN-SA_00324266 | EAGLEBEN-SA_00352430 | EAGLEBEN-SA_00352430 | SLAY-VIVMUS0163140 | SLAY-VIVMUS0163140 |
| EAGLEBEN-SA_00324267 | EAGLEBEN-SA_00324807 | EAGLEBEN-SA_00352431 | EAGLEBEN-SA_00352431 | SLAY-VIVMUS0163141 | SLAY-VIVMUS0163141 |
| EAGLEBEN-SA_00324808 | EAGLEBEN-SA_00324823 | EAGLEBEN-SA_00353672 | EAGLEBEN-SA_00353672 | SLAY-VIVMUS0163142 | SLAY-VIVMUS0163142 |
| EAGLEBEN-SA_00324824 | EAGLEBEN-SA_00324824 | EAGLEBEN-SA_00353673 | EAGLEBEN-SA_00353673 | SLAY-VIVMUS0163143 | SLAY-VIVMUS0163143 |
| EAGLEBEN-SA_00324825 | EAGLEBEN-SA_00324842 | EAGLEBEN-SA_00353674 | EAGLEBEN-SA_00353674 | SLAY-VIVMUS0163190 | SLAY-VIVMUS0163190 |
| EAGLEBEN-SA_00324843 | EAGLEBEN-SA_00325384 | EAGLEBEN-SA_00353675 | EAGLEBEN-SA_00353677 | SLAY-VIVMUS0163191 | SLAY-VIVMUS0163192 |
| EAGLEBEN-SA_00325385 | EAGLEBEN-SA_00325400 | EAGLEBEN-SA_00353677 | EAGLEBEN-SA_00353677 | SLAY-VIVMUS0163193 | SLAY-VIVMUS0163193 |
| EAGLEBEN-SA_00325401 | EAGLEBEN-SA_00325401 | EAGLEBEN-SA_00353678 | EAGLEBEN-SA_00353678 | SLAY-VIVMUS0163214 | SLAY-VIVMUS0163215 |
| EAGLEBEN-SA_00325402 | EAGLEBEN-SA_00325419 | EAGLEBEN-SA_00358761 | EAGLEBEN-SA_00358761 | SLAY-VIVMUS0163216 | SLAY-VIVMUS0163216 |
| EAGLEBEN-SA_00325420 | EAGLEBEN-SA_00325962 | EAGLEBEN-SA_00363429 | EAGLEBEN-SA_00363436 | SLAY-VIVMUS0163219 | SLAY-VIVMUS0163219 |
| EAGLEBEN-SA_00325963 | EAGLEBEN-SA_00325977 | EAGLEBEN-SA_00363437 | EAGLEBEN-SA_00363450 | SLAY-VIVMUS0163246 | SLAY-VIVMUS0163246 |
| EAGLEBEN-SA_00325978 | EAGLEBEN-SA_00325994 | EAGLEBEN-SA_00363451 | EAGLEBEN-SA_00363460 | SLAY-VIVMUS0163250 | SLAY-VIVMUS0163250 |
| EAGLEBEN-SA_00325995 | EAGLEBEN-SA_00326537 | EAGLEBEN-SA_00363461 | EAGLEBEN-SA_00363462 | SLAY-VIVMUS0163272 | SLAY-VIVMUS0163272 |
| EAGLEBEN-SA_00326538 | EAGLEBEN-SA_00326552 | EAGLEBEN-SA_00363465 | EAGLEBEN-SA_00363466 | SLAY-VIVMUS0163279 | SLAY-VIVMUS0163279 |
| EAGLEBEN-SA_00326553 | EAGLEBEN-SA_00326615 | EAGLEBEN-SA_00363467 | EAGLEBEN-SA_00363469 | SLAY-VIVMUS0163313 | SLAY-VIVMUS0163313 |
| EAGLEBEN-SA_00326616 | EAGLEBEN-SA_00326678 | EAGLEBEN-SA_00363470 | EAGLEBEN-SA_00363479 | SLAY-VIVMUS0163334 | SLAY-VIVMUS0163335 |
| EAGLEBEN-SA_00326679 | EAGLEBEN-SA_00326749 | EAGLEBEN-SA_00363484 | EAGLEBEN-SA_00363488 | SLAY-VIVMUS0163342 | SLAY-VIVMUS0163342 |
| EAGLEBEN-SA_00326750 | EAGLEBEN-SA_00326817 | EAGLEBEN-SA_00363489 | EAGLEBEN-SA_00363497 | SLAY-VIVMUS0163347 | SLAY-VIVMUS0163347 |
| EAGLEBEN-SA_00326818 | EAGLEBEN-SA_00326933 | EAGLEBEN-SA_00363498 | EAGLEBEN-SA_00363499 | SLAY-VIVMUS0163356 | SLAY-VIVMUS0163357 |
| EAGLEBEN-SA_00326934 | EAGLEBEN-SA_00327082 | EAGLEBEN-SA_00363500 | EAGLEBEN-SA_00363504 | SLAY-VIVMUS0163384 | SLAY-VIVMUS0163384 |
| EAGLEBEN-SA_00327083 | EAGLEBEN-SA_00327089 | EAGLEBEN-SA_00363505 | EAGLEBEN-SA_00363513 | SLAY-VIVMUS0163490 | SLAY-VIVMUS0163490 |
| EAGLEBEN-SA_00327090 | EAGLEBEN-SA_00327148 | EAGLEBEN-SA_00363514 | EAGLEBEN-SA_00363567 | SLAY-VIVMUS0163493 | SLAY-VIVMUS0163493 |
| EAGLEBEN-SA_00327149 | EAGLEBEN-SA_00327231 | EAGLEBEN-SA_00363571 | EAGLEBEN-SA_00363576 | SLAY-VIVMUS0163504 | SLAY-VIVMUS0163504 |
| EAGLEBEN-SA_00327232 | EAGLEBEN-SA_00327391 | EAGLEBEN-SA_00363577 | EAGLEBEN-SA_00363578 | SLAY-VIVMUS0163616 | SLAY-VIVMUS0163616 |
| EAGLEBEN-SA_00327392 | EAGLEBEN-SA_00327410 | EAGLEBEN-SA_00363579 | EAGLEBEN-SA_00363606 | SLAY-VIVMUS0163620 | SLAY-VIVMUS0163620 |
| EAGLEBEN-SA_00327411 | EAGLEBEN-SA_00327412 | EAGLEBEN-SA_00363615 | EAGLEBEN-SA_00363628 | SLAY-VIVMUS0163624 | SLAY-VIVMUS0163624 |
| EAGLEBEN-SA_00327413 | EAGLEBEN-SA_00327421 | EAGLEBEN-SA_00363739 | EAGLEBEN-SA_00363774 | SLAY-VIVMUS0163673 | SLAY-VIVMUS0163679 |
| EAGLEBEN-SA_00327422 | EAGLEBEN-SA_00327606 | EAGLEBEN-SA_00363775 | EAGLEBEN-SA_00363796 | SLAY-VIVMUS0163808 | SLAY-VIVMUS0163808 |
| EAGLEBEN-SA_00327607 | EAGLEBEN-SA_00327636 | EAGLEBEN-SA_00363797 | EAGLEBEN-SA_00363798 | SLAY-VIVMUS0163862 | SLAY-VIVMUS0163862 |
| EAGLEBEN-SA_00327637 | EAGLEBEN-SA_00327647 | SLAY-BEL0011245 | SLAY-BEL0011303 | SLAY-VIVMUS0163884 | SLAY-VIVMUS0163884 |
| EAGLEBEN-SA_00327648 | EAGLEBEN-SA_00327660 | SLAY-BEL0011304 | SLAY-BEL0011348 | SLAY-VIVMUS0164217 | SLAY-VIVMUS0164217 |
| EAGLEBEN-SA_00327661 | EAGLEBEN-SA_00327663 | SLAY-BEL0011349 | SLAY-BEL0011362 | SLAY-VIVMUS0164228 | SLAY-VIVMUS0164228 |
| EAGLEBEN-SA_00327664 | EAGLEBEN-SA_00327667 | SLAY-BEL0011563 | SLAY-BEL0011806 | SLAY-VIVMUS0164250 | SLAY-VIVMUS0164250 |
| EAGLEBEN-SA_00327668 | EAGLEBEN-SA_00327862 | SLAY-BEL0011807 | SLAY-BEL0011863 | SLAY-VIVMUS0164251 | SLAY-VIVMUS0164251 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00327863 | EAGLEBEN-SA_00327887 | SLAY-BEL0012320 | SLAY-BEL0012320 | SLAY-VIVMUS0164257 | SLAY-VIVMUS0164257 |
| EAGLEBEN-SA_00327888 | EAGLEBEN-SA_00327903 | SLAY-BEL0012722 | SLAY-BEL0012723 | SLAY-VIVMUS0164366 | SLAY-VIVMUS0164366 |
| EAGLEBEN-SA_00327904 | EAGLEBEN-SA_00327917 | SLAY-BEL0012894 | SLAY-BEL0012966 | SLAY-VIVMUS0164367 | SLAY-VIVMUS0164367 |
| EAGLEBEN-SA_00327918 | EAGLEBEN-SA_00328122 | SLAY-BEL0017488 | SLAY-BEL0017490 | SLAY-VIVMUS0164368 | SLAY-VIVMUS0164368 |
| EAGLEBEN-SA_00328123 | EAGLEBEN-SA_00328124 | SLAY-BEL0020337 | SLAY-BEL0020337 | SLAY-VIVMUS0164369 | SLAY-VIVMUS0164369 |
| EAGLEBEN-SA_00328125 | EAGLEBEN-SA_00328130 | SLAY-BEL0020398 | SLAY-BEL0020399 | SLAY-VIVMUS0164571 | SLAY-VIVMUS0164571 |
| EAGLEBEN-SA_00328131 | EAGLEBEN-SA_00328133 | SLAY-BEL0021114 | SLAY-BEL0021152 | SLAY-VIVMUS0164624 | SLAY-VIVMUS0164624 |
| EAGLEBEN-SA_00328134 | EAGLEBEN-SA_00328135 | SLAY-BEL0021312 | SLAY-BEL0021314 | SLAY-VIVMUS0164656 | SLAY-VIVMUS0164656 |
| EAGLEBEN-SA_00328136 | EAGLEBEN-SA_00328151 | SLAY-BEL0021834 | SLAY-BEL0021835 | SLAY-VIVMUS0164657 | SLAY-VIVMUS0164657 |
| EAGLEBEN-SA_00328152 | EAGLEBEN-SA_00328166 | SLAY-BEL0022856 | SLAY-BEL0022894 | SLAY-VIVMUS0164658 | SLAY-VIVMUS0164658 |
| EAGLEBEN-SA_00328167 | EAGLEBEN-SA_00328182 | SLAY-BEL0023954 | SLAY-BEL0023954 | SLAY-VIVMUS0164659 | SLAY-VIVMUS0164659 |
| EAGLEBEN-SA_00328183 | EAGLEBEN-SA_00328395 | SLAY-BEL0025039 | SLAY-BEL0025040 | SLAY-VIVMUS0164716 | SLAY-VIVMUS0164716 |
| EAGLEBEN-SA_00328396 | EAGLEBEN-SA_00328397 | SLAY-BEL0027631 | SLAY-BEL0027631 | SLAY-VIVMUS0174985 | SLAY-VIVMUS0174985 |
| EAGLEBEN-SA_00328398 | EAGLEBEN-SA_00328446 | SLAY-BEL0027632 | SLAY-BEL0027632 | SLAY-VIVMUS0174995 | SLAY-VIVMUS0174995 |
| EAGLEBEN-SA_00328447 | EAGLEBEN-SA_00328450 | SLAY-BEL0028189 | SLAY-BEL0028189 | SLAY-VIVMUS0175006 | SLAY-VIVMUS0175006 |
| EAGLEBEN-SA_00328451 | EAGLEBEN-SA_00328453 | SLAY-BEL0033917 | SLAY-BEL0033918 | SLAY-VIVMUS0175017 | SLAY-VIVMUS0175017 |
| EAGLEBEN-SA_00328454 | EAGLEBEN-SA_00328466 | SLAY-BEL0034029 | SLAY-BEL0034033 | SLAY-VIVMUS0175027 | SLAY-VIVMUS0175027 |
| EAGLEBEN-SA_00328467 | EAGLEBEN-SA_00328695 | SLAY-VIVIMUS0226485 | SLAY-VIVIMUS0226485 | SLAY-VIVMUS0175074 | SLAY-VIVMUS0175074 |
| EAGLEBEN-SA_00328696 | EAGLEBEN-SA_00328726 | SLAY-VIVIMUS0226486 | SLAY-VIVIMUS0226486 | SLAY-VIVMUS0175077 | SLAY-VIVMUS0175077 |
| EAGLEBEN-SA_00328727 | EAGLEBEN-SA_00328728 | SLAY-VIVMUS0010306 | SLAY-VIVMUS0010309 | SLAY-VIVMUS0175097 | SLAY-VIVMUS0175097 |
| EAGLEBEN-SA_00328729 | EAGLEBEN-SA_00328746 | SLAY-VIVMUS0010310 | SLAY-VIVMUS0010310 | SLAY-VIVMUS0175102 | SLAY-VIVMUS0175102 |
| EAGLEBEN-SA_00328747 | EAGLEBEN-SA_00328760 | SLAY-VIVMUS0010311 | SLAY-VIVMUS0010311 | SLAY-VIVMUS0180466 | SLAY-VIVMUS0180467 |
| EAGLEBEN-SA_00328761 | EAGLEBEN-SA_00329007 | SLAY-VIVMUS0010312 | SLAY-VIVMUS0010312 | SLAY-VIVMUS0180468 | SLAY-VIVMUS0180468 |
| EAGLEBEN-SA_00329008 | EAGLEBEN-SA_00329075 | SLAY-VIVMUS0010313 | SLAY-VIVMUS0010313 | SLAY-VIVMUS0180469 | SLAY-VIVMUS0180469 |
| EAGLEBEN-SA_00329076 | EAGLEBEN-SA_00329100 | SLAY-VIVMUS0010340 | SLAY-VIVMUS0010343 | SLAY-VIVMUS0214668 | SLAY-VIVMUS0214668 |
| EAGLEBEN-SA_00329101 | EAGLEBEN-SA_00329115 | SLAY-VIVMUS0010344 | SLAY-VIVMUS0010347 | SLAY-VIVMUS0217515 | SLAY-VIVMUS0217515 |
| EAGLEBEN-SA_00329116 | EAGLEBEN-SA_00329376 | SLAY-VIVMUS0010348 | SLAY-VIVMUS0010349 | SLAY-VIVMUS0226487 | SLAY-VIVMUS0226549 |
| EAGLEBEN-SA_00329377 | EAGLEBEN-SA_00329434 | SLAY-VIVMUS0010350 | SLAY-VIVMUS0010377 | SLAY-VIVMUS0226550 | SLAY-VIVMUS0226559 |
| EAGLEBEN-SA_00329435 | EAGLEBEN-SA_00329511 | SLAY-VIVMUS0010378 | SLAY-VIVMUS0010381 | SLAY-VIVMUS051256 | SLAY-VIVMUS051256 |
| EAGLEBEN-SA_00329512 | EAGLEBEN-SA_00329544 | SLAY-VIVMUS0010382 | SLAY-VIVMUS0010383 | SLBEND-REV0000007319 | SLBEND-REV0000007319 |
| EAGLEBEN-SA_00329545 | EAGLEBEN-SA_00329564 | SLAY-VIVMUS0010384 | SLAY-VIVMUS0010407 | SLBEND-REV0000115671 | SLBEND-REV0000115671 |
| EAGLEBEN-SA_00329565 | EAGLEBEN-SA_00329857 | SLAY-VIVMUS0010408 | SLAY-VIVMUS0010409 | SLBEND-REV0000115672 | SLBEND-REV0000115672 |
| EAGLEBEN-SA_00329858 | EAGLEBEN-SA_00329882 | SLAY-VIVMUS0010410 | SLAY-VIVMUS0010420 | SLBEND-REV0000116336 | SLBEND-REV0000116336 |
| EAGLEBEN-SA_00329883 | EAGLEBEN-SA_00329886 | SLAY-VIVMUS0010421 | SLAY-VIVMUS0010424 | SLBEND-REV0000116339 | SLBEND-REV0000116339 |
| EAGLEBEN-SA_00329887 | EAGLEBEN-SA_00329887 | SLAY-VIVMUS0010425 | SLAY-VIVMUS0010426 | SLBEND-REV0000124726 | SLBEND-REV0000124726 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00329888 | EAGLEBEN-SA_00329889 | SLAY-VIVMUS0010427 | SLAY-VIVMUS0010428 | SLBEND-REV0000124727 | SLBEND-REV0000124727 |
| EAGLEBEN-SA_00329890 | EAGLEBEN-SA_00329903 | SLAY-VIVMUS0010429 | SLAY-VIVMUS0010430 | SLBEND-REV0000125197 | SLBEND-REV0000125299 |
| EAGLEBEN-SA_00329892 | EAGLEBEN-SA_00329903 | SLAY-VIVMUS0010431 | SLAY-VIVMUS0010432 | SLBEND-REV0000128075.0001 | SLBEND-REV0000128075.0001 |
| EAGLEBEN-SA_00329904 | EAGLEBEN-SA_00329925 | SLAY-VIVMUS0010433 | SLAY-VIVMUS0010460 | SLBEND-REV0000128075.0002 | SLBEND-REV0000128075.0002 |
| EAGLEBEN-SA_00329926 | EAGLEBEN-SA_00329934 | SLAY-VIVMUS0010461 | SLAY-VIVMUS0010461 | SLBEND-REV0000128075.0003 | SLBEND-REV0000128075.0003 |
| EAGLEBEN-SA_00330235 | EAGLEBEN-SA_00330266 | SLAY-VIVMUS0010462 | SLAY-VIVMUS0010462 | SLBEND-REV0000128075.0004 | SLBEND-REV0000128075.0004 |
| EAGLEBEN-SA_00330267 | EAGLEBEN-SA_00330272 | SLAY-VIVMUS0010463 | SLAY-VIVMUS0010463 | SLBEND-REV0000128075.0005 | SLBEND-REV0000128075.0005 |
| EAGLEBEN-SA_00330273 | EAGLEBEN-SA_00330276 | SLAY-VIVMUS0010464 | SLAY-VIVMUS0010464 | SLBEND-REV0000128075.0006 | SLBEND-REV0000128075.0006 |
| EAGLEBEN-SA_00330277 | EAGLEBEN-SA_00330282 | SLAY-VIVMUS0010465 | SLAY-VIVMUS0010468 | SLBEND-REV0000128075.0007 | SLBEND-REV0000128075.0007 |
| EAGLEBEN-SA_00330283 | EAGLEBEN-SA_00330311 | SLAY-VIVMUS0010469 | SLAY-VIVMUS0010469 | SLBEND-REV0000128075.0008 | SLBEND-REV0000128075.0008 |
| EAGLEBEN-SA_00330312 | EAGLEBEN-SA_00330340 | SLAY-VIVMUS0010470 | SLAY-VIVMUS0010470 | SLBEND-REV0000128075.0009 | SLBEND-REV0000128075.0009 |
| EAGLEBEN-SA_00330341 | EAGLEBEN-SA_00330356 | SLAY-VIVMUS0010471 | SLAY-VIVMUS0010471 | SLBEND-REV0000128075.0010 | SLBEND-REV0000128075.0010 |
| EAGLEBEN-SA_00330357 | EAGLEBEN-SA_00330419 | SLAY-VIVMUS0010472 | SLAY-VIVMUS0010473 | SLBEND-REV0000128075.0011 | SLBEND-REV0000128075.0011 |
| EAGLEBEN-SA_00330420 | EAGLEBEN-SA_00330522 | SLAY-VIVMUS0010474 | SLAY-VIVMUS0010475 | SLBEND-REV0000128075.0012 | SLBEND-REV0000128075.0012 |
| EAGLEBEN-SA_00330523 | EAGLEBEN-SA_00330528 | SLAY-VIVMUS0010476 | SLAY-VIVMUS0010478 | SLBEND-REV0000128075.0013 | SLBEND-REV0000128075.0013 |
| EAGLEBEN-SA_00330529 | EAGLEBEN-SA_00330548 | SLAY-VIVMUS0010479 | SLAY-VIVMUS0010501 | SLBEND-REV0000128075.0014 | SLBEND-REV0000128075.0014 |
| EAGLEBEN-SA_00330549 | EAGLEBEN-SA_00330867 | SLAY-VIVMUS0010502 | SLAY-VIVMUS0010502 | SLBEND-REV0000128075.0015 | SLBEND-REV0000128075.0015 |
| EAGLEBEN-SA_00330868 | EAGLEBEN-SA_00330910 | SLAY-VIVMUS0010503 | SLAY-VIVMUS0010504 | SLBEND-REV0000128075.0016 | SLBEND-REV0000128075.0016 |
| EAGLEBEN-SA_00330911 | EAGLEBEN-SA_00330912 | SLAY-VIVMUS0010505 | SLAY-VIVMUS0010506 | SLBEND-REV0000128075.0017 | SLBEND-REV0000128075.0017 |
| EAGLEBEN-SA_00330913 | EAGLEBEN-SA_00330915 | SLAY-VIVMUS0010507 | SLAY-VIVMUS0010508 | SLBEND-REV0000128075.0018 | SLBEND-REV0000128075.0018 |
| EAGLEBEN-SA_00330916 | EAGLEBEN-SA_00330958 | SLAY-VIVMUS0010509 | SLAY-VIVMUS0010509 | SLBEND-REV0000128075.0019 | SLBEND-REV0000128075.0019 |
| EAGLEBEN-SA_00330959 | EAGLEBEN-SA_00330993 | SLAY-VIVMUS0010585 | SLAY-VIVMUS0010586 | SLBEND-REV0000128075.0020 | SLBEND-REV0000128075.0020 |
| EAGLEBEN-SA_00330994 | EAGLEBEN-SA_00330997 | SLAY-VIVMUS0010587 | SLAY-VIVMUS0010588 | SLBEND-REV0000128075.0021 | SLBEND-REV0000128075.0021 |
| EAGLEBEN-SA_00330998 | EAGLEBEN-SA_00330999 | SLAY-VIVMUS0010589 | SLAY-VIVMUS0010590 | SLBEND-REV0000128075.0022 | SLBEND-REV0000128075.0022 |
| EAGLEBEN-SA_00331000 | EAGLEBEN-SA_00331008 | SLAY-VIVMUS0010591 | SLAY-VIVMUS0010591 | SLBEND-REV0000128075.0023 | SLBEND-REV0000128075.0023 |
| EAGLEBEN-SA_00331009 | EAGLEBEN-SA_00331012 | SLAY-VIVMUS0010592 | SLAY-VIVMUS0010592 | SLBEND-REV0000128075.0024 | SLBEND-REV0000128075.0024 |
| EAGLEBEN-SA_00331013 | EAGLEBEN-SA_00331056 | SLAY-VIVMUS0010634 | SLAY-VIVMUS0010648 | SLBEND-REV0000128075.0025 | SLBEND-REV0000128075.0025 |
| EAGLEBEN-SA_00331357 | EAGLEBEN-SA_00331381 | SLAY-VIVMUS0011321 | SLAY-VIVMUS0011322 | SLBEND-REV0000128075.0026 | SLBEND-REV0000128075.0026 |
| EAGLEBEN-SA_00331382 | EAGLEBEN-SA_00331383 | SLAY-VIVMUS0011323 | SLAY-VIVMUS0011324 | SLBEND-REV0000128075.0027 | SLBEND-REV0000128075.0027 |
| EAGLEBEN-SA_00331384 | EAGLEBEN-SA_00331385 | SLAY-VIVMUS0011325 | SLAY-VIVMUS0011325 | SLBEND-REV0000128075.0028 | SLBEND-REV0000128075.0028 |
| EAGLEBEN-SA_00331386 | EAGLEBEN-SA_00331425 | SLAY-VIVMUS0011326 | SLAY-VIVMUS0011326 | SLBEND-REV0000128075.0029 | SLBEND-REV0000128075.0029 |
| EAGLEBEN-SA_00331426 | EAGLEBEN-SA_00331431 | SLAY-VIVMUS0011327 | SLAY-VIVMUS0011330 | SLBEND-REV0000128075.0030 | SLBEND-REV0000128075.0030 |
| EAGLEBEN-SA_00331432 | EAGLEBEN-SA_00331435 | SLAY-VIVMUS0011331 | SLAY-VIVMUS0011331 | SLBEND-REV0000128075.0031 | SLBEND-REV0000128075.0031 |
| EAGLEBEN-SA_00331436 | EAGLEBEN-SA_00331437 | SLAY-VIVMUS0011362 | SLAY-VIVMUS0011362 | SLBEND-REV0000128075.0032 | SLBEND-REV0000128075.0032 |
| EAGLEBEN-SA_00331438 | EAGLEBEN-SA_00331800 | SLAY-VIVMUS0011363 | SLAY-VIVMUS0011363 | SLBEND-REV0000128075.0033 | SLBEND-REV0000128075.0033 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|---|
| EAGLEBEN-SA_00331801 | EAGLEBEN-SA_00331809 | SLAY-VIVMUS0011575 | SLAY-VIVMUS0011576 | SLBEND-REV0000128075.0034 | SLBEND-REV0000128075.0034 |
| EAGLEBEN-SA_00331810 | EAGLEBEN-SA_00331812 | SLAY-VIVMUS0011577 | SLAY-VIVMUS0011578 | SLBEND-REV0000128075.0035 | SLBEND-REV0000128075.0035 |
| EAGLEBEN-SA_00331843 | EAGLEBEN-SA_00331856 | SLAY-VIVMUS0011579 | SLAY-VIVMUS0011579 | SLBEND-REV0000128075.0036 | SLBEND-REV0000128075.0036 |
| EAGLEBEN-SA_00331857 | EAGLEBEN-SA_00331859 | SLAY-VIVMUS0011580 | SLAY-VIVMUS0011580 | SLBEND-REV0000128075.0037 | SLBEND-REV0000128075.0037 |
| EAGLEBEN-SA_00331860 | EAGLEBEN-SA_00332250 | SLAY-VIVMUS0011581 | SLAY-VIVMUS0011581 | SLBEND-REV0000128075.0038 | SLBEND-REV0000128075.0038 |
| EAGLEBEN-SA_00332251 | EAGLEBEN-SA_00332294 | SLAY-VIVMUS0011582 | SLAY-VIVMUS0011582 | SLBEND-REV0000128075.0039 | SLBEND-REV0000128075.0039 |
| EAGLEBEN-SA_00332295 | EAGLEBEN-SA_00332298 | SLAY-VIVMUS0011583 | SLAY-VIVMUS0011584 | SLBEND-REV0000128075.0040 | SLBEND-REV0000128075.0040 |
| EAGLEBEN-SA_00332299 | EAGLEBEN-SA_00332299 | SLAY-VIVMUS0011731 | SLAY-VIVMUS0011731 | SLBEND-REV0000128075.0041 | SLBEND-REV0000128075.0041 |
| EAGLEBEN-SA_00332300 | EAGLEBEN-SA_00332300 | SLAY-VIVMUS0011732 | SLAY-VIVMUS0011736 | SLBEND-REV0000128075.0042 | SLBEND-REV0000128075.0042 |
| EAGLEBEN-SA_00332301 | EAGLEBEN-SA_00332353 | SLAY-VIVMUS0011737 | SLAY-VIVMUS0011737 | SLBEND-REV0000128075.0043 | SLBEND-REV0000128075.0043 |
| EAGLEBEN-SA_00332354 | EAGLEBEN-SA_00332355 | SLAY-VIVMUS0011738 | SLAY-VIVMUS0011738 | SLBEND-REV0000128075.0044 | SLBEND-REV0000128075.0044 |
| EAGLEBEN-SA_00332356 | EAGLEBEN-SA_00332358 | SLAY-VIVMUS0011765 | SLAY-VIVMUS0011766 | SLBEND-REV0000128075.0045 | SLBEND-REV0000128075.0045 |
| EAGLEBEN-SA_00332359 | EAGLEBEN-SA_00332392 | SLAY-VIVMUS0011767 | SLAY-VIVMUS0011777 | SLBEND-REV0000128075.0046 | SLBEND-REV0000128075.0046 |
| EAGLEBEN-SA_00332393 | EAGLEBEN-SA_00332436 | SLAY-VIVMUS0011806 | SLAY-VIVMUS0011807 | SLBEND-REV0000128075.0047 | SLBEND-REV0000128075.0047 |
| EAGLEBEN-SA_00332437 | EAGLEBEN-SA_00332438 | SLAY-VIVMUS0011808 | SLAY-VIVMUS0011809 | SLBEND-REV0000128075.0048 | SLBEND-REV0000128075.0048 |
| EAGLEBEN-SA_00332439 | EAGLEBEN-SA_00332442 | SLAY-VIVMUS0011810 | SLAY-VIVMUS0011811 | SLBEND-REV0000128075.0049 | SLBEND-REV0000128075.0049 |
| EAGLEBEN-SA_00332443 | EAGLEBEN-SA_00332443 | SLAY-VIVMUS0011938 | SLAY-VIVMUS0011946 | SLBEND-REV0000128075.0050 | SLBEND-REV0000128075.0050 |
| EAGLEBEN-SA_00332444 | EAGLEBEN-SA_00332444 | SLAY-VIVMUS0011975 | SLAY-VIVMUS0011976 | SLBEND-REV0000128075.0051 | SLBEND-REV0000128075.0051 |
| EAGLEBEN-SA_00332445 | EAGLEBEN-SA_00332445 | SLAY-VIVMUS0011977 | SLAY-VIVMUS0011978 | SLBEND-REV0000128075.0052 | SLBEND-REV0000128075.0052 |
| EAGLEBEN-SA_00332446 | EAGLEBEN-SA_00332447 | SLAY-VIVMUS0011979 | SLAY-VIVMUS0011980 | SLBEND-REV0000128075.0053 | SLBEND-REV0000128075.0053 |
| EAGLEBEN-SA_00332448 | EAGLEBEN-SA_00332457 | SLAY-VIVMUS0012007 | SLAY-VIVMUS0012008 | SLBEND-REV0000128075.0054 | SLBEND-REV0000128075.0054 |
| EAGLEBEN-SA_00332458 | EAGLEBEN-SA_00332458 | SLAY-VIVMUS0012009 | SLAY-VIVMUS0012019 | SLBEND-REV0000128075.0055 | SLBEND-REV0000128075.0055 |
| EAGLEBEN-SA_00332459 | EAGLEBEN-SA_00332510 | SLAY-VIVMUS0012020 | SLAY-VIVMUS0012024 | SLBEND-REV0000128075.0056 | SLBEND-REV0000128075.0056 |
| EAGLEBEN-SA_00332511 | EAGLEBEN-SA_00332512 | SLAY-VIVMUS0012025 | SLAY-VIVMUS0012026 | SLBEND-REV0000128075.0057 | SLBEND-REV0000128075.0057 |
| EAGLEBEN-SA_00332513 | EAGLEBEN-SA_00332516 | SLAY-VIVMUS0012027 | SLAY-VIVMUS0012027 | SLBEND-REV0000128075.0058 | SLBEND-REV0000128075.0058 |
| EAGLEBEN-SA_00332517 | EAGLEBEN-SA_00332518 | SLAY-VIVMUS0012028 | SLAY-VIVMUS0012030 | SLBEND-REV0000128075.0059 | SLBEND-REV0000128075.0059 |
| EAGLEBEN-SA_00332519 | EAGLEBEN-SA_00332530 | SLAY-VIVMUS0012031 | SLAY-VIVMUS0012055 | SLBEND-REV0000128075.0060 | SLBEND-REV0000128075.0060 |
| EAGLEBEN-SA_00332531 | EAGLEBEN-SA_00332533 | SLAY-VIVMUS0012056 | SLAY-VIVMUS0012078 | SLBEND-REV0000128075.0061 | SLBEND-REV0000128075.0061 |
| EAGLEBEN-SA_00332534 | EAGLEBEN-SA_00332540 | SLAY-VIVMUS0012079 | SLAY-VIVMUS0012080 | SLBEND-REV0000128075.0062 | SLBEND-REV0000128075.0062 |
| EAGLEBEN-SA_00332541 | EAGLEBEN-SA_00332596 | SLAY-VIVMUS0012081 | SLAY-VIVMUS0012081 | SLBEND-REV0000128075.0063 | SLBEND-REV0000128075.0063 |
| EAGLEBEN-SA_00332597 | EAGLEBEN-SA_00332599 | SLAY-VIVMUS0012108 | SLAY-VIVMUS0012109 | SLBEND-REV0000128075.0064 | SLBEND-REV0000128075.0064 |
| EAGLEBEN-SA_00332600 | EAGLEBEN-SA_00332602 | SLAY-VIVMUS0012110 | SLAY-VIVMUS0012111 | SLBEND-REV0000128075.0065 | SLBEND-REV0000128075.0065 |
| EAGLEBEN-SA_00332603 | EAGLEBEN-SA_00332605 | SLAY-VIVMUS0012112 | SLAY-VIVMUS0012113 | SLBEND-REV0000128075.0066 | SLBEND-REV0000128075.0066 |
| EAGLEBEN-SA_00332606 | EAGLEBEN-SA_00332608 | SLAY-VIVMUS0012142 | SLAY-VIVMUS0012145 | SLBEND-REV0000128075.0067 | SLBEND-REV0000128075.0067 |
| EAGLEBEN-SA_00332609 | EAGLEBEN-SA_00332611 | SLAY-VIVMUS0012172 | SLAY-VIVMUS0012173 | | |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*

**DOCUMENTS CONSIDERED**

Appendix 2.2

<u>**Case Law**</u>

AstraZeneca AB v. Apotex, 782 F.3d 1324 (Fed. Cir. 2015).

Brown Shoe Co., Inc. v. United States, 370 U.S. 294 (1962).

Clayton Antitrust Act of 1914, 15 U.S.C. §§ 12-27.

Commonwealth Sci. & Indus. Research Organization v. Cisco Sys., Inc., 809 F.3d 1295, 1303 (Fed. Cir. 2015).

Crystal Semiconductor v. Tritech Microelectronics, 246 F.3d 1336 (C.A.F.C. 2001).

Exmark Mftg. Co. v. Briggs & Stratton Power Products, 879 F.3d 1332 (Fed. Cir. 2018).

Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970).

Grain Processing Corp. v. American Maize-Products Co., 185 F.3d 1341 (Fed. Cir. 1999).

Gree Inc. v. Supercell Oy, 2020 WL 4057640 (E.D.Tx. 2020).

Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978).

Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995).

State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989)

United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377 (1956).

<u>**Legal Filings**</u>

Amended Class Action Complaint for Violations of the Federal Securities Laws, July 11, 2025.

Eagle Pharmaceuticals Inc. v. Apotex Inc., and Apotex Corp. Complaint, January 17, 2024.

Eagle Pharmaceuticals Inc. v. Apotex Inc., and Apotex Corp. First Amended Complaint, April 15, 2024.

Eagle Pharmaceuticals Inc. v. Apotex Inc., and Apotex Corp. Second Amended Complaint, June 12, 2025.

Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc, First Amended Complaint, February 28, 2025.

Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, Complaint, January 17, 2024.

Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, First Amended Complaint, April 22, 2024.

Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, Second Amended Complaint, June 12, 2025.

Eagle Pharmaceuticals Inc. v. Baxter Healthcare Corporation, Complaint for Patent Infringement, January 17, 2024.

Eagle Pharmaceuticals Inc. v. Baxter Healthcare Corporation, First Amended Complaint for Patent Infringement, April 15, 2024.

Eagle Pharmaceuticals Inc. v. Baxter Healthcare Corporation, Second Amended Complaint for Patent Infringement, June 12, 2025.

Joint Order Regarding Case Consolidation and Coordination, June 27, 2025.

Letter to the Honorable Christopher J. Burke from Daniel M Silver Regarding Plaintiff's Reply Discovery Dispute Letter, May 28, 2025.

Proposed Scheduling Order Patent, June 10, 2024.

Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.'s Response to Second Amended Complaint in C.A. No. 25-75-JLH, July 8, 2025.

Stipulation Order to Dismiss U.S. Patent No. 11,844,783

<u>**Interrogatories and Responses**</u>

Defendant Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp.'s Fourth Set of Requests for Production (Nos. 65-67) to Plaintiff Eagle Pharmaceuticals, Inc., September 18, 2025.

Defendant Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.'s High Confidential Second Supplemental Responses to First Set of Common Interrogatories (Nos. 1-9) to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp, September 9, 2025.

Defendant Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.'s Response to Plaintiffs' Third Set of Individual Request for Admission (Nos. 11-14), January 29, 2025.

Defendant Slayback Pharma LLC and Azurity Pharmaceuticals, Inc's Highly Confidential Second Supplemental responses to First Set of Common Interrogatories (Nos 1-9) to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC and Baxter Healthcare Corp, September 9, 2025.

Defendant Slayback Pharma LLC's First Set of Interrogatories to Plaintiff, Eagle Pharmaceuticals, Inc., November 19, 2024.

Defendant Slayback Pharma LLC's Highly Confidential First Supplemental Response to Common Interrogatory No. 5, October 7, 2024.

Defendant Slayback Pharma LLC's Highly Confidential Supplemental Response to First Set of Common Interrogatories (Nos. 1-9) to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp, February 3, 2025.

Defendant Slayback Pharma LLC's Response to Plaintiff's First Set of Individual Interrogatories (Nos 1-2), June 16, 2025.

Defendant Slayback Pharma LLC's Responses and Objections to Plaintiff's Third Set of Common Interrogatories (nos. 12-13) to Defendants Apotex, Inc., Apotex., Slayback Pharma LLC, and Baxter Healthcare Corp, March 27, 2025.

Defendant Slayback Pharma LLC's Responses to Plaintiff's Second Set of Common Interrogatories (Nos. 10-11) to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma  LLC, and Baxter Healthcare Corp., December 2, 2024.

Defendant Slayback Pharma LLC's Supplemental Responses to Second Set of Common Interrogatories (Nos. 10-11) to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp, February 3, 2025.

Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp.'s First Set of Common Interrogatories to Plaintiff Eagle Pharmaceuticals, Inc., June 18, 2024.

Defendants Slayback Pharma LLC and Azurity Pharmaceuticals Inc. Response to Plaintiffs' Fifth Set of Individual Interrogatories (Nos. 10-12), February 5, 2026.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*

**DOCUMENTS CONSIDERED**

Appendix 2.2

**Interrogatories and Responses Continued**

Defendants Slayback Pharma LLC and Azurity Pharmaceuticals Inc's Response to Plaintiffs' Third Set of Individual Interrogatories (No. 5), October 29, 2025.

Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.'s Fifth Supplemental Response to Plaintiffs' Common Interrogatories (No. 7), December 5, 2025.

Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc's Fourth Supplemental Response to Plaintiffs' Common Interrogatories (No. 7), November 4, 2025.

Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc's Supplemental Responses and Objections to Plaintiff's Third Set of Common Interrogatories (Nos. 12-13) to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp, September 23, 2025.

Defendants Slayback Pharma LLC's Answer to First Set of Common Interrogatories (Nos. 1-9) to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp., June 20, 2024.

Plaintiff Eagle Pharmaceuticals, Inc.'s First Supplemental Responses and Objections to Defendants' First Set of Joint Interrogatories (Nos. 1-9), November 1, 2024.

Plaintiff Eagle Pharmaceuticals, Inc.'s Responses and Objections to Defendants' First Set of Joint Interrogatories (Nos. 1-9), July 18, 2024.

Plaintiff Eagle Pharmaceuticals, Inc.'s Responses and Objections to Slayback Pharma LLC's First Set of Interrogatories, December 19, 2024.

Plaintiff Eagle Pharmaceuticals, Inc.'s Second Supplemental Responses and Objections to Defendants' First Set of Joint Interrogatories (Nos. 1-9), December 13, 2024.

Plaintiffs Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC's Objections and Responses to Defendants Slayback Pharma LLC and Azurity Pharmaceuticals Inc.'s Second Set of Request for Production (Nos. 5-8), December 4, 2025.

Plaintiffs Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC's Objections and Responses to Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.'s Fourth Set of Interrogatories (Nos. 6-7), December 4, 2025.

Plaintiffs Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC's Objections and Responses to Defendants' Third Set of Common Interrogatories (No. 11), October 14, 2025.

Plaintiffs' Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC's Responses and Objections to Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.'s Second Set of Requests for Admission (Nos. 3-9), December 4, 2025.

Plaintiffs Eagle Pharmaceuticals, Inc.'s and Eagle Sub 1 LLC's Supplemental Objections and Responses to Slayback Pharma LLC and Azurity Pharmaceuticals Inc.'s Second Set of Interrogatories (No. 4), November 21, 2025.

Plaintiffs Eagle Pharmaceuticals, Inc.'s and Eagle Sub1 LLC's Second Supplemental Objections and Responses to Slayback Pharma LLC and Azurity Pharmacuetiocals Inc.'s Second Set of Interrogatories (No. 4), December 3, 2025.

Plaintiffs Eagle Pharmaceuticals, Inc's and Eagle Sub1 LLC's Objections and Responses to Slayback Pharma LLC and Azurity Pharmaceuticals Inc.'s Second Set of Interrogatories (No. 4), September 23, 2025.

Plaintiff's First Set of Common Interrogatories to Defendants Apotex, Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corp., May 21, 2024.

Plaintiff's First Set of Individual Interrogatories to Defendant Slayback Pharma LLC (Nos. 1-2), May 16, 2025.

Plaintiffs' Objections and Reponses to Defendants' Second Set of Common Requests for Admission to Plaintiffs (Nos. 9-10), October 14, 2025.

Plaintiff's Second Set of Common Interrogatories to Defendants Apotex Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corporation, October 18, 2024.

Plaintiff's Third Set of Common Interrogatories to Defendants Apotex Inc., Apotex Corp., Slayback Pharma LLC, and Baxter Healthcare Corporation, February 25, 2025.

Plaintiffs' Third Set of Common Request for Admission to Defendants Apotex Inc., Apotex Corp., Slayback Pharma LLC, Azurity Pharmaceuticals Inc., and Baxter Healthcare Corporation (No. 15), November 5, 2025.

Plaintiff's Third Set of Individual Interrogatories to Defendants Slayback Pharma LLC and Azurity Pharmacuetiocals, Inc. (No. 5), September 29, 2025.

**Expert Reports**

Expert Report of Khaleel K. Ashraf, M.D., February 6, 2026.

Expert Report of Caroline Attia, PharmD, February 6, 2026.

Expert Report of Dr. Jeffrey D. Kittendorf, PhD, February 5, 2026.

Expert Report of Dr. Bernhardt Trout, PhD, February 6, 2026.

Expert Report of Dr. Christopher A. Vellturo, PhD, February 6, 2026.

Expert Report of David E. Bugay, PhD, February 6, 2026.

Expert Report of Dr. Michael Crowley, February 6, 2026.

Supplemental Expert Report of Khaleel K. Ashraf, M.D., March 6, 2026.

Supplemental Expert Report of Caroline Attia, PharmD, March 6, 2026.

Supplemental Expert Report of Christopher A. Vellturo, PhD, March 6, 2026.

**U.S. Patents**

United States Patent 8,609,707.

United States Patent 9,000,021.

United States Patent 9,034,908.

United States Patent 9,144,568.

United States Patent 9,265,831.

United States Patent 9,572,796.

United States Patent 9,572,797.

United States Patent 9,572,887.

United States Patent 9,572,888.

United States Patent 9,579,384.

United States Patent 9,597,397.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*

**DOCUMENTS CONSIDERED**

Appendix 2.2

<u>**U.S. Patents Continued**</u>

United States Patent 9,597,398.
United States Patent 9,597,399.
United States Patent 10,010,533.
United States Patent 10,052,385.
United States Patent 11,103,483.
United States Patent 11,707,450.
United States Patent 11,844,783.
United States Patent 11,844,784.
United States Patent 11,872,214.
United States Patent 12,208,086.
United States Patent 12,138,248.
United States Patent 12,343,333.
United States Patent 12,350,257.

<u>**Publicly Available**</u>

"Bendamustine: An old drug for a potential new indication," Cancer Research, Statistics, and Treatment
"Commentary on Patent Reasonable Royalty Determinations", Sedona Conference, December 2016
2013 John Hopkins Agreement, June 5, 2013.
Bridgetech Holdings Int'l Inc. Form 10-SB, July 2006.
Eagle Consolidated Financial Statements as of March 31, 2025.
Eagle Pharmaceuticals Audited Financial Statements for the Years Ended December 31, 2024 and 2023, p. F-14.
Eagle Pharmaceuticals Condensed Consolidated Financial Statements as of June 30, 2025, p. F-9.
Eagle Pharmaceuticals Form 10K for year ended December 31, 2019, p. F-16.
Eagle Pharmaceuticals Form 10K for year ended December 31, 2020, p. F-19.
Eagle Pharmaceuticals Form 10K for year ended December 31, 2021, p. F-21.
Eagle Pharmaceuticals Form 10K for year ended December 31, 2022, p. F-18.
https://assets.roche.com/f/176343/b661f27eaf/fb13e.pdf.
https://azurity.com/.
https://azurity.com/azurity-pharmaceuticals-acquires-slayback-pharma/.
https://azurity.com/pipeline/.
https://azurity.com/products/.
https://citiusonc.com/news/news-details/2025/Citius-Oncology-Announces-U-S--Commercial-Launch-of-LYMPHIR-a-Novel-Cancer-Immunotherapy-for-Cutaneous-T-Cell-Lymphoma-CTCL/default.aspx..
https://clinicaltrials.gov/study/NCT02162888.
https://dataintelo.com/report/bendamustine-market.
https://doi.org/10.1002/jcph.942.
https://doi.org/10.1182/blood.V126.23.4857.4857.
https://hemonc.org/wiki/Chlorambucil_(Leukeran).
https://investor.eagleus.com/news-releases/news-release-details/cms-establishes-unique-j-code-belrapzotm-bendamustine-500ml.
https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-pricing-initial-public-offering.
https://investor.eagleus.com/news-releases/news-release-details/fda-does-not-grant-seven-year-orphan-drug-exclusivity-bendeka.
https://investor.jazzpharma.com/news-releases/news-release-details/jazz-pharmaceuticals-announces-us-fda-approval-rylazetm.
https://investor.lilly.com/news-releases/news-release-details/jaypircar-pirtobrutinib-now-approved-us-fda-treatment-adult.
https://investor.verastem.com/news-releases/news-release-details/verastem-oncology-receives-fda-approval-copiktratm-duvelisib
https://investors.amneal.com/news/press-releases/press-release-details/2018/Amneal-Announces-Approval-of-Carmustine-for-Injection-USP-100-mgvial---Preparing-for-Launch/default.aspx.
https://investors.karyopharm.com/2020-06-22-Karyopharm-Announces-FDA-Approval-of-XPOVIO-R-selinexor-for-the-Treatment-of-Patients-with-Relapsed-or-Refractory-Diffuse-Large-B-cell-Lymphoma-DLBCL.
https://ir.nasuspharma.com/press_releases/nasus-pharma-to-present-topline-analysis-from-ns002-intranasal-epinephrine-powder-phase-2-single-and-repeat-dose-clinical-study/.
https://ir.tevapharm.com/news-and-events/press-releases/press-release-details/2011/Teva-Completes-Acquisition-of-Cephalon/default.aspx.
https://ir.tevapharm.com/news-and-events/press-releases/press-release-details/2016/CMS-Establishes-Unique-J-Code-for-BENDEKA-Bendamustine-Hydrochloride-Injection/default.aspx.
https://lifesciencehistory.com/bristol-myers-introduced-bicnu-carmustine-for-treatment-of-brain-and-lymphatic-cancers/.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*

**DOCUMENTS CONSIDERED**

Appendix 2.2

**Publicly Available Continued**

https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5200-series.

https://ndclist.com/hcpcs/J9036.

https://ndclist.com/hcpcs/J9056.

https://news.abbvie.com/2016-04-11-AbbVie-Receives-FDA-Accelerated-Approval-of-Venclexta-venetoclax-Tablets-the-First-BCL-2-Inhibitor-in-Relapsed-Refractory-Chronic-Lymphocytic-Leukemia-Patients-with-17p-Deletion.

https://news.abbvie.com/2018-06-08-AbbVie-Announces-U-S-FDA-Approval-of-VENCLEXTA-R-venetoclax-tablets-in-Combination-with-Rituximab-as-a-Fixed-Duration-Treatment-for-Chronic-Lymphocytic-Leukemia-or-Small-Lymphocytic-Lymphoma-Patients-Who-Have-Received-One-Prior-Therapy.

https://news.bms.com/news/details/2021/Bristol-Myers-Squibb-Reports-Second-Quarter-Financial-Results-for-2021/default.aspx.

https://news.bms.com/news/details/2021/U.S.-Food-and-Drug-Administration-Approves-Bristol-Myers-Squibbs-Breyanzi-lisocabtagene-maraleucel-a-New-CAR-T-Cell-Therapy-for-Adults-with-Relapsed-or-Refractory-Large-B-cell-Lymphoma/default.aspx.

https://news.bms.com/news/details/2024/U.S.-FDA-Approves-Bristol-Myers-Squibbs-Breyanzi--as-the-First-and-Only-CAR-T-Cell-Therapy-for-Adults-with-Relapsed-or-Refractory-Chronic-Lymphocytic-Leukemia-CLL-or-Small-Lymphocytic-Lymphoma-SLL/default.aspx

https://patents.google.com/patent/US11872214B2.

https://patents.google.com/patent/US12138248B2.

https://patents.google.com/patent/US12419867B2.

https://patentscope.wipo.int/search/en/WO2019038756.

https://pitchbook.com/profiles/company/169368-76#overview.

https://royaltystat.com/.

https://thesedonaconference.org/.

https://www.accessdata.fda.

https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2001/alemmil050701L.htm.

https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/212209Orig1s000ltr.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/215033Orig1s000ltr.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2022/216078Orig1s000ltr.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/1997/ifnasch110697-lab.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2002/ibriide021902LB.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2003/10669slr028_leukeran_lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2005/021877lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2006/021991lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2008/022249lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2008/022303lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/103705s5312lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/208194s000lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2018/205580s002lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2019/761103s000lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/022249s026lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/212209s000lbl.pdf

https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/205580s013lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/208194s026lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/212209s005lbl.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000Approv.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208194Orig1s000MedR.pdf.

https://www.accessdata.fda.gov/drugsatfda_docs/nda/2018/205580Orig1s000OtherR.pdf.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=BasicSearch.process, Search "Belrapzo".

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=010669.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=021877.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=021991.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=022249.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=103132.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=103705.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*

**DOCUMENTS CONSIDERED**

Appendix 2.2

**Publicly Available Continued**

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=125019.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=205197.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=205574.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=206167.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=206254.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=208194.

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=215033

https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=761103.

https://www.amgen.com/newsroom/press-releases/2020/12/fda-approves-amgens-riabni-rituximabarrx-a-biosimilar-to-rituxan-rituximab.

https://www.astrazeneca.com/media-centre/press-releases/2019/calquence-approved-in-the-us-for-adult-patients-with-chronic-lymphocytic-leukaemia-21112019.html.

https://www.biospace.com/fda-approves-millennium-pharmaceuticals-inc-cambridge-massachusetts-s-velcade-r-bortezomib-for-injection-for-aggressive-form-of-non-hodgkin-s.

https://www.biospace.com/fda-approves-monjuvi-r-tafasitamab-cxix-in-combination-with-lenalidomide-for-the-treatment-of-adult-patients-with-relapsed-or-refractory-diffuse-large-b-cell-lymphoma-dlbcl.

https://www.businesswire.com/news/home/20200618005820/en/Epizyme-Announces-U.S.-FDA-Accelerated-Approval-of-TAZVERIK-tazemetostat-for-RelapsedRefractory-Follicular-Lymphoma.

https://www.businesswire.com/news/home/20220826005244/en/Incyte-Announces-FDA-Approval-of-Pemazyre-pemigatinib-as-the-First-and-Only-Targeted-Treatment-for-MyeloidLymphoid-Neoplasms-MLNs-with-FGFR1-Rearrangement.

https://www.businesswire.com/news/home/20230119005888/en/BRUKINSA-Approved-in-the-U.S.-for-Chronic-Lymphocytic-Leukemia.

https://www.cancer.gov/about-cancer/treatment/drugs/leukemia#drugs-approved-for-chronic-lymphocytic-leukemia-cll.

https://www.cancer.gov/about-cancer/treatment/drugs/non-hodgkin.

https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/about/what-is-cll.html.

https://www.cancer.org/cancer/types/chronic-lymphocytic-leukemia/treating/treatment-by-risk-group.html.

https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/about/what-is-non-hodgkin-lymphoma.html.

https://www.cancer.org/cancer/types/non-hodgkin-lymphoma/treating.html.

https://www.cancerresearchhorizons.com/news-and-events/our-news/adc-therapeutics-announces-fda-approval-zynlontatm.

https://www.capitaliq.spglobal.com/apisv3/spg-webplatform-core/company/profile?id=5322477.

https://www.cms.gov/files/document/r13044cp.pdf, p. 4.

https://www.cms.gov/medicare/payment/part-b-drugs/asp-reporting.

https://www.eagleus.com/about/.

https://www.eagleus.com/products/.

https://www.fda.gov/drugs/development-approval-process-drugs/orange-book-preface.

https://www.fda.gov/drugs/drug-and-biologic-approval-and-ind-activity-reports/2022-first-generic-drug-approvals.

https://www.fda.gov/drugs/drug-approvals-and-databases/fda-grants-accelerated-approval-epcoritamab-bysp-relapsed-or-refractory-diffuse-large-b-cell.

https://www.fda.gov/drugs/fda-approves-truxima-biosimilar-rituxan-non-hodgkins-lymphoma.

https://www.fda.gov/drugs/resources-information-approved-drugs/pembrolizumab-keytruda-classical-hodgkin-lymphoma.

https://www.fda.gov/media/71474/download?attachment, at 3-56.

https://www.fiercebiotech.com/biotech/allos-therapeutics-folotyn-tm-first-and-only-fda-approved-therapy-for-relapsed-or.

https://www.fiercebiotech.com/biotech/fda-approves-genzyme-corporation-genz-s-mozobil.

https://www.fiercebiotech.com/biotech/fda-approves-gloucester-pharmaceuticals-istodax%C3%A2%C2%AE-for-patients-cutaneous-t-cell-lymphoma.

https://www.fiercebiotech.com/biotech/seattle-genetics-announces-fda-accelerated-approval-of-adcetris-tm-brentuximab-vedotin-for.

https://www.fiercebiotech.com/biotech/u-s-food-and-drug-administration-approves-revlimid%C2%AE-lenalidomide-for-treatment-of-patients.

https://www.fiercepharma.com/pharma/eli-lilly-introduces-new-btk-inhibitor-blood-cancer-drug-fda-approval-jaypirca.

https://www.formulex-pi.com/company-profile/.

https://www.fresenius-kabi.com/us/news-and-events/fresenius-kabi-introduces-new-generic-for-the-treatment-of-multi.

https://www.fresenius-kabi.com/us/news-and-events/fresenius-kabi-introduces-pralatrexate-injection-for-the-treatme.

https://www.fresenius-kabi.com/us/news-and-events/fresenius-kabi-launches-plerixafor-injection.

https://www.fresenius-kabi.com/us/news-and-events/romidepsin-for-injection-available-from-fresenius-kabi.

https://www.gene.com/media/news-features/fda-approval-cll.

https://www.gene.com/media/press-releases/14618/2016-02-26/fda-approves-genentechs-gazyva-obinutuzu.

https://www.gene.com/media/press-releases/14670/2017-06-22/fda-approves-rituxan-hycela-rituximab-an.

https://www.gene.com/media/press-releases/14795/2019-06-10/fda-grants-genentechs-polivy-accelerated.

https://www.gene.com/media/press-releases/14978/2022-12-22/fda-approves-genentechs-lunsumio-a-first.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1, LLC v. Slayback Pharma and Azurity Pharmaceuticals, Inc.*
**DOCUMENTS CONSIDERED**
Appendix 2.2

**Publicly Available Continued**

https://www.gilead.com/news/news-details/2014/gilead-sciences-announces-third-quarter-2014-financial-results.

https://www.gilead.com/news/news-details/2014/us-food-and-drug-administration-approves-gileads-zydelig-idelalisib-for-relapsed-chronic-lymphocytic-leukemia-follicular-lymphoma-and-small-lymphocytic-lymphoma.

https://www.gilead.com/news/news-details/2017/kites-yescarta-axicabtagene-ciloleucel-becomes-first-car-t-therapy-approved-by-the-fda-for-the-treatment-of-adult-patients-with-relapsed-or-refractory-large-b-cell-lymphoma-after-two-or-more.

https://www.gilead.com/news/news-details/2020/us-fda-approves-kites-tecartus-the-first-and-only-car-t-treatment-for-relapsed-or-refractory-mantle-cell-lymphoma.

https://www.gsk.com/en-gb/media/press-releases/gsk-and-genmab-receive-accelerated-approval-for-arzerra/.

https://www.jnj.com/media-center/press-releases/imbruvica-ibrutinib-now-approved-in-the-us-for-patients-with-chronic-lymphocytic-leukemia-who-have-received-at-least-one-prior-therapy.

https://www.ktmine.com/why-ktmine/our-data/royalty-rates/.

https://www.kyowakirin.com/media_center/news_releases/2018/e20180809_01.html.

https://www.latitudepharma.com/formulation.

https://www.mckesson.com/about-us/newsroom/press-releases/2017/calquence-available-for-order-at-biologics-inc/.

https://www.myeloma.org/blog/lower-cost-revlimid-generic-lenalidomide-here.

https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

https://www.nasdaq.com/press-release/teva-and-celltrion-announce-the-availability-of-truximar-rituximab-abbs-injection-the.

https://www.nirvanahealth.com/wp-content/uploads/resources/clinical-notices/bendamustin-%20hydrochloride-injection_Vivimusta_New-Drug-Approval_12.7.2022.pdf.

https://www.novartis.com/news/media-releases/kymriah-tisagenlecleucel-first-class-car-t-therapy-from-novartis-receives-second-fda-approval-treat-appropriate-rr-patients-large-b-cell-lymphoma.

https://www.oncnursingnews.com/view/fda-approves-zanubrutinib-for-mcl-treatment.

https://www.pfizer.com/news/press-release/press-release-detail/pfizers-xalkorir-crizotinib-approved-fda-alk-positive.

https://www.pharmacytimes.com/view/pfizer-introduces-three-new-oncology-biosimilars-to-us-market.

https://www.prnewswire.com/news-releases/accord-healthcare-adds-generic-drug-for-use-in-treating-leukemia-and-non-hodgkins-lymphoma-301696609.html

https://www.prnewswire.com/news-releases/accord-healthcare-adds-generic-drug-for-use-in-treating-leukemia-and-non-hodgkins-lymphoma-301696609.html.

https://www.prnewswire.com/news-releases/apotex-corp-launches-bendamustine-hydrochloride-injection-in-the-united-states-301808721.html

https://www.roche.com/media/releases/med-cor-2023-06-16.

https://www.rttnews.com/2345970/spectrum-pharma-gets-fda-s-accelerated-approval-for-t-cell-cancer-drug-beleodaq.aspx.

https://www.sec.gov/Archives/edgar/data/873364/000110465908018840/a08-8765_1ex99d1.htm.

https://www.tevausa.com/news-and-media/press-releases/cms-establishes-unique-j-code-for-bendeka-bendamustine-hydrochloride-injection/.

https://www.tevausa.com/news-and-media/press-releases/teva-and-eagle-pharmaceuticals-announce-commercial-availability-of-bendeka-bendamustine-hydrochloride-/.

https://www.usp.org/sites/default/files/usp/document/harmonization/gen-method/q08_pf_ira_33_2_2007_chapter_1.pdf.

https://www.waylistherapeutics.com/products/p/country-feast-set-3nybt-3j2sl-s58rs.

https://www.wsj.com/market-data/quotes/EGRX/company-people.

https://www.zyduslife.com/public/pdf/pressrelease/Press_Release_ZC_gets_180_day_exclusivity_for_Nelarabine_injection_announces_final_approval_from_USFDA.pdf.

Signpath Pharma Inc. Form S – 1, January 27, 2015, p. 3.

Slottje, Daniel, Economic Damages in Intellectual Property, 2006.

Teva 2024 Form 10-K.

Teva 2025 Form 10-K.

The 2006 Chen – Bridgetech Agreement, April 29, 2006.

The 2019 Formulex Agreement, May 2019.

# Appendix 3

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**DAMAGES SUMMARY: ONLY LIQUID FORMULATION OF BENDAMUSTINE**

Appendix 3.1



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**ONLY LIQUID FORMULATIONS: LOST NET ROYALTIES - BENDEKA**

Appendix 3.1.1



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**ONLY LIQUID FORMULATIONS: LOST PROFITS - BELRAPZO**

Appendix 3.1.2



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY                                                  1 of 1

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**ONLY LIQUID FORMULATIONS: LOST ROYALTIES ON REMAINING VIVIMUSTA UNIT SALES**

Appendix 3.1.3



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY    1 of 1

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**DAMAGES SUMMARY: BOTH LIQUID AND POWDER FORMULATIONS OF BENDAMUSTINE**

Appendix 3.2



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**LIQUID AND POWDER FORMULATIONS: LOST NET ROYALTIES - BENDEKA**

Appendix 3.2.1



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**LIQUID AND POWDER FORMULATIONS: LOST PROFITS - BELRAPZO**

Appendix 3.2.2



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**BOTH LIQUID AND POWDER FORMULATIONS: LOST ROYALTIES ON REMAINING VIVIMUSTA UNIT SALES**

Appendix 3.2.3



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**DAMAGES SUMMARY: REASONABLE ROYALTY ONLY**

Appendix 3.3



# Appendix 4

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*
**VIVIMUSTA QUARTERLY NET SALES: Q4 2022 - Q3 2025**
Appendix 4.1



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**U.S. SALES OF VIVIMUSTA**

Appendix 4.2

| | Sum of | Sum of | Sum of | Sum of Cash | | Initial |
|---|---|---|---|---|---|---|

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**U.S. SALES OF VIVIMUSTA**

Appendix 4.2

# Appendix 5

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**CALCULATIONS OF ADJUSTED MARKET SHARES BASED ON IQVIA SALES DATA [1]**

Appendix 5.1



**Notes:**

[1] EAGLEBEN-SA_00358761.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**COMPARISON OF MARKET SHARE DATA: IQVIA V. PRODUCED SALES DATA**

Appendix 5.2



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**IQVIA UNIT SALES OF BENDAMUSTINE PRODUCTS AND OCEAN TOMO DERIVED MARKET SHARES [1]**

Appendix 5.3



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**IQVIA UNIT SALES OF BENDAMUSTINE PRODUCTS AND OCEAN TOMO DERIVED MARKET SHARES [1]**

Appendix 5.3



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**REPORTED QUARTERLY UNIT SALES OF BENDAMUSTINE PRODUCTS AND OCEAN TOMO DERIVED MARKET SHARES**

Appendix 5.4



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**REPORTED QUARTERLY UNIT SALES OF BENDAMUSTINE PRODUCTS AND OCEAN TOMO DERIVED MARKET SHARES**

Appendix 5.4



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

# Appendix 6

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**LIQUID FORMULATIONS: AVERAGE REVENUE PER UNIT BASED ON PRODUCED SALES DATA**

Appendix 6.1



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**LIQUID FORMULATIONS: AVERAGE REVENUE PER UNIT BASED ON PRODUCED SALES DATA**

Appendix 6.1

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**QUARTERLY ASPs PLUS 4.3% PER CMS: Q1 2022 - Q1 2025 [1]**

Appendix 6.2



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**QUARTERLY ASPs PER CMS: Q1 2022 - Q4 2025 [1][2]**

Appendix 6.3



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**QUARTERLY ASPs PER CMS: Q1 2022 - Q4 2025 [1][2]**

Appendix 6.3



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**QUARTERLY ASPs PER CMS: Q1 2022 - Q4 2025 [1][2]**

Appendix 6.3



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**IQVIA GROSS REVENUE, UNIT SALES AND GROSS REVENUE PER UNIT**

Appendix 6.4



# Appendix 7

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*
**EAGLE'S REPORTED QUARTERLY P&L STATEMENTS FOR BENDEKA: Q1 2022 - Q2 2025 [1]**
Appendix 7.1



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**EAGLE'S REPORTED QUARTERLY P&L STATEMENTS FOR BELRAPZO: Q1 2022 - Q2 2025 [1]**

Appendix 7.2



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**EAGLE'S REPORTED TOTAL REVENUE AND GROSS PROFIT FOR BENDAMUSTINE PRODUCTS: 2016 - Q2 2025 [1]**

Appendix 7.2.1



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SLAYBACK'S REPORTED ANNUAL P&L STATEMENTS FOR VIVIMUSTA: 2022 - 2025 [1]**

Appendix 7.3



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SLAYBACK'S REPORTED ANNUAL P&L STATEMENTS FOR VIVIMUSTA: 2022 - 2025 [1]**

Appendix 7.3



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**BAXTER'S REPORTED QUARTERLY GROSS PROFITABILITY FOR BENDAMUSTINE PRODUCT: FEBRUARY 2023 - SEPTEMBER 2025 [1]**

Appendix 7.4



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**APOTEX'S REPORTED QUARTERLY GROSS PROFITABILITY FOR BENDAMUSTINE PRODUCT: MAY 2023 THROUGH NOVEMBER 2025 [1]**

Appendix 7.5



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

# Appendix 8

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**EAGLE'S REPORTED ANNUAL OPERATING INCOME**

Appendix 8.1



# Appendix 9

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SLAYBACK'S REPORTED COSTS RELATING TO** ███████████████

Appendix 9.1



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SLAYBACK'S REPORTED COSTS RELATING TO** ███████████████████

Appendix 9.1



*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SLAYBACK'S REPORTED COSTS RELATING TO** ▮▮▮▮▮▮▮▮▮▮▮

Appendix 9.1



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SLAYBACK/AZURITY PATENTS RELATING TO VIVIMUSTA**

Appendix 9.2



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

# Appendix 10

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**EAGLE BENDAMUSTINE-RELATED PATENTS GRANTED TO** ███████████

Appendix 10.1

**Issuance**



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**EAGLE BENDAMUSTINE-RELATED PATENTS GRANTED TO** █████████

Appendix 10.1



HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**EAGLE BENDAMUSTINE-RELATED LITIGATION BY DEFENDANT AND U.S. PATENT**

Appendix 10.1.1

| | Patent No. | Issuance Date | Title | Apotex | Fresenius | Mylan | Slayback | Hospira | Lupin | Aurobindo | DRL | Accord | Baxter | Almaject |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | **Eagle Defendants and Asserted Patents** | | | | | | |
| [1] | 8,609,707 | 12/17/13 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | 18-cv-01459 | | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | 22-cv-00704 | | 25-cv-01168 |
| [2] | 9,000,021 | 4/7/15 | Methods of Treatment . . . | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | | | 25-cv-01168 |
| [3] | 9,034,908 | 5/19/15 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | | | 25-cv-01168 |
| [4] | 9,144,568 | 9/29/15 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | | | 25-cv-01168 |
| [5] | 9,265,831 | 2/23/16 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | 18-cv-01459 [22] | | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | 22-cv-00704 | | 25-cv-01168 |
| [6] | 9,572,796 | 2/21/17 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | 18-cv-01459 [22] | | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | 22-cv-00704 | | 25-cv-01168 |
| [7] | 9,572,797 | 2/21/17 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | 18-cv-01459 [22] | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | 22-cv-00704 | | 25-cv-01168 |
| [8] | 9,572,887 | 2/21/17 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | 18-cv-00117 | | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | 22-cv-00704 | | 25-cv-01168 |
| [9] | 9,572,888 | 2/21/17 | Formulations of Bendamustine | | | | | | 19-cv-01251 | | | | | |
| [10] | 9,579,384 | 2/28/17 | Methods of Treatment . . . | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | | 18-cv-01074 | | 20-cv-00632 | 21-cv-00695 | | | 25-cv-01168 |
| [11] | 9,597,397 | 3/21/17 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | | | 25-cv-01168 |
| [12] | 9,597,398 | 3/21/17 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | | | 25-cv-01168 |
| [13] | 9,597,399 | 3/21/17 | Formulations of Bendamustine | 17-cv-01164 | 17-cv-01201 | 17-cv-01790 | | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | | | 25-cv-01168 |
| [14] | 10,010,533 | 7/3/18 | Formulations of Bendamustine | | 18-cv-01586 | | 18-cv-01459 [22] | 18-cv-01074 | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | 22-cv-00704 | | 25-cv-01168 |
| [15] | 10,052,385 | 8/21/18 | Formulations of Bendamustine | | 18-cv-01586 | | | | 19-cv-01251 | 20-cv-00632 | 21-cv-00695 | | | |
| [16] | 11,103,483 | 8/31/21 | Formulations of Bendamustine | | | | 21-cv-01256 | 21-cv-01619 | | | 21-cv-00695 | 21-cv-00952 | | |
| [17] | 11,844,783 | 12/19/23 | Formulations of Bendamustine | 24-cv-00064 | | | 24-cv-00065 | | | | 24-cv-00637 | | 24-cv-00066 | 25-cv-01168 |
| [18] | 11,872,214 | 1/16/24 | Formulations of Bendamustine | 24-cv-00064 | | | 24-cv-00065 | | | | 24-cv-00637 | | 24-cv-00066 | 25-cv-01168 |
| [19] | 12,138,248 | 11/12/24 | Formulations of Bendamustine | 24-cv-00064 | | | 25-cv-00075 | | | | 24-cv-00637 | | 24-cv-00066 | 25-cv-01168 |
| [20] | 12,343,333 | 7/1/25 | Formulations of Bendamustine | | | | | | | | | | | 25-cv-01168 |
| [21] | 12,350,257 | 7/8/25 | Formulations of Bendamustine | | | | | | | | | | | 25-cv-01168 |

**Notes:**

[1]  United States Patent 8,609,707.
[2]  United States Patent 9,000,021.
[3]  United States Patent 9,034,908.
[4]  United States Patent 9,144,568.
[5]  United States Patent 9,265,831.
[6]  United States Patent 9,572,796.
[7]  United States Patent 9,572,797.
[8]  United States Patent 9,572,887.
[9]  United States Patent 9,572,888.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**EAGLE BENDAMUSTINE-RELATED LITIGATION BY DEFENDANT AND U.S. PATENT**

Appendix 10.1.1

[10]  United States Patent 9,579,384.

[11]  United States Patent 9,597,397.

[12]  United States Patent 9,597,398.

[13]  United States Patent 9,597,399.

[14]  United States Patent 10,010,533.

[15]  United States Patent 10,052,385.

[16]  United States Patent 11,103,483.

[17]  United States Patent 11,844,783.

[18]  United States Patent 11,872,214.

[19]  United States Patent 12,138,248.

[20]  United States Patent 12,343,333.

[21]  United States Patent 12,350,257.

[22]  And 18-cv-01953.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

# Appendix 11

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**FDA APPROVED TREATMENTS FOR CHRONIC LYMPHOCYTIC LEUKEMIA**

Appendix 11.1

| | Compound [1] | Name [1] | | Company | | FDA Approval Date | | Launch Date | Method of Delivery |
|---|---|---|---|---|---|---|---|---|---|
| | acalabrutinib maleate | Calquence | [4] | Astrazeneca | [4] | November 2019 | [2] | November 2019 | Capsule; Oral |
| | alemtuzumab | Campath | [5] | Millennium and ILEX Partners | [5] | May 2021 | | N/A | Vial; Intravenous |
| | bendamustine hydrochloride | Bendeka | [6] | Teva Pharmaceuticals USA, Inc. | [6] | December 2015 | [7] | January 2016 | Solution; Intravenous |
| | bendamustine hydrochloride | Treanda | [8] | Cephalon, LLC | [8] | March 2008 | [8] | April 2008 | Powder; Intravenous |
| | bendamustine hydrochloride | Generic | [9] | Various | [9] | December 2022 | [9] | February 2023 | Solution; Intravenous |
| | chlorambucil | Leukeran | [10] | Waylis Therapeutics | [11] | November 2003 | [2] | N/A | Tablet; Oral |
| | duvelisib | Copiktra | [12] | Verastem, Inc. | [12] | September 2018 | [12] | September 2018 | Capsule; Oral |
| | ibrutinib | Imbruvica | [13] | Janssen and Pharmacyclics, Inc. | [13] | February 2014 | [2] | N/A | Capsule; Oral |
| | idelalisib | Zydelig | [14] | Gilead Sciences | [14] | July 2014 | [14] | Q3 2014 | Tablet; Oral |
| | lisocabtagene maraleucel | Breyanzi | [15] | Bristol Myers Squibb | [15] | March 2024 | [15] | March 2024 | Intravenous; Injection |
| | obinutuzumab | Gazyva | [16] | Genentech | [16] | November 2013 | [2] | N/A | Injectable; Injection |
| [3] | ofatumumab | Arzerra | [17] | GlaxoSmithKline | [17] | October 2009 | [3] | November 2009 | Injectable; Injection |
| | pirtobrutinib | Jaypirca | [18] | Eli Lilly | [18] | December 2023 | [2] | December 2023 | Tablet; Oral |
| | rituximab | Riabni | [19] | Amgen | [19] | December 2020 | [19] | January 2021 | Injectable; Injection |
| | rituximab | Rituxan | [20] | Genentech | [20] | February 2010 | [2] | February 2010 | Solution; Intravenous |
| | rituximab | Ruxience | [21] | Pfizer | [21] | July 2019 | [21] | January 2020 | Injectable; Injection |
| | rituximab | Truxima | [22] | Celltrion | [22] | May 2019 | [22] | November 2019 | Injectable; Injection |
| | rituximab; hyaluronidase | Rituxan Hycela | [23] | Genentech | [23] | June 2017 | [23] | July 2017 | Solution; Subcutaneous |
| | venetoclax | Venclexta | [24] | Abbvie | [24] | April 2016 | [24] | April 2016 | Tablet; Oral |
| | zanubrutinib | Brukinsa | [25] | Beone Medicines | [25] | January 2023 | [2] | January 2023 | Capsule; Oral |

**Notes:**

[1]  https://www.cancer.gov/about-cancer/treatment/drugs/leukemia#drugs-approved-for-chronic-lymphocytic-leukemia-cll.

[2]  Launch date not explicitly stated, but this drug was already commercially available before the FDA approval date for other indication.

[3]  Product has been discontinued.

[4]  https://www.astrazeneca.com/media-centre/press-releases/2019/calquence-approved-in-the-us-for-adult-patients-with-chronic-lymphocytic-leukaemia-21112019.html.

[5]  https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2001/alemmil050701L.htm.

[6]  https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=208194; https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/208194s000lbl.pdf.

[7]  https://ir.tevapharm.com/news-and-events/press-releases/press-release-details/2016/CMS-Establishes-Unique-J-Code-for-BENDEKA-Bendamustine-Hydrochloride-Injection/default.aspx.

[8]  https://www.sec.gov/Archives/edgar/data/873364/000110465908018840/a08-8765_1ex99d1.htm.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

[9]   https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=205574; https://www.prnewswire.com/news-releases/accord-healthcare-adds-generic-drug-for-use-in-treating-leukemia-and-non-hodgkins-lymphoma-301696609.html; https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=215033; https://www.prnewswire.com/news-releases/apotex-corp-launches-bendamustine-hydrochloride-injection-in-the-united-states-301808721.html; https://www.accessdata.fda.

[10]  https://www.waylistherapeutics.com/products/p/country-feast-set-3nybt-3j2sl-s58rs.

[11]  https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=010669; https://www.accessdata.fda.gov/drugsatfda_docs/label/2003/10669slr028_leukeran_lbl.pdf.

[12]  https://investor.verastem.com/news-releases/news-release-details/verastem-oncology-receives-fda-approval-copiktratm-duvelisib

[13]  https://www.jnj.com/media-center/press-releases/imbruvica-ibrutinib-now-approved-in-the-us-for-patients-with-chronic-lymphocytic-leukemia-who-have-received-at-least-one-prior-therapy.

[14]  https://www.gilead.com/news/news-details/2014/us-food-and-drug-administration-approves-gileads-zydelig-idelalisib-for-relapsed-chronic-lymphocytic-leukemia-follicular-lymphoma-and-small-lymphocytic-lymphoma; https://www.gilead.com/news/news-details/2014/gilead-sciences-announces-third-quarter-2014-financial-results.

[15]  https://news.bms.com/news/details/2024/U.S.-FDA-Approves-Bristol-Myers-Squibbs-Breyanzi--as-the-First-and-Only-CAR-T-Cell-Therapy-for-Adults-with-Relapsed-or-Refractory-Chronic-Lymphocytic-Leukemia-CLL-or-Small-Lymphocytic-Lymphoma-SLL/default.aspx

[16]  https://www.gene.com/media/news-features/fda-approval-cll; chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://assets.roche.com/f/176343/b661f27eaf/fb13e.pdf.

[17]  https://www.gsk.com/en-gb/media/press-releases/gsk-and-genmab-receive-accelerated-approval-for-arzerra/.

[18]  https://investor.lilly.com/news-releases/news-release-details/jaypircar-pirtobrutinib-now-approved-us-fda-treatment-adult.

[19]  https://www.amgen.com/newsroom/press-releases/2020/12/fda-approves-amgens-riabni-rituximabarrx-a-biosimilar-to-rituxan-rituximab.

[20]  https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=103705.

[21]  https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=761103; https://www.pharmacytimes.com/view/pfizer-introduces-three-new-oncology-biosimilars-to-us-market.

[22]  https://www.nasdaq.com/press-release/teva-and-celltrion-announce-the-availability-of-truximar-rituximab-abbs-injection-the.

[23]  https://www.gene.com/media/press-releases/14670/2017-06-22/fda-approves-rituxan-hycela-rituximab-an.

[24]  https://news.abbvie.com/2016-04-11-AbbVie-Receives-FDA-Accelerated-Approval-of-Venclexta-venetoclax-Tablets-the-First-BCL-2-Inhibitor-in-Relapsed-Refractory-Chronic-Lymphocytic-Leukemia-Patients-with-17p-Deletion.

[25]  https://www.businesswire.com/news/home/20230119005888/en/BRUKINSA-Approved-in-the-U.S.-for-Chronic-Lymphocytic-Leukemia.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**FDA APPROVED TREATMENTS FOR NON-HODGKIN LYMPHOMA [1]**

Appendix 11.2

| Compound | Name | | Company | | FDA Approval Date | | Launch Date | | Method |
|---|---|---|---|---|---|---|---|---|---|
| acalabrutinib maleate monohydrate | Calquence | [3] | Astrazeneca | [3] | October 2017 | [3] | November 2017 | | Tablet; Oral |
| asparaginase erwinia chrysanthemi (recombinant)-rywn | Rylaze | [4] | Jazz Pharmaceuticals | [4] | June 2021 | [4] | July 2021 | | Injectable; Intramuscular |
| axicabtagene ciloleucel | Yescarta | [5] | Kite Pharmaceuticals | [5] | October 2017 | | N/A | | Intravenous; Injection |
| belinostat | Beleodaq | [6] | Spectrum Pharmaceuticals | [6] | July 2014 | [6] | July 2014 | | Powder; Intravenous |
| bendamustine hydrochloride | Bendeka | [7] | Teva Pharmaceuticals USA, Inc. | [7] | December 2015 | [7] | January 2016 | | Solution; Intravenous |
| bendamustine hydrochloride | Treanda | [8] | Cephalon, LLC | [8] | March 2008 | [8] | April 2008 | | Powder; Intravenous |
| bendamustine hydrochloride | Generic | [9] | Various | [9] | December 2022 | | N/A | | Solution; Intravenous |
| bortezomib | Velcade | [10] | Millenium Pharmaceuticals | [10] | December 2006 | [2] | December 2006 | | Injectable; Intravenous, Subcutaneous |
| bortezomib | Generic | [11] | Various | [11] | May 2022 | [11] | May 2022 | | Injectable; Intravenous, Subcutaneous |
| brentuximab vedotin | Adcetris | [12] | Seattle Genetics | [12] | August 2011 | [12] | August 2011 | | Injectable; Injection |
| brexucabtagene autoleucel | Tecartus | [13] | Kite Pharmaceuticals | [13] | July 2020 | | N/A | | Intravenous; Injection |
| carmustine | BiCNU | [14] | Avet Lifesciences | [14] | March 1977 | | N/A | | Injectable; Injection |
| carmustine | Generic | [15] | Various | [15] | October 2018 | [15] | November 2018 | | Injectable; Injection |
| chlorambucil | Leukeran | [16] | Waylis Therapeutics | [16] | November 2003 | | N/A | | Tablet; Oral |
| crizotinib | Xalkori | [17] | PF Prism | [17] | January 2021 | [2] | January 2021 | | Capsule; Oral |
| denileukin diftitox-cxdl | Lymphir | [18] | Citus Pharmaceuticals | [18] | August 2024 | [18] | December 2025 | | Injectable; Injection |
| epcoritamab-bysp | Epkinly | [19] | Genmab | [19] | May 2023 | | N/A | | Injectable; Subcutaneous |
| glofitamab-gxbm | Columvi | [20] | Genentech | [20] | June 2023 | [20] | July 2023 | | Injectable; Injection |
| ibritumomab tiuxetan | Zevalin | [21] | Spectrum Pharmaceuticals | [21] | February 2002 | | N/A | | Injectable; Injection |
| ibrutinib | Imbruvica | [22] | Pharmacyclics | [22] | November 2013 | | N/A | | Capsule; Oral |
| lenalidomide | Revlimid | [23] | Bristol Myers Squibb | [23] | June 2013 | [2] | June 2013 | | Capsule; Oral |
| lenalidomide | Generic | [24] | Various | [24] | May 2021 | [24] | March 2022 | | Capsule; Oral |
| lisocabtagene maraleucel | Breyanzi | [25] | Juno Therapeutics | [25] | February 2021 | [25] | June 2021 | | Intravenous; Injection |
| loncastuximab tesirine-lpyl | Zynlonta | [26] | ADC Therapeutics | [26] | April 2021 | [26] | May 2021 | | Injectable; Injection |
| mogamulizumab-kpkc | Poteligeo | [27] | Kyowa Kirin | [27] | August 2018 | | N/A | | Injectable; Injection |
| mosunetuzumab-axgb | Lunsumio | [28] | Genentech | [28] | December 2022 | [28] | January 2023 | | Injectable; Injection |
| nelarabine | Arranon | [29] | Sandoz | [29] | October 2005 | | N/A | | Injectable; Intravenous |
| nelarabine | Generic | [30] | Various | [30] | November 2021 | [30] | November 2021 | | Injectable; Intravenous |
| obinutuzumab | Gazyva | [31] | Genentech | [31] | February 2016 | [2] | February 2016 | | Injectable; Injection |
| pembrolizumab | Keytruda | [32] | Merck Sharp Dohme | [32] | March 2017 | [2] | March 2017 | | Solution; Intravenous |
| pemigatinib | Pemazyre | [33] | Incyte Corp | [33] | August 2022 | [2] | August 2022 | | Tablet; Oral |
| pirtobrutinib | Jaypirca | [34] | Loxo Oncology | [34] | January 2023 | [34] | February 2023 | | Tablet; Oral |
| plerixafor | Mozobil | [35] | Genzyme | [35] | December 2008 | | N/A | | Solution; Subcutaneous |

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**FDA APPROVED TREATMENTS FOR NON-HODGKIN LYMPHOMA [1]**

Appendix 11.2

| | | | | | |
|---|---|---|---|---|---|
| plerixafor | Generic | [36] Various | [36] July 2023 | [36] August 2023 | Solution; Subcutaneous |
| polatuzumab vedotin-piiq | Polivy | [37] Genentech | [37] June 2019 | [37] June 2019 | Powder; Intravenous |
| pralatrexate | Folotyn | [38] Acrotech Biopharmaceuticals | [38] September 2009 | [38] October 2009 | Solution; Intravenous |
| pralatrexate | Generic | [39] Various | [39] January 2016 | [39] December 2022 | Solution; Intravenous |
| interferon alfa-2b | Intron A | [40] Schering | [40] November 1997 | N/A | Vial |
| rituximab | Riabni | [41] Amgen | [41] December 2020 | [41] January 2021 | Injectable; Injection |
| rituximab | Rituxan | [42] Genentech | [42] November 1997 | N/A | Solution; Intravenous |
| rituximab | Ruxience | [43] Pfizer | [43] July 2019 | [43] January 2020 | Injectable; Injection |
| rituximab | Truxima | [44] Celltrion | [44] November 2018 | [44] November 2019 | Injectable; Injection |
| rituximab and hyaluronidase human | Rituxan Hycela | [45] Genentech | [45] June 2017 | [45] July 2017 | Solution; Subcutaneous |
| romidepsin | Istodax | [46] Bristol-Myers | [46] November 2009 | [46] January 2010 | Powder; Intravenous |
| romidepsin | Generic | [47] Various | [47] October 2021 | [47] July 2022 | Powder; Intravenous |
| selinexor | Xpovio | [48] Karyopharmaceutical Therapeutics | [48] June 2020 | [48] June 2020 | Tablet; Oral |
| tafasitamab-cxix | Monjuvi | [49] MorphoSys | [49] July 2020 | [49] August 2020 | Solution; Intravenous |
| tazemetostat hydrobromide | Tazverik | [50] Epizyme | [50] June 2020 | [2] June 2020 | Tablet; Oral |
| tisagenlecleucel | Kymriah | [51] Novartis | [51] May 2018 | [2] May 2018 | Intravenous; Injection |
| venetoclax | Venclexta | [52] Abbvie | [52] June 2018 | [2] June 2018 | Tablet; Oral |
| vorinostat | Zolinza | [53] MSD Sub Merck | [53] October 2006 | [53] N/A | Capsule; Oral |
| zanubrutinib | Brukinsa | [54] Beone Medicines | [54] November 2019 | [54] December 2019 | Capsule; Oral |

**Notes:**

[1]  https://www.cancer.gov/about-cancer/treatment/drugs/non-hodgkin.

[2]  Launch date not explicitly stated, but this drug was already commercially available before the FDA approval date for other indication.

[3]  https://www.mckesson.com/about-us/newsroom/press-releases/2017/calquence-available-for-order-at-biologics-inc/.

[4]  https://investor.jazzpharma.com/news-releases/news-release-details/jazz-pharmaceuticals-announces-us-fda-approval-rylazetm.

[5]  https://www.gilead.com/news/news-details/2017/kites-yescarta-axicabtagene-ciloleucel-becomes-first-car-t-therapy-approved-by-the-fda-for-the-treatment-of-adult-patients-with-relapsed-or-refractory-large-b-cell-lymphoma-after-two-or-more.

[6]  https://www.rttnews.com/2345970/spectrum-pharma-gets-fda-s-accelerated-approval-for-t-cell-cancer-drug-beleodaq.aspx.

[7]  https://ir.tevapharm.com/news-and-events/press-releases/press-release-details/2016/CMS-Establishes-Unique-J-Code-for-BENDEKA-Bendamustine-Hydrochloride-Injection/default.aspx.

[8]  https://www.sec.gov/Archives/edgar/data/873364/000110465908018840/a08-8765_1ex99d1.htm.

[9]  https://www.prnewswire.com/news-releases/accord-healthcare-adds-generic-drug-for-use-in-treating-leukemia-and-non-hodgkins-lymphoma-301696609.html.

[10]  https://www.biospace.com/fda-approves-millennium-pharmaceuticals-inc-cambridge-massachusetts-s-velcade-r-bortezomib-for-injection-for-aggressive-form-of-non-hodgkin-s.

[11]  https://www.fresenius-kabi.com/us/news-and-events/fresenius-kabi-introduces-new-generic-for-the-treatment-of-multi.

[12]  https://www.fiercebiotech.com/biotech/seattle-genetics-announces-fda-accelerated-approval-of-adcetris-tm-brentuximab-vedotin-for.

[13]  https://www.gilead.com/news/news-details/2020/us-fda-approves-kites-tecartus-the-first-and-only-car-t-treatment-for-relapsed-or-refractory-mantle-cell-lymphoma.

[14]  https://lifesciencehistory.com/bristol-myers-introduced-bicnu-carmustine-for-treatment-of-brain-and-lymphatic-cancers/.

[15]  https://investors.amneal.com/news/press-releases/press-release-details/2018/Amneal-Announces-Approval-of-Carmustine-for-Injection-USP-100-mgvial---Preparing-for-Launch/default.aspx.

[16]  https://hemonc.org/wiki/Chlorambucil_(Leukeran).

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**FDA APPROVED TREATMENTS FOR NON-HODGKIN LYMPHOMA [1]**

Appendix 11.2

[17] https://www.pfizer.com/news/press-release/press-release-detail/pfizers-xalkorir-crizotinib-approved-fda-alk-positive.

[18] https://citiusonc.com/news/news-details/2025/Citius-Oncology-Announces-U-S--Commercial-Launch-of-LYMPHIR-a-Novel-Cancer-Immunotherapy-for-Cutaneous-T-Cell-Lymphoma-CTCL/default.aspx..

[19] https://www.fda.gov/drugs/drug-approvals-and-databases/fda-grants-accelerated-approval-epcoritamab-bysp-relapsed-or-refractory-diffuse-large-b-cell.

[20] https://www.roche.com/media/releases/med-cor-2023-06-16.

[21] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=125019; https://www.accessdata.fda.gov/drugsatfda_docs/label/2002/ibriide021902LB.pdf.

[22] https://www.jnj.com/media-center/press-releases/imbruvica-ibrutinib-now-approved-in-the-us-for-patients-with-chronic-lymphocytic-leukemia-who-have-received-at-least-one-prior-therapy.

[23] https://www.fiercebiotech.com/biotech/u-s-food-and-drug-administration-approves-revlimid%C2%AE-lenalidomide-for-treatment-of-patients.

[24] https://www.myeloma.org/blog/lower-cost-revlimid-generic-lenalidomide-here.

[25] https://news.bms.com/news/details/2021/U.S.-Food-and-Drug-Administration-Approves-Bristol-Myers-Squibbs-Breyanzi-lisocabtagene-maraleucel-a-New-CAR-T-Cell-Therapy-for-Adults-with-Relapsed-or-Refractory-Large-B-cell-Lymphoma/default.aspx; https://news.bms.com/news/details/2021/Bristol-Myers-Squibb-Reports-Second-Quarter-Financial-Results-for-2021/default.aspx.

[26] https://www.cancerresearchhorizons.com/news-and-events/our-news/adc-therapeutics-announces-fda-approval-zynlontatm.

[27] https://www.kyowakirin.com/media_center/news_releases/2018/e20180809_01.html.

[28] https://www.gene.com/media/press-releases/14978/2022-12-22/fda-approves-genentechs-lunsumio-a-first.

[29] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=021877; https://www.accessdata.fda.gov/drugsatfda_docs/label/2005/021877lbl.pdf.

[30] https://www.zyduslife.com/public/pdf/pressrelease/Press_Release_ZC_gets_180_day_exclusivity_for_Nelarabine_injection_announces_final_approval_from_USFDA.pdf.

[31] https://www.gene.com/media/press-releases/14618/2016-02-26/fda-approves-genentechs-gazyva-obinutuzu.

[32] https://www.fda.gov/drugs/resources-information-approved-drugs/pembrolizumab-keytruda-classical-hodgkin-lymphoma.

[33] https://www.businesswire.com/news/home/20220826005244/en/Incyte-Announces-FDA-Approval-of-Pemazyre-pemigatinib-as-the-First-and-Only-Targeted-Treatment-for-MyeloidLymphoid-Neoplasms-MLNs-with-FGFR1-Rearrangement.

[34] https://www.fiercepharma.com/pharma/eli-lilly-introduces-new-btk-inhibitor-blood-cancer-drug-fda-approval-jaypirca.

[35] https://www.fiercebiotech.com/biotech/fda-approves-genzyme-corporation-genz-s-mozobil.

[36] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=205197; https://www.fresenius-kabi.com/us/news-and-events/fresenius-kabi-launches-plerixafor-injection.

[37] https://www.gene.com/media/press-releases/14795/2019-06-10/fda-grants-genentechs-polivy-accelerated.

[38] https://www.fiercebiotech.com/biotech/allos-therapeutics-folotyn-tm-first-and-only-fda-approved-therapy-for-relapsed-or.

[39] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=206167; https://www.fresenius-kabi.com/us/news-and-events/fresenius-kabi-introduces-pralatrexate-injection-for-the-treatme.

[40] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=103132; https://www.accessdata.fda.gov/drugsatfda_docs/label/1997/ifnasch110697-lab.pdf.

[41] https://www.amgen.com/newsroom/press-releases/2020/12/fda-approves-amgens-riabni-rituximabarrx-a-biosimilar-to-rituxan-rituximab.

[42] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=103705; https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/103705s5312lbl.pdf.

[43] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=761103; https://www.accessdata.fda.gov/drugsatfda_docs/label/2019/761103s000lbl.pdf; https://www.pharmacytimes.com/view/pfizer-introduces-three-new-oncology-biosimilars-to-us-market.

[44] https://www.fda.gov/drugs/fda-approves-truxima-biosimilar-rituxan-non-hodgkins-lymphoma; https://www.nasdaq.com/press-release/teva-and-celltrion-announce-the-availability-of-truximar-rituximab-abbs-injection-the.

[45] https://www.gene.com/media/press-releases/14670/2017-06-22/fda-approves-rituxan-hycela-rituximab-an.

[46] https://www.fiercebiotech.com/biotech/fda-approves-gloucester-pharmaceuticals-istodax%C3%A2%C2%AE-for-patients-cutaneous-t-cell-lymphoma.

[47] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=206254; https://www.fresenius-kabi.com/us/news-and-events/romidepsin-for-injection-available-from-fresenius-kabi.

[48] https://investors.karyopharm.com/2020-06-22-Karyopharm-Announces-FDA-Approval-of-XPOVIO-R-selinexor-for-the-Treatment-of-Patients-with-Relapsed-or-Refractory-Diffuse-Large-B-cell-Lymphoma-DLBCL.

[49] https://www.biospace.com/fda-approves-monjuvi-r-tafasitamab-cxix-in-combination-with-lenalidomide-for-the-treatment-of-adult-patients-with-relapsed-or-refractory-diffuse-large-b-cell-lymphoma-dlbcl.

[50] https://www.businesswire.com/news/home/20200618005820/en/Epizyme-Announces-U.S.-FDA-Accelerated-Approval-of-TAZVERIK-tazemetostat-for-RelapsedRefractory-Follicular-Lymphoma.

[51] https://www.novartis.com/news/media-releases/kymriah-tisagenlecleucel-first-class-car-t-therapy-from-novartis-receives-second-fda-approval-treat-appropriate-rr-patients-large-b-cell-lymphoma.

[52] https://news.abbvie.com/2018-06-08-AbbVie-Announces-U-S-FDA-Approval-of-VENCLEXTA-R-venetoclax-tablets-in-Combination-with-Rituximab-as-a-Fixed-Duration-Treatment-for-Chronic-Lymphocytic-Leukemia-or-Small-Lymphocytic-Lymphoma-Patients-Who-Have-Received-One-Prior-Therapy.

[53] https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=021991; https://www.accessdata.fda.gov/drugsatfda_docs/label/2006/021991lbl.pdf.

[54] https://www.oncnursingnews.com/view/fda-approves-zanubrutinib-for-mcl-treatment.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

# Appendix 12

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SUMMARY OF THIRD PARTY LICENSE AGREEMENTS**

Appendix 12.1

| | Title | Licensor | Licensee | Effective Date | Term | License Grant | Licensed Technology | Payment & Royalty |
|---|---|---|---|---|---|---|---|---|
| | **1998 Albert Einstein College - Pain Therapeutics Agreement** | | | | | | | |
| [1] | License Agreement | Albert Einstein College of Medicine of Yeshiva University | Pain Therapeutics, Inc. | 5/5/1998 | This Agreement shall continue in effect on a country-by-country basis until expiration date of the last obligation of licensee to pay royalty to university for the sale of a Licensed Product in that country. | An exclusive license, with right to grant sublicenses, under the Patent Rights and Know-How to make, have made, use, sell, offer for sale and import Licensed Products in the entire world. | - U.S. Patent No. 5,472,943; U.S. Patent No. 5,512,578, U.S. Patent No. 5,580,876; U.S. Patent No. 5,765,125; U.S. Patent No. 5,585,348.<br>- 4 United States patent applications<br>- 1 International Patent<br>- 9 International patent applications<br><br>"Know-How" means all information and materials, including but not limited to, technology, experience, discoveries, improvements, processes, formulae, data (including but not limited to all preclinical, clinical, toxicological, and pharmacological data) and inventions, trade secrets, patentable or otherwise, developed by the university through Drs. Crain and Shen. | License Fee: $100,000<br>Research Funding: $600,000<br>Milestones Payments: Up to $4,000,000<br><br>Royalty: 4% of the total aggregate Net Sales of Licensed Products in all countries in the Territory in which the sale of the Licensed Product is covered by a Valid Patent Claim;<br><br>A royalty of 2% as a Know-How royalty, for each country in the Territory in which the sale of the Licensed product is not covered by a Valid Patent Claim but involves the use of Know-How. |
| | **2000 Molecular Medicine Research Institute - Amarillo Biosciences Inc. Agreement** | | | | | | | |
| [2] | License Agreement | Molecular Medicine Research Institute | Amarillo Biosciences, Inc. | 2/1/2000 | This Agreement and all rights licensed here under shall terminate upon the expiration of the Patent, or if there should be one or more foreign counterparts, upon the expiration of the last expiring Patent. | A royalty-bearing, exclusive license under the Patent and under MMRI Technical Information to make, have made, or use Licensed Product labeled for testing or trials, and upon proper regulatory approval, for use and sale to treat humans or animals in the United States. | United States Patent Application No. 60/156,480, dated September 28, 1999, relating to a method for using interferon-g ("IFN-g") orally, and which, along with all modifications, revisions, continuations, continuations-in-part, divisions, re-issues, extensions, or foreign counterparts thereof. | A royalty of 10% of all amounts received by ABI or an ABI Affiliate from a Sublicensee or Sublicensee Affiliate, which amounts are based on sales of Licensed Product. |

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SUMMARY OF THIRD PARTY LICENSE AGREEMENTS**

Appendix 12.1

| | Title | Licensor | Licensee | Effective Date | Term | License Grant | Licensed Technology | Payment & Royalty |
|---|---|---|---|---|---|---|---|---|
| **2001 Wayne State - SafeScience Agreement** | | | | | | | | |
| [3] | License Agreement | Wayne State University and Barbara Ann Karmanos Cancer Institute | SafeScience, Inc. | 1/26/2001 | The Agreement shall remain in effect until the later of the expiration of the term of the last to expire of the Licensed Patents, or on a Territory-by-Territory basis, twelve years following the first commercial sale of Licensed Products. | Wayne State and Barbara Ann Karmanos hereby grant to SafeScience an exclusive, worldwide, royalty-bearing license under the Licensed Patents and Licensed Technology, including the right to grant sublicenses and the right to make, have made, use, lease and sell Licensed Products. | 1. European National Phase PCT Application No. 95 925 253.7<br>2. Norwegian Patent Application No. 19970039<br>3. Australian Patent No. 695677<br>4. Brazilian Patent Application No. PI 9508245<br>5. Singapore Patent No. 36374<br>6. Japanese National Phase PCT Application No. 8-504302<br>7. Mexican National Stage Application No. 970118<br>8. Canadian Patent Application No. 2,194,586<br>9. Chinese National Stage Application No. 95194958.6<br>10. Finnish Patent Application No. 965269<br>11. U.S. Patent No. 5,834,442<br>12. U.S. Patent No. 5,895,784 | On the Effective Date, SafeScience shall pay Licensors a license fee of $300,000.<br><br>SafeScience, Inc. shall pay to Licensors royalties in respect of the most recent three-month period then ended equal to (i) 2% of Net Revenue in respect of Licensed Products.<br><br>(ii) 1.5% of Net Revenue in respect of Licensed Products that are not covered by an issued claim of any Licensed Patents. |
| **2005 Trustees of Columbia University - Omnimmune Corp Agreement** | | | | | | | | |
| [4] | License Agreement | The Trustees of Columbia University | Omnimmune Corp. | 2/1/2005 | The term of the exclusive license granted under the Licensed Patents shall extend until the expiration of the last to expire of the Licensed Patents or ten years from the date of the first sale, whichever is later, on a product by product basis. | (i) A worldwide exclusive license to develop, manufacture, use, sell, have sold, rent, or lease Licensed Products in the Therapeutic Subfield and the Animal Subfield;<br>(ii) With respect to any right, title or interest Columbia may have in the Licensed Patents, and/or Licensed Material, a worldwide non-exclusive license to develop, manufacture, use, sell, have sold, rent, or lease Licensed Products in the Diagnostic Subfield, except that no license is granted in the Licensed Patents and/or Licensed Materials with respect to B152 as listed on Attachment A in the Diagnostic Subfield. | 1) Methods of Using Antibodies Against Human Chorionic Gonadotropin-Related Determinants to Lyse, Quantitatively Measure and Enrich Human Malignant Cells. European Patent No. 0636171 issued 6/7/00.<br>2) Methods of Using Antibodies Against Human Luteinizing Hormone-Related Determinants to Detect and Enrich Human Malignant Cells.  U.S. Serial No. 10/164,914 and any continuation, or divisional continuation thereof; Patent No. 6,403,326 issued 6/11/02.<br>3) Method of Using Antibodies against Hormone-Related Determinants. U.S. Patent number 6,339,143 issued January 15, 2002.<br><br>Licensed Materials: Antibodies and Cell Lines:<br>A) A501, A502, A201, A202,<br>B) B109, B201, B204, B205, B151, B152 , B405, B406, B407, B408, B409, B411, B412, B413,<br>C) CTP-101, CTP-102, CTP-103, CTP 104, CTP 105. | Nonrefundable and non-creditable license fee of $30,000.<br><br>A royalty of 1% of Net Sales of all Licensed Products that involve use of Licensed Material or Licensed Information but are not covered by a Claim of a Licensed Patent for a term of ten (10) years from the date of the first sale of each product.<br><br>A royalty of 2% of Net Sales of all Licensed Products covered by a Claim of a Licensed Patent exclusively licensed to the Company hereunder, for a period of ten (10) years from the date of First Sale of each new Licensed Product in a territory or the last to expire Licensed Patent in such territory, whichever is longer. |

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

**SUMMARY OF THIRD PARTY LICENSE AGREEMENTS**

Appendix 12.1

| | Title | Licensor | Licensee | Effective Date | Term | License Grant | Licensed Technology | Payment & Royalty |
|---|---|---|---|---|---|---|---|---|
| | **2006 Andrew Chen - Bridgetech Agreement** | | | | | | | |
| [5] | Agreement for Purchase and Sale | Andrew Xian Chen | Bridgetech Holdings International, Inc. | 4/29/2006 | The longer of (i) the life of the last to expire of the patents included in the Intellectual Property, and (ii) a period of ten years; unless this Agreement is terminated earlier. | Agreement granted Bridgetech an exclusive license to technology to develop, manufacture, sell and otherwise commercialize lyophilized docetaxel intravenous emulsion formulations and lyophilized paclitaxel intravenous emulsion formulations for cancer treatment in the People's Republic of China, Hong Kong, Macau, and Taiwan. The 2006 Bridgetech Agreement also granted Bridgetech rights to lyophilized formulations of vancomycin and clarithromycin for the treatment of infectious diseases in the People's Republic of China, Hong Kong, Macau, and Taiwan. | The Bridgetech Agreement cancer-related patented technology included U.S. Patent Application No. 11/192439, WO Patent Application No. US2005/026783 both filed on July 28, 2005, and two U.S. provisional patent applications filed in February 2006.<br><br>Know-how is defined as including all knowledge, ideas, inventions, data, instructions, tangible or intangible materials, processes, formulas, expert opinions and information. | A running royalty of 4.0 percent of net revenue from sales of licensed products. Bridgetech also agreed to pay Mr. Chen an upfront payment of $500,000 and regulatory and other milestone payments of up to $2.0 million, depending in part on the number of and timing of clinical trials.<br><br>Under the agreement, Bridgetech was responsible for all regulatory and patent related costs. |
| | **2011 SCOLR Pharma Inc. - Syntrix Biosystems Agreement** | | | | | | | |
| [6] | Drug "X" Exclusive License Agreement | SCOLR Pharma Inc. | Syntrix Biosystems, Inc. | 6/2/2011 | Royalty Term means the period commencing on the date of the first commercial sale and ending on the earlier of (i) July 19, 2017, and (ii) Syntrix's aggregate payment of the maximum cap amount of US $20 million. | SCOLR grants Syntrix an exclusive, perpetual, royalty-bearing, assignable license in the worldwide Territory under the Patents and Licensed Know-How for the sole purpose of developing, manufacturing, commercializing, making, having made, using, selling, offering for sale and importing Products. | U.S. Patent Application 09/037,096, U.S. Patent 6,090,411, PCT Application PCT/US99/04508, European Patent Application No. 99 909 726.4, Canadian Patent CA 2323102, and Mexican Patent 220625 which relate to controlled-release pharmaceutical compositions and associated methods.<br><br>Licensed Know-how: SCOLR must provide, within 30 days of the Effective Date, all information listed in Annex B of the Agreement, including formulation data, analytical data, and manufacturing data. | Upfront Payment: $18,000 (non-refundable, non-recoupable) paid as of the Effective Date.<br><br>Running Royalties: 4% of Net Sales and 4% of Sublicense Sales Royalties actually received by Syntrix. |

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*
**SUMMARY OF THIRD PARTY LICENSE AGREEMENTS**
Appendix 12.1

| | Title | Licensor | Licensee | Effective Date | Term | License Grant | Licensed Technology | Payment & Royalty |
|---|---|---|---|---|---|---|---|---|
| **2013 John Hopkins - Signpath Pharma Agreement** | | | | | | | | |
| [7] | Exclusive License Agreement | John Hopkins | Signpath Pharma | 6/5/2013 | The term of the Agreement ended with the last to expire patent in each country, or if no patents are issued then 20 years from June 5, 2013, subject to earlier termination. | Granted Signpath exclusive rights to an invention that was developed by the parties through a previous license agreement in 2017.  Through the 2013 John Hopkins Agreement, John Hopkins granted Signpath an exclusive worldwide license to use "a composite polymeric nanoparticle for overcoming multidrug resistance to cancer chemotherapeutics and treatment-related systemic toxicity." | The licensed technology consisted of one U.S. Provisional Patent Application 61/421,709 and Int'l Patent Application PCT/US2011/063870. | John Hopkins Agreement required Signpath to pay an initial license fee of $10,000, $15,000 within one year, with minimum annual royalties of $10,000 in year three, $20,000 in year four, and $30,000 in year five.<br><br>Signpath was also required to pay an earned royalty of 3.0 percent of revenue from sales of the licensed product for a minimum of 10 years from the first commercial sale of the licensed product.<br><br>The 2013 John Hopkins Agreement required Signpath to pay milestone payments based on the first patent dosing in Phases I, II and III clinical trials and then upon regulatory approval, increasing from $25,000 to $150,000. |
| **2019 Formulex Pharma Innovations - Nasus Pharma License Agreement** | | | | | | | | |
| [8] | License Agreement | Formulex Pharma Innovations Ltd. | Nasus Pharma Ltd. | 5/1/2019 | Until the expiration of all payment obligations of the Company pursuant to this Agreement. | The 2019 Formulex Agreement granted Nasus an exclusive, worldwide, irrevocable, transferable, sub-licensable, royalty-bearing license to Formulex technology for the purpose of developing, manufacturing, and otherwise commercializing the licensed technology and/or related products. | The Formulex technology ultimately included at least three U.S. patents, one international patent application, and Formulex know-how.  Licensed know-how is described as being in the fields of intranasal and inhales formulations, combination products, and particle engineering.<br><br>With respect to patented technology, Exhibit B to the 2019 Formulex Agreement identifies only International Patent Application WO 2019 038756 – titled: Dry Powder Compositions for Intranasal Delivery.  However, this international patent application led to the issuance of three United States patents. | 0.5% of Net Sales of Products which are capped by the aggregate amount to be paid to Formulex not to exceed $100,000.<br><br>The royalties are payable for the longer of 15 years from first commercial sale in each country or until the last to expire licensed patent in each country. |

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

*Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC. v. Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*
**SUMMARY OF THIRD PARTY LICENSE AGREEMENTS**
Appendix 12.1

| Title | Licensor | Licensee | Effective Date | Term | License Grant | Licensed Technology | Payment & Royalty |
|-------|----------|----------|----------------|------|---------------|---------------------|-------------------|
| | | | | | | | |

**Notes:**

[1]  The 1998 Albert Einstein College and Pain Therapeutics Agreement, May 5, 1998.

[2]  The 2000 Molecular Medicine Research Institute and Amarillo Biosciences Inc. Agreement, February 1, 2000.

[3]  The 2001 Wayne State and SafeScience Agreement, January 1, 2001.

[4]  The 2005 Trustees of Columbia University and Omnimmune Corp Agreement, February 1, 2005.

[5]  The 2006 Andrew Chen and Bridgetech Agreement, April 29, 2006.

[6]  The 2011 SCOLR Pharma Inc. and Syntrix Biosystems Agreement, June 2, 2011.

[7]  The 2013 John Hopkins and Signpath Pharma Agreement, June 5, 2013.

[8]  The 2019 Formulex Pharma Innovations and Nasus Pharma License Agreement, May 1, 2019.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY