# EXHIBIT B

# REDACTED
# PUBLIC VERSION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC., AND EAGLE SUB1, LLC., <br><br> PLAINTIFFS, <br><br><br> V. <br><br><br><br> SLAYBACK PHARMA LLC AND AZURITY PHARMACEUTICALS, INC., <br><br> DEFENDANTS. | C.A. NO. 24-65-JLH <br><br> (CONSOLIDATED) <br><br> HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |

# EXPERT REPORT OF CHRISTOPHER A. VELLTURO, PH.D.

I.     OVERVIEW ........................................................................................................................ 1

    A.   QUALIFICATIONS AND EXPERIENCE ........................................................................... 1

    B.   STATEMENT OF ASSIGNMENT ...................................................................................... 1

    C.   DOCUMENTS/MATERIALS CONSIDERED ....................................................................... 2

    D.   EXHIBITS .................................................................................................................. 3

    E.   SUMMARY OF CONCLUSIONS ...................................................................................... 3

II.     BACKGROUND ............................................................................................................... 7

    A.   RELEVANT ENTITIES ................................................................................................. 7

        1.   *Eagle* ............................................................................................................. 7

        2.   *Teva* .............................................................................................................. 8

        3.   *Apotex* .......................................................................................................... 8

        4.   *Baxter* .......................................................................................................... 9

        5.   *Slayback* ........................................................................................................ 9

    B.   CHRONIC LYMPHOCYTIC LEUKEMIA (CLL) ........................................................... 10

        1.   *Symptoms* .................................................................................................... 10

        2.   *Treatments* ................................................................................................... 12

    C.   NON-HODGKIN LYMPHOMA (NHL) ...................................................................... 13

        1.   *Symptoms* .................................................................................................... 14

        2.   *Treatments* ................................................................................................... 15

    D.   OVERVIEW OF THE LIQUID BENDAMUSTINE MARKETPLACE ..................................... 16

        1.   *Bendamustine Dosage Formulations* .............................................................. 16

        2.   *Demand for Liquid Bendamustine Products* ..................................................... 17

        3.   *Supply of Bendamustine Products* .................................................................. 19

    E.   PHARMACEUTICAL INDUSTRY CONTEXT ................................................................. 23

        1.   *Buy-and-Bill Procurement* ............................................................................ 23

        2.   *Insurance Coverage* ...................................................................................... 26

        3.   *Generic Competition* ..................................................................................... 28

III.     THE ASSERTED PATENTS AND EAGLE'S INFRINGEMENT CLAIMS ..................................... 31

    A.   U.S. PATENT NO. 11,872,214 ("THE '214 PATENT") ............................................. 31

    B.   U.S. PATENT NO. 12,138,248 ("THE '248 PATENT") ............................................. 31

IV.     DAMAGES METHODOLOGY OVERVIEW ........................................................................... 32

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY

**V.    LOST PROFIT DAMAGES** ............................................................................................. **34**

    A.    *PANDUIT* FACTOR 1: DEMAND FOR THE PATENTED PRODUCTS ............................ 34

    B.    *PANDUIT* FACTOR 2: ABSENCE OF NON-INFRINGING SUBSTITUTES ................... 38

    C.    *PANDUIT* FACTOR 3: MANUFACTURING/MARKETING CAPABILITY TO EXPLOIT DEMAND .............................. 46

    D.    PANDUIT FACTOR 4: QUANTIFICATION OF LOST PROFITS ................................. 50

        1.    *Quantification of Lost Profits Attributable to Slayback's Infringement* ................ 50

        2.    *Summary* .............................................................................................. 65

**VI.   REASONABLE ROYALTY DAMAGES (IN THE ALTERNATIVE TO LOST PROFITS)** ............ **65**

    A.    OVERVIEW .............................................................................................. 65

    B.    INITIAL CONDITIONS AND PARAMETERS ...................................................... 67

        1.    *Date of Hypothetical Negotiation* ................................................................ 67

        2.    *Parties to the Hypothetical Negotiation* ....................................................... 67

        3.    *Nature of the Hypothetical License* .............................................................. 67

        4.    *Patent Validity, Enforceability, and Infringement* .......................................... 68

        5.    *Full Information, Reasonable Foresight, and Consistency of Forecasts* ............. 68

    C.    *GEORGIA-PACIFIC* FACTOR 15 ..................................................................... 69

        1.    *Eagle's Minimum Willingness to Accept* ...................................................... 72

        2.    *Slayback's Maximum Willingness to Pay* ..................................................... 73

        3.    *Conclusion: Georgia-Pacific Factor 15 Analysis* ......................................... 74

    D.    CONSIDERATION OF THE REMAINING *GEORGIA-PACIFIC* FACTORS ................... 74

        1.    ██████████████ ........................................................................... 75

        2.    *Eagle's Settlement Agreements* ................................................................... 79

        3.    *Georgia-Pacific Factor 1 Conclusion* .......................................................... 79

    E.    CONCLUSIONS ON REASONABLE ROYALTY FOR THE ASSERTED PATENTS ......... 98

    F.    COMPUTATION OF REASONABLE ROYALTY DAMAGES ................................... 99

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY

### C. *Panduit* Factor 3: Manufacturing/Marketing Capability to Exploit Demand

130. I understand that *Panduit* analysis further requires consideration of whether the patentee had the manufacturing and marketing capability to exploit the demand for the patented and infringing product(s) and capture the sales claimed as lost. Here, I consider whether Eagle would have had the capacity to make the unit sales on which I assess lost profits under my consideration of *Panduit* Factor 4 below.

131. I begin my analysis of *Panduit* Factor 3 by outlining some relevant background. As discussed above, ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████ ██ ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

---

[329] Conversation with David S. Bricker, Senior Vice President of Eagle ("Bricker Conversation"); Deposition of David Bricker, November 25, 2025 ("Bricker Deposition"), p. 38; Krawtschuk Deposition, pp. 63-64; EAGLEBEN-SA_00321346; EAGLEBEN-SA_00347581.

**Figure 6: But-For and Actual Bendeka and Belrapzo Liquid Bendamustine Unit Sales
Q4 2021 – Q2 2025**



132. Additionally, ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████[330] ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████[331] ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████[332]

133. ███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████[333] ██████████████████████████████████████████████████████

---

[330] Bricker Deposition, pp. 17-18; EAGLEBEN-SA_00367464 at 466.

[331] EAGLEBEN-SA_00333015 at 015-016; Bricker Deposition, p. 23.

[332] EAGLEBEN-SA_00332934 at 934-939, 966, 968; EAGLEBEN-SA_00332859 at 859; EAGLEBEN-SA_00332905 at 905-907; Bricker Deposition, pp. 23-25.

[333] *See also* Krawtschuk Deposition, Exhibit 16, p. 1 (EAGLEBEN-SA_00347509 at 509).

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████ ███████████████
████████████████████████████████████████████████
████████████████████████

134. As part of my analysis, █████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████ ███████████████
███████████████████████████████████████
███████████████████████████████ █████████████████
████████████████████████████████████████████████
███████████████ █████████████████████████████████
███████████████████████████████ █████████████████
███████████████████████████████████████
██████████████████████████████████

135. ███████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

<hr>

[334] Bricker Deposition, p. 116.
[335] Bricker Deposition, p. 25-26.
[336] ████████████████████████████████████████████████.
[337] ████████████████████████████████████████████████
*See* Exhibit 15.
[338] Bricker Conversation.
[339] EAGLEBEN-SA_00352405.

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY



136. ███████████████████████████████████████

137. ███████████████████████████████████████

---

[340] Bricker Deposition, p. 116-121.

[341] Exhibit 15.

[342] EAGLEBEN-SA_00353678, Sheets "2022Q1", "2022Q2", "2022Q3" and "2022Q4".

[343] EAGLEBEN-SA_00353678, Sheets "2023Q1", "2023Q2", "2023Q3" and "2023Q4".

[344] EAGLEBEN-SA_00353678, Sheet "2023Q4".

[345] EAGLEBEN-SA_00353678, Sheet "2024Q1".

[346] EAGLEBEN-SA_00353678, ███████████████████████

[347] Conversation with Alan Eagle, Vice President of Eagle ("Eagle Conversation").

138. ███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ .

### D. Panduit Factor 4: Quantification of Lost Profits

139. *Panduit* Factor 4 requires the patentee's lost profits be quantified in a reliable, non-speculative manner.[348]

#### 1. Quantification of Lost Profits Attributable to Slayback's Infringement

140. Commonly, harm to the reference brand upon entry of a pharmaceutically equivalent product includes lost profits of one or both of two forms – lost profits due to lost unit sales (on which the brand loses its incremental profit per unit for those lost units), and lost profits due to price erosion (where the brand's realized effective net price on its retained sales is lower than it would have been "but for" the entry).

141. In this section, I ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

142. ███████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

---

[348] *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F. 2d 1152 (6th Cir. 1978).

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY



**d.** ███████████████████

_____

388 Exhibit 6.

389 Exhibit 6.

390 EAGLEBEN-SA_00346062 at 066; EAGLEBEN-SA_00367197 at 197. ████████████████ *see, e.g.*, EAGLEBEN-SA_00346062 at 414.

391 EAGLEBEN-SA_00346062 at 078, 082.

392 EAGLEBEN-SA_00346062 at 077-078, 082.

393 EAGLEBEN-SA_00346062 at 078.

394 EAGLEBEN-SA_00367197 at 197; Krawtschuk Conversation; Krawtschuk Deposition, pp. 34-37.

395 Krawtschuk Conversation; Krawtschuk Deposition, pp. 34-37, 146-147.

396 Exhibit 19; Krawtschuk Deposition, pp. 34-37, 146-147; Krawtschuk Conversation.

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

- ███████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████████
  █████ ██ ████████████████████████████████████
  ████████████████████████████████████

- ███████████████████████████████████████████
  █████████████████████████████████████
  ████████████████████████████████████████████
  █████ ██ ████████████████████████████████████
  ████████████████████████████████████████

- ███████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████
  ██████████████████████████ ██ ██████████████████
  ████████████████████████████████████████████
  ████████████████████████████

- ███████████████████████████████████████████
  ████████████████████████████████████████████

---

[397] Krawtschuk Deposition, pp. 45-47.
[398] EAGLEBEN-SA_00367197 at 197.
[399] EAGLEBEN-SA_00366581 at 596; Krawtschuk Deposition, p. 37.



## 2. Summary

167. ████████████████████████████████████████

████████████████████████████████████████

## VI.  REASONABLE ROYALTY DAMAGES (IN THE ALTERNATIVE TO LOST PROFITS)

### A. Overview

169. As noted in the previous section, ████████████████████████████ ████████████████ Here, I provide a reasonable royalty assessment on

---

[400] ████████████████████████████████████████
████████████████████████████████████████
█████████████████████████
[401] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████
████████
[402] Exhibit 20.
[40] █████████████████████████████████████████
████████████████████████████████████ *See* Exhibits 4, 6.

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY

March 6, 2026

Christopher A. Vellturo, Ph.D.

HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY