**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC.,<br><br>Defendants. | C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br>[redacted]<br><br>PUBLIC VERSION FILED: August 31, 2026 |

**LETTER TO THE HONORABLE JENNIFER L. HALL IN SUPPORT OF PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC'S MOTION TO STRIKE DEFENDANTS' ARGUMENT IN VIOLATION OF LOCAL RULE 7.1.3(b)(2)**

Dear Judge Hall:

Plaintiffs Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC (collectively, "Eagle") submit this letter in support of Eagle's Motion to Strike Section III.E of Defendants Slayback Pharma LLC's and Azurity Pharmaceuticals, Inc.'s (collectively "Slayback") reply brief in support of their motion for summary judgment of non-infringement. D.I. 434. Specifically, in that section of Slayback's reply, Slayback advanced a new argument to exclude the "evidence" of Eagle's technical expert, Dr. Bernhardt Trout.[1] *Id.* at 12. Because Slayback had every opportunity to raise this argument in its opening brief and its opposition to Eagle's motion for summary judgment of infringement, but did not, Slayback's untimely argument violates Delaware Civil Local Rule 7.1.3(b)(2) and should be stricken.

## I. FACTUAL BACKGROUND

Dr. Trout submitted three expert reports detailing how Slayback's Vivimusta® product infringes Eagle's two asserted patents. On May 8, 2026, Slayback deposed Dr. Trout for over seven hours. Dr. Trout answered every question to the best of his ability, explained his opinions in detail, provided the context in which he formed them, and sought clarification on many objectionable questions asked of him. Six days later, Slayback accused Dr. Trout of "widespread evasion of questions and obfuscation and other combative and prohibited tactics," demanding—without support—that he be "withdrawn as a witness" or that "various subjects that he refused to answer [] be deemed admitted." Ex. 1 at 1, 3. Eagle responded by detailing the inaccuracies in Slayback's accusations and asked to meet and confer if Slayback intended to pursue the frivolous issue. *See* Ex. 2. Slayback never responded.

On June 5, 2026, Eagle moved for summary judgment of infringement, relying in part on Dr. Trout's expert reports and deposition testimony. D.I. 364. Slayback opposed on July 1, 2026, yet raised no concerns about Dr. Trout's expert reports or deposition testimony—in fact, Slayback affirmatively cited both. *See, e.g.*, D.I. 419 at 1, 5-6, 8, 10-11. On June 5, 2026, Slayback moved for summary judgment of non-infringement, again citing to both Dr. Trout's expert reports and testimony. *See, e.g.*, D.I. 347 at 8, 14-17, 19. In a passing footnote, Slayback noted his allegedly "evasive answers" and "invite[d] a review of the Trout deposition Transcript," but did not argue or suggest that Dr. Trout's opinions should be excluded, much less mention the sham affidavit rule. *Id.* at 3 n.3. Instead, Slayback waited until its July 20, 2026 reply brief in support of its motion for summary judgment of non-infringement to ask the Court to exclude certain of Dr. Trout's opinions "under the sham affidavit rule" (D.I. 434 at 11-12)—the first and only time that Slayback made that request or invoked that rule.

## II. LEGAL STANDARD

Delaware Civil Local Rule 7.1.3(b)(2) provides that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair

[1] Slayback asks this Court to "disregard[ Dr. Trout's] evidence under the sham affidavit rule," but fails to specify what "evidence" it seeks to exclude. D.I. 434 at 12. Slayback's general reference to "the Reports of Dr. Trout" that "Plaintiffs' Opposition relies on" makes it unclear whether Slayback seeks to exclude Appendix B to Dr. Trout's Opening Expert Report for Slayback and Dr. Trout's Reply Expert Report for Slayback in their entirety or just specific excerpts, and if so, which ones. *Id.* at 11. Compounding the ambiguity, one of the examples Slayback cites to does not rely on any of Dr. Trout's reports. *Id.* at 12.

opening brief." D. Del. LR 7.1.3(b)(2). "This provision exists, in part, to prevent litigants from engaging in impermissible 'sandbagging,' reserving crucial arguments for a reply brief to which an opponent cannot respond." *Fifth Mkt., Inc. v. CME Grp., Inc.*, No. 08-520, 2013 WL 3063461, at *1 n.2 (D. Del. June 19, 2013).[2] Because "new arguments in reply briefs are prejudicial and unfair," it well settled that "[p]ositions asserted for the first time in a reply brief are deemed to be waived." *Socket Mobile, Inc. v. Cognex Corp.*, No. 17-156, 2017 WL 3575582, at *5 (D. Del. Aug. 18, 2017).

## III. ARGUMENT

### A. Slayback Improperly Raised A New Argument In Its Reply Brief

Slayback had ample opportunity to address any alleged deficiencies in Dr. Trout's expert reports and deposition in its opening non-infringement summary judgment brief and its opposition to Eagle's motion for summary judgment of infringement. Instead, Slayback appears to have made the strategic decision to wait to raise it in reply—thereby depriving Eagle of the opportunity to address Slayback's arguments. As to the former, the predicate for Slayback's argument appears to be that Dr. Trout's reports qualify as declarations or affidavits. Rule 56 affirmatively mandates that in order to seek summary judgment, Slayback was obligated to "cit[e] to particular parts of materials in the record, including . . . affidavits or declarations" and "show[] that the materials cited do not establish the . . . presence of a genuine dispute." FED. R. CIV. P. 56(c)(1). Thus, Slayback was obligated to address those "affidavits or declarations" in its initial motion. As to the latter, Eagle affirmatively relied on the subject materials in its motion for summary judgment of infringement, such that Slayback plainly should have raised any and all objections to Dr. Trout's reports and deposition in opposition—it failed to do so, creating an independent basis for waiver.

Courts routinely strike new arguments raised for the first time in a reply brief, including requests to apply the sham affidavit rule. For example, in *Guerrero v. Total Renal Care, Inc.*, the court found "Plaintiff's sham-affidavit objection waived for the purposes of Defendant's Motion for Summary Judgment, because Plaintiff raised it for the first time in his three Reply briefs, rather than in his initial Motion." 932 F. Supp. 2d 769, 776 (W.D. Tex. 2013). Likewise, in *Atlanta Channel, Inc. v. Solomon*, the court found that the plaintiff waived its "contentions concerning the sham affidavit rule … by failing to develop these points until its reply brief." No. 15-1823, 2020 WL 1508587, at *11 n.19 (D.D.C. Mar. 30, 2020).

Here, Slayback was indisputably aware of the bases underlying its sham affidavit argument long before moving for summary judgment on June 5, 2026. Slayback received Dr. Trout's reports throughout the spring of 2026, deposed him on May 8, and sent a letter to Eagle raising alleged issues on May 14—almost three weeks before moving for summary judgment—yet never responded to Eagle's invitation to meet and confer. *Supra* at 1. And Slayback vaguely referenced this issue in a passing footnote in its opening non-infringement summary judgment brief, describing Dr. Trout's testimony as "evasive" and inviting a review of his transcript, D.I. 347 at 3 n.3, yet neither mentioned the sham affidavit rule nor asked the Court to exclude Dr. Trout's opinions. That footnote only confirms Slayback's undue delay and waiver because "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (finding arguments made only in a footnote waived); *see also Samsung Elecs. Co. v. Netlist, Inc.*, No. 21-1453, 2022

[2] All emphasis added, and internal citations and quotation marks omitted, unless otherwise noted.

WL 3027312, at *5 (D. Del. Aug. 1, 2022) (same). And, during the parties' meet and confer, Slayback doubled-down on its decision to save this argument for its reply.

Accordingly, there can be no dispute that Slayback waited until its reply brief to—for the first time—invoke the sham affidavit rule and ask the Court exclude Dr. Trout's opinions, thereby waiving this argument. By doing so, Slayback prevented Eagle from responding to this meritless argument, creating the "impermissible 'sandbagging'" and unfair prejudice that Delaware Civil Local Rule 7.1.3(b)(2) functions to prevent. *Fifth Mkt.*, 2013 WL 3063461, at *1 n.2.

Slayback argued in an email exchange that *Premier Displays & Exhibits v. Cogswell* allows parties to invoke the sham affidavit rule for the first time in a reply brief. No. 09-354, 2010 WL 11519494 (C.D. Cal. Mar. 3, 2010); *see* Ex. 3. Slayback is wrong. *Premier* is inapt because the court did not apply Delaware Local Rule 7.1.3(b)(2)[3] and addressed different circumstances; to the extent relevant, it supports Eagle. There, the party opposing summary judgment relied on a declaration "attesting to the existence of [an] unwritten formal policy" that was never produced in discovery. *Id.* at *3. In contrast, Eagle did not submit a new affidavit from Dr. Trout, much less one that relied on documents not produced during fact discovery. Instead, Eagle properly relied on opinions and deposition testimony from Dr. Trout that were timely disclosed to Slayback months earlier during expert discovery—the exact scenario the *Premier* court explained would ***not*** justify applying the sham affidavit rule: "[H]ad Premier disclosed the alleged unwritten formal policy during discovery, the sham affidavit rule would not have applied." *Id.* Permitting Slayback to rely on this newly-raised argument now—despite having been on notice of its basis for months—would reward Slayback's gamesmanship and unfairly prejudice Eagle.

Separately, as explained above (*supra* at 1 n.1), Slayback has "not specified particular [opinions it seeks] to exclude." *Chevron (HK) Ltd. v. One World Techs., Inc.*, No. 19-1293, 2025 WL 2630480, at *9 (D. Del. Feb. 5, 2025). In effect, Slayback "requests a broad exclusion that will apparently encompass any evidence that could be used to" oppose Slayback's motion for summary judgment of non-infringement. *Id.* Because "[s]uch relief is not appropriate," this Court may—indeed should—deny Slayback's attempt to exclude Dr. Trout's "evidence." *Id.*

### B. Alternatively, The Sham-Affidavit Rule Does Not Apply

To the extent the Court finds that Slayback did not waive its sham-affidavit argument, Eagle submits that it has no application here. The doctrine is applied in the narrowest of circumstances; it only applies where an affidavit was created "***solely*** for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007); *Couden v. Duffey*, 533 F. Supp. 2d 490, 505 (D. Del. 2008) (same); *see also In re CitX Corp., Inc.*, 448 F.3d 672, 678-79 (3d Cir. 2006) (disregarding "affidavit [that] was a scheme to provide sufficient 'facts' to survive a summary judgment motion."). Here, Dr. Trout's reports are not affidavits and were created in the ordinary course pursuant to the Scheduling Order. Further, "the sham-affidavit rule is applied sparingly," and is not properly invoked "regarding certain isolated contradictions," which "go to . . . weight than [] admissibility." *Guerrero*, 932 F. Supp. at 776. None of the examples of alleged inconsistency that Slayback cited come close to establishing an "inherent inconsistency" between Dr. Trout's expert reports and deposition testimony. *Id.*

---

[3] There is no corollary civil local rule in the Central District of California.

Dated: August 24, 2026

MCCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Michelle Chin
Nathan Fuller
Manuela Burek
Hanna Bondarowicz
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
michelle.chin@lw.com
nathan.fuller.lw.com
manuela.burek@lw.com
hanna.bondarowicz@lw.com

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
brett.sandford@lw.com

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
kelly.welsh@lw.com

Cecilia Bain
LATHAM & WATKINS LLP
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
(650) 328-4600
cecilia.bain@lw.com

# EXHIBIT 1

WINDELS MARX | Windels Marx Lane & Mittendorf, LLP

windelsmarx.com

Jason A. Lief
212.237. 1061
jlief@windelsmarx.com

156 West 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

May 14, 2026

| | |
|---|---|
| Daniel Silver | Kenneth Schuler |
| McCarter & English, LLP | Latham & Watkins, LLP |
| Renaissance Centre | 330 North Wabash Avenue |
| 405 N. King Street, 8th Floor | Suite 2800 |
| Wilmington, DE 19801 | Chicago, IL 60611 |
| dsilver@mccarter.com | kenneth.schuler@lw.com |

**Re: <u>Eagle v. Azurity-Slayback Bendamustine Litigation</u>**

Counsel:

We write to address the conduct that occurred during the deposition of Dr. Trout. Upon review of the final transcript, it is clear that both Dr. Trout and counsel engaged in widespread evasion of questions and obfuscation and other combative and prohibited tactics. This behavior violates Federal Rule of Civil Procedure 26's mandate that experts provide discovery regarding their opinions, Rule 30(c)(2)'s prohibition on speaking objections, the Delaware local rules on deposition objections, and is sanctionable under Rule 37.[1] *See, e.g.*, *Tuerkes-Beckers, Inc. v. New Castle Assoc.*, 158 F.R.D. 573, 574-75 (D. Del. 1993); *Paramount Communications Inc. v. QVC Network Inc.*, 637 A.2d 34 (Del. Ch. Ct. 1994); *Carroll v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 12-cv-00007-WJM-KLM, 2014 U.S. Dist. LEXIS 28061 (D. Colo. Mar. 4, 2014) (excluding an expert for evasive responses in deposition and improper objections).

Dr. Trout's evasions included referring to or quoting from long, often non-responsive, passages in his report,[2] rewording questions and answering the re-worded question instead of the

---

[1] *See, e.g.*, USCS Fed Rules Civ Proc R 37(a)(4)(a) ("Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

[2] *See, e.g.*, Trout Dep. Tr. at 147-148; 41 ("Well, again, I go through those throughout my reports. I'm in my opening report on page 20. I go through the claims. I can – I'm happy to read them. I'm sure you've read them. I go through the claims in some detail. I go through the claims in some detail. ….."); 65; 71-72; 83-84; 86; 177; 178-179 (seeming to backtrack on his own position that polyethylene glycol is a solvent and seeking to find the answers in his report);

actual question,[3] denigrating questions from Slayback's counsel,[4] and generally giving unintelligible responses. For instance, on a central issue in the case, Dr. Trout repeatedly obfuscated and avoided a clear answer regarding the meaning of the claim term "fluid" – even refusing to confirm the apparent definition in his own reports ("solvent"). (Trout Dep. Tr. at 75). Nor would he admit that the ordinary meaning of "fluid" is a liquid or a gas – despite all standard treatises and dictionaries and Dr. Trout's own patent applications explicitly stating that. (*See, e.g.*, Trout Dep. Tr. at 74-98). In another exchange, Dr. Trout disingenuously attempted to deny that he had misquoted from Column 6 of the patents-in-suit – although his partial quote had clearly omitted the reference to dispersions, while emphasizing solutions.[5] Dr. Trout attempted to avoid the fact that dissolved solutes can be "co-solvents" by shifting the language of the question and answering about "co-solutes."[6] Dr. Trout also evaded questions on whether he would accept HPLC results that he knew were inaccurate.[7] And throughout the deposition Dr. Trout avoided giving clear answers by retreating to a mantra that "it depends on the context."[8]

Additionally, Dr. Trout came into the deposition room with his own bound copies of his multiple reports at the outset and then proceeded to respond to many questions by trying to find the answer (or a different or unrelated answer) within his reports. This behavior evidenced a pre-existing strategy to not answer questions, but simply recite words from his reports. This was coupled with Eagle counsel's repeated objection that "the reports speak for themselves" even when the question did not directly ask about a passage in the reports. This approach produced undue delay when Dr. Trout searched through his reports (totaling hundreds of pages) and then referred to and read from portions of those reports.

Defending counsel for Eagle repeatedly interjected long, animated objections, questions to the witness, questions to counsel for Slayback, admonitions to counsel for Slayback, denigrating statements to counsel for Slayback, and speeches and legal arguments on the record. Counsel's disruptive and time-wasting behavior was displayed throughout the transcript. (*See, e.g.*, Trout Dep. Tr. at 9-15 (disrupting the beginning of the deposition with a long argument);

---

182 (in response to a question about whether he did a calculation, Dr. Trout grudgingly admitted that he did not, but again buried that response in references to "my report"); etc.).

[3] *See, e.g.*, Trout Dep. Tr. at 160-161 ("A Well, it's not a different question."); 81-82 (stating "one has to understand the limitation in the context as a whole and not pull apart words" – and thereby effectively evading a question about the meaning of particular words in the claim).

[4] *See, e.g.*, Trout Dep. Tr. at 172 ("I think you are making a logical fallacy here …."); 118 ("Again, you are asking very broad questions."); 81 ("Yeah, I don't think I used – and, again, it looks like you're not referring to anything specific.…")..

[5] *See, e.g.*, Trout Dep. Tr. at 129-30.

[6] *See, e.g.*, Trout Dep. Tr. at 210-212.

[7] Trout Dep. Tr. at 31-34.

[8] *See, e.g.*, Trout Depo. Tr. at 40; 43; 64; 74; 82; 84; 86-87; 92-93; 94; 98; 101; 102; 103; 104; 105; 107; 108; 111; 112; 113; 116-117 (evading a basic question that asked whether an emulsion can be made of two liquids); etc.).

62-63; 76-78 (long argument, including debating whether certain claim constructions were waived earlier in the case); 79-81; 83; 84-85; 94 ("Can you stop misrepresenting his testimony?" followed by a long argument at pages 94-97); 100; 147-148 (questioning whether Dr. Trout had finished his answer when even Dr. Trout stated he had finished); 169 (interposing an oft-repeated objection that "the reports speak for themselves"); 184 (attempting comedy about his own alcohol use); etc.). Counsel for Eagle engaged in the same disruptive and berating behavior during the fact deposition of Dr. Sundaram (*See, e.g.*, Sundaram Dep. Tr. at 12-14; 31-32; 55 ("Were you finished with your prior answer when he cut you off?"); 63; 80-82 (questioning and impugning counsel for Slayback: "I think it's a violation of your duty as an officer of the court to not tell me whether or not you read the deposition"– where counsel for Eagle did not even represent the witness); and also at another expert deposition in this case (Kittendorf Dep. Tr. at 11-12 (long objections on relevance); 135-136 (berating objections, including: "MR. SCHULER: Objection. His reports speak for themselves. It is a silly question to say does a single paragraph incorporate all of your opinions or all …" where the witness ultimately admitted the "silly question").

Such long speaking objections, argumentative colloquy, berating of opposing counsel, and coaching of the witness on the record (*e.g.*, provoking references to the reports that "speak for themselves" even when not requested in the question) during the deposition are violative of Federal Rule of Civil Procedure 30(c)(2) and the Delaware local deposition rules and practice – which prohibit such speaking objections.[9] Counsel for Eagle has been repeatedly reminded of these rules during multiple prior depositions in this case, but continued during Dr. Trout's deposition to brazenly flout them. Given this continuing pattern from counsel, and our prior expressions of concern, we are also contemplating moving separately regarding counsel's pro hac admission.

The behavior from both Dr. Trout and counsel for Eagle wasted significant amounts of time and denied Slayback the opportunity to take full discovery. Dr. Trout should be withdrawn as a witness and/or various subjects that he refused to answer should be deemed admitted. Amongst the topics that should be admitted are:

- Dr. Trout *does* define the claim term "fluid" (for purposes of the patents-in-suit) as a "solvent" or a "co-solvent" or a "solvent system";
- The ordinary meaning of a "fluid" is a liquid or a gas;
- Dr. Trout's definition of a "fluid" departs from the ordinary meaning of "fluid";

---

[9] *See, e.g.*, *Tuerkes-Beckers, Inc. v. New Castle Assoc.*, 158 F.R.D. 573, 574-75 (D. Del. 1993) ("Objections as to the form of the question should be limited to the words 'Objection, form.' All other objections should be limited to the word 'Objection' and a brief identification of the ground, preferably in no more than three words.").

- Dr. Trout has not defined the words "solvent" "co-solvent" or "solvent system" and will not offer any definition at trial if he is permitted to testify;
- The word "carrier" is not limited to solvents;
- Suspensions, emulsions and dispersions are not solutions – and can involve mixtures of liquids that are not dissolved in each other;
- The patent specification refers to both solutions and dispersions;
- Dr. Trout omitted the words referring to dispersions when he quoted from Column 6 of the patents-in-suit and emphasized solutions;
- The claims-in-suit refer to non-aqueous formulations;
- [redacted]
- [redacted];
- [redacted]; and
- Dissolved ingredients in a solution are part of the solvent system.

We request a meet-and-confer on these issues.

Sincerely,



Jason A. Lief

# EXHIBIT 2

**Alex Grabowski**
Direct Dial: 312.876.6556
alex.grabowski@lw.com

LATHAM & WATKINS LLP

330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Tel: +1.312.876.7700 Fax: +1.312.993.9767
www.lw.com

FIRM / AFFILIATE OFFICES
Austin, Beijing, Boston, Brussels, Chicago, Dubai, Düsseldorf, Frankfurt, Hamburg, Hong Kong, Houston, London, Los Angeles, Madrid, Milan, Munich, New York, Orange County, Paris, Riyadh, San Diego, San Francisco, Seoul, Silicon Valley, Singapore, Tel Aviv, Tokyo, Washington, D.C.

May 27, 2026

**HIGHLY CONFIDENTIAL**

**VIA EMAIL**

Jason Lief
Windels Marx Lane & Mittendorf, LLP
180 Park Ave, Florham Park, NJ 07932

Re: *Eagle Pharms., Inc. v. Slayback*, C.A. No. 24-65 (D. Del.)

Counsel:

We write in response to your May 14, 2026 letter regarding the deposition of Eagle's expert Dr. Bernhardt Trout, which asserts, among other things, that Dr. Trout and Eagle's counsel engaged in "widespread evasion," "obfuscation," and "combative and prohibited tactics." 5/14/26 Ltr. from J. Lief at 1.

As a threshold matter, we neither appreciate nor take lightly your unsupported accusations that either Dr. Trout or Eagle's counsel had any "pre-existing strategy" to disrupt the deposition. As officers of the Court, we are well aware of our obligation to maintain civility and professionalism and pride ourselves on practicing accordingly. We disagree with your characterizations of the deposition record and do not believe you are entitled to any relief for the following reasons.

First, neither counsel's objections nor conduct were improper. At best, your letter cherry-picks and isolates portions of the deposition transcript and ignores the fact that Eagle accommodated Defendants' request for two depositions totaling 14 hours with Dr. Trout, even after Defendant Baxter settled with Eagle and did not participate. Counsel and Dr. Trout also accommodated Slayback's counsel, who was on the record with Dr. Trout for over 7 hours, including additional questioning beyond the 7-hour limit to which Eagle's counsel agreed. *See* Trout Tr. 239:16-18. Contrary to your position, the discussion between counsel that you claim "disrupt[ed] the beginning of the deposition with a long argument" did not materially impact your deposition time, as the record shows that the discussion occurred before the "direct examination" began on the transcript. *See* Trout Tr. 15:9-13 ("And I would also ask that whatever time we spent discussing this not count in his seven hours today because was kind of just colloquy, completely. All right. May we begin?"). And in any event, you indicated you only had a single topic with "probably [] only one question" left around the 7-hour mark, and Eagle's counsel allowed you to

LATHAM & WATKINS LLP

finish that topic. *See* 5/14/26 Ltr. from J. Lief at 2; Trout Tr. 239:9-21. Further, when Defendants sought to "talk about [that same discussion] again" later in the deposition, Eagle's counsel attempted to avoid further argument on the record and asked three times to continue the deposition–any delay was due to Defendants' counsel's insistence on discussing the issue on the record. *See* Trout Tr. 156-59. Moreover, the transcript reflects that you had more than ample time to examine Dr. Trout on his technical opinions,[1] and Dr. Trout answered each and every question you asked about the subjects covered by his reports. In short, the suggestion that "[t]he behavior from both Dr. Trout and counsel for Eagle wasted significant amounts of time and denied Slayback the opportunity to take full discovery" is belied by the record. *See* 5/14/26 Ltr. from J. Lief at 3.

Any interjections made by Eagle's counsel were appropriate and necessary to allow Dr. Trout a complete and fair opportunity to provide an accurate response. This is especially true where Eagle's counsel asked for clarification to questions asked, *see* Trout Tr. 84-85, 100, requested that counsel for Slayback allow Dr. Trout to finish his answer,[2] *see id.* at 62-63, 147-48, and objected to any misstatement or mischaracterization of Dr. Trout's testimony,[3] *see id.* at 76-78, 79-81, 83. Further, the objection that Dr. Trout's expert reports speak for themselves is proper—particularly where questions were posed asking whether or not Dr. Trout had a specific opinion—and your criticisms suggesting otherwise are based on a baseless accusation of "coaching [] the witness" despite a complete lack of evidence that Eagle's counsel's objection had any effect on Dr. Trout's answers. *See* 5/14/26 Ltr. from J. Lief at 3. Indeed, that objection comports with the lone authority cited in your letter that "objections should be limited to the word 'Objection' and a brief identification of the ground," *see* 5/14/26 Ltr. from J. Lief at 3 n.9, and the same objection has been made by counsel practicing before this Court and others. *See, e.g.*, *Cleveland Medical Devices Inc. v. ResMed Inc.*, No. 1:22-cv-00794 (D. Del. Mar. 18, 2024), Dkt. 241-3, at 18-20; *Forest Labs. Inc. v. Teva Pharmas. USA Inc.*, No. 1:14-cv-00121 (D. Del. Feb. 11, 2016), Dkt. 209-1, at 259; *Sound View Innovs., LLC v. Hulu, LLC*, No. 2:17-cv-04146 (C.D. Cal. Mar. 4, 2019), Dkt. 245-5, at 5, 7-11; *In re Namenda Direct Purchaser Antitrust Lit.*, No. 1:15-cv-07488 (S.D.N.Y. Jan. 29, 2019), Dkt. 637-1, at 7-8; *Momenta Pharmas., Inc. v. Amphastar Pharmas., Inc.*, No. 1:11-cv-11681 (D. Mass. June 26, 2017), Dkt 978-12, at 3.

The record further reflects that over the course of the deposition, counsel objected where appropriate: to preserve the record; to address questions that were vague, argumentative,

---

[1] Indeed, you questioned Dr. Trout at length about his unrelated 1996 Ph.D. thesis, something you have personally questioned him about previously. *Radius Health, Inc. v. Orbicular Pharm. Techs. Priv. Ltd.*, 2025 WL 2147860, at *1 (D. Mass. July 30, 2025) ("Despite conceding his expertise prior to trial, Orbicular bafflingly attempted to impeach Dr. Trout during cross-examination based on the contents of his 1996 Ph.D. thesis and an out-of-context statement he made in a different case more than 20 years ago. As it intimated during trial, the court does not find such stale evidence persuasive in discrediting Dr. Trout's otherwise credible testimony.").

[2] Counsel for Slayback has made similar objections, belying any assertion that it is improper. *See, e.g.*, Crowley Tr. 104:19.

[3] Counsel for Slayback has made similar objections, belying any assertion that it is improper. *See, e.g.*, Crowley Tr. 59:12-13.

LATHAM & WATKINS LLP

misleading, or premised on disputed characterizations of Dr. Trout's testimony or reports; or to ensure that Dr. Trout had an uninterrupted opportunity to provide an answer. Your letter identifies exchanges in which counsel objected to, among other things, the framing of questions about claim terms, the characterization of Dr. Trout's reports, and the assertion that the reports "speak for themselves"—none of which impeded Slayback's ability to proceed with the deposition. In point of fact, Eagle's counsel's objections facilitated various aspects of the deposition. *See, e.g.*, Trout Tr. at 125-26 ("Mr. Lief: I'm simply asking him what the purpose of quoting from column 6 is. Mr. Schuler: That's a better question: What's the purpose. Mr. Lief: How about that? I'll take your tutelage on that. How about that. Q. What is the purpose of quoting from column 6 in paragraph 24 of your reply report?").

Moreover, your criticism of Eagle's counsel's objections is a far cry from the precedents you rely on, which involved "improperly direct[ing] the witness not to answer certain questions," being "extraordinarily rude, uncivil, and vulgar," and "obstruct[ing] the ability of the questioner to elicit testimony to assist the Court in this matter." *See Paramount Communications Inc. v. QVC Network Inc.*, 637 A.2d 34, 53-54 (Del. Ch. Ct. 1994) (including examples of improper behavior: "Don't 'Joe' me, asshole. You can ask some questions, but get off of that. I'm tired of you. You could gag a maggot off a meat wagon. Now, we've helped you every way we can;" "Come on. Quit talking. Ask the question. Nobody wants to socialize with you;" "Well, go on and shut up"). No such conduct is at issue.

Nor is such conduct present in the other depositions you cite. Merely referring to behavior as "disruptive and berating" does not make it so. *See* 5/14/26 Ltr. from J. Lief at 3. We disagree that the exchanges during any of Dr. Trout's, Dr. Sundaram's, or Dr. Kittendorf's deposition are "berating" or "denigrating" as you allege. For example, you cite to pages 12 through 14 of Dr. Sundaram's deposition transcript without detail, but review of the record shows that counsel's objections—which the witness' personal attorney joined—requested that you refrain from burdening a third-party fact witness with repeated questions seeking expert testimony were made in good faith to protect the witness from badgering and improper questioning. *See* Sundaram Tr. 10:15-13:14. Your other cited support exemplifies similar appropriate efforts to protect the interests of the third-party witness. *See, e.g.*, *id.* at 55:3-4, 63:3-11, 80:20-23 ("But you have a duty to avoid burdening the witness and burdening the litigation. The deponent is a third party. He already testified about this at his prior deposition."). The same is true regarding the exchanges during Dr. Kittendorf's deposition. *See, e.g.*, Kittendorf Tr. 12:3-5 (explaining that "the witness is a little bit uncomfortable with [counsel for Slayback] asking very personal questions"); 71:18-21 ("Mr. Schuler: Objection. That was a triple negative. I have no clue what it means. Mr. Lief: Let me try it again. I'll take your word on that."); 127:25-128:6 ("Attorney Schuler: I would object to you showing a confidential transcript from one witness to another witness. I don't think you get to do that in court either, even if it's not confidential. Attorney Lief: You know what? I'm going to – I'm going to take your thought on that and I won't show it."). Indeed, it was counsel for Slayback that engaged in a lengthy discussion on the record accusing various Eagle attorneys of alleged misconduct in entirely unrelated contexts. *See id.* at 8:23-9:9.

Second, Dr. Trout's testimony was proper. The record shows that Dr. Trout repeatedly explained that his opinions turn on the full claim limitation and the context of the patents and

LATHAM & WATKINS LLP

reports, rather than on the isolated word "fluid" or on your preferred shorthand articulations. *See, e.g.*, Trout Tr. 72:8-73:25, 78:19-79:18; 92:14-93:3; 100:20-101:8; 140:10-15. The fact that you did not agree with the substance of Dr. Trout's answers, his discipline in properly contextualizing his answers, or with his refusal to adopt your preferred phrasing, does not transform his testimony into sanctionable misconduct.

We also note that your letter is predicated on the notion that "Dr. Trout disingenuously attempted to deny that he had misquoted from Column 6 of the patents-in-suit – although his partial quote had clearly omitted the reference to dispersions." 5/14/26 Ltr. from J. Lief at 2. That is a plain misstatement of fact. Dr. Trout's Slayback reports contain a full quotation of the section of Column 6 to which you refer, *see* Trout Reb. Rep. ⁋ 114, and Dr. Trout admitted that there is a reference to "dispersions" in Column 6 at his deposition. *See, e.g.*, Trout Tr. 124:9-125:4, 128:16-129:1 ("Q. The way this is quoted in paragraph 24, where it says 'amount which allows the bendamustine to be dissolved,' period – is a misquoting of column 6, isn't it? A. No, I don't think that's correct. . . . I include 30 to 33 as the reference. I include the full paragraph."). The same is true of your claim that "Dr. Trout attempted to avoid the fact that dissolved solutes can be 'co-solvents' by shifting the language of the question and answering about 'co-solutes.'" 5/14/26 Ltr. from J. Lief at 2. Upon receiving clarification on the question, Dr. Trout answered directly:

> Q. In your last answer, I think you used the word "co-solute." Did you mean "co-solvent"?
> A. Oh, I thought that was the term you used.
> Q. Okay.
> A. But, again, different people might use different terms. I thought I was following your term. But maybe, if I misspoke, co-solvent.
> Q. Would that equally apply to that prior answer?
> . . .
> A. Again, if you have specific examples, we can talk about them, but yeah, I think I could – in the protein field, which I've been involved for a long time, protein formulation, again, in an aqueous solution, which is what my work has been in, yes, that term is used, "co-solvent."
>
> I thought you said "co-solute." I apologize. Co-solvent. And it's understood as I've explained. I can explain again, but it's a different context than here and a different meaning and different function.
>
> Again, there's a lot of terms in chemistry that are the same terms used in different contexts, and one has to understand the meaning in a given context and not mix up the contexts.

*Id.* at 211:24-213:4.

LATHAM&WATKINS LLP

Your letter also asserts that Dr. Trout gave evasive responses by "referring to or quoting from long, often non-responsive, passages in his report."[4] 5/14/26 Ltr. from J. Lief at 1. As a threshold point, it is neither improper nor unusual for an expert witness to refer to his reports when questioned about the opinions disclosed in those reports, particularly where the questions concern the scope, basis, or wording of those opinions. A deposition is not a memory test, and as you know, Dr. Trout has written 8 reports across the 3 cases against Slayback, Apotex, and Baxter. As you are well aware, "the report . . . is intended to set forth the substance of the direct examination," FED. R. CIV. P. 26, 1993 Adv. Comm. Note, and there is nothing improper at all about a witness referring to their report. In fact, referring to the substance of the expert's opinions that may be expressed at trial facilitates their deposition "[s]ince depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition." *Id*. Indeed, Slayback's own expert witnesses have relied on their reports in the same manner. *See* Malackowski Tr. 131:9-18 ("My report and spreadsheets will speak for themselves on that. These are primary documents. I don't want to say they're the only thing. Whatever the report speaks to, it speaks to."); Crowley Tr. 83:1-20 ("Well, let's go to my report. In this instance it would probably be the reply report. I'm trying to decide where to go."), 49:1-51:21 ("I'm going to point to my report here if that is okay. . . . [reading from his report] . . . You know, as I just read to you, I mean I can sort of paraphrase if that is what you are asking, but I mean my report spells out what those principles are.").

Moreover, even the cherry-picked portions of the transcript you rely on do not show any evasive or inappropriate answers by Dr. Trout. To the contrary, they demonstrate that Dr. Trout consistently answered questions to the best of his ability. For example, you point to instances where Dr. Trout merely references—as part of his full answer—that certain information is also included in his expert reports. *See, e.g.*, Trout Tr. 65:5-21 ("Q: Now, in those answers, I believe you said that the skilled person would understand that some water can be present in the claimed compositions. Can you put a number on what 'some' means? A: I mean, there's not a specific numerical amount. It's a qualitative amount, as I've discussed in my reports. [redacted]

[4] You argue that Dr. Trout bringing copies of his expert reports to the deposition "evidenced a pre-existing strategy to not answer questions, but simply recite words from his reports." 5/14/26 Ltr. from J. Lief at 2. Not so. Contrary to your unfounded accusation, Dr. Trout was merely prepared in case of unforeseen exhibit issues—which is precisely what happened. *See* Trout Tr. 45:5-46:24 (counsel for Slayback marking Dr. Trout's copies of his reports as deposition exhibits due to misprints of Slayback's copies). And in any event, it is both appropriate and indeed routine for experts to have access to their reports in deposition. *See, e.g.*, Brandt Rough Tr. 6:1-8 (when asked whether Dr. Brandt had any of his own documents open for the deposition, he replied that he has his rebuttal report open on a separate screen). If anything, this allowed Dr. Trout to organize and reference his opinions, making the deposition more efficient, not less. Notably, you made no objection on the record; and any such objection would have been frivolous. *See* Fed. R. Civ. P. 32(d)(3)(B) ("An objection to an error or irregularity at an oral examination is waived if: (i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time; and (ii) it is not timely made during the deposition.").

LATHAM&WATKINS LLP

[redacted]"), 71:9-72:3 ("Q: Is there anything in the patents-in-suit that you would consider a pH adjuster? A: As far as a pH adjuster, again, I would agree, I don't see an explicit mention to that. I think the skilled person would understand that it's part of the pharmaceuticals, and to the extent that one were needed or wanted to be introduced, I can say this. We can find in my reports. But that would fall under the 'comprising' claim. But that's a brief summary."). Further, counsel for Slayback expressed satisfaction with Dr. Trout's answers on several occasions. *See id.* at 82:11-20 (counsel for Slayback confirming that Dr. Trout's answer explains his position), 178:16-179:10 (counsel for Slayback declining Dr. Trout's offer to find a specific analysis in his report to add to his answer, stating "I think we have your answer on that question.").

Dr. Trout's conduct at his deposition is no different than that of Slayback's witnesses, some of whom, unlike Dr. Trout, have refused to provide responsive answers to clear questions. *See, e.g.*, Crowley Tr. 95:7-13 ("Q: All right. So it is your understanding that a person of skill in the art wouldn't rely on the data in the patent because they couldn't perform a statistical analysis on it? A: I think a person of skill reads it to get informed, you know, as we discussed. There is information there."); Smith Tr. 95:4-12 ("Q: Is it your opinion that using, for example, an external standards method to identify the amount of impurities is relevant to the claims that are at issue in this case? A: It's relevant to Dr. Kittendorf's report, and he says he has an accurate method for measuring those impurities. I'm saying he doesn't."); Mathew Tr. 191:23-25 ("Q: Are you a named inventor on patents unrelated to bendamustine? A: We develop a lot of different products"); Malackowski Tr. 141:1-25 ("Q: Your rebuttal report doesn't mention that milestone payments would need to be backed out as part of your explanation as why the royalty cap had not been hit as of the start of the damages period; fair? A: Well, it also doesn't mention it's my birthday. It's a completely irrelevant condition . . ."); Sinko Tr. 52:16-53:14, 53:15-54:6, 56:6-59:1, 161:16-22 ("Q: Is sodium hydroxide a polar aprotic solvent? A: You know, I guess I just never have really thought about it that way, so I really can't answer that question."); Thirman Tr. 100:14-102:19. Slayback's corporate designee, Mr. Josh Mathew, for example, evaded straight-forward, factual questions by merely repeating an objection from Slayback's counsel:

> Q: The first bullet says, "[redacted]," right?
> Mr. Lief: Objection. Incomplete.
> A: That is an incomplete statement.
> Q: Are those words not on the page?
> Mr. Lief: Same objection.
> A: Those are not the only ones on the page.
> Q: But those words are here, correct?
> Mr. Lief: Same objection.
> A: They are not the only ones on this page.
> Q: Did Slayback have any other bendamustine products other than Vivimusta?
> Mr. Lief: Objection.
> A: Vivimusta is a product that we launched.

LATHAM & WATKINS LLP

Mathew Tr. 46:10-24.

And again later in the deposition:

> Q: After becoming aware of the '783, the '214 and the '248 patents that are asserted in this case, Slayback did not stop selling its Vivimusta product in the United States?
> A: As a matter of general policy, we only sell -- we do not sell any infringing products in the market.
> Q: Slayback continued to sell Vivimusta after it became aware of the asserted patents?
> Mr. Lief: Objection. Asked and answered.
> A: As a matter of company policy, we do not sell infringing products into market.
> Q: That doesn't answer the question. The question is: Slayback continued to sell Vivimusta after it became aware of the asserted patents?
> Mr. Lief: Same objection. Asked and answered.
> A: We do not sell infringing products in the market.
> Q: Slayback has not stopped selling its Vivimusta product in the United States, right?
> Mr. Lief: Objection to the form. Objection. Asked and answered.
> A: We do not sell infringing products in the market.

*Id.* at 69:19-70:18.

You also criticize Dr. Trout for allegedly avoiding "giving clear answers by retreating to a mantra that 'it depends on the context.'" 5/14/26 Ltr. from J. Lief at 2.[5] This criticism is incorrect; Dr. Trout provided clear answers. As one example, you cite to page 74 of the transcript to support this argument, but when asked whether "the standard, ordinary definition of the word 'fluid,' has [] changed since 2009 to the present day," Dr. Trout responded, "I would say that the term 'fluid' has not changed since 2009." *Id.* at 74:9-14. To the extent Dr. Trout found it necessary to explain important context-specific considerations, that does not render his answers unclear or non-responsive.

Furthermore, it is entirely appropriate for Dr. Trout to explain that certain questions depend on the context in which they are asked to be accurate. Context matters, both in science and patent law. And Slayback's own experts have made precisely the same point. *See, e.g.*, Crowley Tr. 59:14 ("Yeah, I think it depends on the context"), 71:7 ("I mean, I suppose that depends on

[5] Your cited support for this criticism is wrong given that many of the citations do not involve answers that "depend on the context." *See* 5/14/26 Ltr. from J. Lief at 2 n.8; *see also* Trout Tr. 43:15-17 (asking counsel to define "new chemical entity" as used in the question because Dr. Trout understands counsel to be using the phrase "in a legal context"), 64:12-20 (explaining how a previous discussion relates to "the context of this particular question"), 84:17-18 (clarifying if counsel has "a particular context in mind" for the question), 101:3-8 (explaining what he considered in forming his opinion).

context"); Sinko Tr. 43:20 ("So I guess it depends on the context"), 44:16-17 ("Possibly. Once again depends on the context, right."), 53:22-23 ("Well once again, I guess it depends on the context."), 58:13-14 ("I mean, like I said, the answer is yes, but it depends on the context"); Malackowski Tr. 88:6-7 ("Depends upon the context of the analysis."), 88:13-14 ("It depends upon the context you're asking me"), 154:4 ("Well, it depends"); Thirman Tr. 105:8 ("It depends on a lot of issues"). Your criticism of Dr. Trout in this regard is thus misguided, and at best, a criticism of Slayback's own experts.

Your allegations that Dr. Trout "denigrat[ed] questions from Slayback's counsel" are likewise incorrect and exaggerated. *See* 5/14/26 Ltr. from J. Lief at 2. You point to instances where Dr. Trout clarified his opinions or asked for clarification because of the breadth or lack of specificity in the question. This is far from the cases you cite where the deponent engaged in personal attacks or behaved in a way that was designed to impede the deposition. *See Carroll v. Allstate Fire & Cas. Ins. Co.*, 2014 WL 859238, at *7-10 (D. Colo. Mar. 4, 2014) (including examples of improper behavior: "A: Do I get to point out the record of this complete waste of time that you're engaging in?;" "Q: I'd appreciate if you'd stop with the verbal ad hominems which have gone on this entire deposition. A: Well, they're well deserved. Just move on with your so-called deposition, your aggressive deposition;" "A: You don't deserve courtesy for that question;" "Q: I didn't finish my question. A: But let me tell you that you're wrong about that;" "A: I don't get to say move to strike that question as being provocative, do I?").

Third, Eagle disagrees that the exchanges you identify support the remedies demanded in your letter, and you provide no support for those demands—which are extreme. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (*citing Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)) ("[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.").

*TQ Delta, LLC v. 2Wire, Inc.*, however, is instructive. 2021 WL 2954356 (D. Del. July 14, 2021). Similar to Slayback, the defendant there sought to exclude expert testimony based on "his alleged conduct at his deposition," including "that he: 'consciously evaded' questions; 'gave non-responsive testimony;' and 'continuously misstated and mischaracterized' the questions." *Id.* at *2-3. The Court refused to exclude the expert testimony, reasoning that the defendant, like Slayback, "does not call into question the scientific validity of [the expert's] opinions nor does it argue that the methods, the information on which the opinions are based, or the connections to the facts of the case are unreliable." *Id.* at *3. Instead, the Court concluded that "Defendant will be able to address [the expert's] credibility through cross examination at trial." *Id.*

Moreover, "the specter of disciplinary proceedings should not be used by the parties as a litigation tactic." *Paramount*, 637 A.2d at 55 (Del. Ch. Ct. 1994). Slayback's underlying motive in making its demands is further called into question by the fact that counsel for Slayback has made similar objections throughout the course of discovery and even instructed witnesses not to answer non-privileged questions. *See, e.g.*, Chinnari Tr. 15:15-16:24 (Feb. 2, 2026) ("Well, I'm going to comment briefly on the nature of this deposition, which is the subject of an agreement between the parties. As should be apparent from the date, we are at a date after the court scheduling

LATHAM & WATKINS LLP

order has closed fact discovery. And the reason for this deposition is that the parties have come to a compromise on what one may or may not have considered a dispute and agreed to a limited deposition for a limited amount of time on a limited subject matter. I do not expect him -- he has already testified and was offered for seven hours and was deposed for five and a half hours. I do not expect him to go back to subject matter that he has already testified about in that regard."), 75:8-16 ("Now, I'm going to direct him not to answer that. It's beyond the scope of what this deposition is about, [redacted] And, again, we're beyond fact discovery. We've agreed to a limited deposition. But we're not going to go back and ask questions that could have been asked of Josh Mathew and probably were before fact discovery ended on [redacted]. That's not happening."); Crowley Tr. 38:24-39:25 (instructing witness not to answer questions regarding discussions between experts), 41:3-24 (same); Mathew Tr. 166:17-21 ("It's a legal question and there's a contention. I don't think that's really part of his remit to give a contention answer in a 30(b)(6) deposition to a legal question, just we've objected to that conceptually."); Brandt Rough Tr. 74:11-12 ("Caution you not to – caution you not to speculate, Doctor.").

For all the above reasons, we disagree that any of Dr. Trout's answers warrant withdrawal of his testimony or deemed admissions on *disputed* expert issues. The topics listed in your letter are not ministerial facts that can be imposed by letter demand or otherwise; they are disputed matters that go to, for example, infringement and expert opinion. When a premise could be accepted or answered with appropriate context, Dr. Trout did so. Therefore, your request that Eagle withdraw Dr. Trout or accept deemed admissions on those issues is improper and unsupported by any authority. To the extent that you believe that such authority exists, please provide it and we will consider it.

Eagle will not agree to withdraw Dr. Trout's testimony, stipulate to the admissions listed in your letter, or accept the premise that Dr. Trout's testimony or Eagle counsel's conduct was sanctionable. To the extent you intend to maintain this frivolous issue, please provide your availability to meet and confer on Thursday or Friday this week; please similarly be prepared to meet and confer with respect to the defending attorneys' conduct and the quality of witness' answers at the Sinko, Crowley, Brandt, Malackowski, Smith, Chinnari, and Mathew depositions identified above.

Sincerely,
*/s/ Alex Grabowski*
Alex Grabowski
LATHAM & WATKINS LLP

# EXHIBIT 3

**From:** Ast-Gmoser, Robyn
**To:** Manuela Burek (CH); Lief, Jason A.; Joyce, Alexandra; Miller, Andrew
**Cc:** Forchheimer, Daniel E.; Sparschu, Audrey R.; Rivera Jr., Eddie; SlayBend; Daniel A. Taylor; mdaughton@skjlaw.com; #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; Eagle Litigation; Neal C. Belgam
**Subject:** RE: Re[6]: Eagle v. Slayback: Slayback"s Non-Infringement Reply
**Date:** Monday, August 17, 2026 2:20:02 PM

Counsel - Please see the below, sent on behalf of Jason Lief.

Counsel:

Thank you for providing the case law in your email below. As you no doubt recognize none of the cases you cite are controlling in the Third Circuit or Delaware. Further the *Guerrero* case is in a different procedural posture from our case – it does not involve the assertion of the sham affidavit doctrine by the party moving for summary judgment (as is the case here). That appears to be true of the *Atlanta Channel* case as well. And the footnote that you partially quote from the *Atlanta Channel* case is dicta as the sham affidavit issue *was* decided on the merits. To the extent these cases could be read to support your position, they are not correctly decided. It is not possible for a summary judgment movant to object to the sham use of expert declarations (or reports) in opposition to their motion until the opposition papers are received. As another Court correctly stated:

> [T]he argument that application of the sham affidavit rule was unfair because it was raised in EWI's reply brief is facetious. The sham affidavit rule applies only where a suspect affidavit is raised for the first time in opposition to summary judgment. Thus, an objection can only ever be brought in a reply brief.

*Premier Displays & Exhibits v. Cogswell*, No. SACV09354JVSANX, 2010 WL 11519494, at *3 (C.D. Cal. Mar. 3, 2010) (citations to record omitted). SImilarly, in *In re CitX Corp., Inc*., 448 F.3d 672 (3d Cir. 2006), cited in Section III.E of our Reply Brief, the sham-affidavit doctrine began as an objection in the movant's reply brief. Thus, we believe that our assertion of the sham affidavit doctrine is entirely appropriate here.

Finally, your claims of delay are incorrect and not well taken. We note that during our August 7th meet-and-confer we requested any relevant case law that you might have. Eagle remained silent for a week and did not provide the two inapposite cases discussed above until August 14th. Despite being in the midst of the summer vacation season – after a long briefing schedule that only ended on July 20th and precluded vacations until now – we have responded promptly.

In sum, we do not believe you have any relevant support for your argument to strike our sham affidavit argument. And we believe that the contradictory and extraordinarily evasive nature of Dr. Trout's deposition answers, not to mention the other remarkable violations during his deposition, warrants the application of the sham affidavit doctrine. We would urge you not to burden the Court with an unnecessary motion, but will respond appropriately if you choose to do so.

To the extent you decide to go forward, the two dates you provide (September 2nd or September 10th (after 2 pm ET)) for the teleconference are acceptable.

Regards,
Jason Lief

**From:** Manuela Burek (CH) <Manuela.Burek@lw.com>
**Sent:** Friday, August 14, 2026 4:23 PM
**To:** Lief, Jason A. <jlief@windelsmarx.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Miller, Andrew <amiller@windelsmarx.com>
**Cc:** Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>; Forchheimer, Daniel E. <dforchheimer@windelsmarx.com>; Sparschu, Audrey R. <asparschu@windelsmarx.com>; Rivera Jr., Eddie <erivera@windelsmarx.com>; SlayBend <SlayBend@windelsmarx.com>; Daniel A. Taylor <DAT@skjlaw.com>; mdaughton@skjlaw.com; #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Eagle Litigation <EagleLitigation@McCarter.com>; Neal C. Belgam <nbelgam@skjlaw.com>
**Subject:** RE: Re[6]: Eagle v. Slayback: Slayback's Non-Infringement Reply

Counsel,

We strongly disagree with the suggestion that the parties have not reached an impasse. The meet and confer rules do not require that a party proffer authority that meets an opponent's chosen attributes—were it otherwise, parties could never claim an impasse. Also, we are concerned with the transparent attempt to delay resolution of the issue. We requested a meet and confer on July 23rd, but it took your team almost two full weeks to provide a date. Further, in our July 23rd email below, we provided counsel with relevant caselaw, which you reviewed and dismissed. During the August 7th meet and confer, we further explained our basis under Rule 56(c), with which you also disagreed. Given the parties' respective positions, we do not believe another exchanges of authorities would be productive and would instead unnecessarily postpone resolution. As you acknowledge, there is limited availability for a telephone conference prior to the upcoming hearing, and any further delay would only continue to prejudice Eagle.

In any event, a sham-affidavit objection—like any new argument—is waived if raised for the first time in a reply brief. *See Guerrero v. Total Renal Care, Inc.*, 932 F. Supp. 2d 769, 776 (W.D. Tex. 2013) ("The Court considers Plaintiff's sham-affidavit objection waived for the purposes of Defendant's Motion for Summary Judgment, because Plaintiff raised it for the first time in his three Reply briefs . . ."); *Atlanta Channel, Inc. v. Solomon*, 2020 WL 1508587, at *11 n.19 (D.D.C. Mar. 30, 2020) ("[I]ssues not raised until the reply brief [including those concerning the sham affidavit rule] are waived. . . . This principle holds when a party does not argue a point until its reply brief, even if the party referred to the argument in its opening brief.") (cleaned up).

Given the circumstances, unless Slayback agrees to withdraw Section III.E. of its reply brief, the parties are at an impasse. By 3 pm ET on Monday, August 17th, please either confirm that Slayback will withdraw this portion of its brief or that the following dates work for Slayback for a telephone conference with the Court and that we have your permission to sign and file the previously provided motion:

- September 2, 2026
- September 10, 2026 (after 2 pm ET)

**Manuela Burek**

LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
D: +1.312.777.7080

---

**From:** Lief, Jason A. <jlief@windelsmarx.com>
**Sent:** Friday, August 14, 2026 10:25 AM
**To:** Joyce, Alexandra <ajoyce@mccarter.com>; Manuela Burek (CH) <Manuela.Burek@lw.com>; Miller, Andrew <amiller@windelsmarx.com>
**Cc:** Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>; Forchheimer, Daniel E. <dforchheimer@windelsmarx.com>; Sparschu, Audrey R. <asparschu@windelsmarx.com>; Rivera Jr., Eddie <erivera@windelsmarx.com>; SlayBend

<SlayBend@windelsmarx.com>; Daniel A. Taylor <DAT@skjlaw.com>; mdaughton@skjlaw.com; #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Eagle Litigation <EagleLitigation@McCarter.com>; Neal C. Belgam <nbelgam@skjlaw.com>
**Subject:** Re[6]: Eagle v. Slayback: Slayback's Non-Infringement Reply

Counsel:

As indicated during our meet-and-confer last week, we do not believe that we are yet at an impasse. We had requested that you provide any case law that you had that would support the proposition that the "sham affidavit" doctrine must be raised in an opening brief as opposed to a reply and said we would consider it. We have not yet received your case law and thus have not had a chance to fully consider your position. Thus we believe your attempted motion is premature. We await your case law and propose that we exchange cases at that time.

Beyond that, and assuming an impasse is arrived at, please be aware that we will not be available for a telephone conference on August 25, 2026;August 26, 2026; or August 27, 2026. The other dates would work. Although as you know September 10th is the day before the hearing and several team members may be traveling that morning, so it is probably better to set any conference that day for after 2pm.

Thanks,
Jason

------ Original Message ------
From "Joyce, Alexandra" <ajoyce@mccarter.com>
To "Lief, Jason A." <jlief@windelsmarx.com>; "Manuela Burek (CH)" <Manuela.Burek@lw.com>; "Miller, Andrew" <amiller@windelsmarx.com>
Cc "Ast-Gmoser, Robyn" <rast-gmoser@windelsmarx.com>; "Forchheimer, Daniel E." <dforchheimer@windelsmarx.com>; "Sparschu, Audrey R." <asparschu@windelsmarx.com>; "Rivera Jr., Eddie" <erivera@windelsmarx.com>; "SlayBend" <SlayBend@windelsmarx.com>; "Daniel A. Taylor" <DAT@skjlaw.com>; "mdaughton@skjlaw.com" <mdaughton@skjlaw.com>; "#C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM" <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; "Eagle Litigation" <EagleLitigation@McCarter.com>; "Neal C. Belgam" <nbelgam@skjlaw.com>
Date 8/13/2026 2:58:38 PM
Subject RE: Re[4]: Eagle v. Slayback: Slayback's Non-Infringement Reply

>
>
>Counsel,
>
>
>
>Following up on the meet and confer last week, Eagle intends to file

>the attached motion for a teleconference, pursuant to the Court’s
>procedures for motions to strike. We have listed the following dates
>for conference with the Court:
>
>
>
>August 25, 2026;August 26, 2026; August 27, 2026; September 2, 2026;
>andSeptember 10, 2026 (after 12pm ET)
>
>
>Please let us know by 3pm ET tomorrow if any of these dates do not work
>for Slayback for a conference and/or provide alternate availability. We
>intend to file by close of business tomorrow.
>
>
>
>Thanks and best regards,
>
>Alex
>
>
>
>From: Lief, Jason A. <jlief@windelsmarx.com>
>Sent: Thursday, August 6, 2026 1:40 PM
>To: Manuela Burek (CH) <Manuela.Burek@lw.com>; Miller, Andrew
><amiller@windelsmarx.com>
>Cc: Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>; Forchheimer,
>Daniel E. <dforchheimer@windelsmarx.com>; Sparschu, Audrey R.
><asparschu@windelsmarx.com>; Rivera Jr., Eddie
><erivera@windelsmarx.com>; SlayBend <SlayBend@windelsmarx.com>; Daniel
>A. Taylor <DAT@skjlaw.com>; mdaughton@skjlaw.com; #C-M EAGLE
>BENDAMUSTINE LITIGATION - LW TEAM
><EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Eagle Litigation
><EagleLitigation@McCarter.com>; Neal C. Belgam <nbelgam@skjlaw.com>
>Subject: Re[4]: Eagle v. Slayback: Slayback's Non-Infringement Reply
>
>
>
>EXTERNAL EMAIL | STOP | VERIFY | REPORT
>
>
>
>--------------------------------------------------------------------------------
>Counsel:
>
>The Zoom link for tomorrow at 9am eastern:
>
>Jason Lief is inviting you to a scheduled Zoom meeting.

>
>Topic: Eagle v. Slayback Meet and Confer
>Time: Aug 7, 2026 09:00 AM Eastern Time (US and Canada)
>Join Zoom Meeting
>https://windelsmarx.zoom.us/j/89977611203
><https://windelsmarx.zoom.us/j/89977611203>
>
>Meeting ID: 899 7761 1203
>
>—
>
>One tap mobile
>+16469313860,,89977611203# US
>+16465588656,,89977611203# US (New York)
>
>
>—
>
>Join by SIP
>• 89977611203@zoomcrc.com
>
>Join instructions
>https://windelsmarx.zoom.us/meetings/89977611203/invitations?signature=TTpmmsc4u9ZCqnRVPkC4hGOVOLHPIsZT65KSXFIfAoM
><https://windelsmarx.zoom.us/meetings/89977611203/invitations?signature=TTpmmsc4u9ZCqnRVPkC4hGOVOLHPIsZT65KSXFIfAoM>
>
>
>
>
>------ Original Message ------
>From "Manuela Burek (CH)" <Manuela.Burek@lw.com>
>To "Lief, Jason A." <jlief@windelsmarx.com>; "Miller, Andrew"
><amiller@windelsmarx.com>
>Cc "Ast-Gmoser, Robyn" <rast-gmoser@windelsmarx.com>; "Forchheimer,
>Daniel E." <dforchheimer@windelsmarx.com>; "Sparschu, Audrey R."
><asparschu@windelsmarx.com>; "Rivera Jr., Eddie"
><erivera@windelsmarx.com>; "SlayBend" <SlayBend@windelsmarx.com>;
>"Daniel A. Taylor" <DAT@skjlaw.com>; "mdaughton@skjlaw.com"
><mdaughton@skjlaw.com>; "#C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM"
><EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; "Litigation Eagle"
><EagleLitigation@mccarter.com>; "Neal C. Belgam" <nbelgam@skjlaw.com>
>Date 8/6/2026 6:49:29 AM
>Subject RE: Re[2]: Eagle v. Slayback: Slayback's Non-Infringement Reply
>
> >
> >
> >Jason,

> >
> >
> >
> >We are available on Friday, August 7th, at 9 am ET.
> >
> >
> >
> >Manuela Burek
> >
> >
> >
> >LATHAM & WATKINS LLP
> >
> >330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
> >
> >D: +1.312.777.7080
> >
> >
> >
> >From: Lief, Jason A. <jlief@windelsmarx.com>
> >Sent: Wednesday, August 5, 2026 2:15 PM
> >To: Miller, Andrew <amiller@windelsmarx.com>; Manuela Burek (CH)
> ><Manuela.Burek@lw.com>
> >Cc: Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>; Forchheimer,
> >Daniel E. <dforchheimer@windelsmarx.com>; Sparschu, Audrey R.
> ><asparschu@windelsmarx.com>; Rivera Jr., Eddie
> ><erivera@windelsmarx.com>; SlayBend <SlayBend@windelsmarx.com>; Daniel
> >A. Taylor <DAT@skjlaw.com>; mdaughton@skjlaw.com
><mailto:mdaughton@skjlaw.com>; #C-M EAGLE
> >BENDAMUSTINE LITIGATION - LW TEAM
> ><EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Litigation Eagle
> ><EagleLitigation@mccarter.com>; Neal C. Belgam <nbelgam@skjlaw.com>
> >Subject: Re[2]: Eagle v. Slayback: Slayback's Non-Infringement Reply
> >
> >
> >
> >Counsel:
> >
> >I could be available to meet and confer on Friday August 7th at either
> >9am (Eastern) or 2pm. Alternatively, Monday the 10th at 9am.
> >
> >Please let me know whether any of those times would work, and I can
> >send
> >a link.
> >
> >If not, please propose other times.
> >
> >Thanks,

> >Jason Lief
> >
> >------ Original Message ------
> >From "Miller, Andrew" <amiller@windelsmarx.com>
> >To "Manuela Burek" <Manuela.Burek@lw.com>
> >Cc "Ast-Gmoser, Robyn" <rast-gmoser@windelsmarx.com>; "Lief, Jason A."
> ><jlief@windelsmarx.com>; "Forchheimer, Daniel E."
> ><dforchheimer@windelsmarx.com>; "Sparschu, Audrey R."
> ><asparschu@windelsmarx.com>; "Rivera Jr., Eddie"
> ><erivera@windelsmarx.com>; "SlayBend" <SlayBend@windelsmarx.com>;
> >"Daniel A. Taylor" <DAT@skjlaw.com>; "mdaughton@skjlaw.com"
> ><mdaughton@skjlaw.com>; "EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com"
> ><EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; "Litigation Eagle"
> ><EagleLitigation@mccarter.com>
> >Date 8/4/2026 2:13:57 PM
> >Subject Re: Eagle v. Slayback: Slayback's Non-Infringement Reply
> >
> > >When Jason gets back in I’m sure he will set a time with you
> > >
> > >>On Aug 4, 2026, at 2:10 PM, Manuela Burek (CH)
><Manuela.Burek@lw.com>
> > >>wrote:
> > >>
> > >>
> > >><0.jpg>
> > >>
> > >>
> > >>Andrew,
> > >>
> > >>
> > >>
> > >>Our team is available on Thursday, August 6th, from 8 am to 1 pm CT
> >to
> > >>meet and confer. Please send a dial-in.
> > >>
> > >>
> > >>
> > >>Manuela Burek
> > >>
> > >>
> > >>
> > >>LATHAM & WATKINS LLP
> > >>
> > >>330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
> > >>
> > >>D: +1.312.777.7080
> > >>
> > >>

> > >>
> > >>From: Miller, Andrew <amiller@windelsmarx.com>
> > >>Sent: Monday, August 3, 2026 3:34 PM
> > >>To: Manuela Burek (CH) <Manuela.Burek@lw.com>
> > >>Cc: Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>; Lief, Jason A.
> > >><jlief@windelsmarx.com>; Forchheimer, Daniel E.
> > >><dforchheimer@windelsmarx.com>; Sparschu, Audrey R.
> > >><asparschu@windelsmarx.com>; Rivera Jr., Eddie
> > >><erivera@windelsmarx.com>; SlayBend <SlayBend@windelsmarx.com>;
> >Daniel
> > >>A. Taylor <DAT@skjlaw.com>; mdaughton@skjlaw.com
><mailto:mdaughton@skjlaw.com>
> ><mailto:mdaughton@skjlaw.com>; #C-M EAGLE
> > >>BENDAMUSTINE LITIGATION - LW TEAM
> > >><EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Litigation Eagle
> > >><EagleLitigation@mccarter.com>
> > >>Subject: Re: Eagle v. Slayback: Slayback's Non-Infringement Reply
> > >>
> > >>
> > >>
> > >>Jason should be back in the office Wednesday
> > >>
> > >>
> > >>
> > >>
> > >>>On Aug 3, 2026, at 4:29 PM, Manuela Burek (CH)
> ><Manuela.Burek@lw.com>
> > >>>wrote:
> > >>>
> > >>>
> > >>>
> > >>><0.jpg>
> > >>>
> > >>>
> > >>>
> > >>>Robyn,
> > >>>
> > >>>
> > >>>
> > >>>Following up on the below. Please provide your team’s availability
> > >>>for tomorrow. Thank you.
> > >>>
> > >>>
> > >>>
> > >>>Manuela Burek
> > >>>
> > >>>
> > >>>

> > >>>LATHAM & WATKINS LLP
> > >>>
> > >>>330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
> > >>>
> > >>>D: +1.312.777.7080
> > >>>
> > >>>
> > >>>
> > >>>From: Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
> > >>>Sent: Thursday, July 30, 2026 7:24 AM
> > >>>To: Manuela Burek (CH) <Manuela.Burek@lw.com>
> > >>>Cc: Lief, Jason A. <jlief@windelsmarx.com>; Miller, Andrew
> > >>><amiller@windelsmarx.com>; Forchheimer, Daniel E.
> > >>><dforchheimer@windelsmarx.com>; Sparschu, Audrey R. <
> > >>>asparschu@windelsmarx.com>; Rivera Jr., Eddie
> > >>><erivera@windelsmarx.com>; SlayBend <SlayBend@windelsmarx.com>;
> > >>>Daniel A. Taylor < DAT@skjlaw.com>; mdaughton@skjlaw.com
><mailto:mdaughton@skjlaw.com>
> ><mailto:mdaughton@skjlaw.com>
> > >>><mailto:mdaughton@skjlaw.com>; #C-M EAGLE BENDAMUSTINE LITIGATION
>-
> > >>>LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Litigation
> >Eagle
> > >>><EagleLitigation@mccarter.com>
> > >>>Subject: Re: Eagle v. Slayback: Slayback's Non-Infringement Reply
> > >>>
> > >>>
> > >>>
> > >>>Manuela,
> > >>>
> > >>>I am checking with my team and will send our availability.
> > >>>
> > >>>Robyn
> > >>>
> > >>>
> > >>>
> > >>>Sent from my iPhone
> > >>>
> > >>>
> > >>>
> > >>>
> > >>>
> > >>>>On Jul 28, 2026, at 1:13 PM, Manuela Burek (CH)
> > >>>><Manuela.Burek@lw.com> wrote:
> > >>>>
> > >>>>
> > >>>>
> > >>>><0.jpg>

> > >>>>
> > >>>>
> > >>>>
> > >>>>Robyn,
> > >>>>
> > >>>>
> > >>>>
> > >>>>Please provide your team’s availability to meet and confer on
> >August
> > >>>>4th.
> > >>>>
> > >>>>
> > >>>>
> > >>>>Manuela Burek
> > >>>>
> > >>>>
> > >>>>
> > >>>>LATHAM & WATKINS LLP
> > >>>>
> > >>>>330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
> > >>>>
> > >>>>D: +1.312.777.7080
> > >>>>
> > >>>>
> > >>>>
> > >>>>From: Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
> > >>>>Sent: Monday, July 27, 2026 9:08 AM
> > >>>>To: Manuela Burek (CH) <Manuela.Burek@lw.com>
> > >>>>Cc: Lief, Jason A. <jlief@windelsmarx.com>; Miller, Andrew
> > >>>><amiller@windelsmarx.com>; Forchheimer, Daniel E.
> > >>>><dforchheimer@windelsmarx.com>; Sparschu, Audrey R. <
> > >>>>asparschu@windelsmarx.com>; Rivera Jr., Eddie
> > >>>><erivera@windelsmarx.com>; SlayBend <SlayBend@windelsmarx.com>;
> > >>>>Daniel A. Taylor < DAT@skjlaw.com>; mdaughton@skjlaw.com
><mailto:mdaughton@skjlaw.com>
> ><mailto:mdaughton@skjlaw.com>
> > >>>><mailto:mdaughton@skjlaw.com>; #C-M EAGLE BENDAMUSTINE LITIGATION
>-
> > >>>>LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Litigation
> > >>>>Eagle <EagleLitigation@mccarter.com>
> > >>>>Subject: Re: Eagle v. Slayback: Slayback's Non-Infringement Reply
> > >>>>
> > >>>>
> > >>>>
> > >>>>>>Counsel,
> > >>>>>>
> > >>>>>>
> > >>>>>>

> > >>>>>>We are in receipt of your email regarding certain arguments
> >raised
> > >>>>>>in our reply brief(s). We have reviewed your cited cases and do
> > >>>>>>not believe they are applicable or suggest that we should
> >withdraw
> > >>>>>>or modify our briefing.
> > >>>>>>
> > >>>>>>Due to the necessity of including lead counsel in meet and
> > >>>>>>confers, and due to personal commitments, our team is unable to
> > >>>>>>meet until after August 3rd.
> > >>>>>>
> > >>>>>>
> > >>>>>>
> > >>>>>>Regards,
> > >>>>>>
> > >>>>>>Robyn
> > >>>>>>
> > >>>>Sent from my iPhone
> > >>>>
> > >>>>
> > >>>>
> > >>>>
> > >>>>
> > >>>>
> > >>>>>On Jul 23, 2026, at 3:54 PM, Manuela Burek (CH)
> > >>>>><Manuela.Burek@lw.com> wrote:
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>><0.jpg>
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>Counsel,
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>We write regarding Section III.E of Slayback's reply brief in
> > >>>>>support of its motion for summary judgment on non-infringement
> > >>>>>(D.I. 434), which seeks to exclude certain testimony by Dr.
>Trout.
> > >>>>>Despite being labeled as a "reply argument," it is not. It is an
> > >>>>>impermissible new argument being raised for the first time on
> > >>>>>reply. See Novosteel SA v. U.S. Bethlehem Steel Corp., 284 F.3d
> > >>>>>1261, 1273-74 (Fed. Cir. 2002) ("Raising the issue for the first
> > >>>>>time in a reply brief does not suffice; reply briefs reply to
> > >>>>>arguments made in the response brief—they do not provide the
> >moving

> > >>>>>party with a new opportunity to present yet another issue for
>the
> > >>>>>court's consideration. . . . As a matter of litigation fairness
> >and
> > >>>>>procedure, then, we must treat this argument as waived.”);
>ViaTech
> > >>>>>Tech. Inc. v. Microsoft Corp., 2017 WL 2538570, at *8 (D. Del.
> >June
> > >>>>>12, 2017) (explaining that arguments “not raised in the opening
> > >>>>>brief” are “waived”).
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>Slayback was clearly on notice of this issue well before filing
> >its
> > >>>>>reply brief, as made clear by Footnote 3 in Slayback’s opening
> > >>>>>brief. D.I. 347. The footnote passively “invite[s] a review of
>the
> > >>>>>Trout deposition Transcript,” but sets forth no argument for
> > >>>>>disregarding or excluding Dr. Trout’s testimony—whether under
>the
> > >>>>>“sham affidavit” rule or any other basis. Further, Slayback
>raised
> > >>>>>this issue in a correspondence letter to Eagle’s counsel on May
> >14,
> > >>>>>2026. Eagle provided a detailed response on May 27, 2026, which,
> > >>>>>among other things, requested that Slayback provide availability
> >to
> > >>>>>meet and confer if Slayback intended to pursue any issue
> >associated
> > >>>>>with Dr. Trout’s deposition. Slayback never responded. Given the
> > >>>>>circumstances, Section III.E of the Slayback reply brief is
> > >>>>>improper.
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>Please confirm that Slayback will withdraw Section III.E. of its
> > >>>>>reply brief. If Slayback intends to maintain its position,
>please
> > >>>>>provide your availability to meet and confer this week or early
> > >>>>>next week.
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>Manuela Burek
> > >>>>>
> > >>>>>
> > >>>>>

> > >>>>>LATHAM & WATKINS LLP
> > >>>>>
> > >>>>>330 North Wabash Avenue, Suite 2800
> > >>>>>
> > >>>>>Chicago, IL 60611
> > >>>>>
> > >>>>>Direct Dial: +1.312.777.7080
> > >>>>>
> > >>>>>Email: manuela.burek@lw.com
> > >>>>>
> > >>>>>https://www.lw.com
><https://www.lw.com>
> ><https://www.lw.com
><https://www.lw.com>>
> > >>>>><https://www.lw.com
><https://www.lw.com>
> ><https://www.lw.com
><https://www.lw.com>>>
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>________________________________
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>This email may contain material that is confidential, privileged
> > >>>>>and/or attorney work product for the sole use of the intended
> > >>>>>recipient. Any review, disclosure, reliance or distribution by
> > >>>>>others or forwarding without express permission is strictly
> > >>>>>prohibited. If you are not the intended recipient, please
>contact
> > >>>>>the sender and delete all copies including any attachments.
> > >>>>>
> > >>>>>
> > >>>>>
> > >>>>>Latham & Watkins LLP or any of its affiliates may monitor
> > >>>>>electronic communications sent or received by our networks in
> > >order
> > >>>>>to protect our business and verify compliance with our policies
> > >and
> > >>>>>relevant legal requirements. Any personal information contained
>or
> > >>>>>referred to within this electronic communication will be
>processed
> > >>>>>in accordance with the firm's privacy notices and Global Privacy
> > >>>>>Standards available at www.lw.com

><http://www.lw.com>
> ><http://www.lw.com
><http://www.lw.com>>
> > >>>><http://www.lw.com
><http://www.lw.com>
> ><http://www.lw.com
><http://www.lw.com>>>.
> > >>>>
> > >>>
> > >>>
> > >>>
> > >>>Robyn Ast-Gmoser
> > >>>Admitted to practice in Illinois and Missouri
> > >>>Windels Marx Lane & Mittendorf, LLP
> > >>>180 Park Ave, Florham Park, NJ 07932
> > >>>Direct Dial: 973.966.3239 | General Fax: 973.966.3250
> > >>>rast-gmoser@windelsmarx.com | www.windelsmarx.com
><http://www.windelsmarx.com>
> ><http://www.windelsmarx.com
><http://www.windelsmarx.com>>
> > >>><http://www.windelsmarx.com
><http://www.windelsmarx.com>
> ><http://www.windelsmarx.com
><http://www.windelsmarx.com>>>
> > >>>
> > >>>
> > >>>
> > >>>
> > >>>This message is sent by a law firm and may contain information
>that
> > >>>is privileged or confidential. If you received this transmission
>in
> > >>>error, regardless of whether you are a named recipient, please
> > >>>notify the sender by reply e-mail and delete the message and any
> > >>>attachments.
> > >>>
> > >>>
> > >>>
> > >>
> > >>
> > >>
> > >>Robyn Ast-Gmoser
> > >>Admitted to practice in Illinois and Missouri
> > >>Windels Marx Lane & Mittendorf, LLP
> > >>180 Park Ave, Florham Park, NJ 07932
> > >>Direct Dial: 973.966.3239 | General Fax: 973.966.3250
> > >>rast-gmoser@windelsmarx.com | www.windelsmarx.com
><http://www.windelsmarx.com>

> ><http://www.windelsmarx.com
><http://www.windelsmarx.com>>
> > >>><http://www.windelsmarx.com
><http://www.windelsmarx.com>
> ><http://www.windelsmarx.com
><http://www.windelsmarx.com>>>
> > >>>
> > >>>
> > >>>
> > >>>
> > >>>This message is sent by a law firm and may contain information
>that
> > >>>is privileged or confidential. If you received this transmission
>in
> > >>>error, regardless of whether you are a named recipient, please
> >notify
> > >>>the sender by reply e-mail and delete the message and any
> > >>>attachments.
> > >>>
> > >>>
> > >>>
> > >>
> > >>
> > >>
> > >>Andrew J. Miller
> > >>Windels Marx Lane & Mittendorf, LLP
> > >>180 Park Ave, Florham Park, NJ 07932
> > >>Direct Dial: 973.966.3202 | General Fax: 973.966.3250
> > >>amiller@windelsmarx.com | www.windelsmarx.com
><http://www.windelsmarx.com>
> ><http://www.windelsmarx.com
><http://www.windelsmarx.com>>
> > >><http://www.windelsmarx.com
><http://www.windelsmarx.com>
> ><http://www.windelsmarx.com
><http://www.windelsmarx.com>>>
> > >>
> > >>
> > >>
> > >>
> > >>This message is sent by a law firm and may contain information that
> >is
> > >>privileged or confidential. If you received this transmission in
> > >>error, regardless of whether you are a named recipient, please
>notify
> > >>the sender by reply e-mail and delete the message and any
> >attachments.
> > >>

> > >>
> > >>
> >
> >
> >

> >Jason A. Lief
> >Windels Marx Lane & Mittendorf, LLP
> >156 West 56th Street, New York, New York 10019
> >180 Park Ave, Florham Park, NJ 07932
> >Direct Dial: 212.237.1061 | General Fax: 212.262.1215
> >jlief@windelsmarx.com | www.windelsmarx.com
><http://www.windelsmarx.com>
> ><http://www.windelsmarx.com
><http://www.windelsmarx.com>>

> >
> >
> >
> >

> >This message is sent by a law firm and may contain information that is
> >privileged or confidential. If you received this transmission in
>error,
> >regardless of whether you are a named recipient, please notify the
> >sender by reply e-mail and delete the message and any attachments.

> >
> >
> >
> >
> >________________________________
> >

> >This email may contain material that is confidential, privileged
>and/or
> >attorney work product for the sole use of the intended recipient. Any
> >review, disclosure, reliance or distribution by others or forwarding
> >without express permission is strictly prohibited. If you are not the
> >intended recipient, please contact the sender and delete all copies
> >including any attachments.
> >
> >Latham & Watkins LLP or any of its affiliates may monitor electronic
> >communications sent or received by our networks in order to protect
>our
> >business and verify compliance with our policies and relevant legal
> >requirements. Any personal information contained or referred to within
> >this electronic communication will be processed in accordance with the
> >firm's privacy notices and Global Privacy Standards available at
> >www.lw.com
><http://www.lw.com>
> ><http://www.lw.com
><http://www.lw.com>>.

>
>
>Jason A. Lief
>Windels Marx Lane & Mittendorf, LLP
>156 West 56th Street, New York, New York 10019
>180 Park Ave, Florham Park, NJ 07932
>Direct Dial: 212.237.1061 | General Fax: 212.262.1215
>jlief@windelsmarx.com | www.windelsmarx.com
><http://www.windelsmarx.com>
>
>
>
>
>This message is sent by a law firm and may contain information that is
>privileged or confidential. If you received this transmission in error,
>regardless of whether you are a named recipient, please notify the
>sender by reply e-mail and delete the message and any attachments.
>
>
>
>This email message from the law firm of McCarter & English, LLP is for
>the sole use of the intended recipient(s) and may contain confidential
>and privileged information. Any unauthorized review, use, disclosure or
>distribution is prohibited. If you are not the intended recipient,
>please contact the sender by reply email and destroy all copies of the
>original message.

Jason A. Lief
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street, New York, New York 10019
180 Park Ave, Florham Park, NJ 07932
Direct Dial: 212.237.1061 | General Fax: 212.262.1215
jlief@windelsmarx.com | www.windelsmarx.com

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, regardless of whether you are a named recipient, please notify the sender by reply e-mail and delete the message and any attachments.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will

be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

---

Robyn Ast-Gmoser
Admitted to practice in Illinois and Missouri
Windels Marx Lane & Mittendorf, LLP
180 Park Ave, Florham Park, NJ 07932
Direct Dial: 973.966.3239 | General Fax: 973.966.3250
rast-gmoser@windelsmarx.com | www.windelsmarx.com

---

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, regardless of whether you are a named recipient, please notify the sender by reply e-mail and delete the message and any attachments.

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on August 24, 2026, on the following counsel in the manner indicated:

**VIA EMAIL:**

Daniel A. Taylor
Neal C. Belgam
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
Dtaylor@skjlaw.com
Nbelgam@skjlaw.com

Jason A. Lief
Allan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Daniel E. Forchheimer
Kiersten A. Fowler
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
dforchheimer@windelsmarx.com
kfowler@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

*/s/ Alexandra M. Joyce*
Alexandra M. Joyce (#6423)